# EXHIBIT D

SUPREME COURT, NASSAU COUNTY

CRIM. TERM PART 34
MOTION CAL. C-216
INDICTMENT NO. 61029-85

PRESENT:

HON. VICTOR M. ORT, JSC

PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN KOGUT

Defendant

: DENIS DILLON
: District Attorney
: Nassau County
: Mineola, New York 11501
: By Robert Biancavilla, Esq.,
:
:
: Paul Casteleiro, Esq.,
: Attorney for Defendant
: 86 Hudson Street
: Hoboken, New Jersey 07030
:

By order dated June 11, 2003, this court upon consent of the People granted the motions of defendant John Kogut and co-defendants John Restivo and Dennis Hastead to vacate the judgments of the Hon. John F. O'Shaughnessy convicting them of the rape and murder of Theresa Fusco. In support of the motion to vacate, defendants and the People stipulated that DNA analysis conducted subsequent to defendants' trials appeared to establish that semen recovered from the victim did not originate from defendant Kogut or co-defendants John Restivo and Dennis Halstead. Thus, new evidence had been discovered since the entry of judgment which could not have been produced by defendants at their trials even with due diligence on their part, and the evidence was of such character as to create a probability that had it been received at trial the verdict would have been more favorable to defendants. See CPL § 440.10(1)(g).

1

Defendant John Kogut now submits a new omnibus motion requesting: i)dismissal of the indictment on the grounds that there exists a jurisdictional or legal impediment to conviction of the defendant for the offense charged; ii) dismissing the indictment on the grounds of insufficiency of grand jury evidence or, alternatively, a defective grand jury proceeding; iii) release of the grand jury minutes; iv) compelling discovery and inspection; v) a bill of particulars; vi) a de novo Huntley hearing; vii) a Dunaway hearing; viii) an order permitting defendant's expert witness to give an opinion at trial concerning the voluntariness of defendant's confession, or alternatively for a <u>Frye</u> hearing; and ix) a Sandoval hearing.   The People are cross-moving to preclude defendant from offering expert testimony concerning "postmortem hair root banding" on the ground that the analysis providing the basis for the testimony is not generally accepted as reliable within the relevant scientific community.

Dismissal of the indictment

CPL § 210.20(h) provides for dismissal of the indictment upon the ground that there exists some jurisdictional or legal impediment to conviction of the defendant for the offense charged.   Defendant asserts that such an impediment exists by virtue of the DNA analysis which provided the basis for the motion to vacate. Defendant argues that the DNA analysis discredits his inculpatory statement admitting to the murder and also rebuts the alleged motive, i.e. to prevent the deceased from reporting that she was raped by the defendants. Defendant also relies upon scientific analysis to the effect that hairs from the victim's head recovered from co-defendant John Restivo's van display "post mortem banding." With respect thereto, defendant maintains that the banding on the hair sample establishes that the hairs were removed from the victim's head after death, thus implying that the hair specimens were planted in Restivo's

2

vehicle.

Where scientific evidence conclusively disproves one of the elements of the crime charged, there exists a legal impediment to conviction which entitles defendant to dismissal of the indictment. People v. Swamp, 84 N.Y.2d 725, 732 (1995). While the scientific evidence upon which defendant relies tends to contradict the People's theory of the case, it does not conclusively disprove it. The absence of any of the defendants' semen in the victim does not establish that they did not rape her, and certainly does not establish that they were not responsible for her murder. Assuming arguendo that the hair samples were planted, such misconduct by the police would suggest overzealousness on their part but would not establish the defendants' innocence. Consequently, defendant's application to dismiss the indictment for a jurisdictional or legal impediment to conviction is denied.

By order dated December 9, 1985, Judge O'Shaughnessy upon inspection of the grand jury minutes found the grand jury evidence legally sufficient and denied defendant's motion to dismiss the indictment. In affirming defendant's judgment of conviction, the Appellate Division implicitly ruled as to the legal sufficiency of the trial evidence. See People v. Kogut, 176 A.D.2d 757 (2d Dep't 1991). Since the evidence at defendant's trial was legally sufficient, the validity of Judge O'Shaughnessy's order denying defendant's motion to dismiss the indictment for legal insufficiency of grand jury evidence is not subject to further review by this court. CPL §210.30(6); Matter of Rose v. Golia, 232 A.D.2d 567 (2d Dep't 1996). Accordingly, defendant's application to dismiss the indictment for insufficiency of grand jury evidence is denied. Because the sufficiency of the grand jury evidence is not subject to review, the court declines to order

release of the grand jury minutes to defendant.  CPL 210.30(3).[1]

Defendant does not allege in what sense he claims that the grand jury proceeding was defective.  In any event, having previously made a pretrial motion to dismiss the indictment, defendant cannot make a separate motion to dismiss the indictment upon another ground at this stage.  CPL 210.20(3).  Therefore, defendant's application to dismiss the indictment for a defective grand jury proceeding is denied.

Discovery/bill of particulars

Defendant seeks to compel discovery of reports prepared by experts retained by the People concerning subsequently conducted DNA analysis.  The experts undertook comparisons of the DNA profile developed from the newly discovered vaginal slide with the DNA of associates of the defendants around the time of the incident as well as with a data bank containing the DNA profiles of 1,700,000 other individuals.  No match has been obtained.  As a threshold matter, the court notes that evidence excluding other people as the perpetrator of the rape is not exculpatory as to the defendants.  However, if the People intended to prove the subsequently conducted DNA analysis at trial, the reports would be discoverable.  CPL § 240.20(1).  Based upon the People's representation that they do not intend to offer evidence of the subsequently conducted DNA analysis at trial, defendant's application for discovery of such evidence is denied.

Defendant further seeks to compel discovery of documents and other information possessed by the People concerning their investigation into the death of another young woman,

---

[1]For the same reason, the court declines to order that a sealed copy of the grand jury minutes be retained as a court exhibit.

Jacqueline Martarella, around the same time as the death of Theresa Fusco. Also, defendant seeks discovery of documents and information concerning the disappearance of yet a third young woman, Kelly Morrissey. Defendant seeks this information as exculpatory evidence, that is Brady material, as well as the discovery statute. CPL § 240.40. Defendant's theory is that a person or persons other than defendant or his two co-defendants is responsible for the deaths of Ms. Fusco as well as the other two young women. For third party culpability evidence to be admissible, the court must determine that it is sufficiently probative to outweigh the risk of trial delay, undue prejudice, and/or jury confusion. People v. Primo, 96 N.Y.2d 351 (2001). In performing this "balancing analysis," the court must consider both the similarity of the crimes and the available evidence connecting the third party suspect to the various criminal transactions. Cf. People v. Robinson, 68 N.Y.2d 541 (1986). In view of the potentially exculpatory nature of the material which defendant is seeking, the court determines that some discovery is appropriate in order to allow defendant to argue for its admissibility. Accordingly, defendant's application to compel discovery is granted to the extent that the People shall produce all witnesses' statements, redacted to delete the name of the witness, as well as all reports concerning scientific tests relating to the death/disappearance of the other two victims.

De novo hearings

By order dated April 28, 1986, Judge O'Shaughnessy denied defendant's motion to suppress statements and identification testimony. Judge O'Shaughnessy made the following conclusions of law: Defendant was not in police custody on March 21, 1985, and his statements to Det. Volpe on that date were voluntary. Defendant's statements during the polygraph test on March 25, 1985 were voluntary and not the result of custodial interrogation. After the police

5

determined that defendant had failed the polygraph test, they had probable cause to arrest defendant. From that point on, defendant was in police custody, but he was adequately informed of his Miranda rights and all of his subsequent statements were voluntary. Judge O'Shaughnessy's order denying the motion to suppress was affirmed by the Appellate Division. People v. Kogut, supra, 176 A.D.2d 756.

Defendant requests a "rehearing" or a de novo suppression hearing based upon the newly discovered scientific evidence and an alleged Rosario violation, the failure to turn over the charts of defendant's polygraph examination. The People argue that the court is barred from ordering a new suppression hearing by the law of the case doctrine. See People v. Bilsky, 95 N.Y.2d 172 (2000). However, law of the case is not an "inflexible rule." People v. Leone, 44 N.Y.2d 315, 320 (1978)(Fuchsberg, J. Concurring). "In criminal no less than in civil cases, where circumstances require it, one Judge has the power to deviate from a decision made by another." 44 N.Y.2d at 321. Since the trial court has discretion to reopen a suppression hearing after an appellate court has remitted the case for a new trial, People v. Hults, 150 A.D.2d 726 (2d Dep't 1989), it should have similar discretion upon the granting of a motion to vacate a judgment of conviction. However that may be, defendant presents no facts militating in favor of the granting of a new hearing.[2] While the newly discovered scientific evidence tends to rebut the

_____

[2]The court notes that in affirming defendant's judgment of conviction, the Appellate Division wrote, "While originally denying involvement in the death and rape of the victim, the defendant subsequently made numerous inculpatory statements after he was informed by the police that they were having trouble with the results of his polygraph test. We agree with the hearing court's determination that the defendant voluntarily accompanied the police to the station house and voluntarily submitted to the polygraph examination. In addition, the totality of the circumstances indicate that defendant's statements were voluntarily made." 176 A.D.2d at 757.

alleged motive for committing the crime and discredits the forensic evidence connecting

defendants to the murder, it does not bear on the voluntariness of defendant's confession.

Moreover, the court notes that, to the extent that defendant denies making the statement

attributed to him by the police, the issue of whether the statement was in fact made by the

defendant is reserved for trial and beyond the scope of a suppression hearing. People v.

Washington, 51 N.Y.2d 214, 221 (1980).

Where a Rosario violation is asserted in the context of a 440 motion, as opposed to a

direct appeal, defendant is entitled to a new trial only if he can establish that there is a

"reasonable probability" that the failure to disclose the witness' prior statement contributed to

the defendant's conviction. People v. Jackson, 78 N.Y.2d 638 (1991). In this case, defendant is

seeking not a new trial, relief which he has already been granted, but rather a new suppression

hearing. Application of parallel reasoning from Jackson leads to the conclusion that where a

judgment of conviction has been vacated on other grounds, there is no automatic entitlement to a

new suppression hearing based simply upon a Rosario violation. Rather, defendant must show a

reasonable probability that the failure to turn over the claimed Rosario material contributed to

the denial of the suppression motion. Defendant has not made this showing. While the

polygraph charts concern a scientific test or experiment which defendant was entitled to discover

upon his demand prior to the hearing, see CPL § 240.20(1)(c), the charts are not prior *statements*

of Det. Gruber, the witness who administered the polygraph test. Thus, they were not Rosario

material. It should be noted that the People have now provided defendant with the polygraph

charts. Each side has submitted an expert's interpretation of the test results which, not

surprisingly, reach opposite conclusions as to whether Mr. Kogut was telling the truth. Clearly,

that cannot be said to constitute a reasonable probability that the outcome of the hearing would be different. As a result, defendant's application for a new or re-opened suppression hearing is denied.

Expert testimony on police interrogation

Defendant seeks to present at trial the testimony of Dr. Saul Kassin, a social psychologist and an expert in the field of influence and "behavioral control" as it relates to police interrogation. The admissibility and bounds of expert testimony are matters addressed to the sound discretion of the trial court. People v. Cronin, 60 N.Y.2d 430 (1983). The court must consider whether jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and whether they would benefit from the specialized knowledge of an expert. Id. at 433. The court should not exclude such testimony merely because, to some degree, it invades the jury's province. People v. Lee, 96 N.Y.2d 157 (2001). The court has found only one reported case considering the issue of the admissibility of expert testimony on the voluntariness of a confession. The Third Department ruled that it was not an abuse of discretion to exclude such testimony. People v. Shepard, 259 A.D.2d 775 (3rd Dep't 1999). Lee dealt with the admissibility of expert testimony on the reliability of eyewitness identification. The Court of Appeals suggests in that case that a Frye hearing to determine general acceptance by the relevant scientific community may assist the court in determining the issue of whether the subject is a proper one for expert testimony. Accordingly, defendant's application is granted only to the extent that a Frye hearing shall be held prior to trial.

Sandoval

Defendant's application for preclusion of prior convictions and bad acts is granted to the extent that a de novo Sandoval hearing shall be conducted immediately prior to trial. Evidentiary rulings, including Judge O'Shaughnessy's Sandoval ruling, are not binding upon this court on retrial. People v. Evans, 94 N.Y.2d 499 (2000).

Postmortem hair root banding

With respect to the People's cross-motion to preclude defendant from offering expert testimony concerning "postmortem hair root banding," the court noted above that novel scientific evidence is not admissible unless the proponent establishes at a Frye hearing that the evidence is generally accepted as reliable by the relevant scientific community. People v. Wesley, 83 N.Y.2d 417 1994). Despite the failure of the People to request such a hearing at the first trial, they are entitled to demand one at this time. See People v. Kanani, 272 A.D.2d 186 (1st Dep't 2000). Accordingly, the People's motion to preclude is granted only to the extent that a Frye hearing shall be conducted prior to trial concerning the reliability of postmortem hair root banding.

SO ORDERED

Dated _____ December 1, 2004 _____

Hon. Victor M. Ort, JSC

ENTER