UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
JOHN KOGUT,

                    Plaintiff,

          -against-

THE COUNTY OF NASSAU, POLICE
COMMISSIONER DONALD KANE, POLICE
COMMISSIONER WILLIAM J. WILLETT (2005),
POLICE COMMISSIONER JAMES LAWRENCE,
DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE
1985), DETECTIVE DENNIS FARRELL (HEAD OF
HOMICIDE 2005), DETECTIVE JOSEPH VOLPE,
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT
MARTINO, DETECTIVE WAYNE BIRDSALL,
DETECTIVE MILTON G. GRUBER, DETECTIVE
CHARLES FRAAS, DETECTIVE FRANK SIRIANNI,
DETECTIVE HARRY WALTMAN,[1] P.O. MICHAEL
CONNAUGHTON, P.O. WILLIAM DIEHL, and
JOHN DOES 1-5,

                    Defendants.
---------------------------------------X
JOHN RESTIVO, DENNIS HALSTEAD,
MELISSA LULLO, JASON HALSTEAD,
HEATHER HALSTEAD and TAYLOR
HALSTEAD,

                    Plaintiffs,

          - against -

NASSAU COUNTY, JOSEPH VOLPE, in his
individual capacity, ROBERT DEMPSEY,
in his individual capacity, FRANK SIRIANNI,
in his individual capacity, MILTON GRUBER,
in his individual capacity, HARRY WALTMAN
in his individual capacity ALBERT MARTINO,
in his individual capacity, CHARLIE FRAAS,

MEMORANDUM AND ORDER
06-CV-6695 (JS)(WDW)
(LEAD CASE)

06-CV-6720(JS)(WDW)
(MEMBER CASE)

_____

          [1] Plaintiff John Kogut names, among others, Detective Henry
Waltman in his Complaint.  In light of Defendants' Response to
the Complaint and the Amended Complaint filed by Plaintiffs John
Restivo, et al., which contains the name "Harry Waltman" the
Court directs the Clerk of the Court to update both Dockets to
reflect the name "Harry Waltman."

```
in his individual capacity, THOMAS ALLEN
in his individual capacity, RICHARD BRUSA,
in his individual capacity, VINCENT DONNELLY,
in his individual capacity, MICHAEL
CONNAUGHTON, in his individual capacity,
WAYNE BIRDSALL, in his individual capacity,
WILLIAM DIEHL, in his individual capacity,
JACK SHARKEY, in his individual capacity,
DANIEL PERRINO, in his individual capacity,
ANTHONY KOZIER, in his individual capacity,
Detective Sergeant CAMPBELL, (Shield #48),
in his individual capacity, SEAN SPILLANE,
in his individual capacity, RICHARD ROE
SUPERVISORS #1-10, in their individual
capacities,

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiffs:

John Kogut              Anthony M. Grandinette, Esq.
                        Grandinette & Serio, LLP
                        114 Old Country Road, Suite 420
                        Mineola, NY 11501

                        Paul Casteleiro, Esq.
                        200 Washington Street, Suite 500
                        Hoboken, NJ 07030

John Restivo,           Barry C. Scheck, Esq.
Dennis Halstead,        Deborah L. Cornwall, Esq.
Melissa Lullo,          Monica R. Shah, Esq.
Jason Halstead,         Nick Joel Brustin, Esq.
Heather Halstead,       Anna Benvenutti Hoffman, Esq.
and Taylor              Cochran, Neufeld & Scheck, LLP
Halstead                99 Hudson Street, 8th Floor
                        New York, New York 10013

For Defendants:         Liora M. Ben-Sorek, Esq.
                        Sondra Meryl Toscano, Esq.
                        Office of the Nassau County Attorney
                        One West Street
                        Mineola, NY 11501
```

SEYBERT, District Judge:

INTRODUCTION

Plaintiffs, John Kogut ("Kogut"), John Restivo ("Restivo"), Dennis Halstead ("Halstead"), Melissa Lullo ("Lullo"), Jason Halstead ("J. Halstead"), Heather Halstead ("H. Halstead"), and Taylor Halstead ("T. Halstead")[2] (collectively "Plaintiffs") commenced these actions 07-CV-6695 and 07-6720 on December 19, 2006, and December 21, 2006, respectively. By recent Order, this Court consolidated both cases into the earlier-filed action. Kogut, Restivo, and Halstead base the majority of their claims against Nassau County ("County") and various Nassau County Police Department ("NCPD") officers and supervisors (collectively "Defendants") on 42 U.S.C. § 1983, alleging, inter alia, malicious prosecution, false arrest, and false imprisonment.[3] Additionally, Kogut, Restivo, and Halstead asserted 14th Amendment due process violations, and a variety of state claims[4] stemming from their prior interrogations, arrests, and subsequent state prosecutions. Finally, Halstead's Children assert their own cause of action,

_____

[2] Lullo, J. Halstead, H. Halstead, and T. Halstead will collectively be referred to as "Halstead's Children."

[3] Plaintiffs name forty-eight Defendants in total, including the fictitiously named Defendants, John Does 1-5 (Kogut Compl. 2), John Doe Officers and Detectives #1-10, and Richard Roe Supervisors #1-10. (Restivo & Halstead Am. Compl. 1.)

[4] Restivo and Halstead later withdrew their state law claims for false arrest, false imprisonment and assault and battery. (Pl.'s Mem. in Opp'n to Mot. to Dismiss 18, n.11).

unconstitutional denial of familial association, which they claim stems from their father's wrongful conviction and imprisonment.

Pending before the Court are Defendants' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendants claim that they are entitled to this relief based on the following arguments: (1) Plaintiffs' claim of malicious prosecution is both precluded by law and not cognizable under 42 U.S.C. § 1983; (2) Plaintiffs' due process claims, based on falsified evidence, are: (a) barred by the statue of limitations; (b) barred by the rule set forth in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); and (c) precluded by prior case law; (3) Plaintiffs' claims of conspiracy are barred by the intra-corporate conspiracy doctrine; (4) Plaintiffs' municipal liability claims under 42 U.S.C. § 1983 fail as a matter of law, because the claims against the individual Defendants fail as a matter of law; (5) since Plaintiffs failed to comply with New York's notice of claim requirement, Gen. Mun. Law § 50-e and 50-I, their state law claims are barred; (6) Plaintiffs' claim for the loss of familial association has no basis in law; (7) Plaintiffs' claims against Donald Kane ("Kane"), William J. Willett ("Willett"), Vincent Donnelly ("Donnelly"), Milton Gruber ("Gruber"), and Anthony Kozier ("Kozier") should be dismissed because Plaintiffs have failed to allege their personal involvement; (8) Plaintiffs' respondeat superior claim fails

because the claims against the individual Defendants fail; and (9) Plaintiffs' claims of negligent supervision should be dismissed as a matter of law. The Court addresses these claims in order below.

For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendants' motions. Accordingly, the following claims are DISMISSED: (1) Plaintiffs' claims for malicious prosecution, based on Section 1983 and New York law, relating to Plaintiffs' First Trials; (2) Plaintiffs' claims for false arrest and false imprisonment, based on Section 1983 and New York law; (3) Plaintiffs' claims of due process violations based on Defendants' alleged offering of false evidence; (4) Kogut's conspiracy claim; (5) Plaintiffs' Monell claims; (6) Halstead's Children's claims for loss of familial association; (7) Kogut's battery claim; (8) Restivo's and Halstead's claims for failure to intercede; (9) Restivo's and Halstead's claims for intentional or reckless infliction of emotional distress; (10) Plaintiffs' claims for negligent infliction of emotional distress; (11) Restivo's and Halstead's claims based on negligent supervision; and (12) Restivo's and Halstead's claims based on respondeat superior. Going forward, the only remaining claims are as follows: (1) Kogut's malicious prosecution claim relating to his second trial, his negligent supervision claim, and a claim based on respondeat superior; and (2) Restivo's and Halstead's conspiracy claims.

<u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>[5]

On November 10, 1984, at approximately 9:47 p.m., Theresa Fusco ("Fusco"), a sixteen-year-old girl, left Hot Skates--a local roller skating rink. The following day, when Fusco did not return home, her mother reported her missing to the Lynbrook Police Department. On December 5, 1984, Fusco's body was discovered naked and brutalized by the railroad tracks near Park Place and Rocklyn Avenue in Lynbrook. The Nassau County Police Department immediately responded and Defendant Joseph Volpe ("Volpe") was assigned as lead detective for the investigation. The medical examiner estimated that the time of death occurred between seven to fourteen days prior to the date of discovery of the body. The autopsy also revealed that Fusco had suffered severe blows to the face, and death, ultimately, resulted from ligature strangulation. There was no trauma around the vaginal area; however, a vaginal swab produced seminal fluids. After interviews with Fusco's mother and best friend it was concluded, by Vople, that Fusco was not sexually active. (Restivo & Halstead Am. Compl. ¶ 49). The investigating officers knew of these findings; however, not all of

---

[5] When deciding a Rule 12(c) motion, a district court must "accept all factual allegations in the complaint as true." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179, 192 (2007). The following is derived from the Kogut's Complaint ("Kogut Compl.") and the Amended Complaint filed by Restivo, Halstead, Lullo, J. Halstead, H. Halstead, and T. Halstead ("Restivo & Halstead Am. Compl.") (collectively "Complaints"), and is accepted as true for the purpose of deciding this motion.

this information was made public.

In early March 1985, Defendants Frank Sirianni ("Sirianni"), Daniel Perrino ("Perrino") and others questioned Harold Smyle ("Smlye") as a suspect in the Fusco rape and murder. Smyle, who had a history of psychological illness, informed the Defendants that Plaintiff Restivo told Symle he knew who killed Fusco. (Id. ¶ 50.) On March 5, 1985, Volpe had Restivo brought to NCPD headquarters. (Id. ¶ 51.) The Defendants then proceeded to interrogate Restivo.

Restivo claims that his interrogation lasted twenty-four hours, during which Defendants refused to let him leave the interrogation room, denied his request to contact a lawyer or his girlfriend, and employed coercive and abusive interrogation tactics in order to produce false accusations against Halstead. (See id. ¶¶ 52-64.) After suffering through hours of "physical and emotional abuse," Restivo claims that he signed a written statement, created by Defendants, which falsely indicated that Halstead had told him that he raped a girl by a cemetery and then strangled and killed her. (Id. ¶ 60.) Morever, Restivo maintains that he had no knowledge of the Fusco murder and that the Defendants provided him with all of the facts related to the rape and murder. (Id. ¶ 61.) Subsequently, based on Restivo's statements, the Defendants acquired a warrant to wiretap Halstead's phone. On March 11 and again on March 13, 1985, Defendants Volpe,

Allen, and others stopped Halstead as he was walking in the street, placed him in one of their police vehicles, and drove him to the parking lot of the Lynbrook Police Department. Halstead claims that during these two informal interrogations, members of the NCPD placed listening devices in his apartment. During the time that he was in police custody on both dates, Halstead was questioned about the Fusco rape and murder, and he repeatedly denied any involvement in or knowledge of the crime. (Id. ¶ 69.)

On March 21, 1985, Volpe had Kogut brought to NCPD headquarters for questioning. Kogut was a part-time employee of Restivo's moving business. At this first interrogation, Kogut repeatedly denied any knowledge of the murder. (Id. ¶ 70.) On March 25, 1985, Kogut was again brought to the NCPD headquarters for questioning. Plaintiffs allege that during this twelve-hour interrogation, Defendants utilized abusive and coercive tactics. Finally, Kogut signed a confession that included the following information: (1) Halstead and Restivo raped Fusco in the cemetery; (2) Kogut strangled her to death with a cord as she lay face down on the ground because she threatened to tell the authorities who raped her; and (3) all three of them transported Fusco's dead body in Restivo's van to "the Fort" area where they hid her body under leaves and wooden pallets. (See id. ¶ 76.) Kogut was never informed of his Miranda rights, and only signed a Miranda waiver after fifteen hours of interrogation. (Id. ¶ 79.) After Kogut

signed his confession, Volpe and Robert Dempsey ("Dempsey")
directed Sirianni and Harry Waltman ("Waltman"), "with the active
participation and approval of [D]efendant Camp[b]ell," to take
Kogut to the area of the cemetery where Fusco's body was
discovered. (Id. ¶ 80.) Plaintiffs further allege that, during
this time, Sirianni and Waltman were under Volpe's and Dempsey's
orders to coach Kogut about the particular circumstances of the
crime. (Id.) Finally, Volpe, Dempsey, and their fellow officers
compelled Kogut to repeat his confession on videotape in front of
Assistant District Attorneys Peck and McCarty.[6]  (Id. ¶ 81.)
Kogut's interrogation and confession culminated in his arrest and
arraignment on March 26, 1985, approximately nineteen hours after
he was picked up for his second interrogation.

Subsequently, on March 26, 1985, NCPD seized Restivo's
van and transported it to police headquarters. Defendant Charlie
Frass ("Frass") compared samples taken from Plaintiff Restivo's van
with the hair and blood samples taken from Fusco. Plaintiffs claim
that between March 1, 1985 and June 20, 1985 the Defendants,
through coercion, intimidation and physical force, began collecting
evidence against the Plaintiffs. (Id. ¶ 90.) In addition,
Plaintiffs state that Defendants failed to disclose or document
exculpatory evidence or statements that were allegedly made by

---

[6] The full names of Assistant District Attorneys Peck and
McCarty are not contained in the motion papers or pleadings.

witnesses.  (Id. ¶ 92.)

On June 20, 1985, Restivo and Halstead were arrested for Fusco's rape and murder.  On December 3, 1986, they were both convicted of rape and second-degree murder.  Both of them were sentenced to thirty-three and one-third years to life in prison. On May 28, 1986, Kogut was convicted on all counts in the Indictment, and on June 27, 1986 was sentenced to an aggregate indeterminate term of imprisonment of 31.5 years to life.[7]  (Kogut Compl., Ex. A., unnumbered page 2.)  Kogut appealed his conviction, claiming, inter alia, that the trial court erred in ruling that his confession was voluntary.  The State Appellate Division affirmed Plaintiff's conviction on October 17, 1991.  (Kogut Compl. ¶ 79.) On November 21, 1991, Plaintiff sought leave to appeal to the Court of Appeals and was denied.  (Id. ¶ 80.)  Subsequently, Plaintiff petitioned for writ of habeas corpus alleging numerous constitutional challenges to his conviction.  On April 15, 2002, the U.S. District Court dismissed the writ.

From 1993 to 2003, various samples of semen obtained from Fusco's body were subjected to DNA testing; on five separate occasions, Plaintiffs claim, the tests proved that the DNA found inside of the victim did not belong to Restivo, Halstead, or Kogut. On June 11, 2003, the convictions of Restivo, Halstead and Kogut

---

[7] Hereinafter, the Court will refer to these 1985-1986 trials as the "Plaintiffs' First Trials."

were vacated; however, the charges were not dropped. (Kogut Compl. ¶ 81.) In 2005, Nassau County District Attorney, armed with newly discovered evidence, retried Kogut. At Kogut's second trial, Judge Victor Ort, held that "the question hairs were [not] left in the van on or about November 10th of 1984, and absent those hairs, there is no corroboration, whatsoever, for the [Kogut's] confession concerning the count of rape. (<u>Id.</u> ¶ 73.) Kogut was acquitted of all charges on December 21, 2005. (<u>Id.</u> ¶ 85.) Shortly thereafter, on December 29, 2005, upon the motion of the Nassau County District Attorney's Office, Judge William C. Donnino of the Nassau County Supreme Court dismissed the charges against Restivo and Halstead for lack of evidence. (Restivo & Halstead Am. Compl. ¶ 113.)

On December 19, 2006 and December 21, 2006, respectively, Plaintiffs commenced these actions.

<u>DISCUSSION</u>

I.   <u>Standard of Review Under Rule 12(c)</u>

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same as the standard for a motion to dismiss under Rule 12(b). <u>See</u> <u>Karedes v. Ackerley Group, Inc.</u>, 423 F.3d 107, 113 (2d Cir. 2005). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial

11

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, – U.S. –, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (reversing the Second Circuit's decision in <u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal citations and quotations omitted). Examining whether a complaint states a plausible claim for relief is "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim. <u>Id.</u> The plaintiff's factual allegations, in short, must show that the plaintiff's claim is "plausible," not merely "conceivable." <u>Id.</u> at 1951.

A district court, in applying this standard, must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." <u>Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.</u>,

191 F.3d 198, 202 (2d Cir. 1999); <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 249, 109 S. Ct. 2893, 2906, 106 L. Ed. 2d 195 (1989).

Under Rule 8 of the Federal Rules of Civil Procedure, a claimant is only required to give "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957); <u>Twombly</u>, 550 U.S. 544; <u>see</u> <u>also</u> <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 640 (2d Cir. 1980) ("The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure."). Therefore, this Court, when addressing a motion on the pleadings, only has a duty to "assess the feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Geisler</u>, 616 F.2d at 639. It is within this framework that the Court addresses the present motion to dismiss.

II. <u>Heck v. Humphrey</u>

    A. <u>Rule Against Undermining Convictions in Parallel Court Proceedings</u>

When a claim for damages under § 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. <u>Heck v. Humphrey</u>, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The Supreme Court has enumerated only four methods of demonstrating that a conviction has been invalidated: (1) the

conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid.  Id. at 486-87.  In this case, Plaintiffs cannot maintain that their convictions were invalidated by any of the first three methods.  Thus, under Heck, the only question before this Court is whether the Plaintiffs' vacated convictions or the subsequent dismissal of the charges against them constitutes an invalidation of their convictions; if the convictions have not been invalidated, then Plaintiffs may not maintain any action in this case that collaterally attack their convictions.

B.  Motion Pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g) and the District Attorney's Dismissal of the Indictments do not Invalidate the Convictions Under New York Law

Plaintiffs' convictions were vacated upon motion by the District Attorney pursuant to New York Criminal Procedure Law § 440.10.  Section 440.10 provides in relevant part:

> 1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: . . .
>
> > (g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant;

14

> provided that a motion based upon
> such ground must be made with due
> diligence after the discovery of
> such alleged new evidence . . . .

N.Y. Crim. Proc. Law § 440.10(1)(g) (McKinney 2007). In interpreting this section, the New York State Court of Appeals has stated that, on "motion to vacate judgment upon the ground of newly discovered evidence[,] the validity of the judgment is not attacked, only the likelihood of a similar verdict being rendered if there were an enlargement of the evidence on the principle issue." New York v. Crimmins, 343 N.E.2d 719, 728, 38 N.Y.2d 407, 381 N.Y.S.2d 1 (1975).[8] Thus, the 2003 vacation of the Plaintiffs' conviction does not demonstrate the conviction's "unlawfulness" under New York State law. A vacated conviction simply reverses the

---

[8] This statute would appear to stand in sharp contrast to similar provisions in the Federal system. For example, under Rule 33 of the Federal Rules of Criminal Procedure, the defendant bears the burden of proving that he is entitled to a new trial and before ordering a new trial pursuant to Rule 33, a district court must find that there is "a real concern that an innocent person may have been convicted." United States v. McCourty, 562 F.3d 458, 475-76 (2d Cir. 2009) (citing United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001)). Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, "'[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. (quoting Sanchez, 969 F.2d at 1414). So, whereas the grant of a Rule 33 motion may call into question a defendant's guilt, the grant of a motion pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g) does not necessarily have this significance. In this case, however, the sentences were vacated because the newly discovered evidence tended to show the actual innocence of Retivo, Halstead, and Kogut, similar to the Rule 33 context.

prior ruling because newly acquired evidence, unavailable to the Plaintiffs, may have reasonably affected the outcome in their 1986 trial.

Whether the Plaintiffs' vacated convictions were invalidated for purposes of <u>Heck</u> may be a different matter. The New York State Court of Appeals' interpretation of New York law does not bind a federal court in its interpretation of the United States Constitution or federal case law. Perhaps, under an alternative reading of <u>Heck</u>, and given the nature of the evidence that lead to the vacation of Plaintiffs' convictions, a court could find <u>Heck</u>'s requirements satisfied. In light of its duty to interpret the exceptions to <u>Heck</u> narrowly, however, this Court concludes that the motion to vacate did not invalidate Plaintiffs' convictions.

C.   <u>Plaintiffs' Malicious Prosecution Under 42 U.S.C. § 1983 and New York Law</u>

Having determined that the convictions were not invalidated by the motion to vacate the convictions, the dismissal of the Indictments, or Kogut's acquittal, the Court finds that it must dismiss all claims asserted by the Plaintiffs that would <u>necessarily</u> undermine Restivo's, Halstead's, and Kogut's convictions.

1.   <u>Elements of Malicious Prosecution Claims</u>

The requisite elements for a malicious prosecution claim under Section 1983 are the same as those to prove such a claim

16

brought under New York law.  See Cook v. Sheldon, 41 F.3d 73, 79
(2d Cir. 1994).  Therefore, the analysis of the state and the
federal claims is identical.  To succeed on a claim for malicious
prosecution under Section 1983 the Plaintiffs bear the heavy burden
to prove: (1) Defendants initiated a criminal proceeding against
them, (2) Defendants lacked probable cause to believe that the
proceeding could succeed, (3) the criminal proceeding was
instituted in malice, and (4) the criminal proceeding terminated in
Plaintiffs' favor.  Id.; see also Boyd v. New York, 336 F.3d 72, 75
(2d Cir. 2003).

### 2.    Claims Relating to Plaintiffs' First Trials

Thus, by definition, Plaintiffs' claims for malicious
prosecution with regard to Plaintiffs' First Trials call into
question the validity of the Plaintiffs' prior convictions.  Heck,
512 U.S. at 487.  Since the Plaintiffs in this case cannot
establish that their convictions in their first trials have been
invalidated, the Heck rule bars their claims for malicious
prosecution for Plaintiffs' First Trials.  Accordingly, Plaintiffs
claims for malicious prosecution under Section 1983 and under New
York law, based on Plaintiffs' First Trials are DISMISSED.

### 3.    Kogut's Claim for Malicious Prosecution for His Second Trial

Kogut's malicious prosecution claim with regard to his
second trial is a different matter.  Kogut bears the heavy burden
of proving: (1) Defendants initiated a criminal proceeding against

17

him, (2) Defendants lacked probable cause to believe that the proceeding could succeed, (3) the criminal proceeding was instituted in malice, and (4) the criminal proceeding terminated in Plaintiffs' favor. <u>Cook</u>, 41 F.3d at 79; <u>see</u> <u>Boyd v. New York</u>, 336 F.3d 72, 75 (2d Cir. 2003). The parties only seriously contest whether Kogut can establish elements two and three.

Unlike Plaintiffs' claims relating to Plaintiffs' First Trials, this malicious prosecution claim does not run afoul of <u>Heck</u>, because (1) it does not collaterally attack the first trial, and (2) whether the state had probable cause for the second trial is less clear. At the time of the second prosecution in 2005, there existed DNA evidence which, at minimum called into question Kogut's guilt. On the other hand, Defendants' claims that, by the time of the second trial, they had additional evidence that was not presented at trial, which was sufficient to retry Kogut. Nonetheless, this inquiry requires further discovery, and therefore, is not properly decided on a 12(c) motion. Thus, presuming all facts in Kogut's Complaint to be true, the Court finds that Kogut has alleged sufficient facts on all four elements and his malicious prosecution claim survives.

III. <u>Kogut's Confession and Collateral Estoppel</u>

Kogut's confession was perhaps the most significant piece of evidence offered by the County in Plaintiffs' First Trials. In the case now before the Court, Kogut's confession plays a similarly

pivotal and troubling, role. Defendants argue that the confession (1) was determined to be voluntary in prior state court proceedings, (2) established probable cause for Plaintiffs' arrests and prosecutions, (3) cannot be relitigated because of the doctrine of collateral estoppel, and (4) provides a defense against many of Plaintiffs' claims here. Plaintiffs, on the other hand, argue that collateral estoppel is inapplicable with regard to Kogut's confession, because, in light of the recently discovered evidence, Plaintiffs did not have a full and fair opportunity to litigate the issue of the voluntariness of the confession.

A. Collateral Estoppel Under New York Law

In applying the doctrine of issue preclusion "federal court[s] must . . . [utilize] the collateral estoppel rules of the state which rendered the judgment." Owens v. Treder, 873 F.2d 604, 607 (2d Cir. 1989). Accordingly, this Court must apply New York law to determine the preclusive effect of the prior state criminal judgment. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 95-96, S. Ct. 411, 66 L. Ed. 2d 308 (1980).

In New York, to invoke the doctrine of issue preclusion, a plaintiff must prove: "First . . . that the identical issue was necessarily decided in the prior action and is decisive in the present action[, and] [s]econd, [that] the party to be precluded from relitigating an issue . . . had a full and fair opportunity to

19

contest the prior determination." D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 564 N.E.2d 634, 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24 (1990) (citing Kaufman v. Lilly & Co., 482 N.E.2d 63, 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584 (1985)); see also Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000). When a court makes a "final judgment, and the determination is essential to the judgment, the determination is conclusive." Restatement (Second) of Judgments § 27 (1980) (emphasis added); see also Owens v. Treder, 873 F.2d at 607.

In Owens, the Second Circuit clearly articulated the application of the first part of the test. Owens involved a Plaintiff who brought a Section 1983 action alleging that his prior confession was false and had been coerced due to police brutality. Owens, 873 F.2d at 605. Defendants moved for summary judgment arguing that the issue of the voluntariness of Plaintiff's confession was precluded since it had been litigated at Plaintiff's prior criminal trial and affirmed on appeal. Id. at 606. The District Court held that since the Appellate Division, Second Department, in affirming Plaintiff's conviction, failed to make a special finding on the issue of the voluntariness of the confession, the issue was not precluded. Id. at 612. However, the Court emphasized that "[h]ad [the Appellate Division] specifically addressed the suppression issue, we would have no problem in determining that collateral estoppel would apply." Id. at 610-11

(noting that collateral estoppel did not apply to the issue of the voluntariness of the confession because the Appellate Division's decision was ambiguous and "federal district and appellate courts should not attempt to divine the unspoken intent of state courts rendering ambiguous decisions").

B.   Collateral Estoppel Prevents Only Kogut from Relitigating the Issue of the Voluntariness of His Confession

1.   The Identical Issue was Necessarily Decided in the Prior Action

In this case, the Appellate Division, Second Department, made a specific finding that the "totality of the defendant's statements were [voluntarily] made . . . ." New York v. Kogut, 176 A.D.2d 757, 757-58, 575 N.Y.S.2d 96 (App. Div. 1991). Owens made clear that an unambiguous Appellate Division ruling that the trial court properly refused to admit a confession after a suppression hearing "would have barred relitigation of the coercion issue in th[e] § 1983 action." Id. at 611. Furthermore, contrary to the Plaintiffs' contention, the Appellate Division's judgment cannot be invalidated by Kogut's subsequent acquittal. It is true that "a vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation." Boston Firefighters Union v. Boston Police Patrolmen's Ass'n, 468 U.S. 1206, 1211, 104 S. Ct. 3576, 82 L. Ed. 2d 874 (1984). However, pursuant to N.Y. Crim. Proc. Law § 440.10(1) a trial court may vacate only its own judgments; therefore, the vacation of Kogut's conviction has no affect on the

Appellate Division's ruling with regard to the voluntariness of his confession.   Therefore, provided that the second element of collateral estoppel is fulfilled, the Appellate Division's final judgment barred all future litigation on that issue.

2.   <u>Kogut had a Full and Fair Opportunity to Litigate the Issue, but Restivo and Halstead did not</u>.

The second element of collateral estoppel requires Defendants to show that Plaintiffs had a "full and fair opportunity" to litigate the issue.   <u>Schwartz v. Pub. Adm'r of Bronx,</u> 246 N.E.2d 725, 729, 24 N.Y.2d 65, 71,, 298 N.Y.S.2d 955 (1969); <u>Buechel v. Bain</u>, 97 N.Y.2d 295, 303, 766 N.E.2d 914, 740 N.Y.S.2d 252 (2001), <u>Gilberg v. Barbieri</u>, 53 N.Y.2d 285, 291, 423 N.E.2d 807, 441 N.Y.S.2d 49 (1981).   To determine whether the element has been satisfied, New York courts look at a variety of factors, including "the incentive and initiative to litigate . . . the actual extent of the litigation, the competence and expertise of his counsel, the availability of new evidence, differences in applicable law and the foreseeability of future litigation." <u>Choi v. State</u>, 74 N.Y.2d 933, 936, 549 N.E.2d 469, 550 N.Y.S.2d 267 (1989); <u>see</u> <u>also</u> <u>Ryan v. N.Y. Tel. Co.</u>, 62 N.Y.2d 494, 501 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984); <u>Gilberg</u>, 53 N.Y.2d at 292. New York courts have agreed that "significant new evidence, which would almost certainly change the earlier result" is one of the factors to consider when determining if a party had a full and fair opportunity to litigate the issue.   <u>Schwartz</u>, 24 N.Y.2d at 72.

22

From this Court's examination of the record thus far, it appears that most of the factors weigh heavily in favor of applying issue preclusion on the voluntariness issue.[9] Plaintiffs certainly had the incentive and initiative to litigate in the underlying state proceedings, as they were on trial for some of the most serious crimes imaginable. The investigations and litigations were extensive, there have been no significant differences in applicable law that would change the outcome of the cases, and the Plaintiffs could easily foresee future litigation. However, the availability of new evidence is a different matter, and it also weighs heavily on the Court's decision.

After the Appellate Division rendered its determination that Kogut's confession was voluntary, new evidence was uncovered demonstrating that Restivo, Halstead, and Kogut could not have raped the victim. Additionally, the Court must presume to be true all other facts asserted in Kogut's Complaint and Restivo & Halstead's Complaint. Thus, the Court must presume that "the [victim's] hairs in question could not have been left in the van by the decedent at the time the crime allegedly took place." (Kogut Compl. ¶ 72.) Notwithstanding this new evidence, however, the Court is bound by Judge Ort's decision in New York v. Kogut, No.

---

[9] The Court cannot weigh the expertise of counsel in its decision, as it lacks information about the expertise of counsel in those prior cases as compared to the expertise of counsel here.

61029-85, 800 N.Y.S.2d 353, at *3 (Sup. Ct. Dec. 01, 2004).

In his December 2004 decision, Judge Ort found that the new evidence did not contradict the voluntariness of Kogut's confession: "While the newly discovered scientific evidence tends to rebut the alleged motive for committing the crime and discredits the forensic evidence connecting defendants to the murder, it does not bear on the voluntariness of defendant's confession." Id. at *3. Based on that decision, the Court concludes that Kogut had a full and fair opportunity to litigate the issue in New York Supreme Court in 2004. Unlike Kogut, however, Restivo and Halstead never had the opportunity to litigate the voluntariness question in light of the newly discovered DNA evidence because they were not a part of Kogut's second trial. Although the availability of new evidence is only one factor in determining whether Plaintiffs had a full and fair opportunity to litigate the issue, the nature of the new evidence here makes this factor determinative in this case.

Accordingly, Defendants have demonstrated that Kogut had a full and fair opportunity to litigate the issue of the voluntariness of the confession, but failed to demonstrate that Restivo and Halstead had such opportunity; therefore, Kogut may not contest that issue here.

IV. <u>Plaintiffs' Claims of False Arrest and False Imprisonment</u>

    A.   <u>Elements of the Claims</u>

To prevail on a claim of false imprisonment, a plaintiff

must demonstrate four elements: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Curry v. Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (citing Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996)). Similarly, in a claim of false arrest a plaintiff must demonstrate that her arrest was unlawful. See Zeliner v. Summerlin, 494 F.3d 344, 360 (2d Cir. 2007) (analyzing the lower court's jury instruction). However, the existence of probable cause at the time of arrest constitutes a complete defense. Jenkins v. New York, 478 F.3d 76, 84 (2007). Therefore, a "plaintiff will [only] prevail on a claim . . . if he can show that the arrest was . . . not based on probable cause. Id. (referring to Broughton v. New York, 335 N.E.2d 310, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87 (N.Y. 1975)).

In analyzing these claims it is important to note that they are interconnected. Wallace, 549 U.S. at 388. "False arrest is simply false imprisonment accomplished by the means of an unlawful arrest." Jenkins, 478 F.3d at 88 n.10. Considering this connection, the Court collectively discusses these claims.

B.    Heck's Application to False Arrest and False Imprisonment Claims

In Heck, the Supreme Court was concerned not with a false arrest or false imprisonment claims, but rather with a claim "close[ly] analog[ous]" to the "common-law cause of action for

malicious prosecution . . . ." 512 U.S. at 484. As stated earlier, under New York law, malicious prosecution claims can only survive Heck if the prior proceedings terminated in the plaintiff's favor. See, e.g., Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997), cert. denied, 522 U.S. 1115, 118 S. Ct. 1051, 140 L. Ed. 2d 114 (1998); Broughton v. New York, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, cert. denied, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975). The Heck Court noted a distinction between claims of malicious prosecution and claims of false arrest. See Heck at 484, 114 S. Ct. 2364 ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. If there is a false-arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." (internal quotation marks omitted)). But, "if a person were validly convicted of the crime for which he was arrested, he would be barred from bringing a claim for false arrest because one element of such a claim is the absence of probable cause," Vallen v. Connelly, 36 Fed. Appx. 29, 31 (2d Cir. 2002) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 114, 118-19 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996)); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994),

"and a valid conviction establishes the existence of probable cause
. . . ." Vallen, 36 Fed. Appx. at 31 (citing, for example, Cameron
v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986), cert. denied, 481
U.S. 1016, 107 S. Ct. 1894, 95 L. Ed. 2d 501 (1987); see also Lewis
v. Donahue, 241 Fed. Appx. 776, 777 (2d Cir. 2007).

In this case, according to a narrow reading of Heck,
there remains a valid conviction that establishes the existence of
probable cause. Therefore, the Plaintiffs' claims for false arrest
and false imprisonment are DISMISSED.

V.  Plaintiffs' Claims of Due Process Violations Based on
    Falsified Evidence and Falsified Documents

The Plaintiffs allege that the Defendants committed the
following acts with regards to falsified evidence: (1) coerced
confessions/statements from Kogut, Restivo, and other witnesses;
(2) planted Fusco's hair with other hairs found in Restivo's van;
and (3) withheld material exculpatory evidence from the
prosecution. (Restivo & Halstead Am. Compl. ¶¶ 138-40.)

Claims of falsified evidence only constitute a cause of
action under Section 1983 when the falsified evidence results in a
deprivation without due process of law in violation of the Fifth
Amendment. Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000). In
order to establish a claim for falsified evidence a plaintiff must
demonstrate the following: (1) that defendant utilized misconduct
in order to procure false evidence; (2) that the plaintiff suffered
a deprivation of liberty; and (3) that the "deprivation of liberty

27

may be considered a legally cognizable result of the initial misconduct." Id. at 348. This causation requirement is consistent with Supreme Court precedent, which establishes "that section 1983 claims 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Id. at 349-50 (citing Malley v. Briggs, 475 U.S. 335, 344-45 n.7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

With regard to the first prong, the trial court's holding that Kogut's confession was voluntary constitutes a final judgment; therefore, collateral estoppel bars Plaintiffs from relitigating the issue. Thus, the confession cannot be considered "false evidence." Despite this restriction, however, Plaintiffs allege sufficient additional facts in the Complaints to satisfy the first prong. Similarly, assuming these alleged facts to be true, Plaintiffs easily satisfy the second and third prongs. Nevertheless, Plaintiffs' claims fail for another reason.

To determine the applicable statue of limitations, a federal court must look "to the law of the state in which the cause of action arose." Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007). The time at which accrual begins, however, "is a question of federal law that is not resolved by reference to state law." Id. at 388. In the present action, the parties correctly agree that, in New York, the general statute of limitations for personal injury claims is three years. See

N.Y.C.P.L.R. § 214(5). Thus, the only issue presented is when accrual began.

When state law is not directly on point, Section 1983 actions "are governed by federal rules conforming in general to common-law tort principles." <u>Wallace</u>, 549 U.S. at 388 (citing <u>Heck</u>, 512 U.S. at 483). Thus, utilizing this standard, a claim's statute of limitations begins to accrue "when the plaintiff has 'a complete and present cause of action.'" <u>Id.</u> (citing <u>Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferber Corp. of Cal.</u>, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1941)). Because claims of falsified evidence constitute a cause of action under Section 1983 only when the falsified evidence results in a deprivation without due process of law, <u>Zahrey</u>, 221 F.3d at 349, they become "complete and present" after the underlying deprivation is terminated. <u>See Wallace</u>, 549 U.S. at 388. Thus, the accrual date for the Plaintiffs' cause of action began on June 11, 2003; the day their convictions were vacated and they were released.

Plaintiffs' claim that the proper date for accrual is December 29, 2005, the day their Indictments were dismissed. But the Supreme Court expressly denied the extension of the <u>Heck</u> accrual rule to "an action which would impugn an <u>anticipated</u> <u>future</u> <u>conviction</u>." <u>Wallace</u>, 549 U.S. at 393 (emphasis in original). The Court's refusal to extend the <u>Heck</u> accrual rule was premised on the impracticality and speculative nature of applying this rule towards

future convictions.  See Id.  In other words, Restivo, Halstead, and Kogut could have only suffered a deprivation of due process until they were released from prison.  They had no claim for a deprivation beyond that release date; therefore, the statute of limitations had already started running well before their Indictments were dismissed.

In the present case, the Plaintiffs had a complete and present cause of action for falsified evidence when their convictions were vacated on June 11, 2003.  Since Plaintiffs' Complaint was not filed until December 21, 2006, the claims of falsified evidence are time-barred.  Additionally, because Plaintiffs only allege facts against Defendant Milton Gruber ("Gruber") relating to the time-barred claims of falsification of evidence, all claims against Gruber are DISMISSED.

VI.  Plaintiff's Conspiracy Claim under Section 1983

In order to succeed on a conspiracy claim under Section 1983, Plaintiff must allege "(1) an agreement between two or more state actors, or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d. Cir. 1999); see also Ciambrello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Carson v. Lewis, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999). In addition, a plaintiff's complaint must allege facts that

30

plausibly suggest a "meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (quoting Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)); see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Dismissal is proper if the complaint "contain[s] only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights." Ciambrello, 292 F.3d at 325 (citation omitted). Finally, a "violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Romer, 119 F. Supp. 2d at 363 (citing Malsh v. Austin, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). If a "plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." Id.

Plaintiffs Restivo and Halstead adequately plead allegations concerning conspiracy with the "requisite specificity." Pangburn, 200 F.3d at 72 (citation omitted). In fact, Plaintiffs allege, in detail, how the Defendants conspired among each other and with others outside the NCPD to fabricate the circumstances of their arrests, their detention, and how the Defendants allegedly lied at their subsequent prosecutions. On the other hand, Kogut fails to adequately plead allegations concerning the conspiracy. In the first conspiracy claim, Kogut alleges that only members of

the NCPD participated in the conspiracy.  In the second conspiracy claim, he alleges that members of the NCPD and County policymakers cooperated in a conspiracy to deprive homicide suspects of their Constitutional rights.  Unfortunately, without additional facts, Kogut's conspiracy claims amount to nothing more than vague, unsubstantiated allegations.  Moreover, they fail because of the intra-corporate conspiracy doctrine.

The intra-corporate conspiracy "doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Rodriguez v. New York, No. 05-CV-5117, 2008 U.S. Dist. LEXIS 9966, at *83 (E.D.N.Y. Feb. 11, 2008).  "Likewise, under the doctrine, 'a corporation generally cannot conspire with its employees or agents as all are considered a single entity.'" Everson v. N.Y.C. Transit Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (quoting Rini v. Zwirn, 886 F. Supp. 270, 291 (E.D.N.Y. 1995) (citations omitted)).  "Although the doctrine had its genesis in cases involving corporations," numerous courts within the Circuit have applied the doctrine to public entities. See Id.; Silverman v. New York; 98-CV-6277, 2001 U.S. Dist. LEXIS 22537, at *13 (E.D.N.Y. Nov 19, 2001); Huntemann v. City of Yonkers, No. 95-CV-1276, 1997 WL 527880, at *14 (S.D.N.Y. Aug. 25, 1997); Rini, 886 F. Supp. at 292 (collecting cases); Wintz v. Port Auth. of N.Y. & N.J., 551 F. Supp. 1323, 1325 (S.D.N.Y.

1982).

        In this case, Kogut's conspiracy claims fail because, in his first claim he asserts a conspiracy only between actors of the same municipal entity, and that is legally insufficient to sustain a conspiracy claim under the intra-corporate conspiracy doctrine. See Everson, 216 F. Supp. 2d at 76.  In his second claim for conspiracy, Kogut generally accuses County policymakers, along with members of NCPD, of engaging in conduct that deprived homicide suspects of their Constitutional rights.  Such vague allegations will not suffice to defeat the intra-corporate conspiracy doctrine requirements.  For these reasons, Kogut's claims of conspiracy are DISMISSED.  In contrast, Restivo's and Halstead's conspiracy claims survive.  The Amended Complaint sufficiently alleges involvement by individuals not within the NCPD; these individuals, referred to as jailhouse informants and snitches, while not specifically named, are alleged to have given false evidence against Restivo and Halstead in exchange for more lenient sentences and other benefits. Thus, according to the Amended Complaint, these snitches, motivated to gain some advantage while incarcerated, willingly participated in the alleged conspiracy.  Nevertheless, the Court's determination on this claim is a close call; if Plaintiffs fail to put forward additional evidence of involvement by these other individuals outside the NCPD, this claim may be dismissed on summary judgment.

VII.  Monell-based Claims

To prevail against a municipality in a Section 1983 action, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right.  See Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008); Zahra v. Southold, 48 F.3d 674, 685 (2d Cir. 1995); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977).  "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  Monell, 436 U.S. at 690-91 (citations omitted).  A plaintiff also has the burden of showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983."  Springfield v. Kibbe, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119, 94 L. Ed. 2d 293 (1987) (O'Connor, J., dissenting).

Even assuming arguendo that Plaintiffs can establish an underlying constitutional violation, Plaintiffs still fail to prove the necessary elements of a Section 1983 claim against a

municipality.  As a basis for their <u>Monell</u> claims, Plaintiffs offer evidence that (1) the County has settled cases with prior criminal defendants, and (2) some of these defendants were later exonerated of their crimes.  Without more evidence showing that these other defendants were convicted because of County policies or customs, the Court must reject these claims.

Accordingly, Plaintiffs' <u>Monell</u> claims are DISMISSED.

VIII.  <u>Halstead's Children's Claims for Loss of Familial Association</u>

At least in some circumstances, the Constitution protects familial relationships from unwarranted government interference. <u>Patel v. Searles</u>, 305 F.3d 130, 135 (2d Cir. 2002).  "This protection derives, in part, from a broader constitutional right to association." <u>Id.</u> (citing <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).  Plaintiffs cite only one case, <u>Patel</u>, in support of their claim.

In <u>Patel</u>, the Second Circuit expanded on prior Supreme Court precedent, which addressed the right to association in two forms: freedom of expressive association and freedom of intimate association.  <u>Patel</u> involved the latter right, or the freedom of intimate association, which is a "fundamental element of personal liberty." <u>Id.</u> (citing <u>Roberts</u>, 468 U.S. at 618).  Pursuant to this right, in limited circumstances, courts afford "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." <u>Id.</u>  The lead plaintiff, Jatin Patel,

had been suspected of killing his mother and sister. After two months of police work, however, defendants, the chief of police and a detective assigned to the case, grew frustrated by the lack of progress. Subsequently, defendants focused the criminal inquiry on plaintiff. In hopes that they could acquire new evidence against plaintiff, defendants began what can be referred to only as a campaign to cause animosity in plaintiff's family. Among other things, the officers falsely told plaintiff's family members that he led a double life and created fake confession letters, which they later disseminated to two daily newspapers and plaintiff's father. Id. at 134. As a result, plaintiff was completely ostracized from his family, and his father and siblings refused to have any contact with him whatsoever.

In the case now before the Court, Plaintiffs analogize the actions of Defendants to those defendants in Patel. Although Plaintiffs' allegations are serious in nature, it is clear that Defendants did not direct any "shocking, arbitrary, or egregious" conduct toward Halstead's Children. See Anthony v. City of New York, 339 F.3d 129, 143 (2d Cir. 2003). Thus, unlike in Patel, in this case, any actions by Defendants, whether alleged to be intentional or otherwise, were directed exclusively at Kogut, Restivo, and Halstead. In rejecting Halstead's Children's claims, the Court believes it is consistently applying Supreme Court precedent:

> the Constitution does not guarantee due care
> on the part of state officials; liability for
> negligently inflicted harm is categorically
> beneath the threshold of constitutional due
> process. It is, on the contrary, behavior at
> the other end of the culpability spectrum that
> would most probably support a substantive due
> process claim; conduct intended to injure in
> some way unjustifiable by any government
> interest is the sort of official action most
> likely to rise to the conscience-shocking
> level.

County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S. Ct. 1708,
1718, 140 L. Ed. 2d 1043 (1998) (internal citations and quotation
marks omitted).

Accordingly, the Court DISMISSES Halstead's Children's
claims for loss of familial association.

IX. Plaintiffs' Remaining State Law Claims

In addition to those previously discussed, Kogut,
Restivo, and Halstead allege several state tort claims, including
negligent infliction of emotional distress, and negligent
supervision,[10] and further allege County liability under respondeat
superior. Additionally, Kogut alleges battery. Finally, Restivo
and Halstead allege intentional or reckless infliction of emotional
distress. Without addressing the merits of each of these claims,

---

[10] In deciding the negligent supervision claims, the Court
notes that Restivo & Halstead's Amended Complaint lists an
additional count, Count V, asserting "Supervisory Liability"
under Section 1983. Subsequently, neither Plaintiffs nor
Defendants advocate, for or against, this purported claim.
Accordingly, the Court construes this portion of the Amended
Complaint as support for Plaintiffs' negligent supervision
claims.

Defendants maintain that each and every tort claim fails because Plaintiffs failed to serve a notice of claim on the County within the statutory period set forth in New York General Municipal Law § 50-e. For the following reasons, the Court agrees.

Subsection 50-I of New York General Municipal Law provides:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

N.Y. Gen. Mun. Law § 50-i (2007). Section 50-e states, in part:

> 1. When service required; time for service; upon whom service required.
>
> > (a) In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the

38

> provisions of this section within
> ninety days after the claim arises;
> except that in wrongful death
> actions, the ninety days shall run
> from the appointment of a
> representative of the decedent's
> estate.

N.Y. Gen. Mun. Law § 50-e (2007). Thus, as an initial matter, the Plaintiffs were required to serve a notice of claim on the County within ninety days after their claims arose. With regard to the battery claim, Kogut alleges that Dempsey committed battery during his interrogation. (Kogut Compl. ¶ 135.) Kogut's interrogation occurred on March 25th and 26th of 1985. (Id. ¶ 56.) As to the other tort claims, Plaintiffs allege that "defendants' extreme and outrageous conduct . . . did not end in the mid-80s when plaintiffs were wrongfully convicted. Rather, defendants continuously and repeatedly misled the Nassau County District Attorneys throughout 2005 . . . ." (Restivo & Halstead's Mem. in Opp'n 17-18.) In his Complaint, Kogut states that he served his notice of claim on the County on or about March 17, 2006. (Kogut Compl. ¶ 131.) Restivo and Halstead state that they served a notice of claim on March 20, 2006. (Restivo & Halstead Am. Compl. ¶ 8.)

In examining Kogut's battery claim first, it is clear that March 17, 2006 is well beyond ninety days from the last date of his interrogation on March 26, 1985. Accordingly, his battery claim is barred. With regard to the other torts alleged by Kogut, section 50-e required service of a notice of claim, at the latest,

within ninety days of December 17, 2005 (Kogut's acquittal in the second trial).  Thus section 50-e was satisfied for the claims for intentional and negligent infliction of emotional distress and negligent supervision.  Although Restivo and Halstead similarly allege that they satisfied the notice of claim service deadline, their bald assertions that Defendants' tortious actions continued until the end of 2005 cannot be substantiated because they cannot show any harm between when they were released from prison on June 11, 2003 and the time that the charges against them were dismissed on December 20, 2005.  At a minimum, Restivo and Halstead should have filed their notice of claims within ninety days of June 11, 2003.  Thus, their state law claims are DISMISSED.

Under New York law, it is well settled that the "'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.'"  Jason v. Krey, 2009 WL 614961, at *1 (App. Div. Mar. 10, 2009) (quoting Creed v. United Hosp., 190 A.D.2d 489, 491, 600 N.Y.S.2d 151 (App. Div. 1993)); see e.g., Friedman v. Meyer, 90 A.D.2d 511, 512, 454 N.Y.S.2d 909 (App. Div. 1992), appeal dismissed 59 N.Y.2d 763 ("plaintiff['s] wife may not recover for emotional and psychic harm as a result of [a] stillborn

birth"). In this case, Kogut fails to allege any physical injury that accompanied his emotional distress. Therefore, Kogut's claims for negligent infliction of emotional distress fail as well.

Finally, Kogut alleges negligent supervision. Having satisfied the requirements of section 50-e, and having alleged sufficient facts to establish, for purposes of the current motion, negligent supervision on behalf of the Defendants, Kogut's negligent supervision claim survives. Similarly, his respondeat superior claim against the County survives.

Accordingly, Plaintiffs' state law tort claims arising under the theories of negligent infliction of emotional distress, intentional or reckless infliction of emotional distress, and battery are DISMISSED. Because the theory of respondeat superior is not a stand-alone cause of action, but rather a claim that requires a finding of an underlying wrong committed by County employees, Restivo's and Halstead's respondat superior claims are also DISMISSED. Kogut's claims for negligent supervision and respondeat superior, however, still survive.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court DISMISSES the following claims: (1) Plaintiffs' claims for malicious prosecution, based on Section 1983 and New York law, relating to Plaintiffs' First Trials; (2) Plaintiffs' false arrest and false imprisonment

claims, based on Section 1983 and New York law; (3) Plaintiffs' claims of due process violations based on Defendants' alleged offering of false evidence; (4) Kogut's conspiracy claim; (5) Plaintiffs' Monell claims; (6) Halstead's Children's loss of familial association claims; (7) Kogut's battery claim; (8) Restivo's and Halstead's claims for failure to intercede; (9) Restivo's and Halstead's claims for intentional or reckless infliction of emotional distress; (10) Plaintiffs' claims for negligent infliction of emotional distress; (11) Restivo's and Halstead's negligent supervision claims; and (12) Restivo's and Halstead's respondeat superior claims. The Court permits the following claims to continue forward: (1) Kogut's malicious prosecution claim relating to his second trial, his negligent supervision claim, and a claim based on respondeat superior; and (2) Restivo's and Halstead's conspiracy claims.

Furthermore, all claims against Gruber are DISMISSED. Finally, Plaintiffs fail to allege sufficient facts to state a claim against Kane, Willett, Kozier, and Donnelly. Accordingly, Gruber, Kane, Willett, Kozier, and Donnelly are DISMISSED. The Clerk of the Court is directed to update the docket accordingly.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    August _3_, 2009
          Central Islip, New York