# Exhibit B

FILED
U S DISTRICT COURT E.D N.Y

★   JUL 11 2003   ★

7/24/03
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SHONNARD LEE,

        Plaintiff,

  - against -

NASSAU COUNTY, DETECTIVE ROBERT DEMPSEY
and NASSAU COUNTY POLICE COMMISSIONER
DONALD KANE,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM AND ORDER
00-CV-881 (JS)(WDW)

Appearances:
For Plaintiff:        Anthony M. Grandinette, Esq.
                      Grandinette & Serio, LLP
                      114 Old Country Road
                      Mineola, New York 11501

For Defendant:        Paul F. Millus
                      Snitow Kanfer Holtzer & Millus, LLP
                      575 Lexington Avenue
                      New York, New York 10022

SEYBERT, District Judge:

        Plaintiff, Shonnard Lee ("Plaintiff"), instituted this
action on February 11, 2000, seeking a declaratory judgment
specifying that the Defendants, Nassau County, Detective Robert
Dempsey ("Dempsey"), and Nassau County Police Commissioner Donald
Kane ("Kane"), (collectively "Defendants"), violated his First,
Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, as
well as engaged in a pattern of civil rights violations.  On
May 25, 2001, Plaintiff moved to amend his original complaint.  On
July 20, 2001, the Honorable William D. Wall, United States
Magistrate Judge, issued an order permitting Plaintiff to amend his

1

complaint to include claims under 42 U.S.C. §§ 1983 and 1981, as well as under the doctrine of respondeat superior. On October 18, 2001, Defendants filed an answer to the Amended Complaint denying all allegations. Pending before the Court is Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

BACKGROUND

Plaintiff is a New York resident. Nassau County is a municipal corporation located in the State of New York. Defs. 56.1 Statement ¶ 2. Dempsey is a retired detective with the Nassau County Police Department. Defs. 56.1 Statement ¶ 3. At the time of his retirement, Dempsey had been a member of the Nassau County Police Department for approximately forty years, and had been a detective class officer of the Department for approximately thirty years. Defs. 56.1 Statement ¶ 10. Kane is the former Commissioner of the Nassau County Police Department. Defs. 56.1 Statement ¶ 4. Kane is not alleged to have been involved in any aspect of Plaintiff's arrest, interrogation and/or prosecution. Defs. 56.1 Statement ¶ 4.

On February 21, 1997, Sammy Jones died of injuries resulting from an assault which occurred on February 10, 1997, at approximately 7:00 p.m. Pl. 56.1 Statement ¶ 1; Defs. 56.1 Statement ¶ 8. Dempsey was assigned as the carrying detective to investigate the homicide. Pl. 56.1 Statement ¶ 2; Defs. 56.1 Statement ¶ 9. Dempsey was advised by Freeport, New York police of

2

Statement ¶ 30; Defs. 56.1 Statement ¶ 22. Plaintiff contends that this information does not constitute motive and that many people possessed the motive to kill Sammy Jones. Pl. 56.1 Statement ¶ 36. When shown a photograph of the car parked outside the Lee household, Williams identified it as consistent with the car she had seen at the crime scene. Defs. 56.1 Statement ¶ 23. Dempsey then interviewed Lamont Jefferson, a friend of Sammy Jones who had assisted him in burglarizing the Lee residence.   Defs. 56.1 Statement ¶ 25.  Jefferson stated that Plaintiff had assaulted another person whom he initially suspected was responsible for the burglary.  Defs. 56.1 Statement ¶ 25.  Dempsey also interviewed Jeffrey Bourne, a friend of the victim. Defs. 56.1 Statement ¶ 28. Bourne informed the detective that Plaintiff had told him that he had beaten the victim with an aluminum baseball bat in retaliation for burglarizing his home. Defs. 56.1 Statement ¶ 28.

On February 28, 1997, Ragan Martin ("Martin") was arrested for selling drugs. Pl. 56.1 Statement ¶ 37; Defs. 56.1 Statement ¶ 30.  Martin told the police that he had information regarding the homicide of Sammy Jones. Pl. 56.1 Statement ¶ 37; Defs. 56.1 Statement ¶ 30. Martin described observing three black males, all of whom were wearing dark clothing except for one who was wearing a 3/4 length tan coat, whom he identified as Corey "Sha" Jones. Pl. 56.1 Statement ¶ 38. He also claimed to have seen Corey Jones strike the victim with an aluminum baseball bat. Pl. 56.1 Statement ¶ 38; Defs. 56.1 Statement ¶ 31. After Martin

4

a witness named Henrietta Williams ("Williams") whose house was close to the scene of the assault. Pl. 56.1 Statement ¶ 5; Defs. 56.1 Statement ¶ 13. Williams did not witness the actual assault, but signed a statement in which she described seeing "3-4 black males . . . all wearing dark clothes except for one male who appeared to be wearing a camel colored 3/4 coat." Pl. 56.1 Statement ¶ 16; Defs. 56.1 Statement ¶ 15. Williams also stated that she saw a car that was blue or black and had a loud muffler with a square rear end. Pl. 56.1 Statement ¶ 18; Defs. 56.1 Statement ¶ 15.

On February 13, 1997, Dempsey interviewed Sha-Ron Spells, a friend of the victim who was already in police custody for a drug sale. Spells claimed that Vaniqua Hall ("Hall") told him that she had learned from a third person that Plaintiff assaulted Sammy Jones in retaliation for burglarizing his home. Pl. 56.1 Statement ¶ 22; Defs. 56.1 Statement ¶ 20. On that same day, Dempsey interviewed Hall and she advised him that she did not know Sha-Ron Spells and had no information concerning the assault. Pl. 56.1 Statement ¶ 24. Dempsey then learned that Silas Lee, Plaintiff's brother, had filed a police report on February 3, 1997 stating that their house had been burglarized. Pl. 56.1 Statement ¶ 26; Defs. 56.1 Statement ¶ 21. Dempsey concluded that this burglary, along with the information gathered from his interviews with Williams and Spells, established a motive for the murder and consequently ordered photo surveillance of the Lee residence. Pl. 56.1

3

was given a lie detector test, the police determined that he was telling the truth.   Pl. 56.1 Statement ¶ 39.   Martin then participated in a videotaped question and answer session, conducted by the Assistant District Attorney, in the presence of Detective Dempsey.   Pl. 56.1 Statement ¶ 43.   Plaintiff claims that the videotaped account was consistent with the written statement.   Pl. 56.1 Statement ¶ 44.   Defendants claim that Martin retracted his identification of Corey Jones on the videotape and stated that he based his initial identification solely on familiar clothing and cars.   Defs. 56.1 Statement ¶ 32.   Dempsey also later concluded that Martin could not have observed the assault from the location he had allegedly been standing because the distance was too great to make an accurate assessment.   Defs. 56.1 Statement ¶ 32. Therefore, the Defendants contend, Dempsey discounted Martin as a witness, concluding that he had fingered Corey Jones, a drug rival, for reasons connected with the drug trade.   Defs. 56.1 Statement ¶ 32.

On April 1, 1997, Dempsey interviewed Jermell Lawson ("Lawson"), who  was in custody, charged with unauthorized use of a motor vehicle.   Pl. 56.1 Statement ¶ 45.   Lawson claimed to have heard Tajuan Crum ("Crum") bragging about beating Sammy Jones.   Pl. 56.1 Statement ¶ 46.   He also alleged that his girlfriend, Winona Hammonds, had overheard an incriminating conversation between Crum and Plaintiff.   Pl. 56.1 Statement ¶ 48; Defs. 56.1 Statement ¶ 26. Despite claiming  to  have  heard  Crum  boasting,  Lawson  was

5

unsuccessful in securing a taped admission from Crum. Pl. 56.1 Statement ¶ 54. On June 13, 1997, Crum was arrested for the murder of Sammy Jones. Pl. 56.1 Statement ¶ 55. Crum was later released after providing an alibi for the period of time in which the assault took place. Defendants claim that Crum voluntarily told Dempsey that Plaintiff had admitted to the assault. Defs. 56.1 Statement ¶ 27. Plaintiff contends that Crum was manipulated into signing the statement implicating Plaintiff. Pl. 56.1 Statement ¶ 56.

On June 17, 1997, Plaintiff was arrested for the murder of Sammy Jones. Pl. 56.1 Statement ¶ 58; Defs. 56.1 Statement ¶ 33. Prior to his arrest for manslaughter, Plaintiff had been arrested at age fifteen for stealing, for which he pleaded guilty; at age sixteen for petit larceny, for which he pleaded guilty; at age seventeen for leaving the scene of an accident; and had pending felony charges for assaulting another student with a stun gun at his high school. Defs. 56.1 Statement ¶ 1. The facts of Plaintiff's incarceration and interrogation are in dispute. Plaintiff claims that he was never advised of his Miranda rights, was denied his right against self-incrimination and his right to counsel, was denied his repeated requests to contact his mother and was manipulated into signing various documents, including a confession and a rights card. Pl. 56.1 Statement ¶ 59. Defendants allege that Plaintiff was advised of his Miranda rights and voluntarily signed a waiver card before speaking to the detectives.

6

Defs. 56.1 Statement ¶ 35.

Defendants maintain that Plaintiff confessed orally and in writing to committing the assault and at no time requested to speak with an attorney. Defs. 56.1 Statement ¶ 36-37. Defendants further assert that Dempsey immediately ceased questioning Plaintiff upon learning that his mother had called. Defendants further assert that Plaintiff was informed that his mother had called and that he was offered the opportunity to call her, which he declined to do. Defs. 56.1 Statement ¶ 39. Plaintiff contends that his mother was not permitted to speak to him after he was taken into police custody, even after she had advised the police that her son had an attorney. Pl. 56.1 Statement ¶ 63-65. In addition, Plaintiff concedes that he was not hit, slapped, or punched during the investigation. Defs. 56.1 Statement ¶ 38. However, Plaintiff maintains that he was physically intimidated by Defendants. Pl. 56.1 Statement ¶ 62.

Plaintiff was arraigned on June 18, 1997 and was indicted by a Nassau County Grand Jury on August 28, 1997. Plaintiff alleges that at the time of his indictment, his defense attorney had not been informed of Martin's interview or the information Martin supplied to the police. Pl. 56.1 Statement ¶ 66. Plaintiff's motion to dismiss the indictment was granted by Justice Honorof, holding that a Brady violation had occurred as a result of this lack of disclosure. Pl. 56.1 Statement ¶ 68; Defs. 56.1 Statement ¶ 45. On October 1, 1998, the case was re-presented

7

before a different Grand Jury, which indicted Plaintiff a second time. Defs. 56.1 Statement ¶ 45. At trial, several prosecution witnesses refused to testify, including Jeffrey Bourne and Tajuan Crum, while Martin testified for the defense. Defs. 56.1 Statement ¶ 46. On March 12, 1999, Plaintiff was acquitted after a trial by jury. Pl. 56.1 Statement ¶ 70; Defs. 56.1 Statement ¶ 48.

DISCUSSION

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact, Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." Id. (citing Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985)); see also Hayes v. New York City Dept. of Corrs., 84 F.3d 614, 619 (2d Cir. 1996). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).

8

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo, 22 F.3d at 1224 (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Plaintiff brings this action for damages under 42 U.S.C. § 1983, alleging violations of his constitutional rights in the following forms: false arrest, false imprisonment, malicious prosecution, coercion of a confession, falsification of documents, denial of the right against self incrimination, denial of the right to obtain counsel, denial of the right to consult with his family, and conspiracy to commit each of these acts. In addition, Plaintiff alleges that Defendants denied him equal protection under the law in violation of 42 U.S.C. § 1981 and subjected him to battery. Defendants seek summary judgment, asserting that Plaintiff has not presented any material issues of fact concerning these allegations and that, therefore, Defendants are entitled to

9

judgment as a matter of law.[1]  Defendants contend that the evidence demonstrates that Detective Dempsey is entitled to qualified immunity from suit.

I    42 U.S.C. § 1983

42 U.S.C. § 1983 provides a means of redress for constitutional violations by persons acting under color of state law.  In relevant part, the statute provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate, federal right.  See Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  Complaints which allege Section 1983 violations must have specific allegations of fact which indicate that a deprivation of statutory or constitutional rights occurred.  See id.; Humpherys v. Nager, 962 F. Supp. 347, 351 (E.D.N.Y. 1997).

---

[1]    Defendants have withdrawn the part of their motion seeking to dismiss Plaintiff's claim of malicious prosecution in light of the recent decision by the Second Circuit in Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003), under which Plaintiff's allegation that the confession was fabricated will be sufficient to prevent dismissal as a matter of law of his malicious prosecution claim.

10

"[A]llegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under Section 1983." Id., at 351 (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).

In this case, Plaintiff has made numerous allegations against Defendants under § 1983, including false arrest, false imprisonment, malicious prosecution, coercion of a confession, falsification of documents, denial of the right against self incrimination, denial of the right to obtain counsel, denial of the right to consult with his family, and conspiracy to commit each of these acts.

Defendant Dempsey asserts that he is entitled to qualified immunity from suit and, therefore, the claims under § 1983 should be dismissed as a matter of law. The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996).

## A    Liability of Police Commissioner Kane

Plaintiff asserts all of his claims against Kane and Dempsey in their individual capacities. However, Plaintiff does not assert that Kane had any direct involvement in any of the alleged unconstitutional acts. Instead, Plaintiff claims that Kane

11

should be held liable for Dempsey's conduct as a result of the high position of his office.

The doctrine of respondeat superior cannot create liability under 42 U.S.C. § 1983. See Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973) ("[W]hen monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required."). To state a claim for damages under § 1983, a plaintiff must allege personal involvement by the defendant in the alleged constitutional violation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Without demonstrating a direct infraction by the supervisor, gross negligence or deliberate indifference to the constitutional rights of the accused, the doctrine of respondeat superior will not suffice to incur liability. See Id.

Plaintiff has not made any allegations that Kane played any role in Plaintiff's arrest, interrogation and/or prosecution, and has provided no evidence that he was even aware of the circumstances of the case at that time. Therefore, there are no genuine issues of material fact with respect to Kane's liability for the alleged § 1983 violations, and Defendants' motion for summary judgment, as to those claims, is GRANTED.

B    False Arrest and False Imprisonment

Plaintiff asserts that his constitutional rights were

12

violated when he was arrested without probable cause. A constitutional claim for false arrest under 42 U.S.C. § 1983 derives from the Fourth Amendment right of an individual to be free from unreasonable seizures, which includes the right to be free from arrest absent probable cause. See Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (citing Weyant, 101 F.3d at 852). A plaintiff claiming false arrest must demonstrate, inter alia, that the defendant intentionally confined him without his consent and without justification. Weyant, 101 F.3d at 852.

The right not to be arrested without probable cause is clearly established. See Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997); Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). However, it is also well established that "the existence of probable cause is an absolute defense to a false arrest claim and affords the arresting officer qualified immunity from litigation." Caldarola, 298 F.3d at 161; see also Weyant, 101 F.3d at 852 (noting that probable cause "constitutes justification and is a complete defense to an action for false arrest") (internal citations omitted). Accordingly, if, as Dempsey asserts, there was probable cause for Plaintiff's arrest, he is entitled to qualified immunity and Plaintiff's 1983 action, as it relates to false arrest, must be dismissed as against Dempsey.

In addition to the false arrest claim, Plaintiff has alleged a violation of his constitutional rights by false

13

imprisonment. The elements of false imprisonment are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995) (quoting <u>Broughton v. State</u>, 37 N.Y.2d 451, 456 (1975)). As with the false arrest claim, a finding that there was probable cause for Plaintiff's arrest will bar Plaintiff's false imprisonment claim. <u>See</u> <u>Simms v. De Paolis</u>, No. 99 Civ. 2776, 2000 U.S. Dist. LEXIS 11303 at *5 (S.D.N.Y. Aug. 2, 2000)(citing <u>DiMascio v. City of Albany</u>, 205 F.3d 1322 (Table), 2000 WL 232053 at *1 (2d Cir. 2000)).

<u>Probable Cause</u>

"'In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" <u>Caldarola</u>, 298 F.3d at 162 (quoting <u>Weyant</u>, 101 F.3d at 852). "When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" <u>Id.</u> (quoting <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 569 (2d Cir. 1996)); <u>see also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987) ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable

14

officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the searching officers possessed.")). A police officer is "'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Id. at 167-68 (quoting Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)). In addition, making a probable cause determination does not require or allow police officers "to sit as prosecutor, judge, or jury." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)(stating that it is the fact finder who ultimately decides whether the defendant's story holds up).

## Presumption of Probable Cause

Defendants argue that there is a presumption of probable cause after a grand jury indictment and that Plaintiff cannot provide sufficient evidence to rebut this presumption. Colon v. City of New York, 60 N.Y.2d 78, 82 (1983). To rebut this presumption, Plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Id. at 83. Viewing Plaintiff's allegations in the light most favorable to him, the Court finds that there are material issues of fact in dispute which will be determinative of whether the Plaintiff is able to rebut the presumption of probable cause. As discussed below, there are issues of fact regarding the Plaintiff's allegations of police fraud, perjury, misrepresentation and falsification of evidence, as

15

well as general bad faith conduct on the part of Dempsey during both the investigation and interrogation. The resolution of these factual disputes is critical in determining whether Plaintiff can rebut the presumption raised by his Grand Jury indictment. In light of the numerous issues of material fact in dispute, Defendants' argument that summary judgment is appropriate based on the presumption of probable cause is without merit.

Evidence Collected and Probable Cause

"Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Here, there are numerous facts in dispute which require that the issue of whether probable cause existed and whether, therefore, Dempsey is entitled to qualified immunity with respect to the § 1983 claims based on false arrest and false imprisonment, be put to the jury.

First, there is a dispute concerning the videotaped question and answer session with Ragan Martin. Plaintiff insists that Martin's answers during this session were consistent with his written statement. However, Defendants maintain that Martin retracted his identification of Corey "Sha" Jones as the person who assaulted Sammy Jones. In fact, the reasoning behind Detective Dempsey's decision to discredit Martin as a witness is in dispute. Plaintiff asserts that Martin is the only informant whose

16

statements were corroborated by Henrietta Williams, while information given by other informants whom Dempsey did not discredit was not corroborated by the evidence. In addition, Martin passed a lie-detector test.

Second, while Dempsey attests that Tajuan Crum voluntarily signed a statement that implicated Plaintiff, Plaintiff contends that Crum was manipulated into signing that statement. Plaintiff maintains that Dempsey knew that the statement was false, but threatened Crum with additional criminal charges if he did not sign the false document. Additionally, Plaintiff asserts that Dempsey again knowingly used false information allegedly received by Wenona Hammond. Plaintiff also contends that the tapes containing Lawson's attempts to get incriminating evidence from Crum were intentionally and improperly destroyed. Defendants deny that any of this occurred. Drawing the inference most favorable to Plaintiff, there is considerable dispute concerning the evidence that Detective Dempsey relied upon during his investigation.

Third, Plaintiff claims that, despite Dempsey's assessment, he was not the only person with a motive to attack Sammy Jones. Plaintiff contends that there were many other people who had such a motive and, consequently, Detective Dempsey should have followed through on those leads. In addition, he believes that the informants that Dempsey did rely on had ulterior motives when giving their statements, such as a reduced sentence or a monetary reward. Therefore, Plaintiff calls into question the

17

veracity of the information that Dempsey gathered against him. Defendants maintain that Dempsey competently assessed the accuracy of the informants and their information.

Fourth, Plaintiff asserts that because the incriminating evidence gathered by Detective Dempsey was all in the form of hearsay testimony, probable cause could not be established.[2] Under the totality of the circumstances test established in Illinois v. Gates, 462 U.S. 213 (1983), the Court finds that whether the hearsay evidence collected could amount to probable cause is an issue of fact.

The totality of the circumstances test is viewed from the perspective of the police officer, acting reasonably and in good faith, at the time of the arrest.   Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).   The entire set of circumstances leading up to the arrest, as well as those events that led to the

---

[2] Plaintiff argues that the Court should apply the Aguilar-Spinelli test, which requires a showing of the veracity or reliability of the source of the information and the basis for the informant's knowledge, when evaluating whether or not the hearsay information may constitute probable cause.  However, the Court finds that the proper standard to determine the value of the hearsay information is the "totality of the circumstances" test, established in Illinois v. Gates, 462 U.S. 213 (1983).   In Illinois, the Supreme Court concluded that the two prongs of the Aguilar-Spinelli test were not exclusive, but merely two of a number of relevant considerations in the totality of the circumstances analysis.   Illinois, 462 U.S. at 233.  Although New York State Courts still apply the Aguilar-Spinelli test to state law issues, in this case Plaintiff's claims arise under federal law and, as such, the Illinois totality of the circumstances test will be applied.

gathering of the hearsay information, must be taken into account. Viewing the evidence in the light most favorable to Plaintiff, there are issues of fact relating to the reliability of the statements made by the informants, the veracity of the informants' information and their basis for knowing that information. While this factual dispute certainly casts some doubt on whether there was probable cause for Plaintiff's arrest, it does not conclusively establish, as a matter of law, that probable cause could not have existed. The reliability of the hearsay evidence and whether or not it was sufficient to establish probable cause is a material issue of fact in dispute.

Despite these factual discrepancies, Defendants assert that there is no genuine issue of material fact regarding Plaintiff's arrest and incarceration and, therefore, the Court should determine that Detective Dempsey is entitled to qualified immunity as a matter of law. The Court declines to adopt the assertion of Defendants that the evidence clearly establishes, as a matter of law, that there was probable cause and that Detective Dempsey is entitled to qualified immunity. Plaintiff's testimony raises material issues of fact, properly left to a jury, concerning the methods used by Detective Dempsey when gathering incriminating evidence against Plaintiff and whether or not the evidence obtained actually amounted to probable cause.

Dempsey, is DENIED.

C    Falsified Information

Plaintiff asserts that his constitutional rights were violated when Dempsey falsified information in order to bolster the case against him. Specifically, Plaintiff asserts that Dempsey knowingly used false information gathered from informants on numerous occasions. Defendants contend that Dempsey is entitled to qualified immunity as to these allegations and that, therefore, summary judgment is appropriate.

"[A] police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) (quoting United States v. Agurs, 427 U.S. 97, 104, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). In Ricciuti, the Court held that the lower court had erred in granting summary judgment to the defendants because genuine issues of material fact existed as to whether they knowingly fabricated and distributed a false confession. Ricciuti, 124 F.3d at 129. In the present case, since a reasonable jury could find against Dempsey with respect to the fabrication of evidence, there remain genuine issues of material fact regarding whether it was objectively reasonable for Dempsey to believe that his acts did not violate Plaintiff's rights, as is necessary to sustain a claim of qualified immunity. Because issues of fact exist, summary judgment is inappropriate, and the

20

Defendants' motion, as it relates to the claim of fabrication of evidence asserted against Dempsey, is DENIED.

D    Self-Incrimination

Plaintiff claims that his constitutional rights were violated when Dempsey did not inform him of his Miranda rights, thus denying him the right against self-incrimination. The Fifth Amendment right against self-incrimination provides that a suspect must be informed of his Miranda rights prior to being subjected to a custodial interrogation. In addition, statements given by a suspect during a custodial interrogation without prior Miranda warnings will not be admitted into evidence. See Illinois v. Perkins, 496 U.S. 292, 296, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1990)(citing Miranda v. Arizona, 384 U.S. 436 (1966)). A custodial interrogation refers to a "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. 436, 444 (1966).

While Defendants maintain that Plaintiff's confession was signed voluntarily, Plaintiff alleges that he was coerced into signing a false confession as well as a waiver card and a rights card indicating that he had been read his rights. Plaintiff admits that the signatures belong to him, but contends that he was manipulated into signing various documents that he had never read or understood during the custodial interrogation. Because there are material facts in dispute regarding whether the Plaintiff was

21

made aware of his Miranda rights and whether his confession was coerced, summary judgment is inappropriate and the Defendants' motion is DENIED, as it relates to the Plaintiff's claims that Dempsey violated Plaintiff's right against self-incrimination.

E    Right to Counsel

Plaintiff contends that his constitutional rights were violated when Dempsey denied him the right to counsel. The Supreme Court has held that "a pre-indictment suspect who asserts his Fifth Amendment right to counsel during interrogation may not be questioned again outside the presence of counsel unless he initiates the meeting." United States v. Roberts, 869 F.2d 70, 73 (2d Cir. 1989)(citing Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)).

Plaintiff's mother was allegedly responsible for obtaining counsel and Plaintiff argues that, because he was denied the right to contact his mother, the interrogation occurred without allowing him the opportunity to consult counsel.   In addition, Plaintiff asserts that Dempsey repeatedly ignored his requests to obtain counsel during the interrogation.    Defendants dispute Plaintiff's allegations regarding his opportunity to contact his family while being questioned by Dempsey.   Dempsey asserts that Plaintiff was informed that his mother had called and that Plaintiff did not wish to speak to her at that time.   In fact, Dempsey states that Plaintiff did not ask to speak to his mother until after he had confessed and consented to a search of his home.

22

Because there are material facts in dispute concerning whether Defendants denied Plaintiff his right to obtain an attorney, summary judgment is inappropriate and Defendants' motion is DENIED with regard to these claims.

F    Right to Consult With Family

Plaintiff also claims that he was denied the right to consult with his family. As discussed above, Plaintiff argues that he and his mother were not allowed to speak to each other after Plaintiff's arrest. Furthermore, Plaintiff alleges that Defendants disabled his mother's car in order to facilitate this purposeful isolation.

At the time of his arrest, Plaintiff was eighteen years old and not a legal minor. However, when a confession is extracted by means of "deception and trickery," that confession may not be used against the suspect. People v. Townsend, 33 N.Y.2d 37, 41 (1973). When deception and trickery are used to obtain a confession and isolate a suspect from his family, it denies him "two of his most likely avenues of assistance, his mother and his lawyer." People v. Bevilacqua, 45 N.Y.2d 508, 511 (1978). In Bevilacqua, the Court held that the police misconduct violated the defendant's constitutional rights despite the fact that the defendant was not a legal minor. See Id. Here, Plaintiff has similarly alleged that Defendants conspired to isolate him from his family during the interrogation. Viewing these facts in the light most favorable to the Plaintiff, these allegations create genuine

23

issues of material fact as to whether he was denied the right to consult with his family. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's right to consult with his family is DENIED.

G     Conspiracy under 42 U.S.C. § 1983

Plaintiff asserts that Defendants engaged in a conspiracy to deny him his constitutional rights, in violation of 42 U.S.C. § 1983. "To sustain a conspiracy claim under § 1983, a plaintiff must demonstrate that a defendant 'acted in a wilful manner, culminating in an agreement, understanding or "meeting of the minds", that violated the plaintiff's rights . . . secured by the Constitution or the federal courts.'"  Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)(quoting Duff v. Coughlin, 794 F. Supp. 521, 525 (S.D.N.Y. 1992)(internal citations omitted)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; 'diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'"  Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (internal quotations omitted).

Here, Plaintiff contends that Dempsey (1) engaged in a plan to isolate the plaintiff from his family; (2) falsely arrested and imprisoned him; (3) elicited a false confession; (4) submitted false reports and testimony to cover the conspiracy; (5) withheld

24

evidence which allegedly exculpated the plaintiff; and (6) employed the "code of silence" to conceal the conspiracy.   However, Plaintiff has not offered any evidence or even alleged that the Detective wilfully engaged in a "meeting of the minds" with any other member of the police department.  Plaintiff has also failed to indicate specific instances in which this alleged misconduct occurred.  Therefore, Plaintiff's conspiracy claim is without merit and Defendants' motion for summary judgment on this issue is GRANTED.

   H  Nassau County Municipal Liability

     Plaintiff also alleges that Nassau County is responsible for the deprivation of his constitutional rights.   Defendants assert that the municipality of Nassau County cannot be held liable under 42 U.S.C. § 1983 for the alleged damages incurred by Plaintiff.  In Monell v. Dep't of Soc. Serv. of the City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Court concluded that Congress intended municipalities and other local governmental units to be included among those persons to whom § 1983 applies.

> "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments . . . may be sued for constitutional deprivations visited

25

K C COURT RESEARCH

> pursuant to governmental 'custom' even though such a
> custom has not received formal approval through the
> body's official decisionmaking channels."

Monell, 436 U.S. at 690-91.

However, a municipality cannot be held liable under § 1983 on a respondeat superior theory. Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000). Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for its employee's § 1983 violations. See Monell, 436 U.S. at 694. To establish municipal liability, Plaintiff must demonstrate that Nassau County was more directly involved in the constitutional violations than merely employing Dempsey. Plaintiff must establish that Dempsey was acting under a governmental custom or policy when he allegedly violated Plaintiff's constitutional rights.

Plaintiff has proffered evidence in the form of other cases in which criminal defendants were eventually acquitted after alleging similar police misconduct. Plaintiff claims that the accusations of Robert Moore, Blair Garner, Michael Prince, and Plaintiff are sufficient to establish "persistent and widespread discriminatory practices of state officials." Monell, 436 U.S. at 691 (internal citations omitted). These four men allege that it is a policy throughout Nassau County to deprive suspects of their constitutional rights to counsel and to remain silent, particularly

26

with respect to minority suspects, and to elicit knowingly false confessions from these suspects. Plaintiff asserts that Nassau County was directly involved in creating and sustaining this policy and, therefore, should be held responsible for the constitutional violations that resulted. Defendants argue that there is no such policy and that Nassau County as a municipality was not directly involved in the allegations made by Plaintiff.

These accusations may be sufficient to demonstrate a "persistent and widespread" custom or practice employed by the Nassau County government or its law enforcement. Plaintiff's statements concerning the alleged county-wide practice that has been prevalent in these four instances create genuine issues of material fact with respect to whether Nassau County was directly involved in the events in question and whether there is a "persistent and widespread" policy to deprive suspects of their constitutional rights during interrogations. Consequently, Defendants' motion for summary judgment on the issue of municipal liability is DENIED.

II   42 U.S.C. § 1981

42 U.S.C. § 1981 provides a means of redress for persons denied the constitutional right to "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Plaintiff contends that, as a racial minority, he was deprived of his constitutional right to full and equal protection of the law. This deprivation

27

allegedly occurred during his interrogation and is typical of the general policy of Nassau County to deny minorities rights during homicide investigations.   In doing so, Plaintiff argues that Defendants have violated the rights of racial minorities to equal protection under the law.

"To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities."  Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 1999).   The only evidence that Plaintiff has offered in support of his claim that Defendants engaged in an intentionally racist policy are the four enumerated instances in which a racial minority was interrogated and later acquitted.   Even if Plaintiff could establish that discriminatory impact has occurred, he has not provided any support for his conclusory allegation that Defendants possessed the requisite intent to discriminate against racial minorities. "Without additional evidence of a discriminatory animus, the disparate impact of an investigation such as the one in this case is insufficient to sustain [a claim of intentional discrimination]."  Brown, 221 F.3d at 338, 339.  Therefore, without any proof of discriminatory intent on the part of Defendants, Plaintiff's 1981 claim must be dismissed and Defendants' motion for summary judgment is GRANTED.

III  Battery

According to the Restatement (Second) of Torts, an actor is subject to liability to another for battery if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.  RESTATEMENT (SECOND) OF TORTS § 13 (1965).  A bodily contact is offensive if it offends a reasonable sense of personal dignity.  RESTATEMENT (SECOND) OF TORTS § 19 (1965). Plaintiff had admitted that he was not punched or slapped during the interrogation, but does contend that Detective Dempsey, along with other officers, physically intimidated him, as well as grabbed him by the shoulder.  Lee Dep. 25 (Pl. Ex. S).  All that is required for battery is harmful or offensive touching.  The statements made by Plaintiff are sufficient to create a genuine issue of material fact concerning whether a harmful or offensive touching did occur at that time, specifically with respect to the alleged grabbing during the interrogation.  Therefore, Defendants' motion for summary judgment with respect to the battery claim against Detective Dempsey is DENIED.

Plaintiff also seeks to hold Kane and Nassau County liable for battery, under a theory of respondeat superior.  "That doctrine renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment, even if the duties were done irregularly or with

29

disregard of instruction." Ray v. Metropolitan Transp. Authority, 221 A.D.2d 613, 615 (2d Dep't 1995) (citing Riviello v Waldron, 47 N.Y.2d 297)(emphasis added). Nassau County may be held liable under the theory of respondeat superior. Respondeat superior liability may be imposed on a municipality for its' employees' intentional torts if the tortfeasor was acting within the scope of his employment. See Buck v. Zwelling, 272 A.D.2d 895, 707 N.Y.S.2d 281, 282 (4th Dep't 2000). Furthermore, the issue whether an employee is acting under the scope of his employment is typically left to a jury. See Riviello v. Waldron, 47 N.Y.2d 297, 302-03, 391 N.E.2d 1278 (1979). Therefore, Defendants' motion for summary judgment with respect to the battery claim against Nassau County is DENIED. Kane, however, cannot be held liable for Dempsey's actions under a theory of respondeat superior. Kane was not Dempsey's employer, and as such is not subject to respondeat superior liability. As such, the motion for summary judgment with respect to the battery claim against Kane is GRANTED.

## CONCLUSION

The Defendants' motion for summary judgment is GRANTED as to all of the Section 1983 claims asserted against Defendant Kane.

The Defendants' motion for summary judgment is DENIED as to those Section 1983 asserted against Defendants Dempsey and Nassau County, except those related to the alleged conspiracy.

The Defendants' motion for summary judgment is GRANTED as to the claim that the Defendants conspired to violate Plaintiff's

30

constitutional rights, in violation of Section 1983.

The Defendants' motion for summary judgment is GRANTED as to the Section 1981 claims asserted against all Defendants.

The Defendants' motion for summary judgment is DENIED as to the Battery claim asserted against Defendants Dempsey and Nassau County. The Defendants' motion for summary judgment is GRANTED as to the Battery claim asserted against Defendant Kane.

SO ORDERED.

Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          July __, 2003

31