UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOHN KOGUT,

                     Plaintiff,

        -against-

THE COUNTY OF NASSAU, POLICE
COMMISSIONER DONALD KANE, POLICE
COMMISSIONER WILLIAM J. WILLETT (2005),
POLICE COMMISSIONER JAMES LAWRENCE,
DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE
1985), DETECTIVE DENNIS FARRELL (HEAD OF
HOMICIDE 2005), DETECTIVE JOSEPH VOLPE,
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT
MARTINO, DETECTIVE WAYNE BIRDSALL,
DETECTIVE MILTON G. GRUBER, DETECTIVE
CHARLES FRAAS, DETECTIVE FRANK SIRIANNI,
DETECTIVE HARRY WALTMAN, P.O. MICHAEL
CONNAUGHTON, P.O. WILLIAM DIEHL, and
JOHN DOES 1-5,

                  Defendants.
----------------------------------------X
JOHN RESTIVO, DENNIS HALSTEAD,
MELISSA LULLO, JASON HALSTEAD,
HEATHER HALSTEAD and TAYLOR
HALSTEAD,

                   Plaintiffs,

       - against -

NASSAU COUNTY, JOSEPH VOLPE, in his
individual capacity, ROBERT DEMPSEY,
in his individual capacity, FRANK SIRIANNI,
in his individual capacity, MILTON GRUBER,
in his individual capacity, HARRY WALTMAN
in his individual capacity, ALBERT MARTINO,
in his individual capacity, CHARLIE FRAAS,
in his individual capacity, THOMAS ALLEN
in his individual capacity, RICHARD BRUSA,
in his individual capacity, VINCENT DONNELLY,
in his individual capacity, MICHAEL
CONNAUGHTON, in his individual capacity,
WAYNE BIRDSALL, in his individual capacity,
WILLIAM DIEHL, in his individual capacity,
JACK SHARKEY, in his individual capacity,

<u>MEMORANDUM AND ORDER</u>
06-CV-6695 (JS)(WDW)
(LEAD CASE)

06-CV-6720(JS)(WDW)
(MEMBER CASE)

DANIEL PERRINO, in his individual capacity,
ANTHONY KOZIER, in his individual capacity,
Detective Sergeant CAMPBELL, (Shield #48),
in his individual capacity, SEAN SPILLANE,
in his individual capacity, RICHARD ROE
SUPERVISORS #1-10, in their individual
capacities,

                        Defendants.
--------------------------------------X
APPEARANCES:

For Plaintiffs:

John Kogut            Anthony M. Grandinette, Esq.
                      Grandinette & Serio, LLP
                      114 Old Country Road, Suite 420
                      Mineola, NY 11501

                      Paul Casteleiro, Esq.
                      200 Washington Street, Suite 500
                      Hoboken, NJ 07030

John Restivo,         Barry C. Scheck, Esq.
Dennis Halstead,      Deborah L. Cornwall, Esq.
Melissa Lullo,        Monica R. Shah, Esq.
Jason Halstead,       Nick Joel Brustin, Esq.
Heather Halstead,     Anna Benvenutti Hoffman, Esq.
and Taylor            Cochran, Neufeld & Scheck, LLP
Halstead              99 Hudson Street, 8th Floor
                      New York, New York 10013

For Defendants:       Liora M. Ben-Sorek, Esq.
                      Sondra Meryl Toscano, Esq.
                      Office of the Nassau County Attorney
                      One West Street
                      Mineola, NY 11501

SEYBERT, District Judge:

<u>INTRODUCTION</u>

        Plaintiffs,   John   Kogut   ("Kogut"),   John   Restivo

("Restivo"), Dennis Halstead ("Halstead"), Melissa Lullo ("Lullo"),

Jason Halstead ("J. Halstead"), Heather Halstead ("H. Halstead"),

and Taylor Halstead ("T. Halstead")[1] (collectively "Plaintiffs") commenced these actions 07-CV-6695 and 07-CV-6720 on December 19, 2006, and December 21, 2006, respectively. Subsequently, the Court consolidated both cases into the earlier-filed action.[2] Kogut, Restivo, and Halstead base the majority of their claims against Nassau County ("County") and various Nassau County Police Department ("NCPD") officers and supervisors (collectively "Defendants") on 42 U.S.C. § 1983, alleging, <u>inter alia</u>, malicious prosecution, false arrest, and false imprisonment.[3] Additionally, Kogut, Restivo, and Halstead assert 14th Amendment due process violations, and a variety of state claims[4] stemming from their prior interrogations, arrests, and subsequent state prosecutions. Finally, Halstead's Children asserted their own cause of action, unconstitutional denial of familial association, which they claim stems from their father's wrongful conviction and imprisonment.

On August 27 and 28, 2008, Defendants moved to dismiss

---

[1] Lullo, J. Halstead, H. Halstead, and T. Halstead will collectively be referred to as "Halstead's Children."

[2] The parties are directed to file future submissions under 06-CV-6695 and should no longer file submissions under the closed case 06-CV-6720.

[3] Plaintiffs name forty-eight Defendants in total, including the fictitiously named Defendants, John Does 1-5 (Kogut Compl. 2), John Doe Officers and Detectives #1-10, and Richard Roe Supervisors #1-10. (Restivo & Halstead Am. Compl. 1.)

[4] Restivo and Halstead later withdrew their state law claims for false arrest, false imprisonment and assault and battery. (Pl.'s Mem. in Opp'n to Mot. to Dismiss 18, n.11).

both actions.  In an Order dated August 3, 2009 ("August 2009 Order"), the Court granted in part and denied in part Defendants' motions.  Plaintiffs now move for reconsideration of the Court's August 2009 Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Rule 6.3.  For the reasons that follow, the Court GRANTS in part and DENIES in part Plaintiffs' motions.

BACKGROUND[5]

I.  <u>Murder of Theresa Fusco</u>

On November 10, 1984, Theresa Fusco ("Fusco"), a sixteen-year-old girl, left Hot Skates--a local roller skating rink.  Approximately three weeks later, on December 5, 1984, Fusco's body was discovered naked and brutalized by the railroad tracks near Park Place and Rocklyn Avenue in Lynbrook.  Defendant Joseph Volpe ("Volpe") of the Nassau County Police Department was assigned as lead detective for the investigation.  The medical examiner estimated that the time of death occurred between seven to fourteen days prior to the date of discovery of the body.  The autopsy also revealed that Fusco had suffered severe blows to the face, and death, ultimately, resulted from ligature strangulation.  There was no trauma around the vaginal area; however, a vaginal swab produced

---

[5] The facts, as stated herein, are derived from the Kogut's Complaint ("Kogut Compl.") and the Amended Complaint filed by Restivo, Halstead, Lullo, J. Halstead, H. Halstead, and T. Halstead ("Restivo & Halstead Am. Compl.") (collectively "Complaints"), and is accepted as true for the purpose of deciding this motion.

seminal fluids.   After interviews with Fusco's mother and best friend it was concluded, by Vople, that Fusco was not sexually active.  (Restivo & Halstead Am. Compl. ¶ 49).  The investigating officers knew of these findings; however, not all of this information was made public.

In early March 1985, Defendants Frank Sirianni ("Sirianni"), Daniel Perrino ("Perrino") and others questioned Harold Smyle ("Smlye") as a suspect in the Fusco rape and murder. Smyle, who had a history of psychological illness, informed the Defendants that Plaintiff Restivo told Symle he knew who killed Fusco.  (Id. ¶ 50.)  On March 5, 1985, Volpe had Restivo brought to NCPD headquarters.  (Id. ¶ 51.)  The Defendants then proceeded to interrogate Restivo.

Restivo claims that his interrogation lasted twenty-four hours, during which Defendants refused to let him leave the interrogation room, denied his request to contact a lawyer or his girlfriend, and employed coercive and abusive interrogation tactics in order to produce false accusations against Halstead.  (See id. ¶¶ 52-64.) After suffering through hours of "physical and emotional abuse," Restivo claims that he signed a written statement, created by Defendants, which falsely indicated that Halstead had told him that he raped a girl by a cemetery and then strangled and killed her.  (Id. ¶ 60.)  Morever, Restivo maintains that he had no knowledge of the Fusco murder and that the Defendants provided him

with all of the facts related to the rape and murder.  (Id. ¶ 61.)
Subsequently, based on Restivo's statements, the Defendants acquired
a warrant to wiretap Halstead's phone.  On March 11 and again on
March 13, 1985, Defendants Volpe, Allen, and others stopped Halstead
as he was walking in the street, placed him in one of their police
vehicles, and drove him to the parking lot of the Lynbrook Police
Department.  Halstead claims that during these two informal
interrogations, members of the NCPD placed listening devices in his
apartment.  During the time that he was in police custody on both
dates, Halstead was questioned about the Fusco rape and murder, and
he repeatedly denied any involvement in or knowledge of the crime.
(Id. ¶ 69.)

        On March 21, 1985, Volpe had Kogut brought to NCPD
headquarters for questioning.  Kogut was a part-time employee of
Restivo's moving business.  At this first interrogation, Kogut
repeatedly denied any knowledge of the murder.  (Id. ¶ 70.)  On
March 25, 1985, Kogut was again brought to the NCPD headquarters for
questioning.  Plaintiffs allege that during this twelve-hour
interrogation, Defendants utilized abusive and coercive tactics.
Finally, Kogut signed a confession that included the following
information: (1) Halstead and Restivo raped Fusco in the cemetery;
(2) Kogut strangled her to death with a cord as she lay face down on
the ground because she threatened to tell the authorities who raped
her; and (3) all three of them transported Fusco's dead body in

Restivo's van to "the Fort" area where they hid her body under leaves and wooden pallets.  (See id. ¶ 76.)  Kogut was never informed of his Miranda rights, and only signed a Miranda waiver after fifteen hours of interrogation.  (Id. ¶ 79.)  After Kogut signed his confession, Volpe and Robert Dempsey ("Dempsey") directed Sirianni and Harry Waltman ("Waltman"), "with the active participation and approval of [D]efendant Camp[b]ell," to take Kogut to the area of the cemetery where Fusco's body was discovered.  (Id. ¶ 80.)  Plaintiffs further allege that, during this time, Sirianni and Waltman were under Volpe's and Dempsey's orders to coach Kogut about the particular circumstances of the crime.  (Id.)  Finally, Volpe, Dempsey, and their fellow officers compelled Kogut to repeat his confession on videotape in front of Assistant District Attorneys Peck and McCarty.[6]  (Id. ¶ 81.)  Kogut's interrogation and confession culminated in his arrest and arraignment on March 26, 1985, approximately nineteen hours after he was picked up for his second interrogation.

Subsequently, on March 26, 1985, NCPD seized Restivo's van and transported it to police headquarters.  Defendant Charlie Frass ("Frass") compared samples taken from Plaintiff Restivo's van with the hair and blood samples taken from Fusco.  Plaintiffs claim that between March 1, 1985 and June 20, 1985 the Defendants, through

---

[6] The full names of Assistant District Attorneys Peck and McCarty are not contained in the motion papers or pleadings.

coercion, intimidation, and physical force, began collecting evidence against the Plaintiffs. (Id. ¶ 90.) In addition, Plaintiffs state that Defendants failed to disclose or document exculpatory evidence or statements that were allegedly made by witnesses. (Id. ¶ 92.)

II.  <u>Plaintiffs' Convictions and Subsequent Appeals</u>

On June 20, 1985, Restivo and Halstead were arrested for Fusco's rape and murder. On December 3, 1986, they were both convicted of rape and second-degree murder; they were sentenced to thirty-three and one-third years to life in prison. On May 28, 1986, Kogut was convicted on all counts in the Indictment, and on June 27, 1986 was sentenced to an aggregate indeterminate term of imprisonment of 31.5 years to life.[7] (Kogut Compl., Ex. A., unnumbered page 2.) Kogut appealed his conviction, claiming, <u>inter alia</u>, that the trial court erred in ruling that his confession was voluntary. The Appellate Division affirmed Plaintiff's conviction on October 17, 1991. (Kogut Compl. ¶ 79.) On November 21, 1991, the Court of Appeals denied leave to appeal. (Id. ¶ 80.) Subsequently, Plaintiff petitioned for a writ of habeas corpus alleging numerous constitutional challenges to his conviction. On April 15, 2002, the U.S. District Court dismissed the writ.

III. <u>DNA Exoneration; Proceedings After Discovery</u>

---

[7] Hereinafter, the Court will refer to these 1985-1986 trials as the "Plaintiffs' First Trials."

From 1993 to 2003, various samples of semen obtained from Fusco's body were subjected to DNA testing; on five separate occasions, Plaintiffs claim, the tests proved that the DNA found inside the victim did not belong to Restivo, Halstead, or Kogut. On June 11, 2003, the convictions of Restivo, Halstead and Kogut were vacated; however, the charges were not dropped. (Kogut Compl. ¶ 81.) In 2005, the Nassau County District Attorney, armed with newly discovered evidence, retried Kogut. At Kogut's second trial, Judge Victor Ort, held that "the question hairs were [not] left in the van on or about November 10th of 1984, and absent those hairs, there is no corroboration, whatsoever, for the [Kogut's] confession concerning the count of rape." (Id. ¶ 73.) Kogut was acquitted of all charges on December 21, 2005. (Id. ¶ 85.) Shortly thereafter, on December 29, 2005, upon the motion of the Nassau County District Attorney's Office, Judge William C. Donnino of the Nassau County Supreme Court dismissed the charges against Restivo and Halstead for lack of evidence. (Restivo & Halstead Am. Compl. ¶ 113.) On December 19, 2006 and December 21, 2006, respectively, Plaintiffs commenced these actions.

In its August 2009 Order, the Court dismissed the following claims: (1) Plaintiffs' claims for malicious prosecution, based on Section 1983 and New York law, relating to Plaintiffs' First Trials; (2) Plaintiffs' claims for false arrest and false imprisonment, based on Section 1983 and New York law;

(3) Plaintiffs' claims of due process violations based on Defendants' alleged offering of false evidence; (4) Kogut's conspiracy claim; (5) Plaintiffs' Monell claims; (6) Halstead's Children's claims for loss of familial association; (7) Kogut's battery claim; (8) Restivo's and Halstead's claims for failure to intercede; (9) Restivo's and Halstead's claims for intentional or reckless infliction of emotional distress; (10) Plaintiffs' claims for negligent infliction of emotional distress; (11) Restivo's and Halstead's claims based on negligent supervision; and (12) Restivo's and Halstead's claims based on respondeat superior.

On August 18 and 31, 2009, Plaintiffs moved for reconsideration of the Court's August 2009 Order. Specifically, Plaintiffs ask the Court to reconsider its decision regarding their (1) malicious prosecutions claims, under state and federal law; (2) false arrest and false imprisonment claims; (3) Monell claims, and (4) due process claims. Additionally, Kogut asks the Court to reconsider its findings with regard to his (5) Battery claim, and (6) negligent infliction of emotional distress claim.[8]

---

[8] To be clear, Kogut does not seek reconsideration of his conspiracy claim, none of the Plaintiffs seek reconsideration of their false arrest and false imprisonment claims, Halstead's Children do not seek reconsideration of their claims for loss of familial association; and Restivo and Halstead do not seek reconsideration for their claims based on (1) failure to intercede; (2) intentional or reckless infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligent supervision; and (5) respondeat superior. Thus, these claims remain DISMISSED.

<u>DISCUSSION</u>

I.   <u>Rule 59(e) Standard of Review on Motion for Reconsideration</u>

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3.   See <u>Wilson v. Pessah</u>, No. 05-CV-3143, 2007 U.S. Dist. LEXIS 17820, at *4 (E.D.N.Y. March 14, 2007).   Rule 59(e) permits a moving party to file a motion for reconsideration when it believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision.   <u>Shamis v. Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151, (S.D.N.Y. 1999). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion.   <u>See</u> <u>United States v. Gross</u>, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously.").   Nor is it proper to raise new arguments and issues.   <u>See</u> <u>Lehmuller v. Inc. Vill. of Sag Harbor</u>, 982 F. Supp. 132, 135 (E.D.N.Y. 1997).   Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court.   <u>Wechsler v. Hunt Health Sys.</u>, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

II.  <u>Rule Against Undermining Underlying Convictions in Parallel</u>
     <u>Civil Proceedings</u>

11

Courts' concerns about the potential for civil proceedings undermining criminal convictions reach back over a century:

> [I]f [an] action for malicious prosecution were allowed to be maintained before the termination of the criminal proceeding [in plaintiff's favor,] the plaintiff might be found guilty in that proceeding, and yet maintain [his] action for malicious prosecution on the ground that []he was not guilty, and that the defendant had no probable cause to believe [him] guilty; and thus there might be two conflicting determinations as to the same transaction.

Robbins v. Robbins, 30 N.E. 977, 978, 133 N.Y. 597, 599 (1892). This concern stems from the law's general policy of protecting criminal complainants against a civil action for damages where the criminal proceeding results in the defendant's conviction. See id. Thus, when fairly conducted, a criminal proceeding that results in the conviction of the person charged with a crime "is held to be conclusive evidence of probable cause. Id. On the other hand

> where the criminal proceeding is terminated favorably to the accused, or without his conviction, so that there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense without the commencement of a new proceeding, then there has been a sufficient termination thereof to enable him, proving the other requisite facts, to maintain an action for a malicious prosecution.

Id. In this case, what constitutes favorable termination is a significant point of contention between the parties.

A.   Heck v. Humphrey: Malicious Prosecution under § 1983

When a claim for damages under § 1983 calls into question

12

the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. <u>Heck v. Humphrey</u>, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The petitioner in <u>Heck</u> was an inmate with a direct appeal from his conviction pending, who brought a § 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's § 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. <u>Id.</u> at 486-87. This favorable termination requirement is similarly applicable to a released prisoner seeking to bring a § 1983 action implying the invalidity of a conviction. <u>Id.</u> at 490, n.10.

The Supreme Court in <u>Heck</u> enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. <u>Id.</u> at 486-87. In this case, Plaintiffs cannot maintain that their convictions were invalidated by any of the first three methods. Therefore, Plaintiffs argue that they overcome <u>Heck</u> because their convictions were vacated and the charges against them were later dismissed. Defendants, on the other hand, maintain that

13

Plaintiffs fail to satisfy any of the four possibilities outlined in Heck.

In its August 2009 Order, the Court reached the conclusion that Plaintiffs failed to establish that their convictions were invalidated under Heck.  Relying primarily on New York v. Crimmins, 343 N.E.2d 719, 38 N.Y.2d 407, 381 N.Y.S.2d 1 (1975), the Court found that the District Attorney's motion under New York Criminal Procedure Law § 440.10(1)(g), and the subsequent dismissal of the indictments against the Defendants, did not attack the validity "of the judgment . . . , only the likelihood of a similar verdict being rendered if there were an enlargement of the evidence on the principle issue." Id. at 728.  In light of the additional authority submitted by the parties, and upon further reflection, the Court finds its prior decision to be in error.

In their various memoranda in support of their motions, Plaintiffs cite to several cases, most notably DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996).  DiBlasio involved a physician who, in 1986, was convicted of the criminal sale of a controlled substance (cocaine) in the first, second and third degrees, and criminal possession of a controlled substance in the fourth degree.  Four years later, following an unsuccessful appeal in the State courts, the United States District Court for the Eastern District of New York granted DiBlasio a writ of habeas corpus based on his claim that the prosecution's failure to produce

14

or identify a confidential informant deprived him of a fair trial. The Second Circuit affirmed. <u>DiBlasio v. Keane</u>, 932 F.2d 1038 (2d Cir. 1991). The State retried DiBlasio, and he was convicted only on the charge of unlawful possession. Subsequently, DiBlasio brought a malicious prosecution claim against the police officers claim pursuant to 42 U.S.C. § 1983. The district court dismissed the complaint as time-barred and for failure to state a claim. DiBlasio appealed.

In examining DiBlasio's malicious prosecution claim, the Second Circuit began by outlining the four elements of a common law tort for malicious prosecution: "(1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor." <u>DiBlasio v. City of New York</u>, 102 F.3d 654, 657 (2d Cir. 1996). Turning to the question of favorable termination, the Circuit wrote: "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." <u>Id.</u> Ultimately, the Second Circuit rejected DiBlasio's claim because his habeas did not demonstrate his innocence; hence, his later retrial and conviction of the lesser crime of possession.

Beyond its general statement that the favorable termination requirement is satisfied when the final disposition indicates the accused is not guilty, neither the Supreme Court nor the Second Circuit provide significant guidance as to the meaning of

15

favorable termination under <u>Heck</u>.  Defendants urge the Court to seek guidance from the state court's determinations.  But this theory is flawed.  Although ill-defined, the standard for determining whether Plaintiffs have satisfied <u>Heck</u>'s favorable termination requirement must be based on federal, not state law, else a Plaintiff's ability to seek redress for violations of his constitutional rights would vary by the state of his conviction.  This cannot be what the Supreme Court intended.  Accordingly, whether Plaintiffs obtained a favorable termination of the prior proceeding under <u>Heck</u> is a separate question from whether they obtained a favorable termination under New York law.

In light of <u>DiBlasio</u>, the Court finds that Plaintiffs have plead sufficient facts to establish that they obtained a favorable termination of the state court proceedings.[9]  Therefore, <u>Heck</u> provides no bar to their § 1983 claims.

B. <u>Malicious Prosecution under New York Law: Invalidation Under New York Law, Motions Pursuant to N.Y. Crim. Proc. Law § 440.10(1)(q), the District Attorney's Dismissal of the Indictments, New York v. Crimmins, and Smith-Hunter v. Harvey</u>

To maintain a malicious prosecution claim under New York law, a plaintiff must establish the same four elements as under a §

---

[9] Plaintiffs argue that <u>DiBlasio</u> "mandates" that their § 1983 actions proceed "as Plaintiffs have no remedy in Federal Habeas." (Restivo-Halstead Reply in Supp 5.)  While the Court disagrees with Plaintiffs on this point, it recognizes that the Second Circuit interpreted <u>Heck</u>'s favorable termination requirement very broadly, such that Plaintiffs' claims <u>may</u> proceed.

1983 claim: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice [.]" <u>Smith-Hunter v. Harvey</u>, 734 N.E.2d 750, 752, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 440 (2000). Again, the biggest hurdle for Plaintiffs to overcome remains the favorable termination requirement.

Plaintiffs' convictions were vacated upon motion by the District Attorney pursuant to New York Criminal Procedure Law § 440.10. Section 440.10 provides in relevant part:

> 1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: . . .

>> (g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence . . . .

N.Y. Crim. Proc. Law § 440.10(1)(g) (McKinney 2007). In interpreting this section, the New York State Court of Appeals has stated that, on "motion to vacate judgment upon the ground of newly

17

discovered evidence[,] the validity of the judgment is not attacked, only the likelihood of a similar verdict being rendered if there were an enlargement of the evidence on the principle issue." New York v. Crimmins, 343 N.E.2d 719, 728, 38 N.Y.2d 407, 381 N.Y.S.2d 1 (1975).  The Crimmins decision led the Court to conclude that the 2003 vacating of the Plaintiffs' convictions could not demonstrate the conviction's "unlawfulness" under New York State law. Nevertheless, much has happened since the Crimmins decision, nearly thirty-five years ago.  Upon reconsideration, the Court also finds that its prior determination was in error.

Smith-Hunter involved a plaintiff who was charged with trespass, a violation under New York Penal Law § 140.05.  After her arraignment, plaintiff served demands for discovery and filed a motion to dismiss.  After approximately four months, the prosecutor failed to respond to plaintiff's demands, and he failed to appear on six separate court dates.  Smith-Hunter, 734 N.E.2d at 751-52. Plaintiff then moved to dismiss pursuant to Criminal Procedure Law § 30.30, New York's speedy trial statute.  The trial court subsequently granted the motion, and plaintiff brought a malicious prosecution claim against the prosecutor.  During the malicious prosecution trial, the New York State Supreme Court granted defendants' summary judgment motion on the basis that dismissal pursuant to § 30.30 provides "nothing . . . from which it can fairly be implied that . . . the accused [was] innocent of the charges

18

lodged against her." <u>Id.</u> at 752. The Appellate Division affirmed, "concluding that a CPL 30.30 dismissal could never constitute a 'favorable termination.'" <u>Id.</u> Plaintiff appealed.

The Court of Appeals began its analysis with the general rule under New York law: "As we stated in <u>Robbins v. Robbins</u>, 133 N.Y. 597, 599, 30 N.E. 977, a criminal proceeding is terminated favorably to the accused when 'there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense.' Moreover, it makes no 'difference how the criminal prosecution is terminated, provided it is terminated, and at an end[.]'" <u>Id.</u> at 753. The court then went on to discuss the exceptions to the common law, where termination of the criminal prosecution does not imply the innocence of the accused:

> A termination is not considered favorable, for example, if the charge is dismissed []because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial . . . . [A]n accused should not benefit where his own misconduct. . . .
>
> A termination is not favorable to the accused, additionally, if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Indeed, it is hornbook law that []where charges are withdrawn or the prosecution is terminated . . . by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused . . . . Accordingly, . . . an adjournment in contemplation of dismissal--a disposition that requires the consent of the prosecutor, the accused and the court--does not qualify as a favorable termination.

19

> Similarly, if the charge is withdrawn or
> dismissed out of mercy requested or accepted by
> the accused, there is no favorable termination.
> Mercy, it is reasoned, would not be appropriate
> if the prosecution were groundless; rather,
> mercy []implies a belief in the guilt of the
> accused or at the least in the possibility that
> he may be guilty . . . .

Id. at 753-54 (quotation marks and citations omitted).  After

examining the record in the prior criminal proceeding, the court

found that "the prosecution terminated in a manner not inconsistent

with plaintiff's innocence."   Id. at 755.   It then rejected

defendant's argument that a plaintiff must establish her innocence

prior to recovery on a malicious prosecution claim, id., and instead

held that only "dispositions inconsistent with innocence . . .

cannot be viewed as favorable to the accused."  Id. (rejecting the

language in Ward v. Silverberg, 652 N.E.2d 914, 85 N.Y.2d 993, 994,

629 N.Y.S.2d 168 (1995), Hollender v. Trump Vil. Coop., 448 N.E.2d

432, 58 N.Y.2d 420, 461 N.Y.S.2d 765 (1983), and MacFawn v. Kresler,

666 N.E.2d 1359, 88 N.Y.2d 859, 644 N.Y.S.2d 486 (1996) implying

that plaintiff had to affirmatively prove her innocence to maintain

a malicious prosecution claim).  Accordingly, the Court reversed and

remanded the case to the Supreme Court.

Although the Smith-Hunter court limited its holding

somewhat to the speedy trial context, its analysis and rationale is

instructive.  Similarly the Hollender decision also aids the Court

in reaching its decision.  Hollender, 448 N.E.2d at 435 ("[I]n a

malicious prosecution action, it is for the one who brings the suit

20

to establish that the criminal proceeding allegedly instigated by the defendant terminated in favor of the accused.  Indeed, it is 'only when [the] final disposition is such as to indicate innocence' that this burden is met." (internal quotation marks and citations omitted)).  The Court reads the <u>Crimmins</u> decision, together with the more recent decisions in <u>Smith-Hunter</u> and <u>Hollender</u> not as a <u>per</u> <u>se</u> rule that 440.10 dismissal can never constitute a favorable termination.  Instead, <u>Crimmins</u> states that a 440.10 dismissal alone does not necessarily establish a defendant's innocence such that he may automatically satisfy the favorable termination requirement.  Where, however, the new evidence justifying 440.10 relief is DNA evidence that strongly implicates defendant's innocence, and evidence that other damning material that was presented at trial may have been planted, it is possible that 440.10 dismissal could constitute favorable termination for purposes of bringing a malicious prosecution claim.  <u>See</u> <u>generally</u> <u>Smith-Hunter v. Harvey</u>, 734 N.E.2d 750, 752, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 440 (2000); <u>Hollender v. Trump Vil. Coop.</u>, 448 N.E.2d 432, 58 N.Y.2d 420, 461 N.Y.S.2d 765 (1983).

        In this case, for purposes of defeating Defendants' Rule 12(c) motion, Plaintiffs have gone above and beyond the requirements of <u>Smith-Hunter</u>.

### III. <u>Kogut's Confession and Collateral Estoppel</u>

        Kogut's confession was perhaps the most significant piece

of evidence offered by the County in Plaintiffs' First Trials.  In the case now before the Court, Kogut's confession plays a similarly pivotal and troubling role.  Defendants argue that the confession (1) was determined to be voluntary in prior state court proceedings, (2) established probable cause for Plaintiffs' arrests and prosecutions, (3) cannot be relitigated because of the doctrine of collateral estoppel, and (4) provides a defense against many of Plaintiffs' claims here.  Plaintiffs, on the other hand, argue that collateral estoppel is inapplicable with regard to Kogut's confession, because, in light of the recently discovered evidence, Plaintiffs did not have a full and fair opportunity to litigate the issue of the voluntariness of the confession.

> A.   <u>Collateral Estoppel Under New York Law</u>

In applying the doctrine of issue preclusion "federal court[s] must . . . [utilize] the collateral estoppel rules of the state which rendered the judgment." <u>Owens v. Treder</u>, 873 F.2d 604, 607 (2d Cir. 1989).  Accordingly, this Court must apply New York law to determine the preclusive effect of the prior state criminal judgment. <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); <u>Allen v. McCurry</u>, 449 U.S. 90, 95-96, S. Ct. 411, 66 L. Ed. 2d 308 (1980).

In New York, to invoke the doctrine of issue preclusion, a plaintiff must prove: "First . . . that the identical issue was necessarily decided in the prior action and is decisive in the

present action[, and] [s]econd, [that] the party to be precluded from relitigating an issue . . . had a full and fair opportunity to contest the prior determination." <u>D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.</u>, 564 N.E.2d 634, 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24 (1990) (citing <u>Kaufman v. Lilly & Co.</u>, 482 N.E.2d 63, 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584 (1985)); <u>see also</u> <u>Green v. Montgomery</u>, 219 F.3d 52, 55 (2d Cir. 2000).  When a court makes a "final judgment, and the determination is essential to the judgment, <u>the determination is conclusive</u>."  Restatement (Second) of Judgments § 27 (1980) (emphasis added); <u>see also</u> <u>Owens v. Treder</u>, 873 F.2d at 607.

In <u>Owens</u>, the Second Circuit clearly articulated the application of the first part of the test.  <u>Owens</u> involved a Plaintiff who brought a Section 1983 action alleging that his prior confession was false and had been coerced due to police brutality. <u>Owens</u>, 873 F.2d at 605.  Defendants moved for summary judgment arguing that the issue of the voluntariness of Plaintiff's confession was precluded since it had been litigated at Plaintiff's prior criminal trial and affirmed on appeal.  <u>Id</u>. at 606.  The District Court held that since the Appellate Division, Second Department, in affirming Plaintiff's conviction, failed to make a special finding on the issue of the voluntariness of the confession, the issue was not precluded.  <u>Id</u>. at 612.  However, the Court emphasized that "[h]ad [the Appellate Division] specifically

23

addressed the suppression issue, we would have no problem in determining that collateral estoppel would apply." <u>Id</u>. at 610-11 (noting that collateral estoppel did not apply to the issue of the voluntariness of the confession because the Appellate Division's decision was ambiguous and "federal district and appellate courts should not attempt to divine the unspoken intent of state courts rendering ambiguous decisions").

B. <u>Collateral Estoppel does not Prevent any of the Plaintiffs from Relitigating the Issue of the Voluntariness of Kogut's Confession; Although the Identical Issue was Necessarily Decided in the Prior Action, a Vacated Judgment Cannot have any Preclusive Effect on Subsequent Proceedings</u>

In the Court's prior Order, the Court noted that the Appellate Division, Second Department, made a <u>specific</u> <u>finding</u> that the "totality of the defendant's statements were [voluntarily] made . . . ." <u>New York v. Kogut</u>, 176 A.D.2d 757, 757-58, 575 N.Y.S.2d 96 (App. Div. 1991). <u>Owens</u> made clear that an unambiguous Appellate Division ruling that the trial court properly refused to admit a confession after a suppression hearing "would have barred relitigation of the coercion issue in th[e] § 1983 action." <u>Id.</u> at 611. Furthermore, it held that contrary to the Plaintiffs' contention, the Appellate Division's judgment cannot be invalidated by Kogut's subsequent acquittal. This finding was in error. "[A] vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation." <u>Boston Firefighters Union v. Boston Police Patrolmen's Ass'n</u>, 468 U.S. 1206, 1211, 104 S. Ct. 3576, 82

24

L. Ed. 2d 874 (1984); <u>United States v. Lawson</u>, 736 F.2d 835 (<u>citing</u>

<u>United States v. Ayres</u>, 76 U.S. 608, 19 L. Ed. 625 (1869)).  The
Court's inquiry need only go this far.[10]

---

[10] Only Kogut's ability to relitigate the issue of
collateral estoppel is now at issue.  In his December 2004
decision, Judge Ort stated:

> Defendant requests a "rehearing" or a de novo
> suppression hearing based upon the newly
> discovered scientific evidence and an alleged
> <u>Rosario</u> violation, the failure to turn over
> the charts of defendant's polygraph
> examination.  The People argue that the court
> is barred from ordering a new suppression
> hearing by the law of the case doctrine.  <u>See</u>
> <u>People v. Bilsky</u>, 95 N.Y.2d 172 (2000).
> However, law of the case is not an
> "inflexible rule."  <u>People v. Leone</u>, 44
> N.Y.2d 315, 320 (1978) (Fuchsberg, J.,
> Concurring).  "In criminal no less than in
> civil cases, where circumstances require it,
> one Judge has the power to deviate from a
> decision made by another."  44 N.Y.2d at 321.
> Since the trial court has discretion to
> reopen a suppression hearing after an
> appellate court has remitted the case for a
> new trial, <u>People v. Hults</u>, 150 A.D.2d 726
> (2d Dep't 1989), it should have similar
> discretion upon the granting of a motion to
> vacate a judgment of conviction.  However
> that may be, defendant presents no facts
> militating in favor of the granting of a new
> hearing.  While the newly discovered
> scientific evidence tends to rebut the
> alleged motive for committing the crime and
> discredits the forensic evidence connecting
> defendants to the murder, it does not bear on
> the voluntariness of defendant's confession.
>      Moreover, the Court notes that, to the
> extent that defendant denies making the
> statement attributed to him by the Police,
> the issue of whether the statement was in
> fact made by the defendant is reserved for
> trial and beyond the scope of a suppression
> hearing.  <u>People v. Washington</u>, 51 N.Y.2d

Accordingly, collateral estoppel does not bar any of the Plaintiffs from relitigating whether Kogut's confession was voluntary.

IV.  <u>Plaintiffs' Claims of Due Process Violations Based on Falsified Evidence and Falsified Documents</u>

The Plaintiffs allege that the Defendants committed the following acts with regards to falsified evidence: (1) coerced confessions/statements from Kogut, Restivo, and other witnesses; (2) planted Fusco's hair with other hairs found in Restivo's van; and (3) withheld material exculpatory evidence from the prosecution. (Restivo & Halstead Am. Compl. ¶¶ 138-40.)

Claims of falsified evidence only constitute a cause of action under Section 1983 when the falsified evidence results in a deprivation without due process of law in violation of the Fifth Amendment.  <u>Zahrey v. Coffey</u>, 221 F.3d 342, 349 (2d Cir. 2000).  In order to establish a claim for falsified evidence a plaintiff must demonstrate the following: (1) that defendant utilized misconduct in order to procure false evidence; (2) that the plaintiff suffered a deprivation of liberty; and (3) that the "deprivation of liberty may

_____

214, 221 (1980).

According to the Court's reading, based on the newly discovered evidence, Judge Ort clearly found that the confession was false, weighing heavily against Defendants' arguments that Judge Ort found in their favor.  (<u>See</u> Kogut Mem. in Supp., Ex. A at 1 ("[I]t is the finding of this court that I do not believe that the question hairs were left in the van on or about November 10th of 1984.").)

be considered a legally cognizable result of the initial misconduct." Id. at 348. This causation requirement is consistent with Supreme Court precedent, which establishes "that section 1983 claims 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Id. at 349-50 (citing Malley v. Briggs, 475 U.S. 335, 344-45 n.7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

Upon reconsideration of the Court's August 2009 Order, the Court finds that collateral estoppel does not bar Plaintiffs from relitigating the issue of the voluntariness of Kogut's confession. Thus, the confession, along with the other facts alleged by Plaintiffs, satisfy the first prong. Similarly, assuming these alleged facts to be true, Plaintiffs easily satisfy the second and third prongs.

V.   Statute of Limitations for Malicious Prosecution Claim and Due Process Violation Claims

In its August 2009 Order, the Court held that to determine the applicable statue of limitations, a federal court must look "to the law of the state in which the cause of action arose." Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007). The time at which accrual begins, however, "is a question of federal law that is not resolved by reference to state law." Id. at 388. In the present action, the parties correctly agree that, in New York, the general statute of limitations for personal injury claims is three years. See N.Y.C.P.L.R. § 214(5). Thus, the only

27

issue presented is when accrual began.

When state law is not directly on point, Section 1983 actions "are governed by federal rules conforming in general to common-law tort principles." <u>Wallace</u>, 549 U.S. at 388 (citing <u>Heck</u>, 512 U.S. at 483).  Thus, utilizing this standard, a claim's statute of limitations begins to accrue "when the plaintiff has 'a complete and present cause of action.'" <u>Id.</u> (citing <u>Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferber Corp. of Cal.</u>, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1941)). Because claims of falsified evidence constitute a cause of action under Section 1983 only when the falsified evidence results in a deprivation without due process of law, <u>Zahrey</u>, 221 F.3d at 349, they become "complete and present" after the underlying deprivation is terminated.  <u>See</u> <u>Wallace</u>, 549 U.S. at 388.

On one hand, Defendants maintain that the accrual date for the Plaintiffs' cause of action began on June 11, 2003; the day their convictions were vacated and they were released.  On the other hand, Plaintiffs' claim that the proper date for accrual is December 29, 2005, the day their Indictments were dismissed.  In its August 2009 Order, the Court agreed with Defendants' position.  Upon reconsideration, the Court finds that its previous determination was in error.

Citing the Supreme Court's holding in <u>Wallace</u>, the Court previously held that Plaintiffs' claims accrued at the time of their

release because, it found, that Plaintiffs could have only suffered a deprivation of due process until they were released from prison. This holding was incorrect for two reasons: (1) the Indictments were still pending against the Plaintiffs until their dismissal,[11] and (2) Plaintiffs were released, but were still being deprived of their property in that each Plaintiff was required to post bond and suffer other restrictions of their liberty to secure release.

Accordingly, the Court finds that Plaintiffs' due process claims for falsified evidence and malicious prosecution claims were timely. Additionally, in its August 2009 Order, the Court found that because Plaintiffs only alleged facts against Defendant Milton

---

[11] The termination dates of the Indictments are relevant to Plaintiffs' federal and state malicious prosecution claims, and their claims for due process violations. With regard to the malicious prosecution claims pursuant to § 1983, Plaintiffs' claims could not accrue until they obtained a favorable termination. As stated previously, the favorable termination came at the time the Indictments were dismissed. DiBlasio, 102 F.3d at 658. Similarly, for Plaintiffs' state law malicious prosecution claims, they are required to demonstrate favorable termination; however, they could not demonstrate the favorable termination requirement until after they could no longer be prosecuted. See Britt v. Legal Aid Soc., Inc., 95 N.Y.2d 443, 448, 741 N.E.2d 109, 718 N.Y.S.2d 264 (2000) ("A disposition in a criminal proceeding that allows or contemplates renewal cannot serve as a foundation for a malicious prosecution action because it cannot be determined that the prosecution was unjust or unfounded until it is terminated."); Robbins, 30 N.E. at 978 ("[W]here the criminal proceeding is terminated favorably to the accused, or without his conviction, so that there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense without the commencement of a new proceeding, then there has been a sufficient termination thereof to enable him, proving the other requisite facts, to maintain an action for a malicious prosecution.").

Gruber ("Gruber") relating to the falsification of evidence, all claims against Gruber should have be dismissed. However, upon reconsideration, Gruber should not have been dismissed from the case. Therefore, going forward, Plaintiffs' claims for falsification of evidence against Gruber are reinstated.

VI.   <u>Monell-based Claims</u>

To prevail against a municipality in a Section 1983 action, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right. <u>See</u> <u>Hartline v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008); <u>Zahra v. Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995); <u>Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983); <u>see also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 690-91 (citations omitted). A plaintiff also has the burden of showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983."

Springfield v. Kibbe, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119, 94 L. Ed. 2d 293 (1987) (O'Connor, J., dissenting).

Having now found that Plaintiffs have sufficiently pled underlying constitutional violations, and taking all facts alleged in the Complaints as true, the Court finds that Plaintiffs have sufficiently pled their Monell claims to withstand Defendants' motion to dismiss.   Accordingly, Defendants' motion to dismiss is DENIED on this ground.

VII. Kogut's Battery and Negligent Infliction of Emotional Stress Claims

At the outset, the Court notes that Kogut altogether fails to satisfy the reconsideration standard with regard to his battery claim.   In fact, Kogut's argument on this point consists of a point heading in his table of contents alone, with no accompanying argument.   Therefore, that claim is DISMISSED as time-barred.

Under New York law, it is well settled that the "'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.'"   Jason v. Krey, 2009 WL 614961, at *1 (App. Div. Mar. 10, 2009) (quoting Creed v. United Hosp., 190 A.D.2d 489, 491, 600 N.Y.S.2d 151 (App. Div. 1993)); see, e.g., Friedman v. Meyer, 90 A.D.2d 511, 512, 454 N.Y.S.2d 909 (App. Div. 1992), appeal dismissed

31

59 N.Y.2d 763 ("plaintiff['s] wife may not recover for emotional and psychic harm as a result of [a] stillborn birth").   In his motion papers Kogut states: "The plaintiff's complaint is littered with allegations of fear and physical and emotional intimidation, a fact apparently recognized by this Court as the lack of these elements is not referenced by the Court at all." (Kogut's Mem. in Supp. 24.) Despite his assertions that his complaint is littered with allegations, interestingly, he fails to cite to any of them.  Kogut goes on to state that he is puzzled by the Court's dismissal of the claim because he failed to assert any physical injury in his Complaint.   He states: "Simply put, physical injury is not an element that need be established for this cause of action to succeed."  (Id.)

In general, New York courts have exhibited a "longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury. . . . [because] tort liability is not a panacea capable of redressing every substantial wrong." Broadnax v. Gonzalez, 2 N.Y.3d 148, 153, 809 N.E.2d 645, 648, 777 N.Y.S.2d 416, 419 (2004) (carving out an exception to the general rule, and allowing expectant mothers to recover damages for emotional stress in cases involving medical malpractice resulting in miscarriage or stillbirth); see also Mobley v. King, 4 N.Y.3d 627, 637, 830 N.E.2d 301, 304, 797 N.Y.S.2d 403, 406 (2005) (recognizing

the holding in Broadnax/Fahey as "a narrow one, intended to permit a cause of action where otherwise none would be available to redress the wrongdoing that resulted in a miscarriage or stillbirth.")

Based on the foregoing, Kogut fails to establish that the Court overlooked important "matters or controlling decisions" that would have influenced its prior decision on this issue.  Therefore, Kogut's claim for negligent infliction of emotional distress is DISMISSED.

<u>CONCLUSION</u>

The Court finds Defendants' remaining defenses without merit for purposes of the Rule 12(c) motion.  Accordingly, for the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Court permits the following claims to continue forward: Plaintiffs' malicious prosecution claims relating to their first trial, (2) Kogut's malicious prosecution claim relating to his second trial, (3) Plaintiffs' Due Process claims, (4) Plaintiffs' Monell Claims, (5) Kogut's negligent supervision claim, (6) Kogut's claim based on respondeat superior; and (6) Restivo and Halstead's conspiracy claims.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    December  11 , 2009
          Central Islip, New York

33