UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

JOHN KOGUT,

                           Plaintiff,


              v.


THE COUNTY OF NASSAU, et al.,


                                                      No. CV-06-6695
                           Defendants,                (Seybert, J.)
                                                      (Wall, M.J.)
_____

JOHN RESTIVO, et al.,                                 (consolidated with
                                                      No. 2:06-CV-
6720(JS)(WDW)
                           Plaintiffs,


              v.                                      **ORAL ARGUMENT
                                                      REQUESTED**


THE COUNTY OF NASSAU, et al.,


                           Defendants.
_____



**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**


i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PERTINENT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

THE DA MEMOS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

   I.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   II.    THE DA MEMOS ARE NOT ATTORNEY WORK PRODUCT . . . . . . . . . . . . . 7

        A.  Not Covered Under Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.  Not Covered Under *Hickman* Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.  Substantial Need for the Memos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.  Any Privilege Was Waived . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1. Waiver by Failure to Log at Time of Initial Production . . . . . . . . . . . . . 15

            2. Waiver by Voluntary Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                a.  Not Inadvertent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   III.  DEPOSITION QUESTIONS REGARDING INTERNAL DA DISCUSSIONS ARE NOT PRIVILEGED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   IV.  ADDITIONAL DOCUMENTS RELATING TO THE CRIMINAL PROCEEDINGS AGAINST PLAINTIFFS ARE NOT PRIVILEGED . . . . . . . . 19

        A.  Other NCDA Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        B.  NCME Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        C.  Nassau County Attorney Documents Regarding Witnesses and Witness Interviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            1. Attorney Work Product Does Not Extend to Names of Witnesses . . . . 21

2. Substantial Need Outweighs Lesser Protection for Factual Work
Product . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D. Claim that Documents "Related to the Investigation of the Current Litigation"
Are Not Relevant Invokes No Cognizable Privileges . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Abdell v. City of New York*, No. 05 Civ. 8453, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006) ................................................................................................................ passim

*Barrett v. City of N.Y.*, 237 F.R.D. 39 (E.D.N.Y.2006) ............................................... 24

*Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y.1993)..................... 16

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................................................. 2

*California Public Utilities Commission v. Westinghouse Electric Corp.*, 892 F.2d 778 (9th Cir.1989) ............................................................................ 9

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir.1992) ............... 16

*Cohen v. City of New York*, 255 F.R.D. 110 (S.D.N.Y. 2008)................................. 12, 23

*Constr. Prods. Research, Inc.*, 73 F.3d................................................................. 17

*Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993) ................................................ 14

*Estavez v. Matos*, 125 F.R.D. 28 (S.D.N.Y. 1989) ............................................. 13, 23

*Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19 (1983).................................. 9

*FG Hemisphere Associates, L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700, 2005 WL 545218 (S.D.N.Y. Mar. 8, 2005) ............................................................ 17

*Gonzalez v. City of New York*, No. 08 CV 2699, 2009 WL 2253118 (E.D.N.Y. Jul. 28, 2009) 7, 8, 9, 10

*Grossman v. Schwarz*, 125 F.R.D. 376 (S.D.N.Y.1989) ....................................... 16

*Haus v. City of New York,* No. 03 CV 4915, 2006 WL 3375395 (S.D.N.Y. Nov.17, 2006)......... 9

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................... 7, 8, 9, 19

*Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992) ................... 14

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8 (2d Cir. 1989) ............................ 12

*In re Chevron Corp.*, 2010 WL 4922312 (S.D.N.Y. 2010) ..................................... 16

*In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180 (2d Cir. 2007) ............... 6

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379 (2d Cir. 2003).......................................................................... 6

*In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982) ..................................... 14, 23

*In re Omeprazole Patent Litig.*, No. M-21-81, MDL 1291, 2005 WL 818821 (S.D.N.Y. Feb.18, 2005) ............................................................................ 11

*Jean v. City of New York*, CV-09-801(RJD)(VVP), 2010 WL 148420 (E.D.N.Y Jan. 12, 2010). 8, 9, 21

*Local 851 of Intern. Broth. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F.Supp.2d 127 (E.D.N.Y. 1998) ............................................................ 17

*Lugosch v. Congel*, No. Civ. 1:00-CV-0784, 2006 WL 931687 (N.D.N.Y. Mar.7, 2006).......... 17

*Nextg Networks of NY, Inc. v. City of New York*, 03 Civ. 9672 (RMB)(JCF),

2005 WL 857433 (S.D.N.Y. April 13, 2005) ................................................................ 8, 16, 20

*OneBeacon Ins. Co. v. Forman Intern., Ltd.,* No. 04 Civ. 2271,
   2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ........................................................... 16

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)........................................... 24

*People ex rel. Wheeler v. Southern Pacific Transp. Co.*, No. Civ. S921117LKKGGH,
   1993 WL 816066 (E.D. Cal. Sep.2, 1993) ................................................................ 22

*Ramsey v. NYP Holdings, Inc.,* No. 00 Civ. 3478, 2002 WL 1402055
   (S.D.N.Y. June 27, 2002) .......................................................................................... 9

*Redvanly v. NYNEX Corp.*, 152 F.R.D. 460 (S.D.N.Y. 1993)........................................ 12, 14, 23

*Smith v. Conway Org., Inc.*, 154 F.R.D. 73 (S.D.N.Y.1994)........................................... 16

*Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199 (E.D.N.Y. 2007) ............................... passim

*Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222 LAP THK, 1997 WL 10924 (S.D.N.Y. Jan. 10,
   1997) ......................................................................................................................... 14

*U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) .............................................................. 7, 22

*United States v. Bryan*, 339 U.S. 323 (1950)................................................................. 6

*United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464 (2d Cir.1996)................... 16

*United States v. Gangi*, 1 F. Supp.2d 256 (S.D.N.Y. 1998) .......................................... 17, 18

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)........................................................ 11, 14

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).............................................. 2

*Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009) .............................................. 2

*Warnke v. CVS Corp.*, 265 F.R.D. 64 (E.D.N.Y. 2010) ................................................ 24

*Xerox Corp. v. International Business Machines Corp.*, 79 F.R.D. 7 (S.D.N.Y.1977).......... 13, 23

*Zoller v. Conoco, Inc.*, 137 F.R.D. 9 (W.D. La. 1991) ................................................... 12, 23

**Federal Rules**

Federal Rule of Civil Procedure 26 .......................................................................... passim

**State Cases**

*Curry v. Hosley*, 86 N.Y.2d 470 (1995)........................................................................ 8

**Other Authorities**

Nassau County Charter ............................................................................................ 21

**Treatises**

Wright & Miller, Federal Practice and Procedure (1970).............................................. 9

v

**Introduction**

In this § 1983 wrongful conviction action, defendants improperly seek to withhold from production a number of critical documents plaintiffs John Restivo and Dennis Halstead now move to compel. Most notably, defendants voluntarily produced two memos written by Nassau County District Attorney's Office ("NCDA") prosecutors, before belatedly seeking to claw them back as attorney work product several months later. But neither these memos nor any other documents created by the NCDA during plaintiffs' long-defunct criminal prosecutions are covered by attorney work product privilege. Furthermore, given the circumstances of the production, defendants have waived any claims to privilege. The Court should compel defendants to produce these and other improperly withheld documents.

**Pertinent Factual Background**

As this Court is aware, this litigation concerns the responsibility of Nassau County and various Nassau County Police Department ("NCPD") officers for a stunning miscarriage of justice: the wrongful conviction and nearly 18-year imprisonment of plaintiffs John Restivo and Dennis Halstead, as well as co-plaintiff John Kogut, for the rape and murder of Theresa Fusco, a crime that they did not commit. The Restivo and Halstead prosecution was based primarily on the testimony of jailhouse snitches and what the NCDA would later describe as "drug-addicted acquaintances of the defendants, all of whom received benefits for their testimony," as well as two hairs from the victim, Theresa Fusco, allegedly recovered from Restivo's van four months after the murder.

All three men consistently maintained their innocence. In 1994 and 1995, two rounds of DQ Alpha DNA testing excluded all three men as the source of semen found in the victim's body

1

at autopsy.  Each then moved for a new trial; despite negotiations, the NCDA eventually opposed these motions, which were unsuccessful.  Eight years later, after a new round of more sophisticated DNA testing on newly located evidence again conclusively excluded all three plaintiffs as the source of semen found in the victim's body, the NCDA agreed to vacate the convictions on June 11, 2003.  Kogut was retried at a bench trial and, on or about December 20, 2005, acquitted.  Judge Victor Ort found that the victim's hairs were actually collected from the victim at her autopsy and either planted in Restivo's van or commingled with hairs collected from it.  (Amended Complaint, D.E. 33 ¶ 112.)  The NCDA then moved to dismiss the Restivo and Halstead indictment on December 29, 2005, noting that the "DNA evidence basically disproved [its] theory of the case," and the remaining evidence against them was "inherently suspect. . . ."

**Relevant Procedural History**

This § 1983 suit alleges that NCPD officers including lead detective Joseph Volpe caused plaintiffs' wrongful convictions by, inter alia, suppressing exculpatory evidence.  While police, like prosecutors, have obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory information, they satisfy *Brady* by turning the evidence over to prosecutors.  *Walker v. City of New York*, 974 F.2d 293, 298-99 (2d Cir. 1992).  If both the police officer and the prosecutor know of exculpatory evidence that is not disclosed to the defense, the police officer is not liable, *id.,* and the prosecutor would be absolutely immune, *Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009).  Thus a key issue here is whether exculpatory information never provided to the defense was known to the NCDA during the prosecution.

2

The most significant information plaintiffs allege was withheld from the prosecution and defense is documents disclosed for the first time in this civil action regarding alternate suspects and exculpatory leads in the Theresa Fusco rape/murder ("the French documents").  Briefly, these documents show that police learned early in the investigation that a witness driving home late the night Theresa Fusco went missing, near where her body would eventually be found, heard a girl scream; seeing a car parked by the side of the road, the witness stopped to investigate.  The same car had been reported stolen earlier that evening; when later recovered, its owner found that a length of rope was missing from the back seat (consistent with the ligature used to strangle the victim), and a pair of inside-out girls' striped jeans—matching the jeans the victim was last seen wearing—were found under the passenger seat.  This vehicle had no connection to Restivo, Halstead or Kogut and these NCPD documents were never produced to any of these plaintiffs at their criminal trials.

Defendant, detective Volpe testified in his deposition that the French documents were exculpatory evidence that should have been turned over to the defense, and claimed he had disclosed them (along with all the rest of his files) to the prosecutor.[1]  To date, plaintiffs have deposed the original carrying ADA, Hon. Ed McCarty, and the trial ADA, Fred Klein, both of

---

[1] Deposition of Joseph Volpe (Dec. 2, 2009), at 100:4-01:2 ("Q.  You said earlier that you believed that this material would constitute *Brady* material, the French material, correct? . . . A. Oh, yes."); *id.* at 101:4-16 ("Q.  And if it wasn't disclosed, would you agree with me then that this was a *Brady* violation? . . A.  But it was.  Q.  Well, you're saying that you believe that it was disclosed, right? . . . A.  Based on what I previously stated that I had given all the information in my file over to the DA."); *see also id.* at 96 ("I – I don't recall if I did" discuss search of John French's car with ADA Klein).

3

whom disclaim any memory of the French documents.[2]  Unsurprisingly, given that it is now

decades later, both Klein and McCarty shied away from making any categorical statements about

what they learned when.[3]

None of the French documents were in any of the NCDA files produced to plaintiffs or in

the more complete NCDA file that plaintiffs' counsel earlier reviewed in the County Attorney's

Office.  However, when plaintiffs served requests to admit that the French documents were not

in the NCDA file, defendants demurred, claiming that the NCDA file had been dismantled and

commingled with other documents such that they could neither admit nor deny the request.

Thus, although the weight of evidence contradicts Volpe's claim that he provided the French

documents to the prosecution, plaintiffs have been hampered in their efforts to prove that

definitively.

---

[2] *See, e.g.,* Deposition of Fred Klein (Aug. 23, 2010) at 217:24-18:6 ("Q.  Do you have any general or specific recollection of being told that ladies striped blue jeans were found in a car that was reported by a witness to be near the scene of where Theresa Fusco's body was recovered?  A. No."); *id.* at 219:2-15 (If the jeans turned out to be Fusco's "[t]hat would be significant.  Q.  That would be a big deal, wouldn't it?  A.  It certainly would."); Deposition of Hon. Edward McCarty III (Dec. 23, 2010) at 72:10-12, 87:4-20) (admitting he has no memory of the French car, and that if the French car was involved in Theresa Fusco's disappearance, that would be inconsistent with the later theory of prosecution of Restivo, Halstead and Kogut).

[3] *See, e.g.,* Klein dep. (Aug. 23, 2010), at 175-76 ("I'm saying I don't remember now" with regard to what he discussed with Volpe prior to trial); *id.* at 182-83 ("The best I can tell you is that I don't remember"); McCarty dep. (Dec. 23, 2010) at 38-39 ("I don't remember anything substantive; it's been 25 years."; "It's been 25 years; I do not know.").  Additionally, plaintiffs deposed former Det. Michael O'Leary, who reinvestigated the Fusco rape/murder between 2002 and 2005.  O'Leary testified that he saw in the NCPD case materials a photograph of a car and forensic reports reflecting that no hair or fingerprints were found in it, but when he called Det. Volpe to ask about the car he was told it had "nothing to do with the [Theresa Fusco] homicide." O'Leary did not know that Lori French found pinstriped girls' jeans inside-out in her brother John French's car.  In fact, O'Leary did not see any documentation regarding – nor even hear the names -- John French, Lori French, or Debbie Smith (the witness who had heard the scream). Deposition of Michael O'Leary (Jan. 18, 2011) at 83:4-85:12.

**The DA Memos**

On October 22, 2010, as part of a production containing "document ranges [plaintiffs] should have received but were nonetheless missing," October 22, 2010 Freeman letter to Cornwall (attached as Exhibit 1), defense counsel produced two memos ("the DA memos"): a 17-page March 10, 1995, memo from NCDA Appeals Bureau then-Chief Peter Weinstein and NCDA Appeals Bureau then-Deputy Chief Bruce Whitney to DA Denis Dillon (the "Weinstein memo"), and a 2-page March 13, 1995, memo from trial ADA Fred Klein to then-DA Denis Dillon (the "Klein memo").[4]  Both memos catalogue and assess the evidence—both inculpatory and exculpatory—in the possession of the NCDA in connection with Mr. Restivo and Mr. Halstead's then-pending motions for a new trial based on their 1994 and 1995 DQ Alpha DNA exclusions.

At his February 10, 2011 deposition, Mr. Weinstein testified that he and Mr. Whitney had recommended vacating Mr. Restivo's and Mr. Halstead's convictions; that Mr. Klein had a different view and the issue was "hotly contested" between them.[5] Mr. Weinstein also testified at length about his views of the problems with the evidence against the two men.[6]  However, when plaintiff's counsel attempted to question Mr. Weinstein about the memo he had written contemporaneously, defense counsel asserted the DA memos were covered by Rule 26(b)(3) and had been inadvertently produced and sought to claw them back.  The deposition was left open subject to a resolution of the privilege question.  Attempts to resolve this and related issues, as

---

[4] Given the claim of privilege, the memoranda at issue have not been electronically filed; leave is sought to submit them to the Court for *in camera* review.

[5] *See* Deposition of Peter Weinstein (Feb. 10, 2011) at 200:17-21; *id.* at 203:19-25.

[6] *See, e.g.*, *id.* at 68-80; 132-45.

memorialized in plaintiff's letters of February 14 and 22, 2011, and defense counsel's letter of February 25, 2011 (attached hereto as Exhibits 2, 3 & 4), and Ms. Cornwall's telephone conversation with Ms. Limani on March 3, 2011, have been unsuccessful.[7]  This motion follows.

## Argument

### I.    Legal Standard

"[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand . . . [and the] burden is a heavy one, because privileges are neither lightly created nor expansively construed."  *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).  *See also In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("The party invoking [attorney work product] privilege bears the heavy burden of establishing its applicability.").  Underlying privilege analysis is the "'fundamental maxim,' recognized '[f]or more than three centuries ... that the public ... has a right to every man's evidence,'" *see In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d at 384 (quoting *U.S. v. Bryan*, 339 U.S. 323, 331 (1950)); in the discovery context one effect of this broad sweeping principle is that to be discoverable, evidence "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," Fed R. Civ. P. 26(b)(1).

The attorney work product privilege may be invoked pursuant to Federal Rule of Civil Procedure 26(b)(3) or the common law.  Rule 26(b)(3) provides in relevant part:

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial

---

[7] Based upon these attempts, undersigned counsel certifies that the parties attempted to meet and confer before filing this motion pursuant to LR 7.3.

by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
    (i)  they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
(B) Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

The common-law attorney work product doctrine, first articulated by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), is slightly broader.  While Rule 26(b)(3) only protects documents produced by parties, the *Hickman* doctrine protects, on rare occasion, work by non parties, but <u>only</u> if applying the doctrine to a particular situation would advance the doctrine's purposes. *See Gonzalez v. City of New York*, No. 08 CV 2699, 2009 WL 2253118, at *3 (E.D.N.Y. Jul. 28, 2009); *see also Abdell v. City of New York*, No. 05 Civ. 8453, 2006 WL 2664313, at *3-4 (S.D.N.Y. Sept. 14, 2006).

The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998). The doctrine has three specific purposes; all are focused on avoiding disclosures that might endanger the efficiency and fairness of ongoing or potential litigation.  Thus the *Hickman* doctrine may be invoked only if nondisclosure is necessary to "ensure[] that an attorney will not alter his behavior for fear that his adversary will learn his strategy and thereby gain an advantage"; "alleviate[] the 'freeloader' problem"; or "prevent[] disruption of ongoing

7

litigation." *Abdell*, 2006 WL 2664313, at *3-4 (citing *Hickman*, 329 U.S. at 510-11 (majority

opinion) & 516 (Jackson, J., concurring)); *Gonzalez*, 2009 WL 2253118 at *3 (same).

## II.     The DA Memos Are Not Attorney Work Product

### A.     The DA Memos Are Not Covered by Fed. R. Civ. P. 26(b)(3)

Both when defense counsel first invoked privilege over these DA memos at Mr.

Weinstein's deposition, and, later in their February 25, 2011 letter, they specifically limited their

assertion of privilege to Fed. R. Civ. P. 26(b)(3).[8]   Importantly, any privileges sought to be

invoked must be identified "at the time that a party responds to a discovery request" or "the

privilege is waived." *Nextg Networks of NY, Inc. v. City of N.Y.*, 03 Civ. 9672 (RMB)(JCF), 2005

WL 857433, *2 (S.D.N.Y. April 13, 2005) (noting "party cannot simply hold in reserve its

objections on grounds of privilege 'for later strategic use.'").  Here, defendants did not log the

DA memos as the privileged log when they responded to the relevant discovery requests, *see*

*infra*, and thus waived any applicable privilege; moreover, even if the current claim of privilege

were valid, by limiting it to Rule 26(b)(3), defendants have waived any other potentially

applicable basis for objection.

"[B]y its express terms [Rule 26(b)(3)] affords protection only to documents prepared 'by

or for another party or its representative.'" *Jean*, 2010 WL 148420, at *1 (quoting Fed. R. Civ. P.

26(b)(3)(A)).  But neither the NCDA nor any of its employees is a party to the instant litigation.

Nor was the NCDA representing the County or any individual defendant during the prosecutions

of Restivo, Halstead and Kogut.  *See Curry v. Hosley*, 86 N.Y.2d 470, 473 (1995) ("[T]he

District Attorney's client is the people of the State of New York.").  Accordingly "Rule 26(b)(3)

---

[8] *See* Weinstein dep. (Feb. 10, 2011) at 209-10, attached as Exhibit 5.

simply does not apply" to documents NCDA authored, including the DA memos. *Jean v. City of N.Y.*, CV-09-801(RJD)(VVP), 2010 WL 148420, *1 (E.D.N.Y Jan. 12, 2010); *see also Abdell*, 2006 WL 2664313 at *2-3 (citing *Cal. Pub. Util. Comm. v. Westinghouse Elec. Corp.*, 892 F.2d 778, 781 (9th Cir.1989)); *Ramsey v. NYP Holdings, Inc.,* No. 00 Civ. 3478, 2002 WL 1402055, at *6 (S.D.N.Y. June 27, 2002) (collecting cases); *see also FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (citing 8 Wright & Miller, Federal Practice and Procedure § 2024 at 201 (1970); *Haus v. City of N.Y.,* No. 03 CV 4915, 2006 WL 3375395, at *2 (S.D.N.Y. Nov.17, 2006).

In this jurisdiction, "courts have consistently held that when a prosecutor's criminal file is subpoenaed for use in a subsequent civil proceeding, Rule 26(b)(3) provides no protection because the prosecutor is not a party to the civil action." *Gonzalez*, 2009 WL 2253118 at *2 (internal citations and quotations omitted); *see also Jean*, 2010 WL 148420 at *1) ("[R]elying on the fact that prosecutors whose files were subpoenaed were not parties in civil actions related to a prior criminal investigation, a substantial number of courts have held that Rule 26(b)(3) provides no protection whatsoever for a prosecutor's files."); *Abdell*, 2006 WL 2664313, at *3; *Haus,* 2006 WL 3375395, at *2. As such, the privilege claim should be rejected without further analysis.

**B.    The DA Memos Are Not Privileged Under the *Hickman* Doctrine**

Even had defendants not waived any objection based on *Hickman*, that slightly broader doctrine does not protect the DA memos from disclosure, either.  While non-parties may at times invoke the *Hickman* doctrine, they may only do so where non-disclosure would advance the doctrine's purposes.  *See Gonzalez*, 2009 WL 2253118 at *3; *Abdell*, 2006 WL 2664313, at *3-4; *see also In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 383-87.

9

Here, there is no possibility of endangering the fairness or efficiency of any ongoing or potential litigation involving the NCDA: John Kogut was acquitted, and the Restivo and Halstead indictment was dismissed.  Moreover, trial prosecutor Fred Klein admitted in open court that nothing in the materials the NCDA accumulated in the twenty years of ongoing criminal proceedings culminating in the 2005 dismissal of the indictment would allow it to successfully prosecute either Mr. Restivo or Mr. Halstead.  For the same reasons, there can be no claim anyone is attempting to "freeload" off the NCDA's opinions or strategies.  Finally, Mr. Weinstein has already testified **without objection** (to the best of his recollection without being shown his contemporaneous memo) about his own opinion about the weaknesses of the evidence against Mr. Halstead and Mr. Restivo and his recommendation that the NCDA consent to a new trial in 1995—the very subjects addressed in the Weinstein memo.  Thus defense counsel cannot credibly argue that disclosure of the DA memos would reveal secret mental impressions of the NCDA; that cat is already out of the bag.[9]  All disclosure would do is allow plaintiffs to use a much more accurate and complete version of this account—in the form of contemporaneous and comprehensive memos sent to the County's final policymaker, District Attorney Dillon himself, rather than a 15-year-later attempted reconstruction—for use in depositions and at trial.

---

[9] It is additionally worth noting that at the same time that defendants' attorneys were claiming that attorney work product privilege for some of the work done by the NCDA on the criminal case, they were affirmatively disclosing dozens of documents similar in all relevant respects.  For instance, they chose to produce more than a hundred pages of trial notes by ADA Fred Klein, who conducted the original trials in 1986 as well as Mr. Kogut's retrial in 2005 (significant portions of NC59519-59713).  Having voluntarily disclosed many of Fred Klein's notes, defendants cannot claim to be concerned about revealing NCDA strategy in the now-terminated criminal proceedings.  Indeed, central to plaintiffs' claims is the question of what evidence ADA Klein had, what evidence police defendants withheld from him, and how it all influenced the prosecution.

10

### C.    Substantial Need for the Memos

Apart from the flaws in defendants' assertions of privilege over the DA memos, the

memos are discoverable because: plaintiffs have a substantial need for them.  *See* Fed. R. Civ. P.

26(b)(3)(A)(ii) (explaining documents otherwise protected by attorney work product doctrine are

discoverable if the requesting "party shows that it has substantial need for the materials to

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other

means." ); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 237 (E.D.N.Y. 2007) ("Even where

the applicability of the work product doctrine had been established, factual material may be

ordered produced 'upon a showing of substantial need and inability to obtain the equivalent

without undue hardship.'") (quoting *In re Omeprazole Patent Litig.,* No. M-21-81, MDL 1291,

2005 WL 818821, at *9 (S.D.N.Y. Feb.18, 2005) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 400

(1981)).

One of the key issues in this case is whether the NCPD defendants suppressed

exculpatory evidence from the prosecution.  That an ADA's frank assessment of weaknesses in

the prosecution case does not include any mention of certain exculpatory evidence—notably, but

not solely, the French documents—is compelling proof that, as plaintiffs claim, the NCPD

defendants suppressed this evidence from the prosecution.  As such these DA memos "go to the

heart of the claims in this litigation" and should be disclosed.  *See Cohen v. City of New York*,

255 F.R.D. 110, 125-26 (S.D.N.Y. 2008); *see also Strauss*, 242 F.R.D. at 237 (substantial need

exists where the information sought is "crucial to the determination of whether the defendant

could be held liable for the acts alleged, or carries great probative value on contested issues"

(alterations in original, internal quotation marks omitted)).

11

It is, moreover, impossible to get the equivalent information from another source, because of the substantial passage of time.  Unsurprisingly after 16 years, Mr. Weinstein repeatedly testified that his recollection is limited.[10]   Other discovery thus far has already established the difficulty in proving what was or was not known to the NCDA during the original prosecution in 1985 and 86.  Courts have routinely found that the passage of time, with the concomitant and inevitable deterioration of witness memories, creates the requisite substantial need for materials otherwise protected as attorney work product.  *See Cohen*, 255 F.R.D. at 125 ("because the notes are the product of contemporaneous observations, they cannot be replicated"); *Redvanly v. NYNEX Corp.*, 152 F.R.D. 460, 468-469 (S.D.N.Y. 1993); *Zoller v. Conoco, Inc.*, 137 F.R.D. 9, 10 (W.D. La. 1991) (substantial need for photographs of accident site taken by investigator where site's appearance had changed); *cf. Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir. 1989) ("[d]epositions of persons who were actually present at the meeting, taken shortly after the meeting, provide a satisfactory alternative to" requested notes recording that meeting).  If witnesses' lack of recollection makes it impossible to use depositions to obtain the information contained in attorney work product, that work product must be produced.  *Estavez v. Matos*, 125 F.R.D. 28, 32 (S.D.N.Y. 1989) (witness's "present lack of recollection makes it impossible . . . to obtain the substantial equivalent of her contemporaneous version of material facts by other means"); *Xerox Corp. v. International Business Machines Corp.*, 79 F.R.D. 7, 9 (S.D.N.Y.1977).

---

[10] *See, e.g.*, Weinstein dep. (Feb. 10, 2011), at 59:9-12 ("Do I recall that? No."); 81:11-12 ("my memory is poor"); 136:14-17 ("I don't remember that detail"); 137:2-3 ("again, my recollection is not great").

Furthermore, the DA the memos themselves, as well as other evidence of the internal deliberations in the NCDA office, are highly relevant to plaintiffs' theories of continuing malicious prosecution, conspiracy, and damages.  A jury could find that, but for the NCPD defendants' continuing suppression of exculpatory evidence from, and misrepresentations to, the prosecution, the NCDA would have consented to vacating plaintiffs' convictions in 1995, sparing them 8 of their 18 years of wrongful imprisonment.  To establish this, however, plaintiffs must be able to discover and use the DA memos, as well as to question participants about the substance and tenor of these discussions.[11]

To any extent that defendants wish to argue that the DA memos are "opinion work product" deserving of a higher standard of protection, such heightened protection is unavailable here.  "To be entitled to protection for opinion work product, the party asserting the privilege must show *a real, rather than speculative, concern* that the work product will reveal counsel's thought processes in relation *to pending or anticipated litigation*."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84 (emphasis added, internal quotation marks omitted).  Any opinion or thought processes present in the requested materials would relate not to a pending or anticipated litigation, but to now-terminated criminal proceedings.  Moreover, even opinion work product may be discovered when the mental impressions of the attorney are at issue in a case and the need for the material is compelling.  *See Upjohn Co.*, 449 U.S. at 398-402; *In re John Doe Corp.*, 675 F.2d 482, 492-93 (2d Cir. 1982); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); *Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222 LAP

---

[11] Former NCDA Denis Dillon, who made the ultimate decision about whether to consent to the 1995 motions for new trials, is deceased.

13

THK, 1997 WL 10924, *4 (S.D.N.Y. Jan. 10, 1997); *Redvanly*, 152 F.R.D. at 464.  Documents

containing opinion work product are also discoverable where the factual information contained

therein is not discoverable through other means.  *See Redvanly*, 152 F.R.D. at 468 ("[T]he right

of privacy of an attorney's notes must be balanced against the critical need for the facts. Where

the non-privileged facts are intertwined with information which conceivably is privileged, the

critical factor becomes the availability of the non-privileged facts from other sources; and where

no other sources exist, then a balance must be struck in favor of distilling, if possible, the non-

privileged facts from the attorney's documents.  If such a distillation becomes impossible,

however, then the entire contents of the documents must be produced.").

    Here, the mental impressions of the DAs—what they knew when, and whether they were

misled or pressured by NCPD defendants, and how any NCPD misrepresentations impacted the

DAs' refusal to consent to a new trial in 1995—are squarely at issue.  In similar circumstances,

another court compelled the production of core opinion work product from the DA's file because

it found given the § 1983 plaintiff's allegations that police officers had pressured the DA to

prosecute, the mental impressions of the DAs were at issue and the plaintiff had a substantial

need for the DA files.  *See Doubleday v. Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993).

### D.    Any Potentially Applicable Privilege Has Been Waived

    The initial production of documents in the Bates range 33367-37124 (and within which

these memos fall) was made on December 5, 2008.  Although the Weinstein and Klein memos

themselves were omitted from that production, they were not listed on the applicable December

14

5, 2008 privilege log, *see* Exhibit 6.[12]  On October 22, 2010, as part of an effort by defendants'

new outside counsel to correct deficiencies in their discovery process and make sure that

"plaintiffs have in [their] possession every relevant document to which [they] are entitled,"[13]

defendants produced a box of discovery containing "document ranges [plaintiffs] should have

received but were nonetheless missing."  (Ex.1).  The October 22, 2010 cover letter specifically

identified as included in this production the Bates range NC033687-33710, which included only

the 17-page Weinstein memo (NC33687-33703), the two-page Klein memo (NC33709-10), and

five intervening pages.

### 1. Defendants Waived Privilege by Failure to Log at Time of Initial Production

To invoke privilege and properly withhold requested materials, Rule 26(b)(5) and Local

Rule 26.2 require a party to expressly claim privilege and timely produce a privilege log

describing the document withheld and the privilege that party seeks to invoke.  Importantly, any

privileges the party seeks to invoke must be identified "at the time that a party responds to a

discovery request," and if a party fails to assert a privilege at that time, "the privilege is waived."

*Nextg Networks of NY, Inc,* 2005 WL 857433, at *2 (S.D.N.Y. Apr. 13, 2005).  Indeed, the local

civil rules in this district require that a party withholding a document on the basis of privilege

provide complete identifying information, date, type of document, and subject matter "at the time

of the response to ... discovery."  *Id.* (citations omitted); *see also* E.D.N.Y. LR 26.2(a) and (c)

(requiring an attorney asserting privilege to "identify the nature of the privilege (including work

---

[12] On December 11, 2008, plaintiff's counsel sent a letter noting other apparent errors on the December 5, 2008 privilege log, but never received a response.

[13] August 16, 2010 Freeman letter to Cornwall, attached as Exhibit 7.

15

product) which is being claimed" and to do so "in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the court.").[14]

In addition, a party also waives privilege by failing to follow the requirements of Rule 26(b)(5) and Local Rule 26.2(a) and (c), which require a party to supply in the privilege log all the information necessary to evaluate a claim of privilege.  *See In re Chevron Corp.*, 2010 WL 4922312, *9-10 (S.D.N.Y. 2010) (failure to comply with Rule 26(b)(5) and Local Rule 26.2(c) by providing in a privilege log all the information necessary to "enable the litigants seeking discovery and the court to evaluate whether each of the withheld documents is privileged" is alone sufficient to constitute waiver (alterations in original omitted)); *OneBeacon Ins. Co. v. Forman Intern., Ltd.,* No. 04 Civ. 2271, 2006 WL 3771010, *6 (S.D.N.Y. Dec. 15, 2006) ("Courts in this Circuit have refused to uphold a claim of privilege where privilege log entries fail to provide adequate information to support the claim.").

Even if the attorney work product doctrine were applicable to these DA memos, defendants waived it and any others by failing to note them on the December 5, 2008 privilege log covering this range of documents.  *See* Fed. R. Civ. P. 26(b)(5); L.R. 26.2; *FG Hemisphere Associates, L.L.C. v. Republique Du Congo,* No. 01 Civ. 8700, 2005 WL 545218, at *6

---

[14] *See also Smith v. Franklin Hosp. Medical Center No.,* 04-CV-3555, 2005 WL 2219294, at *2 (E.D.N.Y. Sept. 25, 2005); *Lugosch v. Congel*, No. Civ. 1:00-CV-0784, 2006 WL 931687, at *15 (N.D.N.Y. Mar.7, 2006) ("Failure to timely provide the privilege log or objection constitutes a waiver of any of the asserted privileges."); *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 76 (S.D.N.Y.1994); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir.1992) ("[T]he failure to comply with [Rule 26] may result in a finding that the privilege has been waived."); *Grossman v. Schwarz*, 125 F.R.D. 376, 386-87 (S.D.N.Y. 1989) ("[F]ailure to comply with the explicit requirements of [Rule 26] will be considered presumptive evidence that the claim of privilege is without factual or legal foundation."); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474-75 (S.D.N.Y. 1993).

16

(S.D.N.Y. Mar. 8, 2005) ("the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege."); *see also Strauss,* 242 F.R.D. at 235; *Smith,* 2005 WL 2219294, at *2; *Lugosch,* 2006 WL 931687, at *15; *Constr. Prods. Research, Inc.*, 73 F.3d at 473.

### 2. Defendants Waived Privilege by Voluntary Disclosing the DA Memos

Defendants also waived any potentially applicable privilege by voluntarily disclosing the DA memos on October 22, 2010, along with a letter identifying the two memos and the five pages in between them as part of a "document range[] [plaintiffs] should have received but were nonetheless missing." (Ex. 1). "Even privileged documents . . . are not protected if a party voluntarily discloses them. If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential." *U.S. v. Gangi*, 1 F. Supp.2d 256, 263 (S.D.N.Y. 1998); *see also Local 851 of Intern. Broth. of Teamsters v. Kuehne & Nagel Air Freight, Inc.,* 36 F. Supp.2d 127, 129-30 (E.D.N.Y. 1998) ("Voluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege and, where applicable, work product immunity."). Defendants, having voluntarily made the decision to produce the memorandum and then having done so, cannot now turn around and "seek to keep the document confidential." *Gangi*, 1 F. Supp.2d at 263.

### a. The Disclosure of the DA Memos Was Not Inadvertent

Defendants now claim they disclosed the memoranda inadvertently, but the record belies that claim. According to defense counsel, they spent "months reviewing the documents located at the Nassau County Attorney's Office to determine which discoverable documents had not

17

been copied and bates-stamped and produced to plaintiff's counsel previously."[15]  They then

"spent over a month reviewing these documents to prepare them for production and to determine

what documents are privileged."[16]  We have also been informed orally that both the associate and

the partner reviewed every box before it was produced, and as a result productions were delayed

when the partner was out sick or otherwise busy.  The DA memos were produced as part of a

single box of documents, and comprised 19 pages of a 24-page document range that was

specifically identified in the cover letter as a "document range[] that [plaintiffs] should have

received but were nonetheless missing."  (Ex. 1)  Defendants have previously reviewed their

prior disclosures for inadvertently disclosed materials and asked for the return of such materials,

and never asked for these memoranda back before Weinstein's deposition.[17]

     Moreover, it is worth noting that defendants cannot claim that the subject matter of the

memorandum makes its divulgence self-evidently inadvertent, as defendants have produced a

great number of other documents created by the NCDA for its internal use.  For example, they

produced a memorandum from ADA Biancavilla to ADA Klein on this case (NC58175); a note

from ADA Birk and another from ADA Biancavilla regarding preparations and strategy for the

Kogut retrial in 2005 (NC54108, NC54121); ADA Klein's trial notes, including notes

strategizing how to conduct the cross examination of Mr. Halstead (NC59520-26) and sentencing

in the Kogut trial (NC53835); as well as a memorandum revealing ADA Haley's analysis of

another case and whether or not to proceed in a prosecution of that case (*see* NC24192-97).

## III.    Deposition Questions Regarding Internal DA Discussions Are Not Privileged

---

[15] Nov. 15, 2010 Freeman and Limani Letter to Cornwall, attached as Exhibit 8.

[16] *Id.*

[17] *See* Jan. 18, 2011 Freeman and Limani Letter to Cornwall, attached as Exhibit 9.

Although, as described above, Mr. Weinstein was permitted to testify at length to his personal mental impressions of the evidence against plaintiffs and the merits of their 1995 motions to vacate their convictions, and to testify to the fact of his disagreement on this matter with Fred Klein, questioning at his deposition was inappropriately limited in several ways.  In addition to objecting to the use of the DA memos, defense counsel objected on the basis of attorney work product to any questioning of Mr. Weinstein as to the substance of any internal discussions at the NCDA regarding plaintiffs' 1995 motions to vacate their convictions.  The only basis of this objection can be the *Hickman* doctrine, as Fed. R. Civ. P. 26(b)(3) provides no protection either to non-parties or to intangible work product.  *See Abdell*, 2006 WL 2664313, at *2-3.  But the *Hickman* doctrine does not shield these conversations from disclosure any more than it does the DA memos, and for the same reasons.  Furthermore, as laid out above, plaintiffs have a substantial need for discovery on this issue.  Plaintiffs respectfully request the Court order that they be permitted to inquire into the substance of internal communications at the NCDA regarding their prosecutions, including their 1995 motions to vacate their convictions.

## IV.   Additional Documents Related to the Criminal Proceedings against Plaintiffs Are Not Privileged

### A.   Other NCDA Documents

Besides the DA memos, defendants have also claimed privilege with respect to dozens of other documents generated by NCDA personnel regarding the now-terminated criminal proceedings against plaintiffs.  In response to plaintiffs' eight requests for production since the inception of discovery, defendants have provided four separate privilege logs identifying documents they have withheld: 1) an April 3, 2008 log, attached as Exhibit 10; 2) an undated log

19

served on December 5, 2008, attached with a production letter as Exhibit 6; 3) a log produced by new outside counsel on December 13, 2010 after productions on November 5 and November 15, 2010 occasioned by their review of all the documents previously produced by prior counsel in order to determine which discoverable documents had not been produced, attached as Exhibit 11; and 4) a log dated January 27, 2011 updating and amending the prior log, attached as Exhibit 12. The majority of defendants' claims are explicitly and solely under Rule 26(b)(3) of the Federal Rules of Civil Procedure. *See* Ex. 12 at 7 ("Memorandum is privileged under AWP under FRCP 26(b)(3)"). As discussed above, Rule 26(b)(3) provides no protection to the non-party NCDA, and defendants have waived any claim to protection for these documents under the parts of the doctrine not codified in Rule 26(b)(3) or any other potentially applicable claims of privilege. *See Nextg Networks*, 2005 WL 857433, at \*2. Accordingly, we respectfully request that the Court order the production of the documents listed in Exhibit 13

For other documents from the NCDA, defendants claimed privilege under the common-law attorney work product doctrine. But for the reasons provided above, this does not apply in this circumstance, either. Accordingly, the Court should compel the production of the NCDA documents for which the defendants have claimed common law attorney work product privilege, specifically including the documents listed in Exhibit 14.

### B.    NCME Documents

The January 27, 2011 privilege log (Ex. 12) asserts attorney work product privilege under Rule 26(b)(3) over several documents authored by the Nassau County Medical Examiner's office ("NCME") and transmitted to the NCDA during the criminal prosecution and post-conviction proceedings against Mr. Restivo, Mr. Halstead and Mr. Kogut. But neither the NCME (which

20

prepared the documents) nor the NCDA that received the document is a party to this litigation or the representative of such a party.  Thus, Rule 26(b)(3) does not apply.  *See Jean*, 2010 WL 148420 at *1.

Moreover, the NCME does not exist to aid the NCDA in litigation, and did not produce these documents in order to help the NCDA prevail in the now-terminated criminal proceedings. Rather, it exists "to provide the residents of Nassau County with the most cost effective means of delivering the highest quality of medical-legal investigation into the causes and manner of deaths in Nassau County."[18]  The NCME is under a legal duty to "investigate the facts concerning the circumstances of death," and turn those over to the NCDA.  *See id.*; Nassau County Charter § 906 (2) and (4)(a).  Any documents that passed from the NCME to the NCDA, including the documents here at issue, were created as part of the ordinary business of the NCME and pursuant to that legal duty.  Rule 26(b)(3), however, does not protect documents that are prepared in the ordinary course of business, pursuant to a legal duty, or in furtherance of a government office's routine duties.  *Adlman*, 134 F.3d at 1202; Fed. R. Civ. P. 26(b)(3), Advisory Committee's note ("Materials assembled in the ordinary course of business ... are not under the qualified immunity provided by this subdivision."); *People ex rel. Wheeler v. Southern Pacific Transp. Co.*, No. Civ. S921117LKKGGH, 1993 WL 816066, *4 (E.D. Cal. Sep. 2, 1993).  "Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation."  *Adlman*,

---

[18] Nassau County, Long Island Medical Examiner, <http://www.nassaucountyny.gov/agencies/Medex/index.html> (last accessed February 25, 2011).

134 F.3d at 1202.  Thus the Court should compel the production of the documents listed in Exhibit 15.

### C.      Nassau County Attorney Documents Regarding Witnesses and Witness Interviews

#### 1.      Attorney Work Product Does Not Extend to Names of Witnesses

Next, defendants claim Rule 26(b)(3) attorney work product privilege on various handwritten notes of witness interviews conducted by defendants' counsel.  For each of these documents, defendants have refused to identify the witnesses concerned.  However, "work product protection does not extend to facts within a document or to the identities of people with relevant knowledge."  *Strauss*, 242 F.R.D. at  232; *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter . . . including . . . the identity and location of persons who know of any discoverable matter.").  Defendants have no ground for not disclosing the names of the witnesses to whom the notes relate.

#### 2.      Substantial Need Outweighs Protection for Factual Work Product

Moreover, while defense counsels' notes are their work product, they are factual work product, which merits less protection than core opinion work product, s*ee In re John Doe Corp.*, 675 F.2d at 493, and, consequently "may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *Strauss*, 242 F.R.D. at  237; Fed. R. Civ. P. 26(b)(3)(A)(ii) (documents otherwise protected by attorney work product doctrine are discoverable if the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial

equivalent by other means").[19]

Here, plaintiffs have good reason to believe that they have just such a substantial need, and request that this Court compel the production of those documents, listed at Exhibit 16. First, given the substantial passage of time in this case, many witnesses will have passed away, disappeared or experienced a failure of memory, making it impossible for plaintiffs to acquire today information that may have been available to defense attorneys when they did their investigations. *See Cohen*, 255 F.R.D. at 126 ; *Redvanly,*152 F.R.D. at 468-469; *Zoller* 137 F.R.D. at 10; *Estavez* 125 F.R.D. at 32; *Xerox Corp.*, 79 F.R.D. at 9. Additionally, plaintiffs have encountered significant resistance from witnesses not wanting further involvement with the case, but reporting contact with County agents with regard to this civil action. As defendants have withheld the names of the witnesses they have interviewed, plaintiffs cannot determine whether they have a substantial need for any specific interview notes or make a more specific argument explaining this substantial need. Plaintiffs therefore request that the Court order defendants to set out in their response papers the identities of the witnesses to whom these notes relate, as well as other pertinent information regarding such witnesses and their contact with defendants, so that plaintiffs may more fully articulate their substantial need in their reply brief.

**D.    Defendants' Claim that Documents "Related to the Investigation of the Current Litigation" Are Not Relevant Invokes No Cognizable Privilege.**

On their updated January 27, 2011 privilege log (Ex. 12), defendants claim privilege on

---

[19] Even if the notes are not wholly factual, defendants must disclose the factual matter within them. *See Redvanly*, 152 F.R.D. at 468. If the factual and other work product are so substantially intertwined that such separation is impossible, a showing of substantial need and the impossibility of obtaining the same information from other sources, "then the entire contents of the documents must be produced." *Id.*

eighteen documents on the basis that those documents are "not relevant to Plaintiff's discovery requests – Related to investigation of current litigation."[20]  It is worth noting that they do not claim that the documents are not relevant to the litigation, such as to be undiscoverable per Rule 26(b)(1), and, by failing to make that claim or any claim with respect to a potentially applicable privilege on their privilege log, have waived any such claims.[21]  More importantly, plaintiffs have made explicit and comprehensive document requests for all documents related to the investigation of the current litigation.[22]  These requests clearly encompass the documents in question: for example, the 2007 email exchange between members of the NCDA with respect to an identified witness (NC47456-65) obviously falls within the request for "all documents

---

[20] *See* Exhibit 12 at 14.

[21] Even if they had made such a claim, it would fail. According to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  As this court recently explained, "'[r]elevance' under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (Tomlinson, J.) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Moreover, the information sought "need not be admissible at trial to be discoverable." *Barrett v. City of N.Y.*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006). The documents in question fall quite comfortably within Rule 26's broad conception of relevance: documents identified as "related to investigation of current litigation" are by definition relevant to the current litigation and the issues therein.

[22] *See, e.g.*, Plaintiff's Eighth RFP, #56 (requesting all documents "reflecting, concerning or regarding witnesses interviewed or attempted to be interviewed . . . from December 28, 2006 through the present in connection with" the current litigation and the Kelly Morissey and Theresa Fusco homicides); Plaintiff's Sixth RFP, #46 ("Produce any and all documents pertaining to any factual investigation of the November 10, 1984 rape and murder of Theresa Fusco following the filing of the complaint in this matter on December 21, 2006 to the present, whether conducted by the NCPD, the Nassau County District Attorney's Office, the Nassau County Attorney's Office, or any other entity, specifically including any notes, reports, memoranda or other documentation of any surveillance of or contact, whether in person, telephonic, or otherwise, with potential or actual witnesses in this action.").

pertaining to any factual investigation of the November 10, 1984 rape and murder of Theresa Fusco following the filing of the complaint in this matter on December 21, 2006 to the present . . . conducted by . . . the Nassau County District Attorney's Office."  As defendants have raised no valid objection to the production of these documents, the Court should these documents, listed at Exhibit 17, produced.

### Conclusion

For the foregoing reasons, the Court should compel the production of all documents identified above.


Dated: March 4, 2011                                    Respectfully submitted,
      New York, New York

                                                            By:  _/s/ Deborah L. Cornwall_____

                                                            NEUFELD SCHECK & BRUSTIN, LLP
                                                            Deborah L. Cornwall, Esq. (DC 2186)
                                                            Anna Benvenutti Hoffmann, Esq. (AH4008)
                                                            99 Hudson Street, 8th Floor
                                                            New York, New York 10013
                                                            Tel. (212) 965-9081
                                                            Fax (212) 965-9084

                                                            ***Attorneys for Plaintiffs John Restivo and Dennis Halstead***

**Certificate of Service**

I hereby certify that a true and accurate copy of Plaintiffs' Motion to Compel Discovery, with Exhibits 1-17, was served by hand delivery on March 7, 2011, upon the following:

Louis Freeman, Esq.
Nadjia Limani, Esq.
Freeman, Nooter & Ginsberg
The Underwood Building
30 Vesey Street, Suite 100
New York, New York 10007-2914

I hereby certify that a true and accurate copy of Plaintiffs' Motion to Compel Discovery, with Exhibits 1-17, was served by electronic mail on March 7, 2011, upon the following:

Paul Casteleiro, Esq.
200 Washington Street, 5th Floor
Hoboken, New Jersey 07030
Tel. (201) 656-1696
Fax (201) 656-4688

Louis Freeman, Esq.
Nadjia Limani, Esq.
Freeman, Nooter & Ginsberg
The Underwood Building
30 Vesey Street, Suite 100
New York, New York 10007-2914

Anthony M. Grandinette, Esq.
Grandinette & Serio, LLP
114 Old Country Road, Suite 420
Mineola, NY 11501
Tel. (516) 248-5317
Fax 516-294-5348
*Attorneys for John Kogut*

Michael Ferguson
Office of the Nassau County Attorney
Ralph G. Caso Executive & Legislative Building
One West Street
Mineola, New York 11501-4820
*Attorneys for Defendants*

____/s/ Sophie Glickstein_____
Sophie Glickstein
Paralegal

26