UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

JOHN KOGUT,

                      Plaintiff,

         v.

THE COUNTY OF NASSAU, et al.,

                    Defendants,         No. CV-06-6695
                                                (Seybert, J.)
                                                (Wall, M.J.)

JOHN RESTIVO, et al.,

                    Plaintiffs,

         **v.**

THE COUNTY OF NASSAU, et al,

                    Defendants.

_____

# DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...…iii

INTRODUCTION…………………………………………………………………...1

ARGUMENT

     I.      THE DA MEMOS ARE PRIVILEGED ATTORNEY WORK
             PRODUCT...................................................................................1-9

          A.   APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE
              26(b)(3)...............................................................................1-7

          B.  APPLICATION OF THE BROADER COMMON LAW
              ATTORNEY WORK-PRODUCT DOCTRINE..............................7-9


     II.     THE PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY
             HAVE A SUBSTANTIAL NEED FOR THE DA MEMOS...............10-13

     III.    DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER THE DA
             MEMOS....................................................................................13-19

     IV.    THE NASSAU COUNTY ATTORNEY'S OFFICE DOCUMENTS
             REGARDING WITNESSES AND WITNESS INTERVIEWS ARE
             PRIVILEGED..................................................................................20

     V.     DOCUMENTS "RELATED TO THE INVESTIGATION OF THE
             CURRENT LITIGATION" ARE NOT DISCOVERABLE UNDER
             FRCP 26(b)(1)............................................................................20-21

CONCLUSION.......................................................................................................22

## **TABLE OF AUTHORITIES**

**Cases**

Abdell v. City of N.Y., 2006 U.S. Dist. LEXIS 66114 (S.D.N.Y. 2006)..................5,7-8,10

Allied Irish Banks, P.L.C. v. Bank of America, N.A., 252 F.R.D. 163
(S.D.N.Y. 2008)......................................................................................................7

Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 1998 U.S. Dist. LEXIS 13611
(S.D.N.Y. 1998)..................................................................................................2-3

Ceco Steel Products Corp. v. H.K. Porter Co., 31 F.R.D. 142 (N.D. Ill. 1962).............6

Cohen v. City of N.Y., 255 F.R.D. 110 (S.D.N.Y. 2008)............................................11,13

Doubleday v. Ruh, 149 F.R.D. 601 (E.D.Cal. 1993)..................................................11-12

ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins., 1998 U.S. Dist. LEXIS 8808
(S.D.N.Y. 1998)..................................................................................................2-3

Ford v. Philips Electronics Instruments Co., 82 F.R.D. 359 (E.D. Pa. 1979)...............6

Gonzalez v. City of N.Y., 2009 U.S. Dist. LEXIS 64835 (E.D.N.Y. 2009).................5,7-8

Haus v. City of N.Y., 2006 U.S. Dist. LEXIS 85225 (S.D.N.Y. 2006)..........................5,7

Hickman v. Taylor, 329 U.S. 495 (1947).............................................................2-3,7-8

In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982,
561 F. Supp. 1247 (2d Cir. 1982)............................................................................3

In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982)..................................................11,20

Jean v. City of N.Y., 2010 WL 148420 (E.D.N.Y. 2010)..........................................8,10-11

Nat'l Congress for Puerto Rican Rights v. City of N.Y., 194 F.R.D. 105
(S.D.N.Y. 2000)...................................................................................................10

NextG Networks of NY, Inc. v. City of N.Y., 2005 U.S. Dist. LEXIS 6381
(S.D.N.Y. 2005)...............................................................................................2, 17

Redvanly v. NYNEX Corp., 152 F.R.D. 460 (S.D.N.Y. 1993)....................................13

Rexford v. Olczak, 176 F.R.D. 90 (W.D.N.Y. 1997)..................................................3

Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199 (E.D.N.Y. 2007)........................10,18

Tribune Co. v. Purcigliotti, 1998 U.S. Dist. LEXIS 5155 (S.D.N.Y. 1998).................11

Upjohn Co. v. U.S., 449 U.S. 383 (1981)..................................................................20

U.S. v. Adlman, 134 F.3d 1194 (2d Cir. 1998)......................................................2-3,11

U.S. v. Nobles, 422 U.S. 225 (1975).......................................................................5,11

Zoller v. Conoco, Inc., 137 F.R.D. 9 (W.D.La. 1991)................................................13


**Statutes**

Federal Rule of Civil Procedure 26...............................................................passim


**Federal Advisory Committee Notes**

Federal Rule of Civil Procedure 26(b)(3) Advisory Committee Notes, 1970.................6


**Local Rules**

Local Rules of the United States District Courts for the Southern and
Eastern Districts of New York 26.2...........................................................................17

## INTRODUCTION

The attorney work-product doctrine codified in Federal Rule of Civil Procedure 26(b)(3) is applicable to the memoranda drafted by two Assistant District Attorneys in the Nassau County District Attorney's Office at the behest of the District Attorney (Denis Dillon) in anticipation of civil litigation following three defendants' motions for retrial rooted in claims of DNA exoneration.  Plaintiffs have not established the substantial need for the opinion work product contained in these memoranda and the confidential strategic discussions that took place at a meeting among his two Assistant District Attorneys.

Plaintiffs are unable to outweigh the justifications of the doctrine, especially when Defendants have permitted the plaintiffs to inquire as to the facts surrounding the creation of the memoranda and the meeting that took place, without objection.  To the extent plaintiffs have argued that they are entitled to the notes of the Deputy County Attorneys assigned to the current civil litigation by the Nassau County Attorney's Office, the application of the attorney work-product doctrine similarly defeats their claims and they have not made the showing of substantial need required to warrant an exception to the doctrine.

## ARGUMENT

### I.   THE DA MEMOS ARE PRIVILEGED ATTORNEY WORK PRODUCT

#### A. APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 26(b)(3)

An exception exists to the ordinarily broad rules of discovery when the material sought by the opposing party is privileged. Ordinarily, the Federal Rules of Civil Procedure allow for the discovery of any material that is both relevant to any party's claim or defense and no privilege is applicable. <u>Federal Rule of Civil Procedure [hereinafter "FRCP"] 26(b)(1)</u>. One such privilege is attorney work-product. "The work-product doctrine, codified for

1

the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." U.S. v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing Hickman v. Taylor, 329 U.S. 495, 510-511 (1947)).

Defendants agree that the "the party asserting the protection of the work-product doctrine bears the burden of proof." ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins., 1998 U.S. Dist. LEXIS 8808, 31 (S.D.N.Y. 1998). However, we do not agree "defense counsel first invoked privilege over these DA memos at Mr. Weinstein's deposition." Plaintiffs' Motion to Compel Discovery [hereinafter "Plaintiffs' Motion], 8. Defense counsel intended to include both the Peter Weinstein and Fred Klein memoranda [hereinafter "DA Memos"] on their December 5, 2008 privilege log and did include them in their December 13, 2010 privilege log with a different Bates Stamp. This intention is evidenced by the lack of inclusion in the December 5, 2008 production. The documents were omitted because they were considered privileged by the Nassau County Attorney's Office, who prepared that particular privilege log. They were not produced in any form until their inadvertent production on October 22, 2010.[1] Furthermore, Plaintiffs were clearly aware that the exact same memos were the subject of a claim of privilege. A cursory review of the December 13, 2010 privilege log would reveal the claim of privilege over two documents drafted on the same date, with the same author and the same recipient. See Exhibit A (Excerpt from Defendants' 12/13/10 Privilege Log).

Defendants did not intend to "hold in reserve its objections on grounds of privilege 'for later strategic use.'" NextG Networks of NY, Inc. v. City of N.Y., 2005 U.S. Dist. LEXIS 6381, 5-6 (S.D.N.Y. 2005) (citing Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 1998 U.S.

---

[1] For a complete explanation of the inadvertent production on October 22, 2010, see infra Section III.

Dist. LEXIS 13611, 2 (S.D.N.Y. 1998)).  As will be discussed in further detail, <u>infra Section III</u>, the omission of the memos from the Defendants' December 5, 2008 privilege log and their later inadvertent production by Defendants on October 22, 2010 was caused by inadvertence, not strategic maneuvering.

"Three conditions must be met to earn work product protection.  The material must (1) be a document or tangible thing,[2] (2) that was prepared in anticipation of litigation, and (3) was prepared by or for his representative."  <u>In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982</u>, 561 F. Suppp. 1247, 1257 (2d Cir. 1982).  <u>See</u> <u>Hickman at 510</u>.  The memos are documents, clearly satisfying the first prong of the test under FRCP 26(b)(3).  "[T]he appropriate test for assessing the second element of the test is whether 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of litigation.'"  <u>ECDC Envtl., L.C.</u> at 31.(citations omitted).

"Whether material is prepared 'in anticipation of litigation' turns on whether the preparing party had a unilateral belief that litigation was likely and whether the belief was reasonable."  <u>Rexford v. Olczak</u>, 176 F.R.D. 90, 91(W.D.N.Y. 1997) (citations omitted).  In <u>Adlman</u>, the court found that "[t]here is no rule that bars application of work-product protection to documents created prior to the event giving rise to the litigation."  <u>Id</u>. at 1501.  Accordingly, for FRCP 26(b)(3) to be applicable, the District Attorney [hereinafter "DA"] needed to reasonably believe that litigation was "likely" and the fact that the plaintiffs were later released

---

[2] Plaintiffs are seeking not only the production of the DA Memos, but also the testimony of Peter Weinstein and perhaps Fred Klein and Bruce Whitney, should the plaintiffs decide to call them, regarding the assignment given by then District Attorney Denis Dillon to analyze and evaluate the decision whether to retry the defendants, to strategize the likelihood of certain outcomes- to give Mr. Dillon their mental impressions.  As will be discussed in further detail in Section I, <u>infra</u>, the privilege that protects the disclosure of the memos also protects the disclosure of their strategic planning ideas and mental impressions of what took place at the meeting.

from prison (the event that gave rise to this civil litigation) is of no import in this analysis. The documents in question here were prepared at the request of then DA Denis Dillon by the Assistant District Attorney [hereinafter "ADA"] who prosecuted the criminal trials, Fred Klein, the then Chief of Appeals Bureau, ADA Peter Weinstein, and the then Deputy Chief of Appeals Bureau, ADA Bruce Whitney to ascertain their opinions on the viability of defendants' (now, plaintiffs) motions for a new trial. Giving these ADAs the assignment of writing memos regarding the defendant's motions <u>after</u> the DA's office had filed their motion to oppose the defendant's motion for a new trial was done in anticipation of a civil litigation. DA Dillon directed ADAs who were known to have differing opinions on whether the cases should be retried, to write memos reflecting their opinions. Knowledge by the DA that there was a looming civil litigation involving these three defendants was certain. These defendants claimed their innocence throughout their incarceration; these defendants claimed that they would be exonerated by DNA evidence; and these defendants claimed that they were mistreated and subject to misconduct by police officers and detectives. The cumulative effect of these realities is the reasonable expectation that any or all of these defendants could bring a civil lawsuit in the event they were released from prison.

The final prong of the test promulgated in FRCP 26(b)(3) is whether the documents were prepared "by or for another party or its representative." <u>Fed. R. Civ. P. 26(b)(3)</u>. The plaintiffs claim that an ADA cannot be a party in a subsequent civil litigation, and FRCP 26(b)(3) does not apply, because 1) "neither the NCDA nor any of its employees is a party to the instant litigation," 2) "[n]or was the NCDA representing the County or any individual defendant during the prosecutions of Restivo, Halstead and Kogut." <u>Plaintiff's Motion,</u> 8. Defendants do not now claim that the DA's office was representing Nassau County or any of the individual defendants

4

in the civil action or that the client of the DA's office is anyone other than the citizens of New York State.

While ordinarily, as plaintiffs contend, DAs are not entitled to the privilege of FRCP 26(b)(3) in a subsequent civil litigation, here the documents in question were prepared in anticipation of a civil litigation and not in the context of a criminal investigation and prosecution. The DA's office, in anticipation of the civil litigation that would be filed in December of 2006, acted as an agent of Nassau County in 1995 and therefore the memos are entitled to the protection of FRCP 26(b)(3). It is a reality that attorneys have to rely on the assistance of agents in preparing for trial. See U.S. v. Nobles, 422 U.S. 225, 238 (1975).

"[C]ourts …have consistently held that the privilege is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." Abdell v. City of N.Y., 2006 U.S. Dist. LEXIS 66114, 10 (S.D.N.Y. 2006) (emphasis added)(citation omitted). The work product in question in Abdell was the DA Data Sheets (forms that are created in connection with each criminal prosecution, completed by the ADA "who drafts the Criminal Court complaint") completed in connection with the arrest of protestors during the Republican National Convention in New York City in 2004. Id. at 3-4. See Haus v. City of N.Y., 2006 U.S. Dist. LEXIS 85225, 3 (S.D.N.Y. 2006) (FRCP 26(b)(3) was not applicable in work-product analysis where "the targeted documents are the data worksheets prepared by the [ADAs] for all people arrested in connection with the February 15, 2003 demonstration against the impending Iraq war."); See Gonzalez v. City of N.Y., 2009 U.S. Dist. LEXIS 64835, 5-6 (E.D.N.Y. 2009) (Ordering the production of a ADA's file regarding plaintiff's arrest for "Loitering for the Purposes of Engaging in a Prostitution Offense" where criminal charges were dismissed).

The plaintiffs' motion to compel does not concern the standard forms filled out by the DA's office corresponding to an arrest, a conviction, or an ADA's file regarding an arrest that never led to an indictment. In fact, defendants have made every effort to produce the non-privileged portions of the DA file from both the original investigation and trials conducted in 1986/1987 and the re-trial conducted in 2003. Our assertion of privilege here is not an attempt to keep the contents of the DA files hidden from the plaintiffs by cloaking them in the attorney work-product privilege; rather, this is proper invocation of the attorney work-product doctrine.

In addition to protecting against the disclosure of the DA Memos, the court must also protect against the plaintiff's request to "discover and use the DA memos, as well as [] question participants about the substance and tenor of these discussions." Plaintiffs' Motion to Compel Discovery [hereinafter "Plaintiff's Motion], 13. "The distinction implicit in Rule 26(b)(3) between documents and tangible things and facts in no way intimates that Rule 26(b)(3) opens to discovery an attorney's mental impressions…. The Rule in no way implies that mental impressions not embodied in documents are otherwise discoverable. Such a reading of the Rule would be contrary to the comments of the Advisory Committee on the 1970 amendments to the Federal Rules of Civil Procedure: 'The courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories, as well as mental impressions and subjective evaluations of investigators and claim-agents.' Ford v. Philips Electronics Instruments Co., 82 F.R.D. 359, 360 (E.D. Pa. 1979) (citing FED R. CIV. P. 26(b)(3) advisory committee's notes, 1970). See Ceco Steel Products Corp. v. H.K. Porter Co., 31 F.R.D. 142, 144 (N.D. Ill. 1962) (Denying the defendant's motion to compel testimony at a deposition where the testimony would "reflect what plaintiff's counsel then thought were the strong and weak points in [the] case.")

A literal reading of FRCP 26(b)(3) also supports protection against the disclosure of an attorney's mental impressions in a deposition. "While Rule 26(b)(3) protects only 'documents and tangible things,' the cases uniformly hold that disclosure of an attorney's mental processes— even if those thoughts have not been reduced to writing—generally cannot be compelled. <u>Abdell</u> at 14-15.

## B. APPLICATION OF THE BROADER COMMON LAW ATTORNEY WORK-PRODUCT DOCTRINE

*Assuming arguendo* the defendants are not entitled to assert attorney work-product privilege over the memos under FRCP 26(b)(3), the broader common-law principles of the attorney work-product doctrine exempt the documents from production to plaintiffs. "[T]he work product doctrine as developed by federal courts is broader than Rule 26(b)(3)." <u>Gonzalez v. City of N.Y.</u>, 2009 U.S. Dist. LEXIS 64835, 9 (E.D.N.Y. 2009); <u>See Allied Irish Banks, P.L.C. v. Bank of America, N.A.</u>, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) ("'Nonetheless, courts have recognized that "the inapplicability of Rule 26(b)(3) does not preclude granting similar immunity under the common-law work-product doctrine or the 'good cause' balancing test that is incorporated in Federal Rule of Civil Procedure 26(c).'" (citing <u>Haus v. City of N.Y.</u>, 2006 U.S. Dist. LEXIS 85225, 10 (S.D.N.Y. 2006)).

"Courts have extended the work-product doctrine to non-parties the work product protection afforded to parties by the Rule where it is necessary to achieve the underlying purposes of the doctrine." <u>Gonzalez</u> at 9. The underlying purpose of the doctrine is to ensure "that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." <u>Hickman v. Taylor</u>, 329 U.S. 495, 510 (1947). The courts have identified three specific purposes that justify the use of the doctrine where FRCP 26(b)(3) does not apply; (1) where disclosure would "alter attorney behavior," (2) "where disclosure

would reward sloth," or (3) "where disclosure would interfere with ongoing litigation." Gonzalez at 10; See Abdell v. City of N.Y., 2006 U.S. Dist. LEXIS 66114, 14-15 (S.D.N.Y. 2006); See also Jean v. City of N.Y., 2010 WL 148420, 2 (E.D.N.Y. 2010).

In the current case, the protection of the memos is justified by the doctrine's underlying purpose of "protecting an attorney's ability to formulate legal theories and prepare cases." Jean at 2.  In Abdell, the court, in denying the DA's privilege claim, gave great weight to the fact that "prosecutors are routinely required to disclose DA Data Sheets and similar materials to the defense in criminal proceedings." Id. at 15.  Disclosing the data sheets in a civil litigation would not defeat the purpose of the doctrine and would have "no chilling effect on [ADAs], because they draft the worksheets with the expectation that defense attorneys may obtain them as Rosario material." Id.  With respect to DA data sheets, there exists no requisite expectation of "a certain degree of privacy." Hickman at 510.

Here, the memos were not drafted with the expectation that they would be turned over as discoverable material. This is not a form that was created for every arrest or even every prosecution.  Indeed, creation of this type of memo is rare.

In addition to an "expectation of privacy" analysis, in order for common-law work-product protection to be afforded, the document must have been created in anticipation of litigation.  "Where documents are not prepared in anticipation of litigation, they not only fall outside the definition of attorney work product contained in Rule 26(b)(3), they also fall outside the scope of documents that are likely to implicate the purposes of the work product doctrine...." Gonzalez at 12-13.  Here, for the reasons discussed supra, the memos were prepared in anticipation of the current civil litigation.

Furthermore, the fact that Peter Weinstein "testified **without objection** ... about his own opinion about the weaknesses of the evidence against Mr. Halstead and Mr. Restivo and his recommendation that the NCDA consent to a new trial in 1995" does not waive the protection of attorney work-product privilege. Plaintiffs' Motion, 10. Contrary to plaintiffs' assertion that "the cat has been let out of the bag," defense counsel raised an objection based on privilege once the memo was identified on the record by, attorney for plaintiffs John Restivo and Dennis Halstead, Barry Scheck and had earlier informed plaintiffs that they would object on the basis of privilege to any questions concerning the meeting between DA Dillon and ADAs Klein and Weinstein.[3] See Exhibit B (Excerpt from Deposition of Peter Weinstein).

Defendants do not claim that Mr. Weinstein is not permitted to testify regarding facts pertaining to the assignment and the meeting, see infra, and in fact did not object to this line of questioning. See Exhibit B. Defendants, however, do assert that the disclosure plaintiffs seek would do a lot more harm than simply to "allow plaintiffs to use a much more accurate and complete version of this account...for use in depositions and at trial." Plaintiff's Motion, 10. To the contrary, the disclosure sought by the plaintiffs would disclose opinion work product that was created with an expectation of privacy and in anticipation of litigation. In fact, plaintiffs have not shown the attorney work-product doctrine is inapplicable to the DA Memos nor have they shown that defense counsel waived the privilege at Mr. Weinstein's deposition. Disclosure of documents will only be compelled if the moving party has a substantial need for the documents and as the following point will demonstrate no such need can be shown here.

---

[3] Federal Rule of Civil Procedure 30(c)(2) provides in pertinent part that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege...."

## II.   THE PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY HAVE A SUBSTANTIAL NEED FOR THE DA MEMOS

Pursuant to FRCP 26(b)(3), privileged materials "may be discovered if ...the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." "A substantial need for work product materials exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." Nat'l Congress for Puerto Rican Rights v. City of N.Y., 194 F.R.D. 105, 110 (S.D.N.Y. 2000).

"Even where the applicability of the work product doctrine had been established, factual material may be ordered produced upon a showing of substantial need and inability to obtain the equivalent without undue hardship." Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 230 (E.D.N.Y. 2007) (emphasis added) (citations omitted) (quotation marks omitted). See Abdell v. City of N.Y., 2006 U.S. Dist. LEXIS 66114, 23 (S.D.N.Y. 2006) ("[C]ourts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors.") As stated supra, defendants do not claim that plaintiffs are not entitled to the facts surrounding the assignment of the DA Memos or the meeting between DA Dillon and ADAs Klein and Weinstein. See Exhibit B.

"When evaluating whether to order disclosure of work product, the courts have consistently made a distinction between primarily factual work product and so-called 'core' work product, which includes the 'mental impressions, conclusions, opinions, or legal theories of an attorney." Jean v. City of N.Y., 2010 WL 148420, 2 (E.D.N.Y. 2010).  A requesting party will be entitled to fact work product when they have a substantial need for production and inability to

obtain the equivalent from other sources. Cohen v. City of N.Y., 255 F.R.D. 110, 125 (S.D.N.Y. 2008); Fed. R. Civ. P. 26(b)(3). "Opinion work product, on the other hand, will rarely, if ever be subject to disclosure. Cohen at 125; See, U.S. v. Adlman, 134 F.3 1194, 1197 (2d Cir. 1998) (citation omitted) ("Special treatment for opinion work product is justified because, 'at its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" (citing U.S. v. Nobles, 422 U.S. 225, 238 (1975))

"Thus, in this Circuit, 'at a minimum such material is to be protected unless a highly persuasive showing of need is made.'" Jean at 2 (citations omitted). "The high degree of protection accorded to core work product is such that not only parties, but also non-parties have been able to protect it even where work product protection was otherwise denied. In Jean, the court upheld the DA's assertion of work-product privilege because the plaintiff did not make a showing of substantial need despite the fact that the DA was not considered a party under FRCP 26(b)(3). Id. at 2. One situation, which was found to warrant the disclosure of opinion work product, was "where so-called work-product [was] in aid of a criminal scheme [and] fear of disclosure may serve a useful deterrent purposes and be the kind of rare occasion on which an attorney's mental processes are not immune." In re John Doe Corp., 675 F.2d 482, 492 (2d Cir. 1982).

Another situation in which opinion work-product may be produced is when "the mental impressions of the attorney in question are directly at issue in the case and the party seeking the material demonstrates compelling need." Tribune Co. v. Purcigliotti, 1998 U.S. Dist. LEXIS 5155, 22 (S.D.N.Y. 1998). Plaintiffs contend that this case presents circumstances similar to Doubleday v. Ruh, 149 F.R.D. 601 (E.D.Cal. 1993). In Doubleday, in light of the plaintiff's

colorable claims that the police officers manipulated the DA's office and the evidence involved, the court ordered the production of the prosecutorial file. Id. at 607-608. However, the court also took into consideration that the production of the prosecutorial file would preclude the depositions of the ADAs. Id. at 614. Here, plaintiffs deposed ADA Klein for three days and have put on the record that they intend to continue the deposition of ADA Weinstein. . See Exhibit B.   Additionally, the mental impressions that were at issue in Doubleday involved the pressure placed on the prosecutors by the defendant police officers- "[t]o the extent that the prosecutor's notes reveal unease, irritation, or the like with respect to the pressures, if any, brought to bear against them by the individual defendants, those notes constitute the heart of the plaintiff's case." Doubleday at 608.

Plaintiffs have not established that the mental impressions of DA Dillon, ADA Klein, ADA Whitney and/or ADA Weinstein contained in the memos "constitute the heart of their case" to warrant the production of the memos.  The plaintiffs' reliance on exculpatory material in the context of the production of the memos is misplaced.  DA Dillon did not ask ADA Klein, ADA Whitney and ADA Weinstein to draft a memo concerning all exculpatory evidence provided to the DA's office.  The logic employed by the plaintiffs, that because the exculpatory evidence was not discussed in the memo, the police must have suppressed this evidence from the prosecution, is simply poor.  In order to ascertain what was requested by DA Dillon, the plaintiffs have been, and are free to ask without objection, what the nature of the assignment was.[4]  Obviously, they already possess knowledge of the facts since they characterize the ADA memo as "an ADA's frank assessment of weaknesses in the prosecution case." Plaintiff's  This

---

[4] Moreover, defendants have produced the entire DA file from both the original investigation and trials conducted in 1986/1987 and the re-trial conducted in 2003 with the exception of privileged material.

is simply not a case of the plaintiffs being unable to ascertain the facts by any other means except the documents which they seek. See Redvanly v. NYNEX Corp., 152 F.R.D. 460, 468 (S.D.N.Y. 1993). Plaintiffs have not and cannot establish that a discussion of the exculpatory evidence that is the heart of their claim was present or should have been present in the memos. For this reason, they have not met the substantially high need required for the production of opinion work-product.

Plaintiffs also argue that the passage of time warrants the disclosure of opinion work product. In the cases cited by the plaintiffs, the courts have held that the passage of time can compel the disclosure of attorney notes or photographs when the information can not be obtained from a similar source. In Redvanly, the plaintiff argued that the passage of time warranted the production of an attorney's notes from a meeting due to the fact that the notes contained a "factual recounting of the meeting which he needed in order to learn what happened at that meeting." The court agreed. Id. at 468-469. In Zoller v. Conoco, Inc., 137 F.R.D. 9, 9-10 (W.D.La. 1991), the court ordered the production of photos taken as part of an investigation in anticipation of litigation because a verbal description cannot substitute for a photograph. In Cohen, the court ordered the production of "legal observer" notes because they were the product of contemporaneous observations. Id. at 125. Here, the documents in question are distinguishable from the notes in Redvanly, Zoller and Cohen because the facts in those notes were not readily available from other sources and did not contain analysis and opinion. In stark contrast, the facts underlying the instant memos are readily available from other sources.

## III.    DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER THE DA MEMOS

On December 5, 2008, on behalf of the Nassau County Attorney's Office, Law Assistant Matthew Weinick produced to Debi Cornwall documents with Bate Stamps NC 033367-

NC 037124. On the same date, Mr. Weinick produced Defendants' December 5, 2008 privilege log to Debi Cornwall, which was delivered in hard copy by overnight mail.

On September 13, 2010, at defense counsel's request, Debi Cornwall produced three disks to defendants. These disks contained all the discovery documents provided to plaintiffs by defendants, Bates Stamp range NC 000001- NC 043252. Defendants made this request of plaintiffs' counsel to ensure that plaintiffs had received all of the documents to which they were entitled.

Upon receipt of these disks, a paralegal was assigned to review each PDF file, page by page, to determine if there were any gaps in the Bates Stamp range. Once he determined the gaps in the Bates Stamp range in the production to plaintiffs, he was provided with copies of the privilege logs submitted to plaintiffs by the Nassau County Attorney's Office. Based on this review, on October 22, 2010, we produced all "document ranges [plaintiffs] should have received but were nonetheless missing." Exhibit C (Louis Freeman and Nadjia Limani letter to Anna Hoffman dated February 25, 2010). Plaintiffs are correct that this October 22, 2010 did include NC 33687- NC 33710, the range that includes both DA Memos. However it was never our intention to disclose privileged documents.

In addition to reviewing the documents previously produced to the plaintiffs since the inception of this law suit, in September of 2010, we began the process of reviewing additional discovery documents for claims of privilege and compiling a privilege log based on such review in order to make additional productions to plaintiffs.[5] On November 3, November 12, November 15, and November 21, 2010, we produced NC 043254- NC 066295 to plaintiffs, with the

---

[5] Many of these documents had been previously produced to plaintiffs by the Nassau County Attorney's Office. However, in the interest of keeping the files intact, we produced them in order and in their entirety with the exception of privileged documents.

14

exception of privileged documents. See Exhibit D (Cover letters of productions from Louis Freeman to Debi Cornwall on November 3, November 12, and November 21, 2010)

On December 13, 2010, we provided plaintiffs with a privilege log corresponding to the November 3, November 12, November 15, and November 21, 2010 productions. On January 27, 2011, we provided plaintiffs with a revised privilege log. In both privilege logs, there are two entries for a memo dated March 10, 1995 authored by Peter Weinstein (NC 063033- NC 063054 and NC 063280- NC 063296) and one entry for a memo dated March 13, 1995 authored by Fred Klein (NC 063033- NC 063054).[6] See Exhibit A. These are clearly the DA Memos at issue here as they are memos created on the same date, by the same authors and for the same recipient; the only difference being their Bates Stamp numbers.

In preparation for the plaintiffs' deposition of Peter Weinstein on February 10, 2011, defendants reviewed privilege logs, produced by both Freeman Nooter & Ginsberg and the Nassau County Attorney's Office. It was at this time that we noticed a formatting error on the December 13, 2008 privilege log prepared by the Nassau County Attorney's Office. When we first opened the electronic version of the privilege log, several cells were too narrow to display the full contents of the cell. We edited the formatting of this document for printing purposes and brought several copies to plaintiffs' deposition of Peter Weinstein on February 10, 2011. This correctly formatted December 13, 2008 privilege log includes the entire range of "033687- 033711" and describes the privileged material as "Date: 3/10/95, Doc Type: Memo, Author: Peter Weinstein and Bruce Whitney, ADA, Recipient: Denis Dillon, Subject: Fusco Homicide, Privilege: Attorney Work Product." Exhibit E (Correctly Formatted December 13, 2008 Privilege Log). We assumed that when plaintiffs originally received the December 13, 2008

---

[6] The entry for NC 063033- NC 063054 contains both the March 10, 1995 Peter Weinstein memo and the March 13, 1995 Fred Klein memo.

privilege log, they received this correctly formatted version and were therefore on notice that NC 033687- NC 033711 were privileged documents. However, they unbeknownst to defendants they were not.

At the plaintiffs' deposition of Peter Weinstein on February 10, 2011, when Barry Scheck sought to introduce the Peter Weinstein memo as Exhibit 247, we objected on grounds of privilege. See Exhibit B. We then provided Barry Scheck, Anna Hoffman (Mr. Scheck's associate) and Anthony Grandinette with copies of the correctly formatted log.

On February 14, 2011, we received a letter from Anna Hoffman, which stated, among other things, that the defendants had never claimed privilege over NC 033687- NC 033711. See Exhibit F (Anna Hoffman letter to Louis Freeman and Nadjia Limani dated February 14, 2011). As an attachment to her letter, Ms. Hoffman included the privilege log that the plaintiffs did receive. See Exhibit G (Defendants' December 5, 2008 Privilege Log received by plaintiffs). The privilege log only contains an entry for NC 033711 because the top of the cell was cut off by the formatting error. As of February 10, 2011, plaintiffs were on notice of the error and in receipt of a corrected privilege log and furthermore, on February 25, 2011, Mr. Freeman and Ms. Limani jointly wrote to Ms. Hoffman explaining the circumstances in detail.

Plaintiffs now argue that we waived our privilege over the DA Memos because we failed to include them on our December 5, 2008 privilege log and because we disclosed them in our production to plaintiffs on October 22, 2010. We will discuss each of these arguments in turn.

According to FRCP 26(b)(5), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) described the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a

16

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 26.2. In every instance defendants have withheld documents from production to plaintiffs on the basis of privilege, we have complied with these rules. "In response to plaintiffs' eight requests for production since the inception of discovery, defendants have provided four separate privilege logs identifying documents they have withheld: 1) an April 3, 2008 log...; 2) an undated log served on December 5, 2008 ...; 3) a log produced by new outside counsel on December 13, 2010 after productions on November 5 and November 15, 2010... and 4) a log dated January 27, 2011 updating and amending their prior log." Plaintiff's Motion, 19-20.

Plaintiffs argue that we have now waived our privilege "and any others by failing to note them on the December 5, 2008 privilege log covering this range of documents." Plaintiff's Motion, 16. In deciding whether a party has indeed waived privilege, a court must decide whether that party has "reserve[d] its objections on grounds of privilege 'for later strategic use." NextG Networks of NY, Inc. v. City of N.Y., 2005 U.S. Dist. LEXIS 6381, 5-6 (S.D.N.Y. 2005) (citation omitted). Here, this is not a case of strategic maneuvering but rather a mistake made by a law assistant in the Nassau County Attorney's Office. Mr. Weinick did print the privilege log so that only the bottom half of the cell was visible and produced this privilege log to plaintiffs on December 5, 2008. As such, plaintiffs were only aware of the claim of privilege on NC 033711. It is worth noting that Me. Weinick did not produce the remainder of the range of that particular entry, NC 033687 – NC 033710- the range that contained the DA Memos. Defendants did intend for these privileged documents to be withheld and included on the privilege log. To be sure,

plaintiffs were on notice of the absence of the documents because they were not produced and not on the privilege log.

Plaintiffs argue that our production of the DA Memos on October 22, 2010 constitutes a waiver of the privilege. On October 22, 2010, our paralegal relying on printed versions of the April 3, 2008 and December 5, 2008 privilege logs provided a production to plaintiffs, which included the DA Memos. He did not conduct his own privilege analysis of the documents, as we believed this had been previously conducted by the Nassau County Attorney's Office and were not seeking to duplicate this review. Because he relied on the incorrectly formatted December 5, 2008 privilege log, the only document in the range of NC 033687 – NC 033710 that appeared privileged to him on the December 5, 2008 log was NC 033710, so he produced NC 033687 – NC 033710. This was the first and only time these documents were produced to plaintiffs.

In Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), the court framed the issue of whether a waiver had occurred in terms of "whether or not the release of documents was a knowing waiver or simply a mistake, immediately recognized and rectified." The production in this case is clearly a mistake and defendants have not "voluntarily made the decision to produce the memorandum." Plaintiff's Motion, 17. Further, defendants did not voluntarily decide to disclose the DA Memos on October 22, 2010; and defendants did not voluntarily decide to disclose the DA Memos in our November and December 2010 productions. This was indicated to plaintiffs by including the DA Memos on our December 13, 2010 privilege log.

Moreover, our inadvertent production does not constitute a waiver because we rectified the mistake as soon as it came to our attention. Defendants did not, as the plaintiffs state, "review[] prior disclosures for inadvertently disclosed materials and ask[] for the return of such

materials" with respect to the October 22,2010 production. Plaintiff's Motion, 18. We did conduct such a review of our November 3, November 12 and November 15, 2010 productions. As for the October 22, 2010 production, we believed that we were only producing non-privileged documents and therefore such a review was not necessary.

As the court stated in Lois Sportswear, U.S.A., Inc., "the elements which go into [a waiver] determination include the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of the discovery and the extent of the disclosure." Id. at 105. By reviewing the privilege logs submitted by the Nassau County Attorney's Office, we had precautions in place to ensure that no privileged documents were produced to plaintiffs on October 22, 2011. Nevertheless, the DA Memos were produced to plaintiffs on October 22, 2011. It was only a matter of months from the production of the DA Memos until we realized that they had been inadvertently produced. We first learned of the error at the deposition of Peter Weinstein on February 10, 2011. In our February 25, 2011 response to Ms. Hoffman's February 14, 2011 letter, we explained the inadvertent production and the mistake in the December 5, 2008 log. Plaintiffs' motion followed.

The fact that defendants have produced other portions of the DA file has no bearing whether the production of the DA Memos was inadvertent. As we have stated supra, we have produced the entire DA file with the exception of privileged documents. We are not claiming privilege over all memoranda produced by the DA's office. The subject matter of the DA Memos is in stark contrast to trial preparation notes or a memorandum relating to prosecution in another non-related case.

## IV. THE NASSAU COUNTY ATTORNEY'S OFFICE DOCUMENTS REGARDING WITNESSES AND WITNESS INTERVIEWS ARE PRIVILEGED

"[T]he Supreme Court [has] indicated that work-product involving the mental processes of attorneys need be divulged, if at all, only on a strong showing 'of necessity and availability by other means." In re John Doe Corp., 675 F.2d 482, 492 (2d Cir. 1982) (citing Upjohn Co. v. U.S., 449 U.S. 383, 402 (1981). Rather than repeat the obvious as to why plaintiffs have not met the strong showing requirement necessary for the production of opinion work product of current counsel, we simply assert that plaintiffs are not entitled to our files including our interviews of witnesses and the names of those witnesses as we prepare for trial. Are the plaintiffs truly seeking the production of our files? If so, wouldn't we be entitled to the files of Neufeld, Scheck & Brustin, LLP as well as other plaintiff's counsel. We reserve any such discussion for oral argument, should it be necessary.

## V.   DOCUMENTS "RELATED TO THE INVESTIGATION OF THE CURRENT LITIGATION" ARE NOT DISCOVERABLE UNDER FRCP 26(b)(1)

The documents that defendants labeled as "[d]ocuments not relevant to Plaintiff's discovery requests- Related to investigation of current litigation" are not subject to discovery under FRCP 26(b)(1). See Exhibit H (Excerpt from Defendants' January 27, 2011 Privilege Log). Plaintiffs argue that because we did not claim that the documents were not relevant to the litigation per FRCP 26(b)(1) on our privilege log, we have waived "any such claims." Plaintiff's Motion, 24. We disagree.

Furthermore, plaintiffs argue that because they have requested "all documents related to the investigation of the current litigation" in their "explicit and comprehensive document requests" they are entitled to these documents. Id. However, plaintiffs fail to take into account that there are some documents that they are just not entitled to. For example,

20

they are <u>obviously</u> not entitled to the "2007 email exchange between members of the NCDA with respect to an identified witness (NC 47456-65)." The e-mail exchange concerns research performed by the DA's office at the request of Liora Ben-Sorek, a deputy county attorney at the Nassau County Attorney's Office, in preparation for a deposition noticed by the plaintiffs. This document does not fall "within the request for 'all documents pertaining to any factual investigation of the November 10, 1984 rape and murder of Theresa Fusco following the filing of the complaint in this matter on December 21, 2006 to the present...conducted by...the Nassau County District Attorney's Office." <u>Plaintiff's Motion</u>, 24-25. This document does not concern an investigation by the District Attorney's Office but rather an investigation performed by the Nassau County Attorney's Office. Many such examples exist. Any such discussion is reserved for oral argument, should it be necessary.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Plaintiffs' Motion to Compel

Discovery.

Dated: March 14, 2011                     Respectfully submitted,
       New York, New York

                                          By: _____

                                          FREEMAN NOOTER & GINSBERG
                                          Louis M. Freeman, Esq.
                                          Nadjia Limani, Esq.
                                          30 Vesey Street, Suite 100
                                          New York, New York
                                          Tel. (212) 608-0808
                                          Fax (212) 962-9696

                                          By: _____
                                          NASSAU COUNTY ATTORNEY'S OFFICE
                                          Michael Ferguson, Esq.
                                          1 West Street
                                          Mineola, New York 11501
                                          Tel. (516) 571-3054
                                          Fax (516) 571-3081