UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN KOGUT, et al.,                )
                                   )
                    Plaintiffs,    ) Docket #
                                   ) 06-CV-6695
          vs.                      ) (JS)(WDW)
                                   ) 06-CV-6720
THE COUNTY OF NASSAU, et al.       ) (JS)(WDW)
                                   )
                    Defendants.    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - )

DEPOSITION OF FRED KLEIN
Mineola, New York
Monday, August 23, 2010

Reported by:
JEAN V. GAFA
JOB NO. 312604



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 2 of 296 PageID #: 5197

2

1

2                              August 23, 2010

3                              10:00 a.m.

4

5               Deposition of FRED KLEIN, held at

6      the offices of Grandinette & Serio, LLP,

7      114 Old Country Road, Suite 420, Mineola,

8      New York, pursuant to Notice, before

9      Jean V. Gafa, a Notary Public of the

10     State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1

2          A P P E A R A N C E S:

3

4     NEUFELD, SCHECK & BRUSTIN, LLP

5     Attorneys for Plaintiffs

6     John Restivo and Dennis Halstead

7            99 Hudson Street

8            New York, New York  10013

9     BY:   BARRY C. SCHECK, ESQ.

10             DEBORAH L. CORNWALL, ESQ.

11             ANNA BENVENUTTI HOFFMAN, ESQ.

12

13     GRANDINETTE & SERIO, LLP

14     Attorneys for Plaintiff

15     John Kogut

16            114 Old Country Road, Suite 420

17            Mineola, New York  11501

18     BY:   ANTHONY M. GRANDINETTE, ESQ.

19

20

21

22

23

24

25



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 4 of 296 PageID #: 5199

```
1
2       A P P E A R A N C E S  (CONT'D)
3
4            MICHAEL J. SEPE, ESQ.
5            Attorneys for the Witness
6                 11 Clinton Avenue
7                 Rockville Centre, NY  11570
8       BY:    MICHAEL J. SEPE, ESQ.
9              GREGORY KOWALSKY, ESQ.
10
11           NASSAU COUNTY
12           OFFICE OF THE COUNTY ATTORNEY
13           Co-Counsel for Defendants
14                One West Street
15                Mineola, New York  11501-4820
16      BY:    MICHAEL J. FERGUSON, ESQ.
17
18           FREEMAN, NOOTER & GINSBERG
19           Co-Counsel for Defendants
20                30 Vesey Street, Suite 100
21                New York, New York  10007
22      BY:    LOUIS M. FREEMAN, ESQ.
23             NADJIA LIMANI, ESQ.
24
25
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1
2                       STIPULATIONS
3
4        IT IS HEREBY STIPULATED AND AGREED by and
5   between the attorneys for the respective
6   parties hereto, that filing, sealing, and
7   certifications are hereby waived;
8        IT IS FURTHER STIPULATED AND AGREED that
9   all objections, except as to the form of the
10  question, shall be reserved to the time of
11  the trial;
12       IT IS FURTHER STIPULATED AND AGREED that
13  the within Deposition may be signed before
14  any Notary Public with the same force and
15  effect as though subscribed and sworn to
16  before this Court.
17
18
19
20
21
22
23
24
25

Toll Free: 800.944.9454
Facsimile: 212.557.5972

ESQUIRE
an Alexander Gallo Company

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 6 of 296 PageID #: 5201

6

Klein

1
2      F R E D   K L E I N ,   called as a
3      witness, having been duly sworn by a
4      Notary Public, was examined and testified
5      as follows:
6  EXAMINATION BY
7  MR. SCHECK:
8          (Time noted:  10:08 a.m.)
9          MR. SCHECK:  I think we should put
10     on the record first that Mr. Klein has to
11     get out of the here at 4:30 because he
12     has a lecture to give at Hofstra.  So I'm
13     totally sympathetic with that, and if we
14     can't finish, we'll reschedule.
15         There's also the matter of the
16     production of the DA's file, and we would
17     certainly want to keep this deposition
18     open until we've finally gotten closure
19     on the issue of the District Attorney's
20     files and productions that are being made
21     of that.
22         Is that right?
23         MR. FREEMAN:  I wouldn't call it
24     productions being made of that, but
25     there's productions that still have to be



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                    K l e i n

2      made, and that production may include

3      productions from the DA's files,

4      including productions you picked out, but

5      I agree that the deposition will be kept

6      open until production is made and you've

7      had a chance to review it.

8           I don't know how long you're going

9      to be, but I've cross noticed, and I

10     would like to ask Mr. Klein some

11     questions when you're done; and that

12     could be today and it could be a

13     different day.

14          MR. SCHECK:  You're going to take

15     some time, I'm sure.

16          MR. GRANDINETTE:  When you use the

17     words "picked out," could you discuss

18     what you mean?

19          MR. FREEMAN:  Yes.  It's my

20     understanding that before I was involved

21     in the case, the Plaintiffs' attorneys

22     had an opportunity to visit the County

23     Attorney's Office and go through what's

24     now being called the "DA's file."

25          My understanding, and somebody will



ESQUIRE
an Alexander/Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

8

Klein

correct me I'm wrong, is that the Plaintiffs' counsel picked out documents from that universe and copied them and that satisfied the Defendants' obligation to produce District Attorney's documents. That's what I meant.

MR. GRANDINETTE:  Okay.

MR. SCHECK:  I think the implication is that one of the issues that's come forward, and I'll go over with Mr. Klein today for sure --

MR. FREEMAN:  Should he remain here for this?

MR. SCHECK:  Yes.  I mean, there's documents in the homicide file we're alleging were not in the District Attorney's files, the one that was produced to us.

So you're not saying, just to be clear on the record, there's certain documents that we selected from the homicide file.

MR. FREEMAN:  No, I wasn't talking about that.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1

2   MR. FERGUSON:  This has all been

3   addressed at length in motion papers

4   submitted to the Court under a formation

5   motion, and we answered and then

6   explained everything about the files at

7   that time; and we went to great length,

8   and I think that the reason I'm bringing

9   it up is I think the Magistrate allowed

10   you or asked you if you wanted to

11   withdraw that motion.

12         And I think your answer was yes.

13   So that motion, I guess, is technically

14   out there in limbo somewhere, but it's

15   all explained in great length in those

16   papers.

17         MR. GRANDINETTE:  I just wanted to

18   make sure that it's clear when we were

19   talking about selecting certain

20   documents, we're talking about a review

21   of documents by myself, as well as a

22   representative of Mr. Scheck's office, in

23   which we identified certain documents,

24   and, you're right, there has been a

25   motion on that issue, but I wanted to be



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

                    Klein

1
2          sure we're talking about the same date,
3          time, and place and the same references.
4                MR. FREEMAN:  Correct.
5                MR. SCHECK:  Are we ready to go?
6                THE WITNESS:  Yes, sir.
7    MR. SCHECK:
8          Q.    Mr. Klein, could you just tell us
9    something about where you're from and
10   something about your educational background?
11         A.    I was born in Nassau County.
12   Actually, I withdraw that right away.
13         I was born in New York City.  My family
14   later moved to Nassau County.
15         Q.    I'm glad you made that distinction?
16         A.    I went to College at American
17   University in Washington, DC.  I went to law
18   school at George Washington University in
19   Washington, DC.
20         I was in private practice in Washington
21   and Maryland for four years.
22         Q.    What were you doing there?
23         A.    For two and a half years, I worked
24   for large firms in antitrust work.  Then I
25   worked for small suburban litigation firms



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 11 of 296 PageID #: 5206

1                       K l e i n

2   doing corporate litigation.

3        In 1979, I became an Assistant DA in

4   Nassau County, August 13th, 1979, and I

5   remained an Assistant DA in Nassau until

6   August 13th, 2006.  I then went, spent three

7   years with the New York State Attorney

8   General's Office and retired from the State

9   in 2009, August, and I've also been teaching

10   at Hofstra Law School.

11        Q.    I'll give you what's previously

12   been marked as Exhibit 71, which is a copy of

13   the transcript of the dismissal hearing.

14        You remember this hearing, do you not,

15   Mr. Klein?

16        A.    Yes.

17        Q.    And this took place on

18   December 29th, 2005 in front of Judge

19   De Nino?

20        A.    Yes.

21        Q.    And I thought maybe we would just

22   review what you said here as a way of getting

23   into the issues.  So calling your attention

24   first to page three, line six, it says that

25   you say at this hearing, "I have been



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 12 of 296 PageID #: 5207

1                        Klein

2    assigned to this prosecution since the spring

3    of 1985."

4         We're talking here about the prosecutions

5    of John Restivo and Dennis Halstead, correct?

6         A.    Yes.

7         Q.    And that's the subject of this

8    proceeding?

9         A.    Okay, this doesn't involve

10   Mr. Kogut?

11        Q.    No.  All I'm saying is this.  This

12   is a transcript of the proceeding where you

13   dismissed the cases against Mr. Restivo and

14   Mr. Halstead.  When it says here, I've been

15   assigned to this prosecution since the Spring

16   of 1985, this prosecution was Halstead and

17   Restivo?

18        A.    I don't know that.  I may have

19   meant the prosecution into the murder of

20   Theresa Fusco.

21        Q.    Which would include the prosecution

22   of John Restivo, Dennis Halstead and John

23   Kogut, correct?

24        A.    Yes.

25        Q.    The next thing you say here is, "I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 13 of 296 PageID #: 5208

```
 1              Klein
 2  presented the evidence to the grand jury that
 3  indicted both John Restivo and Dennis
 4  Halstead.  I tried the first John Kogut trial
 5  in 1986, and I tried the Dennis Halstead and
 6  John Restivo trial in 1986."
 7      That's true, right?
 8      A.    Yes.  I assume I knew the exact
 9  dates then.  It sounds right.
10      Q.    Next paragraph, "I was involved in
11  post conviction DNA issues from the
12  beginning.  I participated in the decisions
13  to grant all three Defendants new pursuant to
14  Section 440 of the Criminal Procedure Law.
15  Since then, I have supervised the trial or
16  retrial of John Kogut, and I had planned to
17  try John Restivo and Dennis Halstead."
18      Is that correct?
19      A.    Yes, sir.
20      Q.    And that is, in fact, what
21  happened, isn't it?
22      A.    What is what happened?
23      Q.    That you tried to cases against
24  John Restivo and Dennis Halstead, as well as
25  John Kogut in the first instance, correct?
```



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2        A.      That's correct.

3        Q.      And that there were a series of

4    post conviction DNA motions that were made in

5    these cases; is that correct?

6        A.      Yes.

7        Q.      And that you participated in all

8    the decisions on the testing and the

9    significance of the testing from the

10   beginning?

11       A.      Yes.

12       Q.      At some point in time, the

13   convictions of Restivo, Halstead and Kogut

14   were all vacated; is that correct?

15       A.      Yes.

16       Q.      Before that step was taken, did you

17   give careful reflection to all the evidence

18   in the case?

19       A.      I hope so.

20       Q.      I mean, that's not a decision you

21   made lightly, correct?

22       A.      I didn't make the decision.  So

23   let's get that straight right away.

24       Q.      But you were one of the people that

25   was participating in the making the decision;



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 15 of 296 PageID #: 5210

```
 1                    Klein
 2   is that correct?
 3         A.    I was participating in providing
 4   input to the people who made the decision.
 5         Q.    The people who made the decision
 6   were?
 7         A.    Well, it was certainly Dennis
 8   Dillon, the District Attorney and whoever the
 9   Chief Assistant was back then.
10         Q.    Pat?
11         A.    I'm not sure if it was Pat
12   McCormick or Harvey Levinson at that point.
13         Q.    You recall at what point myself and
14   other lawyers representing Dennis Halstead
15   and John Kogut actually came to the grand
16   jury room right near here and made a
17   presentation of evidence?
18         A.    I remember it, East Wing, basement.
19         Q.    So the lawyers for Kogut, Restivo
20   and Halstead --
21         A.    Was that before we had vacated the
22   convictions or after?
23         Q.    Well before.
24         A.    Before we vacated?
25         Q.    You remember we made a presentation
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 16 of 296 PageID #: 5211

```
 1                    Klein
 2    of evidence?
 3         A.    I remember that.  I just don't
 4    remember in sequence.
 5         Q.    After that presentation of
 6    evidence, there was reinvestigation, I take
 7    it, that you participated in before the
 8    decision was reached to vacate the
 9    convictions?
10         A.    I didn't participate in the
11    reinvestigation.  That was the homicide
12    squad.
13         Q.    But you were aware of what they
14    uncovered?
15         A.    I can't say I knew everything.  I
16    was supervising it.  I knew certain things,
17    certain things I didn't.
18         Q.    After all the convictions were
19    vacated, a decision was made to retry John
20    Kogut, correct?
21         A.    Yes.
22         Q.    Then he was acquitted after a judge
23    trial in front of Judge Ort?
24         A.    That's right.
25         Q.    When you say here in the
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1
2    transcript, "I had planned to try John
3    Restivo and Dennis Halstead," by that did you
4    mean that if Restivo and Halstead were to be
5    retried, you personally would have tried the
6    case?
7        A.    No.  I doesn't mean I wouldn't have
8    tried the case, but that decision hadn't been
9    made yet.
10        The Trial Assistant on the John Kogut
11   case was no longer going to be an Assistant
12   DA in Nassau County.  So something had to be
13   done, whether I was going to retry it or
14   somebody else.
15        Q.    The trial was conducted by a,
16   let me pronounce his name, Mr. Biancavilla?
17        A.    You did very well.
18        Q.    You're indicating here that you
19   supervised the retrial?
20        A.    Yes.
21        Q.    The next thing you say here, and
22   I'm again referring to the transcript of
23   December 29th, 2005, "As such, Judge, I
24   suggest to the Court that I am at least in an
25   informed position to make this motion to the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 18 of 296 PageID #: 5213

18

1                    Klein

2   Court.

3        That was a fair statement at the time,

4   correct?

5        A.    Yes.

6        Q.    I realize it's been sometime since

7   you looked at this case, but you feel you're

8   pretty familiar with the facts?

9        A.    Depends on what facts and how

10  familiar.

11       Q.    At the time you made this

12  application, you were very familiar with the

13  facts, fair enough?

14       A.    I don't know that I was in the best

15  position or the most informed, but I had

16  enough information to make the decision.

17       Q.    It was your decision not to retry?

18       A.    No.

19       Q.    Whose decision was that?

20       A.    Dennis Dillon.

21       Q.    Turning to the next page, page

22  four, you said to the Judge, "Our plan, the

23  District Attorney's plan, was to see what

24  transpired with respect to the trial of John

25  Kogut, see how it turned out.  That case, we



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
 1                     Klein
 2   felt, was much stronger on the evidence of
 3   guilt than the evidence that we had against
 4   Mr. Halstead and Mr. Restivo.  And while that
 5   case was proceeding, still investigating any
 6   additional evidence against these two
 7   Defendants that could be found and any new
 8   evidence that could result would be generated
 9   by the trial of John Kogut."
10        Have I read that correctly?
11        A.    Yes.  Actually, it's would result,
12   not could.
13        Q.    "Would result or be generated by
14   the trial of John Kogut," right?
15        A.    Yes.
16        Q.    Would it be fair to say that the
17   evidence against Kogut was much stronger than
18   the evidence against Restivo and Halstead?
19        A.    I felt so.
20        Q.    And you felt so even when you first
21   tried these cases?
22        A.    Yes.
23        Q.    You go on to say, and now starting
24   at line 14, "At that point the sole evidence
25   that we had against Mr. Halstead and
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 20 of 296 PageID #: 5215

20

                              Klein

1

2    Mr. Restivo was (1) and this is before the

3    retrial, we had the hair of Theresa Fusco

4    found in John Restivo's van; we had some

5    ambiguous statements that both Defendants

6    made to third parties that could be inferred

7    to indicate that they had some knowledge

8    about the crime, and, finally, we had direct

9    statements that were alleged to have been

10   made to either inmates in the Nassau County

11   Jail or drug addicted acquaintances of the

12   Defendants, all of whom received benefits for

13   their testimony against these two

14   Defendants."

15          Have I read that accurately?

16          A.    Yes.

17          Q.    I realize that you were talking

18   here about both Restivo and Halstead at the

19   same time; is that correct?

20          A.    Yes.

21          Q.    As you sit here today, can you in

22   some ways differentiate between the two of

23   them with respect to ambiguous statements and

24   jailhouse informants, do you remember?

25          A.    Generally.  I mean, if you can



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2     bring some witness up, I can categorize it at

3     best.

4          Q.    Best as you can remember, what

5     ambiguous statements were used against

6     Restivo and what jailhouse informants?

7               MR. SEPE:  I'm sorry.

8               Just to clarify, Mr. Scheck, when

9          you say used against, you mean their

10         first trials?

11              MR. SCHECK:  Yes, their first

12         trials.

13              THE WITNESS:  The jailhouse

14         informant against Restivo was Stephen

15         Dorfman.  I think that was his first

16         name.  I'm trying to think if we used any

17         other jailhouse, I don't think so.

18              Halstead, we had a jailhouse

19         statement from a gentleman named --

20    MR. SCHECK:

21         Q.    Lee O'Hanlon?

22         A.    No, no.  I'm talking about, well, I

23    guess you could consider that too, but he was

24    an acquaintance of Halstead.  I'm talking

25    about a stranger.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 22 of 296 PageID #: 5217

22

1                    Klein

2     I forget the gentleman's name.  He was on

3  probation, I believe.

4         (Discussion held off the record.)

5     No, no, I heard.  Klink's statement, we

6  had a written statement that he gave or

7  somebody turned into the police.  I'm

8  referring to somebody we actually used as

9  a witness.  Henry, I remember.

10     Q.    Mr. Klein, just hold on one second?

11     A.    He was on probation for a marijuana

12  offense, I believe.

13        MR. FREEMAN:  I could supply names,

14    but I don't think it's appropriate.

15        MR. SCHECK:  I don't want you to

16    help out.

17        MR. FERGUSON:  You could try Sam if

18    you want.  You could try Carl.

19        THE WITNESS:  Samuel Newsome.

20  MR. SCHECK:

21     Q.    As far as the Restivo case is

22  concerned, do you remember when you said

23  ambiguous statements, do you remember what

24  you were referring to?

25     A.    Yeah, there were a few.  One set of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

23

1                 Klein

2    statements, I can't say it was one statement.

3    It was made to Harry Smiley.

4        We had another, I think it was more of an

5    overhear, I would call it, than a statement

6    made to a Carl Pazzini, who I think was a

7    relative of Restivo, and I think he was

8    hearing Restivo making statements to somebody

9    else; and he didn't hear the whole statement.

10   He heard snip pets of it.

11       Then there was this whole issue with

12   respect to a witness who shares my last name,

13   Leo Klein with respect to --

14       Q.    When tools were bought?

15       A.    A sander, a rented sander and that

16   whole issue.  So it turned out, I felt, my

17   recollection of it is that turned out to be

18   somewhat incriminating of Mr. Restivo when it

19   all came out.

20       Q.    At the time that you tried this

21   case --

22       A.    I mean, I just did the ones against

23   Restivo.

24       You don't want the ones by Halstead?

25       Q.    No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 24 of 296 PageID #: 5219

24

1                    Klein

2        A.     Is Halstead represented by anybody

3   here?

4        Q.     Yes, I represent him.

5        A.     Oh, both.

6        Q.     Tell us about Mr. Halstead.

7        A.     Halstead we had that we used at the

8   trial.  We had Samuel Newsome, which I

9   remember was a pretty direct admission.

10        We had a wiretap, bug, no, it was a

11  wiretap.  It was on his phone.

12        He made an admission to his sister, I

13  believe, over the phone.  She had asked him

14  if he did it, meaning, I think, the murder of

15  Theresa Fusco, and he said, "Yes."

16        And she said, "Did you really do it," or

17  "Are you really serious," or something.

18        And he said, "Don't ask me shit like

19  that."

20        Q.     The defense was that he wasn't

21  being serious, if you recall?

22        A.     I guess.  I couldn't admit it.  I

23  didn't admit that he was admitting it.

24        The people, the person you mentioned

25  before, the O'Hanlons, we had them, Harry and



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                     Klein
2    Brian.  Newsome, Harry, Brian.
3         There may have been another one or two
4    statements against him.  I'm drawing a blank
5    right now.
6         Q.     A number of these witnesses were
7    drug addicts?
8         A.     Yes.
9         Q.     And even at the time of the trial,
10   the statement of, as you put it here, "drug
11   addicted acquaintances" was something of a
12   concern?
13        A.     It's a credibility issue.
14        Q.     And as far as the jailhouse
15   informants were concerned, even at that time,
16   was the testimony of jailhouse informants to
17   you, as a prosecutor, a matter of concern on
18   the issue of credibility?
19        A.     Credibility was an issue.
20        Q.     Let's go on to page five.
21        A.     Sure.
22        Q.     You tell the Judge, "The statements
23   that we had from the people who were
24   incarcerated with the Defendants or
25   acquainted with the Defendants and received



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 26 of 296 PageID #: 5221

26

1                         Klein

2       benefits for their testimony were to the

3       effect that Mr. Halstead and Mr. Restivo had

4       sex with or raped the victim, but did not

5       kill her, that it was Mr. Kogut that had

6       killed her, statements that were consistent

7       with Mr. Kogut's statement to the police.

8       The DNA evidence, which was obtained post

9       conviction, significantly damaged our cases

10      against Mr. Halstead and Mr. Restivo.  We

11      were left speculating as to why these two

12      admitted rapists left no DNA in the victim

13      while at the same time there was the DNA of

14      somebody else in the victim, and to this date

15      the DNA has not been identified, despite a

16      new police investigation which specifically

17      compared 59 people who were acquainted with

18      the victim or the Defendants or the case in

19      some way, as well as analysis of various DNA

20      databanks that have come up with no match to

21      the DNA that was present in the victim."

22           So would it be fair to say that after the

23      DNA results came out, you had even more

24      concerns about the reliability, first, let's

25      say, of the jailhouse informants?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2        A.      After the ultimate DNA results came

3    out.  There were like two or three series.

4        Q.      Yes.

5        A.      So after the final rounds of

6    testing, yes, that's correct.

7        Q.      Why did you have these doubts after

8    the final round of DNA testing about the

9    jailhouse snitches?

10       A.      Well, my understanding of the DNA

11   testing at that point was that there was,

12   there was DNA in the victim which had not

13   come back to a match, however you want to

14   phrase it, to any of the Defendants, but yet

15   it was someone else's, and that someone else

16   was not Theresa Fusco and was a male.  I

17   believe that's about as much as we knew.

18       Q.      What you said is on the record.

19       But was part of what concerned you now

20   about the admission, so-called admissions to

21   the jailhouse informants, is it those

22   admissions by Restivo and Halstead was that

23   they had sex with the victim and none of

24   their DNA is there, so that raised even more

25   concern in your mind that they were not


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 28 of 296 PageID #: 5223

1                     Klein

2    truthful witnesses?

3         A.    It raised a concern in my mind as

4    to, yeah, I would agree with your statement.

5         Q.    And the same would be true for

6    ambiguous statements or admissions to the

7    drug addicted acquaintances?

8         A.    Yes.

9              MR. SEPE:   Objection.

10   MR. SCHECK:

11        Q.    Picking up where I left off, you

12   then told the Court, "So we were left with

13   speculating as to why their DNA wasn't there

14   and whose DNA is there, and although I would

15   state that the science of how long seminal

16   fluid had been in the victim is somewhat

17   ambiguous, we had no direct proof, none that

18   it was the result of a consensual sexual

19   relationship between the victim and somebody

20   else, which led to the conclusion that, or

21   the reasonable conclusion that it had been

22   the result of the rape."

23        Have I read that correctly?

24        A.    Basically.

25        Q.    So it's fair to say that through



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 29 of 296 PageID #:
5224

29

                    Klein

1

2    all the investigation in this case, you had

3    no proof, none, that somebody had had a prior

4    consensual relationship with Theresa Fusco

5    before she had disappeared from Hot Skates?

6        A.    I would disagree with you on just

7    one minor point in the statement.  We had

8    indirect proof.

9        I said we had no direct proof.  We had no

10   admissions.  We had no eyewitnesses.  We had

11   nothing like that.

12       We did have, I felt, some proof in the

13   testimony of an expert that Mr. Biancavilla

14   had found, with respect to, and I never did

15   fully understand it, something to do with the

16   timing of the DNA in Ms. Fusco, which, I

17   think we argued lended itself to a voluntary

18   sexual partner as opposed to happening at the

19   time of the crime, but that's about as much

20   as I understand about it.  So I specifically

21   said direct proof there.

22       Q.    I think you also said that "the

23   science of how long the seminal fluid had

24   been in the victim is somewhat ambiguous"?

25       A.    That's what I said.  Whether I



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 30 of 296 PageID #: 5225

1                    Klein

2      could have used a better word than

3      "ambiguous," it certainly wasn't conclusive.

4          Q.    Then you go on to say, "In light of

5      the acquittal of John Kogut last week, it

6      became apparent to us that our efforts to

7      explain the DNA as being somehow not

8      inconsistent with the Defendants' guilt was

9      not enough to persuade a fact finder, and

10     that's in a case where there was a videotaped

11     confession; and Mr. Kogut did not even

12     confess to having sex himself with the

13     victim.  So we felt that we had a stronger

14     argument there as to why the DNA was not

15     present than we would have at a trial of

16     Mr. Halstead and Mr. Restivo who allegedly

17     admitted that they did have sex with the

18     victim.  And, obviously, Judge, if we were

19     not able to persuade one fact finder in that

20     particular case where we felt the evidence

21     was so much stronger, it became clear to us

22     that it would be much more difficult to

23     persuade 12 fact finders unanimously beyond a

24     reasonable doubt."

25         Have I read that accurately?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 31 of 296 PageID #: 5226

1                    Klein

2        A.      Basically.  I mean you change

3   "would" to "could" sometimes, but, yeah, I

4   agree with what you're saying.

5        Q.      You go on to say, "Moreover, Judge,

6   the DNA evidence directly contradicts the

7   admissions that these two Defendants were

8   supposed to have made to jail inmates and

9   other people getting deals, admissions that

10  obviously in the law are inherently suspect

11  because of the source and benefits that were

12  accorded to these people as a result of their

13  testimony."

14       Have I read that accurately?

15       A.      Yes.

16       Q.      When you're saying here, what do

17  you mean by that "jail inmates and other

18  people getting deals, and admissions that

19  obviously in the law are inherently suspect

20  because of the source and the benefits that

21  were accorded to these people"?

22       A.      Well, as you know, when the

23  prosecution offers people something in return

24  for the testimony, that inherently becomes an

25  issue of their credibility, whether they're



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    testifying based upon what they truthfully

3    know or whether they're testifying based upon

4    wanting to get something in return.

5         Q.    So would it be fair to say that

6    what you're telling the Judge here is that

7    the testimony of jailhouse informants, people

8    getting deals is inherently suspect, and now,

9    in light of the DNA results, those seem to

10   directly contradict what these informants

11   claimed Restivo and Halstead said, correct?

12        A.    That's what I said.

13        Q.    And then I'm reading now, "Finally,

14   Judge, in Judge Ort's decision last week in

15   the Kogut trial, he affirmatively found as

16   part of his decision that the only other

17   forensic evidence we had in this case that

18   connected the Defendants to the crime was the

19   hair of Theresa Fusco found by the police in

20   John Restivo's van.  The Judge made a

21   specific finding that, in fact, that hair did

22   not come from John Restivo's van, a finding

23   that we felt was likely going to preclude us

24   from introducing that same hair evidence in

25   the trial of these two Defendants.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 33 of 296 PageID #:
5228

1                        Klein

2    Accordingly, your Honor, without the hair

3    evidence connecting the Defendants to the

4    crime, with unexplained DNA evidence

5    basically disproving our theory of the case

6    from the only direct evidence we had, which

7    was these jailhouse admissions, we could not

8    persuade a rational juror of either

9    Mr. Halstead's or Mr. Restivo's guilt beyond

10   a reasonable doubt."

11        Have I read that accurately?

12        A.    "Rational jury," but, yes, you did.

13        Q.    Did you believe all that when you

14   said it?

15        A.    Absolutely.

16        Q.    You stand by that today?

17        A.    Absolutely.

18        Q.    Let's talk a little bit about the

19   hair.  You say here that there was a hair

20   that was found in John Restivo's van that was

21   from Theresa Fusco.

22        A.    That was my understanding.

23        Q.    And that was the only forensic

24   evidence that you had that tied, certainly,

25   John Restivo, certainly, to the case; fair



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

34

```
1                    Klein
2    enough?
3         A.    Yeah, that's my recollection.
4         Q.    Let me ask you, before you came
5    here and testified today, what documents, if
6    any, did you review in preparation for your
7    testimony?
8         A.    I reviewed this.
9         Q.    This meaning?
10        A.    I'm sorry, the exhibit that you've
11   been questioning me about.
12        Q.    Exhibit 71, which is your
13   statements at the time the case was
14   dismissed, correct?
15        A.    Yes.  I reviewed, I know I reviewed
16   a letter that I had written to Mr. Kogut's
17   lawyer, Jimmy Woods.
18        Q.    What letter was that?
19        A.    It was a discovery response, a
20   response to his discovery request.
21        Q.    Jimmy Woods, when was he
22   representing Kogut?
23        A.    He represented Kogut, I know, at
24   least for the hearing.
25        Did he do the trial?
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                      Klein

2          I'm trying to think.  He represented him

3     at the trial.

4          Q.     What was in the letter?

5          A.     The typical demand to produce that

6     he made and our response to it.  I believe I

7     reviewed some, some random Court paperwork,

8     whether it was motions or oppositions to

9     motions relating to, either relating to

10    requests for a new trial or further DNA

11    testing, something of that sort.

12         I can't, I don't remember exactly what

13    they were.  That's all I can remember.  There

14    were several of those, there were maybe four

15    or five of those.

16         Q.     Where did you review these?

17         A.     My house.

18         Q.     How did you get those?

19         A.     My lawyer.

20         Q.     You're indicating Mr. Sepe, who's

21    sitting next to you?

22         A.     Yes.

23         Q.     Do you have an understanding as to

24    who asked you to look at those?

25         A.     No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2          Q.      Do you have those documents that

3    you reviewed here today?

4          A.      No.

5          Q.      Have you looked at any of the

6    depositions of Detective Volpe in this case?

7          A.      The civil case?

8          Q.      Yes.

9          A.      No.

10         Q.      And going back to this statement

11   you made to the Court, I think that you put

12   the evidence against Restivo and Halstead

13   into three categories; number one, the hair

14   found in the van, correct?

15         A.      Yes.

16         Q.      Number two, ambiguous statements to

17   third parties; is that correct?

18         A.      Yes.

19         Q.      And number three, direct statements

20   made to inmates or drug addicted

21   acquaintances, correct?

22         A.      Yes.

23         Q.      That was basically the case against

24   both of them?

25         A.      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 37 of 296 PageID #: 5232

37

1                        Klein

2          Q.      It was the theory of the

3    prosecution case that it was Mr. Restivo's

4    van that was used to abduct Theresa Fusco and

5    that some of the Defendants at least had sex

6    with her in that van?

7          A.      I would agree with that she was

8    abducted in.  As to where they had sex with

9    her, I don't recall.

10         Q.      But it was the prosecution's theory

11   in this case that she was abducted in the van

12   and then delivered to at some point in time

13   the spot where her body was discovered,

14   correct?

15         A.      Yes.

16         Q.      And somewhere along the line, she

17   was raped and murdered?

18         A.      Yes.

19         Q.      So it would be fair to say that a

20   critical part of this case is that it was

21   John Restivo's van that was used in the

22   abduction of Theresa Fusco?

23         A.      It was a part of the case.

24         Q.      If there were evidence that another

25   car was involved in the abduction of Theresa



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2     Fusco, that would be evidence that directly

3     contradicted a main part of your case,

4     correct?

5                    MR. SEPE:   Objection as to the form

6          of the question.

7                    You can answer.

8                    THE WITNESS:   It would directly

9          contradict Mr. Kogut's confession.

10    MR. SCHECK:

11         Q.     That theory was the basis upon

12    which you were trying Kogut, Restivo and

13    Halstead?

14         A.     Not the confession so much as the

15    evidence we had against Halstead, Kogut and

16    Restivo.

17         Q.     But what I'm talking about is the

18    theory that Mr. Restivo's van was used for

19    the abduction.

20         That was a mainstay of the theory in both

21    cases?

22         A.     Yes.

23         Q.     If there were evidence that had

24    been brought to your attention that another

25    car was one that was used to abduct Theresa



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 39 of 296 PageID #: 5234

1                    Klein

2    Fusco, that would be a direct contradiction

3    to one of the mainstays of your theory of the

4    case?

5              MR. SEPE:  Objection as to form.

6              THE WITNESS:  I don't want to use

7         the word "direct contradiction."  It

8         would be inconsistent.

9    MR. SCHECK:

10        Q.     Directly inconsistent?

11        A.     Depends upon the nature of the

12   evidence.

13        Q.     As far as the hair is concerned, if

14   it had, if you had come to learn at the time

15   of the trial of Restivo, Kogut and Halstead

16   that Detective Volpe had planted Theresa

17   Fusco's hair, either in the envelope that

18   contained the hair that was vacuumed from the

19   van or directly in the van, would that have

20   been a matter of concern?

21        A.     Of course.

22        Q.     If you came to believe that he had,

23   that is, Volpe had planted the hair, would

24   you have considered criminally prosecuting

25   him?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2           MR. SEPE:  Objection as to form.

3           Mr. Scheck, rather than me

4     continuing to object, I'll just note a

5     blanket objection.

6           MR. SCHECK:  Sure.

7           MR. SEPE:  I completely understand

8     that you need to ask the witness to

9     hypothesize on certain facts; however,

10    for purposes of form, it does amount to

11    asking him to speculate.

12          So we'll have a continuing

13    objection as to any questions that

14    request him to speculate, and that way I

15    won't be interrupting.

16          MR. SCHECK:  Fine.

17  MR. SCHECK:

18    Q.    Let me be clear as to how I'm

19  asking you this question, Mr. Klein.  I'm

20  asking about your understanding at the time

21  of the trials.

22    A.    You're talking about in 1986 or

23  '85?

24    Q.    Yes.  If you had found out in 1986

25  or '85, proof that you considered persuasive



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 41 of 296 PageID #:
5236

                         Klein

1
2    that Volpe had planted Theresa Fusco's hair

3    in this case, would you have considered

4    prosecuting him for that criminally?

5         A.    I'll answer that a little

6    differently.  I certainly would have called

7    it to the attention of people that would make

8    that judgment.  That wouldn't have been my

9    decision.

10        Q.    Right, you were in a position to

11   make recommendations about what should be

12   done?

13        A.    I was a trial attorney in the Major

14   Offense Bureau, which had nothing to do with

15   the type of criminal activity you're talking

16   about, but, certainly, I would have taken

17   that information and given it to people who

18   would deal with it.

19        Q.    Let me approach it this way.

20        Would you not agree that if there were

21   persuasive evidence discovered at the time of

22   the Restivo, Kogut and Halstead trial that

23   Volpe had planted the hair, planting the hair

24   could well be considered criminal conduct,

25   right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 42 of 296 PageID #: 5237

42

1                           Klein

2          A.      Sure.

3          Q.      What kind of crime would that be?

4          A.      Some type of obstruction of

5     justice.  You know, without the penal law in

6     front of me, I can't think of specific

7     crimes, but it would certainly be criminal.

8          Q.      And if you had discovered at the

9     time of the Restivo, Kogut and Halstead

10    trials substantial evidence that Volpe had

11    planted the hair, would that not raise

12    serious concerns about his credibility as a

13    witness?

14         A.      Is that your question?

15         Q.      That's my question?

16         A.      Yes.

17         Q.      Would that not also present

18    significant problems for you in terms of

19    going forward with the case, certainly,

20    against Restivo and Halstead?

21         A.      Well, in a sense that if what you

22    say is true, that evidence would not be

23    admissible, the hair, then it would be a

24    problem.

25         Q.      But beyond being not admissible, he



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

43

          Klein

1        was the lead investigator in this case,
2
3        Volpe, right?
4            A.    Yes.
5            Q.    So if evidence emerged, persuasive
6        evidence, that Volpe, the lead investigator
7        in this homicide investigation had planted
8        the hair, would that not have created an
9        extremely serious problem for you in the
10       Restivo and Halstead case in terms of even
11       moving forward with the criminal prosecution?
12           A.    I can't say that.
13           Q.    Would it not be damaging to the
14       credibility of the entire investigation if it
15       turned out there was substantial evidence
16       that the lead investigator had planted the
17       hair of the victim in the van of the
18       Defendant?
19           A.    The reason for my response is I
20       don't believe Volpe testified to anything in
21       Halstead and Restivo, or at least anything
22       admissible.  So if he had committed those
23       acts, you know, I don't know how it would
24       have affected the rest of the case.
25           We certainly wouldn't use the hair



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 44 of 296 PageID #: 5239

1                              Klein

2       evidence, and if he didn't testify, I don't

3       think they made any admissions to him, I

4       don't know how it would have affected the

5       case.

6            Q.     Was Volpe not involved in producing

7       some of these jailhouse witnesses?

8            A.     Producing them, no.

9            Q.     In their interrogations?

10           A.     I don't know if he was.  I know

11      there was a detective, big tall fellow,

12      Michael Connaughton.  I know the Samuel

13      Newsome case and the witness and the Dorfman

14      witness came to me through Connaughton.  I

15      don't know about Volpe's involvement.

16           Q.     As the lead homicide detective in

17      the case, the other detectives are under his

18      supervision, correct?

19           A.     Yes.

20           Q.     If the lead homicide detective in

21      the case, there's substantial evidence that

22      he planted a hair, that's something that you

23      would have been concerned about, in 1986,

24      casting doubt on all aspects of the

25      investigation; fair enough?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2       A.     No.   I disagree with that.

3           I would have been concerned about it, but

4       it didn't necessarily cast any doubts on the

5       rest of the case.  Like I just said before,

6       he didn't testify.

7           Do I, you know, that's basically it.  I'm

8       trying to answer your question as best as I

9       can.  If what you said happened happened, it

10      would be a very troublesome issue, but I

11      don't think, technically, that it would

12      affect the proof of the case in Halstead and

13      Restivo.

14          And I'll be quite frank with you.  I

15      don't know that you would even get it into

16      evidence.

17          That's my point.  I don't know that you,

18      or whoever represented them back then, would

19      get that into evidence, based upon the other

20      type of evidence we had, and if you didn't

21      get it into evidence, I don't know that it

22      would affect the rest of the case.

23          And you and I can dispute the evidentiary

24      issue.  That's my opinion about it.

25      Q.     Would it be fair to say that if



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                         Klein

2    persuasive or substantial proof had been

3    discovered that Volpe planted the hair, that

4    could affect the judgments about witnesses

5    that Volpe did interview?

6         A.    Yes.

7         Q.    I think you said that if there were

8    substantial evidence that Volpe planted the

9    hair, then that would mean you wouldn't have

10   the hair in the case against Restivo and

11   Halstead?

12        A.    I certainly wouldn't be using the

13   hair.

14        Q.    Then you would have been left with

15   a case based upon drug addicted acquaintances

16   and jailhouse informants, correct?

17        A.    And some, you know, I don't know

18   that all the acquaintances were drug

19   addicted, Mr. Scheck.  I don't know that all

20   the acquaintances were drug addicted, like

21   Harry Smiley.

22        I wouldn't necessarily lump him in with

23   that.  There were statements that we used

24   that he received from Restivo that, to me,

25   indicated that they were incriminating.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2         They weren't direct admissions of guilt.

3    So I characterize those as ambiguous, and if

4    Smiley was drug addicted, I don't remember.

5         Q.    Do you remember any mental problems

6    Mr. Smiley may have been having?

7         A.    No.

8         Q.    Do you recall that Volpe

9    interviewed Smiley?

10        A.    At what point?

11        Q.    Do you recall that it was Volpe

12   that took the pretrial statements of Smiley?

13        A.    I don't.

14        Q.    But I think you're telling us that

15   any witness whose statements were first

16   developed by Volpe, that if it turned out

17   there was substantial evidence that Volpe

18   planted the hair, that would cast doubt on

19   the credibility of those witness statements?

20        A.    If I found out that it was to Volpe

21   that the first incriminating statements of

22   the witness came, it would be an issue that I

23   would consider in credibility, under that

24   foundation that we knew that Volpe planted

25   hair.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 48 of 296 PageID #: 5243

                        Klein

1

2       Q.     As opposed to what would be a

3   legally sufficient case, technically

4   speaking, you could have moved forward, in

5   1986, with a case just based on direct

6   admissions to the jailhouse snitches in terms

7   of Restivo and Halstead, correct?

8       A.     Let me think about that for a

9   minute.  My recollection is we could have,

10  but I would really have to look at the

11  evidence in a lot greater detail to see if we

12  had a legally sufficient case.  My gut

13  reaction is we would have.

14      Q.     We're talking here without the

15  hair?

16      A.     Yes.

17      Q.     But it's one thing to have what

18  might be technically a legally sufficient

19  case, and it's quite another to actually

20  proceed with the prosecution, isn't it?

21          MR. SEPE:  Objection as to form.

22          You can answer that.

23          THE WITNESS:  In some cases.

24  MR. SCHECK:

25      Q.     So it's not always the case that if



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2    you have a technically sufficient case that

3    one would necessarily proceed with the

4    prosecution if you had doubts about

5    credibility of witnesses?

6         A.    Let's just clarify what you mean by

7    a legally sufficient case.

8         What standard are you talking about?

9         Q.    What standard would you use?

10        A.    I'm talking about a prima fascia

11   case, that we would have enough in, let's

12   say, grand jury that a judge would not

13   dismiss an indictment for insufficient

14   evidence as opposed to whether we could

15   convict the person or not.

16        Q.    But even in a case that is "legally

17   sufficient," a lot depends upon the

18   assessment of the credibility of witnesses,

19   correct?

20        A.    Well, again, under my definition of

21   legally sufficient?

22        Q.    I'm not quarrelling with your

23   definition of legally sufficient.

24        A.    There are different stages, you

25   know, as to what would be sufficient.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 50 of 296 PageID #: 5245

1                    Klein

2       Q.      Go ahead.

3       A.      At the end of the trial, my

4    recollection is we would have to establish

5    proof beyond a reasonable doubt, but on a

6    grand jury level, we would have to establish

7    prima fascia case.

8       Q.      But even in assessing whether

9    there's a prima fascia case, if a prosecutor

10   comes to the judgment that witnesses are not

11   credible, then one does not proceed with the

12   case, correct?

13           MR. SEPE:   Objection as to form as,

14        again, not to the prior objection, but

15        now we're not speculating as to his

16        particular experience but as to a

17        prosecutor or an attorney general.

18   MR. SCHECK:

19      Q.      Your understanding of how

20   prosecutors operated in 1986.

21      A.      If I had a case where I didn't

22   believe the only witnesses against the

23   Defendant, I'm not going to have a legally

24   sufficient case.  I wouldn't have a

25   sufficient case because then, to me, I


ESQUIRE
an Alexander Gallo Company



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 51 of 296 PageID #: 5246

51

1                          Klein

2    wouldn't have sufficient credible evidence

3    that the Defendants committed the crime.

4         Q.    If you didn't have the hair --

5         A.    Right.

6         Q.    -- and you came to believe that the

7    drug addicted acquaintances and jailhouse

8    informants were not credible --

9         A.    Were all lying?

10        Q.    Were not credible.  I'm asking you,

11   it's a hypothetical.

12        A.    Okay.

13        Q.    In your understanding of how

14   prosecutors operated in 1986 --

15        A.    I can say how I operated.  I can't

16   testify for prosecutors.  You know that.

17        Q.    You had some kind of an

18   understanding in 1986 as to what --

19        A.    My understanding.

20        Q.    As to how your office worked,

21   correct?

22        A.    Correct.

23        Q.    And what were the customs and

24   practices of the office?

25        A.    Right.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 52 of 296 PageID #: 5247

52

1                          Klein

2          Q.      In 1986, if you did not have the

3    hair in the Restivo/Halstead case, and there

4    was substantial evidence that the lead

5    detective had planted the hair and you came

6    to have serious doubts about the credibility

7    of the drug addicted acquaintances and

8    jailhouse snitches, then you wouldn't have

9    proceeded with the case?

10         A.      I can't say that the way you

11   phrased the question.

12         Q.      What about my phrasing of the

13   question is troubling to you?

14              MR. FERGUSON:   Just note my

15         objection to this line of questioning.

16              THE WITNESS:   You're talking about

17         a case without any facts or any

18         foundation.  You're talking about some

19         serious or substantial doubts about the

20         credibility of one or more witnesses, and

21         you're saying I wouldn't have proceeded

22         with the case.

23              There's a lot of variables in

24         there, and I can't just make a flat out

25         generalized statement about that.  If I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 53 of 296 PageID #: 5248

53

1                    Klein

2          concluded that all the evidence against

3          the Defendants was false, I can assure

4          you I wouldn't have proceeded with the

5          case.

6                  If one witness was very good, and

7          the rest of them stunk, then I would have

8          to make a different evaluation.

9     MR. SCHECK:

10         Q.     You indicated at the dismissal

11    hearing that there was a finding by Judge Ort

12    that the hair did not come from John

13    Restivo's van, correct?

14         A.     Yes.

15                MR. SCHECK:  Why don't we show

16         Mr. Klein Exhibit 11.

17    MR. SCHECK:

18         Q.     While we're getting that out, when

19    did you first get involved in the Restivo,

20    Halstead and Kogut prosecutions, in terms of

21    the stages of the investigation?

22         A.     I first got involved with Halstead

23    and Restivo.  They had not been charged with

24    any crime at the time, and Mr. Kogut had

25    already been arrested.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 54 of 296 PageID #: 5249

54

1                     Klein

2    MR. SCHECK:

3         Q.    So that would have been after

4    Mr. Kogut's confession on March 26th?

5         A.    I was not involved in that.  I was

6    assigned after that.

7         Q.    Take a look at Exhibit 111.

8         You see that is an eavesdropping warrant,

9    right?

10        A.    No, not the one I have.

11        Q.    What do you have?

12        A.    It looks like a search warrant.

13   Oh, I see it's on another, the front page I

14   have is the search warrant, Mr. Scheck.

15             (Discussion held off the record.)

16   MR. SCHECK:

17        Q.    Mr. Klein, we're showing you

18   Exhibit 157, and this is a warrant for an

19   extension of wiretapping.

20        Do you see that?

21        A.    I see it's an eavesdropping

22   warrant.

23        Q.    If you look at page four, you'll

24   see the date of issuance being March 29th,

25   1985, at 4:04 p.m.?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 55 of 296 PageID #: 5250

55

1                          Klein

2        A.      Okay.

3        Q.      Do you see that?

4        A.      Yes.

5        Q.      Did you have any involvement in

6    putting together this application for an

7    extension of the wiretap?

8        A.      No.

9        Q.      Do you recall who was handling

10   those?

11       A.      I can give you a guess, an educated

12   guess, but I wasn't involved in the case.  So

13   I just know who was.

14       Q.      Who was?

15       A.      Ed McCarty.  Whether he did this or

16   not, I don't know.

17       Q.      Has this particular wiretap

18   extension application and Detective Volpe's

19   affidavit in support of it been called to

20   your attention at all recently?

21       A.      No.

22       Q.      Or at any time?

23       A.      Any time, I'm sure when I was

24   trying the case, it had been, but I don't

25   remember it at all.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 56 of 296 PageID #: 5251

1               Klein

2        Q.      You see that Detective Volpe issues

3    an affidavit in support of this wiretap

4    application?

5        A.      Yes.

6        Q.      And this was also sworn by Volpe on

7    March 29th, correct?

8        A.      Yes.

9        Q.      Do you know Sean Spillane?

10       A.      I know him.

11       Q.      Who was he?

12       A.      At some point he was the head, I

13   guess they called him the Commanding Officer

14   of the Homicide Squad in the Nassau County

15   Police Department.

16       Q.      I represent to you that he was

17   deposed in this matter.

18       A.      I have no idea.

19       Q.      I'm telling you, on April 21st,

20   2010, and I would like to read for you from

21   page 259 at line 21, a question and answer.

22            MR. SEPE:  I'm sorry, what are you

23       reading from?

24            THE WITNESS:  Can I have a copy of

25       it, to follow, like all the other



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                              Klein

2          exhibits?

3     MR. SCHECK:

4          Q.     Why don't we read together.

5          "Question:  Absent the wiretaps, there

6     was a very weak, if nonexistent, case against

7     John Restivo and Dennis Halstead, right?

8          "Answer:  At that time."

9          Do you see that?

10         A.     Yes.

11         At what time?

12         Q.     At a time before the wiretaps.

13              MR. FERGUSON:  Note my objection.

14    MR. SCHECK:

15         A.     I wasn't involved at that time, but

16    I see it.

17         Q.     You recall the presentation of hair

18    evidence in this case, do you not?

19         A.     Where, when, who?

20         Q.     At the trial.

21         A.     Of?

22         Q.     Of Restivo, Kogut and Halstead.

23         A.     Yes.

24         Q.     You knew Mr. Fraas, he was the hair

25    examiner?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 58 of 296 PageID #:
5253

58

1                      Klein

2       A.      Charles Fraas.

3       Q.      How well did you know him?

4       A.      Well, I certainly had worked with

5    him before.  He was a witness in other cases.

6    That was the extent of it.

7       Q.      Did you have any familiarity at the

8    time of the trial with hair examination?

9       A.      At the time of the trial I did,

10   yeah.  I didn't before that.

11      Q.      So this was your first one with

12   hair?

13      A.      The first one I recall, I mean, the

14   first one that was challenged, certainly.

15      Q.      Since then, have you learned

16   something about the process of microscopic

17   hair examination?

18      A.      I've been exposed to other people

19   talking about it.  How much I've learned

20   about it, I don't know.

21      Q.      This was an issue in the retrial of

22   John Kogut?

23      A.      Yeah, it was.

24      Q.      The hair evidence was gone over

25   with some care in the reinvestigation of this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    case that led to the decision to vacate the

3    conviction?

4         A.      The hair evidence was gone over,

5    yeah.

6         Q.      Did you know Fraas to be, in 1986,

7    did you believe him to be an honest and

8    trustworthy guy?

9         A.      Yeah.

10        Q.      Anything since then that's changed

11   your belief?

12        A.      No.

13        Q.      I'm going to hand you a copy of

14   Mr. Fraas' deposition in this matter.

15        A.      Do you want me to read this?

16        Q.      No, no, I'm going to take you

17   through it.  Let's start at page 22 --

18        A.      Got it.

19        Q.      -- of the Fraas deposition.

20        In your review of this case, you recall

21   that --

22        A.      Are you reading something?

23        Q.      No, I'm asking a question.

24        In the afternoon of March 26th, after

25   Mr. Kogut was arrested, the evening of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

60

1                          Klein

2    March 26th, the van was seized from

3    Mr. Restivo?

4              MR. FERGUSON:  Note my objection.

5              THE WITNESS:  Yeah, I couldn't say

6         when in the sequence the van was seized.

7         I wasn't involved in that either.

8    MR. SCHECK:

9         Q.    Here's 111, the one we were looking

10   at before.  This is an order for the seizure

11   of the van.

12        A.    That's what you showed me before?

13        Q.    Yes, and you see at the bottom it

14   says, "You are, therefore, commanded between

15   March 26th, 1984 and April 4th, 1985, between

16   the hours of 6:00 a.m. and 9:00 p.m., to

17   seize a 1977 Ford, New York registration 3525

18   BCG, and if you find such property or

19   evidence or any part to bring it before me."

20        Do you see that?

21        A.    Yes, I do.

22        Q.    I show you Exhibit 112.

23   What do you recognize that to be?

24        A.    This is, I think they call it a

25   worksheet from the Crime Scene Search Unit





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 61 of 296 PageID #: 5256

1                        Klein

2     with a listing of photographs that were

3     taken.

4          Q.     And you see that this refers to the

5     1977 Ford Econoline van, do you see that?

6          A.     Yes.

7          Q.     And you see where it says, "Time

8     Received"?

9          A.     Where are you reading from?

10         Q.     At the top.  "Van, Time Received"?

11         A.     Yes.

12         Q.     And that's 1800 hours, or

13    6 o'clock, on March 26th, 1985?

14         A.     1300 or 1800?

15         My copy's kind of blurry, and my

16    eyesight's not great at that distance.

17         Q.     Does this refresh your recollection

18    that the van was in the custody of the police

19    on the evening of March 26th?

20              MR. FERGUSON:  Note my objection

21         about refreshing his recollection.

22              THE WITNESS:  No.

23    MR. SCHECK:

24         Q.     Would you agree that the van was in

25    the possession of the police on March 26th?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1              Klein

2     A.     I have no idea.

3     Q.     Really?

4     A.     I do not.

5     Q.     Let's start reading from the Fraas

6  deposition, page 22, line 13.

7     A.     Okay.

8     Q.     Maybe the better place is to start

9  with you on page 21, line 24.

10     "Question:  And a number of hairs from

11  various sections of the van were collected?

12     "Answer:  Yes.

13     "Question:  And you and Mr. Birdsall

14  spent the rest of that night examining those

15  eleven blankets, the pillowcase, black

16  T-shirt for hair and trace evidence in the

17  lab, right?  Up to midnight on the day of

18  March 26th, 1985, that's what you did?

19     "Answer:  Yes, ma'am.

20     "Question:  You did not begin any

21  examination of any hair evidence that day?

22     "Answer:  I don't believe I did."

23  Do you see that?

24     A.     Yes.

25     Q.     So do you have it in mind that



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
 1                         Klein

 2     Fraas is testifying here that they collected

 3     hairs from the van, but he did not begin any

 4     examination of hair evidence that day,

 5     March 26th?

 6              MR. SEPE:  Objection to form.

 7              THE WITNESS:  You know, it really

 8         doesn't exactly say that either.  It says

 9         they examined evidence, and he did not

10         examine hair evidence that day.

11     MR. SCHECK:

12         Q.    Yes, that's my --

13         A.    When they got the hairs, I don't

14     know.  Again, you're assuming that they got

15     it at the time they examined those blankets

16     and the pillow case, et cetera.  To me it's

17     not clear, that's all I'm saying, as to when

18     they got the hair evidence.

19         Q.    But you don't dispute, do you, that

20     Fraas is testifying here that he didn't begin

21     the examination of any hair evidence on the

22     26th?

23         A.    That's correct.

24         Q.    This probably goes out saying, but

25     if you had discovered evidence that Volpe
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 64 of 296 PageID #:
5259

64

1              Klein

2    planted the hair, that's something you would

3    have disclosed to the Defense?

4        A.     Yeah, sure.

5        Q.     Turn to page 26.

6    Why don't we start at 26, line 22?

7        A.     Okay.

8        Q.     "Question:  Sir, please turn with

9    me to page 1278 of Exhibit 3, your testimony

10   at the Restivo and Halstead trial.  At line

11   five.

12       'Question:  Now, how many hairs would you

13   approximate were acquired from this van on

14   March 26th, 1985?

15       'Answer:  100 or more.

16       'Question:  Do you see that?

17       'Answer:  Yes.

18       'Question:  Does that refresh your

19   recollection that you collected 100 or more

20   hairs from the van that day?

21       'Answer:  I believe I just answered that

22   question when you asked me whether 200 or

23   more hairs.  I wasn't comfortable with 200.

24   I said my recollection was a hundred or

25   more.'"


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 65 of 296 PageID #: 5260

```
1                          Klein
2          Do you see that?
3          A.     Yeah.
4          Q.     So based on Fraas' testimony here,
5    and your recollection, do you accept it that
6    100 or more hairs were collected from the
7    van?
8               MR. SEPE:  I'm sorry, just
9          objection as to form.
10              The witness is asked to opine about
11         an out-of-Court deposition at which he
12         was not present which is actually
13         referring to double hearsay and the
14         matter of someone else's recollection
15         being refreshed.
16              But that notwithstanding, if you
17         understand the question, answer it.
18              THE WITNESS:  Yes, that's what
19         Mr. Fraas testified to.
20    MR. SCHECK:
21         Q.     If it was his testimony at the
22    trial that 100 or more hairs were collected,
23    I take it you would accept that as accurate?
24         A.     Yes.
25         Q.     And you did at the time?
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 66 of 296 PageID #: 5261

66

```
 1                   Klein

 2      A.      I did.

 3      Q.      Let's start at page 30.

 4              MR. FERGUSON:  We're looking at the

 5      EBT now?

 6              MR. SCHECK:  Yes.

 7   MR. SCHECK:

 8      Q.      "Question:  And that was the first

 9   stage of your examination of hairs from the

10   van --

11      A.      Where are we now?

12      Q.      Line seven.

13      A.      Okay.

14      Q.      "Question:  And that was the first

15   stage in your examination of hairs from the

16   van, the gross visual examination, right?

17      "Answer:  Yes, ma'am.

18      "Question:  And that's an examination

19   with an eyeball, not a microscope?

20      "Answer:  Yes, ma'am.

21      "Question:  And that was consistent with

22   your standard practice?

23      "Answer:  And the purpose of that gross

24   visual examination of hairs collected from

25   the van was simply to determine which hairs
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 67 of 296 PageID #: 5262

1                    Klein

2    to mount on a slide, right, for possible

3    comparison purposes to a known sample?

4         "Answer:  Yes.

5         "Question:  The gross visual examination

6    is not a full-fledged examination for a hair

7    microscopist, is it; it's just the first,

8    it's the first step?

9         "Answer:  Yes."

10        Do you see that?

11        A.    Yes.

12        Q.    Is that consistent with your

13   understanding of how hair examination works?

14        A.    At least as far as Detective Fraas

15   is concerned.

16        Q.    Is that your understanding of how

17   he proceeded in this case?

18        A.    Yes.

19        Q.    Let me now draw your attention to

20   page 31, line seven.

21        "Question:  And, again, this was just a

22   preliminary step in your ultimate examination

23   and comparison of hairs?

24        "Answer:  Yes.

25        "Question:  And once you complete the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2       preliminary examination of each and every one

3       of those hairs collected from the van, you

4       don't have any results to report yet, right?

5            "Answer:  If a hair was grossly

6       dissimilar, I guess the results would be that

7       it could be eliminated as possibly coming

8       from the scalp of the known sample."

9            "Question --

10          A.    "Perhaps."

11          Q.    Do you see that?

12          A.    "Perhaps," he said.

13          Q.    Oh, "perhaps."

14          "Question:  Leaving aside the similar

15      hairs that you elected not to mount because

16      they were obviously not the victim's, after

17      you collected the gross visual examination of

18      all of the hundred or more questioned hairs

19      collected from the van in that preliminary

20      step, you could not report the result of a

21      microscopic comparison between those hairs

22      and the known hairs because you hadn't done

23      one yet, fair to say?

24          "Answer:  Yes."

25          Do you see that?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2        Q.    And you agree that's how the

3    microscopic hair examination went



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

70

1                    Klein

2     this case, that no result could be reported

3     of a consistency between known hairs and the

4     unknown hairs until the slides are mounted

5     and there's a microscopic examination?

6              MR. FERGUSON:  Note my objection.

7              THE WITNESS:  In his opinion,

8         that's true.

9     MR. SCHECK:

10        Q.    That's how he proceeded, right?

11        A.    Yes.

12        Q.    That was your understanding at the

13    time of the trial of how he proceeded?

14        A.    That was my understanding, what he

15    testified to.

16        Q.    Now I turn your attention to page

17    39.

18        "Question --

19             MR. FERGUSON:  Can you give me a

20        line?

21             MR. SCHECK:  Line four.

22    MR. SCHECK:

23        Q.    "Question:  Fair to say that you

24    created 80 slides from the questioned hairs

25    collected from the van?



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695 JS SIL   Document 224-17   Filed 06/02/12   Page 71 of 296 PageID #: 5266

71

1                    Klein

2      "Answer:  Yeah.  It appears that there

3   were four slide holders.  Each slide holder

4   has 20 slots for slides.

5      "Question:  And they were filled up, each

6   of them was filled up?

7      "Answer:  That's what I testified to.

8      "Question:  You mean 80 slides from the

9   question hairs?

10     "Answer:  As I sit here today, I don't

11   know if each were filled up, but that's what

12   I testified to.

13     "Question:  Would you agree, sir, that it

14   took days and days to complete the mounting

15   of those 80 slides?

16     "Answer:  Yes.

17     "Question:  After your careful process of

18   doing gross visual examination of hairs

19   before mounting them, right?

20     "Answer:  Yes.

21     "Question:  Which itself took days?

22     "Answer:  I don't know how long that

23   process took.

24     "Question:  Doing a careful, thorough

25   gross visual examination over 100 questioned



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein
August 23, 2010
Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 72 of 296 PageID #:
5267

1              Klein

2     hairs, you certainly couldn't have finished

3     that in a single day, could you?

4         "Answer:  That's correct."

5     Do you see that?

6     A.     Yes, I do.

7     Q.     Let's turn to page 70, line 16.

8         "Question:  Once you got to the

9     microscopic phase of an examination in this

10    case, you built up a profile of microscopic

11    characteristics for these hairs, right?

12        "Answer:  Yes, ma'am.

13        "Question:  And to do that, you had to

14    look at the complete length of each hair that

15    had been mounted, right?

16        "Answer:  Yes, ma'am.

17        "Question:  And that process took many

18    hours to a couple of days per hair.

19            "MR. FERGUSON:  You mean to look at

20        the length, you mean?

21        "Question:  To build up a range of

22    characteristics in each hair by looking at it

23    from root to tip?

24        "Answer:  Yes, ma'am.

25        "Question:  And it was your practice to


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2      build the information up before you dive into

3      a comparison?

4            "Answer:  Yes, ma'am.

5            "Question:  And that's what you did in

6      this case?

7            "Answer:  Presumably.

8            "Question:  And even once you've built up

9      a range of microscopic characteristics in the

10     known hairs, you don't have anything to

11     report in terms of finding a microscopic

12     comparison because you still haven't done one

13     yet?

14           "Answer:  That's correct.

15           "Question:  And even once you've built up

16     a range of microscopic characteristics from

17     the 80 questioned hair slides, once you look

18     from root to tip at each one of those hairs,

19     you don't have anything to report about the

20     microscopic comparison because you haven't

21     done one yet, right?

22           "Answer:  I'm not so sure that's the

23     procedure that was used here.

24           "Question:  Well, was it your practice to

25     build up the characteristics before engaging



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 74 of 296 PageID #: 5269

1                    Klein

2    in the comparison?

3         Eventually, he says here, "I don't

4    remember exactly what I did 21 years ago.

5              MR. FERGUSON:  Can you read the

6         questions and answers please?

7              MR. SCHECK:  Yes.

8    MR. SCHECK:

9         Q.    Let me start reading again.

10        Let me phrase this question clearly.  Let

11   me start at page 70, line 16.

12        "Question:  Once you get to the

13   microscopic phase of an examination in this

14   case, you built up a profile of microscopic

15   characteristics for these hairs, right?

16        "Answer:  Yes, ma'am.

17        "Question:  And that process took many

18   hours to a couple of days per hair?

19             "MR. FERGUSON:  You mean to look at

20        the length you mean?

21        "Question:  To build up a range of

22   characteristics by looking at it from root to

23   tip?

24        "Answer:  Yes, ma'am.

25        "Question:  And that was your practice to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL  Document 224-17  Filed 06/02/12  Page 75 of 296 PageID #: 5270

1            Klein

2   build that information up before you just

3   dive into a comparison?

4        "Answer:  Yes, ma'am.

5        "Question:  And that's what you did in

6   this case?

7        "Answer:  Presumably."

8            Do you see that?

9        A.    I do.

10       Q.    "Question:  And even once you've

11  built up a range of microscopic

12  characteristics in the known hairs, you don't

13  have anything to report in terms of finding a

14  microscopic comparison because you still

15  haven't done one yet, right?

16       "Answer:  That's correct."

17       Is that testimony consistent with your

18  understanding of how the microscopic hair

19  comparisons proceeded in this case.

20       A.    It's consistent with, you know, I

21  can't say that I had that specific or have

22  that specific a recollection 25 years later

23  as to how he did it.  It sounds like he

24  doesn't have that specific a recollection of

25  it 25 years later.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 76 of 296 PageID #:
5271

1                    Klein

2       Q.     Do you know enough about this

3    process now?

4       A.     Not for this level of detail, no.

5       Q.     But would you not agree that the

6    testimony here is that even after mounting

7    the 80 slides and the known hairs, that the

8    microscopist has to do an examination under

9    the microscope of different sections of the

10   hair in order to build up a basis form making

11   a statement about a result?

12             MR. FERGUSON:  Note my objection.

13             MR. SEPE:  Note my objection as to

14        form to the questioning of this witness

15        on opining about the prior testimony of

16        an expert.

17             You can answer.

18             THE WITNESS:  My understanding is

19        that after he does a gross examination of

20        the hairs without a microscope, he needs

21        to examine the hairs under the

22        microscope.

23   MR. SCHECK:

24      Q.     He has to mount them?

25      A.     But then he has to examine them



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com


Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 77 of 296 PageID #: 5272

                        Klein

1

2    under a microscope.  That much I would agree

3    with.  Any more detail, I'm not familiar

4    with.

5         Q.    But you see that what the testimony

6    here is about the process?

7         A.    I see this is his deposition of his

8    testimony 25 years ago.

9         Q.    But that's the process.

10        A.    That's up to him.  I don't know.  I

11   wasn't involved in the case back then.

12        Q.    But you don't question his

13   testimony about hair microscopy, do you?

14             MR. SEPE:  You're asking if he

15        questions the accuracy of it?

16             MR. SCHECK:  I'll withdraw that.

17   MR. SCHECK:

18        Q.    Look at page 42, 43.  Page 42, line

19   20.

20        "Question:  Now, in March and April and

21   May of 1985, after the collection of hairs

22   from the van, you had other case work that

23   you were working on, right, in other cases?

24        "Answer:  Yes

25        "Question:  And the work you did on



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 78 of 296 PageID #: 5273

78

                        Klein

1

2     examining and mounting and comparing the

3     hairs in this case was interspersed with the

4     work you did on those other cases?

5          "Answer:  Correct."

6          Do you see that?

7          A.    Yes.

8          Q.    So you understand at the deposition

9     Fraas is saying after he started working on

10    the hairs on March 27th, he still had other

11    things to do, other cases, correct?

12         A.    It seems so.

13              MR. SCHECK:  Do you want to take a

14         five-minute break?

15              (Recess taken.)

16    MR. SCHECK:

17         Q.    I'm calling your attention to

18    Mr. Fraas' deposition at page 1770, line 25

19    at the bottom of the page.

20              MS. CORNWALL:  It's Deposition

21         Exhibit 4.  It's Mr. Fraas' testimony

22         from the 2005 retrial of Mr. Kogut.

23              MR. FERGUSON:  What are we reading,

24         the deposition page?

25              MS. CORNWALL:  This has been



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fled Klein
August 29, 2010

1                        Klein

2          previously marked as Deposition

3          Exhibit 4.

4                    MR. FERGUSON:   Trial testimony from

5          which time?

6                    MR. SCHECK:   This is the retrial.

7                    MR. FERGUSON:   2005?

8                    MS. CORNWALL:   2005, yes.

9     MR. SCHECK:

10         Q.    This is the testimony of Mr. Fraas

11    at the Kogut retrial.

12         Do you have that in mind?

13         A.    I didn't hear it.

14         Q.    I'm just starting at page 1770,

15    line 25.

16         "Question:   Now, I'm getting from you

17    that this is a particularly time consuming

18    process.   The examination of individual hairs

19    and the envelopes and then making the

20    determination whether or not you're going to

21    mount them and then mounting them, and

22    looking at them under the microscope,

23    correct?

24         "Answer:   Yes, sir.   It's not time

25    consuming if there's one hair in there.   You



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 80 of 296 PageID #:
5275

1                         Klein

2     open it up, there's one hair, you know.

3          It would take, you know, 15 minutes,

4     possibly, to mount that and let the Permount

5     set, and put your cover slip on it.  If you

6     open up the envelope, and there's numerous

7     hairs in there and you have to filter through

8     debris, it's going to take more time."

9          Do you see that?

10         A.    Yes.

11         Q.    I think we've just reviewed

12    testimony that Mr. Fraas says he mounted 80

13    hairs in this case.

14         Do you recall that?

15         A.    I remember 80 hairs, yeah.

16         Q.    So if it were to take him

17    15 minutes per hair and there's 80 hours, per

18    hour, there would be four hairs.

19         Altogether, 20 hours?

20         A.    Sounds right to me.

21         Q.    Let's go back to Mr. Fraas'

22    deposition, still Exhibit 4, page 93, line

23    13.

24         Are you looking?

25         A.    Right.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 81 of 296 PageID #: 5276

81

1                      Klein

2      Q.     "Question:  Now, you had to mount

3   the slides, you had to do the profile, you

4   had to determine which hairs could go on the

5   slides.  Do you have any sense how long that

6   process took you to complete for getting the

7   comparisons?

8      "Answer:  I only know that I put a great

9   deal of work in it, so days to weeks.

10     "Question:  Days to weeks to do that?

11     "Answer:  To do the whole case.

12     "Question:  To do the whole case.  So is

13  it your testimony that you could have

14  accomplished this all in three or four days,

15  or it might have taken you four or

16  five weeks?

17     "Answer:  Three or four days could have

18  been -- don't see how I could have possibly

19  done it.  There's a lot of work here

20  counselor."

21     Okay?

22     A.     Yes.

23     Q.     Have that in mind?

24     A.     Yeah, that's what he said.

25     Q.     Now, let's take a look at



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 82 of 296 PageID #: 5277

1               Klein

2     Mr. Volpe's deposition, page 172, line two.

3          A.    Can I ask a question?

4               MR. SEPE:  Why don't you ask me a

5     question?

6               (Discussion held off the record.)

7               THE WITNESS:  On advice of counsel,

8     I'll withdraw.

9     MR. SCHECK:

10         Q.    I take it you're wondering what the

11    point of all this is?

12         A.    That's a good question.

13         Q.    We're going to get there?

14              (Discussion held off the record.)

15         Q.    Let's start actually on page 171,

16    line 20.

17         You understand this is Mr. Volpe's

18    deposition?

19         A.    Okay.

20         Q.    "Question:  Maybe I'll restate that

21    question because I think you said you have no

22    memory of any conversation with Fraas about

23    the hair; is that right?

24         "Answer:  Specifically about the hair, I

25    don't recall.



ESQUIRE
an Alexander Gallo Company


Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 83 of 296 PageID #: 5278

1                      Klein

2          "Question:  Okay.  So as you sit here

3      today, do you have any independent

4      recollection of some unusual conversation

5      with Mr. Fraas where he called you up right

6      away about the results from his hair

7      examination?

8          "Answer:  No, I don't."

9               MR. SEPE:  Is there a question as

10          to --

11     MR. SCHECK:

12          Q.      Do you see that?

13          A.      I do.

14          Q.      Let's turn to page 220.  Actually,

15     221, line 18.

16          "Question:  So let's just review this.

17     When I asked you before whether you had any

18     recollection about having conversations with

19     Fraas about the hair comparisons or having

20     any unusual comments or statements from him,

21     hey, we got a result, you didn't remember

22     anything, right?

23          "Answer:  No, I didn't."

24          Have you got that in mind?

25          A.      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 84 of 296 PageID #: 5279

84

1                    Klein

2       Q.    Let's go back to the exhibit for

3   the search warrant, Exhibit 177.

4       A.    The eavesdropping?

5       Q.    Yes, this is the eavesdropping.    I

6   ask you to look at Mr. Volpe's affidavit at

7   paragraph ten.

8       A.    Okay.

9       Q.    You have it in mind that this

10  application is being made on March 29th; do

11  you see that?

12      A.    Yes.

13      Q.    This is an affidavit that's being

14  made in support of it, correct?

15      A.    Yes.

16      Q.    And in reviewing Mr. Fraas'

17  testimony here right now, would you not agree

18  that he has stated, based on all the time it

19  would take to do a gross visual examination

20  of the hairs, mounting the hairs on a slide,

21  doing microscopic examination, that it would

22  not have been possible to do all of that and

23  give a result within three or four days?

24            MR. SEPE:  Objection to form.

25            THE WITNESS:  I can't answer that.



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    MR. SCHECK:

3         Q.    I'm asking you, did we review that

4    together, that Mr. Fraas said that?

5         A.    I don't remember him saying that,

6    that it would not be possible.

7         Q.    All right.

8         Do you want to go back --

9         A.    I remember him saying at the end

10   that he didn't even remember certain things

11   about it.  So what's possible or what's not

12   possible, I don't --

13        Q.    Let's go back, Mr. Klein, to the

14   transcript I think I just read you.

15             MS. CORNWALL:   Exhibit 4, the

16        retrial transcript.

17   MR. SCHECK:

18        Q.    We agree that even to mount hairs

19   would take --

20        A.    We haven't agreed with anything.  I

21   only agreed what you read out of a deposition

22   is accurate.

23        Q.    So let's go back again to what I

24   read you.

25        You want to look again?



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 86 of 296 PageID #: 5281

Klein

1

2      A.      What are we talking about now?

3      Q.      This is his testimony.

4      A.      Fraas?

5      Q.      Yes, at the retrial.  Let's take a

6   look at page 1793.

7      A.      Okay.

8      Q.      Starting at line 13.

9      "Question:  Now, you had to mount the

10   slides, you had to do the profile, you had to

11   determine which hairs would go on the slides.

12   Do you have any sense of how long that

13   process took you to complete, for getting the

14   comparison?

15      "Answer:  I only know I put a great deal

16   of work in it, so days to weeks.

17      "Question:  Days to week to do that?

18      "Answer:  To do the whole case.  So is it

19   your testimony that you could have

20   accomplished this all in three or four days,

21   or it might have taken you four or

22   five weeks?

23      "Answer:  Three or four days -- don't see

24   how I could possibly have done it.  There's a

25   lot of work here, counselor."



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 87 of 296 PageID #: 5282

1                    K l e i n

2      Do you see that?

3      A.      Yes.

4      Q.      So would you agree that in the

5 retrial, certainly, Fraas is saying that to

6 complete this microscopic hair comparison, he

7 couldn't possibly have done it in three to

8 four days.

9            MR. SEPE:   Objection to the form as

10      it asks him to characterize the testimony

11      of an expert witness at a prior trial

12      from a fact witness.

13            But if you understand the question,

14      you can answer it.

15            THE WITNESS:   It says what you just

16      read, what he meant by it, and did he

17      mean, what he meant by the full

18      examination, I don't know, but you're

19      reading it accurately.

20 MR. SCHECK:

21      Q.      Well, taking a look at paragraph

22 ten --

23      A.      Yes.

24      Q.      -- of the Affidavit, it says here,

25 "On March 27th, 1984, Nassau County



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 88 of 296 PageID #: 5283

88

1                     Klein

2    Judge Lawrence signed an Order authorizing

3    the seizure of the above described van to wit

4    1977 Ford van, blue in color, New York

5    registration 3525 BCG operated by John

6    Restivo during the murder of Theresa Fusco.

7    A search of that van has produced hair

8    consistent with Theresa Fusco and possible

9    human blood."

10        Do you see that?

11        A.    Certainly.

12        Q.    If Fraas could not have completed

13   the process in three or four days of mounting

14   the 80 slides of hairs that were recovered

15   from Restivo's van, it would be fair to call

16   those the questioned hairs?

17        A.    The hairs from Restivo's van?

18        Q.    Yes.

19        A.    Yes.

20        Q.    Those are known as questioned

21   hairs?

22        A.    Yes.

23        Q.    Mounted the questioned hairs, 80

24   slides; compared those to the known hairs

25   from Theresa Fusco; and produced a result



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 89 of 296 PageID #:
5284

1              Klein

2    that hairs were found in the van that were

3    consistent with Theresa Fusco, that could not

4    have been done within three or four days.

5        Are you with me?

6        A.    Yes.

7        Q.    Then wouldn't you agree it would be

8    impossible for Detective Volpe to swear in an

9    affidavit on March 29th that a search of the

10   van produced hair consistent with Theresa

11   Fusco's?

12             MR. SEPE:  Objection to form.

13             MR. FERGUSON:  Note my objection.

14             THE WITNESS:  No.

15   MR. SCHECK:

16       Q.    Well, it wouldn't be impossible if

17   he had planted a hair from Theresa Fusco, a

18   known hair, either in the van or in the

19   envelope of questioned hairs that Fraas was

20   examining, right?

21             MR. SEPE:  Objection to form.

22             THE WITNESS:  I'm not following

23        that question at all.

24   MR. SCHECK:

25       Q.    If Detective Volpe, right, had



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 90 of 296 PageID #: 5285

1                    Klein

2    taken a known hair from Theresa Fusco --

3        A.      From the autopsy.

4        Q.      From her body?

5        A.      Right.

6        Q.      There were known hairs collected,

7    right?

8        A.      Right.

9        Q.      If he had taken a known hair and

10   put it in an envelope where the questioned

11   hairs were kept or put it in the van, if he

12   had done that, then he would know on

13   March 29th that a hair consistent with

14   Theresa Fusco would be found in a search of

15   the van; fair enough?

16            MR. SEPE:  Objection to form.

17            THE WITNESS:  You know, I see what

18       your question is, but I don't know where

19       Volpe is getting this information from in

20       his affidavit.  He certainly, if he had

21       taken hair from the autopsy and put it in

22       the van, he would certainly know it's in

23       the van.

24            Whether he would know if somebody

25       would find it or not is a completely





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1          Klein

2      different issue, and that's what he says

3      here, "the search of the van has produced

4      hair consistent with Theresa Fusco."

5  MR. SCHECK:

6      Q.    In this affidavit there's no

7  question he's saying that "a search of the

8  van has produced hair consistent with Theresa

9  Fusco."

10     A.    That's what he says.

11     Q.    There's no doubt about it in your

12 mind that he's telling the Judge, we looked

13 in the van, we searched the van, and we came

14 out with a hair that's consistent with that

15 of the deceased, right?

16         MR. SEPE:  Just to be clear, we're

17     asking the witness to testify as to what

18     another witness meant.

19 MR. SCHECK:

20     Q.    This is what the application says,

21 doesn't it?

22     A.    A search of that van, presumably by

23 the Nassau County Police Department, it's

24 clear that's what he's talking about, has

25 produced hair consistent with Theresa



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 92 of 296 PageID #: 5287

92

1                    Klein

2    Fusco's.

3         Q.    Right.

4              MR. FERGUSON:   And possible blood,

5    right?

6              THE WITNESS:   Whatever.  That

7    doesn't seem to be the focus of this.

8    MR. SCHECK:

9         Q.    I asked you a question in a

10   compound way.  Let me break it down.

11        A.    Sure.

12        Q.    If Detective Volpe had taken a

13   known hair recovered from Theresa Fusco's

14   body and put it in the envelope that

15   contained the questioned hairs that were

16   retrieved from John Restivo's van sometime

17   between March 26th and March 29th, then he

18   could state with assurance before the

19   microscopic hair examination was completed

20   that a hair consistent with Theresa Fusco's

21   would be found in the van?

22             MR. SEPE:  Objection to form.

23             MR. FERGUSON:  Just note my

24   objection.

25             THE WITNESS:  Assuming that the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 93 of 296 PageID #: 5288

1               Klein

2      microscopist accurately finds that hair

3      in their examination, yes.

4   MR. SCHECK:

5      Q.    I think if I understood, another

6   possibility is for Volpe to have actually

7   planted a known hair in the van?

8      A.    That's your suggestion.

9      Q.    No, I'm just saying.

10     A.    Right.

11     Q.    I think you were saying just a

12  second ago that planting hair in the van

13  itself, if one were interested in hair

14  planting, would be a bit riskier than just

15  putting the hair in the envelope of

16  questioned hairs recovered from the van?

17     A.    Riskier for who, what do you mean

18  riskier?

19     Q.    A little riskier that it wouldn't

20  be discovered, correct?

21     A.    Right.  That's common sense.

22     Q.    But by putting it in the envelope

23  of questioned hairs, that would present a

24  greater opportunity, certainly, for the hair

25  microscopist to find the hair and make the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 94 of 296 PageID #: 5289

94

1                    Klein

2    judgment that a hair consistent with Theresa

3    Fusco's was recovered in the van?

4              MR. SEPE:  Objection to form.

5              Do you understand the question?

6              THE WITNESS:  I think so.

7              It would narrow down the universe

8         of questioned hairs, yes.

9              By the way, I don't say that that's

10        the only explanation for this affidavit.

11   MR. SCHECK:

12        Q.    I was just going to ask you.

13        Were you aware of any potential

14   contradiction between Fraas' testimony as to

15   when the microscopic comparison was complete

16   and the submission of this affidavit for a

17   wiretap extension?

18        A.    No.

19        Q.    At the time of trial?

20        A.    No.

21        Q.    And I take it this is the first

22   time that this issue has been brought to your

23   attention?

24        A.    I believe so.  I don't know that

25   there is a distinction, but --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 95 of 296 PageID #:
5290

```
1                      Klein
2       Q.    Well, I'm speaking about the issue.
3       A.    The issue, yes.
4       Q.    And you understand the issue to be
5  that, based on the testimony of Fraas about
6  how long it would have taken him to do the
7  microscopic hair comparisons, that testimony
8  that I've read you is inconsistent with Volpe
9  being able to state in an affidavit on
10 March 29th that a hair consistent with
11 Theresa Fusco's had been recovered from the
12 van?
13            MR. SEPE:  Objection to form.
14            THE WITNESS:  Do I answer?
15            MR. SEPE:  You can answer, yes.
16            THE WITNESS:  I don't see it.
17 MR. SCHECK:
18      Q.    Tell me why you think that is
19 inconsistent?
20      A.    Number one, it's not clear where
21 Volpe is getting that information from.
22 Number two, let's assume he's getting it from
23 Fraas; he's not saying that a microscopic
24 comparison has resulted in that conclusion.
25      I don't know what it's based on.  I don't
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 96 of 296 PageID #:
5291

96

1                      Klein

2     know if it's based on Fraas' preliminary

3     look.  I don't know if some other supervisor

4     in the Bureau looked at the hairs and came up

5     with that.

6          You know, there's so many variables in

7     here based on that one sentence that I see

8     very many possibilities.

9          Q.     Mr. Klein, do you recall my reading

10    testimony to you from Mr. Fraas that he did

11    not then and in his practice make any

12    conclusions about similarity or dissimilarity

13    just from doing a gross examination of the

14    hairs; do you remember that?

15              MR. FERGUSON:  Just note my

16         objection.

17              This is argumentive, this line of

18         questioning.

19    MR. SCHECK:

20         Q.     Do you remember that?

21         A.     I remember the testimony.

22         Q.     Do you remember him testifying that

23    he could not issue a result about hairs being

24    consistent or a microscopic comparison until

25    he actually finished the microscopic



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1                        Klein
2    comparison of the questioned hairs and the
3    known hairs, correct?
4         A.    This is depending upon what he's
5    talking about consistent.
6         Is he talking about a full microscopic
7    analysis, or is he talking about a visual
8    comparison?
9         I don't know.  You know, you read it to
10   me.  I don't recall every single word he
11   said.
12        All I can tell you is from my looking at
13   this affidavit, to me it's not inconsistent
14   that Volpe has apparently said that the
15   search of the van produced hair consistent
16   with Theresa Fusco's.  I don't know what
17   Volpe means when he says consistent, I don't
18   know where he's getting his information from,
19   I don't know what the person meant when they
20   said it's consistent.
21        You're asking me to give my opinion on
22   something that has several different answers.
23        Q.    I was just asking, you were very
24   familiar with this case, right?
25        A.    I was 25 years ago.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 98 of 296 PageID #:
5293

98

1                    Klein

2        Q.      You were familiar through the

3    retrial of John Kogut, right?

4        A.      Less, somewhat.

5        Q.      Let's just examine it.

6        The term hair being consistent with that

7    of Theresa Fusco, isn't that the way hair

8    microscopists would describe their

9    conclusion?

10           MR. FERGUSON:  Just note my

11       objection.

12           MR. SEPE:  I'm going to object

13       also.

14           Again, he's being asked, one, to

15       give an opinion as to what is meant by

16       the word "consistent"; two, now we're

17       getting into asking a fact witness to

18       give an opinion as to a prior expert

19       witness' testimony, either in trials or

20       depositions, and if that is the case,

21       respectfully, he's entitled to a much

22       bigger of a check.

23           So to the extent we're going to ask

24       him to opine on Fraas or anyone else's

25       scientific testimony, I object to that.





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 99 of 296 PageID #: 5294

```
 1                     Klein
 2   MR. SCHECK:
 3       Q.    Let me be clear.  I think you told
 4   us before that you had an understanding,
 5   certainly, at the time of the trial
 6   sufficient to present the microscopic hair
 7   evidence in this case, right?
 8       A.    Correct.
 9       Q.    You reviewed the microscopic hair
10   evidence during the reinvestigation, correct?
11       A.    I didn't.
12       Q.    But you were aware of discussion of
13   it, correct?
14       A.    Yes.
15       Q.    And you were supervising
16   Mr. Biancavilla on the retrial, right?
17       A.    Yes.
18       Q.    And during the retrial, there was
19   some considerable litigation, was there not,
20   about whether or not this hair was planted in
21   the van?
22       A.    There was.
23       Q.    And there was testimony from Fraas
24   about the microscopic examination, right?
25       A.    There was.  I mean, I'm reading it,
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 100 of 296 PageID #:
5295

1              Klein

2    so apparently there was.

3         Q.    In terms of your understanding,

4    let's start with 1986.

5         When a hair microscopist expressed an

6    opinion about a questioned hair and a known

7    hair, would not the form of the opinion be

8    that the questioned hair is consistent with

9    the known hair, correct?

10             MR. FERGUSON:  Note my objection.

11             THE WITNESS:  My understanding is,

12        at least back in that time, that as far

13        as the science of hair microscopy is

14        concerned, the closest the analyst can

15        come towards drawing a positive

16        conclusion in a formally written report

17        is that the hair is consistent, the known

18        hair is consistent with the questioned

19        hair.  That's my understanding.

20   MR. SCHECK:

21        Q.    So your understanding, I take it,

22   back in 1986, and to the moment you sit here

23   today, is that the way the hair microscopist

24   testimony would come in at a trial is that

25   the hair microscopist might say we exclude



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 101 of 296 PageID #:
5296

101

1                        Klein
2    the known hair as --
3          A.      The questioned hair.
4          Q.      The questioned hair, or at best
5    they could say that the known hair and the
6    questioned hair were consistent with each
7    other, correct?
8          A.      Within the rules of evidence and
9    the science of microscopy, I agree with you.
10          Q.      And the limits of hair microscopy
11    was known in 1986 to homicide detectives, to
12    the best of your knowledge, right?
13               MR. FERGUSON:  Note my objection.
14               MR. SEPE:  Objection to form.
15               THE WITNESS:  I can't say that.  I
16          can assume it.  I can't say it.
17    MR. SCHECK:
18          Q.      Well, homicide detectives you knew
19    were dealing all the time with microscopic
20    hair examination to make their cases, weren't
21    they?
22          A.      Yes.
23          Q.      And you would certainly expect that
24    the lead homicide detective in a case would
25    have some understanding as to what the limits



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 102 of 296 PageID #:
5297

 1               Klein
 2   were of hair microscopy examination?
 3            MR. SEPE:  Objection as to form.
 4            THE WITNESS:  I can't say that.
 5   MR. SCHECK:
 6       Q.    You don't think --
 7       A.    I think it depends upon the
 8   detective.  It depends upon the hair.
 9       You're asking for things in a void.  I
10   don't give general answer to something of
11   this importance.
12       Q.    Was there anything about Detective
13   Volpe that struck you that he was a
14   particularly ignorant homicide detective?
15       A.    I wouldn't say he was ignorant, no.
16       Q.    So do you have any reason to
17   believe that Detective Volpe would not know,
18   in 1986, what the limits were of hair
19   microscopy?
20            MR. SEPE:  Objection as to form.
21            THE WITNESS:  I have no idea.
22   MR. SCHECK:
23       Q.    Do you have any reason to believe
24   he wouldn't know that?
25            MR. SEPE:  Objection as to form and



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SII   Document 224-17   Filed 06/02/12   Page 103 of 296 PageID #:
5298

1                          Klein

2        asked and answered.

3                    THE WITNESS:  He's not a lawyer,

4        he's not a trained microscopist, and you

5        would have to ask him.

6                    I don't believe I ever had the

7        discussion with him where he told me I

8        understand all this stuff.

9    MR. SCHECK:

10        Q.    Let he ask you this.

11        District attorneys doing homicide cases,

12   in 1986, knew the limits of hair microscopy

13   testimony, right?

14                   MR. SEPE:  Objection as to form.

15                   THE WITNESS:  Again, I can answer

16        for myself, and I learned it in this

17        case.  Maybe a case before this, but I

18        don't know.

19   MR. SCHECK:

20        Q.    One would expect that district

21   attorneys dealing with homicide cases would

22   know something about the limits of hair

23   microscopy testimony?

24        A.    If they had a hair case, I would

25   expect that.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 104 of 296 PageID #: 5299

104

1                    Klein

2       Q.    Would you not agree, just looking

3   now at paragraph ten of Volpe's affidavit,

4   when he says, "A search of that van has

5   produced hair consistent with Theresa

6   Fusco's," right, that's as far as a hair

7   microscopist could go, a statement that the

8   hair was consistent with hers, right?

9            MR. SEPE:  Note my objection.

10           MR. FERGUSON:  Note my objection.

11           THE WITNESS:  I don't know that

12      that's the way Volpe using the term.

13  MR. SCHECK:

14      Q.    I didn't ask you that question.

15      A.    You are asking the question that

16  way.

17      Q.    Please listen to my question.

18           MR. FERGUSON:  You are asking that

19      question.

20      Q.    As of 1986, to the best of your

21  knowledge, the furthest a hair microscopist

22  could go in terms of a statement about

23  whether a questioned hair and a known hair,

24  about the comparison, the best they could do

25  was to say that the questioned hair and the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2   known hair were "consistent" with each other,

3   right?

4              MR. SEPE:  Objection as to form,

5        and, again, asking a fact witness for an

6        expert opinion on a scientific issue.

7              If you understand the question, you

8        can answer it.

9              THE WITNESS:  I do.

10  MR. SCHECK:

11       Q.    That's correct, right?

12       A.    That's correct.

13       Q.    Judges, they were dealing with hair

14  microscopy testimony all the time?

15       A.    Please, you ask me about

16  detectives.  I have no idea about judges.

17       Q.    Did you know Judge Leff?

18       A.    Larry Leff is the Chief Assistant

19  of the DA's Office.

20       Judge Lawrence?

21       Q.    Did you know Judge Ane?

22       A.    Judge Stewart Ane.

23       Q.    Smart judge?

24             MR. SEPE:  Objection.

25             THE WITNESS:  I'll let the record



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 106 of 296 PageID #: 5301

106

Klein

1

2     reflect as to his degree of intelligence.

3     I'm not going to get into commenting on

4     judges' intelligence.

5          MR. FREEMAN:  You mean his record,

6     not this record?

7          THE WITNESS:  I'm not getting into

8     that.

9  MR. SCHECK:

10     Q.    Well, assuming that the Judge

11  before whom this wiretap extension order was

12  brought had knowledge of the limits of

13  microscopic hair examination, are you with

14  me?

15     A.    Yes.

16     Q.    Would not a statement that a search

17  of that van produced hair consistent with

18  Theresa Fusco's have evidentiary significance

19  for purposes of extending the wiretap

20  application?

21          MR. SEPE:  Objection to form.

22          THE WITNESS:  I have no idea.

23  MR. SCHECK:

24     Q.    Would you not agree that the

25  purpose of having Detective Volpe give an



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    affidavit was to convince the Judge to extend

3    the wiretap?

4        A.    I can't say what his purpose was.

5    I wasn't involved in the case then.

6        Q.    But wasn't this an application to

7    extend the wiretap?

8        A.    That's what it's titled.

9        Q.    So in your mind an application to

10   extend the wiretap was your understanding, in

11   1986, and as you sit here today that the

12   prosecution has to make a showing that

13   they've gathered evidence sufficient to

14   continue the wiretap, right?

15       A.    Or that there's some reason to

16   continue the wiretap, whether they gathered

17   evidence or not.

18       Q.    Right.

19       And would you not agree that one purpose

20   of Detective Volpe's affidavit with respect

21   to stating the results of the search of the

22   van was to try to persuade the Judge to

23   extend the wiretap application?

24       A.    I just think that I can't comment

25   on that.  I wasn't involved in it.  You're



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 108 of 296 PageID #:
5303

1                           Klein

2    making a big assumption.

3              MR. SEPE:   I think the problem is

4         once we ask the witness to get into the

5         mind of a judge or a detective or a

6         scientist as to anything, we're just

7         creating questions, forget about raising

8         objections, that are going to take time.

9              MR. SCHECK:   All of these

10        questions, just so you know, Counsel and

11        Mr. Klein, I'm asking you these questions

12        with respect to the knowledge of the

13        customs and the practices of the District

14        Attorney's Office and the Court system in

15        1986.

16   MR. SCHECK:

17        Q.    Do you have that in mind?

18             MR. FERGUSON:   Just note my

19        objection.

20             There isn't any foundation for the

21        customs and practice of the Court system.

22   MR. SCHECK:

23        Q.    Were you familiar with the customs

24   and practice of the Court system, in 1986,

25   when you working as a District Attorney?




Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                          Klein

2                MR. FERGUSON:  Note my objection.

3                THE WITNESS:  Somewhat.

4    MR. SCHECK:

5        Q.    You were familiar with the process

6    of making an application to get a search

7    warrant, were you not?

8        A.    Yes.

9        Q.    You were familiar with at least the

10   process by which a district attorney would

11   make an application to extend a wiretap

12   application?

13       A.    To a certain extent, but I had

14   never done one.

15       Q.    Without having done one, would you

16   agree that you were familiar with the general

17   process of what had to be done?

18       A.    To a certain extent.

19       Q.    And based on your understanding of

20   how that worked, in 1986, would you not agree

21   with me that one of the purposes of having a

22   detective in a case fill out an affidavit in

23   support of an extension of the wiretap

24   warrant was to give evidence to the Judge

25   about the investigation that would persuade



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 110 of 296 PageID #: 5305

110

1                      Klein

2     the Judge to continue the wiretap, right?

3          A.     As a general matter, yes.

4          Q.     And based on the customs and the

5     practices at the time as you understood them,

6     in 1986, would you not agree with me that was

7     one of the purposes of having Volpe fill out

8     this affidavit and talk about what was found

9     in Restivo's van?

10         A.     I have no idea.

11         Q.     You have no idea?

12         A.     No, I don't.

13         Q.     I just want to call your attention

14    to the Fraas deposition of page 78?

15              MR. SEPE:  I'm sorry, what page?

16              MR. SCHECK:  Page 78, line 3.

17    MR. SCHECK:

18         Q.     "Question:  But you were the only

19    hair examiner in the lab in the 1980s, right?

20         "Answer:  That's correct."

21         Do you see that?

22         A.     Yes, I do.

23         Q.     "Question:  So you didn't have any

24    peer reviewer in this case?

25         "Answer:  We didn't have any peer review



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 111 of 296 PageID #:
5306

1              Klein

2    program to my knowledge.

3        "Question:  Are you familiar with the

4    idea of a technical review or a supervisor

5    review of hair work?

6        "Answer:  No, ma'am.

7        "Question:  So it was not your practice

8    to have any supervisor review your work or

9    your findings in hair cases at the SIV, was

10   it?

11       "Answer:  No, ma'am.

12       "Question:  So Supervisor Muller did not

13   review your hair comparisons?

14       "Answer:  Not to my knowledge.  You'd

15   have to ask Supervisor Muller.

16       "Question:  Well, you didn't hand your

17   slides over to him to look at, did you?

18       "Answer:  No, ma'am."

19       So do you remember whether there was

20   anyone other than Mr. Fraas who was doing

21   hair examination in 1986 at the SIV?

22       A.    I don't remember.  I don't think I

23   would have known then, Mr. Scheck.

24            (Discussion held off the record.)

25            (Recess taken.)



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 112 of 296 PageID #:
5307

1                      Klein

2            MR. FREEMAN:  Mr. Ferguson, my

3       co-counsel, has left the proceedings as a

4       result of a medical issue he was having,

5       and he'll be unavailable for the rest of

6       the afternoon.  We have decided to

7       continue, and we would like to deposition

8       to proceed now as planned.

9    MR. SCHECK:

10       Q.    Mr. Klein, I want to see if I

11   understood an answer that you gave before,

12   okay?

13       A.    Yes.

14       Q.    About the reasons you believe,

15   based on your knowledge of the custom and

16   practices of the District Attorney's Office

17   in 1986, that Detective Volpe might have put

18   into this affidavit the statement that a

19   search of the van produced hair consistent

20   with Theresa Fusco's, okay?

21       A.    Okay.

22       Q.    I think you said, first, you didn't

23   know what Volpe might have meant by the

24   statement, "hair consistent with Theresa

25   Fusco's; is that correct?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 113 of 296 PageID #:
5308

1                           K l e i n

2        A.     Yes.

3        Q.     By that you mean that Volpe might

4    not have understood the limits of microscopic

5    hair comparison, and when he used the word

6    "consistent" he did not mean that the hair

7    had been examined by a microscopist and found

8    to be consistent with Theresa Fusco's?

9             MR. SEPE:   Well, that's

10         characterizing testimony as to questions

11         he was asked about what someone else

12         meant.

13             MR. SCHECK:   He gave an answer, and

14         I want to know what he meant.

15   MR. SCHECK:

16        Q.     Is that not one of the things you

17   said?

18        A.     Not the way you said it, no.   What

19   I meant that he meant was whether he's using

20   the phrase "consistent with" in the same

21   manner as a microscopist filing an official

22   report.

23        Q.     I think we reviewed this, but based

24   on your understanding in 1986 and until

25   today, when a statement is made that a hair



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 114 of 296 PageID #:
5309

114

1                    Klein

2    is consistent with somebody's, that is as far

3    as a hair microscopist can go, correct?

4              MR. SEPE:  Same objection.

5              THE WITNESS:  Yes.

6    MR. SCHECK:

7         Q.    So, if I understand it, you're

8    saying that one possibility is that Volpe

9    didn't understand what hair microscopists do,

10   and he might have been saying here that the

11   hair was consistent with Theresa Fusco's

12   based on something other than a statement

13   from Fraas, correct?

14        A.    That's really asking two questions,

15   two answers in one.  Those are two

16   possibilities for why Volpe is doing that.

17        Either, one, he didn't understand, or,

18   number two, he did understand, but he wasn't

19   using that phrase as a microscopist would in

20   filing an official report.  He could have

21   very well understood what a microscopist is

22   capable of doing, but when he used the words

23   "consistent with," it maybe wasn't based upon

24   that full examination, or he didn't use the

25   words as a microscopist would use it.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com


Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 115 of 296 PageID #:
5310

1                         Klein

2          So there are a variety of different

3     explanations for it.  I don't know which one

4     is true.

5          Q.    Let's just examine them for a

6     second.

7          In terms of the custom and practices of

8     the District Attorney's office and homicide

9     detectives, as you understood them in 1986,

10    would a district attorney append an affidavit

11    from a detective that did not have a proper

12    factual basis?

13         A.    They shouldn't.

14         Q.    Would you not agree with me that in

15    1986, before stating to a judge that a hair

16    was found in the van that was consistent with

17    Theresa Fusco's, the only proper basis for

18    making that statement would have been a

19    report, formal or informal, from a hair

20    microscopist?

21              MR. SEPE:  Objection.

22              THE WITNESS:  I disagree with you.

23    MR. SCHECK:

24         Q.    You disagree with that?

25         A.    Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 116 of 296 PageID #: 5311

116

1                     Klein

2        Q.     You're saying that, as a district

3    attorney in 1986, it would have been proper

4    to say that hair was consistent with Theresa

5    Fusco's based on a detective just looking at

6    the hairs, him or herself?

7        A.     I'm saying that that is included

8    within the term "a search of the van has

9    produced hair consistent with."  He didn't

10   say a search of the van analyzed by a hair

11   microscopist, so I don't know, Mr. Scheck, I

12   don't know.

13       Q.     I'm asking you --

14       A.     The statement is not clear enough

15   for me to conclusively agree with your

16   statement.

17       Q.     Well, have you ever heard of any

18   homicide detective looking at hairs collected

19   from vacuumings of a vehicle and saying,

20   based on his or her own visual, gross visual

21   examination of the hair, oh, those hairs are

22   consistent with the deceased?

23       A.     I can say, I can't say specifically

24   in exact facts you gave, but I can say that I

25   have had homicide detectives make independent



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 117 of 296 PageID #: 5312

117

1                    Klein

2    nonexpert analysis of evidence and come up

3    with opinions on them, yes, whether it's

4    ballistics or blood, I can't say specifically

5    hair, but I can't say I never had a case like

6    that either.

7         I mean, I can look at a hair and compare

8    it to something and exclude it, or I can look

9    at two hairs and say, you know, that's

10   consistent with or they look alike visually.

11        It doesn't have to be an expert opinion,

12   and I don't know in what context Volpe is

13   doing this in this affidavit since I wasn't

14   involved in the case then, I didn't prepare

15   the Affidavit, I didn't seek to Volpe about

16   it.

17        Q.    You do understand the context of

18   this affidavit, don't you?

19        A.    I know it was added to a request to

20   extend an eavesdropping order.

21        Q.    You understand that much, right?

22        A.    Yes, I do.

23        Q.    You have no specific recollection,

24   in all your work on this case, which includes

25   the trial, the reinvestigation, and



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 118 of 296 PageID #:
5313

118

1                    Klein

2    supervising the retrial, of any information

3    that someone had made a determination that a

4    hair consistent with Theresa Fusco's was

5    found in the van within two days of the van's

6    recovery, and that is between March 27th and

7    March 29th?

8         A.    I have no idea.

9         Q.    You've never heard of anything like

10   that, have you?

11        A.    I can't say I have or I haven't.   I

12   don't remember.

13        Q.    Well, I'm asking you now, do you

14   have a specific recollection of any evidence

15   in any way connected with this case that

16   somebody reported that hairs consistent with

17   Theresa Fusco were found in the van between

18   March 27th and March 29th, other than this

19   paragraph ten?

20        A.    I wasn't involved in the case then.

21   I wouldn't have had any way of knowing.

22        Q.    You did a reinvestigation of this,

23   did you not?

24        A.    Well, I also tried the case, but in

25   that period of time, I wasn't involved in it.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2   So whether someone did that, I wouldn't know.

3        Q.    Mr. Klein, when you tried the case,

4   you familiarized yourself with things that

5   happened in the case prior to the time you

6   took it over?

7        A.    That's true.

8        Q.    That's something you would do in

9   trying the case, wouldn't you?

10       A.    That's true.

11       Q.    So you familiarized yourself with

12  the wiretaps, right?

13       A.    That's true.

14       Q.    And how they came to get the

15  wiretaps?

16       A.    Yes.

17       Q.    When you were involved in the

18  reinvestigation of the case, that involved

19  some examination of things that happened

20  before you were assigned this matter?

21       A.    I assume so.  I really can't

22  specifically remember the reinvestigation,

23  the time periods.

24       Q.    Well, a lot of this reinvestigation

25  focussed on the DNA and the hair, right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 120 of 296 PageID #: 5315

1                    Klein

2         A.    Well, subsequent analysis of it,

3    yeah.  DNA wasn't even heard of when we tried

4    the case.

5         Q.    But the examination of semen and

6    hair that was recovered from the body, all

7    that happened before you were assigned to the

8    case, right?

9         A.    That's what I'm saying.

10        Q.    And, nonetheless, you made it your

11   business, when you were the trial counsel and

12   during reinvestigation, to find out as much

13   as you could about what happened before you

14   were assigned the case, right?

15        A.    That's true.

16        Q.    Fair enough?

17        A.    Yes.

18        Q.    Based on your knowledge from being

19   trial counsel, having been involved in the

20   reinvestigation, and having supervised the

21   retrial, right, other than this statement in

22   paragraph ten in Volpe's affidavit on

23   March 29th, right, you have heard of no other

24   evidence, I take it, that somebody other than

25   Volpe said, ah, in substance or directly, we



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1              K l e i n

2    found a hair consistent with Theresa Fusco's

3    in the van?

4         A.    I don't remember that.

5         Q.    It also says here, "possible human

6    blood," in paragraph ten of this application,

7    right?

8         A.    Okay.

9         Q.    Does it?

10        A.    It does.

11        Q.    And in terms of the customs and

12   practices of the time, this would be, would

13   you not agree, a significant statement to a

14   judge that we found hair consistent with the

15   victim in the van and possible human blood in

16   the van, correct?

17        A.    It would be information provided to

18   a judge.

19        Q.    It would be significant information

20   for a judge to consider in extending a

21   wiretap application, fair enough?

22        A.    It would be information for them to

23   consider.

24        Q.    It would be the kind of information

25   that might induce a judge to continue the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 122 of 296 PageID #:
5317

122

```
 1                    Klein

 2   wiretaps because it would be showing that

 3   progress was being made in the investigation;

 4   fair enough?

 5            MR. SEPE:  Objection to form.

 6            THE WITNESS:  It's possible.  It's

 7       possible.

 8   MR. SCHECK:

 9       Q.    Do you remember an officer named

10   Birdsall?

11       A.    Yes.

12       Q.    Who is he?

13       A.    Wayne Birdsall?

14       Q.    Yes.

15       A.    I believe, back then (when I say

16   back then, I mean when I was investigating

17   and trying the case) I believe he was in the

18   Serology Department.  He subsequently became

19   a sex crimes investigator, but I believe he

20   was a serologist when this case was going on

21   in 1985 and 1986.

22       Q.    So, to the best of your

23   recollection, he would be the person who

24   would examine, let's say, the van to

25   determine the presence of semen or blood?
```



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                          Klein

2         A.     He was one of them.  I don't think

3    he was the only one, but, certainly, whether

4    he examined the van or whether he examined

5    evidence that was collected from the van, he

6    would be involved in serological research,

7    examination.

8         Q.     Let's take a look at Volpe's

9    testimony.  Let's turn to Mr. Volpe's

10   testimony at page 244, and starting, why

11   don't we start at line two.

12        "Question:  All right.  Let's go back to

13   the issue of human blood.  Are you with me?

14        "Answer:  I'm with you, yes.

15        "Question:  Birdsall was the one that

16   processed the van, right?

17        "Answer:  Correct.

18        "Question:  So, Birdsall, if there were

19   possible human blood in the van, Birdsall

20   would have told it to you, right?

21        "Answer:  No.  He would have told it to

22   his supervisor.

23        "Question:  Let's just go through the

24   possibilities.  He might have told it

25   directly to you.  That's one possibility?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

124

1                         Klein

2          "Answer:  He might have, yes.

3          "Question:  And he might have told it to

4     his supervisor, who would then in turn told

5     it to you, right?

6          "Answer:  Or told one of my supervisors.

7          "Question:  Okay, now, you would not,

8     you're telling us, put in a warrant, this

9     affidavit of March 29th, that there was

10    possible human blood in the van unless you

11    had received that information from Birdsall

12    himself, Birdsall's supervisor or your

13    supervisor, right?

14         "Answer:  Correct."

15         Do you see that?

16         A.     That would be it, correct.

17         Q.     Why don't we turn to Mr. Birdsall's

18    testimony in this case?

19         Let's look at page 71 starting at line

20    10.

21         A.     This is Birdsall.

22         This is a deposition now?

23         Q.     Yes.

24         "Question:  Did you collect any blood

25    from the van?





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 125 of 296 PageID #: 5320

125

1              Klein

2      "Answer:  No.

3      "Question:  Did you see anything that was

4  possibly human blood in that van?

5      "Answer:  No.

6      "Question:  Did you conduct any

7  serological testing whatsoever on any part of

8  the van or anything collected from it?

9      "Answer:  No.

10      "Question:  Did you tell anybody you had

11  found anything that was possibly human blood?

12      "Answer:  No.

13      A.     Okay.

14      Q.     Do you see that?

15      A.     Yes.

16      Q.     Now, would you not agree that it

17  was Birdsall's testimony that he didn't see

18  that there was anything that was possible

19  blood and he didn't tell any supervisor that

20  there was possible blood, and Volpe's

21  testimony that it would have been Birdsall

22  who would have given him the information

23  about the possibility of blood; do you have

24  that in mind?

25      A.     Yes.



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 126 of 296 PageID #: 5321

126

1                      Klein

2          Q.     So does that seem contradictory to

3    you in terms of paragraph ten of the

4    Affidavit?

5               MR. SEPE:  Objection to the form of

6          the question as the witness has been

7          shown selected portions of two other

8          deposition transcripts.

9               So, essentially, you're being asked

10         to answer a hypothetical.  Assuming

11         everything Mr. Scheck just asked you, you

12         can answer that.

13              THE WITNESS:  I can.

14              Do I answer that?

15              MR. SEPE:  Yes.

16              THE WITNESS:  I find the testimony

17         in 2009 somewhat contradictory.  I don't

18         know that I find it contradictory with

19         the Affidavit from 1985 because 25 years

20         or 24 years have elapsed.

21   MR. SCHECK:

22         Q.     While we're getting this report,

23   let me just ask you a question.

24         You were familiar with the defenses

25   raised, certainly, at the retrial of this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                           Klein

2     case, were you not?

3           A.    To a certain extent, yeah.

4           Q.    And you were familiar with the

5     Affidavit that Mr. Petrocco put in for

6     purposes of vacating the conviction, do you

7     remember that?

8           A.    At this point, no, I don't remember

9     it.  Did I look at it at some point, perhaps,

10    but I don't have any recollection of it.  I

11    know that he did switch sides.

12          Q.    That's how you look at it, he

13    switched sides?

14          A.    No.  He testified as a prosecution

15    witness in the first trial.  He testified as

16    a defense witness in the retrial.  That's

17    what I meant.

18          Q.    To your knowledge, did Mr. Petrocco

19    say anything at the retrial factually that

20    was different than he told you at the time of

21    the trial?

22          A.    I didn't hear his testimony.  My

23    understanding was that he had changed his

24    opinion somewhat, but, again, I didn't hear

25    it.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 128 of 296 PageID #:
5323

128

1                      Klein

2          Q.     Have you reviewed your closing

3     argument in this case?

4          A.     No.

5          Q.     I'm going to show you Exhibit 108,

6     and this is a Report of Analysis or

7     Examination by Technician, from Birdsall, of

8     the van, dated March 26th at 1700 hours?

9               MS. CORNWALL:   Referring you to

10          Sheet Number Six of the collective

11          reports of the exhibit.

12               MR. SEPE:   I think it has 13093 and

13          it has a disclosure number on the bottom.

14     MR. SCHECK:

15          Q.     Do you see it?

16          A.     Yes.

17          Q.     Take a look at it.

18          A.     Okay.

19          Q.     Now, you see that Birdsall is

20     reporting that "Numerous hairs were removed

21     from the carpet and floor of the van.  Pillow

22     case, T-shirt and blankets were removed from

23     the van.  Above items were forwarded to

24     Detective Fraas at 1800.

25          Do you see that?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 129 of 296 PageID #:
5324

1                         Klein

2          A.      Yes.

3          Q.      This was apparently filled out on

4     March 26th, 1985?

5          A.      It says that -- you know this is --

6     yeah, I'll go along with that.

7          Q.      And in terms of customs and

8     practices in 1986, to your knowledge, this

9     would be a report that would be filled out by

10    the serologist, Birdsall, as to what he found

11    when he examined John Restivo's van?

12         A.      It's funny.  I would have expected

13    this from a crime scene detective.  So to me,

14    that would be the normal practice and

15    procedure, that a member of the Crime Scene

16    Unit would actually examine the van, and

17    probably with the assistance of serologists,

18    microscopists, but I don't know.

19         First of all, I don't know that the crime

20    scene guy wasn't there, but the fact that it

21    was done by Birdsall indicates to me that he

22    was probably the one who physically did it.

23    So it does surprise me as far as practices

24    and procedures.

25         Q.      So this was a case where there was



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 130 of 296 PageID #: 5325

130

1              Klein

2    a search warrant affidavit.  The van was

3    seized and it was taken and it was brought

4    right away to SIB for examination, right?

5        A.    ESB, Emergency Services Bureau,

6    right.

7        Q.    This report, in terms of the custom

8    and practices of the time, would be a report

9    by the serologist as to what he found in the

10   van on March 26th, right?

11             MR. SEPE:  Objection to form.

12   MR. SCHECK:

13       Q.    In terms of the customs and

14   practices.

15       A.    Again, I disagree.  My

16   understanding at that time was that a crime

17   scene detective would have actually done the

18   physical work, but if he says he did it, I

19   see the document, he apparently did it, but

20   you're asking me what the custom and practice

21   is, and that's not my understanding.

22       Q.    Well, if there's a report that's

23   filled out by Birdsall, and he testified that

24   he was the person who went through the van to

25   find the hair, would you accept that?



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL Document 224-17 Filed 06/02/12 Page 131 of 296 PageID #: 5326

131

1                    Klein

2         A.    Yeah.

3         Q.    You don't see anything here in

4    Birdsall's report indicating that he

5    discovered something that was possibly human

6    blood in the van, do you?

7         A.    No.

8         Q.    And if the serologist who was the

9    person that examined the van found nothing

10   that was possibly human blood in the van,

11   would it be proper to put in an application

12   to a judge for the extension of a search

13   warrant on March 29th, that something that

14   was possibly human blood was found in the

15   van?

16             MR. SEPE:   Objection to form.

17             THE WITNESS:   Unless somebody else

18        saw it.  You know, I agree with you.

19             If there's no information that

20        there's possibly human blood in a van,

21        and someone puts that in an affidavit,

22        then I don't know where they got that

23        from.

24   MR. SCHECK:

25        Q.    Well, the point of having a



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2      serologist go through the van looking for

3      blood and semen is that person is equipped to

4      do presumptive tests for the presence of

5      semen and blood, right?

6           A.    True.

7           Q.    And no matter what anybody might

8      have believed what they saw who was a

9      detective in the van, the lead detective in a

10     homicide case would have to be limited to

11     what the serologist said about the presence

12     or absence of blood and semen; fair enough?

13              MR. SEPE:   Objection.

14              MR. FREEMAN:   I have to object.

15          You're assuming a fact not in

16          evidence or not before us at the EBT.

17          Mr. Klein said he thought he

18          remembered that Birdsall was a

19          serologist, but we don't know if he was a

20          serologist at that time, if he was acting

21          as a serologist when he made that report.

22              MS. CORNWALL:   It is in the record

23          of the case for that date.

24     MR. SCHECK:

25          Q.    Let's just assume for these



ESQUIRE
an Alexander Gallo Company



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 133 of 296 PageID #:
5328

1                          Klein

2       questions about what would have been the

3       custom and practice in 1986.

4                  MR. SEPE:  I'm sorry, the DA's

5           Office or the Police Department?

6                  MR. SCHECK:  Both.

7       MR. SCHECK:

8           Q.     The purpose of having a serologist

9       look through a van is that serologist would

10      do presumptive tests to determine the

11      possible presence or absence of blood and

12      semen, right?

13          A.     That or removing scrapings from the

14      van and doing testing later on.

15          Q.     Or removing hairs?

16          A.     Hairs or possible blood.

17          Q.     Is a lead detective in a homicide

18      case, based on your understanding in 1986, if

19      the serologist went through the van and found

20      nothing that could be characterized as

21      possible human blood, then it would be

22      improper to tell a judge in an affidavit

23      three days later that possible human blood

24      was found in the van?

25                 MR. SEPE:  Objection to form.



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

134

1                         Klein

2              THE WITNESS:  If that's the only

3         information that --

4              Am I supposed to answer this?

5              MR. SEPE:  If you can, yes.

6              THE WITNESS:  If that's the only

7         information that a homicide detective

8         has, that a serologist has looked at the

9         van and can't find anything that might be

10        blood, and then on his own, the detective

11        goes in and says there's possible human

12        blood in the van, then I don't think that

13        would be proper.  There should be some

14        support for what the detective is telling

15        the Judge.

16   MR. SCHECK:

17        Q.    Now, at any time during the course

18   of this litigation, has anybody from the

19   County's Office asked your assistance in

20   trying to reconstruct what was the

21   prosecutor's file in either 1986 or 2005?

22        A.    No.

23        Q.    Have you gone through any documents

24   in trying to determine what was or was not in

25   the prosecutor's file in 1986 or 2005?




Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 135 of 296 PageID #:
5330

135

1                            Klein

2          A.      That's a good question.   I think

3     before we did the retrial, there were some

4     things I looked at to see, because the file

5     was in a different format than when I had the

6     case, to see if certain things were missing

7     or if we had this then.

8          I vaguely remember working with

9     Biancavilla maybe an hour or two hours

10    looking for certain documents.   That was the

11    extent of it.

12         It was the preparation for the second

13    retrial, and he needed some explanations,

14    where did this come from, where did that come

15    from, that sort of thing.

16         Q.      Do you remember that Theresa Fusco

17    disappeared, I guess, it was on November 10th

18    of 1984, after she left Hot Skates?

19         A.      I'm sure her parents will never

20    forget the date, but I can't remember the

21    exact date.

22         Q.      But do you remember there was a

23    number of weeks that elapsed between the time

24    that she disappeared and the time that her

25    body was found?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

136

                        Klein

1

2      A.    I would say that's fair.

3      Q.    And during that period of time, do

4  you recall, from your efforts to find out

5  what happened before you were assigned to the

6  case, that there were many people interviewed

7  in this case?

8      A.    Yes.

9      Q.    Let me show you what's been marked

10  as Exhibit 185.  I think you indicated you

11  knew who Mr. Spillane was?

12          MS.  HOFFMAN:  It's actually 184

13      and 185.  184 is the original letter,

14      which is barely legible.

15          MR. SCHECK:  185 is a typed

16      version.

17  MR. SCHECK:

18      Q.    I'm going to direct your attention

19  to 185.

20      A.    Can you tell me who prepared the

21  letter of this more legible one?

22      Q.    I believe --

23          MS.  HOFFMAN:  Our office.

24  MR. SCHECK:

25      Q.    Our office took a look at 184.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 137 of 296 PageID #: 5332

137

1                    Klein

2        A.     Why don't we work off 184 because I

3   can read it, and if there's some dispute,

4   then I'll look at this, but I can read 184

5   pretty well.

6        Q.     I call your attention to paragraph

7   two in 184.

8        A.     Okay.

9        Q.     I think it's the third sentence.

10  It says, "During the course of the initial

11  investigation --

12       A.     Hold on, okay, yeah, "During the

13  course."

14       Q.     "During the course of the initial

15  investigation at the Command Post,

16  approximately 500 persons were interviewed."

17  Okay?

18       A.     Yes.

19       Q.     Do you see that?

20       A.     Yes.

21       Q.     You recall, do you not, that quite

22  a number of people were interviewed at the

23  beginning of this investigation?

24       A.     Yes.

25       Q.     And then there came a point in time



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                         Klein

2     when suspicion focussed on Dennis Halstead,

3     correct?

4          A.     At some point, yes.

5          Q.     Now, do you have any specific

6     recollection of being given all of these

7     interviews of 500 people that were done in

8     this case, especially those that did not

9     relate to the investigation of Restivo, Kogut

10    and Halstead?

11         A.     I have a general recollection of

12    looking through the police investigation in

13    total, whether it related to Halstead,

14    Restivo or not.  As to specific documents, I

15    couldn't possibly recall that now.

16         Q.     Right.

17         A.     I do remember, that's the way I

18    would start to look at a case.

19         Q.     But when you said that you would

20    look, that would be that you would go and

21    look at the homicide file?

22         A.     Either that or they would bring it

23    to my office.  Generally, they would bring it

24    to my office, but it could work both ways.

25         Q.     But in terms of getting the actual



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                     Klein

2    documents and making them part of the

3    District Attorney's file, that was a

4    different process?

5        A.    If it was made a part of the

6    District Attorney's file.  That's not

7    necessarily the case that we would just copy

8    everything that homicide had and make it part

9    of our file.

10       Q.    So that wasn't the general

11   practice, right?

12       A.    To just copy the whole, no, that

13   was not the general practice.

14       Q.    So it was the general practice that

15   you would take those documents from the

16   homicide file that you thought were relevant

17   to the case?

18       A.    Yeah, giving relevance a broad

19   reading.

20       Q.    And when either you went and looked

21   at the police file or it was brought to you,

22   you were relying on the homicide detectives

23   to present you with their files?

24       A.    Yes.

25       Q.    I'm showing you Exhibit 168.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 140 of 296 PageID #: 5335

                              Klein

1

2        Do you remember at any time reviewing a

3   poster of the description of Theresa Fusco

4   when she went missing?

5        A.    I remember reviewing at least one

6   poster.

7        Q.    Would this be --

8        A.    I couldn't say that this is the

9   exact one.  It could very well be, but it may

10  be different too.

11       Q.    Would it be fair to say that, to

12  the best of your recollection, the

13  description of Theresa Fusco that was put on

14  the missing poster was height, 5'3"; weight,

15  104 pounds; age, 15; brown hair; blue eyes;

16  striped blue jeans; white balloon sneakers.

17       Do you see that?

18       A.    I see it.

19       Q.    Consistent with your recollection?

20            MR. SEPE:  His recollection of

21       what?

22  MR. SCHECK:

23       Q.    Of what the victim was wearing when

24  she went missing, to the best of your

25  knowledge.



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2        A.    The only thing that's new the way

3   I'm looking at this now that I don't

4   recollect is striped blue jeans.  The rest of

5   it I remember.

6        I can't say that that was exactly her

7   weight and her height, but it's consistent

8   with the way I viewed her.  She did have

9   brown hair.  She did have blue eyes.

10       I remember a denim jacket.  I remember

11  that description of balloon sneakers because

12  I never heard that before.  Striped blue

13  jeans, I can't say that I recall it now,

14  but --

15       Q.    Striped blue jeans are a somewhat

16  distinctive description of blue jeans, right?

17       A.    Well, compared to solid blue jeans,

18  yeah.

19       Q.    Do you have a specific recollection

20  of getting information that soon after

21  Theresa Fusco's body was found there was a

22  witness who had reported being at the

23  intersection near where her body was

24  recovered and hearing a woman scream at or

25  around the time that Fusco disappeared?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 142 of 296 PageID #: 5337

142

```
1                       Klein
2        A.     I can't recall that specifically,
3    those facts, no.
4        Q.     Do you have a specific recollection
5    of ever hearing that there was a witness that
6    said that in the area where Theresa Fusco's
7    body was found, she saw a beige car with a
8    broken windshield and blankets and a rope
9    inside that car?
10       A.     I think you told me that.
11       Q.     I told you that?
12       A.     Yes.
13       Q.     But prior to my telling you that,
14   you had no specific recollection of any
15   homicide detectives ever discussing that with
16   you?
17       A.     I can't say that never happened,
18   but I don't remember it happening.
19       Q.     I'm only asking what you remember.
20              (Discussion held off the record.)
21              Just to be clear, I don't remember,
22       maybe you do, the specific date when I
23       discussed this with you.
24       A.     I can't give you a specific date.
25   I can give you an approximate time.
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 143 of 296 PageID #: 5338

143

1                    Klein

2        Q.    Yes, no problem.

3        A.    I was still working at the Attorney

4    General's Office at the time, and you called

5    me there.  I was sitting at an outside

6    cubicle, which means it was towards the end

7    of my time there, so I'm going to say it was

8    sometime in 2006, and I remember the

9    conversation somewhat.

10        Q.    What do you remember my saying?

11        A.    I remember something like you

12    saying that you had found this information,

13    something about a car, something about, I

14    don't remember much other than the car,

15    whether I had any recollection of that from

16    the case, and I think I told you I did not.

17        Q.    Right.

18        You mean 2009 we had this conversation,

19    don't you?

20        A.    No, you're right, I'm sorry.  I'm

21    thinking of the DA's Office.  Yes, 2009, like

22    the spring, maybe of 2009.

23        Q.    And --

24        A.    I think I told you that I thought

25    the County Attorney's Office was representing



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 144 of 296 PageID #:
5339

```
1                     Klein
2      me then.
3          Q.     Right.
4          A.     I think I suggested that you speak
5      to them.
6          Q.     Right.
7      And have you reviewed any documents about
8      this issue of a beige or tan car being seen
9      in the area where Theresa Fusco was
10     eventually found at or around the time she
11     disappeared.
12         A.     I don't think so.
13         MR. SCHECK:  Before we review these
14         documents, maybe this is an appropriate
15         time to break.
16         It's now 1:17 by my watch, so is,
17         45 minutes appropriate so we can
18         reconvene at two?
19         (Luncheon recess taken at 1:18 p.m.)
20
21
22
23
24
25
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

145

1                         Klein

2    A F T E R N O O N    S E S S I O N

3                 (Time noted:  2:08 p.m.)

4       F R E D    K L E I N,     resumed and

5    testified as follows:

6    EXAMINATION BY (Cont'd.)

7    MR. SCHECK:

8       Q.    Mr. Klein, wouldn't you agree, as a

9    general matter, that sometimes in your

10   experience as a district attorney, as a

11   lawyer, a witness comes forward to describe

12   something that happened some period ago in

13   the past, and the witness is wrong about

14   dates but right about the sequence of event;

15   has is that occurred to you?

16      A.    I can't recall a specific instance.

17   I'm not saying it never occurred, but I can't

18   recall one.

19      Q.    Well, i guess, what I'm saying is,

20   as a trial lawyer, would you not agree that

21   when evaluating the testimony of a witness

22   who comes forward and says I remember

23   something that happened a month ago on X

24   date, right, that even if the witness gets

25   the date wrong, what's important is to look



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 146 of 296 PageID #: 5341

146

```
 1                    Klein
 2    at the sequence of events the witness
 3    describes and any corroboration that may
 4    arise as to what the witness said?
 5              MR. SEPE:  Objection to form.
 6              THE WITNESS:  I can see that
 7         happening.  The relative importance of it
 8         depends upon each witness, but I can
 9         certainly see that happening.
10    MR. SCHECK:
11         Q.    Right.
12         So would it have been your practice back
13    in 1986 to examine the sequence of events
14    that a witness described and to look at
15    objective physical evidence that might
16    corroborate it?
17         A.    That would be one of the things I
18    would do.
19         Q.    Sure, right?
20         A.    Yes.
21         Q.    I would like to start by showing
22    you, I guess, it's 166.
23         Looking at 166, do you see that this is a
24    report by a John French that his car was
25    stolen on November 10th, 1984, sometime
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




Klein

 1                    Klein

 2    between 2130 and 2305 hours, right?

 3         A.    Yes.

 4         Q.    And putting it in English, what is

 5    2130 hours?

 6         A.    That would be 9:30 p.m.

 7         Q.    This document indicates French is

 8    reporting that sometime between 9:30 and

 9    11:05, on November 10th, 1984, his car was

10    stolen, right?

11         A.    That's what it says.

12         Q.    And the location is the south side

13    of Lakeview Avenue, 200 feet west of Ocean

14    Avenue in Lynbrook, New York.

15         Do you see that?

16         A.    Yes.

17         Q.    I would like to have you turn and

18    look at this chart that we've created.

19         Could you look at the bottom and tell me

20    what exhibit it is?

21         A.    170 A.

22         Q.    And I represent to you that

23    witnesses have said that, this is not drawn

24    to scale, but it is a fair and accurate

25    depiction of the area where Theresa Fusco's



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 148 of 296 PageID #: 5343

148

```
 1              Klein
 2   body was found in 1984, the general area.
 3        A.    Yes.
 4        Q.    Can you take a look at the point
 5   that's labelled Number Three, "John French
 6   reported car stolen from this location on
 7   November 10th, 1984."
 8        Do you see that?
 9        A.    Yes, I do.
10        Q.    And based on your knowledge of the
11   geography, would you agree that's somewhere
12   in the area of the south side of Lakeview
13   Avenue, 200 feet west of Ocean Avenue?
14        A.    This is south pointing down?
15        Q.    Yes.
16        A.    So that would be south of Lakeview
17   Avenue but east of Ocean Avenue.
18        Q.    General area, okay.
19        A.    So that's wrong.
20        Q.    So you would say Number Three
21   should be to the left of Ocean Avenue because
22   that would be the left side?
23        A.    If this statement is accurate.  The
24   statement might be inaccurate.
25        Q.    You see that the car that he
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    reports stolen is a Delta 88, I'm looking at

3    the diagram, and the color, I think that

4    would be gold, but we'll go back into it,

5    black top.

6         You see that, right?

7         A.    Yes, 1971?

8         Q.    Yes.

9         A.    With a hunting knife above the

10   passenger door?

11        Q.    Looking at page two of this

12   exhibit, you can see that there's a report

13   here concerning this vehicle, which indicates

14   that "license plates belonging to the owner

15   were put on a car owned by Debra Ann

16   DeCarlo," right?

17        A.    I'm not following along.

18        Does this have something to do with the

19   previous document?

20        Q.    Yes.  In other words when you look

21   at the document --

22        A.    "License plates belonging to

23   owner."

24        Does that mean Mr. French?

25        Q.    Yes.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 150 of 296 PageID #: 5345

                              Klein

1

2        A.      "Were put on a car owned by Debra

3    DeCarlo.  Her plates were found on the stolen

4    vehicle."

5        I'm not following this.  It sounds like

6    French's plates were put on her vehicle, but

7    her plates were found on the stolen vehicle?

8        Q.      Yes.  Just take a look at "Location

9    of recovery."

10       "Woodfield Road, south of Eagle Avenue,"

11   right?

12       A.      Woodfield Road, that's recovery of

13   the car, the plates?

14       Q.      The French car.

15       Do you see that on this report?

16       A.      "Location of recovery, Delta 88

17   Oldsmobile," right.

18       Q.      So this report, would you agree,

19   indicates that on the French car, when it was

20   recovered on Woodfield Road, south of Eagle

21   Avenue, it had the plates that belong to,

22   apparently, Debra Ann DeCarlo's car?

23       A.      That's where I'm confused.

24               MR. SEPE:  Objection to form.

25               THE WITNESS:  Her plates were found



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
                         Klein
 1

 2      on the stolen vehicle.

 3   MR. SCHECK:

 4        Q.    Yes.

 5        A.    Her plates?

 6        Q.    Yes.

 7        A.    Not Mr. French's plates.

 8        Q.    That's right.

 9        A.    But then it says, "Plates belonging

10   to owner," that's not referring to

11   Mr. French, the owner, "were put on a car

12   owned by Debra Ann DeCarlo."  So I'm

13   confused.

14        Q.    Looks like a switch.

15        A.    No, I'm confused.  It sounds like

16   two sets of plates were put on the same car.

17        Q.    Her plates were put on French's car

18   and French's plates were put on her car.

19        Do you see that?

20        A.    Her plates were found, okay.

21        Q.    Okay?

22        A.    Yes.

23        Q.    Just taking a look at that location

24   that's described as the place of recovery,

25   Woodfield Road, south of Eagle Avenue, right,
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2      could you look up at Number Six?

3           A.    Right here, yes.

4           Q.    Do you see that, based on your

5      knowledge of geography, is that Number Six

6      roughly in the area of Woodfield Road, south

7      of Eagle Avenue in West Hempstead?

8           A.    Yes.

9           Q.    And note, please, also, on this

10     police report, that the date and time of

11     recovery is November 18th, 1984, at 4:45 p.m.

12          Do you see that?

13          A.    Is that at the top?

14          Q.    No, that's date and time of

15     recovery.

16          Do you see that

17          A.    Yes.

18          Q.    Let me show you Exhibit 162.

19          You see that this indicates it's a

20     handwritten report prepared on December 11th,

21     1984, by a Detective Mitchell.

22          Do you know a Detective Mitchell?

23          A.    I did.

24          Q.    Who is he?

25          A.    I saw his name on another document.





ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 153 of 296 PageID #: 5348

153

1                         Klein
2    That's what refreshed my recollection,
3    otherwise I wouldn't remember.  I remember
4    Joel Mitchell from wherever this occurred,
5    this Fifth Precinct or Fourth Precinct down
6    on the south shore.
7         Q.    But you remember Detective Mitchell
8    being associated with the investigation of
9    this matter?
10        A.    Apparently.  I don't know that I
11   ever dealt with him personally.
12        Q.    So I'm reading from Deposition
13   Exhibit 162.
14        It says, "Lost from John French's auto;
15   rope, tools under the front seat wrapped in
16   plastic carrying case, cassette tape,
17   insurance cards, coins, bills and floor
18   mats."
19        And then there's a line, correct, do you
20   see that?
21        A.    Yes.
22        Q.    Then it says, "Nothing was on the
23   back seat of the auto prior to the theft of
24   the vehicle.
25        Do you see that?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

A.    Yes.

Q.    And another line.

"Radio was taken from dashboard, Sanyo AM/FM cassette stereo, two speakers from rear of car."

And then there's a line, and then please pay careful attention to this.

"Windshield was not," and "not" is underlined, "broken prior to the theft."

Do you see that?

A.    Yes.

Q.    Then there's an indication that at the time of the theft, French was visiting Mike Becht at One Ocean Avenue, Malverne.

Do you see that?

A.    Yes.

Q.    Now, do you have a specific recollection of ever seeing this document before?

A.    I don't know whether I've seen this document before or not.

Q.    So the answer to that question would be no?

MR. SEPE:   His answer is he doesn't



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 155 of 296 PageID #:
5350

```
 1                  Klein
 2      recall seeing it.
 3  MR. SCHECK:
 4      Q.    My question is do you have a
 5  specific recollection of seeing this document
 6  before?
 7            MR. SEPE:  And he's answered that.
 8            Do you want to answer it again?
 9            THE WITNESS:  I don't know whether
10      I've ever seen this document before or
11      not.
12  MR. SCHECK:
13      Q.    But this doesn't refresh your
14  recollection, oh, yes, I remember seeing this
15  document, or, put it another way, after
16  having reviewed this document, it doesn't
17  trigger in your mind that at some point you
18  were provided this specific information about
19  John French's car?
20      A.    I could have been or not.  I don't
21  remember.
22      Q.    So as we sit here today, you have
23  no specific recollection of knowing the
24  information that's in Defendants'
25  Exhibit 162?
```



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein
2              MR. SEPE:  That's asked and
3        answered.
4    MR. SCHECK:
5        Q.    This is about the information, not
6    the document.
7              THE WITNESS:  Do I answer it?
8              MR. SEPE:  Yes.
9              THE WITNESS:  I don't know whether
10       I got this or not.
11   MR. SCHECK:
12       Q.    I'm not talking about the document.
13       A.    The information, yeah, I don't know
14   whether I had the information or not.
15       Q.    I'm going to ask you the same
16   question about the documents of the theft of
17   John French's auto.
18       Do you have a specific recollection of
19   ever having seen these documents before?
20              MR. SEPE:  I'm sorry, just for
21        clarity, which exhibit are you talking
22        about?
23              MR. SCHECK:  166.
24              THE WITNESS:  No, I don't know
25        whether I've seen this before or not.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1              Klein

2     MR. SCHECK:

3          Q.     Let me call your attention to

4     Exhibit 158.

5          Do you recognize this to be a Homicide

6     Lead Sheet?

7          A.     Yes.

8          Q.     And this is about a lead that was

9     received on December 9th, 1984, at about

10    4:25.

11         Do you see that?

12         A.     I do.

13         Q.     And it was received by Detective

14    Volpe, right?

15         A.     Appears so.

16         Q.     And he was the lead investigator

17    here, right?

18         A.     He was.

19         Q.     And the name of the lead source is

20    Debbie Smith, correct?

21         A.     Correct.

22         Q.     It says, "Called and stated that

23    between 11/17 and 11/20, she was driving over

24    Sunrise at Rocklyn between 2100 and 0."

25         So I guess that would mean between 9 p.m.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 158 of 296 PageID #: 5353

158

                    Klein

1
2    and midnight, yes?

3        A.    Yes.

4        Q.    "And heard a scream.  When she got

5    to the railroad tracks on Rocklyn, there was

6    a car parked with no one in it.  Auto

7    possibly tan, four-door, older vehicle, large

8    windows.  Had tools and dark colored blanket

9    in auto."

10       Do you see that?

11       A.    Yes.

12       Q.    I'm going to show you what's

13   Defendants' Exhibit 160, okay?

14       A.    You don't want me to --

15       Q.    I'm going to go back to that.

16       A.    Hold on one second.

17       Q.    And Document 160, you see that it

18   is a report here from Detective Mitchell,

19   yes, handwritten?

20       A.    It's got his name on it.  I don't

21   know who wrote it.

22       Q.    On 12/11/84 at 10:30.

23       Do you see that?

24       A.    Yes.

25       Q.    And it indicates here, "Debbie



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com


1                              Klein

2        Smith called command bus."

3            A.      Yes.

4            Q.      What is a command bus, by the way?

5            A.      They have like a mobile van, at

6        least they did when I was there, which is

7        kind of like a, what do you call those

8        things, a big camper, or a bus, more like a

9        bus.  It will have desks in it and whatnot,

10       and at some scenes they'll actually place

11       that at a scene, kind of like a police

12       presence, and one of the purposes was to have

13       people see it; and if they had information at

14       that location, they would come and give it.

15       So they called it a "bus."

16           Q.      So Defendants' 160 indicates,

17       "Debbie Smith called command bus and states

18       she is not sure she saw the automobile

19       between 11/17 and 11/21 or between 11/10 and

20       11/14.  She will attempt to put her dates and

21       activities in order and call us back."

22           Do you see that?

23           A.      I do.

24           Q.      Referring back now to Defendants'

25       158 for a second, that's the original lead



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                Klein

2    sheet on Debbie Smith, you see that on

3    December 9th, she stated that she was driving

4    over at Sunrise and Rocklyn.

5         A.    Where are you reading from?

6         Q.    The very top.

7         A.    Okay, the same thing.

8         Q.    Right.   Review that.

9         And this was between 11/17 and 11/20 is

10   what she recalled originally on 12/9,

11   correct?

12        A.    12/9.

13        Q.    And you see two days later, right,

14   she's calling back and saying she's not sure

15   whether the dates were November 17th and

16   November 21st or it was between November 10th

17   and November 14th.

18        Do you see that?

19        A.    I see what the paper says.

20        Q.    November 10th, sometime after

21   between 9:00 p.m. and 1:00 p.m., which I

22   think we reviewed was the time John French

23   estimated that his car was stolen, reported

24   missing, do you remember that?

25        A.    9:35 and 11:05?



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 161 of 296 PageID #: 5356

161

                          Klein

1

2      Q.     Yes.

3      Now, 9:35 to 11:05, during that period,

4   it's during that period that Theresa Fusco

5   was last seen alive at Hot Skates, right?

6      A.     It's in the range.  Obviously, I

7   don't know the exact time she clocked out,

8   but it's somewhere, it's in the evening.  She

9   worked the night shift that night.

10     Q.     Just look at our diagram there,

11  which is Deposition Exhibit 170 A, and could

12  you look there and see the location of Hot

13  Skates?

14     I think that's Number One.

15     A.     Right.

16     Q.     Do you recall if that's a fair and

17  accurate representation of where Hot Skates

18  was?

19     A.     I can't be that specific.  It seems

20  about right.  I know Rocklyn Avenue was there

21  and the railroad tracks were there.

22     Q.     You see Number Two, which is on

23  this exhibit labelled "The location of

24  Theresa Fusco's body as it was found on

25  December 5th, 1984, general area"?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1

2    A.    That's right.

3    Q.    Does that strike you as the general

4    area where her body was found?

5    A.    Yes.

6    Q.    Let's look at Number Five, and you

7    see that's Theresa Fusco's home, is that

8    correct, do you see that?

9    A.    Right, Windsor Place.

10   Q.    At one point during the

11   investigation of the case, there was some

12   thought, was there not, among investigators,

13   and I take it prosecutors, that Theresa Fusco

14   had left Hot Skates and was walking home when

15   she was abducted; is that right?

16   A.    I don't remember that.

17   Q.    You don't remember that?

18   A.    No.

19   Q.    Does it make some sense to you that

20   Number One, that's where Hot Skates is, and

21   Number Five, that's where her home is,

22   correct?

23        MR. SEPE:   Objection to form.

24        THE WITNESS:   That's what the map

25   indicates.   I have no reason to believe



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                         Klein

2          it's not accurate.

3     MR. SCHECK:

4          Q.     Assuming all this is accurate, does

5     it not follow that given where her body is

6     found, Theresa Fusco's body is found, right,

7     that if she had, in fact, left Hot Skates and

8     was walking home, it was somewhere in that

9     area that she could have been abducted, raped

10    and murdered?

11         A.     I can't answer that.  I don't know

12    that she was walking home.

13         Q.     I'm asking if, in fact, she left

14    Hot Skates and was on her way home --

15         A.     Right.

16         Q.     Assuming that is an investigative

17    theory, do you have that in mind?

18         A.     If you say so.  I mean, this is the

19    first I've heard of it.

20         Q.     It had never occurred to you that

21    Theresa Fusco might have been walking, after

22    she left Hot Skates, home when she was

23    abducted?

24         A.     My understanding was from the time

25    I got involved in the case was that she was



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    walking westbound on Merrick Road, I believe,

3    and that's where Kogut admitted picking her

4    up in Restivo's van.

5        Q.    That's what the Kogut confession

6    said, right?

7        A.    Right, and I don't remember hearing

8    a different version back then.

9        Q.    Just looking at the diagram,

10   right --

11       A.    Right.

12       Q.    -- would it not have been a

13   reasonable investigative lead before, before

14   there was any confession by John Kogut, that

15   Theresa Fusco could have been abducted after

16   leaving Hot Skates, labelled Number One, and

17   on her way home, which is labelled Number

18   Five on that exhibit?

19       A.    Anything's possible.

20       Q.    Well, it's not just a question of

21   possible, is it; isn't that a reasonable

22   investigative theory, given the fact that, as

23   you know, she was leaving Hot Skates that

24   evening and her home is in that area that's

25   labelled Number Five; and her body is found



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein                                August 23, 2010

165

1                      Klein

2      in an area between Hot Skates and her home,

3      right?

4                MR. SEPE:  Objection to form.

5                THE WITNESS:  From what you're

6           telling me, it's not enough evidence to

7           be an investigative lead.

8      MR. SCHECK:

9           Q.    I'm only asking --

10          A.    It's a possibility.  Could she have

11     gone home after she left work, it's possible.

12          Q.    I'm only asking you --

13          A.    She could have gone to a friend's

14     house, she could have gone to a burger place,

15     she could have gotten a ride with Halstead

16     and Restivo.  I don't know.

17     MR. SCHECK:

18          Q.    All those things are possible, but

19     isn't it one reasonable hypothesis that you

20     would expect an investigator to be pursuing,

21     right, sometime after December 5th after the

22     body of Theresa Fusco was discovered at the

23     location that's Number Two here, that she

24     might well have left Hot Skates and been

25     walking home when she was abducted?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2           MR. SEPE:  Objection to the form of

3       the question as it not only calls for

4       speculation, but asks for speculation as

5       to someone else's state of mind.

6           You can answer it.

7           THE WITNESS:  I can't answer it.

8    MR. SCHECK:

9       Q.    You can't answer whether that would

10   be a reasonable hypothesis for an

11   investigator that after she left Hot Skates

12   at 9:30, given where her body was recovered,

13   that she might have been abducted on her way

14   home?

15      A.    I say it's a possibility.  That's

16   the way I would phrase it.

17      Q.    A possibility, and I'm asking you

18   this.

19      Would it have been, in your judgment as

20   to the customs and practices of people in

21   1986 in the DA's Office and the Police

22   Department, would that not have been a

23   reasonable investigative possibility to

24   pursue?

25      A.    Could have been.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 167 of 296 PageID #: 5362

1                    Klein

2          Q.     Let's go back to Exhibit 158, and

3    you see this lead sheet from the report of

4    Debbie Smith by Volpe which states, "Called

5    and stated that between 11/17 and 11/20, she

6    was driving over Sunrise at Rocklyn --

7          A.     Can I just get my bearing?

8          Q.     Yes.

9          A.     Okay.

10         Q.     Now, you see where she was saying

11   she was driving over, that is, Debbie Smith

12   driving over Sunrise and Rocklyn; you see

13   that, right?

14         A.     I do.

15         Represented by Number Four, Rocklyn

16   Avenue and Sunrise Highway, the intersection?

17         Q.     If you notice, Number Four says,

18   "Debbie Smith's location when she reported

19   seeing a car and hearing a scream."

20         Do you see that?

21         A.     I see that.  It says here, "She was

22   driving over Sunrise at Rocklyn."

23         I assume she's talking about the

24   intersection of Sunrise Highway and Rocklyn

25   Avenue.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                           Klein

2        Q.      And this lead sheet says, just

3    we're clear for the record, "She was driving

4    over Sunrise at Rocklyn and heard a scream.

5    When she got to the railroad tracks on

6    Rocklyn, there was a car parked with no one

7    in it, auto possibly tan, four-door, older

8    vehicle, large window.  Had tools and dark

9    colored blanket in auto."

10       Do you see that?

11       A.      I do.

12       Q.      Take a look at Number Four, and

13   would you not agree that Location Number Four

14   is consistent with where Debbie Smith says

15   she was when she heard a scream?

16       A.      You know, it doesn't say which

17   direction she was going on Sunrise, but

18   assuming she's going, she's driving over

19   Sunrise to Rocklyn.

20       Q.      At Rocklyn.

21       A.      She was driving over Sunrise at

22   Rocklyn.  Okay, she's on Rocklyn.

23       Assuming she's saying she's going kind of

24   northeast, I would say that's consistent.  It

25   doesn't say which direction she's going.





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 169 of 296 PageID #:
5364

169

                         Klein

1

2       Q.      It says, "When she got to the

3    railroad tracks on Rocklyn."

4       A.      That's why I'm saying, if she's

5    going this way, I would agree that that's

6    consistent.  She's going northeast.

7       Q.      Let the record reflect that you're

8    indicating northeast, right?

9       A.      If that's the direction she was

10   going, that would be consistent with what she

11   says.

12      Q.      Assuming this diagram is drawn

13   consistent with Defendants' 158, at least

14   your description that she was going northeast

15   on Rocklyn Avenue, right?

16      A.      Yes.

17      Q.      At around the areas of the railroad

18   track, she's reporting that she saw a tan

19   auto parked there, correct?

20      A.      It doesn't say where the car was.

21      Q.      Maybe let's turn to the second

22   page.  Maybe this will help you a little bit.

23   The second page has at the top of it, these

24   are handwritten notes.

25      It says, "Detective Volpe," correct?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
1                    Klein
2         A.    Yes.
3         Q.    And it has in quotation marks,
4    "28 years."
5         Do you see that?
6         A.    Yes.
7         Q.    It says, "422"?
8         A.     "0422."
9         Q.     "0422," and this handwritten
10   report says, "Debbie Smith reports a few
11   weeks ago she was at the Sunrise/Rocklyn
12   northbound.  She heard a girl scream.  When
13   the light changed, she observed a vehicle
14   parked on the east side of Rocklyn Avenue at
15   Long Island Rail Road overpass.  No
16   occupants.  Vehicle description, 1970 to '75
17   gray or beige with large windows in it.  Time
18   approximately 2100 to 0100 hours."
19        Do you see that?
20        A.    Yes.
21        Q.    Now, putting this second page
22   together, would you not agree that Number
23   Four is a location on this diagram that's
24   consistent with these police reports of where
25   Debbie Smith said she was heading northeast
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                    Klein

2    on Rocklyn when she heard a scream and then

3    by the railroad tracks observed a vehicle

4    parked on the east side of Rocklyn at the

5    Long Island Rail Road overpass?

6              MR. SEPE:  Objection to form.

7              THE WITNESS:  Technically, I would

8         put the Four in a little different

9         location, but it's in the general

10        vicinity.  If Four represents where the

11        car was as opposed to where she was, she

12        says it's on the east side of Rocklyn

13        under the railroad, under the overpass, I

14        would put it more on the other side.

15              I don't know if it's where she sees

16        the car or where the car was when she

17        first sees it.

18   MR. SCHECK:

19        Q.    It says, "Location where she

20   reported seeing the car and hearing a

21   scream."

22        A.    So is it where the car is or where

23   she is?

24        Q.    If you look at this description,

25   she reports that she heard a scream, right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

172

                        Klein

1
2       A.      Yes.

3       Q.      And then when the light changed and

4   she was heading towards the railroad tracks,

5   she observed a car.

6       Do you have that in mind?

7       A.      Absolutely.

8       Q.      So, Number Four, you would agree,

9   is in the area where she describes hearing

10  the scream and then seeing the car across the

11  street where she eventually heads in the

12  northeast direction; fair enough?

13      A.      You could read it that way.

14      Q.      If Theresa Fusco had been abducted

15  around the time that Debbie Smith says that

16  she was in the intersection, further assuming

17  that this was on the evening of

18  November 10th, a scream could have occurred

19  from the area where her body was eventually

20  found, right, based on her report?

21      A.      If you're asking me if she's at

22  Number Four, could she have heard a scream

23  from Number Two?

24      Q.      Yes, in that area.

25      A.      I don't know.  It seems close



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                    Klein

2    enough on the map.

3         I don't know what's separating these

4    railroad tracks.  My recollection is that

5    they were high, and I don't know if someone

6    could hear what was going on, on the other

7    side, on Sunrise Highway.

8         It's a major intersection.  I believe

9    this was a Saturday night.

10        I don't know.  I'm guessing, but there's

11   a lot of variables in there, but looking at

12   it from here, it's not inconceivable.

13        Q.    I'm going to be taking you through

14   these documents with the objective in mind of

15   asking you whether or not, in 1986, after

16   December 5th, this was December 9th, after

17   the body was recovered and this report from

18   Debbie Smith was received, whether or not it

19   would be a reasonable investigative theory to

20   pursue that Debbie Smith had, in fact, heard

21   a scream from Theresa Fusco on November 10th,

22   at or around the time that she was last seen?

23        A.    Okay.

24        Q.    Do you have that in mind?

25        A.    I do.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2        Q.      So, so far, would you not agree,

3    based on what you've read, that it would have

4    been a reasonable investigative lead to

5    pursue that Debbie Smith had actually heard

6    Theresa Fusco screaming and that the car

7    involved could have been the car in which she

8    was abducted?

9              MR. SEPE:  Objection to form.

10   MR. SCHECK:

11       Q.     Just a reasonable lead to pursue?

12       A.     I think it depends.

13       Q.     Based on what I've shown you so

14   far?

15       A.     It depends.

16             MR. SEPE:  Mr. Scheck, just to

17        clarify, when you say a reasonable

18        investigative lead, are you asking

19        whether it was from the DA's Office, the

20        Police Department?

21   MR. SCHECK:

22       Q.     I'm asking, based on your

23   understanding of the customs and practices of

24   the Police Department and the DA's Office, in

25   1986, would it not have been a reasonable



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 175 of 296 PageID #: 5370

175

1              Klein

2    investigative lead to pursue that Debbie

3    Smith might well have heard Theresa Fusco

4    scream and that the car that she observed

5    could have been used in the abduction of

6    Theresa Fusco?

7         A.    And I'm saying it depends.

8         Q.    So far, as far as you're concerned,

9    it depends, based on what you've seen?

10        A.    Yes.

11        Q.    And, I take it, based on the

12   documents that we've reviewed up until to

13   time, none of this rings a bell for you as

14   something that you have a specific

15   recollection of having discussed prior to the

16   trial with Detective Volpe?

17             MR. SEPE:  Objection as to form.

18             THE WITNESS:  Should I answer?

19             MR. SEPE:  Yes.

20             THE WITNESS:  It could very well

21        have been discussed or not.  I don't

22        remember right now.

23   MR. SCHECK:

24        Q.    I'm asking whether you remember it

25   now, as you sit here today?



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

A.      I'm saying I don't remember it now.

Q.      So if you don't remember it now,
the answer to my question is no, you don't
remember this.

MR. SEPE:  Hold on one second.
First of all, let him finish his answers
before new questions come.  Second,
please, don't raise your voice to him.

MR. SCHECK:

Q.      Let me just indicate to you how I'm
going to ask these questions, all right, and
please try to make your answers responsive to
my questions, okay?

A.      That's exactly what I'm doing,
Mr. Scheck.

Q.      Now, you keep on answering this
question, oh, it may have happened or may not
have happened.  I can't tell you.

Correct?

MR. SEPE:  We don't need the
colloquy or the comments either.  Let's
keep it to questions and answers.

MR. SCHECK:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2        Q.     You've given that answer, haven't

3    you, a number of times?

4        A.     Not in your tone of voice, but I've

5    tried to be as truthful as I can.

6        Q.     I understand, but I just want you

7    to focus on my questions?

8        A.     I'm trying.

9        Q.     And my question is, yes or no, do

10   you have any specific recollection of

11   discussing with Detective Volpe prior to the

12   trial a witness named Debbie Smith and her

13   hearing a scream at the intersection of

14   Rocklyn near the Long Island Rail Road tracks

15   near where the body was discovered, do you

16   have a specific recollection of that as we

17   sit here today, yes or no?

18       A.     I can't answer that yes or no.

19       Q.     Well, I think you certainly can,

20   sir.

21            MR. SEPE:   Well, he disagrees, and

22       if he says --

23            MR. SCHECK:   No, no, no.

24            MR. SEPE:   Respectfully, I'm making

25       a record here, that he doesn't know, his



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

answer is going to have to stand.

MR. SCHECK:

Q.    I understand that you're saying I
don't know.

I'm asking you, as you sit here today, do
you have a specific recollection of having a
discussion with Detective Volpe about a
witness named Debbie Smith who heard a scream
at these railroad tracks.

As you sit here today, I'm asking you, do
you have that recollection?

A.    I'm telling you I don't know.  Now,
you can lean over towards me, you can ask it
another time, but I'm trying to give you as
fair an answer as I can.

MR. SEPE:  Can I maybe just try to
help the situation a little bit?

In fairness to Mr. Scheck, do you
have a mental image in your mind of you
having a recollection of the scene, the
location, the place, the tone, details
about a specific conversation where they
came up?

Is that maybe getting closer to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 179 of 296 PageID #: 5374

```
1                    Klein
2        what you're looking for?
3            THE WITNESS:  I can't remember.
4    MR. SCHECK:
5        Q.    If you can't remember something,
6    then that means, as you sit here today, you
7    do not have a specific recollection of
8    discussing this Debbie Smith lead with
9    Detective Volpe, true?
10           MR. FREEMAN:  Objection.
11           MR. SEPE:  We're going to have to
12       stop on that point, I'm sorry.
13   MR. SCHECK:
14       Q.    True?
15           MR. SEPE:  We're going to have to
16       stop on that point.  He's asked and
17       answered that several times.
18           I understand the point you're
19       trying to make, but we can't be telling
20       the witness that I don't remember isn't
21       good enough.  I know what you're saying
22       in terms of a specific recollection
23       versus you just don't know if it
24       happened.
25           I get the distinction you're trying
```



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

1                        Klein

2          to make, which is trying to elucidate him

3          a little bit, but we have our answer.

4     MR. SCHECK:

5          Q.    In trying to lower the tone here,

6     if you don't recollect something, Mr. Klein,

7     would you, as we sit here today, would you

8     agree that means that right now, you do not

9     have a specific recollection?

10               MR. FREEMAN:  Objection.

11               THE WITNESS:  If I don't recollect

12          something, I don't recollect it.  That's

13          about as clear as I can be.

14    MR. SCHECK:

15         Q.    Right, so if you don't recollect

16    it, that means you have no memory of

17    something, correct?

18         A.    Today, no.

19         Q.    Mr. Klein, isn't it true that when

20    you keep on saying, oh, it may have happened,

21    it may not have happened, I can't say, right,

22    when you have no specific recollection of the

23    incident, what you're trying to do in that

24    answer is give wiggle room for other people

25    to say something did happen?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 181 of 296 PageID #: 5376

181

1              Klein

2              MR. SEPE:  I'll object to that

3       question.

4    DI         I direct you not to answer.  You

5       don't have to answer that question.

6              MR. SCHECK:  Why doesn't he have to

7       answer that question?

8              MR. SEPE:  Well, one, it's

9       badgering; two, it's argumentative;

10      three, it's asked and answered six

11      different ways; four, it's basically

12      going beyond arguing with the witness and

13      accusing him of taking a role in this

14      case with a motive that would be subject

15      to judicial and legal sanction.

16   MR. SCHECK:

17      Q.    I will not make a big deal about it

18   now, but I'd ask you, we'll resume this at

19   some other time, to try to think about that

20   distinction between, when I ask you if you

21   have no specific recollection and you can't

22   remember something, being able to answer the

23   question, no, I don't have any specific

24   recollection.

25      A.    You're just changing the answer



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    from the question you just asked yourself.

3    If I don't recall, I don't recall.

4        If you say specific recollection, I'm

5    telling you the answer.  I don't remember.  I

6    can't get any clearer.

7        Q.    How about this?

8        Maybe this will help.

9        You don't have either a general

10   recollection or a specific recollection --

11            MR. FREEMAN:  Objection.

12   MR. SCHECK:

13       Q.    -- of having a conversation with

14   Detective Volpe prior to the Restivo, Kogut

15   and Halstead trials of a witness, Debbie

16   Smith, who was at an intersection and heard a

17   scream from the area where Theresa Fusco was

18   abducted?

19            MR. FREEMAN:  Objection.

20            MR. SEPE:  Objection as well.

21            THE WITNESS:  Am I allowed to

22   answer?

23            MR. SEPE:  You can answer it.

24            THE WITNESS:  The best I can tell

25   you is I don't remember.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

183

1                          Klein

2    MR. SCHECK:

3         Q.    You don't remember, meaning you

4    don't have a general or specific

5    recollection; is that right?

6                MR. FREEMAN:  Objection.

7                THE WITNESS:  I just don't

8         remember.

9    MR. SCHECK:

10        Q.    Just so we're clear about what you

11   remember and you don't remember, do you

12   remember ever knowing this information?

13        A.    The first I have an actual

14   recollection, if you want to phrase it that

15   way, is when you asked me on the phone.

16        Q.    So the first recollection you ever

17   heard of Debbie Smith, this witness, and what

18   she said happened at the intersection is when

19   you and I discussed it on the phone in 2009?

20               MR. SEPE:  Objection to form.

21               THE WITNESS:  That's my first

22        recollection.

23   MR. SCHECK:

24        Q.    Good.

25        A.    Good question.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 184 of 296 PageID #: 5379

184

1                      Klein

2      Q.      Thank you, professor.

3      A.      You're welcome, professor.

4      Q.      I'm just trying.  Now, let's go on

5  and look at 158 further.  This indicates that

6  is on December 9th --

7      A.      Is that this two-page document, the

8  lead sheet?

9      Q.      The lead sheet.

10     A.      Where are you reading from?

11     Q.      I'm reading on "Results:  Indicate

12  dates and members investigated."

13     A.      First page, okay.

14     Q.      So it indicates that "on

15  December 9th, Ms. Smith responding to

16  homicide to view auto stolen in Lynbrook,

17  November 9th, 1984," and it has IMP 396-84.

18     Do you know what IMP 396-84 is?

19     A.      My opinion would be that's an

20  impound number.

21     Q.      Would it be fair to say that it

22  appears from this lead sheet, as the report

23  of the investigation, that after Debbie Smith

24  called at 4:25 in the afternoon on

25  December 9th, she was immediately asked to go



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



1                    Klein

2    down to homicide and view the vehicle found

3    in Lynbrook, the French car?

4        A.    I would say that it indicates on

5    the day she called, she went down to homicide

6    and viewed that car.

7        Q.    Would it be a fair inference that

8    she didn't just get there by herself, that

9    somebody from the police asked her to come

10   and look at the car?

11       A.    I don't know how immediate it is.

12       Q.    It's on the same date.

13       A.    It is, but I don't know if it's

14   4:25 in the morning when she called or

15   4 o'clock in the afternoon.  I don't know.

16       Q.    Next it says, "Detectives Pierce

17   and Lane present at ESB."

18       What's that, ESB?

19       A.    Emergency Services Bureau.

20       Q.    "With above Debra.  Viewed car.

21   After viewing, stated that she remembers the

22   broken windshield, the parking sticker in the

23   windshield, and the silver AAA sticker on the

24   rear bumper.  Stated she would only give us a

25   90 percent because when she looked inside the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 186 of 296 PageID #: 5381

186

1                        Klein

2    car, there was a lot of garbage in the rear

3    seat.   Remembers a blanket, thinks tools and

4    rope."

5         Okay?

6         A.    Yes.

7         Q.    "Said she viewed car between 11:00

8    at night to 1:00 a.m. because she remembers

9    no traffic on Sunrise Highway.   There were no

10   trains on railroad overpass."

11        Do you see that?

12        A.    Yes, I do.

13        Q.    Looking back at the French

14   documents, as you recall, French reported his

15   car being stolen and indicated that the

16   windshield was not broken.

17        Do you remember that?

18        A.    At the last time he saw it?

19        Q.    Yes.

20        A.    Yes.

21        Q.    Now she's indicating that, Debbie

22   Smith, that she saw, that this is the car,

23   that this car has a broken windshield, and

24   that's what she remembers seeing in the tan

25   car by the Long Island Rail Road tracks at



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 187 of 296 PageID #: 5382

1                    Klein

2    the time she heard this woman scream around

3    the intersection of Sunrise and Rocklyn?

4          MR. SEPE:   Objection.

5          Just to be clear, and not to be

6    argumentive, but you're asking the

7    witness to agree with the

8    characterization of Volpe's notes as to

9    what Debbie said, right?

10         MR. SCHECK:   That's correct.

11         THE WITNESS:   She clearly says in

12   these notes that she remembers a broken

13   windshield.   Apparently, in the car that

14   she looked at, there was a broken

15   windshield.

16         She's apparently unwilling to say

17   conclusively that this is the same car.

18  MR. SCHECK:

19   Q.   She's saying, as we read this,

20   she's 90 percent sure that this is the car,

21   but the only difference is that the garbage

22   in the rear seat that she remembers, the

23   blanket and tools and rope are not in this

24   car, but they were in the car that she saw,

25   correct?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 188 of 296 PageID #: 5383

188

1                          Klein

2        A.      That's what the notes say.

3        Q.      Was there not a blanket recovered

4    from the scene where Theresa Fusco's body was

5    discovered?

6        A.      I don't remember.

7        Q.      You don't remember?

8        A.      I remember, I don't remember she

9    was wrapped in a blanket, if that's what you

10   mean.   Possibly in Restivo's van.

11       Yeah, I think there was a moving blanket

12   or something in the van.   I'm just going back

13   in 25 years.

14       Q.      You may be conflating the Kogut

15   confession about a blanket.

16       A.      No.

17       Q.      Versus what was found at the scene.

18       A.      No, no, no.   There may have been a

19   blanket in the van, or there may have been a

20   blanket on the ground in some location that

21   they picked up, but I don't remember a

22   blanket on the body.

23       Q.      Well, not on the body.

24       A.      I remember there was wood on top of

25   the body.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

                        Klein

1

2       Q.      There was there a blanket in the

3    area of where the body was recovered.

4       A.      I don't remember.

5       Q.      You remember that Theresa Fusco was

6    killed, was murdered, and there was ligature

7    strangulation?

8       A.      Yes.

9       Q.      That would be consistent with being

10   strangled with a rope?

11      A.      There was a dispute about that, but

12   it indicated it to me.  A rope or some other

13   type, you know, a kerchief or a wire or

14   something like that.

15      Q.      In terms of, I think what we were

16   discussing before as to whether or not this

17   Debbie Smith report would be a reasonable

18   investigative lead to pursue, soon after

19   Theresa Fusco's body was recovered, you

20   raised the question of what she could have

21   heard at or around the time, that is Debbie

22   Smith, at the intersection.

23      Remember that?

24      A.      Yes.

25      Q.      It says here she remembers no



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 190 of 296 PageID #:
5385

190

                        Klein

1

2    traffic on Sunrise Highway and there were no

3    trains on the railroad overpass.

4         Do you see that?

5         A.    I see that.

6         Q.    If there were no traffic and no

7    trains at or around the time she heard the

8    scream, there would have been a better chance

9    for her to have heard the scream; fair

10   enough?

11        A.    Assuming there was a chance for her

12   to hear the scream.

13        Q.    Right.  We're only talking here

14   about what would have been a reasonable

15   investigative lead to pursue.

16        A.    Right.

17        Q.    And you raised the question as to

18   whether she could have heard anything?

19        A.    Right.

20        Q.    And now when you see in the

21   statement that there was no traffic and no

22   trains, that would make it a more reasonable

23   lead to pursue.

24        Wouldn't you agree?

25             MR. SEPE:   Objection.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 191 of 296 PageID #:
5386

1                    Klein

2        A.    Again, it would depend upon whether

3   it was reasonable for her to hear from where

4   she says she was to where they found her

5   body.

6        Q.    But you said to us before though,

7   based on your knowledge of this area, you

8   concede now that it was certainly a

9   possibility that if there was no traffic and

10  no trains, that a person in the intersection

11  such as she describes it could hear a woman

12  scream?

13       A.    What I said was from the distance

14  on the map, it's conceivable, and what I also

15  said was that I know the tracks are elevated

16  at that location, and I don't know that it's

17  conceivable, but it's literally a wall

18  between one side and another.  Whether you

19  could hear what's going on, on the other

20  side, I don't know.

21       Q.    Why don't we review Defendants'

22  159.

23       Now you see that Defendants' 159 is a

24  statement of Debra Smith taken on December

25  9th, 1984, right?



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 192 of 296 PageID #:
5387

192

1                     Klein

2          A.     Yeah.

3          Q.     This is the same day that she

4     reported what she heard at the intersection

5     of Rocklyn and Sunrise Highway?

6          A.     It's the same date that the lead

7     sheet's dated.

8          Q.     Same day that the lead sheet

9     indicated she made a report, right?

10         A.     Yes.

11         Q.     Same day that the reports indicate

12    she was taken to view the French car,

13    correct?

14         A.     Yes.

15         Q.     And then a statement is taken,

16    correct?

17         A.     Correct.

18         Q.     Let's read the statement.

19         "Statement of Debra L. Smith.  My name is

20    Debra L. Smith.  I am 28 years old.  I was

21    born," and it's blacked out.

22         "I live at," it's blacked out.  "My home

23    phone number is," and it's blacked out.

24         "I work at American Technical Ceramics at

25    15 Stopper Place, Huntington Station, New



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 193 of 296 PageID #:
5388

193

```
 1                    Klein
 2   York."  Gives the phone number.
 3       "As a computer program analyst.  I live
 4   at home with my parents and brother and
 5   sister.  I have been told by the detective
 6   who is writing this statement that any false
 7   reports I make herein are punishable as a
 8   Class A misdemeanor pursuant to Section
 9   210.45 of the Penal Law of the State of New
10   York.  I wish to state last month, I believe
11   between November 17th and the 21st, I had
12   gone to my friend, James Pearson's home at,"
13   location blacked out, "for the evening.  We
14   had an argument, and I left his house to go
15   home.  I started driving on Atlantic Avenue
16   to Central Avenue.  As I got to that corner,
17   I saw that the railroad gates were down for a
18   train that was going towards Long Beach.  I
19   decided to take Rocklyn Avenue street up to
20   Merrick Road and Ocean Avenue."
21       A.    I see Rocklyn Street.
22       Q.    It says, "Rocklyn Avenue"?
23       A.    I don't know that that's avenue.  I
24   don't know what that is.
25       Q.    There's an "Avenue" above "Street."
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 194 of 296 PageID #:
5389

194

                        Klein

1

2        A.      It looks like someone's initials.

3        Q.      That could be a correction of

4    street to avenue, correct?

5        A.      I don't know what it is.  I see

6    Rocklyn Street up to Merrick Road.

7        Q.      You know these locations?

8        A.      Only from that case.

9        Q.      "And Ocean Avenue where I go to

10   Peninsula Boulevard and home.  I drove north

11   on Rocklyn Avenue to Sunrise Highway.  The

12   traffic light was red, and I stopped for the

13   light.  I had my window partly open because I

14   was smoking.  While I was sitting at the

15   light, I heard a woman scream.  I rolled my

16   window down and listened but did not hear

17   anything else.  The scream came from the left

18   and like it was up high.  I looked at the

19   railroad elevated because that seemed to be

20   the direction that the scream came from."

21       Do you see that?

22       A.      I do.

23       Q.      Going back and looking at our

24   diagram here and where we have located Debbie

25   Smith reported seeing the car and hearing the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 195 of 296 PageID #: 5390

195

                        Klein

1

2    scream, it would be consistent with the area

3    where Theresa Fusco's body was found, Number

4    Two, that she would have heard a scream to

5    her left, correct?

6         A.    Yes.

7         Q.    And this affidavit now explains

8    further that her window was rolled down

9    because she was smoking, right?

10        A.    Well, it's not an affidavit.  It's

11   apparently a statement.

12        Q.    It's a sworn statement made under

13   penalties of --

14        A.    The sworn part of it is, you know,

15   it's different.  It's not really a sworn

16   statement where you can be charged with

17   perjury.

18        It's different.  So I wouldn't call it an

19   affidavit.

20        Q.    It's not an affidavit, but it's a

21   statement where the witness was being told if

22   she didn't tell the truth, she could be

23   prosecuted, right?

24        A.    Absolutely.

25        Q.    That's the kind of thing, in your



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

196

1                    Klein

2    experience, a witness would take more

3    seriously, not just an ordinary inquiry?

4              MR. SEPE:  Objection to form.

5              THE WITNESS:  Right, but it's not

6         an affidavit.

7    MR. SCHECK:

8         Q.    This explanation about the window

9    being down, does that add something more to

10   the reasonable hypothesis that might be

11   investigated after the disappearance of

12   Theresa Fusco; in other words --

13        A.    There's a reason why she might have

14   heard it.

15             MR. SEPE:  Let him finish his

16        question.

17   MR. SCHECK:

18        Q.    Is that right?

19        A.    It's a reason why she might have

20   heard it.

21        Q.    That adds something towards her

22   explanation being more plausible, does it

23   not, in terms of just a reasonable

24   investigative lead to be pursued; fair

25   enough?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein
2        A.    It's a statement indicating her
3    statement could be plausible.
4        Q.    "The traffic light changed, and I
5    drove across Sunrise Highway and under the
6    railroad overpass.  I saw a large, light to
7    medium tan car, four-door sedan, early
8    seventies.  It had large windows.  I looked
9    inside and saw a lot of stuff in the back
10   seat, and I think there were tools, a blanket
11   and other stuff in the back seat."
12       Do you see that?
13       A.    I do.
14       Q.    Would you not agree that a tan
15   four-door sedan is consistent with the
16   description of John French's car that was
17   reported stolen on the evening of Theresa
18   Fusco's disappearance?
19            MR. SEPE:  Objection to form.
20            THE WITNESS:  Well, according to
21       this, it's a four-door sedan.  I don't
22       know what color it was.  It was an
23       Oldsmobile.
24            Does she say what kind of car it
25       is?



Toll Free: 800.944.9454
Facsimile: 212.557.5972

ESQUIRE
an Alexander Gallo Company

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                        Klein

2               I mean, it's a four-door sedan.

3          This says it has a black top.  She says

4          it's tan or something.

5     MR. SCHECK:

6          Q.    It says, "A large, light to medium

7     tan car."

8          A.    Right.

9          Q.    We'll show you pictures of this

10    car, okay?

11         A.    Okay.

12         Q.    But just to have it in mind, would

13    you not agree that her description of the

14    car, right, is consistent with the

15    description, certainly, given of John

16    French's car, the one that was stolen?

17         A.    Except for the black top.

18               (Plaintiffs' Exhibit 212, color

19         photograph, marked for identification, as

20         of this date.)

21    MR. SCHECK:

22         Q.    I'm showing you what we've marked

23    Exhibit 212 for this deposition, and I

24    represent to you that that is a photograph of

25    the French car --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

                    Klein

1

2        A.      Okay.

3        Q.      -- after it was recovered.

4    Do you see that?

5        A.      I do.

6        Q.      Would you not agree that that car,

7    in appearance, would be consistent with the

8    description that Debbie Smith gave of seeing

9    a tan car, a four-door sedan at the

10   intersection?

11               MR. SEPE:  Objection to form.

12               THE WITNESS:  I, personally, I

13       don't think so.

14   MR. SCHECK:

15       Q.      You don't think that looks tan?

16       A.      I think it's got a black top, and I

17   don't know about the tan.  That might be very

18   subtle, but, certainly, it has a black top.

19       I didn't hear her mention anything about

20   that.  Correct me if I'm wrong.  This is the

21   first time I've seen this in a long time, if

22   ever.

23       Q.      I think her description here was

24   light to medium tan car.

25       A.      Right.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
1                       Klein
2          Q.    Are you telling me that you don't
3    think that photograph can fall into the
4    category of light to medium tan?
5          A.    Not the top.
6          Q.    I didn't ask about the top.
7          A.    The top is part of car, Mr. Scheck.
8    You want to ask me that question, the body
9    has a color that could be interpreted as tan,
10   but the top doesn't.
11              MR. SCHECK:  Let's mark this
12         photograph as 213.
13              (Plaintiffs' Exhibit 213, color
14         photograph, marked for identification, as
15         of this date.)
16              (Plaintiffs' Exhibit 214, color
17         photograph, marked for identification, as
18         of this date.)
19              (Plaintiffs' Exhibit 215, color
20         photograph, marked for identification, as
21         of this date.)
22   MR. SCHECK:
23         Q.    I see you reading ahead in
24   Ms. Smith's statement, Mr. Klein.
25         So far would it be fair to say that you
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



201

                    Klein

1

2    don't have a specific or general recollection

3    of knowing about this statement before the

4    trial?

5         A.    I don't recall this statement.

6         Q.    I'm showing you what I showed you

7    before, which is Exhibit 212, which is

8    French's car that I think you agreed at least

9    the body of it could be described as light to

10   medium tan, and I'm showing you now

11   Exhibit 213, which is a photograph of the

12   windshield, and 215, which is also a

13   photograph of the windshield, but it has a

14   sticker here, "Evidence, Do Not Touch."  And

15   I use that to suggest to you that you might

16   want to look at all three photographs

17   together.

18        And what I'm going to ask you is would

19   you not agree that these photos of the French

20   car indicate a front windshield which has

21   been damaged?

22        A.    I see what you're asking me to do.

23   I can't see, unless you point it out to me, I

24   can't see that these pictures are necessarily

25   the front windshield.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

202

1                        Klein

2        I know what you're saying, that you've

3    got this sticker there.  They don't even look

4    the same to me.

5        Isn't there something else describing

6    what this is a picture of that might be more

7    specific?

8        Q.    We represent to you that these are

9    pictures of the French car.

10       A.    I know, but as to what windshield,

11   what window this is, I can't make the

12   connection between the front windshield.

13       Q.    Well, you're telling me that

14   looking at these pictures, you're still

15   uncomfortable as to whether or not the front

16   windshield of this car was shattered.

17       Is that what you're telling me?

18       A.    I can't make the connection between

19   the two pictures, the close ups and the

20   overall picture of this car.

21            MR. SEPE:  Can we go off the

22       record?

23            (Discussion held off the record.)

24            (Recess taken.)

25   MR. SCHECK:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 203 of 296 PageID #: 5398

1                         Klein

2        Q.     The lawyers all had a discussion

3   about the way these questions are being asked

4   and reasonable people may disagree with this,

5   but I'm not trying to quarrel with you.

6        You understand that?

7        A.     I hope so.

8        Q.     Let me show you Exhibit 214 here,

9   and I represent to you that this is a

10  photograph taken from the scene where Theresa

11  Fusco's body was discovered, and there is a

12  blanket in that photo.

13       Do you see that?

14       A.     I don't see a blanket that's

15  observable.  I see things.

16       Q.     Do you see something in there that

17  looks like a blanket?

18       A.     No.

19       Q.     Do you see something that appears

20  to be woven and is white and appears to be

21  black and blue and orange?

22       A.     Are you saying that this is one

23  item?

24       Q.     Yes.

25       A.     I can't even see that that is one



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    item.

3         Q.    That photo doesn't do anything for

4    you as to whether a blanket was recovered at

5    the scene?

6         A.    No.

7         Q.    I think where we left off was

8    looking at 159, which is the statement of

9    Debbie Smith.

10        And she says, "I looked inside, and I saw

11   a lot of stuff in the back seat.  I think

12   there were tools and a blanket and other

13   stuff in the back seat.  During this time, I

14   got out of my car, and I looked around the

15   railroad trestle."

16        A.    "Toward the railroad trestle."

17        Q.    "I looked around toward the

18   railroad trestle."  Thank you.

19        "I looked at the license plate.  I

20   remember there were four numbers and three

21   letters and a shiny sticker on the left

22   side."

23        A.    Shiny or skinny, because it has two

24   Ns in it?

25        Q.    "Skinny," would that be better to



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
                    Klein
 1
 2    you?
 3         "A skinny sticker on the left side of the
 4    bumper.  I also remember that the car had a
 5    broken windshield and a ticket in the left
 6    front window on the dashboard.  Today I
 7    received a phone call from Detective Joseph
 8    Volpe who asked me to come to police
 9    headquarters and view a car that they had
10    there.  I met with Police Officer Lane and
11    Detective Pierce who showed me a 1971
12    Oldsmobile Delta 88, and I have looked at the
13    car.  I feel that this is the car that I saw
14    that night.  The only reservation that I have
15    is that the interior of the car does not have
16    all the stuff in it that the car had when I
17    had stopped by the railroad crossing.  I have
18    given this statement to the detectives, and
19    it is the truth."
20         Do you see that?
21         A.    Yes, sir.
22         Q.    So would you not agree that what
23    this police report reflects in an objective
24    matter is that this witness who was at the
25    intersection near where the body was
```



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2      recovered and heard a scream saw a car that

3      she's saying is the French car with the only

4      reservation being that it doesn't have all

5      the stuff she saw in the car, correct?

6              MR. SEPE:  Objection to form.

7              THE WITNESS:  Do I answer?

8              MR. SEPE:  Yes.

9              THE WITNESS:  That's what she

10         appears to be saying.

11   MR. SCHECK:

12         Q.    Other than the fact that it doesn't

13   have the "stuff" that she describes in the

14   car when she stopped, she's saying this

15   French car is the car; fair enough?

16             MR. SEPE:  The objection now is

17         he's being asked to agree that the

18         witness is saying --

19             MR. SCHECK:  No, I'm not asking him

20         to say.  I'm asking what this document

21         shows.

22             MR. SEPE:  Right, and he's being

23         asked to agree with the document that the

24         witness is saying that it's the French

25         car.  That's my objection.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 207 of 296 PageID #: 5402

207

1                          Klein

2     MR. SCHECK:

3          Q.     Let me do it this way --

4          A.     I know where it is.  I'll just

5     reread it.  She's saying this car that she's

6     looking at in the ESB is the car that I saw

7     that night.  That's what she's saying.

8          Q.     That car, as you've seen from the

9     documents that we've reviewed here, was the

10    French car; fair enough?

11         A.     No.

12         Q.     You have some question in your mind

13    as to whether or not the car that she was

14    taken to see was the car that French reported

15    stolen and was eventually recovered?

16         A.     No.  I'm not saying that the car

17    that she saw under the intersection was the

18    French car that was stolen.  It seems pretty

19    likely that the car that she was shown in ESB

20    is the French car.

21         Q.     That's what question I asked you.

22    I'm sorry.  We may be misunderstanding each

23    other.

24         Is there any doubt, from looking at this

25    police report and looking at the other police



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 208 of 296 PageID #: 5403

1                    Klein

2    report, that as an objective matter, that

3    this witness is saying that she feels that

4    the French car is the car that she saw that

5    night?

6              MR. SEPE:  Objection to form.

7              THE WITNESS:  That's fair.

8    MR. SCHECK:

9        Q.    It would be fair to say that when

10   she's saying that the French car is the car

11   that she saw that night, she indicated from

12   the beginning that the car she saw had a

13   broken windshield?

14       A.    You know, you're testing me.  I

15   don't know if she said that in her first

16   report or not.

17       If you say she did, I'll agree with it.

18   I don't want to belabor this, but I'm

19   looking.  I'm trying to see if that was in

20   her initial report.

21       Q.    There's an indication when she got

22   to ESB that she stated she remembers the

23   broken windshield in the car.

24            MR. SCHECK:  I'll withdraw that

25       question and move on.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    MR. SCHECK:

3        Q.    You would agree that any objective

4    reading of these police reports is you have a

5    witness who indicates that she was at the

6    intersection near the area where the body was

7    recovered, true?

8        A.    True.

9        Q.    That she heard a scream coming from

10   her left, would be in the direction where the

11   body was recovered, true?

12       A.    True.

13       Q.    That she saw the French car by the

14   railroad tracks?

15       A.    That I don't know.

16       Q.    Well, she saw the French car --

17       A.    Your description of her seeing the

18   French car is what I'm disputing.

19       Q.    She saw a tan car that she later

20   identified to be the French car?

21       A.    Yes.

22       Q.    By the railroad tracks; fair

23   enough?

24       A.    Okay.

25       Q.    Based on putting these reports



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

                    Klein

1
2    together as an objective matter, would you
3    not agree that based on your knowledge of
4    investigate practices by homicide detectives
5    and DAs working homicide cases in 1986, that
6    this statement by Debbie Smith and her
7    assertion that the French car was at the
8    scene near where the body was recovered would
9    be a reasonable investigative lead to pursue?
10            MR. FREEMAN:  Objection.
11            THE WITNESS:  Again, it depends,
12       but -- it depends.
13   MR. SCHECK:
14       Q.    Well, based on what we've seen so
15   far, given what was known, let's say, by
16   December 9th, 1986, in this investigation,
17   would you not agree that this was a
18   reasonable investigative lead for a homicide
19   detective or a prosecutor to pursue that
20   Debbie Smith may have overheard Theresa Fusco
21   screaming and seen the car that was used to
22   abduct her?
23            MR. SEPE:  Objection to form.
24            THE WITNESS:  I would say that,
25       based upon what we've discussed, I would



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 211 of 296 PageID #:
5406

211

1               Klein

2      want to know the accuracy and credibility

3      of Debbie Smith.

4   MR. SCHECK:

5      Q.    Right, but based on what you've

6   heard so far about what she saw, it would be

7   a reasonable investigative lead to pursue?

8               MR. SEPE:  Objection to form.

9               THE WITNESS:  I'm having a hard

10      time just answering that other than it

11      depends, you know.  What I said is I

12      would take a look and see if this woman

13      is accurate and credible.

14   MR. SCHECK:

15      Q.    Right, because if this woman were

16   accurate and credible, that would be an

17   important lead?

18      A.    It would certainly be something to

19   look into.

20      Q.    And so far you have, again, no

21   general or specific recollection of any of

22   the information of the documents that we've

23   gone over so far?

24      A.    You know, I know you raised this in

25   this phone call that we've had, and I've



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1

2       discussed it since then, but I can't say

3       whether I knew about this back in '85 or '86

4       or not.

5           Q.    But as you sit here today, other

6       than when I first raised this with you in

7       2009, right, you didn't remember it?

8           A.    When you first brought it to my

9       attention, it didn't ring a bell.

10          Q.    Let's turn to 161.

11          Would you not agree with me that one

12      reason that the Debbie Smith report and her

13      identification of French's car bears further

14      investigation as a reasonable investigative

15      lead as of 1986 is that the car was reported

16      stolen by French at or around the time that

17      Theresa Fusco was last seen, true?

18          A.    Let me just check.

19          Q.    You can double check that.

20          A.    Yeah, assuming November 10th is the

21      date that she was last seen, that's the date

22      he reports it as missing.

23          Q.    In and around the time that she was

24      last seen alive?

25          A.    I would say in that range, yeah,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Klein

1  but that's not, well --

3      Q.     You would agree, from the point of

4  view of standards of 1986, investigative

5  standards, the fact that French's car was

6  reported stolen, right, on the night that

7  Theresa Fusco disappeared and that Debbie

8  Smith is identifying French's car as the one

9  she saw by the side of the road when she

10  heard a woman scream in and around the area

11  where Theresa Fusco's body was ultimately

12  recovered, that coincidence is yet another

13  reason why this Debbie Smith report would

14  bear further investigation?

15      A.     Depending upon a number of other

16  factors.

17      Q.     Well, can you think of any reason

18  that Debbie Smith would know that French's

19  car was stolen?

20          MR. SEPE:  Objection to form.

21          THE WITNESS:  I don't know.

22          You want me to answer that?

23          MR. SEPE:  You can.  If it's form,

24      you can.

25  MR. SCHECK:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
 1                    Klein
 2       Q.     I'm withdrawing it.
 3       A.     He withdrew it.
 4       Q.     Why don't we turn to 161, and
 5  you'll see that 161 says on it, "December
 6  6th, 1984."
 7       Do you see that?
 8       A.     Yes.
 9       Q.     That's three days before Debbie
10  Smith comes forward, correct?
11       A.     Yes.
12       Q.     That's one day after Theresa
13  Fusco's body was found?
14       A.     Again, if you say it was found on
15  the 5th of December, I'll accept that.   I
16  don't remember it.
17       Q.     It says, "December 6th at
18  1840 hours."
19       So that would be 6:40 p.m., yes?
20       A.     Yes.
21       Q.     "Present at 58 Broadway, Malverne,
22  New York home of John T. French.   He stated
23  that on November 10th, 1984, his 1971
24  Oldsmobile sedan registered 5233 BJN, New
25  York, his car was parked on the southwest
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 215 of 296 PageID #: 5410

215

1              Klein

2    corner of Lakeview Avenue and Ocean Avenue.

3    It was stolen sometime between 23 --

4         A.    I'm not following.

5         Is this the same thing that you're

6    reading, from this?

7         Q.    Yes.

8         A.    Then I had a problem.  I'm sorry.

9    I just blanked out.

10        Q.    Do you want me to read it again?

11        A.    Yeah, please.  Sure.

12        I mean, I see the name and address.

13        "His car was parked on southwest corner."

14        Q.    "Southwest corner of Lakeview

15   Avenue and Ocean Avenue.  It was stolen

16   sometime between 2100 and 2305 hours that

17   date."

18        Take a look at Number Three on the

19   exhibit, and you see the area where it's

20   reported John French's car was stolen?

21        A.    Right.

22        Q.    Do you have that in mind?

23        A.    Yes, sir.

24        Q.    Let's go back.  "On November 18th,

25   '84, Mr. French went out looking around for



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                         Klein

2       his car.  He entered Lakeview, and he found

3       it parked on Woodfield Road near the railroad

4       tracks.  He then got his keys and drove the

5       car to Lynbrook PD."

6              Do you see that?

7              A.    Yes.

8              Q.    I think we've reviewed that before,

9       but on our diagram, Number Six, is the

10      location where John French reported finding

11      his car.

12             Do you see that?

13             A.    Yes.

14             Q.    It says here in this statement,

15      "Prior to going to the PD, his sister Laurie

16      found a pair of ladies blue jeans with

17      stripes.  Blue jeans were (inside-out).

18      Jeans were found on right rear floor board

19      halfway under right passenger seat."

20             Do you see that?

21             A.    Yes, I do.

22             Q.    Would you not agree that Theresa

23      Fusco was last scene wearing striped blue

24      jeans?

25             A.    Again, this document says that.



ESQUIRE
An Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 217 of 296 PageID #:
5412

217

1                    Klein

2          Q.     So when you say this document,

3     we're referring to Exhibit 168, which is a

4     missing poster for Theresa Fusco?

5          A.     It appears to be.

6          Q.     This says that, this Exhibit 161,

7     French says that his sister found ladies blue

8     jeans with stripes inside out.

9          Do you see that?

10         A.     Yes.

11         Q.     And the jeans were found on the

12    right rear floor board halfway under the

13    right passenger seat?

14         A.     Okay.

15         Q.     You've got that in mind?

16         A.     Yes.

17         Q.     And he's giving this statement on

18    December 6th, three days before Debbie Smith

19    comes forward and says that she saw French's

20    car at the location where Theresa Fusco's

21    body, near the location where her body was

22    ultimately found, true?

23         A.     Yes, that's what it says.

24         Q.     Do you have any general or specific

25    recollection of being told that ladies



ESQUIRE
an Alexander Galle Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

                    Klein

1

2    striped blue jeans were found in a car that

3    was reported by a witness to be near the

4    scene of where Theresa Fusco's body was

5    recovered?

6        A.    No.

7        Q.    And you're clear about that one,

8    right?

9            MR. SEPE:   When you say you're

10       clear about that one, you're repeating

11       the last question?

12           THE WITNESS:   I'm as clear about

13       that as I am about everything.

14   MR. SCHECK:

15       Q.    As an objective matter, would you

16   not agree that finding striped ladies blue

17   jeans consistent with a description of the

18   clothing that was last being worn by Theresa

19   Fusco inside out within a vehicle that one

20   witness says was near the scene of where the

21   body was recovered is a significant

22   investigative fact to pursue, as of 1986,

23   sometime after Theresa Fusco's body was

24   recovered?

25       A.    Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 219 of 296 PageID #:
5414

219

                         Klein

1

2       Q.     And that would be because if it

3   turned out that from an examination of the

4   jeans, whether it be by size or finding hairs

5   or other kind of evidence in the jeans, that

6   the jeans in the French car were Theresa

7   Fusco's jeans, that would be an extremely

8   significant investigative fact, wouldn't it?

9       A.     If the jeans from these notes were

10  Theresa Fusco's jeans?

11      Q.     Yes.

12      A.     Yeah, that would be significant.

13      Q.     That would be a big deal, wouldn't

14  it?

15      A.     It certainly would.

16      Q.     This is a report that was given the

17  day after the body was found, right?

18      A.     To who?

19      Q.     This police report --

20      A.     Right.  I don't know what this is.

21  I don't know who wrote it.  I don't know

22  whether it's police or not.  The only thing,

23  IMP on the top would indicate it was.

24      Q.     What is IMP?

25      A.     Impound.  That's what it means to



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                      Klein

2      me, but this is somebody's notes.

3          Q.     I represent to you --

4          A.     I don't know if this is a police

5      document or not.

6          Q.     Well, I represent to you that we

7      found this in the homicide file.

8          A.     Okay.

9          Q.     And if it were found in the

10     homicide file --

11         A.     The original or a copy?

12         Q.     Good question.

13         A.     Thank you.

14         Q.     Well, given the form of Plaintiffs'

15     161, right --

16         A.     This?

17         Q.     Yes, the one we've just gone over,

18     and the fact that it was found in the

19     homicide file, based on your knowledge of the

20     customs and practices of the homicide

21     division in 1986, would you expect that this

22     document was written by some police officer?

23              MR. SEPE:   Objection to form.

24              You can answer.

25              THE WITNESS:   I think that's a



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 221 of 296 PageID #:
5416

221

1                    Klein

2       reasonable guess, but I could think of

3       other alternatives too.  What I would say

4       is it's obviously something that the

5       police should have been aware of if it's

6       in their file, whether they wrote it or

7       not.

8   MR. SCHECK:

9       Q.    Whoever wrote this, it should

10  certainly be, I think we agreed on this, a

11  big deal if the striped jeans found in the

12  French car, which was stolen in or around the

13  time that Theresa Fusco was last seen, turned

14  out to be Theresa Fusco's jeans?

15      A.    I think you're understating it.

16      Q.    I would never want to understate

17  this.

18      How would you describe the importance of

19  that?

20      A.    We found the victim's jeans in a

21  car that had been stolen the day she was

22  abducted?

23      Q.    Yes.

24      A.    If all that is true, I would say

25  that's, you know, I can put it into a lot of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

222

                    Klein
1
2    different words.  A big deal wouldn't be one
3    of them.  I would say it's a significant
4    development in the case.
5         Q.    You mean big deal is not strong
6    enough?
7         A.    Right.
8         Q.    Give me, for the sake of the
9    strongest possible description of importance.
10        A.    It's a significant development.
11        Q.    Would it be fair to say that if it
12   were Theresa Fusco's jeans that were found in
13   the French car, a car that was stolen the
14   night of the incident, that that would be in
15   direct contradiction to the theory of
16   prosecution that you used at the Restivo,
17   Kogut and Halstead trials?
18        A.    No.
19        Q.    It wouldn't be?
20        A.    The way I understand it, no.  I'm
21   not saying it wouldn't have been helpful, but
22   a direct contradiction, no.
23        Q.    It certainly would have been --
24        A.    I don't want to fence with you
25   about it.  I don't know when those jeans



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2   would have been placed in that car.  We never

3   found her clothing.

4        Could some guy have found it later on,

5   you know, that's how I understand this

6   information you're giving me right now, that

7   as of November 18th, that's when he

8   supposedly found striped jeans, or his sister

9   supposedly found striped jeans in the car

10  turned inside out.

11       Q.     Right.

12       A.     Does that directly contradict that

13  on November 10th, somebody else murdered and

14  raped her, disposed of her pants, and this

15  guy, who may very well have been, you know, a

16  junk collector or whatever picked them up.

17       Q.     Who is the junk collector?

18       A.     I don't know, this fellow French

19  with the car with all the junk in it that the

20  woman saw.  All I'm saying is it's not

21  directly contradictory.

22       Is it a big deal, as you put it?

23       Yes, but it doesn't, to me, directly

24  contradict our case.

25       Q.     I'm just trying to --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

224

1                       Klein

2        A.      You know, I don't want to fence

3   with you.  I'm telling you it's a significant

4   development, but I don't agree with you that

5   it's directly contradictory.

6        Q.     So you're suggesting now that it

7   might somehow be possible that Restivo,

8   Halstead and Kogut abducted Theresa Fusco in

9   Restivo's van, raped and murdered her, buried

10  her body, and that somebody found her striped

11  jeans at or around the area where she was

12  raped and murdered and put them under the

13  rear passenger seat of the French car?

14       A.     I don't know when those jeans were

15  discovered, where those jeans were

16  discovered.  First of all, her body was not

17  buried.

18       It was just covered with wood.  There was

19  no hole dug to bury her.

20       Q.     Covered in leaves.

21       A.     Yes, but not buried.  Do I think

22  that's possible, yes.  Would I have looked

23  into it, absolutely.

24       I've had a lot of cases where people have

25  been found with things that didn't belong to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2  them, but they weren't the killer.

3       Q.    Would it be fair to say that you

4  agree that it would be a big deal and

5  significant development, but it wouldn't be

6  "directly contrary" to the theory that you

7  used in the prosecution of Restivo, Halstead

8  and Kogut; is that right?

9       A.    That's right.

10      Q.    Would you not agree that it would

11 have been a significant problem for the

12 prosecution that you would have to overcome

13 at trial?

14      A.    I can't agree with your

15 characterization of it as a problem.

16      Q.    Let me ask you this --

17      A.    You know, and if you're looking at

18 it back in 1985 and 1986, we didn't have DNA

19 results at the time.  So to look at it now,

20 with everything that's existing, and looking

21 at it then, you're looking at apples and

22 oranges.

23      To say back then would I have looked at

24 it as a problem, I would say not necessarily.

25           MR. SEPE:   I'm sorry, Barry, before



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2          you ask your next question, the objection

3          to the line of questioning is as follows:

4          as we talked about off the record, when

5          you're asking a witness, especially a

6          fact witness, to give an opinion on

7          whether something is consistent with

8          something else, none of which he has any

9          information on, whether something is a

10         reasonable inference, causes problems

11         because ultimately you're asking him to

12         opine on the ultimate factual issues of

13         the case.

14              As an example, before the break --

15              MR. SCHECK:  Mike --

16              MR. SEPE:  Let me just finish the

17         objection.

18              MR. SCHECK:  If you're going to

19         make this objection, I don't think we

20         should have him in the room listening to

21         it.

22              MR. SEPE:  No, strictly in terms of

23         the form of the questions, before the

24         break, the witness is shown, reasonably,

25         Exhibit 212, which is the front of the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    car.

3         The witness is then asked to look

4    at what is purported to be a close-up of

5    the front of the car to go to the

6    ultimate question of whether holes or

7    breaks in windshields match, and a

8    cursory inspection reveals it's actually

9    the rear windshield.  I'm finishing up

10   here.

11        The problem is that when you get

12   into these questions, you wind up

13   innocently mischaracterizing evidence

14   unintentionally and creating problems for

15   the witness and the entire case.  That's

16   just an example of what I mean in my

17   objection.

18        MR. SCHECK:  I understand.  The

19   term "ultimate issue" here, right, I take

20   some, I would resist that, but I take

21   your objection; but I'm really trying to

22   restrict myself to just facts, and let me

23   see if I can recapitulate here, because I

24   think Mr. Klein has told us something

25   that you wouldn't object to or maybe



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1              Klein

2       didn't object to.

3   MR. SCHECK:

4       Q.    And that is that in terms of your

5   understanding of investigative procedures of

6   prosecutors and homicide detectives in 1986,

7   you agree that if Theresa Fusco's jeans had

8   been found in the French car that was

9   reported stolen that night, that would be a

10  very big deal?

11      A.    Yeah, I said stronger words than

12  that, but I agree with you.

13      Q.    Very significant, correct?

14      A.    Yes.

15      Q.    I take it that at the time of this

16  trial in 1986, you were familiar with your

17  obligations under what's sometimes called the

18  "Brady Case" to disclose information to the

19  Defense?

20      A.    Surely.

21      Q.    And you were complying with those

22  obligations?

23      A.    Yes.

24      Q.    And you recall a case that was, I

25  think, decided in 1975 or certainly before



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 229 of 296 PageID #: 5424

229

1              Klein

2    this trial called People versus Consolazio?

3        A.    I remember the name.

4        Is that the one that dealt with district

5    attorney's notes?

6        Q.    Yes.

7        Do you also recall that in the Consolazio

8    case the New York Court of Appeals suggested

9    that if a prosecutor were in any doubt as to

10   whether certain information was Brady

11   material that should be disclosed to the

12   Defense, then they should show it to the

13   Judge for in camera review?

14           MR. SEPE:  Objection to the form of

15       the question as it asks the witness for a

16       legal determination.

17           That being said, you can answer.

18           THE WITNESS:  I know that's been

19       said in several cases, whether it's that

20       particular one or not.

21   MR. SCHECK:

22       Q.    I'm only ascertain --

23       A.    I recognize that as one of our

24   obligations.

25       Q.    You recognize that in 1986?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

230

                          Klein

1

2        A.      Yes.

3        Q.      So to put it simply, in 1986, you

4    would comply with your Brady obligations to

5    disclose material to the Defense?

6        A.      Yes.

7        Q.      And if you had any doubt as to

8    whether certain information was Brady or not,

9    you would show it to the Judge to decide

10   whether it should be disclosed?

11       A.      To be fair, I guess it would depend

12   on the level of the doubt.

13       Q.      In other words, it would depend on

14   the level of doubt.  You're probably just

15   better to leave it at that.

16       MR. SCHECK:  We're looking for a

17       document here, just for your information,

18       we'll show it to you, that the Lynbrook

19       Police threw away the striped jeans that

20       were in the car before they could be

21       examined.

22       (Discussion held off the record.)

23       Given the time, we're looking for a

24   document, but for purposes of moving

25   forward, we're going to be going back on



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 231 of 296 PageID #: 5426

231

                         Klein

1

2      the record.

3   MR. SCHECK:

4        Q.     I represent to you that the

5   Lynbrook Police, after they got the French

6   car, threw away the striped jeans that were

7   found inside out under the right passenger

8   seat.

9        A.     You know this?

10       Q.     Yes.

11       A.     They said they were striped jeans?

12       Q.     Yes.

13       A.     The Lynbrook Police acknowledge

14  they found striped jeans in this guy's car

15  and they threw them away?

16       Q.     Yes.

17       And given the sequence of events, you can

18  understand that they had no idea that the

19  French car was connected to the disappearance

20  of Theresa Fusco when they recovered it

21  November 18th, 1984?

22       A.     I don't know that I can understand

23  that.

24       Q.     Well, Theresa Fusco went missing on

25  November 10th, right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 252 of 296 PageID #: 5427

232

```
1                    Klein
2        A.     Right.
3        Q.     Her body wasn't found until
4   December 5th.
5        This is a car reported stolen on the
6   night of her disappearance; fair enough?
7        A.     Right.
8        Q.     And the owner recovers it on
9   November 18th and drives it to the Lynbrook
10  Police Department?
11       A.     Yeah.
12       Q.     And then the striped jeans found in
13  the car are thrown away.
14       A.     Okay.
15       Q.     Have that in mind?
16       A.     Yes.
17       Q.     If a defense attorney knew about
18  the Debbie Smith statement; the French car
19  being stolen on the night of the incident;
20  the damage to the French car, the windshield;
21  and the report of French and his sister that
22  striped jeans were found inside out under the
23  passenger seat; and that the Lynbrook Police
24  subsequently threw away the jeans, you have
25  that all in mind?
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 233 of 296 PageID #: 5428

233

1                        Klein

2      A.     Yes, sir.

3      Q.     Would you not agree that if a

4  defense attorney had all that in his or her

5  possession at the time of the Restivo, Kogut

6  or Halstead trial, that that would provide

7  the basis of a significant argument from the

8  defense point of view that Restivo's car had

9  not been used for the abduction and rape and

10 that Theresa Fusco's jeans had been thrown

11 away?

12         MR. SEPE:  Object to form.

13         MR. FREEMAN:  Objection.

14         This is the very problem, and it

15      makes it even clearer.  You're asking him

16      to give an opinion of what a defense

17      attorney would do.

18         MR. SCHECK:  I'll start another

19      way.

20 MR. SCHECK:

21      Q.     I think we found Exhibit 62,

22 previously marked, and I'm calling your

23 attention to a police report from Detective

24 Doherty.

25      You knew Detective Doherty?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

234

1                     Klein

2       A.     No.

3       Q.     A police report from Detective

4   Doherty that says, and first I'll read it to

5   you and then you can look at it, "On

6   December 23rd, Detective Bailey and I went to

7   the Lynbrook Police Department.   There we

8   received information that a John French

9   reported his car stolen on November 11th from

10  Lakeview Avenue and Ocean Avenue.   The car

11  was recovered on November 18th with different

12  plates on it by the owner in Lakeview.   Blue

13  jeans that were found in the car were turned

14  in to the Lynbrook PD to Sergeant Sprague.

15  We saw Sergeant Sprague later that evening,

16  and he said that the pants were thrown into

17  the garbage."

18      A.     Oh, I know, just from looking at

19  that document, I know who Doherty is.   The

20  name didn't mean anything to me.

21      Q.     Who is Doherty?

22      A.     There was a missing persons

23  investigation of Theresa before her body was

24  found, very early on.   He was one of the

25  missing persons detectives.   That's why I



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 235 of 296 PageID #: 5430

235

                         Klein

1

2    didn't recognize the name, but I recognize

3    that document very quickly.

4         Q.    You recognize this document?

5         A.    Yes, I mean, just the format of it,

6    and I went over this, I believe.

7         Q.    So from looking at just --

8         A.    Oh, I'm sorry.  I'm thinking of,

9    what's her name.

10        Q.    Kelly Morrissey?

11        A.    Kelly Morrissey.  I shouldn't jump

12   in.

13        Q.    So this particular document I'm

14   reading from, you have no specific

15   recollection of this document?

16        A.    I know the format.

17        Q.    You know the format of a missing

18   person's investigation?

19        A.    Yeah, it looks like any detective's

20   262.  Yeah, 262.

21        Just this page, you want me to look at

22   it?

23        Q.    So the answer to the question is?

24        A.    What's question?

25        Q.    Do you have any general or specific



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 236 of 296 PageID #:
5431

236

1                      Klein

2    recollection of seeing this document?

3         A.     No.

4         Q.     Do you have any general or specific

5    recollection of knowing the information that

6    I've just read to you?

7         A.     No.

8         Q.     Just to be clear, you have no

9    general or specific recollection of learning

10   that white striped jeans --

11        A.     That doesn't say that.

12        Q.     The report of what the police did

13   in Lynbrook says that blue jeans were thrown

14   away, correct.

15        A.     The report you just showed me

16   indicates jeans or blue jeans, but it doesn't

17   say striped, which is a big difference to me.

18        Q.     But the document I showed you

19   before, the interview with John French as to

20   what he and his sister found in the car,

21   that's Plaintiffs' 161.

22        Right, do you see that?

23        A.     Yes, I do.

24        Q.     That says that French saw, and his

25   sister Laurie found, a pair of ladies blue



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                    Klein

2    jeans with stripes inside out under the right

3    rear floor board halfway under the passenger

4    seat, right?

5         A.    I don't see where it says he saw

6    it.

7         Q.    This is an interview with French,

8    correct?

9         A.    Yes.

10        Q.    He's talking about how he went and

11   found the car?

12        A.    That's true.

13        Q.    And he's stating that his sister,

14   Laurie, found this pair of blue jeans with

15   stripes?

16        A.    The sister, not him.

17        Q.    I understand.

18        He's saying his sister found them, but

19   he's saying that he knows that she found him,

20   correct, it's his statement?

21        A.    It doesn't say how she found them.

22            MR. SEPE:  Objection to the form of

23        the question.

24   MR. SCHECK:

25        Q.    This document doesn't say as to



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

                          Klein

1
2    whether or not he was actually present when
3    she found the striped blue jeans, correct?
4         A.    Nor does he say he ever saw them.
5         Q.    It doesn't say whether he was
6    present when his sister found the jeans,
7    correct; is that what you're pointing out?
8         A.    No.   What I'm pointing out is it
9    doesn't say that he ever saw those jeans,
10   even after his sister found them.
11        Q.    But it doesn't say he didn't
12   either, correct?
13        A.    No.
14        Q.    And it certainly indicates that he
15   had knowledge that his sister found ladies
16   blue jeans with stripes, right?
17             MR. SEPE:   Objection as to the form
18        of the question.
19             It might be better to let the
20        document speak for itself.
21             THE WITNESS:   I don't know how he
22        knows that.
23   MR. SCHECK:
24        Q.    On the face of the document he is
25   telling the Police that his sister found



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

239

1                          Klein
2    ladies blue jeans with stripes, right?
3        A.    With stripes.
4        Q.    And that the blue jeans were inside
5    out, correct?
6        A.    Correct.
7        Q.    And that they were found on the
8    rear floor board halfway under the passenger
9    seat, correct?
10       A.    Yes.
11       Q.    And now we know that Lynbrook
12   Police threw away blue jeans that were found
13   in the French car, correct?
14       A.    Does it say blue jeans or jeans?
15       Q.    Let's look again for the benefit.
16   It says, "Blue jeans," all right?
17       A.    Okay.
18       Q.    Based on the custom and practices
19   of 1986 in the Prosecutor's Office, if you
20   knew prior to the Restivo, Halstead and Kogut
21   trials that there was a report indicating
22   John French's sister had found a pair of
23   ladies blue jeans with stripes in the French
24   car, which had been stolen the evening of the
25   incident, and that blue jeans from that car



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

240

1                         Klein

2      had subsequently been thrown away and that

3      there was a witness, Debbie Smith, who

4      indicated that she was at the intersection of

5      Rocklyn and Sunrise Highway, consistent with

6      the reports that we've seen, that we've

7      reviewed together, do you have that in mind?

8          A.    Yes.

9          Q.    If you knew all that information,

10     if you knew all that information, in 1986,

11     would you have considered turning that over

12     to the Defense as part of your Brady

13     obligation?

14              MR. SEPE:  Objection to form.

15              You can answer.

16              THE WITNESS:  I think that's a fair

17         statement, that I would have considered

18         it.

19     MR. SCHECK:

20         Q.    This might fall into the category

21     of something that either you would have

22     turned over or at least given to the Judge

23     for in camera review?

24         A.    Or not turned over.

25         Q.    But it's something that you would



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 241 of 296 PageID #: 5436

241

1                    Klein

2     have considered disclosing as Brady material?

3          A.    That's fair.

4          Q.    And would part of your decision as

5     to whether to disclose the Debbie Smith

6     statements and the French reports that we've

7     reviewed here, including the statement about

8     the blue jeans with stripes being found in

9     the car, would part of that determination

10    have turned on making an assessment of the

11    credibility of Debbie Smith and John French

12    and his sister?

13             MR. SEPE:  Objection to the form of

14         the question.

15             THE WITNESS:  To a certain extent,

16         it would, but it wouldn't be the only

17         factor I would consider.

18    MR. SCHECK:

19         Q.    But to the best of your knowledge,

20    your specific and general recollection, you

21    don't remember ever having gone out and

22    conducted any kind of inquiry with Debbie

23    Smith, John French or John French's sister?

24         A.    Me?

25         Q.    Yes.



ESQUIRE
an Alexander Gallin Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 242 of 296 PageID #: 5437

242

                         Klein

1
2       A.      Oh, I can say I never did.

3       Q.      And you have no specific or general

4    recollection of, first, Detective Volpe ever

5    telling you about going out and conducting an

6    inquiry of Debbie Smith, John French or John

7    French's sister?

8       A.      Just the same as before, I don't

9    remember.  I mean, I can tell you I didn't do

10   it.  That I remember.

11      Q.      And the reason you can tell me that

12   is that these reports that we reviewed,

13   right, would have been, taken together, a

14   significant issue for you to pursue?

15      A.      Yes, they would have, but I could

16   have seen them and not remember it now; but I

17   would not have interviewed these people and

18   not remembered it.  That's just my own

19   personal opinion.

20      Q.      You're saying that if you had

21   actually conducted the interviews, you would

22   have remembered it, that's what you're

23   telling us?

24      A.      I hope so.

25      Q.      And if you had specifically ordered



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 243 of 296 PageID #: 5438

                        Klein

1

2    Detective Volpe or anyone else connected with

3    the case to go out and interview these

4    witnesses, that's something you would have

5    remembered as well?

6              MR. SEPE:  Objection to form.

7              THE WITNESS:  I can't say.

8    MR. SCHECK:

9         Q.    I'm only saying --

10        A.    I can't say.

11        Q.    There's certain things you can say

12   you remember and there's certain things you

13   have to tell us you just have no specific or

14   general recollection, right?

15        A.    Correct.

16        Q.    If you had directed Detective Volpe

17   or any other investigator connected with this

18   case to go out and follow up on Debbie Smith,

19   John French, John French's sister and the

20   issue of the striped blue jeans, would you

21   expect that there would be something in the

22   District Attorney's file reflecting that you

23   had so directed an investigation?

24        A.    Not necessarily.

25        Q.    That was not your practice to write



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 244 of 296 PageID #: 5439

244

1                        Klein

2    down what you were doing?

3        A.    Sometimes it was, sometimes it

4    wasn't.  At this stage of my career, it

5    probably wasn't.

6        Q.    And if you had directed an

7    investigation into Debbie Smith, John French,

8    and John French's sister, given the ordinary

9    customs and practices in 1986, would you have

10   expected that there would be some police

11   report or other document generated for you

12   about the results of such an inquiry?

13       A.    It depends.  Not necessarily would

14   there have been a report prepared.

15            (Continued on the following page.)

16

17

18

19

20

21

22

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-00695-JS-SIL   Document 224-17   Filed 06/02/12   Page 245 of 296 PageID #: 5440

Fred Klein

```
 1                    Klein
 2       Q.     What does it depend on?
 3       A.     I guess the results of the
 4  investigation.  I mean, if there's nothing
 5  different, then I doubt that there would have
 6  been anything added.
 7            MR. FREEMAN:  For the record, I
 8       think it's 4:30.
 9            MR. SCHECK:  You want to go now?
10            THE WITNESS:  I would like to.
11            MR. SCHECK:  Sure thing.
12            (Time noted:  4:30 p.m.)
13
14            _____
15            FRED KLEIN
16
17  Subscribed and sworn to before me
18  this ___ day of _____ 2010.
19
20  _____
21
22
23
24
25
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

246

1

2                    C E R T I F I C A T E

3

4    STATE OF NEW YORK      )

5                           ) Ss.

6    COUNTY OF SUFFOLK      )

7

8            I, JEAN VALERIE GAFA, a Notary

9       Public within and for the State of New

10      York, do hereby certify:

11           That FRED KLEIN, the witness whose

12      deposition is hereinbefore set forth, was

13      duly sworn by me and that such deposition

14      is a true record of the testimony given

15      by the witness.

16           I further certify that I am not

17      related to any of the parties to this

18      action by blood or marriage, and that I

19      am in no way interested in the outcome of

20      this matter.

21           IN WITNESS WHEREOF, I have hereunto

22      set my hand this 25th day of August 2010.

23

24                    

25                    JEAN VALERIE GAFA

Toll Free: 800.944.9454
Facsimile: 212.557.5972

ESQUIRE
an Alexander Gallo Company

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

247

1

2                              I N D E X

3     WITNESS              ATTORNEY NAME           PAGE

4     FRED KLEIN           MR. SCHECK                 6

5

6                  INFORMATION REQUESTS

7     DIRECTIONS:                               181

8

9

10                         EXHIBITS

11    PLAINTIFFS'                              FOR ID.

12       Exhibit 212    Color photograph         198

13       Exhibit 213    Color photograph         200

14       Exhibit 214    Color photograph         200

15       Exhibit 215    Color photograph         200

16

17

18

19

20

21

22

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

DEPOSITION ERRATA SHEET

Our Assignment No.  312604

Case Caption:  KOGUT vs. NASSAU

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury
that I have read the entire transcript of
my Deposition taken in the captioned matter
or the same has been read to me, and
the same is true and accurate, save and
except for changes and/or corrections, if
any, as indicated by me on the DEPOSITION
ERRATA SHEET hereof, with the understanding
that I offer these changes as if still under
oath.

Signed on the _____ day of
_____, 20___.

_____

FRED KLEIN



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 249 of 296 PageID #:
5444

249

1                  DEPOSITION ERRATA SHEET

2    Page No._____Line No._____Change to:_____

3    _____

4    Reason for change:_____

5    Page No._____Line No._____Change to:_____

6    _____

7    Reason for change:_____

8    Page No._____Line No._____Change to:_____

9    _____

10   Reason for change:_____

11   Page No._____Line No._____Change to:_____

12   _____

13   Reason for change:_____

14   Page No._____Line No._____Change to:_____

15   _____

16   Reason for change:_____

17   Page No._____Line No._____Change to:_____

18   _____

19   Reason for change:_____

20   Page No._____Line No._____Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____DATE:_____

25                    FRED KLEIN



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

1                   DEPOSITION ERRATA SHEET

2       Page No._____Line No._____Change to:_____

3       _____

4       Reason for change:_____

5       Page No._____Line No._____Change to:_____

6       _____

7       Reason for change:_____

8       Page No._____Line No._____Change to:_____

9       _____

10      Reason for change:_____

11      Page No._____Line No._____Change to:_____

12      _____

13      Reason for change:_____

14      Page No._____Line No._____Change to:_____

15      _____

16      Reason for change:_____

17      Page No._____Line No._____Change to:_____

18      _____

19      Reason for change:_____

20      Page No._____Line No._____Change to:_____

21      _____

22      Reason for change:_____

23

24      SIGNATURE:_____DATE:_____

25                      FRED KLEIN



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 191 of 296 PageID #: 5446

## A

**AAA**
185:23
**abduct**
37:4 38:25
210:22
**abducted**
37:8,11
162:15
163:9,23
164:15
165:21
166:13
172:14
174:8
182:18
221:22
224:8
**abduction**
37:22,25
38:19 175:5
233:9
**able**
30:19 95:9
181:22
**absence**
132:12
133:11
**Absent**
57:5
**absolutely**
33:15,17
172:7
195:24
224:23
**accept**
65:5,23
130:25
214:15
**accomplished**
81:14 86:20
**accorded**
31:12,21
**accuracy**
77:15 211:2
**accurate**
65:23 85:22

147:24
148:23
161:17
163:2,4
211:13,16
248:12
**accurately**
20:15 30:25
31:14 33:11
87:19 93:2
**accusing**
181:13
**acknowledge**
231:13
**acquaintance**
21:24
**acquainta...**
20:11 25:11
28:7 36:21
46:15,18,20
51:7 52:7
**acquainted**
25:25 26:17
**acquired**
64:13
**acquittal**
30:5
**acquitted**
16:22
**acting**
132:20
**action**
246:18
**activities**
159:21
**activity**
41:15
**acts**
43:23
**actual**
138:25
183:13
**add**
196:9
**added**
117:19 245:6
**addicted**

20:11 25:11
28:7 36:20
46:15,19,20
47:4 51:7
52:7
**addicts**
25:7
**additional**
19:6
**address**
215:12
**addressed**
9:3
**adds**
196:21
**admissible**
42:23,25
43:22
**admission**
24:9,12
27:20
**admissions**
27:20,22
28:6 29:10
31:7,9,18
33:7 44:3
47:2 48:6
**admit**
24:22,23
**admitted**
26:12 30:17
164:3
**admitting**
24:23
**advice**
82:7
**affect**
45:12,22
46:4
**affidavit**
55:19 56:3
84:6,13
87:24 89:9
90:20 91:6
94:10,16
95:9 97:13
104:3 107:2
107:20

109:22
110:8
112:18
115:10
117:13,15
117:18
120:22
124:9 126:4
126:19
127:5 130:2
131:21
133:22
195:7,10,19
195:20
196:6
**affirmati...**
32:15
**afternoon**
59:24 112:6
184:24
185:15
**age**
140:15
**ago**
74:4 77:8
93:12 97:25
145:12,23
170:11
**agree**
7:5 28:4
31:4 37:7
41:20 61:24
69:2 71:13
76:5 77:2
84:17 85:18
87:4 89:7
101:9 104:2
106:24
107:19
109:16,20
110:6
115:14
116:15
121:13
125:16
131:18
145:8,20
148:11

150:18
168:13
169:5
170:22
172:8 174:2
180:8 187:7
190:24
197:14
198:13
199:6
201:19
205:22
206:17,23
208:17
209:3 210:3
210:17
212:11
213:3
216:22
218:16
224:4 225:4
225:10,14
228:7,12
233:3
**agreed**
5:4,8,12
85:20,21
201:8
221:10
**ah**
120:25
**ahead**
50:2 200:23
**al**
1:5,8
**alike**
117:10
**alive**
161:5 212:24
**alleged**
20:9
**allegedly**
30:16
**alleging**
8:17
**allowed**
9:9 182:21
**alternatives**



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
221:3                 73:7,14,22        156:3             106:20            arrested
Altogether            74:16,24          179:17            107:6,9,23        53:25 59:25
80:19                 75:4,7,16         181:10            109:6,11,12       ascertain
ambiguous             76:17 77:24       answering         121:6,21          229:22
20:5,23 21:5          78:5 79:24        176:17            131:11            aside
22:23 28:6            81:8,11,17        211:10            approach          68:14
28:17 29:24           82:24 83:8        answers           41:19             asked
30:3 36:16            83:23 84:25       74:6 97:22        appropriate       9:10 24:13
47:3                  86:15,18,23       114:15            22:14 144:14      35:24 64:22
American              87:14 95:14       176:7,13,23       144:17            65:10 83:17
10:16 192:24          95:15             ANTHONY           approximate       92:9 98:14
amount                102:10            3:18              64:13 142:25      103:2
40:10                 103:15            antitrust         approxima...      113:11
AM/FM                 105:8             10:24             137:16            126:9,11
154:5                 110:20,25         anybody           170:18            134:19
analysis              111:6,11,14       24:2 125:10       April             156:2
26:19 97:7            111:18            132:7             56:19 60:15       179:16
117:2 120:2           112:11            134:18            77:20             181:10
128:6                 113:13            Anything's        area              182:2
analyst               123:14,17         164:19            142:6 144:9       183:15
100:14 193:3          123:21            apparent          147:25            184:25
analyzed              124:2,6,14        30:6              148:2,12,18       185:9 203:3
116:10                125:2,5,9         apparently        152:6             205:8
and/or                125:12            97:14 100:2       161:25            206:17,23
248:13                126:10,12         129:3             162:4 163:9       207:21
Ane                   126:14            130:19            164:24            227:3
105:21,22             134:4             150:22            165:2 172:9       asking
Ann                   154:23,25         153:10            172:19,24         40:11,19,20
149:15                155:8 156:7       187:13,16         182:17            51:10 59:23
150:22                163:11            195:11            189:3 191:7       77:14 85:3
151:12                166:6,7,9         Appeals           195:2 209:6       91:17 97:21
ANNA                  175:18            229:8             213:10            97:23 98:17
3:11                  176:4 177:2       appearance        215:19            102:9
answer                177:18            199:7             224:11            104:15,18
9:12 38:7             178:2,16          appears           areas             105:5
41:5 45:8             180:3,24          71:2 157:15       169:17            108:11
48:22 56:21           181:4,5,7         184:22            argued            114:14
57:8 62:12            181:22,25         203:19,20         29:17             116:13
62:19,22              182:5,22,23       206:10            arguing           118:13
64:15,17,21           206:7             217:5             181:12            130:20
65:17 66:17           213:22            append           argument          142:19
66:20,23              220:24            115:10            30:14 128:3       163:13
67:4,9,24             229:17            apples            193:14            165:9,12
68:5,24               235:23            225:21            233:7             166:17
71:2,7,10             240:15            application       argumenta...      172:21
71:16,20,22           answered          18:12 55:6        181:9             173:15
72:4,12,16            9:5 64:21         55:18 56:4        argumentive       174:18,22
72:24 73:4            103:2 155:7       84:10 91:20       96:17 187:6       175:24
```



ESQUIRE
an Alexander Gallo Company


Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




178:6,11
187:6
201:22
206:19,20
226:5,11
233:15
**asks**
87:10 166:4
229:15
**aspects**
44:24
**assertion**
210:7
**assessing**
50:8
**assessment**
49:18 241:10
**assigned**
12:2,15 54:6
119:20
120:7,14
136:5
**Assignment**
248:4
**assistance**
129:17
134:19
**Assistant**
11:3,5 15:9
17:10,11
105:18
**associated**
153:8
**assume**
13:8 95:22
101:16
119:21
132:25
167:23
**assuming**
63:14 92:25
106:10
126:10
132:15
163:4,16
168:18,23
169:12
172:16

190:11
212:20
**assumption**
108:2
**assurance**
92:18
**assure**
53:3
**Atlantic**
193:15
**attempt**
159:20
**attention**
11:23 38:24
41:7 55:20
67:19 70:16
78:17 94:23
110:13
136:18
137:6 154:8
157:3 212:9
233:23
**attorney**
4:12 11:7
15:8 41:13
50:17
108:25
109:10
115:10
116:3 143:3
145:10
232:17
233:4,17
247:3
**attorneys**
3:5,14 4:5
5:5 7:21
103:11,21
**attorney's**
6:19 7:23
8:6,18
18:23
108:14
112:16
115:8 139:3
139:6
143:25
229:5

243:22
**August**
1:15 2:2
11:4,6,9
246:22
**authorizing**
88:2
**auto**
153:14,23
156:17
158:6,9
168:7,9
169:19
184:16
**automobile**
159:18
**autopsy**
90:3,21
**avenue**
4:6 147:13
147:14
148:13,13
148:17,17
148:21
150:10,21
151:25
152:7
154:15
161:20
167:16,25
169:15
170:14
193:15,16
193:19,20
193:22,23
193:25
194:4,9,11
215:2,2,15
215:15
234:10,10
**aware**
16:13 94:13
99:12 221:5
**a.m**
2:3 6:8
60:16 186:8

**B**

**back**
15:9 27:13
36:10 45:18
77:11 80:21
84:2 85:8
85:13,23
100:12,22
122:15,16
123:12
146:12
149:4
153:23
158:15
159:21,24
160:14
164:8 167:2
186:13
188:12
194:23
197:9,11
204:11,13
212:3
215:24
225:18,23
230:25
**background**
10:10
**badgering**
181:9
**Bailey**
234:6
**ballistics**
117:4
**balloon**
140:16
141:11
**barely**
136:14
**Barry**
3:9 225:25
**based**
32:2,3 45:19
46:15 48:5
65:4 84:18
95:5,25
96:2,7
109:19
110:4

112:15
113:23
114:12,23
116:5,20
120:18
133:18
148:10
152:4
172:20
174:3,13,22
175:9,11
191:7
209:25
210:3,14,25
211:5
220:19
239:18
**basement**
15:18
**basically**
28:24 31:2
33:5 36:23
45:7 181:11
**basis**
38:11 76:10
115:12,17
233:7
**BCG**
60:18 88:5
**Beach**
193:18
**bear**
213:14
**bearing**
167:7
**bears**
212:13
**Becht**
154:15
**beginning**
13:12 14:10
137:23
208:12
**beige**
142:7 144:8
170:17
**belabor**
208:18





Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 254 of 296 PageID #: 5449

**belief**
59:11
**believe**
22:3,12
24:13  27:17
33:13  35:6
39:22  43:20
50:22  51:6
59:7  62:22
64:21  94:24
102:17,23
103:6
112:14
122:15,17
122:19
136:22
162:25
164:2  173:8
193:10
235:6
**believed**
132:8
**bell**
175:13  212:9
**belong**
150:21
224:25
**belonging**
149:14,22
151:9
**benefit**
239:15
**benefits**
20:12  26:2
31:11,20
**BENVENUTTI**
3:11
**best**
18:14  21:3,4
45:8  101:4
101:12
104:20,24
122:22
140:12,24
182:24
241:19
**better**
30:2  62:8

190:8
204:25
230:15
238:19
**beyond**
30:23  33:9
42:25  50:5
181:12
**Biancavilla**
17:16  29:13
99:16  135:9
**big**
44:11  108:2
159:8
181:17
219:13
221:11
222:2,5
223:22
225:4
228:10
236:17
**bigger**
98:22
**bills**
153:17
**Birdsall**
62:13  122:10
122:13
123:15,18
123:19
124:11,21
125:21
128:7,19
129:10,21
130:23
132:18
**Birdsall's**
124:12,17
125:17
131:4
**bit**
33:18  93:14
169:22
178:18
180:3
**BJN**
214:24

**black**
62:15  149:5
198:3,17
199:16,18
203:21
**blacked**
192:21,22,23
193:13
**blank**
25:4
**blanked**
215:9
**blanket**
40:5  158:8
168:9  186:3
187:23
188:3,9,11
188:15,19
188:20,22
189:2
197:10
203:12,14
203:17
204:4,12
**blankets**
62:15  63:15
128:22
142:8
**blood**
88:9  92:4
117:4  121:6
121:15
122:25
123:13,19
124:10,24
125:4,11,19
125:20,23
131:6,10,14
131:20
132:3,5,12
133:11,16
133:21,23
134:10,12
246:18
**blue**
88:4  140:15
140:16
141:4,9,12

141:15,16
141:17
203:21
216:16,17
216:23
217:7  218:2
218:16
234:12
236:13,16
236:25
237:14
238:3,16
239:2,4,12
239:14,16
239:23,25
241:8
243:20
**blurry**
61:15
**board**
216:18
217:12
237:3  239:8
**body**
37:13  90:4
92:14  120:6
135:25
141:21,23
142:7  148:2
161:24
162:4  163:5
163:6
164:25
165:22
166:12
172:19
173:17
177:15
188:4,22,23
188:25
189:3,19
191:5  195:3
200:8  201:9
203:11
205:25
209:6,11
210:8
213:11

214:13
217:21,21
218:4,21,23
219:17
224:10,16
232:3
234:23
**born**
10:11,13
192:21
**bottom**
60:13  78:19
128:13
147:19
**bought**
23:14
**Boulevard**
194:10
**Brady**
228:18
229:10
230:4,8
240:12
241:2
**break**
78:14  92:10
144:15
226:14,24
**breaks**
227:7
**Brian**
25:2,2
**bring**
21:2  60:19
138:22,23
**bringing**
9:8
**broad**
139:18
**Broadway**
214:21
**broken**
142:8  154:10
185:22
186:16,23
187:12,14
205:5
208:13,23



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



brother
193:4
brought
38:24 94:22
106:12
130:3
139:21
212:8
brown
140:15 141:9
BRUSTIN
3:4
bug
24:10
build
72:21 73:2
73:25 74:21
75:2 76:10
built
72:10 73:8
73:15 74:14
75:11
bumper
185:24 205:4
Bureau
41:14 96:4
130:5
185:19
burger
165:14
buried
224:9,17,21
bury
224:19
bus
159:2,4,8,9
159:15,17
business
120:11

C

C
3:2,9 4:2
246:2,2
call
6:23 23:5
60:24 88:15

110:13
137:6 157:3
159:7,21
195:18
205:7
211:25
called
6:2 7:24
41:6 55:19
56:13 83:5
143:4
157:22
159:2,15,17
167:4
184:24
185:5,14
228:17
229:2
calling
11:23 78:17
160:14
233:22
calls
166:3
camera
229:13
240:23
camper
159:8
capable
114:22
Caption
248:5
captioned
248:10
car
37:25 38:25
142:7,9
143:13,14
144:8
146:24
147:9 148:6
148:25
149:15
150:2,13,14
150:19,22
151:11,16
151:17,18

154:6
155:19
158:6
160:23
167:19
168:6
169:20
171:11,16
171:16,20
171:22
172:5,10
174:6,7
175:4 185:3
185:6,10,20
186:2,7,15
186:22,23
186:25
187:13,17
187:20,24
187:24
192:12
194:25
197:7,16,24
198:7,10,14
198:16,25
199:6,9,24
200:7 201:8
201:20
202:9,16,20
204:14
205:4,9,13
205:13,15
205:16
206:2,3,5
206:14,15
206:15,25
207:5,6,8
207:10,13
207:14,16
207:18,19
207:20
208:4,4,10
208:10,12
208:23
209:13,16
209:18,19
209:20
210:7,21
212:13,15

213:5,8,19
214:25
215:13,20
216:2,5,11
217:20
218:2 219:6
221:12,21
222:13,13
223:2,9,19
224:13
227:2,5
228:8
230:20
231:6,14,19
232:5,13,18
232:20
233:8 234:9
234:10,13
236:20
237:11
239:13,24
239:25
241:9
cards
153:17
care
58:25
career
244:4
careful
14:17 71:17
71:24 154:8
Carl
22:18 23:6
carpet
128:21
carrying
153:16
case
7:21 14:18
17:6,8,11
18:7,25
19:5 22:21
23:21 26:18
29:2 30:10
30:20 32:17
33:5,25
34:13 36:6

36:7,23
37:3,11,20
37:23 38:3
39:4 41:3
42:19 43:2
43:10,24
44:5,13,17
44:21 45:5
45:12,22
46:10,15
48:3,5,12
48:19,25
49:2,7,11
49:16 50:7
50:9,12,21
50:24,25
52:3,9,17
52:22 53:5
55:12,24
57:6,18
59:2,20
63:16 67:17
70:2 72:10
73:6 74:14
75:6,19
77:11,22
78:3 80:13
81:11,12
86:18 97:24
98:20 99:7
101:24
103:17,17
103:24
107:5
109:22
110:24
117:5,14,24
118:15,20
118:24
119:3,5,9
119:18
120:4,8,14
122:17,20
124:18
127:2 128:3
128:22
129:25
132:10,23
133:18



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

135:6 136:6
136:7 138:8
138:18
139:7,17
143:16
153:16
162:11
163:25
181:14
194:8 222:4
223:24
226:13
227:15
228:18,24
229:8 243:3
243:18
248:5
**cases**
12:13 13:23
14:5 19:21
26:9 38:21
48:23 58:5
77:23 78:4
78:11
101:20
103:11,21
111:9 210:5
224:24
229:19
**cassette**
153:16 154:5
**cast**
45:4 47:18
**casting**
44:24
**categories**
36:13
**categorize**
21:2
**category**
200:4 240:20
**causes**
226:10
**Central**
193:16
**Centre**
4:7
**Ceramics**

192:24
**certain**
8:21 9:19,23
16:16,17
40:9 85:10
109:13,18
127:3 135:6
135:10
229:10
230:8
241:15
243:11,12
**certainly**
6:17 15:7
30:3 33:24
33:25 41:6
41:16 42:7
42:19 43:25
46:12 58:4
58:14 72:2
87:5 88:11
90:20,22
93:24 99:5
101:23
123:3
126:25
146:9
177:19
191:8
198:15
199:18
211:18
219:15
221:10
222:23
228:25
238:14
**certifica...**
5:7
**certify**
246:10,16
**cetera**
63:16
**challenged**
58:14
**chance**
7:7 190:8,11
**change**

31:2 249:2,4
249:5,7,8
249:10,11
249:13,14
249:16,17
249:19,20
249:22
250:2,4,5,7
250:8,10,11
250:13,14
250:16,17
250:19,20
250:22
**changed**
59:10 127:23
170:13
172:3 197:4
**changes**
248:13,16
**changing**
181:25
**character...**
72:11,22
73:9,16,25
74:15,22
75:12
**character...**
187:8 225:15
**characterize**
47:3 87:10
**character...**
133:20
**character...**
113:10
**charged**
53:23 195:16
**Charles**
58:2
**chart**
147:18
**check**
98:22 212:18
212:19
**Chief**
15:9 105:18
**City**
10:13
**civil**

36:7
**claimed**
32:11
**clarify**
21:8 49:6
174:17
**clarity**
156:21
**Class**
193:8
**clear**
8:21 9:18
30:21 40:18
63:17 91:16
91:24 95:20
99:3 116:14
142:21
168:3
180:13
183:10
187:5 218:7
218:10,12
236:8
**clearer**
182:6 233:15
**clearly**
74:10 187:11
**Clinton**
4:6
**clocked**
161:7
**close**
172:25
202:19
**closer**
178:25
**closest**
100:14
**close-up**
227:4
**closing**
128:2
**closure**
6:18
**clothing**
218:18 223:3
**coincidence**

213:12
**coins**
153:17
**collect**
124:24
**collected**
62:11 63:2
64:19 65:6
65:22 66:24
68:3,17,19
70:25 90:6
116:18
123:5 125:8
**collection**
77:21
**collective**
128:10
**collector**
223:16,17
**College**
10:16
**colloquy**
176:22
**color**
88:4 149:3
197:22
198:18
200:9,13,16
200:19
247:12,13
247:14,15
**colored**
158:8 168:9
**come**
8:11 26:20
27:13 32:22
39:14 53:12
100:15,24
117:2
135:14,14
159:14
176:8 185:9
205:8
**comes**
50:10 145:11
145:22
214:10
217:19


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

comfortable
64:23
coming
68:7 209:9
command
137:15 159:2
159:4,17
commanded
60:14
Commanding
56:13
comment
107:24
commenting
106:3
comments
83:20 176:22
committed
43:22 51:3
common
93:21
compare
117:7
compared
26:17 88:24
141:17
comparing
78:2
comparison
67:3,23
68:21 73:3
73:12,20
74:2 75:3
75:14 86:14
87:6 94:15
95:24 96:24
97:2,8
104:24
113:5
comparisons
75:19 81:7
83:19 95:7
111:13
complete
67:25 71:14
72:14 81:6
86:13 87:6
94:15

completed
88:12 92:19
completely
40:7 90:25
comply
230:4
complying
228:21
compound
92:10
computer
193:3
concede
191:8
conceivable
191:14,17
concern
25:12,17
27:25 28:3
39:20
concerned
22:22 25:15
27:19 39:13
44:23 45:3
67:15
100:14
175:8
concerning
149:13
concerns
26:24 42:12
concluded
53:2
conclusion
28:20,21
95:24 98:9
100:16
conclusions
96:12
conclusive
30:3
conclusively
116:15
187:17
conduct
41:24 125:6
conducted

17:15 241:22
242:21
conducting
242:5
confess
30:12
confession
30:11 38:9
38:14 54:4
164:5,14
188:15
conflating
188:14
confused
150:23
151:13,15
Connaughton
44:12,14
connected
32:18 118:15
231:19
243:2,17
connecting
33:3
connection
202:12,18
consensual
28:18 29:4
consider
21:23 47:23
121:20,23
241:17
considerable
99:19
considered
39:24 40:25
41:3,24
240:11,17
241:2
consistency
70:3
consistent
26:6 66:21
67:12 75:17
75:20 88:8
89:3,10
90:13 91:4
91:8,14,25

92:20 94:2
95:10 96:24
97:5,15,17
97:20 98:6
98:16 100:8
100:17,18
101:6 104:5
104:8 105:2
106:17
112:19,24
113:6,8,20
114:2,11,23
115:16
116:4,9,22
117:10
118:4,16
121:2,14
140:19
141:7
168:14,24
169:6,10,13
170:24
189:9 195:2
197:15
198:14
199:7
218:17
226:7 240:5
Consolazio
229:2,7
consuming
79:17,25
contained
39:18 92:15
context
117:12,17
continue
107:14,16
110:2 112:7
121:25
Continued
244:15
continuing
40:4,12
contradict
32:10 38:9
223:12,24
contradicted

38:3
contradic...
39:2,7 94:14
222:15,22
contradic...
126:2,17,18
223:21
224:5
contradicts
31:6
contrary
225:6
Cont'd
4:2 145:6
conversation
82:22 83:4
143:9,18
178:23
182:13
conversat...
83:18
convict
49:15
conviction
13:11 14:4
26:9 59:3
127:6
convictions
14:13 15:22
16:9,18
convince
107:2
copied
8:4
copy
11:12 56:24
59:13 139:7
139:12
220:11
copy's
61:15
corner
193:16 215:2
215:13,14
CORNWALL
3:10 78:20
78:25 79:8
85:15 128:9



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 258 of 296 PageID #: 5453

132:22
corporate
11:2
correct
8:2 10:4
12:5,23
13:18,25
14:2,5,14
14:21 15:2
16:20 18:4
20:19 27:6
32:11 34:14
36:14,17,21
37:14 38:4
44:18 46:16
48:7 49:19
50:12 51:21
51:22 53:13
56:7 63:23
72:4 73:14
75:16 78:5
78:11 79:23
84:14 93:20
97:3 99:8
99:10,13
100:9 101:7
105:11,12
110:20
112:25
114:3,13
121:16
123:17
124:14,16
138:3
153:19
157:20,21
160:11
162:8,22
169:19,25
176:20
180:17
187:10,25
192:13,16
192:17
194:4 195:5
199:20
206:5
214:10

228:13
236:14
237:8,20
238:3,7,12
239:5,6,9
239:13
243:15
correction
194:3
corrections
248:13
correctly
19:10 28:23
corroborate
146:16
corrobora...
146:3
counsel
8:3 82:7
108:10
120:11,19
counselor
81:20 86:25
Country
2:7 3:16
County
1:8 4:11,12
7:22 10:11
10:14 11:4
17:12 20:10
56:14 87:25
91:23
143:25
246:6
County's
134:19
couple
72:18 74:18
course
39:21 134:17
137:10,13
137:14
Court
1:2 5:16 9:4
17:24 18:2
28:12 35:7
36:11
108:14,21

108:24
229:8
cover
80:5
covered
224:18,20
co-counsel
4:13,19
112:3
created
43:8 70:24
147:18
creating
108:7 227:14
credibility
25:13,18,19
31:25 42:12
43:14 47:19
47:23 49:5
49:18 52:6
52:20 211:2
241:11
credible
50:11 51:2,8
51:10
211:13,16
crime
20:8 29:19
32:18 33:4
42:3 51:3
53:24 60:25
129:13,15
129:19
130:16
crimes
42:7 122:19
criminal
13:14 41:15
41:24 42:7
43:11
criminally
39:24 41:4
critical
37:20
cross
7:9
crossing
205:17

cubicle
143:6
cursory
227:8
custody
61:18
custom
112:15 115:7
130:7,20
133:3
239:18
customs
51:23 108:13
108:21,23
110:4
121:11
129:7
130:13
166:20
174:23
220:20
244:9

**D**

D
6:2 145:4
247:2
DA
11:3,5 17:12
damage
232:20
damaged
26:9 201:21
damaging
43:13
dark
158:8 168:8
DAs
210:5
dashboard
154:4 205:6
databanks
26:20
date
10:2 26:14
54:24
132:23
135:20,21

142:22,24
145:24,25
152:10,14
185:12
192:6
198:20
200:15,18
200:21
212:21,21
215:17
249:24
250:24
dated
128:8 192:7
dates
13:9 145:14
159:20
160:15
184:12
day
7:13 62:17
62:21 63:4
63:10 64:20
72:3 185:5
192:3,8,11
214:12
219:17
221:21
245:18
246:22
248:18
days
71:14,14,21
72:18 74:18
81:9,10,14
81:17 84:23
86:16,17,20
86:23 87:8
88:13 89:4
118:5
133:23
160:13
214:9
217:18
DA's
6:16 7:3,24
105:19
133:4



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

143:21
166:21
174:19,24
DC
10:17,19
De
11:19
deal
41:18 81:9
86:15
181:17
219:13
221:11
222:2,5
223:22
225:4
228:10
dealing
101:19
103:21
105:13
deals
31:9,18 32:8
dealt
153:11 229:4
Debbie
157:20
158:25
159:17
160:2 167:4
167:11,18
168:14
170:10,25
172:15
173:18,20
174:5 175:2
177:12
178:9 179:8
182:15
183:17
184:23
186:21
187:9
189:17,21
194:24
199:8 204:9
210:6,20
211:3

212:12
213:7,13,18
214:9
217:18
232:18
240:3 241:5
241:11,22
242:6
243:18
244:7
DEBORAH
3:10
Debra
149:15 150:2
150:22
151:12
185:20
191:24
192:19,20
debris
80:8
DeCarlo
149:16 150:3
151:12
DeCarlo's
150:22
deceased
91:15 116:22
December
11:18 17:23
152:20
157:9 160:3
161:25
165:21
173:16,16
184:6,15,25
191:24
210:16
214:5,15,17
217:18
232:4 234:6
decide
230:9
decided
112:6 193:19
228:25
decision
14:20,22,25

15:4,5 16:8
16:19 17:8
18:16,17,19
32:14,16
41:9 59:2
241:4
decisions
13:12 14:8
DECLARATION
248:7
declare
248:8
Defendant
43:18 50:23
Defendants
1:9 4:13,19
8:5 13:13
19:7 20:5
20:12,14
25:24,25
26:18 27:14
30:8 31:7
32:18,25
33:3 37:5
51:3 53:3
155:24
158:13
159:16,24
169:13
191:21,23
defense
24:20 64:3
127:16
228:19
229:12
230:5
232:17
233:4,8,16
240:12
defenses
126:24
definition
49:20,23
degree
106:2
delivered
37:12
Delta

149:2 150:16
205:12
demand
35:5
denim
141:10
Dennis
3:6 12:5,22
13:3,5,17
13:24 15:7
15:14 17:3
18:20 57:7
138:2
Department
56:15 91:23
122:18
133:5
166:22
174:20,24
232:10
234:7
depend
191:2 230:11
230:13
245:2
depending
97:4 213:15
depends
18:9 39:11
49:17 102:7
102:8 146:8
174:12,15
175:7,9
210:11,12
211:11
244:13
depiction
147:25
deposed
56:17
deposition
1:13 2:5
5:13 6:17
7:5 59:14
59:19 62:6
65:11 77:7
78:8,18,20
78:24 79:2

80:22 82:2
82:18 85:21
110:14
112:7
124:22
126:8
153:12
161:11
198:23
246:12,13
248:2,10,14
249:1 250:1
depositions
36:6 98:20
describe
98:8 145:11
221:18
described
88:3 146:14
151:24
201:9
describes
146:3 172:9
191:11
206:13
describing
202:5
description
140:3,13
141:11,16
169:14
170:16
171:24
197:16
198:13,15
199:8,23
209:17
218:17
222:9
desks
159:9
despite
26:15
detail
48:11 76:4
77:3
details
178:22



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

detective
36:6 39:16
44:11,16,20
52:5 55:18
56:2 67:14
89:8,25
92:12
101:24
102:8,12,14
102:17
106:25
107:20
108:5
109:22
112:17
115:11
116:5,18
128:24
129:13
130:17
132:9,9
133:17
134:7,10,14
152:21,22
153:7
157:13
158:18
169:25
175:16
177:11
178:8 179:9
182:14
193:5 205:7
205:11
210:19
233:23,25
234:3,6
242:4 243:2
243:16
detectives
44:17 101:11
101:18
105:16
115:9
116:25
139:22
142:15
185:16

205:18
210:4 228:6
234:25
detective's
235:19
determina...
79:20 118:3
229:16
241:9
determine
66:25 81:4
86:11
122:25
133:10
134:24
developed
47:16
development
222:4,10
224:4 225:5
DI
181:4
diagram
149:3 161:10
164:9
169:12
170:23
194:24
216:9
difference
187:21
236:17
different
7:13 49:24
53:8 76:9
91:2 97:22
115:2
127:20
135:5 139:4
140:10
164:8 171:8
181:11
195:15,18
222:2
234:11
245:5
different...
20:22

differently
41:6
difficult
30:22
Dillon
15:8 18:20
direct
20:8 24:9
28:17 29:9
29:21 33:6
36:19 39:2
39:7 47:2
48:5 136:18
181:4
222:15,22
directed
243:16,23
244:6
direction
168:17,25
169:9
172:12
194:20
209:10
DIRECTIONS
247:7
directly
31:6 32:10
38:2,8
39:10,19
120:25
123:25
223:12,21
223:23
224:5 225:6
disagree
29:6 45:2
115:22,24
130:15
203:4
disagrees
177:21
disappear...
196:11
197:18
231:19
232:6
disappeared

29:5 135:17
135:24
141:25
144:11
213:7
disclose
228:18 230:5
241:5
disclosed
64:3 229:11
230:10
disclosing
241:2
disclosure
128:13
discovered
37:13 41:21
42:8 46:3
63:25 93:20
131:5
165:22
177:15
188:5
203:11
224:15,16
discovery
34:19,20
discuss
7:17
discussed
142:23
175:15,21
183:19
210:25
212:2
discussing
142:15
177:11
179:8
189:16
discussion
22:4 54:15
82:6,14
99:12 103:7
111:24
142:20
178:8
202:23

203:2
230:22
dismiss
49:13
dismissal
11:13 53:10
dismissed
12:13 34:14
disposed
223:14
disproving
33:5
dispute
45:23 63:19
137:3
189:11
disputing
209:18
dissimilar
68:6
dissimila...
96:12
distance
61:16 191:13
distinction
10:15 94:25
179:25
181:20
distinctive
141:16
district
1:2,3 6:19
8:6,17 15:8
18:23
103:11,20
108:13,25
109:10
112:16
115:8,10
116:2 139:3
139:6
145:10
229:4
243:22
dive
73:2 75:3
division
220:21



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




DNA
13:11 14:4
26:8,12,13
26:15,19,21
26:23 27:2
27:8,10,12
27:24 28:13
28:14 29:16
30:7,14
31:6 32:9
33:4 35:10
119:25
120:3
225:18
Docket
1:6
document
130:19 147:7
149:19,21
152:25
154:19,22
155:5,10,15
155:16
156:6,12
158:17
184:7
206:20,23
216:25
217:2 220:5
220:22
230:17,24
234:19
235:3,4,13
235:15
236:2,18
237:25
238:20,24
244:11
documents
8:3,6,16,22
9:20,21,23
34:5 36:2
134:23
135:10
138:14
139:2,15
144:7,14
156:16,19

173:14
175:12
186:14
207:9
211:22
Doherty
233:24,25
234:4,19,21
doing
10:22 11:2
71:18,24
84:21 96:13
103:11
111:20
114:16,22
117:13
133:14
176:15
244:2
door
149:10
Dorfman
21:15 44:13
double
65:13 212:19
doubt
30:24 33:10
44:24 47:18
50:5 91:11
207:24
229:9 230:7
230:12,14
245:5
doubts
27:7 45:4
49:4 52:6
52:19
draw
67:19
drawing
25:4 100:15
drawn
147:23
169:12
drives
232:9
driving
157:23 160:3

167:6,11,12
167:22
168:3,18,21
193:15
drove
194:10 197:5
216:4
drug
20:11 25:7
25:10 28:7
36:20 46:15
46:18,20
47:4 51:7
52:7
dug
224:19
duly
6:3 246:13

E
E
3:2,2 4:2,2
6:2,2 145:2
145:2,4,4
246:2,2
247:2
Eagle
150:10,20
151:25
152:7
early
197:7 234:24
east
15:18 148:17
170:14
171:4,12
EASTERN
1:3
eavesdrop...
54:8,21 84:4
84:5 117:20
EBT
66:5 132:16
Econoline
61:5
Ed
55:15
educated

55:11
educational
10:10
effect
5:15 26:3
efforts
30:6 136:4
either
20:10 33:8
35:9 39:17
60:7 63:8
89:18 98:19
114:17
117:6
134:21
138:22
139:20
176:22
182:9
238:12
240:21
elapsed
126:20
135:23
elected
68:15
elevated
191:15
194:19
eleven
62:15
eliminated
68:7
else's
27:15 65:14
98:24 166:5
elucidate
180:2
emerged
43:5
Emergency
130:5 185:19
engaging
73:25
English
147:4
entered
216:2

entire
43:14 227:15
248:9
entitled
98:21
envelope
39:17 80:6
89:19 90:10
92:14 93:15
93:22
envelopes
79:19
equipped
132:3
ERRATA
248:2,15
249:1 250:1
ESB
130:5 185:17
185:18
207:6,19
208:22
especially
138:8 226:5
ESQ
3:9,10,11,18
4:4,8,9,16
4:22,23
essentially
126:9
establish
50:4,6
estimated
160:23
et
1:5,8 63:16
evaluating
145:21
evaluation
53:8
evening
59:25 61:19
161:8
164:24
172:17
193:13
197:17
234:15



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

| | | | | |
|---|---|---|---|---|
| 239:24 | 219:5 | 113:7 123:4 | exhibits | 109:23 |
| event | 227:13 | 123:4 | 57:2 247:10 | 131:12 |
| 145:14 | evidentiary | 129:11 | existing | extent |
| events | 45:23 106:18 | 131:9 | 225:20 | 58:6 98:23 |
| 146:2,13 | exact | 230:21 | expect | 109:13,18 |
| 231:17 | 13:8 116:24 | examiner | 101:23 | 127:3 |
| eventually | 135:21 | 57:25 110:19 | 103:20,25 | 135:11 |
| 74:3 144:10 | 140:9 161:7 | examining | 165:20 | 241:15 |
| 172:11,19 | exactly | 62:14 78:2 | 220:21 | extremely |
| 207:15 | 35:12 63:8 | 89:20 | 243:21 | 43:9 219:7 |
| evidence | 74:4 141:6 | example | expected | eyeball |
| 13:2 14:17 | 176:15 | 226:14 | 129:12 | 66:19 |
| 15:17 16:2 | examination | 227:16 | 244:10 | eyes |
| 16:6 19:2,3 | 6:6 58:8,17 | exclude | experience | 140:15 141:9 |
| 19:6,8,17 | 62:21 63:4 | 100:25 117:8 | 50:16 145:10 | eyesight's |
| 19:18,24 | 63:21 66:9 | exhibit | 196:2 | 61:16 |
| 26:8 30:20 | 66:15,16,18 | 11:12 34:10 | expert | eyewitnesses |
| 31:6 32:17 | 66:24 67:5 | 34:12 53:16 | 29:13 76:16 | 29:10 |
| 32:24 33:3 | 67:6,13,22 | 54:7,18 | 87:11 98:18 | |
| 33:4,6,24 | 68:2,17 | 60:22 64:9 | 105:6 | **F** |
| 36:12 37:24 | 69:3 70:5 | 78:21 79:3 | 117:11 | F |
| 38:2,15,23 | 71:18,25 | 80:22 84:2 | explain | 6:2 145:2,4 |
| 39:12 41:21 | 72:9 74:13 | 84:3 85:15 | 30:7 | 246:2 |
| 42:10,22 | 76:8,19 | 128:5,11 | explained | face |
| 43:5,6,15 | 79:18 83:7 | 136:10 | 9:6,15 | 238:24 |
| 44:2,21 | 84:19,21 | 139:25 | explains | fact |
| 45:16,19,20 | 87:18 92:19 | 147:20 | 195:7 | 13:20 30:9 |
| 45:21 46:8 | 93:3 96:13 | 149:12 | explanation | 30:19,23 |
| 47:17 48:11 | 99:24 | 152:18 | 94:10 196:8 | 32:21 87:12 |
| 49:14 51:2 | 101:20 | 153:13 | 196:22 | 98:17 105:5 |
| 52:4 53:2 | 102:2 | 155:25 | explanations | 129:20 |
| 57:18 58:24 | 106:13 | 156:21 | 115:3 135:13 | 132:15 |
| 59:4 60:19 | 111:21 | 157:4 | exposed | 163:7,13 |
| 62:16,21 | 114:24 | 158:13 | 58:18 | 164:22 |
| 63:4,9,10 | 116:21 | 161:11,23 | expressed | 173:20 |
| 63:18,21,25 | 119:19 | 164:18 | 100:5 | 206:12 |
| 99:7,10 | 120:5 123:7 | 167:2 | extend | 213:5 |
| 101:8 | 128:7 130:4 | 198:18,23 | 107:2,7,10 | 218:22 |
| 107:13,17 | 145:6 219:3 | 200:13,16 | 107:23 | 219:8 |
| 109:24 | examine | 200:19 | 109:11 | 220:18 |
| 117:2 | 63:10 76:21 | 201:7,11 | 117:20 | 226:6 |
| 118:14 | 76:25 98:5 | 203:8 | extending | factor |
| 120:24 | 115:5 | 215:19 | 106:19 | 241:17 |
| 123:5 | 122:24 | 217:3,6 | 121:20 | factors |
| 132:16 | 129:16 | 226:25 | extension | 213:16 |
| 146:15 | 146:13 | 233:21 | 54:19 55:7 | facts |
| 165:6 | examined | 247:12,13 | 55:18 94:17 | 18:8,9,13 |
| 201:14 | 6:4 63:9,15 | 247:14,15 | 106:11 | 40:9 52:17 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 263 of 296 PageID #: 5458

116:24
142:3
227:22
**factual**
115:12
226:12
**factually**
127:19
**fair**
18:3,13
19:16 26:22
28:25 32:5
33:25 37:19
44:25 45:25
68:23 70:23
88:15 90:15
120:16
121:21
122:4
132:12
136:2
140:11
147:24
161:16
172:12
178:16
184:21
185:7 190:9
196:24
200:25
206:15
207:10
208:7,9
209:22
222:11
225:3
230:11
232:6
240:16
241:3
**fairness**
178:19
**fall**
200:3 240:20
**false**
53:3 193:6
**familiar**
18:8,10,12

77:3 97:24
98:2 108:23
109:5,9,16
111:3
126:24
127:4
228:16
**familiarity**
58:7
**familiarized**
119:4,11
**family**
10:13
**far**
22:21 25:14
39:13 67:14
100:12
104:6 114:2
129:23
174:2,14
175:8,8
200:25
210:15
211:6,20,23
**fascia**
49:10 50:7,9
**feel**
18:7 205:13
**feels**
208:3
**feet**
147:13
148:13
**fellow**
44:11 223:18
**felt**
19:2,19,20
23:16 29:12
30:13,20
32:23
**fence**
222:24 224:2
**Ferguson**
4:16 9:2
22:17 52:14
57:13 60:4
61:20 66:4
70:6,19

72:19 74:5
74:19 76:12
78:23 79:4
79:7 89:13
92:4,23
96:15 98:10
100:10
101:13
104:10,18
108:18
109:2 112:2
**Fifth**
153:5
**file**
6:16 7:24
8:16,23
134:21,25
135:4
138:21
139:3,6,9
139:16,21
220:7,10,19
221:6
243:22
**files**
6:20 7:3
8:18 9:6
139:23
**filing**
5:6 113:21
114:20
**fill**
109:22 110:7
**filled**
71:5,6,11
129:3,9
130:23
**filter**
80:7
**final**
27:5,8
**finally**
6:18 20:8
32:13
**find**
60:18 90:25
93:25
120:12

126:16,18
130:25
134:9 136:4
**finder**
30:9,19
**finders**
30:23
**finding**
32:21,22
53:11 73:11
75:13
216:10
218:16
219:4
**findings**
111:9
**finds**
93:2
**Fine**
40:16
**finish**
6:14 176:7
196:15
226:16
**finished**
72:2 96:25
**finishing**
227:9
**firms**
10:24,25
**first**
6:10 11:24
13:4,25
19:20 21:10
21:11,15
26:24 47:15
47:21 53:19
53:22 58:11
58:13,14
66:8,14
67:7,8
94:21
112:22
127:15
129:19
163:19
171:17
176:7

183:13,16
183:21
184:13
199:21
208:15
212:6,8
224:16
234:4 242:4
**five**
25:20 35:15
64:11 81:16
86:22 162:6
162:21
164:18,25
**five-minute**
78:14
**flat**
52:24
**floor**
128:21
153:17
216:18
217:12
237:3 239:8
**fluid**
28:16 29:23
**focus**
92:7 177:7
**focussed**
119:25 138:2
**follow**
56:25 163:5
243:18
**following**
89:22 149:17
150:5 215:4
244:15
**follows**
6:5 145:5
226:3
**force**
5:14
**Ford**
60:17 61:5
88:4
**forensic**
32:17 33:23
**forget**



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL   Document 224-17   Filed 06/02/12   Page 264 of 296 PageID #: 5459

22:2 108:7
135:20
**form**
5:9 38:5
39:5 40:2
40:10 48:21
50:13 63:6
65:9 76:10
76:14 84:24
87:9 89:12
89:21 90:16
92:22 94:4
95:13 100:7
101:14
102:3,20,25
103:14
105:4
106:21
122:5 126:5
130:11
131:16
133:25
146:5
150:24
162:23
165:4 166:2
171:6 174:9
175:17
183:20
196:4
197:19
199:11
206:6 208:6
210:23
211:8
213:20,23
220:14,23
226:23
229:14
233:12
237:22
238:17
240:14
241:13
243:6
**formal**
115:19
**formally**

100:16
**format**
135:5 235:5
235:16,17
**formation**
9:4
**forth**
246:12
**forward**
8:11 42:19
43:11 48:4
145:11,22
214:10
217:19
230:25
**forwarded**
128:23
**found**
19:7 20:4
29:14 32:15
32:19 33:20
36:14 40:24
47:20 89:2
90:14 92:21
110:8 113:7
115:16
118:5,17
121:2,14
125:11
129:10
130:9 131:9
131:14
133:19,24
135:25
141:21
142:7
143:12
144:10
148:2 150:3
150:7,25
151:20
161:24
162:4 163:6
163:6
164:25
172:20
185:2
188:17

191:4 195:3
214:13,14
216:2,16,18
217:7,11,22
218:2
219:17
220:7,9,18
221:11,20
222:12
223:3,4,8,9
224:10,25
228:8 231:7
231:14
232:3,12,22
233:21
234:13,24
236:20,25
237:11,14
237:18,19
237:21
238:3,6,10
238:15,25
239:7,12,22
241:8
**foundation**
47:24 52:18
108:20
**four**
10:21 18:22
35:14 54:23
70:21 71:3
80:18 81:14
81:15,17
84:23 86:20
86:21,23
87:8 88:13
89:4 167:15
167:17
168:12,13
170:23
171:8,10
172:8,22
181:11
204:20
**Fourth**
153:5
**four-door**
158:7 168:7

197:7,15,21
198:2 199:9
**Fraas**
57:24 58:2
59:6,14,19
62:5 63:2
63:20 65:4
65:19 67:14
78:9,18,21
79:10 80:12
80:21 82:22
83:5,19
84:16 85:4
86:4 87:5
88:12 89:19
94:14 95:5
96:10 98:24
99:23
110:14
111:20
114:13
128:24
**frank**
45:14
**FRED**
1:13 2:5
245:15
246:11
247:4
248:22
249:25
250:25
**FREEMAN**
4:18,22 6:23
7:19 8:13
8:24 10:4
22:13 106:5
112:2
132:14
179:10
180:10
182:11,19
183:6
210:10
233:13
245:7
**French**

146:24 147:7
148:5
149:24
150:14,19
151:11
154:14
160:22
185:3
186:13,14
192:12
198:25
201:19
202:9 206:3
206:15,24
207:10,14
207:18,20
208:4,10
209:13,16
209:18,20
210:7
212:16
214:22
215:25
216:10
217:7 219:6
221:12
222:13
223:18
224:13
228:8 231:5
231:19
232:18,20
232:21
234:8
236:19,24
237:7
239:13,23
241:6,11,23
242:6
243:19
244:7
**French's**
150:6 151:7
151:17,18
153:14
155:19
156:17
197:16



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




198:16
201:8
212:13
213:5,8,18
215:20
217:19
239:22
241:23
242:7
243:19
244:8
**friend**
193:12
**friend's**
165:13
**front**
11:18 16:23
42:6 54:13
153:15
201:20,25
202:12,15
205:6
226:25
227:5
**full**
87:17 97:6
114:24
**fully**
29:15
**full-fledged**
67:6
**funny**
129:12
**further**
5:8,12 35:10
172:16
184:5 195:8
212:13
213:14
246:16
**furthest**
104:21
**Fusco**
12:20 20:3
24:15 27:16
29:4,16
32:19 33:21
37:4,22

38:2 39:2
88:6,8,25
89:3,17
90:2,14
91:4,9 98:7
118:17
135:16
140:3,13
141:25
144:9 161:4
162:13
163:21
164:15
165:22
172:14
173:21
174:6 175:3
175:6
182:17
189:5
196:12
210:20
212:17
213:7
216:23
217:4
218:19
221:13
224:8
231:20,24
**Fusco's**
39:17 41:2
89:11 92:2
92:13,20
94:3 95:11
97:16 104:6
106:18
112:20,25
113:8
114:11
115:17
116:5 118:4
121:2
141:21
142:6
147:25
161:24
162:7 163:6

188:4
189:19
195:3
197:18
203:11
213:11
214:13
217:20
218:4,23
219:7,10
221:14
222:12
228:7
233:10

**G**
**Gafa**
1:22 2:9
246:8,25
**garbage**
186:2 187:21
234:17
**gates**
193:17
**gathered**
107:13,16
**general**
50:17 102:10
109:16
110:3
138:11
139:10,13
139:14
145:9 148:2
148:18
161:25
162:3 171:9
182:9 183:4
201:2
211:21
217:24
235:25
236:4,9
241:20
242:3
243:14
**generalized**
52:25

**Generally**
20:25 138:23
**General's**
11:8 143:4
**generated**
19:8,13
244:11
**gentleman**
21:19
**gentleman's**
22:2
**geography**
148:11 152:5
**George**
10:18
**getting**
11:22 31:9
31:18 32:8
53:18 79:16
81:6 86:13
90:19 95:21
95:22 97:18
98:17 106:7
126:22
138:25
141:20
178:25
**GINSBERG**
4:18
**girl**
170:12
**give**
6:12 11:11
14:17 55:11
70:19 84:23
97:21 98:15
98:18
102:10
106:25
109:24
142:24,25
159:14
178:15
180:24
185:24
222:8 226:6
233:16
**given**

41:17 125:22
138:6 163:5
164:22
166:12
177:2
198:15
205:18
210:15
219:16
220:14
230:23
231:17
240:22
244:8
246:14
**Gives**
193:2
**giving**
139:18
217:17
223:6
**glad**
10:15
**go**
7:23 8:11
10:5 19:23
25:20 30:4
31:5 50:2
80:21 81:4
84:2 85:8
85:13,23
86:11 104:7
104:22
114:3
123:12,23
129:6 132:2
138:20
149:4
158:15
167:2 184:4
184:25
193:14
194:9
202:21
215:24
227:5 243:3
243:18
245:9



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

**ESQUIRE**
an Alexander Gallo Company

**goes**
63:24 134:11
**going**
7:8,14 17:11
17:13 32:23
36:10 42:19
50:23 59:13
59:16 79:20
80:8 82:13
94:12 98:12
98:23 106:3
108:8
122:20
128:5
136:18
143:7
156:15
158:12,15
168:17,18
168:23,25
169:5,6,10
169:14
173:6,13
176:12
178:2
179:11,15
181:12
188:12
191:19
193:18
194:23
201:18
216:15
226:18
230:25,25
242:5
**gold**
149:4
**good**
53:6 82:12
135:2
179:21
183:24,25
220:12
**gotten**
6:18 165:15
**grand**
13:2 15:15

49:12 50:6
**Grandinette**
2:6 3:13,18
7:16 8:8
9:17
**grant**
13:13
**gray**
170:17
**great**
9:7,15 61:16
81:8 86:15
**greater**
48:11 93:24
**GREGORY**
4:9
**gross**
66:16,23
67:5 68:17
71:18,25
76:19 84:19
96:13
116:20
**grossly**
68:5
**ground**
188:20
**guess**
9:13 21:23
24:22 55:11
55:12 56:13
68:6 135:17
145:19
146:22
157:25
221:2
230:11
245:3
**guessing**
173:10
**guilt**
19:3 30:8
33:9 47:2
**gut**
48:12
**guy**
59:8 129:20
223:4,15

**guy's**
231:14

**H**

**hair**
20:3 32:19
32:21,24
33:2,19,19
36:13 39:13
39:17,18,23
41:2,23,23
42:11,23
43:8,17,25
44:22 46:3
46:9,10,13
47:18,25
48:15 51:4
52:3,5
53:12 57:17
57:24 58:8
58:12,17,24
59:4 62:16
62:21 63:4
63:10,18,21
64:2 67:6
67:13 68:5
69:3 72:14
72:18,22
73:17 74:18
75:18 76:10
77:13 79:25
80:2,17
82:23,24
83:6,19
87:6 88:7
89:10,17,18
90:2,9,13
90:21 91:4
91:8,14,25
92:13,19,20
93:2,7,12
93:13,15,24
93:25 94:2
95:7,10
97:15 98:6
98:7 99:6,9
99:20 100:5
100:6,7,8,9

100:13,17
100:18,19
100:23,25
101:2,3,4,5
101:6,10,20
102:2,8,18
103:12,22
103:24
104:5,6,8
104:21,23
104:23,25
105:2,13
106:13,17
110:19
111:5,9,13
111:21
112:19,24
113:5,6,25
114:3,9,11
115:15,19
116:4,9,10
116:21
117:5,7
118:4
119:25
120:6 121:2
121:14
130:25
140:15
141:9
**hairs**
62:10 63:3
63:13 64:12
64:20,23
65:6,22
66:9,15,24
66:25 67:23
68:3,15,18
68:21,22
70:3,4,24
71:9,18
72:2,11
73:10,18
74:15 75:12
76:7,20,21
77:21 78:3
78:10 79:18
80:7,13,15

80:18 81:4
84:20,20
85:18 86:11
88:14,16,17
88:21,23,24
89:2,19
90:6,11
92:15 93:16
93:23 94:8
96:4,14,23
97:2,3
116:6,18,21
117:9
118:16
128:20
133:15,16
219:4
**half**
10:23
**halfway**
216:19
217:12
237:3 239:8
**Halstead**
3:6 12:5,14
12:16,22
13:4,5,17
13:24 14:13
15:14,20
17:3,4 19:4
19:18,25
20:18 21:18
21:24 23:24
24:2,6,7
26:3,10
27:22 30:16
32:11 36:12
38:13,15
39:15 41:22
42:9,20
43:10,21
45:12 46:11
48:7 53:20
53:22 57:7
57:22 64:10
138:2,10,13
165:15
182:15



ESQUIRE
an Alexander Gallo Company


Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



222:17
224:8 225:7
233:6
239:20
**Halstead's**
33:9
**hand**
59:13 111:16
246:22
**handling**
55:9
**handwritten**
152:20
158:19
169:24
170:9
**happen**
180:25
**happened**
13:21,22
45:9,9
119:5,19
120:7,13
136:5
142:17
145:12,23
176:18,19
179:24
180:20,21
183:18
**happening**
29:18 142:18
146:7,9
**hard**
211:9
**Harry**
23:3 24:25
25:2 46:21
**Harvey**
15:12
**head**
56:12
**heading**
170:25 172:4
**headquarters**
205:9
**heads**
172:11

**hear**
23:9 79:13
127:22,24
173:6
190:12
191:3,11,19
194:16
199:19
**heard**
22:5 23:10
116:17
118:9 120:3
120:23
141:12
158:4
163:19
168:4,15
170:12
171:2,25
172:22
173:20
174:5 175:3
178:9
182:16
183:17
187:2
189:21
190:7,9,18
192:4
194:15
195:4
196:14,20
206:2 209:9
211:6
213:10
**hearing**
11:13,14,25
23:8 34:24
53:11
141:24
142:5 164:7
167:19
171:20
172:9
177:13
194:25
**hearsay**
65:13

**height**
140:14 141:7
**held**
2:5 22:4
54:15 82:6
82:14
111:24
142:20
202:23
230:22
**help**
22:16 169:22
178:18
182:8
**helpful**
222:21
**Hempstead**
152:7
**Henry**
22:9
**hereinbefore**
246:12
**hereof**
248:15
**hereto**
5:6
**hereunto**
246:21
**hey**
83:21
**he'll**
112:5
**high**
173:5 194:18
**Highway**
167:16,24
173:7 186:9
190:2 192:5
194:11
197:5 240:5
**HOFFMAN**
3:11 136:12
136:23
**Hofstra**
6:12 11:10
**hold**
22:10 137:12

158:16
176:6
**holder**
71:3
**holders**
71:3
**hole**
224:19
**holes**
227:6
**home**
162:7,14,21
163:8,12,14
163:22
164:17,24
165:2,11,25
166:14
192:22
193:4,12,15
194:10
214:22
**homicide**
8:16,23
16:11 43:7
44:16,20
56:14
101:11,18
101:24
102:14
103:11,21
115:8
116:18,25
132:10
133:17
134:7
138:21
139:8,16,22
142:15
157:5
184:16
185:2,5
210:4,5,18
220:7,10,19
220:20
228:6
**honest**
59:7
**Honor**

33:2
**hope**
14:19 203:7
242:24
**Hot**
29:5 135:18
161:5,12,17
162:14,20
163:7,14,22
164:16,23
165:2,24
166:11
**hour**
80:18 135:9
**hours**
60:16 61:12
72:18 74:18
80:17,19
128:8 135:9
147:2,5
170:18
214:18
215:16
**house**
35:17 165:14
193:14
**Hudson**
3:7
**human**
88:9 121:5
121:15
123:13,19
124:10
125:4,11
131:5,10,14
131:20
133:21,23
134:11
**hundred**
64:24 68:18
**hunting**
149:9
**Huntington**
192:25
**hypothesis**
165:19
166:10
196:10



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

hypothesize
40:9
hypothetical
51:11 126:10

**I**

ID
247:11
idea
56:18 62:2
  102:21
  105:16
  106:22
  110:10,11
  111:4 118:8
  231:18
identific...
198:19
  200:14,17
  200:20
  212:13
identified
9:23 26:15
  209:20
identifying
213:8
ignorant
102:14,15
image
178:20
immediate
185:11
immediately
184:25
IMP
184:17,18
  219:23,24
implication
8:10
importance
102:11 146:7
  221:18
  222:9
important
145:25
  211:17
impossible

89:8,16
impound
184:20
  219:25
improper
133:22
inaccurate
148:24
incarcerated
25:24
incident
180:23
  222:14
  232:19
  239:25
include
7:2 12:21
included
116:7
includes
117:24
including
7:4 241:7
inconceiv...
173:12
inconsistent
30:8 39:8,10
  95:8,19
  97:13
incrimina...
23:18 46:25
  47:21
independent
83:3 116:25
indicate
20:7 176:11
  184:11
  192:11
  201:20
  219:23
indicated
46:25 53:10
  136:10
  186:15
  189:12
  192:9
  208:11
  240:4

248:14
indicates
129:21 147:7
  149:13
  150:19
  152:19
  158:25
  159:16
  162:25
  184:5,14
  185:4 209:5
  236:16
  238:14
indicating
17:18 35:20
  131:4 169:8
  186:21
  197:2
  239:21
indication
154:13
  208:21
indicted
13:3
indictment
49:13
indirect
29:8
individual
79:18
induce
121:25
inference
185:7 226:10
inferred
20:6
informal
115:19
informant
21:14
informants
20:24 21:6
  25:15,16
  26:25 27:21
  32:7,10
  46:16 51:8
information
18:16 41:17

73:2 75:2
90:19 95:21
97:18 118:2
121:17,19
121:22,24
124:11
125:22
131:19
134:3,7
141:20
143:12
155:18,24
156:5,13,14
159:13
183:12
211:22
223:6 226:9
228:18
229:10
230:8,17
234:8 236:5
240:9,10
247:6
informed
17:25 18:15
inherently
31:10,19,24
  32:8
initial
137:10,14
  208:20
initials
194:2
inmates
20:10 31:8
  31:17 36:20
innocently
227:13
input
15:4
inquiry
196:3 241:22
  242:6
  244:12
inside
142:9 185:25
  197:9
  204:10

217:8
218:19
223:10
231:7
232:22
237:2 239:4
inside-out
216:17
inspection
227:8
instance
13:25 145:16
insufficient
49:13
insurance
153:17
intelligence
106:2,4
interested
93:13 246:19
interior
205:15
interpreted
200:9
interroga...
44:9
interrupting
40:15
intersection
141:23
  167:16,24
  172:16
  173:8
  177:13
  182:16
  183:18
  187:3
  189:22
  191:10
  192:4
  199:10
  205:25
  207:17
  209:6 240:4
interspersed
78:3
interview
46:5 236:19



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



237:7 243:3
**interviewed**
47:9 136:6
137:16,22
242:17
**interviews**
138:7 242:21
**introducing**
32:24
**investigate**
210:4
**investigated**
184:12
196:11
**investiga...**
19:5 122:16
**investiga...**
26:16 29:2
43:7,14
44:25 53:21
109:25
122:3
137:11,15
137:23
138:9,12
153:8
162:11
184:23
210:16
212:14
213:14
234:23
235:18
243:23
244:7 245:4
**investiga...**
163:16
164:13,22
165:7
166:23
173:19
174:4,18
175:2
189:18
190:15
196:24
210:9,18
211:7

212:14
213:4
218:22
219:8 228:5
**investigator**
43:2,6,16
122:19
157:16
165:20
166:11
243:17
**investiga...**
162:12
**involve**
12:9
**involved**
7:20 13:10
37:25 44:6
53:19,22
54:5 55:12
57:15 60:7
77:11 107:5
107:25
117:14
118:20,25
119:17,18
120:19
123:6
163:25
174:7
**involvement**
44:15 55:5
**Island**
170:15 171:5
177:14
186:25
**issuance**
54:24
**issue**
6:19 9:25
23:11,16
25:13,18,19
31:25 45:10
45:24 47:22
58:21 91:2
94:22 95:2
95:3,4
96:23 105:6

112:4
123:13
144:8
227:19
242:14
243:20
**issues**
8:10 11:23
13:11 56:2
226:12
**item**
203:23 204:2
**items**
128:23

**J**
J
4:4,8,16
**jacket**
141:10
**jail**
20:11 31:8
31:17
**jailhouse**
20:24 21:6
21:13,17,18
25:14,16
26:25 27:9
27:21 32:7
33:7 44:7
46:16 48:6
51:7 52:8
**James**
193:12
**Jean**
1:22 2:9
246:8,25
**jeans**
140:16 141:4
141:13,15
141:16,17
216:16,17
216:18,24
217:8,11
218:2,17
219:4,5,6,7
219:9,10
221:11,14

221:20
222:12,25
223:8,9
224:11,14
224:15
228:7
230:19
231:6,11,14
232:12,22
232:24
233:10
234:13
236:10,13
236:16,16
237:2,14
238:3,6,9
238:16
239:2,4,12
239:14,14
239:16,23
239:25
241:8
243:20
**Jimmy**
34:17,21
**JOB**
1:23
**Joel**
153:4
**John**
1:5 3:6,15
12:5,22,22
13:3,4,6,16
13:17,24,25
15:15 16:19
17:2,10
18:24 19:9
19:14 20:4
30:5 32:20
32:22 33:20
33:25 37:21
53:12 57:7
58:22 88:5
92:16 98:3
129:11
146:24
148:5
153:14

155:19
156:17
160:22
164:14
197:16
198:15
214:22
215:20
216:10
234:8
236:19
239:22
241:11,23
241:23
242:6,6
243:19,19
244:7,8
**Joseph**
205:7
**JS**
1:7,8
**judge**
11:18 16:22
16:23 17:23
18:22 25:22
30:18 31:5
32:6,14,14
32:20 49:12
53:11 88:2
91:12
105:17,20
105:21,22
105:23
106:10
107:2,22
108:5
109:24
110:2
115:15
121:14,18
121:20,25
131:12
133:22
134:15
229:13
230:9
240:22
**judges**



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

105:13,16
106:4
**judgment**
41:8 50:10
94:2 166:19
**judgments**
46:4
**judicial**
181:15
**jump**
235:11
**junk**
223:16,17,19
**juror**
33:8
**jury**
13:2 15:16
33:12 49:12
50:6
**justice**
42:5

**K**
K
6:2 145:4
**keep**
6:17 176:17
176:23
180:20
**Kelly**
235:10,11
**kept**
7:5 90:11
**kerchief**
189:13
**keys**
216:4
**kill**
26:5
**killed·**
26:6 189:6
**killer**
225:2
**kind**
42:3 51:17
61:15
121:24

159:7,11
168:23
195:25
197:24
219:5
241:22
Klein
1:13 2:5 6:1
6:10 7:1,10
8:1,12 9:1
10:1,8 11:1
11:15 12:1
13:1 14:1
15:1 16:1
17:1 18:1
19:1 20:1
21:1 22:1
22:10 23:1
23:13 24:1
25:1 26:1
27:1 28:1
29:1 30:1
31:1 32:1
33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
40:19 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
53:16 54:1
54:17 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1
78:1 79:1

80:1 81:1
82:1 83:1
84:1 85:1
85:13 86:1
87:1 88:1
89:1 90:1
91:1 92:1
93:1 94:1
95:1 96:1,9
97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1
105:1 106:1
107:1 108:1
108:11
109:1 110:1
111:1 112:1
112:10
113:1 114:1
115:1 116:1
117:1 118:1
119:1,3
120:1 121:1
122:1 123:1
124:1 125:1
126:1 127:1
128:1 129:1
130:1 131:1
132:1,17
133:1 134:1
135:1 136:1
137:1 138:1
139:1 140:1
141:1 142:1
143:1 144:1
145:1,8
146:1 147:1
148:1 149:1
150:1 151:1
152:1 153:1
154:1 155:1
156:1 157:1
158:1 159:1
160:1 161:1
162:1 163:1
164:1 165:1
166:1 167:1
168:1 169:1

170:1 171:1
172:1 173:1
174:1 175:1
176:1 177:1
178:1 179:1
180:1,6,19
181:1 182:1
183:1 184:1
185:1 186:1
187:1 188:1
189:1 190:1
191:1 192:1
193:1 194:1
195:1 196:1
197:1 198:1
199:1 200:1
200:24
201:1 202:1
203:1 204:1
205:1 206:1
207:1 208:1
209:1 210:1
211:1 212:1
213:1 214:1
215:1 216:1
217:1 218:1
219:1 220:1
221:1 222:1
223:1 224:1
225:1 226:1
227:1,24
228:1 229:1
230:1 231:1
232:1 233:1
234:1 235:1
236:1 237:1
238:1 239:1
240:1 241:1
242:1 243:1
244:1 245:1
245:15
246:11
247:4
248:22
249:25
250:25
**Klink's**
22:5

**knew**
13:8 16:15
16:16 27:17
47:24 57:24
101:18
103:12
136:11
212:3
232:17
233:25
239:20
240:9,10
**knife**
149:9
**know**
7:8 12:18
18:14 31:22
32:3 34:15
34:23 42:5
43:23,23
44:4,10,10
44:12,15
45:7,15,17
45:21 46:17
46:17,19
49:25 51:16
55:13,16
56:9,10
58:3,20
59:6 63:7
63:14 71:11
71:22 75:20
76:2 77:10
80:2,3 81:8
86:15 87:18
90:12,17,18
90:22,24
94:24 95:25
96:2,3,6
97:9,9,16
97:18,19
102:17,24
103:18,22
104:11
105:17,21
108:10
112:23
113:14



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



115:3
116:11,12
117:9,12,19
119:2
126:18
127:11
129:5,18,19
131:18,22
132:19
152:22
153:10
154:21
155:9 156:9
156:13,24
158:21
161:7,20
163:11
164:23
165:16
168:16
171:15
172:25
173:3,5,10
177:25
178:5,13
179:21,23
184:18
185:11,13
185:15
189:13
191:15,16
191:20
193:23,24
194:5,7
195:14
197:22
199:17
202:2,10
207:4
208:14,15
209:15
211:2,11,24
211:24
213:18,21
219:20,21
219:21
220:4
221:25
222:25

223:5,15,18
224:2,14
225:17
229:18
231:9,22
234:18,19
235:16,17
238:21
239:11
**knowing**
118:21
155:23
183:12
201:3 236:5
**knowledge**
20:7 101:12
104:21
106:12
108:12
111:2,14
112:15
120:18
127:18
129:8
140:25
148:10
152:5 191:7
210:3
220:19
238:15
241:19
**known**
67:3 68:8,22
70:3 73:10
75:12 76:7
88:20,24
89:18 90:2
90:6,9
92:13 93:7
97:3 100:6
100:9,17
101:2,5,11
104:23
105:2
111:23
210:15
**knows**
237:19

238:22
**Kogut**
1:5 3:15
12:10,23
13:4,16,25
14:13 15:15
15:19 16:20
17:10 18:25
19:9,14,17
26:5 30:5
30:11 32:15
34:22,23
38:12,15
39:15 41:22
42:9 53:20
53:24 57:22
58:22 59:25
78:22 79:11
98:3 138:9
164:3,5,14
182:14
188:14
222:17
224:8 225:8
233:5
239:20
248:5
**Kogut's**
26:7 34:16
38:9 54:4
**KOWALSKY**
4:9

**L**
L
3:10 6:2
145:4
192:19,20
**lab**
62:17 110:19
**labelled**
148:5 161:23
164:16,17
164:25
**ladies**
216:16 217:7
217:25
218:16

236:25
238:15
239:2,23
**Lakeview**
147:13
148:12,16
215:2,14
216:2
234:10,12
**Lane**
185:17
205:10
**large**
10:24 158:7
168:8
170:17
197:6,8
198:6
**Larry**
105:18
**Laurie**
216:15
236:25
237:14
**law**
10:17 11:10
13:14 31:10
31:19 42:5
193:9
**Lawrence**
88:2 105:20
**lawyer**
34:17 35:19
103:3
145:11,20
**lawyers**
15:14,19
203:2
**lead**
43:2,6,16
44:16,20
52:4 101:24
132:9
133:17
157:6,8,16
157:19
159:25
164:13

165:7 167:3
168:2 174:4
174:11,18
175:2 179:8
184:8,9,22
189:18
190:15,23
192:6,8
196:24
210:9,18
211:7,17
212:15
**lean**
178:14
**learn**
39:14
**learned**
58:15,19
103:16
**learning**
236:9
**leave**
230:15
**leaves**
224:20
**leaving**
68:14 164:16
164:23
**lecture**
6:12
**led**
28:20 59:2
**Lee**
21:21
**Leff**
105:17,18
**left**
26:11,12
28:11,12
46:14 112:3
135:18
148:21,22
162:14
163:7,13,22
165:11,24
166:11
193:14
194:17



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com



195:5 204:7
204:21
205:3,5
209:10
legal
181:15
229:16
legally
48:3,12,18
49:7,16,21
49:23 50:23
legible
136:14,21
lended
29:17
length
9:3,7,15
72:14,20
74:20
Leo
23:13
letter
34:16,18
35:4 136:13
136:21
letters
204:21
let's
14:23 25:20
26:24 33:18
49:6,11
59:17 62:5
66:3 72:7
80:21 81:25
82:15 83:14
83:16 84:2
85:13,23
86:5 95:22
98:5 100:4
115:5
122:24
123:8,9,12
123:23
124:19
132:25
162:6 167:2
169:21
176:22

184:4
192:18
200:11
210:15
212:10
215:24
239:15
level
50:6 76:4
230:12,14
Levinson
15:12
license
149:14,22
204:19
ligature
189:6
light
30:4 32:9
170:13
172:3
194:12,13
194:15
197:4,6
198:6
199:24
200:4 201:9
lightly
14:21
LIMANI
4:23
limbo
9:14
limited
132:10
limits
101:10,25
102:18
103:12,22
106:12
113:4
line
11:24 19:24
37:16 52:15
56:21 62:6
62:9 64:6
64:10 66:12
67:20 70:20

70:21 72:7
74:11 77:18
78:18 79:15
80:22 82:2
82:16 83:15
86:8 96:17
110:16
123:11
124:19
153:19
154:3,7
226:3 249:2
249:5,8,11
249:14,17
249:20
250:2,5,8
250:11,14
250:17,20
listen
104:17
listened
194:16
listening
226:20
listing
61:2
literally
191:17
litigation
10:25 11:2
99:19
134:18
little
33:18 41:5
93:19
169:22
171:8
178:18
180:3
live
192:22 193:3
LLP
2:6 3:4,13
located
194:24
location
147:12 148:6
150:8,16

151:23
159:14
161:12,23
165:23
167:18
168:13
170:23
171:9,19
178:22
188:20
191:16
193:13
216:10
217:20,21
locations
194:7
long
7:8 28:15
29:23 71:22
81:5 86:12
95:6 170:15
171:5
177:14
186:25
193:18
199:21
longer
17:11
look
35:24 48:10
54:7,23
72:14,19
73:17 74:19
77:18 81:25
84:6 85:25
86:6 87:21
96:3 111:17
117:7,8,10
123:8
124:19
127:9,12
128:17
133:9
136:25
137:4
138:18,20
138:21
145:25

146:14
147:18,19
148:4
149:20
150:8
151:23
152:2
161:10,12
162:6
168:12
171:24
184:5
185:10
201:16
202:3
211:12,19
215:18
225:19
227:3 234:5
235:21
239:15
looked
18:7 36:5
91:12 96:4
134:8 135:4
139:20
185:25
187:14
194:18
197:8
204:10,14
204:17,19
205:12
224:22
225:23
looking
60:9 66:4
72:22 74:22
79:22 80:24
97:12 104:2
116:5,18
132:2
135:10
138:12
141:3
146:23
149:2,11
164:9



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

173:11
179:2
186:13
194:23
202:14
204:8 207:6
207:24,25
208:19
215:25
225:17,20
225:21
230:16,23
234:18
235:7
looks
54:12 151:14
194:2
199:15
203:17
235:19
Lost
153:14
lot
48:11 49:17
52:23 81:19
86:25
119:24
173:11
186:2 197:9
204:11
221:25
224:24
LOUIS
4:22
lower
180:5
lump
46:22
Luncheon
144:19
lying
51:9
Lynbrook
147:14
184:16
185:3 216:5
230:18
231:5,13

232:9,23
234:7,14
236:13
239:11

M

M
3:18 4:22
Magistrate
9:9
main
38:3
mainstay
38:20
mainstays
39:3
major
41:13 173:8
making
14:25 23:8
76:10 79:19
108:2 109:6
115:18
139:2
177:24
241:10
male
27:16
Malverne
154:15
214:21
manner
113:21
map
162:24 173:2
191:14
March
54:4,24 56:7
59:24 60:2
60:15 61:13
61:19,25
62:18 63:5
64:14 77:20
78:10 84:10
87:25 89:9
90:13 92:17
92:17 95:10
118:6,7,18

118:18
120:23
124:9 128:8
129:4
130:10
131:13
marijuana
22:11
mark
200:11
marked
11:12 79:2
136:9
198:19,22
200:14,17
200:20
233:22
marks
170:3
marriage
246:18
Maryland
10:21
match
26:20 27:13
227:7
material
229:11 230:5
241:2
mats
153:18
matter
6:15 25:17
39:20 56:17
59:14 65:14
110:3
119:20
132:7 145:9
153:9
205:24
208:2 210:2
218:15
246:20
248:10
ma'am
62:19 66:17
66:20 72:12
72:16,24

73:4 74:16
74:24 75:4
111:6,11,18
McCarty
55:15
McCormick
15:12
mean
7:18 8:15
14:20 17:4
17:7 20:25
21:9 23:22
31:2,17
46:9 49:6
58:13 71:8
72:19,20
74:19,20
87:17 93:17
99:25 106:5
113:3,6
117:7
122:16
143:18
149:24
157:25
163:18
188:10
198:2
215:12
222:5
227:16
234:20
235:5 242:9
245:4
meaning
24:14 34:9
183:3
means
97:17 143:6
179:6 180:8
180:16
219:25
meant
8:7 12:19
87:16,17
91:18 97:19
98:15
112:23

113:12,14
113:19,19
127:17
medical
112:4
medium
197:7 198:6
199:24
200:4
201:10
member
129:15
members
184:12
memory
82:22 180:16
mental
47:15 178:20
mention
199:19
mentioned
24:24
Merrick
164:2 193:20
194:6
met
205:10
Michael
4:4,8,16
44:12
microscope
66:19 76:9
76:20,22
77:2 79:22
microscopic
58:16 68:21
69:3 70:5
72:9,10
73:9,11,16
73:20 74:13
74:14 75:11
75:14,18
84:21 87:6
92:19 94:15
95:7,23
96:24,25
97:6 99:6,9
99:24



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

101:19
106:13
113:4
microscopist
67:7 76:8
93:2,25
100:5,23,25
103:4 104:7
104:21
113:7,21
114:3,19,21
114:25
115:20
116:11
microscop...
98:8 114:9
129:18
microscopy
77:13 100:13
101:9,10
102:2,19
103:12,23
105:14
midnight
62:17 158:2
Mike
154:15
226:15
mind
27:25 28:3
62:25 79:12
81:23 83:24
84:9 91:12
107:9 108:5
108:17
125:24
155:17
163:17
166:5 172:6
173:14,24
178:20
198:12
207:12
215:22
217:15
232:15,25
240:7
Mineola

1:14 2:7
3:17 4:15
minor
29:7
minute
48:9
minutes
80:3,17
144:17
mischarac...
227:13
misdemeanor
193:8
missing
135:6 140:4
140:14,24
160:24
212:22
217:4
231:24
234:22,25
235:17
misunders...
207:22
Mitchell
152:21,22
153:4,7
158:18
mobile
159:5
moment
100:22
Monday
1:15
month
145:23
193:10
morning
185:14
Morrissey
235:10,11
motion
9:3,5,11,13
9:25 17:25
motions
14:4 35:8,9
motive

181:14
mount
67:2 68:15
76:24 79:21
80:4 81:2
85:18 86:9
mounted
70:4 72:15
80:12 88:23
mounting
71:14,19
76:6 78:2
79:21 84:20
88:13
move
208:25
moved
10:14 48:4
moving
43:11 188:11
230:24
Muller
111:12,15
murder
12:19 24:14
88:6
murdered
37:17 163:10
189:6
223:13
224:9,12

N

N
3:2 4:2 6:2
145:2,2,2,4
247:2
NADJIA
4:23
name
17:16 21:16
22:2 23:12
152:25
157:19
158:20
192:19
215:12
229:3

234:20
235:2,9
247:3
named
21:19 122:9
177:12
178:9
names
22:13
narrow
94:7
Nassau
1:8 4:11
10:11,14
11:4,5
17:12 20:10
56:14 87:25
91:23 248:5
nature
39:11
near
15:16 141:23
177:14,15
205:25
209:6 210:8
216:3
217:21
218:3,20
necessarily
45:4 46:22
49:3 139:7
201:24
225:24
243:24
244:13
need
40:8 176:21
needed
135:13
needs
76:20
NEUFELD
3:4
never
29:14 109:14
117:5 118:9
135:19
141:12

142:17
145:17
163:20
221:16
223:2 242:2
new
1:3,14 2:8
2:10 3:8,8
3:17 4:15
4:21,21
10:13 11:7
13:13 19:7
26:16 35:10
60:17 88:4
141:2
147:14
176:8
192:25
193:9
214:22,24
229:8 246:4
246:9
Newsome
22:19 24:8
25:2 44:13
night
62:14 161:9
161:9 173:9
186:8
205:14
207:7 208:5
208:11
213:6
222:14
228:9 232:6
232:19
Nino
11:19
nonexistent
57:6
nonexpert
117:2
NOOTER
4:18
normal
129:14
north
194:10



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

northbound
170:12
northeast
168:24 169:6
 169:8,14
 170:25
 172:12
Notary
2:9 5:14 6:4
 246:8
note
40:4 52:14
 57:13 60:4
 61:20 70:6
 76:12,13
 89:13 92:23
 96:15 98:10
 100:10
 101:13
 104:9,10
 108:18
 109:2 152:9
noted
6:8 145:3
 245:12
notes
169:24 187:8
 187:12
 188:2 219:9
 220:2 229:5
notice
2:8 167:17
noticed
7:9
notwithst...
65:16
November
135:17
 146:25
 147:9 148:7
 152:11
 160:15,16
 160:16,17
 160:20
 172:18
 173:21
 184:17
 193:11

212:20
214:23
215:24
223:7,13
231:21,25
232:9 234:9
234:11
Ns
204:24
number
25:6 36:13
 36:16,19
 62:10 95:20
 95:22
 114:18
 128:10,13
 135:23
 137:22
 148:5,20
 152:2,5
 161:14,22
 162:6,20,21
 164:16,17
 164:25
 165:23
 167:15,17
 168:12,13
 170:22
 172:8,22,23
 177:3
 184:20
 192:23
 193:2 195:3
 213:15
 215:18
 216:9
numbers
204:20
numerous
80:6 128:20
NY
4:7

     O

O
145:2,2,2
oath
248:17

object
40:4 98:12
 98:25
 132:14
 181:2
 227:25
 228:2
 233:12
objection
28:9 38:5
 39:5 40:2,5
 40:13 48:21
 50:13,14
 52:15 57:13
 60:4 61:20
 63:6 65:9
 70:6 76:12
 76:13 84:24
 87:9 89:12
 89:13,21
 90:16 92:22
 92:24 94:4
 95:13 96:16
 98:11
 100:10
 101:13,14
 102:3,20,25
 103:14
 104:9,10
 105:4,24
 106:21
 108:19
 109:2 114:4
 115:21
 122:5 126:5
 130:11
 131:16
 132:13
 133:25
 146:5
 150:24
 162:23
 165:4 166:2
 171:6 174:9
 175:17
 179:10
 180:10
 182:11,19

182:20
183:6,20
187:4
190:25
196:4
197:19
199:11
206:6,16,25
208:6
210:10,23
211:8
213:20
220:23
226:2,17,19
227:17,21
229:14
233:13
237:22
238:17
240:14
241:13
243:6
objections
5:9 108:8
objective
146:15
 173:14
 205:23
 208:2 209:3
 210:2
 218:15
obligation
8:5 240:13
obligations
228:17,22
 229:24
 230:4
observable
203:15
observed
170:13 171:3
 172:5 175:4
obstruction
42:4
obtained
26:8
obviously
30:18 31:10

31:19 68:16
 161:6 221:4
occupants
170:16
occurred
145:15,17
 153:4
 163:20
 172:18
Ocean
147:13
 148:13,17
 148:21
 154:15
 193:20
 194:9 215:2
 215:15
 234:10
offense
22:12 41:14
offer
248:16
offers
31:23
office
4:12 7:23
 9:22 11:8
 51:20,24
 105:19
 108:14
 112:16
 115:8 133:5
 134:19
 136:23,25
 138:23,24
 143:4,21,25
 166:21
 174:19,24
 239:19
officer
56:13 122:9
 205:10
 220:22
offices
2:6
official
113:21
 114:20



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Case 2:06-cv-06695-JS-SIL    Document 224-17    Filed 06/02/12    Page 276 of 296 PageID #: 5471

276

**oh**
24:5 54:13
68:13
116:21
155:14
176:18
180:20
234:18
235:8 242:2
**okay**
8:8 12:9
51:12 55:2
62:7 64:7
66:13 81:21
82:19 83:2
84:8 86:7
112:12,20
112:21
121:8 124:7
125:13
128:18
137:8,12,17
148:18
151:20,21
158:13
160:7 167:9
168:22
173:23
176:14
184:13
186:5
198:10,11
199:2
209:24
217:14
220:8
232:14
239:17
**old**
2:7 3:16
192:20
**older**
158:7 168:7
**Oldsmobile**
150:17
197:23
205:12
214:24

**once**
67:25 72:8
73:8,15,17
74:12 75:10
108:4
**ones**
23:22,24
**open**
6:18 7:6
80:2,6
194:13
**operated**
50:20 51:14
51:15 88:5
**opine**
65:10 98:24
226:12
**opining**
76:15
**opinion**
45:24 70:7
97:21 98:15
98:18 100:6
100:7 105:6
117:11
127:24
184:19
226:6
233:16
242:19
**opinions**
117:3
**opportunity**
7:22 93:24
**opposed**
29:18 48:2
49:14
171:11
**oppositions**
35:8
**orange**
203:21
**oranges**
225:22
**order**
60:10 76:10
88:2 106:11
117:20

159:21
**ordered**
242:25
**ordinary**
196:3 244:8
**original**
136:13
159:25
220:11
**originally**
160:10
**Ort**
16:23 53:11
**Ort's**
32:14
**outcome**
246:19
**outside**
143:5
**out-of-Court**
65:11
**overall**
202:20
**overcome**
225:12
**overhear**
23:5
**overheard**
210:20
**overpass**
170:15 171:5
171:13
186:10
190:3 197:6
**owned**
149:15 150:2
151:12
**owner**
149:14,23
151:10,11
232:8
234:12
**o'clock**
61:13 185:15
**O'Hanlon**
21:21
**O'Hanlons**

24:25

**P**

**P**
3:2,2 4:2,2
**page**
11:24 18:21
18:21 25:20
54:13,23
56:21 59:17
62:6,9 64:5
64:9 66:3
67:20 70:16
72:7 74:11
77:18,18
78:18,19,24
79:14 80:22
82:2,15
83:14 86:6
110:14,15
110:16
123:10
124:19
149:11
169:22,23
170:21
184:13
235:21
244:15
247:3 249:2
249:5,8,11
249:14,17
249:20
250:2,5,8
250:11,14
250:17,20
**pair**
216:16
236:25
237:14
239:22
**pants**
223:14
234:16
**paper**
160:19
**papers**
9:3,16

**paperwork**
35:7
**paragraph**
13:10 84:7
87:21 104:3
118:19
120:22
121:6 126:3
137:6
**parents**
135:19 193:4
**parked**
158:6 168:6
169:19
170:14
171:4
214:25
215:13
216:3
**parking**
185:22
**part**
27:19 32:16
37:20,23
38:3 60:19
125:7 139:2
139:5,8
195:14
200:7
240:12
241:4,9
**participate**
16:10
**participated**
13:12 14:7
16:7
**participa...**
14:25 15:3
**particular**
30:20 50:16
55:17
229:20
235:13
**particularly**
79:17 102:14
**parties**
5:6 20:6
36:17



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




246:17
partly
194:13
partner
29:18
passenger
149:10
  216:19
  217:13
  224:13
  231:7
  232:23
  237:3 239:8
Pat
15:10,11
pay
154:8
Pazzini
23:6
PD
216:5,15
  234:14
Pearson's
193:12
peer
110:24,25
penal
42:5 193:9
penalties
195:13
penalty
248:7,8
Peninsula
194:10
people
14:24 15:4,5
  24:24 25:23
  26:17 31:9
  31:12,18,21
  31:23 32:7
  41:7,17
  58:18 136:6
  137:22
  138:7
  159:13
  166:20
  180:24
  203:4

224:24
229:2
242:17
percent
185:25
  187:20
period
118:25 136:3
  145:12
  161:3,4
periods
119:23
perjury
195:17 248:7
  248:8
Permount
80:4
person
24:24 49:15
  97:19
  122:23
  130:24
  131:9 132:3
  191:10
personal
242:19
personally
17:5 153:11
  199:12
persons
137:16
  234:22,25
person's
235:18
persuade
30:9,19,23
  33:8 107:22
  109:25
persuasive
40:25 41:21
  43:5 46:2
Petrocco
127:5,18
pets
23:10
phase
72:9 74:13
phone

24:11,13
183:15,19
192:23
193:2 205:7
211:25
photo
203:12 204:3
photograph
198:19,24
  200:3,12,14
  200:17,20
  201:11,13
  203:10
  247:12,13
  247:14,15
photographs
61:2 201:16
photos
201:19
phrase
27:14 74:10
  113:20
  114:19
  166:16
  183:14
phrased
52:11
phrasing
52:12
physical
130:18
  146:15
physically
129:22
picked
7:4,17 8:3
  188:21
  223:16
picking
28:11 164:3
picture
202:6,20
pictures
198:9 201:24
  202:9,14,19
Pierce
185:16
  205:11

pillow
63:16 128:21
pillowcase
62:15
place
10:3 11:17
  62:8 151:24
  159:10
  162:9
  165:14
  178:22
  192:25
placed
223:2
Plaintiff
3:14
Plaintiffs
1:6 3:5 7:21
  8:3 198:18
  200:13,16
  200:19
  220:14
  236:21
  247:11
plan
18:22,23
planned
13:16 17:2
  112:8
planted
39:16,23
  41:2,23
  42:11 43:7
  43:16 44:22
  46:3,8
  47:18,24
  52:5 64:2
  89:17 93:7
  99:20
planting
41:23 93:12
  93:14
plastic
153:16
plate
204:19
plates
149:14,22

150:3,6,7
150:13,21
150:25
151:5,7,9
151:16,17
151:18,20
234:12
plausible
196:22 197:3
please
64:8 74:6
  104:17
  105:15
  152:9 154:7
  176:9,13
  215:11
point
14:12 15:12
  15:13 19:24
  27:11 29:7
  37:12 45:17
  47:10 56:12
  82:11 127:8
  127:9
  131:25
  137:25
  138:4 148:4
  155:17
  162:10
  179:12,16
  179:18
  201:23
  213:3 233:8
pointing
148:14 238:7
  238:8
police
22:7 26:7,16
  32:19 56:15
  61:18,25
  91:23 133:5
  138:12
  139:21
  152:10
  159:11
  166:21
  170:24
  174:20,24



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

185:9 205:8
205:10,23
207:25,25
209:4
219:19,22
220:4,22
221:5
230:19
231:5,13
232:10,23
233:23
234:3,7
236:12
238:25
239:12
244:10
**portions**
126:7
**position**
17:25 18:15
41:10
**positive**
100:15
**possession**
61:25 233:5
**possibili...**
96:8 114:16
123:24
**possibility**
93:6 114:8
123:25
125:23
165:10
166:15,17
166:23
191:9
**possible**
67:2 84:22
85:6,11,12
88:8 92:4
121:5,15
122:6,7
123:19
124:10
125:18,20
133:11,16
133:21,23
134:11

164:19,21
165:11,18
222:9 224:7
224:22
**possibly**
68:7 80:4
81:18 86:24
87:7 125:4
125:11
131:5,10,14
131:20
138:15
158:7 168:7
188:10
**post**
13:11 14:4
26:8 137:15
**poster**
140:3,6,14
217:4
**potential**
94:13
**pounds**
140:15
**practice**
10:20 66:22
72:25 73:24
74:25 96:11
108:21,24
111:7
129:14
130:20
133:3
139:11,13
139:14
146:12
243:25
**practices**
51:24 108:13
110:5
112:16
115:7
121:12
129:8,23
130:8,14
166:20
174:23
210:4

220:20
239:18
244:9
**Precinct**
153:5,5
**preclude**
32:23
**preliminary**
67:22 68:2
68:19 96:2
**preparation**
34:6 135:12
**prepare**
117:14
**prepared**
136:20
152:20
244:14
**presence**
122:25 132:4
132:11
133:11
159:12
**present**
26:21 30:15
42:17 65:12
93:23 99:6
139:23
185:17
214:21
238:2,6
**presentation**
15:17,25
16:5 57:17
**presented**
13:2
**presumably**
73:7 75:7
91:22
**presumptive**
132:4 133:10
**pretrial**
47:12
**pretty**
18:8 24:9
137:5
207:18
**previous**

149:19
**previously**
11:11 79:2
233:22
**prima**
49:10 50:7,9
**prior**
29:3 50:14
76:15 87:11
98:18 119:5
142:13
153:23
154:10
175:15
177:11
182:14
216:15
239:20
**private**
10:20
**probably**
63:24 129:17
129:22
230:14
244:5
**probation**
22:3,11
**problem**
42:24 43:9
108:3 143:2
215:8
225:11,15
225:24
227:11
233:14
**problems**
42:18 47:5
226:10
227:14
**procedure**
13:14 73:23
129:15
**procedures**
129:24 228:5
**proceed**
48:20 49:3
50:11 112:8
**proceeded**

52:9,21 53:4
67:17 70:10
70:13 75:19
**proceeding**
12:8,12 19:5
**proceedings**
112:3
**process**
58:16 71:17
71:23 72:17
74:17 76:3
77:6,9
79:18 81:6
86:13 88:13
109:5,10,17
139:4
**processed**
123:16
**produce**
8:6 35:5
**produced**
8:19 88:7,25
89:10 91:3
91:8,25
97:15 104:5
106:17
112:19
116:9
**producing**
44:6,8
**production**
6:16 7:2,6
**productions**
6:20,24,25
7:3,4
**professor**
184:2,3
**profile**
72:10 74:14
81:3 86:10
**program**
111:2 193:3
**progress**
122:3
**pronounce**
17:16
**proof**
28:17 29:3,8



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com




29:9,12,21
40:25 45:12
46:2 50:5
**proper**
115:11,17
116:3
131:11
134:13
**property**
60:18
**prosecuted**
195:23
**prosecuting**
39:24 41:4
**prosecution**
12:2,15,16
12:19,21
31:23 37:3
43:11 48:20
49:4 107:12
127:14
222:16
225:7,12
**prosecutions**
12:4 53:20
**prosecuti...**
37:10
**prosecutor**
25:17 50:9
50:17
210:19
229:9
**prosecutors**
50:20 51:14
51:16
162:13
228:6
**prosecutor's**
134:21,25
239:19
**provide**
233:6
**provided**
121:17
155:18
**providing**
15:3
**Public**

2:9 5:14 6:4
246:9
**punishable**
193:7
**purported**
227:4
**purpose**
66:23 106:25
107:4,19
133:8
**purposes**
40:10 67:3
106:19
109:21
110:7 127:6
159:12
230:24
**pursuant**
2:8 13:13
193:8
**pursue**
166:24
173:20
174:5,11
175:2
189:18
190:15,23
210:9,19
211:7
218:22
242:14
**pursued**
196:24
**pursuing**
165:20
**put**
6:9 25:10
36:11 80:5
81:8 86:15
90:10,11,21
92:14
112:17
124:8 127:5
131:11
140:13
149:15
150:2,6
151:11,16

151:17,18
155:15
159:20
171:8,14
221:25
223:22
224:12
230:3
**puts**
131:21
**putting**
55:6 93:15
93:22 147:4
170:21
209:25
**p.m**
54:25 60:16
144:19
145:3 147:6
152:11
157:25
160:21,21
214:19
245:12

**Q**

**quarrel**
203:5
**quarrelling**
49:22
**question**
5:10 38:6
40:19 42:14
42:15 45:8
52:11,13
56:21 57:5
59:23 62:10
62:13,20
64:8,12,16
64:18,22
65:17 66:8
66:14,18,21
67:5,21,25
68:9,14
70:18,23
71:5,8,9,13
71:17,21,24
72:8,13,17

72:21,25
73:5,8,15
73:24 74:10
74:12,17,21
74:25 75:5
75:10 77:12
77:20,25
79:16 81:2
81:10,12
82:3,5,12
82:20,21
83:2,9,16
86:9,17
87:13 89:23
90:18 91:7
92:9 94:5
104:14,15
104:17,19
105:7
110:18,23
111:3,7,12
111:16
123:12,15
123:18,23
124:3,7,24
125:3,6,10
126:6,23
135:2
154:23
155:4
156:16
164:20
166:3 176:4
176:18
177:9 181:3
181:5,7,23
182:2
183:25
189:20
190:17
196:16
200:8
207:12,21
208:25
218:11
220:12
226:2 227:6
229:15
235:23,24

237:23
238:18
241:14
**questioned**
68:18 70:24
71:25 73:17
88:16,20,23
89:19 90:10
92:15 93:16
93:23 94:8
97:2 100:6
100:8,18
101:3,4,6
104:23,25
**questioning**
34:11 52:15
76:14 96:18
226:3
**questions**
7:11 40:13
74:6 77:15
108:7,10,11
113:10
114:14
133:2 176:8
176:12,14
176:23
177:7 203:3
226:23
227:12
**quickly**
235:3
**quite**
45:14 48:19
137:21
**quotation**
170:3

**R**

R
3:2 4:2 6:2
145:2,4
246:2
**Radio**
154:4
**Rail**
170:15 171:5
177:14



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

186:25
**railroad**
158:5 161:21
168:5 169:3
169:17
171:3,13
172:4 173:4
178:10
186:10
190:3
193:17
194:19
197:6
204:15,16
204:18
205:17
209:14,22
216:3
**raise**
42:11 176:9
**raised**
27:24 28:3
126:25
189:20
190:17
211:24
212:6
**raising**
108:7
**random**
35:7
**range**
72:21 73:9
73:16 74:21
75:11 161:6
212:25
**rape**
28:22 233:9
**raped**
26:4 37:17
163:9
223:14
224:9,12
**rapists**
26:12
**rational**
33:8,12
**reached**

16:8
**reaction**
48:13
**read**
19:10 20:15
28:23 30:25
31:14 33:11
56:20 57:4
59:15 74:5
85:14,21,24
87:16 95:8
97:9 137:3
137:4
172:13
174:3
187:19
192:18
215:10
234:4 236:6
248:9,11
**reading**
32:13 56:23
59:22 61:9
62:5 74:9
78:23 87:19
96:9 99:25
139:19
153:12
160:5
184:10,11
200:23
209:4 215:6
235:14
**ready**
10:5
**realize**
18:6 20:17
**really**
24:16,17
48:10 62:3
63:7 114:14
119:21
195:15
227:21
**rear**
154:5 185:24
186:2
187:22

216:18
217:12
224:13
227:9 237:3
239:8
**reason**
9:8 43:19
102:16,23
107:15
162:25
196:13,19
212:12
213:13,17
242:11
249:4,7,10
249:13,16
249:19,22
250:4,7,10
250:13,16
250:19,22
**reasonable**
28:21 30:24
33:10 50:5
164:13,21
165:19
166:10,23
173:19
174:4,11,17
174:25
189:17
190:14,22
191:3
196:10,23
203:4 210:9
210:18
211:7
212:14
221:2
226:10
**reasonably**
226:24
**reasons**
112:14
**recall**
15:13 24:21
37:9 47:8
47:11 55:9
57:17 58:13

59:20 80:14
82:25 96:9
97:10 136:4
137:21
138:15
141:13
142:2
145:16,18
155:2
161:16
182:3,3
186:14
201:5
228:24
229:7
**recalled**
160:10
**recapitulate**
227:23
**received**
20:12 25:25
46:24 61:8
61:10
124:11
157:9,13
173:18
205:7 234:8
**recess**
78:15 111:25
144:19
202:24
**recognize**
60:23 157:5
229:23,25
235:2,2,4
**recollect**
141:4 180:6
180:11,12
180:15
**recollection**
23:17 34:3
48:9 50:4
61:17,21
64:19,24
65:5,14
75:22,24
83:4,18
117:23

118:14
122:23
127:10
138:6,11
140:12,19
140:20
141:19
142:4,14
143:15
153:2
154:19
155:5,14,23
156:18
173:4
175:15
177:10,16
178:7,12,21
179:7,22
180:9,22
181:21,24
182:4,10,10
183:5,14,16
183:22
201:2
211:21
217:25
235:15
236:2,5,9
241:20
242:4
243:14
**recommend...**
41:11
**reconstruct**
134:20
**reconvene**
144:18
**record**
6:10 8:21
22:4 27:18
54:15 82:6
82:14
105:25
106:5,6
111:24
132:22
142:20
168:3 169:7



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com


177:25
202:22,23
226:4
230:22
231:2 245:7
246:14
**recovered**
88:14 92:13
93:16 94:3
95:11 120:6
141:24
150:20
166:12
173:17
188:3 189:3
189:19
199:3 204:4
206:2
207:15
209:7,11
210:8
213:12
218:5,21,24
231:20
234:11
**recovers**
232:8
**recovery**
118:6 150:9
150:12,16
151:24
152:11,15
**red**
194:12
**references**
10:3
**referring**
17:22 22:8
22:24 65:13
128:9
151:10
159:24
217:3
**refers**
61:4
**reflect**
106:2 169:7
**reflecting**

243:22
**reflection**
14:17
**reflects**
205:23
**refresh**
61:17 64:18
155:13
**refreshed**
65:15 153:2
**refreshing**
61:21
**registered**
214:24
**registration**
60:17 88:5
**reinvesti...**
16:6,11
58:25 99:10
117:25
118:22
119:18,22
119:24
120:12,20
**relate**
138:9
**related**
138:13
246:17
**relating**
35:9,9
**relationship**
28:19 29:4
**relative**
23:7 146:7
**relevance**
139:18
**relevant**
139:16
**reliability**
26:24
**relying**
139:22
**remain**
8:13
**remained**
11:5

**remember**
11:14 15:18
15:25 16:3
16:4 20:24
21:4 22:9
22:22,23
24:9 35:12
35:13 47:4
47:5 55:25
74:4 80:15
83:21 85:5
85:9,10
96:14,20,21
96:22
111:19,22
118:12
119:22
121:4 122:9
127:7,8
135:8,16,20
135:22
138:17
140:2,5
141:5,10,10
142:18,19
142:21
143:8,10,11
143:14
145:22
153:3,3,7
155:14,21
160:24
162:16,17
164:7
175:22,24
176:2,3,5
179:3,5,20
181:22
182:5,25
183:3,8,11
183:11,12
186:17
188:6,7,8,8
188:21,24
189:4,5,23
204:20
205:4 212:7
214:16

229:3
241:21
242:9,10,16
243:12
**remembered**
132:18
242:18,22
243:5
**remembers**
185:21 186:3
186:8,24
187:12,22
189:25
208:22
**removed**
128:20,22
**removing**
133:13,15
**rented**
23:15
**repeating**
218:10
**report**
68:4,20
73:11,19
75:13
100:16
113:22
114:20
115:19
126:22
128:6 129:9
130:7,8,22
131:4
132:21
146:24
149:12
150:15,18
152:10,20
158:18
167:3
170:10
172:20
173:17
184:22
189:17
192:9
205:23

207:25
208:2,16,20
212:12
213:13
219:16,19
232:21
233:23
234:3
236:12,15
239:21
244:11,14
**reported**
1:22 70:2
118:16
141:22
148:6
160:23
167:18
171:20
186:14
192:4
194:25
197:17
207:14
212:15
213:6
215:20
216:10
218:3 228:9
232:5 234:9
**reporting**
128:20 147:8
169:18
**reports**
128:11 149:2
170:10,24
171:25
192:11
193:7 209:4
209:25
212:22
240:6 241:6
242:12
**represent**
24:4 56:16
147:22
198:24
202:8 203:9



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein                                          August 23, 2010

282

220:3,6
231:4
represent...
161:17
represent...
9:22
represented
24:2 34:23
 35:2 45:18
 167:15
representing
15:14 34:22
 143:25
represents
171:10
request
34:20 40:14
 117:19
requests
35:10 247:6
reread
207:5
reschedule
6:14
research
123:6
reservation
205:14 206:4
reserved
5:10
resist
227:20
respect
18:24 20:23
 23:12,13
 29:14
 107:20
 108:12
respectfully
98:21 177:24
respective
5:5
responding
184:15
response
34:19,20
 35:6 43:19

responsive
176:13
rest
43:24 45:5
 45:22 53:7
 62:14 112:5
 141:4
restate
82:20
Restivo
3:6 12:5,13
 12:17,22
 13:3,6,17
 13:24 14:13
 15:19 17:3
 17:4 19:4
 19:18 20:2
 20:18 21:6
 21:14 22:21
 23:7,8,18
 23:23 26:3
 26:10 27:22
 30:16 32:11
 33:25 36:12
 38:12,16
 39:15 41:22
 42:9,20
 43:10,21
 45:13 46:10
 46:24 48:7
 53:19,23
 57:7,22
 60:3 64:10
 88:6 138:9
 138:14
 165:16
 182:14
 222:16
 224:7 225:7
 233:5
 239:20
Restivo's
20:4 32:20
 32:22 33:9
 33:20 37:3
 37:21 38:18
 53:13 88:15
 88:17 92:16

110:9
129:11
164:4
188:10
 224:9 233:8
Restivo/H...
52:3
restrict
227:22
result
19:8,11,13
 28:18,22
 31:12 68:20
 70:2 76:11
 83:21 84:23
 88:25 96:23
 112:4
resulted
95:24
results
26:23 27:2
 32:9 68:4,6
 83:6 107:21
 184:11
 225:19
 244:12
 245:3
resume
181:18
resumed
145:4
retired
11:8
retrial
13:16 17:19
 20:3 58:21
 78:22 79:6
 79:11 85:16
 86:5 87:5
 98:3 99:16
 99:18 118:2
 120:21
 126:25
 127:16,19
 135:3,13
retried
17:5
retrieved

92:16
retry
16:19 17:13
 18:17
return
31:23 32:4
reveals
227:8
review
7:7 9:20
 11:22 34:6
 35:16 59:20
 83:16 85:3
 110:25
 111:4,5,8
 111:13
 144:13
 160:8
 191:21
 229:13
 240:23
reviewed
34:8,15,15
 35:7 36:3
 80:11 99:9
 113:23
 128:2 144:7
 155:16
 160:22
 175:12
 207:9 216:8
 240:7 241:7
 242:12
reviewer
110:24
reviewing
84:16 140:2
 140:5
ride
165:15
right
6:22 9:24
 10:12 13:7
 13:9 14:23
 15:16 16:24
 19:14 25:5
 41:10,25
 43:3 51:5

51:25 54:9
57:7 62:17
66:16 67:2
68:4 70:10
71:19 72:11
72:15 73:21
74:15 75:15
77:23 80:20
80:25 82:23
83:5,22
84:17 85:7
89:20,25
90:5,7,8
91:15 92:3
92:5 93:10
93:21 97:24
98:3 99:7
99:16,24
101:12
103:13
104:6,8
105:3,11
107:14,18
110:2,19
117:21
119:12,25
120:8,14,21
120:23
121:7
123:12,16
123:20
124:5,13
130:4,4,6
130:10
132:5
133:12
138:16
139:11
141:16
143:17,20
144:3,6
145:14,24
146:11,19
147:2,10
149:6,16
150:11,17
151:8,25
152:3
157:14,17



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

160:8,13
161:5,15,20
162:2,9,15
163:6,15
164:6,7,10
164:11
165:3,21
167:13
169:8,15
171:25
172:20
175:22
176:12
180:8,15,21
183:5 187:9
190:13,16
190:19
191:25
192:9 195:9
195:23
196:5,18
198:8,14
199:25
206:22
211:5,15
212:7 213:6
215:21
216:18,19
217:12,13
218:8
219:17,20
220:15
222:7 223:6
223:11
225:8,9
227:19
231:7,25
232:2,7
236:22
237:2,4
238:16
239:2,16
242:13
243:14
**ring**
212:9
**rings**
175:13

**riskier**
93:14,17,18
93:19
**road**
2:7 3:16
150:10,12
150:20
151:25
152:6 164:2
170:15
171:5
177:14
186:25
193:20
194:6 213:9
216:3
**Rocklyn**
157:24 158:5
160:4
161:20
167:6,12,15
167:22,24
168:4,6,19
168:20,22
168:22
169:3,15
170:14
171:2,4,12
177:14
187:3 192:5
193:19,21
193:22
194:6,11
240:5
**Rockville**
4:7
**role**
181:13
**rolled**
194:15 195:8
**room**
15:16 180:24
226:20
**root**
72:23 73:18
74:22
**rope**
142:8 153:15

186:4
187:23
189:10,12
**roughly**
152:6
**round**
27:8
**rounds**
27:5
**rules**
101:8

**S**
**s**
3:2 4:2
145:2,2,2
**sake**
222:8
**Sam**
22:17
**sample**
67:3 68:8
**Samuel**
22:19 24:8
44:12
**sanction**
181:15
**sander**
23:15,15
**Sanyo**
154:4
**satisfied**
8:5
**Saturday**
173:9
**save**
248:12
**saw**
131:18 132:8
142:7
152:25
159:18
169:18
186:18,22
187:24
193:17
197:6,9

204:10
205:13
206:2,5
207:6,17
208:4,11,12
209:13,16
209:19
211:6 213:9
217:19
223:20
234:15
236:24
237:5 238:4
238:9
**saying**
8:20 12:11
31:4,16
52:21 63:17
63:24 78:9
85:5,9 87:5
91:7 93:9
93:11 95:23
114:8,10
116:2,7,19
120:9
143:10,12
145:17,19
160:14
167:10
168:23
169:4 175:7
176:2 178:4
179:21
180:20
187:19
202:2
203:22
206:3,10,14
206:18,24
207:5,7,16
208:3,10
222:21
223:20
237:18,19
242:20
243:9
**says**
11:24 12:14

60:14 61:7
63:8 74:3
80:12 87:15
87:24 91:2
91:10,20
97:17 104:4
121:5 129:5
130:18
134:11
137:10
145:22
147:11
151:9
153:14,22
157:22
160:19
167:17,21
168:2,14
169:2,11,25
170:7,10
171:12,19
172:15
177:22
185:16
187:11
189:25
191:4
193:22
198:3,3,6
204:10
214:5,17
216:14,25
217:6,7,19
217:23
218:20
234:4
236:13,24
237:5
239:16
**scale**
147:24
**scalp**
68:8
**scene**
60:25 129:13
129:15,20
130:17
159:11



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

178:21
188:4,17
203:10
204:5 210:8
216:23
218:4,20
scenes
159:10
Scheck
3:4,9 6:7,9
7:14 8:9,15
10:5,7 21:8
21:11,20
22:15,20
28:10 38:10
39:9 40:3,6
40:16,17
46:19 48:24
50:18 53:9
53:15,17
54:2,14,16
57:3,14
60:8 61:23
63:11 65:20
66:6,7 70:9
70:21,22
74:7,8
76:23 77:16
77:17 78:13
78:16 79:6
79:9 82:9
83:11 85:2
85:17 87:20
89:15,24
91:5,19
92:8 93:4
94:11 95:17
96:19 99:2
100:20
101:17
102:5,22
103:9,19
104:13
105:10
106:9,23
108:9,16,22
109:4
110:16,17

111:23
112:9
113:13,15
114:6
115:23
116:11
122:8
126:11,21
128:14
130:12
131:24
132:24
133:6,7
134:16
136:15,17
136:24
140:22
144:13
145:7
146:10
151:3 155:3
155:12
156:4,11,23
157:2 163:3
165:8,17
166:8
171:18
174:10,16
174:21
175:23
176:10,16
176:25
177:23
178:3,19
179:4,13
180:4,14
181:6,16
182:12
183:2,9,23
187:10,18
196:7,17
198:5,21
199:14
200:7,11,22
202:25
206:11,19
207:2 208:8
208:24
209:2

210:13
211:4,14
213:25
218:14
221:8
226:15,18
227:18
228:3
229:21
230:16
231:3
233:18,20
237:24
238:23
240:19
241:18
243:8 245:9
245:11
247:4
Scheck's
9:22
school
10:18 11:10
science
28:15 29:23
100:13
101:9
scientific
98:25 105:6
scientist
108:6
scrapings
133:13
scream
141:24 158:4
167:19
168:4,15
170:12
171:2,21,25
172:10,18
172:22
173:21
175:4
177:13
178:9
182:17
187:2 190:8
190:9,12

191:12
194:15,17
194:20
195:2,4
206:2 209:9
213:10
screaming
174:6 210:21
sealing
5:6
Sean
56:9
search
54:12,14
60:25 84:3
88:7 89:9
90:14 91:3
91:7,22
97:15 104:4
106:16
107:21
109:6
112:19
116:8,10
130:2
131:12
searched
91:13
seat
153:15,23
186:3
187:22
197:10,11
204:11,13
216:19
217:13
224:13
231:8
232:23
237:4 239:9
second
22:10 93:12
115:6
135:12
158:16
159:25
169:21,23
170:21

176:6,8
Section
13:14 193:8
sections
62:11 76:9
sedan
197:7,15,21
198:2 199:9
214:24
see
18:23,25
48:11 54:8
54:13,20,21
54:24 55:3
56:2 57:9
57:16 60:13
60:20 61:4
61:5,7
62:23 64:16
65:2 67:10
68:11,25
72:5 75:8
77:5,7 78:6
80:9 81:18
83:12 84:11
86:23 87:2
88:10 90:17
95:16 96:7
110:21
112:10
124:15
125:3,14,17
128:15,19
128:25
130:19
131:3 135:4
135:6
137:19
140:17,18
146:6,9,23
147:15
148:8,25
149:6,12
150:15 .
151:19
152:4,12,16
152:19
153:20,25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein

154:11,16
157:11
158:10,17
158:23
159:13,22
160:2,13,18
160:19
161:12,22
162:7,8
167:3,10,12
167:20,21
168:10
170:5,19
186:11
190:4,5,20
191:23
193:21
194:5,21
197:12
199:4
200:23
201:22,23
201:24
203:13,14
203:15,16
203:19,25
205:20
207:14
208:19
211:12
214:5,7
215:12,19
216:6,12,20
217:9
227:23
236:22
237:5
seeing
154:19 155:2
155:5,14
167:19
171:20
172:10
186:24
194:25
199:8
209:17
236:2

seek
117:15
seen
144:8 154:21
155:10
156:19,25
161:5
173:22
175:9
199:21
207:8
210:14,21
212:17,21
212:24
221:13
240:6
242:16
sees
171:15,17
seize
60:17
seized
60:2,6 130:3
seizure
60:10 88:3
selected
8:22 126:7
selecting
9:19
semen
120:5 122:25
132:3,5,12
133:12
seminal
28:15 29:23
sense
42:21 81:5
86:12 93:21
162:19
sentence
96:7 137:9
separating
173:3
Sepe
4:4,8 21:7
28:9 35:20
38:5 39:5
40:2,7

48:21 50:13
56:22 63:6
65:8 76:13
77:14 82:4
83:9 84:24
87:9 89:12
89:21 90:16
91:16 92:22
94:4 95:13
95:15 98:12
101:14
102:3,20,25
103:14
104:9 105:4
105:24
106:21
108:3
110:15
113:9 114:4
115:21
122:5 126:5
126:15
128:12
130:11
131:16
132:13
133:4,25
134:5
140:20
146:5
150:24
154:25
155:7 156:2
156:8,20
162:23
165:4 166:2
171:6 174:9
174:16
175:17,19
176:6,21
177:21,24
178:17
179:11,15
181:2,8
182:20,23
183:20
187:4
190:25
196:4,15

197:19
199:11
202:21
206:6,8,16
206:22
208:6
210:23
211:8
213:20,23
218:9
220:23
225:25
226:16,22
229:14
233:12
237:22
238:17
240:14
241:13
243:6
sequence
16:4 60:6
145:14
146:2,13
231:17
Sergeant
234:14,15
series
14:3 27:3
Serio
2:6 3:13
serious
24:17,21
42:12 43:9
52:6,19
seriously
196:3
serological
123:6 125:7
serologist
122:20
129:10
130:9 131:8
132:2,11,19
132:20,21
133:8,9,19
134:8
serologists

129:17
Serology
122:18
Services
130:5 185:19
set
22:25 80:5
246:12,22
sets
151:16
seven
66:12 67:20
seventies
197:8
sex
26:4 27:23
30:12,17
37:5,8
122:19
sexual
28:18 29:18
shares
23:12
shattered
202:16
sheet
128:10 157:6
160:2 167:3
168:2 184:8
184:9,22
192:8 248:2
248:15
249:1 250:1
sheet's
192:7
shift
161:9
shiny
204:21,23
shit
24:18
shore
153:6
show
53:15 60:22
128:5 136:9
152:18



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

158:12
198:9 203:8
229:12
230:9,18
**showed**
60:12 201:6
205:11
236:15,18
**showing**
54:17 107:12
122:2
139:25
146:21
198:22
201:6,10
**shown**
126:7 174:13
207:19
226:24
**shows**
206:21
**SIB**
130:4
**side**
147:12
148:12,22
170:14
171:4,12,14
173:7
191:18,20
204:22
205:3 213:9
**sides**
127:11,13
**SIGNATURE**
249:24
250:24
**signed**
5:13 88:2
248:18
**significance**
14:9 106:18
**significant**
42:18 121:13
121:19
218:21
219:8,12
222:3,10

224:3 225:5
225:11
228:13
233:7
242:14
**significa...**
26:9
**silver**
185:23
**similar**
68:14
**similarity**
96:12
**simply**
66:25 230:3
**single**
72:3 97:10
**sir**
10:6 13:19
64:8 71:13
79:24
177:20
205:21
215:23
233:2
**sister**
24:12 193:5
216:15
217:7 223:8
232:21
236:20,25
237:13,16
237:18
238:6,10,15
238:25
239:22
241:12,23
242:7
243:19
244:8
**sit**
20:21 71:10
83:2 100:22
107:11
155:22
175:25
177:17
178:6,11

179:6 180:7
212:5
**sitting**
35:21 143:5
194:14
**situation**
178:18
**SIV**
111:9,21
**six**
11:24 128:10
152:2,5
181:10
216:9
**size**
219:4
**Skates**
29:5 135:18
161:5,13,17
162:14,20
163:7,14,22
164:16,23
165:2,24
166:11
**skinny**
204:23,25
205:3
**slide**
67:2 71:3,3
84:20
**slides**
70:4,24 71:4
71:8,15
73:17 76:7
81:3,5
86:10,11
88:14,24
111:17
**slip**
80:5
**slots**
71:4
**small**
10:25
**Smart**
105:23
**Smiley**
23:3 46:21

47:4,6,9,12
**Smith**
157:20 159:2
159:17
160:2 167:4
167:11
168:14
170:10,25
172:15
173:18,20
174:5 175:3
177:12
178:9 179:8
182:16
183:17
184:15,23
186:22
189:17,22
191:24
192:19,20
194:25
199:8 204:9
210:6,20
211:3
212:12
213:8,13,18
214:10
217:18
232:18
240:3 241:5
241:11,23
242:6
243:18
244:7
**Smith's**
167:18
200:24
**smoking**
194:14 195:9
**sneakers**
140:16
141:11
**snip**
23:10
**snitches**
27:9 48:6
52:8
**sole**

19:24
**solid**
141:17
**somebody**
7:25 17:14
22:7,8 23:8
26:14 28:19
29:3 90:24
118:16
120:24
131:17
185:9
223:13
224:10
**somebody's**
114:2 220:2
**someone's**
194:2
**somewhat**
23:18 28:16
29:24 98:4
109:3
126:17
127:24
141:15
143:9
**soon**
141:20
189:18
**sorry**
21:7 34:10
56:22 65:8
110:15
133:4
143:20
156:20
179:12
207:22
215:8
225:25
235:8
**sort**
35:11 135:15
**sounds**
13:9 75:23
80:20 150:5
151:15
**source**



Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

| | | | | |
|---|---|---|---|---|
| 31:11,20 | 242:3 | 82:15 100:4 | 197:2,3 | **STIPULATIONS** |
| 157:19 | 243:13 | 123:11 | 200:24 | 5:2 |
| **south** | **specifically** | 138:18 | 201:3,5 | **stolen** |
| 147:12 | 26:16 29:20 | 146:21 | 204:8 | 146:25 |
| 148:12,14 | 82:24 | 233:18 | 205:18 | 147:10 |
| 148:16 | 116:23 | **started** | 210:6 | 148:6 149:2 |
| 150:10,20 | 117:4 | 78:9 193:15 | 216:14 | 150:3,7 |
| 151:25 | 119:22 | **starting** | 217:17 | 151:2 |
| 152:6 153:6 | 142:2 | 19:23 79:14 | 232:18 | 160:23 |
| **southwest** | 242:25 | 86:8 123:10 | 237:20 | 184:16 |
| 214:25 | **speculate** | 124:19 | 240:17 | 186:15 |
| 215:13,14 | 40:11,14 | **state** | 241:7 | 197:17 |
| **so-called** | **speculating** | 2:10 11:7,8 | **statements** | 198:16 |
| 27:20 | 26:11 28:13 | 28:15 92:18 | 20:5,9,23 | 207:15,18 |
| **speak** | 50:15 | 95:9 166:5 | 21:5 22:23 | 212:16 |
| 144:4 238:20 | **speculation** | 193:9,10 | 23:2,8 25:4 | 213:6,19 |
| **speakers** | 166:4,4 | 246:4,9 | 25:22 26:6 | 215:3,15,20 |
| 154:5 | **spent** | **stated** | 28:6 34:13 | 221:12,21 |
| **speaking** | 11:6 62:14 | 84:23 157:22 | 36:16,19 | 222:13 |
| 48:4 95:2 | **Spillane** | 160:3 167:5 | 46:23 47:12 | 228:9 232:5 |
| **specific** | 56:9 136:11 | 185:21,24 | 47:15,19,21 | 232:19 |
| 32:21 42:6 | **spot** | 208:22 | 83:20 241:6 | 234:9 |
| 75:21,22,24 | 37:13 | 214:22 | **states** | 239:24 |
| 117:23 | **Sprague** | **statement** | 1:2 159:17 | **stop** |
| 118:14 | 234:14,15 | 18:3 21:19 | 167:4 | 179:12,16 |
| 138:5,14 | **spring** | 22:5,6 23:2 | **stating** | **stopped** |
| 141:19 | 12:2,15 | 23:5,9 | 107:21 | 194:12 |
| 142:4,14,22 | 143:22 | 25:10 26:7 | 115:15 | 205:17 |
| 142:24 | **squad** | 28:4 29:7 | 237:13 | 206:14 |
| 145:16 | 16:12 56:14 | 36:10 52:25 | **Station** | **Stopper** |
| 154:18 | **Ss** | 76:11 104:7 | 192:25 | 192:25 |
| 155:5,18,23 | 246:5 | 104:22 | **step** | **straight** |
| 156:18 | **stage** | 106:16 | 14:16 67:8 | 14:23 |
| 161:19 | 66:9,15 | 112:18,24 | 67:22 68:20 | **stranger** |
| 175:14 | 244:4 | 113:25 | **Stephen** | 21:25 |
| 177:10,16 | **stages** | 114:12 | 21:14 | **strangled** |
| 178:7,23 | 49:24 53:21 | 115:18 | **stereo** | 189:10 |
| 179:7,22 | **stand** | 116:14,16 | 154:5 | **strangula...** |
| 180:9,22 | 33:16 178:2 | 120:21 | **Stewart** | 189:7 |
| 181:21,23 | **standard** | 121:13 | 105:22 | **street** |
| 182:4,10 | 49:8,9 66:22 | 148:23,24 | **sticker** | 3:7 4:14,20 |
| 183:4 201:2 | **standards** | 190:21 | 185:22,23 | 172:11 |
| 202:7 | 213:4,5 | 191:24 | 201:14 | 193:19,21 |
| 211:21 | **start** | 192:15,18 | 202:3 | 193:25 |
| 217:24 | 59:17 62:5,8 | 192:19 | 204:21 | 194:4,6 |
| 235:14,25 | 64:6 66:3 | 193:6 | 205:3 | **strictly** |
| 236:4,9 | 74:9,11 | 195:11,12 | **STIPULATED** | 226:22 |
| 241:20 | | 195:16,21 | 5:4,8,12 | **strike** |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein                                          August 23, 2010

288

| | | | | |
|---|---|---|---|---|
| 162:3 | 120:2 | 170:11 | 32:8 | 228:15 |
| **striped** | **subsequently** | **supervised** | **suspicion** | **taken** |
| 140:16 141:4 | 122:18 | 13:15 17:19 | 138:2 | 14:16 41:16 |
| 141:12,15 | 232:24 | 120:20 | **swear** | 61:3 78:15 |
| 216:23 | 240:2 | **supervising** | 89:8 | 81:15 86:21 |
| 218:2,16 | **substance** | 16:16 99:15 | **switch** | 90:2,9,21 |
| 221:11 | 120:25 | 118:2 | 127:11 | 92:12 95:6 |
| 223:8,9 | **substantial** | **supervision** | 151:14 | 111:25 |
| 224:10 | 42:10 43:15 | 44:18 | **switched** | 130:3 |
| 230:19 | 44:21 46:2 | **supervisor** | 127:13 | 144:19 |
| 231:6,11,14 | 46:8 47:17 | 96:3 111:4,8 | **sworn** | 154:4 |
| 232:12,22 | 52:4,19 | 111:12,15 | 5:15 6:3 | 191:24 |
| 236:10,17 | **subtle** | 123:22 | 56:6 195:12 | 192:12,15 |
| 238:3 | 199:18 | 124:4,12,13 | 195:14,15 | 202:24 |
| 243:20 | **suburban** | 125:19 | 245:17 | 203:10 |
| **stripes** | 10:25 | **supervisors** | 246:13 | 207:14 |
| 216:17 217:8 | **sufficient** | 124:6 | **sympathetic** | 242:13 |
| 237:2,15 | 48:3,12,18 | **supply** | 6:13 | 248:10 |
| 238:16 | 49:2,7,17 | 22:13 | **system** | **talk** |
| 239:2,3,23 | 49:21,23,25 | **support** | 108:14,21,24 | 33:18 110:8 |
| 241:8 | 50:24,25 | 55:19 56:3 | | **talked** |
| **strong** | 51:2 99:6 | 84:14 | **T** | 226:4 |
| 222:5 | 107:13 | 109:23 | | **talking** |
| **stronger** | **SUFFOLK** | 134:14 | **T** | 8:24 9:19,20 |
| 19:2,17 | 246:6 | **supposed** | 145:2 214:22 | 10:2 12:4 |
| 30:13,21 | **suggest** | 31:8 134:4 | 246:2,2 | 20:17 21:22 |
| 228:11 | 17:24 201:15 | **supposedly** | **take** | 21:24 38:17 |
| **strongest** | **suggested** | 223:8,9 | 7:14 16:6 | 40:22 41:15 |
| 222:9 | 144:4 229:8 | **sure** | 54:7 59:16 | 48:14 49:8 |
| **struck** | **suggesting** | 7:15 8:12 | 65:23 78:13 | 49:10 52:16 |
| 102:13 | 224:6 | 9:18 10:2 | 80:3,8,16 | 52:18 58:19 |
| **stuff** | **suggestion** | 15:11 25:21 | 81:25 82:10 | 86:2 91:24 |
| 103:8 197:9 | 93:8 | 40:6 42:2 | 84:19 85:19 | 97:5,6,7 |
| 197:11 | **Suite** | 55:23 64:4 | 86:5 94:21 | 156:12,21 |
| 204:11,13 | 2:7 3:16 | 73:22 92:11 | 100:21 | 167:23 |
| 205:16 | 4:20 | 135:19 | 108:8 | 190:13 |
| 206:5,13 | **Sunrise** | 146:19 | 120:24 | 237:10 |
| **stunk** | 157:24 160:4 | 159:18 | 123:8 | **tall** |
| 53:7 | 167:6,12,16 | 160:14 | 128:17 | 44:11 |
| **subject** | 167:22,24 | 187:20 | 139:15 | **tan** |
| 12:7 181:14 | 168:4,17,19 | 215:11 | 148:4 150:8 | 144:8 158:7 |
| **submission** | 168:21 | 245:11 | 162:13 | 168:7 |
| 94:16 | 173:7 186:9 | **Surely** | 168:12 | 169:18 |
| **submitted** | 187:3 190:2 | 228:20 | 175:11 | 186:24 |
| 9:4 | 192:5 | **surprise** | 193:19 | 197:7,14 |
| **subscribed** | 194:11 | 129:23 | 196:2 | 198:4,7 |
| 5:15 245:17 | 197:5 240:5 | **suspect** | 211:12 | 199:9,15,17 |
| **subsequent** | **Sunrise/R...** | 31:10,19 | 215:18 | 199:24 |
| | | | 227:19,20 | |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

```
  200:4,9        term           95:5,7         90:2,14        thing
  201:10         98:6 104:12    96:10,21       91:4,8,25      12:25 17:21
  209:19         116:8          98:19,25       92:13,20         48:17
tape             227:19         99:23          94:2 95:11       135:15
153:16         terms           100:24         97:16 98:7       141:2 160:7
teaching         42:18 43:10    103:13,23      104:5            195:25
11:9             48:6 53:20     105:14         106:18           215:5
technical        73:11 75:13    113:10         112:20,24        219:22
111:4 192:24     100:3          123:9,10       113:8            245:11
technically      104:22         124:18         114:11         things
9:13 45:11       115:7          125:17,21      115:17         16:16,17
  48:3,18        121:11         126:16         116:4 118:4      78:11 85:10
  49:2 171:7     126:3 129:7    127:22         118:17           102:9
Technician       130:7,13       145:21         121:2            113:16
128:7            138:25         246:14         135:16           119:4,19
tell             179:22       testing          140:3,13         135:4,6
10:8 24:6        189:15         14:8,9 27:6     141:21          146:17
  25:22 95:18    196:23         27:8,11        142:6 144:9      159:8
  97:12          226:22         35:11 125:7    147:25           165:18
  125:10,19      228:4          133:14         161:4,24         203:15
  133:22       testified        208:14        162:7,13         224:25
  136:20         6:4 34:5     tests            163:6,21         243:11,12
  147:19         43:20 65:19    132:4 133:10   164:15         think
  176:19         70:15 71:7   Thank            165:22         6:9 8:9 9:8
  182:24         71:12          184:2 204:18   172:14           9:9,12
  195:22         127:14,15      220:13         173:21           21:15,16,17
  242:9,11       130:23       theft            174:6 175:3      22:14 23:4
  243:13         145:5          153:23         175:6            23:6,7
telling        testify          154:10,14      182:17           24:14 29:17
32:6 47:14       44:2 45:6      156:16         188:4 189:5      29:22 35:2
  56:19 91:12    51:16 91:17  theory           189:19           36:11 42:6
  124:8        testifying       33:5 37:2,10   195:3            44:3 45:11
  134:14         32:2,3 63:2    38:11,18,20    196:12           46:7 47:14
  142:13         63:20 96:22    39:3 163:17    197:17           48:8 60:24
  165:6        testimony        164:22         203:10           80:11 82:21
  178:13         20:13 25:16    173:19         210:20           85:14 93:5
  179:19         26:2 29:13     222:15         212:17           93:11 94:6
  182:5 200:2    31:13,24       225:6          213:7,11         95:18 99:3
  202:13,17      32:7 34:7    Theresa          214:12           102:6,7
  224:3          64:9 65:4      12:20 20:3     216:22           107:24
  238:25         65:21 75:17    24:15 27:16    217:4,20         108:3
  242:5,23       76:6,15        29:4 32:19     218:4,18,23      111:22
ten              77:5,8,13      33:21 37:4     219:6,10         112:22
84:7 87:22       78:21 79:4     37:22,25       221:13,14        113:23
  104:3          79:10 80:12    38:25 39:16    222:12           123:2
  118:19         81:13 84:17    41:2 88:6,8    224:8 228:7      128:12
  120:22         86:3,19        88:25 89:3     231:20,24        134:12
  121:6 126:3    87:10 94:14    89:10,17       233:10           135:2
                                               234:23
```



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

136:10
137:9
142:10
143:16,24
144:4,12
149:3
160:22
161:14
174:12
177:19
181:19
188:11
189:15
197:10
199:13,15
199:16,23
200:3 201:8
204:7,11
213:17
216:8
220:25
221:2,10,15
224:21
226:19
227:24
228:25
233:21
240:16
245:8
**thinking**
143:21 235:8
**thinks**
186:3
**third**
20:6 36:17
137:9
**thorough**
71:24
**thought**
11:21 132:17
139:16
143:24
162:12
**three**
11:6,24
13:13 27:3
36:13,19
81:14,17

84:23 86:20
86:23 87:7
88:13 89:4
133:23
148:5,20
181:10
201:16
204:20
214:9
215:18
217:18
**threw**
230:19 231:6
231:15
232:24
239:12
**thrown**
232:13
233:10
234:16
236:13
240:2
**ticket**
205:5
**tied**
33:24
**time**
5:10 6:8
7:15 9:7
10:3 14:12
18:3,11
20:19 23:20
25:9,15
26:13 29:19
34:13 37:12
39:14 40:20
41:21 42:9
53:24 55:22
55:23 57:8
57:11,12,15
58:8,9 61:7
61:10 63:15
65:25 70:13
79:5,17,24
80:8 84:18
94:19,22
99:5 100:12
101:19

105:14
108:8 110:5
118:25
119:5,23
121:12
127:20
130:8,16
132:20
134:17
135:23,24
136:3
137:25
140:2
141:25
142:25
143:4,7
144:10,15
145:3
152:10,14
154:14
160:22
161:7
163:24
170:17
172:15
173:22
175:13
178:15
181:19
186:18
187:2
189:21
190:7
199:21,21
204:13
211:10
212:16,23
221:13
225:19
228:15
230:23
233:5
245:12
**times**
177:3 179:17
**timing**
29:16
**tip**

72:23 73:18
74:23
**titled**
107:8
**today**
7:12 8:12
20:21 33:16
34:5 36:3
71:10 83:3
100:23
107:11
113:25
155:22
175:25
177:17
178:6,11
179:6 180:7
180:18
205:6 212:5
**told**
28:12 99:3
103:7
123:20,21
123:24
124:3,4,6
127:20
142:10,11
143:16,24
193:5
195:21
217:25
227:24
**tone**
177:4 178:22
180:5
**tools**
23:14 153:15
158:8 168:8
186:3
187:23
197:10
204:12
**top**
61:10 149:5
152:13
160:6
169:23
188:24

198:3,17
199:16,18
200:5,6,7
200:10
219:23
**total**
138:13
**totally**
6:13
**Touch**
201:14
**trace**
62:16
**track**
169:18
**tracks**
158:5 161:21
168:5 169:3
171:3 172:4
173:4
177:14
178:10
186:25
191:15
209:14,22
216:4
**traffic**
186:9 190:2
190:6,21
191:9
194:12
197:4
**train**
193:18
**trained**
103:4
**trains**
186:10 190:3
190:7,22
191:10
**transcript**
11:13 12:12
17:2,22
85:14,16
248:9
**transcripts**
126:8
**transpired**



ESQUIRE
an Alexander Gallo Company


Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

18:24
trestle
204:15,16,18
trial
5:11 13:4,6
13:15 16:23
17:10,15
18:24 19:9
19:14 24:8
25:9 30:15
32:15,25
34:25 35:3
35:10 39:15
41:13,22
50:3 57:20
58:8,9
64:10 65:22
70:13 79:4
87:11 94:19
99:5 100:24
117:25
120:11,19
127:15,21
145:20
175:16
177:12
201:4
225:13
228:16
229:2 233:6
trials
21:10,12
40:21 42:10
98:19
182:15
222:17
239:21
tried
13:4,5,23
17:5,8
19:21 23:20
118:24
119:3 120:3
177:5
trigger
155:17
troublesome
45:10

troubling
52:13
true
13:7 28:5
42:22 70:8
115:4 119:7
119:10,13
120:15
132:6 179:9
179:14
180:19
209:7,8,11
209:12
212:17
217:22
221:24
237:12
246:14
248:12
trustworthy
59:8
truth
195:22
205:19
truthful
28:2 177:5
truthfully
32:2
try
13:17 17:2
22:17,18
107:22
176:13
178:17
181:19
trying
21:16 35:2
38:12 45:8
55:24 119:9
122:17
134:20,24
177:8
178:15
179:19,25
180:2,5,23
184:4 203:5
208:19
223:25

227:21
turn
64:5,8 70:16
72:7 83:14
123:9 124:4
124:17
147:17
169:21
212:10
214:4
turned
18:25 22:7
23:16,17
43:15 47:16
219:3
221:13
223:10
234:13
240:22,24
241:10
turning
18:21 240:11
two
10:23 19:6
20:13,22
25:3 26:11
27:3 31:7
32:25 36:16
82:2 95:22
98:16
114:14,15
114:15,18
117:9 118:5
123:11
126:7 135:9
137:7
144:18
149:11
151:16
154:5
160:13
161:22
165:23
172:23
181:9 195:4
202:19
204:23
two-page

184:7
type
41:15 42:4
45:20
189:13
typed
136:15
typical
35:5
T-shirt
62:16 128:22

U
ultimate
27:2 67:22
226:12
227:6,19
ultimately
213:11
217:22
226:11
unanimously
30:23
unavailable
112:5
uncomfort...
202:15
uncovered
16:14
underlined
154:10
understand
29:15,20
40:7 65:17
78:8 82:17
87:13 94:5
95:4 103:8
105:7 114:7
114:9,17,18
117:17,21
177:6 178:4
179:18
203:6
222:20
223:5
227:18
231:18,22
237:17

understan...
7:20,25
27:10 33:22
35:23 40:20
50:19 51:13
51:18,19
67:13,16
70:12,14
75:18 76:18
99:4 100:3
100:11,19
100:21
101:25
107:10
109:19
113:24
127:23
130:16,21
133:18
163:24
174:23
228:5
248:15
understate
221:16
understating
221:15
understood
93:5 110:5
112:11
113:4
114:21
115:9
unexplained
33:4
unintenti...
227:14
Unit
60:25 129:16
UNITED
1:2
universe
8:4 94:7
University
10:17,18
unknown
70:4
unusual



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

**unusual**
83:4,20
**unwilling**
187:16
**ups**
202:19
**use**
7:16 39:6
  43:25 49:9
  114:24,25
  201:15

**V**

**V**
1:22 2:9
**vacate**
16:8 59:2
**vacated**
14:14 15:21
  15:24 16:19
**vacating**
127:6
**vacuumed**
39:18
**vacuumings**
116:19
**vaguely**
135:8
**VALERIE**
246:8,25
**van**
20:4 32:20
  32:22 33:20
  36:14 37:4
  37:6,11,21
  38:18 39:19
  39:19 43:17
  53:13 60:2
  60:6,11
  61:5,10,18
  61:24 62:11
  63:3 64:13
  64:20 65:7
  66:10,16,25
  68:3,19
  70:25 77:22
  88:3,4,7,15
  88:17 89:2

89:10,18
90:11,15,22
90:23 91:3
91:8,13,13
91:22 92:16
92:21 93:7
93:12,16
94:3 95:12
97:15 99:21
104:4
106:17
107:22
110:9
112:19
115:16
116:8,10
118:5,17
121:3,15,16
122:24
123:4,5,16
123:19
124:10,25
125:4,8
128:8,21,23
129:11,16
130:2,10,24
131:6,9,10
131:15,20
132:2,9
133:9,14,19
133:24
134:9,12
159:5 164:4
188:10,12
188:19
224:9
**van's**
118:5
**variables**
52:23 96:6
  173:11
**variety**
115:2
**various**
26:19 62:11
**vehicle**
116:19
  149:13

150:4,6,7
151:2
153:24
158:7 168:8
170:13,16
171:3 185:2
218:19
**version**
136:16 164:8
**versus**
179:23
  188:17
  229:2
**Vesey**
4:20
**vicinity**
171:10
**victim**
26:4,12,14
  26:18,21
  27:12,23
  28:16,19
  29:24 30:13
  30:18 43:17
  121:16
  140:23
**victim's**
68:16 221:20
**videotaped**
30:10
**view**
184:16 185:2
  192:12
  205:9 213:4
  233:8
**viewed**
141:8 185:6
  185:20
  186:7
**viewing**
185:21
**visit**
7:22
**visiting**
154:14
**visual**
66:16,24
  67:5 68:17

71:18,25
  84:19 97:7
  116:20,20
**visually**
117:10
**voice**
176:9 177:4
**void**
102:9
**Volpe**
36:6 39:16
  39:23 41:2
  41:23 42:10
  43:3,6,20
  44:6 46:3,5
  46:8 47:8
  47:11,16,17
  47:20,24
  56:2,6
  63:25 89:8
  89:25 90:19
  92:12 93:6
  95:8,21
  97:14,17
  102:13,17
  104:12
  106:25
  110:7
  112:17,23
  113:3 114:8
  114:16
  117:12,15
  120:25
  157:14
  167:4
  169:25
  175:16
  177:11
  178:8 179:9
  182:14
  205:8 242:4
  243:2,16
**Volpe's**
44:15 55:18
  82:2,17
  84:6 104:3
  107:20
  120:22

123:8,9
125:20
187:8
**voluntary**
29:17
**vs**
1:7 248:5

**W**

**waived**
5:7
**walking**
162:14 163:8
  163:12,21
  164:2
  165:25
**wall**
191:17
**want**
6:17 22:15
  22:18 23:24
  27:13 39:6
  59:15 78:13
  85:8,25
  110:13
  112:10
  113:14
  155:8
  158:14
  177:6
  183:14
  200:8
  201:16
  208:18
  211:2
  213:22
  215:10
  221:16
  222:24
  224:2
  235:21
  245:9
**wanted**
9:10,17,25
**wanting**
32:4
**warrant**
54:8,12,14



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

54:18,22
84:3 109:7
109:24
124:8 130:2
131:13
Washington
10:17,18,19
10:20
wasn't
8:24 24:20
28:13 30:3
55:12 57:15
60:7 64:23
77:11 107:5
107:6,25
114:18,23
117:13
118:20,25
120:3
129:20
139:10
232:3 244:4
244:5
watch
144:16
way
11:22 26:19
40:14 41:19
52:10 92:10
94:9 98:7
100:23
104:12,16
113:18
118:15,21
138:17
141:2,8
155:15
159:4
163:14
164:17
166:13,16
169:5
172:13
183:15
203:3 207:3
222:20
233:19
246:19

Wayne
122:13
ways
20:22 138:24
181:11
WDW
1:7,8
weak
57:6
wearing
140:23
216:23
week
30:5 32:14
86:17
weeks
81:9,10,16
86:16,22
135:23
170:11
weight
140:14 141:7
welcome
184:3
went
9:7 10:16,17
11:6 69:3
130:24
133:19
139:20
140:4,24
185:5
215:25
231:24
234:6 235:6
237:10
weren't
47:2 101:20
225:2
west
4:14 147:13
148:13
152:7
westbound
164:2
we'll
6:14 40:12
149:4

181:18
198:9
230:18
we're
8:16 9:20
10:2 12:4
48:14 50:15
53:18 54:17
66:4 82:13
91:16 98:16
98:23 108:6
126:22
168:3
179:11,15
183:10
190:13
217:3
230:16,23
230:25
we've
6:18 80:11
147:18
175:12
198:22
207:9
210:14,25
211:22,25
216:8
220:17
240:6,6
241:6
whatnot
159:9
whatsoever
125:7
WHEREOF
246:21
white
140:16
203:20
236:10
wiggle
180:24
wind
227:12
window
168:8 194:13
194:16

195:8 196:8
202:11
205:6
windows
158:8 170:17
197:8
windshield
142:8 154:9
185:22,23
186:16,23
187:13,15
201:12,13
201:20,25
202:10,12
202:16
205:5
208:13,23
227:9
232:20
windshields
227:7
Windsor
162:9
Wing
15:18
wire
189:13
wiretap
24:10,11
55:7,17
56:3 94:17
106:11,19
107:3,7,10
107:14,16
107:23
109:11,23
110:2
121:21
wiretapping
54:19
wiretaps
57:5,12
119:12,15
122:2
wish
193:10
wit
88:3

withdraw
9:11 10:12
77:16 82:8
208:24
withdrawing
214:2
withdrew
214:3
witness
4:5 6:3 10:6
21:2,13
22:9,19
23:12 38:8
39:6 40:8
42:13 44:13
44:14 47:15
47:19,22
48:23 52:16
53:6 56:24
58:5 60:5
61:22 63:7
65:10,18
70:7 76:14
76:18 82:7
84:25 87:11
87:12,15
89:14,22
90:17 91:17
91:18 92:6
92:25 94:6
95:14,16
98:17,19
100:15
101:15
102:4,21
103:3,15
104:11
105:5,9,25
106:7,22
108:4 109:3
114:5
115:22
122:6 126:6
126:13,16
127:15,16
131:17
134:2,6
141:22



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

142:5
145:11,13
145:21,24
146:2,4,6,8
146:14
150:25
155:9 156:7
156:9,24
162:24
165:5 166:7
171:7
175:18,20
177:12
178:9 179:3
179:20
180:11
181:12
182:15,21
182:24
183:7,17,21
187:7,11
195:21
196:2,5
197:20
199:12
205:24
206:7,9,18
206:24
208:3,7
209:5
210:11,24
211:9
213:21
218:3,12,20
220:25
226:5,6,24
227:3,15
229:15,18
238:21
240:3,16
241:15
243:7
245:10
246:11,15
246:21
247:3
**witnesses**
25:6 28:2

44:7 46:4
49:5,18
50:10,22
52:20
147:23
243:4
**woman**
141:24 187:2
191:11
194:15
211:12,15
213:10
223:20
**wondering**
82:10
**wood**
188:24
224:18
**Woodfield**
150:10,12,20
151:25
152:6 216:3
**Woods**
34:17,21
**word**
30:2 39:7
97:10 98:16
113:5
**words**
7:17 114:22
114:25
149:20
196:12
222:2
228:11
230:13
**work**
10:24 77:22
77:25 78:4
81:9,19
86:16,25
111:5,8
117:24
130:18
137:2
138:24
165:11
192:24

**worked**
10:23,25
51:20 58:4
109:20
161:9
**working**
77:23 78:9
108:25
135:8 143:3
210:5
**works**
67:13
**worksheet**
60:25
**worn**
218:18
**wouldn't**
6:23 17:7
41:8 43:25
46:9,12,22
50:24 51:2
52:8,21
53:4 89:7
89:16 93:19
102:15,24
118:21
119:2,9
145:8 153:3
190:24
195:18
219:8,13
222:2,19,21
225:5
227:25
241:16
**woven**
203:20
**wrapped**
153:15 188:9
**write**
243:25
**writing**
193:6
**written**
22:6 34:16
100:16
220:22
**wrong**

8:2 145:13
145:25
148:19
199:20
**wrote**
158:21
219:21
221:6,9

**X**

X
145:23 247:2

**Y**

**yeah**
22:25 28:4
31:3 34:3
58:10,23
59:5,9 60:5
64:4 65:3
71:2 80:15
81:24 120:3
127:3 129:6
131:2
137:12
139:18
141:18
156:13
188:11
192:2
212:20,25
215:11
219:12
228:11
232:11
235:19,20
**years**
10:21,23
11:7 74:4
75:22,25
77:8 97:25
126:19,20
170:4
188:13
192:20
**York**
1:3,14 2:8
2:10 3:8,8

3:17 4:15
4:21,21
10:13 11:7
60:17 88:4
147:14
193:2,10
214:22,25
229:8 246:4
246:10

**0**

0
157:24
**0100**
170:18
**0422**
170:8,9
**06-CV-6695**
1:6
**06-CV-6720**
1:7

**1**

1
20:2
**1:00**
160:21 186:8
**1:17**
144:16
**1:18**
144:19
**10**
124:20
**10th**
135:17
146:25
147:9 148:7
160:16,20
172:18
173:21
212:20
214:23
223:13
231:25
**10:00**
2:3
**10:08**
6:8


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

10:30
158:22
100
4:20 64:15
64:19 65:6
65:22 71:25
10007
4:21
10013
3:8
104
140:15
108
128:5
11
4:6 53:16
11th
152:20 234:9
11/10
159:19
11/14
159:20
11/17
157:23
159:19
160:9 167:5
11/20
157:23 160:9
167:5
11/21
159:19
11:00
186:7
11:05
147:9 160:25
161:3
111
54:7 60:9
112
60:22
114
2:7 3:16
11501
3:17
11501-4820
4:15
11570

4:7
12
30:23
12/11/84
158:22
12/9
160:10,12
1278
64:9
13
62:6 80:23
86:8
13th
11:4,6
1300
61:14
13093
128:12
14
19:24
14th
160:17
15
80:3,17
140:15
192:25
157
54:18
158
157:4 159:25
167:2
169:13
184:5
159
191:22,23
204:8
16
72:7 74:11
160
158:13,17.
159:16 .
161
212:10 214:4
214:5 217:6
220:15
236:21
162

152:18
153:13
155:25
166
146:22,23
156:23
168
139:25 217:3
17th
160:15
193:11
170
147:21
161:11
1700
128:8
171
82:15
172
82:2
177
84:3
1770
78:18 79:14
1793
86:6
18
83:15
18th
152:11
215:24
223:7
231:21
232:9
234:11
1800
61:12,14
128:24
181
247:7
184
136:12,13,25
137:2,4,7
1840
214:18
185
136:10,13,15

136:19
1970
170:16
1971
149:7 205:11
214:23
1975
228:25
1977
60:17 61:5
88:4
1979
11:3,4
198
247:12
1980s
110:19
1984
60:15 87:25
135:18
146:25
147:9 148:2
148:7
152:11,21
157:9
161:25
184:17
191:25
214:6,23
231:21
1985
12:3,16
54:25 60:15
61:13 62:18
64:14 77:21
122:21
126:19
129:4
225:18
1986
13:5,6 40:22
40:24 44:23
48:5 50:20
51:14,18
52:2 59:6
100:4,22
101:11
102:18

103:12
104:20
107:11
108:15,24
109:20
110:6
111:21
112:17
113:24
115:9,15
116:3
122:21
129:8 133:3
133:18
134:21,25
146:13
166:21
173:15
174:25
210:5,16
212:15
213:4
218:22
220:21
225:18
228:6,16
229:25
230:3
239:19
240:10
244:9

2
2:08
145:3
20
71:4 77:19
80:19 82:16
248:19
200
64:22,23
147:13
148:13
247:13,14
247:15
2005
11:18 17:23
78:22 79:7



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com

Fred Klein

August 23, 2010

296

| | | | | |
|---|---|---|---|---|
| 79:8 134:21<br>134:25<br>**2006**<br>11:6 143:8<br>**2009**<br>11:9 126:17<br>143:18,21<br>143:22<br>183:19<br>212:7<br>**2010**<br>1:15 2:2<br>56:20<br>245:18<br>246:22<br>**21**<br>56:21 62:9<br>74:4<br>**21st**<br>56:19 160:16<br>193:11<br>**210.45**<br>193:9<br>**2100**<br>157:24<br>170:18<br>215:16<br>**212**<br>198:18,23<br>201:7<br>226:25<br>247:12<br>**213**<br>200:12,13<br>201:11<br>247:13<br>**2130**<br>147:2,5<br>**214**<br>200:16 203:8<br>247:14<br>**215**<br>200:19<br>201:12<br>247:15<br>**22**<br>59:17 62:6<br>64:6 | **220**<br>83:14<br>**221**<br>83:15<br>**23**<br>1:15 2:2<br>215:3<br>**23rd**<br>234:6<br>**2305**<br>147:2 215:16<br>**24**<br>62:9 126:20<br>**244**<br>123:10<br>**25**<br>75:22,25<br>77:8 78:18<br>79:15 97:25<br>126:19<br>188:13<br>**25th**<br>246:22<br>**259**<br>56:21<br>**26**<br>64:5,6<br>**26th**<br>54:4 59:24<br>60:2,15<br>61:13,19,25<br>62:18 63:5<br>63:22 64:14<br>92:17 128:8<br>129:4<br>130:10<br>**262**<br>235:20,20<br>**27th**<br>78:10 87:25<br>118:6,18<br>**28**<br>170:4 192:20<br>**29th**<br>11:18 17:23<br>54:24 56:7<br>84:10 89:9<br>90:13 92:17 | 95:10 118:7<br>118:18<br>120:23<br>124:9<br>131:13<br><br>**3**<br><br>**3**<br>64:9 110:16<br>**30**<br>4:20 66:3<br>**31**<br>67:20<br>**312604**<br>1:23 248:4<br>**3525**<br>60:17 88:5<br>**39**<br>70:17<br>**396—84**<br>184:17,18<br><br>**4**<br><br>**4**<br>78:21 79:3<br>80:22 85:15<br>185:15<br>**4th**<br>60:15<br>**4:04**<br>54:25<br>**4:25**<br>157:10<br>184:24<br>185:14<br>**4:30**<br>6:11 245:8<br>245:12<br>**4:45**<br>152:11<br>**42**<br>77:18,18<br>**420**<br>2:7 3:16<br>**422**<br>170:7<br>**43** | 77:18<br>**440**<br>13:14<br>**45**<br>144:17<br><br>**5**<br><br>**5th**<br>161:25<br>165:21<br>173:16<br>214:15<br>232:4<br>**5'3**<br>140:14<br>**500**<br>137:16 138:7<br>**5233**<br>214:24<br>**58**<br>214:21<br>**59**<br>26:17<br><br>**6**<br><br>**6**<br>61:13 247:4<br>**6th**<br>214:6,17<br>217:18<br>**6:00**<br>60:16<br>**6:40**<br>214:19<br>**62**<br>233:21<br><br>**7**<br><br>**70**<br>72:7 74:11<br>**71**<br>11:12 34:12<br>124:19<br>**75**<br>170:16<br>**78**<br>110:14,16 | **8**<br>**80**<br>70:24 71:8<br>71:15 73:17<br>76:7 80:12<br>80:15,17<br>88:14,23<br>**84**<br>215:25<br>**85**<br>40:23,25<br>212:3<br>**86**<br>212:3<br>**88**<br>149:2 150:16<br>205:12<br><br>**9**<br><br>**9**<br>157:25<br>**9th**<br>157:9 160:3<br>173:16<br>184:6,15,17<br>184:25<br>191:25<br>210:16<br>**9:00**<br>60:16 160:21<br>**9:30**<br>147:6,8<br>166:12<br>**9:35**<br>160:25 161:3<br>**90**<br>185:25<br>187:20<br>**93**<br>80:22<br>**99**<br>3:7 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.944.9454
Facsimile: 212.557.5972

Suite 4715
One Penn Plaza
New York, NY 10119
www.esquiresolutions.com