UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN KOGUT,<br><br>        Plaintiff,<br><br>   -against-<br><br>THE COUNTY OF NASSAU, POLICE COMMISSIONER DONALD KANE, POLICE COMMISSIONER WILLIAM J. WILLETT (2005), POLICE COMMISSIONER JAMES LAWRENCE, DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE 1985), DETECTIVE DENNIS FARRELL (HEAD OF HOMICIDE 2005), CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT MARTINO, DETECTIVE WAYNE BIRDSALL, DETECTIVE MILTON G. GRUBER, DETECTIVE CHARLES FRAAS, DETECTIVE FRANK SIRIANNI, DETECTIVE HARRY WALTMAN, P.O. MICHAEL CONNAUGHTON, P.O. WILLIAM DIEHL, and JOHN DOES 1-5,<br><br>        Defendants. | 06-CV-6695 (JS)(WDW) |
| JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD,<br><br>        Plaintiffs,<br><br>   -against-<br><br>NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity, HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, | 06-CV-6720(JS)(WDW) |

1

| | |
|---|---|
| in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

### PLAINTIFFS JOHN RESTIVO AND DENNIS HALSTEAD'S RESPONSE TO DEFENDANTS' LOCAL CIVIL RULE 56.1 STATEMENT

1. In 1984 through 1986, the Nassau County Police Department utilized "on the job training" for "homicide-related education." Freeman Declaration, Exhibit Y, 60.

    **Response:** Admit that there was no formal training for homicide detectives. Deny that there was any significant "on the job" training, either. *See* Plaintiffs' Statement of Disputed Facts (abbreviated as P) ¶¶ 45-58.

2. "Theresa Fusco, a sixteen-year-old girl, was last seen alive at approximately 9:47pm on the night of November 10, 1984, leaving her shift at Hot Skates, a local roller-skating rink located at 14 Merrick Road in Lynbrook, New York, shortly after her employment there had been terminated." Freeman Declaration, Exhibit A, ¶40.

    **Response:** Admit.

3. Theresa Fusco was wearing a pair of "blue jeans-striped blue" on November 10, 1984. Freeman Declaration, Exhibit D.

    **Response:** Admit. *See also* PX168 (Missing person's report for Theresa Fusco.)

4. "The next morning, November 11, 1984, Ms. Fusco's mother reported to the Lynbrook Police Department that her daughter was missing. Her disappearance was subsequently investigated by detectives in the NCPD Missing Persons Squad." Id. at ¶41.

    **Response:** Admit.

5. On November 10, 1984, while at his friend's Michael Becht's home, John French parked his car, a gold 1971 Oldsmobile Delta 88, at the following location in Lynbrook, New York: "South

side Lakeview Avenue, 200 feet west of Ocean Avenue." Freeman Declaration, Exhibit G, 11-16.

**Response:** Admit.

6. During the evening of November 10, 1984, John French realized his car had been stolen and he immediately reported the theft to the Lynbrook police. Id.

**Response:** Admit that between 9:30 p.m. and 11:05 p.m, on November 10, 1984, French's car was taken from the intersection of Lakeview and Ocean Avenues in Lynbrook, , which is a straight-shot up Ocean Avenue from Hot Skates of only about half a mile. French immediately reported the car missing to the Lynbrook Police Department at 11:10 p.m. that night. PX166 (stolen/found vehicle report); PX170A(map); PX 266 (Lynbrook police blotter); PX335 (French dep.) 15:10-18, 17:17-18:17, 20:2-23; PX348 (Volpe dep.) 284:5-12; PX354 (map).

7. On November 18, 1984, John French and his sister, Lori French, came across his stolen vehicle on Woodfield Road in Lakeview. Id. at 24 and 30-31.

**Response:** Admit that French found his car on November 18, 1984, on a dirt shoulder off Woodfield Road in Lakeview, slightly more than two miles from where Fusco's body was found. When French found the car, the windshield was cracked and the rearview mirror had been broken off. Additionally, some rope and tools that French kept in the car was missing. Also, the car's license plates had been removed and switched with plates he later learned were from a vehicle belonging to a woman he did not know, Debbie DeCarlo. PX62 (Doherty Missing person's report); PX162 (loss from French car); PX163 (French statement); PX166 (stolen/found vehicle report); PX170A (map); PX335 (French dep.) 24:4-5; 24:10-25:17, 31:17-33:4, 42:11-43:3; PX336 (Gabberty dep.) 17:11-17, 19:13-20:3; PX354 (map).

8. John French and his sister, Lori French, found a pair of blue jeans inside the vehicle, which they brought to the Lynbrook Police Department. Id. at 27.

**Response:** Admit that Lori French found in the back of the car, stuffed part of the way under the passenger's seat, a pair of girl's striped jeans, one leg of which was inside out. Lori, who was 16 at the time, thought the jeans looked like they belonged to someone about the same age as her. PX161 (Mitchell French notes); PX335 (French dep.) 26:17-20; 40:10-14; PX336 (Gabberty dep.) 9:24-10:7; 20:20-21:8; 29:21-30:2; 56:7-57:5.

9. "On December 5, 1984 at approximately 4:12PM, Ms. Fusco's naked and brutalized body was discovered under wooden pallets by two teenage boys near the railroad tracks at Park Place and Rocklyn Avenue in Lynbrook, an area commonly referred to as "the Fort," only a short distance from Hot Skates." Freeman Declaration, Exhibit A, ¶42.

**Response:** Admit.  It was determined that Ms. Fusco had died by ligature strangulation and that there was sperm in her vagina, consistent with a sexual assault. PX56 (autopsy report) at 1st & 11th pages.

10. "A Lynbrook Police Department officer immediately responded to the scene where Ms.

3

Fusco's body was found, and members of the NCPD Crime Scene Unit subsequently arrived at the scene to collect evidence. Defendant Volpe, who had been assigned as lead detective of the investigation, arrived at the scene later that day, along with other members of the NCPD Homicide Squad." Id. at ¶43.

**Response:** Admit. Volpe was the lead detective, took responsibility for disclosing investigative materials to the prosecutor, and testified in both the grand jury and at trial. PX348 (Volpe dep.) 34, 36-40:4, 58-59, 101:4–25; 251:8–254:15; PX 345 (Sirianni dep.) 404:2-25.

11. Sometime after the discovery of Theresa Fusco's body, John French called the Nassau County Police Department regarding his vehicle. Freeman Declaration, Exhibit G, at 35.

**Response:** Admit that on December 6, 1984—the same day Fusco's body was identified—John French called the NCPD to inform them of a possible connection between the theft of his car and Fusco's disappearance, after learning that Fusco had disappeared on November 10, 1984, and, realizing that was the same night that his car had been stolen. PX161 (Mitchell French notes); PX335 (French dep.) 35:11-38:24; 84:15-85:24.

12. On December 6, 1984, John French was interviewed by a Nassau County detective regarding the theft of his vehicle on November 10, 1984 and its subsequent recovery on November 18, 1984. Freeman Declaration, Exhibit C.

**Response:** Admit that at 6:40 p.m. on December 6, 1984, the day that Fusco's body was identified and right after French's call to the NCPD, Detective Dempsey and at least one other NCPD officer came to French's home. French told Dempsey and Det. Mitchell that his car was stolen between 9:30 and 11:05 pm on November 10, 1984, and that when he recovered it a week later, his sister had found a pair of women's blue striped jeans with stripes, inside out and stuffed halfway under the rear of the right passenger seat. PX161 (Mitchell French notes); PX335 (French dep.) 38:10-13, 39:14-40:20, 85:22-24; PX336 (Gabberty dep.) 26:10-12.

13. Lori French was interviewed by Nassau County detectives regarding the jeans that were found in John French's vehicle and was shown sample jeans by the detectives. Freeman Declaration, Exhibit H, 26-29.

**Response:** Admit. After Lori described the jeans to the officers, they asked her "a lot of questions about the jeans." PX336 (Gabberty dep.) 26:2-29:10, 57:23-58:23.

14. On December 6, 1984, John French's 1971 Oldsmobile Delta 88 was processed by the latent fingerprint unit of the Nassau County Police Department for blood, semen and saliva; however, no material evidence was discovered. Freeman Declaration, Exhibit I.

**Response:** Admit that on December 6, 1984, the NCPD also immediately took French's car to NCPD headquarters on a flatbed truck. They also took for analysis pieces of broken plastic and metal from the car. That evening, police photographed the interior and exterior of the car. PX165 (LFU reports); PX169 (first four photos); PX335 (French dep.) 85:25-86:23.

John French, who describes himself as "a little anal when it comes to neatness and things," PX335 at 33:21-34:3, had thoroughly cleaned his vehicle in the week or two after

4

recovering it (and before the NCPD took it in for analysis). PX335 (French dep.) 33:21-35:9; PX336 (Gabberty dep.) 24:15-21.

Police analysts also examined the broken pieces of metal and plastic from the car for fingerprints, but did not find any prints sufficient for comparison. On December 7, NCPD analysts finished processing the car for fingerprints, but, in the wake of John French's thorough cleaning of the car, found no prints sufficient for identification or comparison. The NCPD also examined the vehicle for semen, saliva and blood, and collected three hairs from the vehicle, which were given to Det. Fraas on 12/11/1984. PX1 (Fraas hair report); PX165 (LFU report); PX335 (French dep.) 33:21-35:9, 87:24-88:18; PX336 (Gabberty dep.) 24:15-21; PX345 (Sirianni dep.) 417:18-24.

Around the same time, the NCPD examined for fingerprints several pieces of broken mirrored glass found near the site where Fusco's body was discovered; the rearview mirror on John French's car had been broken. Like the tests of the car, any potential prints that they found on the broken glass were insufficient for identification or comparison. PX165 (LFU report); PX335 (French dep.) 25:7-17.

15. On December 7, 1984, John French was interviewed by Detective Frank Sirianni and signed a statement regarding a rope that was kept in the back seat of his car. Freeman Declaration, Exhibit E.

Response: Admit that Det. Sirianni went to the dirt lot where John French had found his car, to take photographs, and that he found a length of rope on the ground there. Det. Sirianni visited John French at home on December 7, 1984, showed him the length of rope, and French identified it as rope that had been taken from his car. As the NCPD knew already, Fusco died of ligature strangulation, which would have been consistent with the rope such as the rope French identified. PX56 (autopsy report); PX163 (French statement); PX169 (photos, from p.9 on); PX335 (French dep.) 46:21-48:21; PX345 (Sirianni dep.) 413:5-414:1; PX348 (Volpe dep.) 304:19-21.

16. During the course of their investigation, the Nassau County police department prepared a list of people who were in John French's car and took hair samples from the following individuals: Thomas Keena, Mrs. French, Lorie French, Lisa French, Dave Washington and John French. Freeman Declaration, Exhibit F.

Response: Admit.

17. On December 9, 1984 at 4:25AM, Debra Smith contacted the Nassau County Police Department and "stated that between 11/17 & 11/20 she was driving over Sunrise at Rocklyn (between 2100-0001 HRS) & heard a scream. When she got to RR tracks on Rocklyn there was a car parked with no one in it. Auto possibly tan, 4 door older vehicle, large windows, had tools & dark colored blanket in auto. Freeman Declaration, Exhibit J.

Response: Admit that Debra Smith reported the above to Volpe, who took her call. The location at which she described having heard the scream was very close – within a few hundred feet – to where Fusco's body was eventually discovered, and about an eighth of a mile from Hot

Skates, where Fusco was last seen alive. Google map comparing intersection with 79 Rocklyn Avenue, behind which the body was found. The scream came from the general area in which Fusco's body was later discovered. PX158 (Smith lead sheet); PX348 (Volpe dep.) 270:23-271:5, 272:13-273:16; 300:22-301:3.

18. During her conversation with Detective Volpe, Debra Smith also described the vehicle she witnessed as 1970-1975 gray or beige with large windows. Id.

    **Response:** Admit.

19. On December 9, 1984, Debra Smith came to the Homicide office of the Nassau County Police Department in order to view John French's vehicle. Id.

    **Response:** Admit that Volpe called Debra Smith back the same day and asked her to come down to police headquarters to view a vehicle. When she got to Homicide, Det. Pierce and Officer Lane took her to view the French car. PX158 (Smith lead sheet); PX159 (Smith statement); PX165 (LFU reports, reflecting impound number).

20. Upon viewing the vehicle, Debra Smith was "90%" sure it was the vehicle she saw the night she heard the girl scream. Id.

    **Response:** Admit. Debra Smith told police she recognized the broken windshield, the parking sticker on the windshield and the silver AAA sticker on the rear bumper; her only reservation was that the car did not have the blanket and tools in the backseat that she had seen the night of the scream. John French had reported that tools he usually kept in his car had been missing when he recovered it. PX158 (Smith lead sheet); PX159 (Smith statement); PX162 (loss from French car); PX348 (Volpe dep.) 300:17-21.

21. On December 9, 1984, Debra Smith was interviewed by Detective George Pierce and signed a statement regarding the information she had previously relayed to the police department. Freeman Declaration, Exhibit K.

    **Response:** Admit. In that statement she provided additional details, including that the scream had come from her left side and up high; that the car was a large light to medium tan sedan from the early 1970s with a broken windshield, that it had a shiny silver sticker on the left side of the rear bumper; that the plate had four numbers and three letters; and that she had gotten out of her car to look at the other car. PX159 (Smith statement).

22. On December 11, 1984, Debra Smith called the homicide command bus and stated that "she is not sure if she saw the automobile between 11/17 and 11/21 or between 11/10 and 11/14." Freeman Declaration, Exhibit L.

    **Response:** Admit that when Smith originally spoke to Volpe on December 9, 1984, she was not sure of the exact date that she heard the scream and saw the car, but thought that it was a Saturday night the weekend of November 17 to 20, 1984; she later called back to clarify that she may actually have seen the car the previous weekend of November 10 to 14, 1984. PX158 (Smith lead sheet); PX160 (Mitchell notes re Smith).

23.  Debra Smith believes she was a passenger on the Achille Lauro.  Freeman Declaration, Exhibit M, 108-109.

   **Response:**  Admit that she so testified at her 2011 deposition, but deny that there is any evidence in the file that any NCPD officer had any doubts about Debra Smith's credibility in 1984 or found any reason to disbelieve her statement of what she had seen, as there should have been had NCPD officers had such concerns at the time.  Indeed, Volpe testified at his April 6, 2009, deposition that he had viewed Smith's report as a "very interesting" lead. PX348 (Volpe dep.) 305:7-17; PX353 (Fischer rpt.) 14.

24.  Debra Smith believes that she embarked on a rescue mission in Iran and escaped by flying a fighter jet back to the United States.  Id. at 112-113.

   **Response:**  Admit that she so testified at her 2011 deposition, but deny that there is any evidence in the file that any NCPD officer had any doubts about Debra Smith's credibility in 1984 or found any reason to disbelieve her statement of what she had seen, as there should have been had NCPD officers had such concerns at the time.  Indeed, Volpe testified at his April 6, 2009, deposition that he had viewed Smith's report as a "very interesting" lead. PX348 (Volpe dep.) 305:7-17; PX353 (Fischer rpt.) at 14.

25.  Debra Smith was hospitalized for mental illness in 1984 and admits that she was not always compliant in taking her medication while not hospitalized.  Id. at 114.

   **Response:**  Admit that she so testified at her 2011 deposition, but deny that there is any evidence in the file that any NCPD officer had any doubts about Debra Smith's credibility in 1984 or found any reason to disbelieve her statement of what she had seen, as there should have been had NCPD officers had such concerns at the time.  Indeed, Volpe testified at his April 6, 2009, deposition that he had viewed Smith's report as a "very interesting" lead. PX348 (Volpe dep.) 305:7-17; PX353 (Fischer rpt.) at 14.

26.  Judge Edward McCarty, who was the initial District Attorney assigned to the Theresa Fusco homicide, acknowledged the unlikelihood of the accuracy of Debra Smith's recollection of hearing a girl scream and finding the French vehicle on this particular night. Freeman Declaration, Exhibit N at 83-84.

   **Response:**  Admit that he so testified, but deny that this is relevant or admissible evidence. McCarty, who was the first prosecutor assigned to the case, who actually reported to the scene when Fusco's body was discovered and who presented the case against John Kogut to the grand jury, also testified that he never heard about the French car lead during the criminal proceedings. Volpe, who actually spoke to Smith, testified at his April 6, 2009, deposition that he had viewed Smith's report as a "very interesting" lead. ADA Klein acknowledged the potential importance of the French car/striped jeans lead, saying that if the jeans that were in French's car were Fusco's, to call it a big deal for the case would have been an "understate[ment]."  PX338 (Klein dep.) 221:9-222:10; PX339 (McCarty dep.) 13:19-15:15; 69:2-71:7; 84:13-22; 103:19-24; PX348 (Volpe dep.) 305:7-17; PX351 (Weinstein 1/13/12 dep.) 72:18–73:4.

27. During the course of the investigation relating to the murder of Theresa Fusco, Detective Volpe interviewed between five hundred and seven hundred and fifty individuals.  Freeman

7

Declaration, Exhibit B.

**Response:** Admit that Volpe interviewed a number of people during the investigation, deny that we can tell the exact number given his "failure to document and record investigative steps and information obtained during this investigation in an acceptable manner." PX353 (Fischer rpt.) at 49. The French car/striped jeans lead, which was a big, interesting lead that Volpe said "had to be investigated," was the only strong lead in the case until the focus turned to Restivo, Halstead and Kogut. The French car/striped jeans lead was also the only lead for which forensic analysis was attempted before the focus of the investigation turned to Restivo, Halstead and Kogut three months later. No forensic examination ever eliminated the French car as involved in Theresa Fusco's disappearance. Additionally, because the striped jeans had been thrown away before NCPD officers were notified about the connection, no forensic analysis could be done on them and they could not be shown to Fusco's family to identify as Theresa's jeans. Neither Volpe nor any other NCPD officer ever ruled out the possibility that the girls' striped jeans that John and Lori French had found in his car were Fusco's jeans. PX165 (LFU report) 4–8; PX345 (Sirianni dep.) 419:5-14; PX348 (Volpe dep.) 305:7-06:13; PX351 (Weinstein 01/13/12 dep.) 71:17-72:5; PX353 (Fischer rpt.) 5, 9, 12, 52.

28. John Kogut was arrested on March 26, 1985 for the rape and murder of Theresa Fusco. Freeman Declaration, Exhibit A, ¶82.

**Response:** Admit. At that point, the NCPD, by the account of the Homicide Bureau's Commanding Officer, Lt. Sean Spillane, had "a very weak, if nonexist[e]nt case against Halstead and Restivo." PX184 (Spillane commendation letter), PX185 (retyped PX184).

29. Dennis Halstead and John Restivo were arrested on June 20, 1985 for the rape and murder of Theresa Fusco. Id. at ¶96.

**Response:** Admit.

30. Joseph Volpe was responsible for maintaining the Theresa Fusco case file and turning over materials to ADA Fred Klein. Freeman Declaration, Exhibit O, 421-422.

**Response:** Admit. Volpe admitted that he knew in 1986 he had an obligation under *Brady* to disclose exculpatory information to the prosecution; other defendants admitted the same. The Scientific Investigation Bureau kept its own casefile and independently disclosed the results of its tests to the prosecutor. PX330 (Allen dep.) 177:14-178:7; PX345 (Sirianni dep.) 398-99, 404, 419:15–421:3; PX349 (Volpe 12/2/09 dep.) 98:4–102:16.

31. Joseph Volpe's practice was to turn over every document in the case file to the District Attorney's Office; however, he could not specifically recall whether he would have turned over a lead "that didn't pan out" and had nothing to do with John Kogut, John Restivo and Dennis Halstead. Freeman Declaration, Exhibit P, 252-254.

**Response:** Deny that it was Volpe's practice to disclose every document in the case file to the DA's Office, but admit that Volpe never disclosed the French car/striped jeans lead to the prosecution or defense. Judge Edward McCarty, who was a homicide prosecutor in Nassau County for 10 years during this period, said he never received written documentation from the

8

NCPD and had never even seen a lead sheet before his 2010 deposition. PX339 (McCarty dep.) 72:6-74:16.

Volpe admitted he understood his constitutional duty to provide the prosecutor with any *Brady* material, and specifically admitted that the French lead was *Brady* material that he had an obligation to disclose to the prosecutor so it would be provided to the defense. However, neither the prosecution nor defense ever learned of the French car/striped jeans lead. PX296 (Robinson decl.); PX338 (Klein dep.) 154:18-156:14, 211:20-212:9, 488:20-489:9; PX339 (McCarty dep.) 13:19-15:15; 69:2-71:7; 84:13-22; 103:19-24; PX345 (Sirianni dep.) 419:15-421:3; PX349 (Volpe 12/2/09 dep.) 98:4-102:16.

Additionally, after 2002, when NCPD Detectives Michael O'Leary was conducting a "reinvestigation" of the Fusco murder, he noticed in the file reports that a car, which was, unbeknownst to O'Leary, the French car, had been processed for prints and hairs, along with a photo of the car. O'Leary asked Volpe about the significance of the car, but Volpe told him that "the car had nothing to do with the homicide" and that Volpe had "looked into it -- checked it every way." In fact, Volpe knew that it had never been determined that the French car / striped jeans lead was unrelated to the murder of Fusco. PX165 (LFU report); PX334 (Farrell dep.) 21:22-22:9; 68:17-69:16; PX341 (O'Leary dep.) at 17:10-18:3; 84:10-16, 85:5-12; 86:5-15; 87:5-18, 94:7-12.

Other documents that should have been provided to the prosecution were not. For example, Fred Klein testified that he would have asked for a copy of all prior statements by Brian O'Hanlon, who testified at trial, as he was obligated to turn those over as *Rosario* material. Klein never received O'Hanlon's initial statement to police, which contradicted his trial testimony in material respects. PX338 (Klein 9/1/10 dep.) 272:22–273:7; 350:23–351:3.

32. Fred Klein does not believe that the District Attorney's file would mirror the homicide case file; further, he cannot specifically recall being informed of the Debra Smith or John French leads prior to the criminal trials of John Kogut, John Restivo and Dennis Halstead. <u>Freeman Declaration</u>, <u>Exhibit Q</u>, 139, 141-142, 156 and 235-236.

**Response:** Admit that Klein was aware in 1986 of his *Brady* obligations and complied with them. But he was never made aware of the French car/striped jeans information. At his deposition in August and September 2010, Klein had no recollection of ever hearing about the French car lead, or ever hearing the names John French, Lori French, Debbie Smith or Debbie DeCarlo. Mr. Klein acknowledged the potential importance of the lead, saying that if the jeans that were in French's car were Fusco's, to call it a big deal for the case would have been an understatement. He is sure that had he known about the French Car/striped jeans Lead, he would have shared that information with his colleague, Peter Weinstein, during the post-conviction proceedings, but he did not. Additionally, had Klein been aware of the French car lead during the criminal proceedings, he would have stopped, at least, to consider turning it over to the defense, but has no memory of having done so. He is certain that he did not make any attempt to interview John French, his sister Lori, or Debbie Smith, despite their credibility being one of the issues that he would have had to consider had he been aware of the lead and considering turning over evidence related to the lead over to the defense. After Mr. Klein's deposition, he told Mr. Weinstein that his deposition was the first time that he'd heard of the French car lead. PX338

(Klein dep.) 154:18-156:14, 211:20-212:9, 221:9-222:10, 228:15-230:6, 239:18-240:18, 385:2-13, 488:20-489:9, 775:6-21; PX351 (Weinstein 1/13/11 dep.) 56:14-57:7.

33. John Kogut was tried in May 1986 and convicted of all counts. Freeman Declaration, Exhibit A, ¶99.

> **Response:** Admit.

34. John Restivo and Dennis Halstead were tried jointly in October and November 1986. Id. at ¶100.

> **Response:** Admit. The evidence against Restivo and Halstead consisted of (1) ambiguous statements Restivo and Halstead had made to third parties, from which the prosecution argued guilty knowledge could be inferred; (2) direct statements Restivo and Halstead were alleged to have made to inmates in the Nassau County Jail or drug-addicted acquaintances, all of whom received benefits for their testimony; and (3) two hairs microscopically consistent with Theresa Fusco's, which NCPD officers claimed had been found in John Restivo's van nearly five months after the murder, and which Restivo and Halstead argued were actually standards that had been taken from Fusco's body at autopsy and planted among the hairs recovered from the van. PX71 (Dismissal hearing tr.) at 4:14-25, 5:9-6:5.

35. Stephen Dorfman testified for the prosecution in People v. Restivo and Halstead; he was sentenced prior to his testimony and insisted that he had not made a deal with the District Attorney. Freeman Declaration, Exhibit Z, 731, 734 and 743-744.

> **Response:** Admit that Dorfman so testified, and further admit that this testimony was false. *See* P27-32.

36. Brian O'Hanlon testified for the prosecution in People v. Restivo and Halstead; he received a reduction in his sentence in exchange for this testimony. Freeman Declaration, Exhibit BB, 843 and Exhibit CC, 91-92.

> **Response:** Admit, and further admit that this testimony was false. *See* P33-37.

37. Samuel Newsome testified for the prosecution in People v. Restivo and Halstead; he was sentenced prior to his conversation with Dennis Halstead and testified that he was not encouraged by the police to retrieve information from Mr. Halstead. Freeman Declaration, Exhibit AA, 1036-1038.

> **Response:** Admit he so testified, and further admit that this testimony was false. *See* P38-43.

38. Dennis Halstead and John Restivo were convicted of rape and second-degree murder on December 3, 1986. Id. at ¶107.

> **Response:** Admit.

39. Joshua Chisolm was murdered on September 14, 1995 and Robert Moore confessed to his

murder on September 15, 1995.  Freeman Declaration, Exhibits S, T and U.

   **Response:**  Admit that Joshua Chisolm was murdered on September 14, 1995 and that NCPD Detective Joe Volpe elicited a false confession from Robert Moore on September 15, 1995. *See* P71-76.

40. Sammy Jones died on February 21, 1997 as a result of injuries sustained on February 10, 1997 and Shonnard Lee confessed on June 18, 1997, one day after his arrest.  Freeman Declaration, Exhibits V and W.

   **Response:**  Admit that Sammy Jones was assaulted on February 10, 1997 and died of his wounds on February 21, 1997, and that NCPD Detective Robert Dempsey elicited a false confession from Shonnard Lee on June 18, 1997.  *See* P77-87.

41.  Jose Alberto Cruz was murdered on July 31, 2001 and Jose Anibal Martinez confessed on August 2, 2001, one day after his arrest.  Freeman Declaration, Exhibit X.

   **Response:**  Admit that Jose Alberto Cruz was murdered on July 31, 2001 and that NCPD Detectives elicited a false confession from Jose Anibal Martinez on August 2, 2001.  *See* P88.

42. On June 11, 2003, the convictions of John Restivo, Dennis Halstead and John Kogut were vacated.  Freeman Declaration, Exhibit A, ¶110.

   **Response:**   Admit that on the basis of STR DNA testing in 2001 and 2003 that, as defendants admit, accurately and reliably excluded Restivo, Halstead and Kogut as the source of the semen found in Miss Fusco's vaginal cavity at autopsy, the NCDA entered into a stipulation with counsel for Halstead, Restivo and Kogut and moved the Nassau County Court to vacate the convictions of all three men, which the Court granted on June 11, 2003 (D.E. 173). PX352 (RTA4) at ¶¶ 42, 43, 46, 47 & Exs. cited therein.

   Indeed, all the STR testing yielded the same intact DNA profile of a single, unknown male as the source of that semen. As trial prosecutor Fred Klein admitted, the prosecution "had no direct proof, none, that [the semen found in Theresa Fusco's body] was a result of a consensual sexual relationship between the victim and somebody else which led to the . . . reasonable conclusion that it had been a result of the rape," and thus that the unidentified DNA profile belonged to her rapist. Trial prosecutor Klein further admitted that "[t]he DNA exclusion directly contradict[ed] the admissions that [Halstead and Restivo] were supposed to have made to jail inmates and other people getting deals, admissions that obviously in the law are inherently suspect because of the source and the benefits that were accorded to these people as a result of their testimony." The theory of the prosecution had consistently been that Halstead, Restivo and Kogut committed the Fusco rape and murder alone; there was no evidence of any fourth participant in the crime who could have been the source of the DNA.  PX71 (Dismissal hrg. tr.) at 6-7; PX334 (Farrell dep.) 112:2-9; PX341 (O'Leary dep.) 58:2-23; PX352 (RTA4) at ¶ 39 (citing PX69 (Vacatur stip) & PX70 (Weinstein Aff.)).

43.  In December of 2005, John Kogut was re-tried for the rape and murder of Theresa Fusco and was acquitted on all counts in a bench trial before Judge Victor Ort.  Id. at ¶111-112.

11

**Response:**  Admit.  Judge Ort specifically found that he did not believe that Theresa Fusco's hairs had been left in John Restivo's van on or around November 10, 1984, as alleged by the prosecution.  PX359 (12/23/05 Kogut acquittal opinion tr.) at TT3907.

44. "On December 29, 2005, upon the motion of the Nassau County District Attorney's Office, Judge William C. Donnino of the Nassau County Supreme Court dismissed the charges against Mr. Restivo and Mr. Halstead for lack of evidence." Id. at ¶113.

**Response:**  Admit.  In agreeing to dismiss the indictment, trial prosecutor Fred Klein noted that the DNA evidence "basically disprov[es] our theory of the case from the only direct evidence we had, whsch was these jail-house admissions" and that prosecutors had nothing but speculation to explain away the DNA exclusions.  PX71 (Dismissal hrg. tr.) at TT7.

45. On December 19, 2006, John Kogut filed an action for damages against Defendants for "various State and Federal constitutional and civil rights violations...." Freeman Declaration, Exhibit R, "Introductory Statements."

**Response:**  Admit.

46.  On December 21, 2006, John Restivo and Dennis Halstead filed an action for damages against Defendants. Restivo, et al. v. Cty of Nassau, et al., 06 CV 6720 (JS) (WDW), Docket Entry 1, December 21, 2006.

**Response:**  Admit.

47.  On April 23, 2007, John Restivo and Dennis Halstead filed a proposed amended complaint and stipulation, whsch the Court allowed to be filed by its April 24, 2007 order. Restivo, et al. v. Cty of Nassau, et al., 06 CV 6720 (JS) (WDW), Docket Entry 33, April 23, 2007.

**Response:**  Admit.

48. On March 31, 2009, the Court consolidated the plaintiffs' actions under Kogut v. County of Nassau. Restivo, et al. v. Cty of Nassau, et al., 06 CV 6720 (JS) (WDW), Docket Entry 100, March 31, 2009.

**Response:**  Admit.

Dated: July 2, 2012
      New York, NY

Respectfully submitted,

   /s/ Debi Cornwall
Barry C. Scheck
Debi Cornwall
Anna Benvenutti Hoffmann
Sonam Henderson
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson St., 8th Floor
New York, NY 10013

**Attorneys for plaintiffs**
**John Restivo and Dennis Halstead**

13

**Certificate of Service**

       I hereby certify that a true and accurate copy of Plaintiffs John Restivo and Dennis Halstead's Response to Defendants' Local Civil Rule 56.1 Statement was served by ECF and UPS on July 2, 2012, upon the following:

| | |
|---|---|
| Michael Ferguson, Esq.<br>Office of the County Attorney<br>Ralph G. Caso Executive & Legislative Building<br>1 West Street<br>Mineola, New York 11501-4820<br>mferguson@nassaucountyny.gov | Paul Casteleiro, Esq.<br>200 Washington Street<br>5th Floor<br>Hoboken, New Jersey 07030<br>pcasteleiro@aol.com |
| Louis Freeman, Esq.<br>Nadjia Limani, Esq.<br>Freeman, Nooter & Ginsberg<br>75 Maiden Lane, Suite 503<br>New York, New York 10038<br>freemefree@aol.com<br>nlimani@aol.com | Anthony M. Grandinette<br>Grandinette & Serio, LLP<br>114 Old Country Rd., Suite 420<br>Mineola, New York 11501<br>Grandinetteesq@aol.com |

                                                        /s/ Sophie Glickstein
                                                          Sophie Glickstein
                                                          Paralegal