PX 296

### Declaration of Theodore W. Robinson

I, Theodore W. Robinson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true:

1.  I am an attorney duly licensed to practice in the State of New York. I have been a practicing criminal defense trial attorney in Nassau County, New York, since 1974.

2.  I defended John Restivo against charges related to the 1984 rape and murder of Theresa Fusco. I represented Mr. Restivo from the time he first became a suspect in March of 1985, through his indictment later that year, and his 1986 trial and conviction. I continued to represent Mr. Restivo in post-conviction proceedings into 2001 and thereafter. I also represented Mr. Restivo's co-defendant, Dennis Halstead, in connection with these charges in 1985 before he retained Joseph Famighetti.

3.  I have always believed that John Restivo was innocent of the Fusco rape and murder.

4.  I first received a telephone call from John Restivo regarding the Fusco case on the evening of March 6, 1985. Prior to that time, my father, Phillip F. Robinson (who was also my law partner) and I had represented members of the Restivo family on a variety of relatively minor legal matters, including real estate transactions.

5.  On the evening of March 6, 1985, John Restivo told me that he had just been released from custody after having been detained overnight at the police station and interrogated about Ms. Fusco's disappearance and murder, and asked to set up a time to see me. We made an appointment for the following day, March 7.

6.  At that meeting I debriefed him on the police interrogation. Mr. Restivo informed me that he had been interrogated for approximately twenty-four hours by Nassau County Police Department Detectives Robert Dempsey, Joseph Volpe and Jack Sharkey. He further informed me that he was physically assaulted by the detectives interviewing him and showed me contusions on his face and neck that he said he had received at the hands of the police, which I photographed. (Black and white copies of the color photographs I took are attached to this declaration as Exhibit A.) Mr. Restivo also told me he had not been allowed to make a phone call to his wife, family or attorney, and been told that he would not be permitted to leave police headquarters until he gave a statement regarding the Fusco murder.

7.  After speaking to Mr. Restivo, I called the NCPD Homicide Squad to enter appearances for both John Restivo and Dennis Halstead and to complain about this mistreatment. I asked for Detective Dempsey; Detective Dempsey then came to the phone and identified himself and asked who was calling. When I said my name and told him I was the attorney for John Restivo and Dennis Halstead, Detective Dempsey loudly and abruptly informed me he did not know who I was and did not wish to talk to me and hung up on me. I called the Homicide Squad back and asked to speak to the Lieutenant in charge. Lieutenant Spillane identified himself and I

1



EXHIBIT

296

HL  1/13/12

PENGAD 800-631-6989

again informed him that I represented both John Restivo and Dennis Halstead.
Lieutenant Spillane immediately became abusive and surly, and I was forced to
terminate the phone call without formally noting my appearance.

8.  As a result of the abusive behavior by both Detective Dempsey and Lieutenant
Spillane, I was unable to follow the normal procedure of notifying the NCPD of an
attorney/client relationship via telephone. Instead, I had to send an associate to
Police Headquarters to deliver notices of appearance for both John Restivo and
Dennis Halstead. (Copies of these notices are attached as Exhibit B). It was my
belief that both Dempsey and Spillane purposely contrived to prevent me from
notifying them of the attorney/client relationship in the customary manner (that is, by
telephone) in an attempt to delay formal notice of an attorney appearance for Mr.
Restivo and Mr. Halstead.

9.  Beginning in March, 1985, I repeatedly wrote to authorities including Nassau County
Police Commissioner Samuel Rozzi to complain that NCPD Homicide Detectives in
the Fusco murder investigation were engaged in a pattern and practice of abusive
tactics, including not only the misconduct detailed above, but also additional
harassment of John Restivo and Dennis Halstead, and harassment of "potential
witnesses," including threats of violence, prolonged detention without being
permitted a phone call, and coercing statements from these "potential witnesses."
(Copies of several of the letters I sent are attached as Exhibit C.) To my knowledge,
no real investigation of these allegations ever took place. Although I repeatedly
volunteered to cooperate with any investigation into the NCPD Homicide Squad's
abusive tactics and to make Mr. Restivo and Mr. Halstead available for this purpose,
neither I, nor, to my knowledge, Mr. Restivo or Mr. Halstead, were ever contacted as
part of any investigation into these allegations of misconduct.

10. I recall that during Mr. Restivo's cross-examination at trial, he was asked about
telephone records reflecting a call from his residence to my law office on December
6, 1984—the day after Ms. Fusco's body was found, and three months before he was
first interrogated by the police as a suspect in March 1985. I was positive at the time
of trial, and am positive today, that the telephone call on December 6, 1984 had
nothing to do with the Fusco case. The first time that Mr. Restivo ever consulted me
regarding the Fusco case was on March 6, 1985, the day after his release from
custody. Indeed, I do not remember consulting with John Restivo on any matter at
all in December 1984. Based on the date of the December 6 phone records, the call
was likely from either Mr. Restivo or his common-law wife, Joann Egington, to my
father and law partner, Phillip Robinson, who had handled the purchase of their new
house in Wantagh in the fall/winter of 1984. Although the closing occurred in early
November 1984, I recall that a kitchen stove at the house had malfunctioned, and that
John and Joanne had contacted my father sometime in December to see if they had
any recourse against the former owners for the defect. I also recall that there were
some outstanding issues involving funds placed in escrow which were not resolved
until several weeks after the closing.

11. On or about March 26, 1985, I heard news reports that John Kogut had given a videotaped confession to the rape and murder of Ms. Fusco and implicated John Restivo and Dennis Halstead.  The following day, Mr. Restivo came to my office to discuss these allegations, and also informed me that his van had been confiscated by the police.  I instructed him to try and determine his whereabouts on the night in question (November 10, 1984) and to see if he had any witnesses or documentation by way of support.

12. In subsequent consultations in my office over the following week, Mr. Restivo informed me that he and his family had looked through their documents and had been able to determine his whereabouts on the night in question (November 10, 1984). Specifically, he told me that he had been sanding floors at the Wantagh house that day and evening, and that he had receipts to document the rental of certain tools they had used for the job.  In one of our consultations, he showed me one such receipt for a floor sander from Prez Tools, Inc., that had a handwritten date of November 11, 1984.  Mr. Restivo told me that he was positive he had rented the tool on Saturday, November 10, but that the store proprietor must have written the wrong date on the receipt.  Believing that this receipt could provide important corroboration for the chain of events that comprised his alibi on November 10, I instructed Mr. Restivo to immediately return to the tool rental store with the receipt, and see if the proprietor had any records that could corroborate the correct (Nov. 10th) date.  Subsequently, Mr. Restivo did so.  When he returned from the store and informed me that the proprietor had confirmed that the rental was on November 10 and was willing to change the date on the receipt to reflect the correction.  He also informed me that, according to the store's proprietor, the store was closed on Sundays and thus he knew the rental could not have been on November 11, as that day was a Sunday. Accordingly, I decided to send our investigator (Rick Arden) with Mr. Restivo to take a statement from the store owner, which he did in early May.  The statement of Mr. Leo Klein taken by Mr. Arden and dated May 2, 1985, was prepared at my direction.  (Copies of contemporaneous notes I took noting some conversations with John Restivo on this subject and my subsequent instruction to Rick Arden to obtain a statement from Mr. Klein are attached as Exhibit D.)

13. While I do not recall the exact date of the consultation on which Mr. Restivo showed me this receipt and I gave him this instruction, my best recollection is it was within a week or two after the date that Mr. Restivo's van was impounded on March 26th.  I am sure that when I saw the receipt for the first time, it had the incorrect date written on it; that the first time Mr. Restivo showed me the receipt was in late March or early April, 1985; and that I was the person who gave Mr. Restivo the instruction to go talk to the tool shop proprietor about making this correction.  Had I not been Mr. Restivo's attorney during his 1986 trial, I would have been able and willing to so testify, in order to squarely rebut the People's contention that Mr. Restivo went to the tool shop to correct the receipt in December 1984, long before he was a suspect. Having given Mr. Restivo that instruction myself in the spring of 1985, I knew then, and know now, that the People's contention was absolutely false.

3

14. Consistent with my belief that Mr. Restivo, Mr. Halstead and Mr. Kogut were all innocent, my theory at trial was that an unknown third party had committed the crime. Specifically, in my closing argument I posited that, based on the pattern of strewn jewelry found near the crime scene, the most likely scenario was that Ms. Fusco had been walking down Rocklyn Avenue, and as she went under the railroad underpass, someone grabbed her and dragged her, struggling, down the alleyway to where her body was found. This was inconsistent with the prosecution's theory that Mr. Restivo, Mr. Halstead and Mr. Kogut had raped and killed Theresa Fusco in Mr. Restivo's van and had only brought her to the side of the railroad tracks after she was already dead.

15. During my time representing John Restivo, I never saw any of the documents attached hereto as Exhibit E, either as *Brady/Rosario* material produced by the prosecution or from any other source. I was never made aware of the information in these documents, including that:

    a. A man named John French reported his car stolen from the area of Lakeview Avenue and Ocean Avenue in Lynbrook, approximately one mile from where Theresa Fusco's body was later found, between 9:30 and 11:05 p.m. on November 10, 1984, the night Theresa Fusco went missing;

    b. A woman named Debra Smith reported seeing a possibly tan car parked underneath the railroad underpass at Rocklyn Avenue late at night around the time of Theresa Fusco's disappearance and that at the same time she had heard a woman scream from off in the direction where Theresa Fusco's body was later found;

    c. On November 18, 1984, John French found his car parked several miles away on Woodfield Road in Lakeview; since it had been stolen the license plates had been switched, the windshield had been broken, and rope and tools were missing from the car; Mr. French then drove the car to the Lynbrook Police Department;

    d. Debra Smith was asked by Detective Volpe to view John French's car and was 90% certain that it was the one she had seen parked on Rocklyn Avenue under the railroad overpass; she recognized the broken windshield and AAA sticker on the rear bumper and her only reservation was French's car was missing the tools, dark colored blanket and rope she had seen on the back seat of the car on Rocklyn Avenue;

    e. When John French found his car on November 18, 1984, his sister Lori reportedly found a pair of woman's jeans with stripes (the same type of pants Theresa Fusco had been wearing when she disappeared according to the "missing" poster publicized at the time she disappeared, which is attached as Exhibit F) inside-out in the car; these jeans were given to the Lynbrook police with John French's car, but the Lynbrook police subsequently threw them away.

4

16. I am certain I never knew this information. I worked many hours on John Restivo's defense and was very familiar with the documents I had been provided by Nassau County. I would have used this information at trial in support of my argument that an unknown assailant had abducted Theresa Fusco as she walked on Rocklyn Avenue under the railroad underpass and dragged her, struggling, to the location where she was raped and killed. I would have pursued investigation of these leads. I also would have raised this information in my post-conviction efforts to seek a reinvestigation into this crime, based on my unwavering belief in Mr. Restivo's innocence. There is no doubt in my mind that I never had this exculpatory information before it was shown to me in 2010 during this civil rights lawsuit.

17. I recall that one of the witnesses who testified against Mr. Halstead and Mr. Restivo at trial was Brian O'Hanlon, who claimed that Dennis Halstead had called him from the Nassau County jail and confessed to him that Dennis Halstead, John Restivo and John Kogut had abducted Theresa Fusco in John Restivo's van, raped her and murdered her. Mr. O'Hanlon was a drug addict who was receiving a deal from the prosecution in exchange for his testimony; both I and Mr. Halstead's attorney, Mr. Famighetti, sought to impeach the credibility of his testimony at trial. During cross-examination, I brought out some inconsistencies between a prior statement Brian O'Hanlon had made to the police and his trial testimony, and argued that he was pressured by the police to give the statement implicating Dennis Halstead and John Restivo.

18. During my time representing John Restivo, I never saw the prior statements of Brian O'Hanlon attached hereto as Exhibit G, either as *Brady/Rosario* material produced by the prosecution or from any other source. I was never made aware that in his initial statements to the police, Brian O'Hanlon described the phone calls he had received from Dennis Halstead at the Nassau County jail without describing any confession to the Fusco rape/murder, or that Brian O'Hanlon had admitted to the police that Dennis Halstead had told him his house was bugged and his phones were tapped (something that O'Hanlon specifically denied when asked about it on cross-examination). If I had had this prior statement, I would have used it to impeach Brian O'Hanlon at trial.

19. Even after his conviction, my belief in Mr. Restivo's innocence was not shaken. Although he did not have any money to pay me then, I worked on Mr. Restivo's behalf through 2001 and thereafter, including representing him on appeal and in post-conviction proceedings and arranging for early rounds of DNA testing. My hard work and consistent belief in Mr. Restivo's innocence was finally vindicated first in 2003, when his conviction was vacated based on DNA testing exonerating him, and later in 2005, when the indictment against him was finally dismissed.

I hereby declare under penalty of perjury that the foregoing is true, this 25th day of April, 2011.

Hempstead, New York                    Theodore W. Robinson, Esq.

5

# Exhibit A

## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



## ROBINSON'S RESTIVO PHOTOS



ROBINSON'S RESTIVO PHOTOS





*G..... Notice of Appeara...*  M-424

## DISTRICT COURT OF NASSAU COUNTY

__FIRST__ DISTRICT. __ARRAIGNMENT__ PART

THE PEOPLE OF THE STATE OF NEW YORK

*Re: Investigation*

vs.

*Dennis Halstead*

TO THE CLERK:

SIR:

You are hereby notified that I, _____ **THEODORE W. ROBINSON** _____

(Please type or print name)

appear for *Dennis Halstead* _____; the defendant in the above

entitled action.

Dated the ___ *7th* ___ day of ___ *~~April~~ March* ___ 19 *85*

(Signature) _____

Attorney for Defendant

**175 West Old Country Road.**

Address

**Hicksville, New York. 11801**

**516-681-5151**

Telephone No.

028908

DC 103  M-484  *General Notice of Appearance*

# DISTRICT COURT OF NASSAU COUNTY

**FIRST** DISTRICT. **ARRAIGNMENT** PART

THE PEOPLE OF THE STATE OF NEW YORK

vs.                                          Re: Investigation

*JOHN RESTIVO*

TO THE CLERK:

SIR:

You are hereby notified that I, _____ **THEODORE W. ROBINSON** _____
(Please type or print name)

appear for _____ *JOHN RESTIVO* _____, the defendant in the above-

entitled action.

Dated the ___ *7th* ___ day of ___ *March* ___, 19 *88*

(Signature) _____
Attorney for Defendant

**175 West Old Country Road**
Address

**Hicksville, New York  11801**

**516-681-5151**
Telephone No.

028910

# Exhibit C

**ROBINSON & ROBINSON**

ATTORNEYS AT LAW

175 WEST OLD COUNTRY ROAD

HICKSVILLE, N.Y. 11801

516 681-5151

PHILLIP F. ROBINSON
THEODORE W. ROBINSON
PAUL C. AHRENS

UPSTATE OFFICE
P.O. BOX 191 - R. D. #1
CAMBRIDGE, N.Y. 12816
518 677-8643

March 19, 1985

Commissioner of Police
Police Headquarters
1490 Franklin Avenue
Mineola, NY 11501

Dear Sir:

Please be advised that on March 7, 1985 I experienced an unfortunate incident with members of your Homicide Detective Squad, particularly Detective Dempsey and Lieutenant Spillane.

Upon receiving a concerned telephone call from a client, John Restivo, who had informed me that he was interrogated for approximately twenty-four hours by Detective Dempsey and two other Detectives, Volpe and Sharkey on Tuesday evening, March 5, 1985 until Wednesday evening, March 6, 1985, I immediately telephoned the Homicide Squad and asked for Detective Dempsey.

When Detective Dempsey came to the phone he identified himself and asked who was calling. I identified myself by my name and informed him that I was the attorney for John Restivo and Dennis Halstead. Within moments, Detective Dempsey loudly and abruptly informed me that he did not know who I was, did not wish to talk to me and hung up on me.

I again called the Homicide Squad and requested to speak to the Lieutenant in charge. Lieutenant Spillane then identified himself and I again informed him that I represented both John Restivo and Dennis Halstead. Unfortunately, at this point Lieutenant Spillane immediately became abusive and surly, and I was forced to terminate the phone call shortly thereafter without formally noting my appearance. I was thereafter forced to send an associate to Police Headquarters to deliver two Notices of Appearance for the above-named individuals. This is an entirely unusual police procedure, is downright discourteous and appears to have been purposely contrived conduct to overcome the normal attorney/client relationship notification to the Police Department.

Case 2:06-cv-06695-JS-SIL   Document 249-5   Filed 07/02/12   Page 24 of 56 PageID #: 6777

Commissioner of Police
Page 2
March 19, 1985

      Moreover, my client maintains that he was physically
assaulted by the detectives interviewing him and has been
treated medically for a cervical sprain resulting from the
detectives' physical abuse.  Furthermore, my client maintains
that he was unlawfully restrained in Police Headquarters by the
detectives above-named without benefit of a phone call to his
wife, family or attorney for a period of approximately twenty-
four hours.  He further informed me that he was told that he
would not be permitted to leave the headquarters until he gave a
statement regarding an alleged murder.

      I hereby request that the above episode be investi-
gated and reviewed by you or your representative and a deter-
mination made on the actions of these detectives and their
lieutenant.  I would appreciate it if you would direct a copy of
any report on the outcome of your investigation to my office.

      I further request that you direct your detectives to
cease any further actions against my client, John Restivo, and
in the event that they wish to further interview him any and all
such interviews should be done in my presence.

      Thank you for your anticipated courtesy and cooperation.

            Very truly yours,

            ROBINSON & ROBINSON


            Theodore W. Robinson

TWR:elp

TR0001518

# *ROBINSON & ROBINSON*
### ATTORNEYS AT LAW
### 175 WEST OLD COUNTRY ROAD
### HICKSVILLE, N.Y. 11801

### 516 881-5151

PHILLIP F. ROBINSON
THEODORE W. ROBINSON
PAUL C. AHRENS

UPSTATE OFFICE
P.O. BOX 191 · R.D.#1
CAMBRIDGE, N.Y. 12816
518 677-8543

March 27, 1985

Nassau County District
 Attorney's Office
262 Old Country Road
Mineola, NY  11501

Attention:  Martin Bracken, Esq.

Re:  John Restivo

Dear Mr. Bracken:

Please be advised that this office represents John
Restivo and has done so in the past.  Mr. Restivo has recently
informed me that on March 7, 1985, he was taken to the Nassau
County Police Headquarters Homicide Bureau and questioned for
approximately a twenty-four hour period without being given an
opportunity to call his wife or attorney and inform them of his
whereabouts.  In addition, he informs me that he was brutally
treated by the Detectives in the squad area, most notably
Detective Dempsey, who choked him about the neck with his hands.
I have both photographic and medical documentation of this
occurrence and request your further review of this matter.

Please note that I have also informed the Police
Commissioner of this incident and feel that there has been at
least an Assault in the Third Degree perpetrated against my
client.  Additionally, when I attempted to note my appearance
with Detective Dempsey two days later for both Mr. Restivo and a
Mr. Dennis Halstead, apparently the target of an ongoing in-
vestigation, Detective Dempsey refused to acknowledge my call
and promptly hung up on me.  When I again called the Homicide
Squad and asked for the Lieutenant in charge, I received an
additional discourteous response from him.

I further request that you investigate this issue as
being counter to the normal attorney/police work that must go on
on a daily basis.  Obviously, if the members of the Police
Department are refusing to accept calls from attorney's noting
their appearance, it is clearly violative of defendants' rights.

TR0001511

Martin Bracken, Esq.
Page 2
March 27, 1985

        Would you kindly inform me of the outcome of your
investigation and whether or not any charges will be brought
against the alleged defendant/detectives.  If you wish to inter-
view my client, Mr. Restivo, please notify me and I will arrange
to be available at our mutual convenience.

        Thank you for your courtesy and cooperation in this
matter.

                        Very truly yours,

                        ROBINSON & ROBINSON


                        Theodore W. Robinson

TWR:pr

# Exhibit D

/12/85    Restivo —
          P/c from John —

          Tool rental now — says he's closed on Sa
          and he must have rented the tool on Sat.
          See Klein ~ T.
          872-0088 —

4/12/85   P/c w/ John
          11/10/84 — He was w/ Michael Cochiell — got saw
          + tool + rental store — worked at house —

IP7169

1/18/88     Restivo —

1/2 hr.   office conf. w/ John + his wife —

John R says he also rented another sander on the same day 11/10/84 at 12:30 am and returned on 11/12/84

The first rental operator will vouch that he picked up the sander on 11/10/84 because although the receipt says 11/11/84 — he's closed on Sunday

IP7170

4/25/85  John Restivo –
1½ hrs.  office conf w/ Mrs. Jos. Restivo (mother) + Frank Meyers

Private Investigator

3) Need statement from Tool place on date of clo
and receipts and any other info. about John

# Exhibit E

Smith, Debbie

PLAINTIFF'S
EXHIBIT NO. _158_
FOR IDENTIFICATION
DATE 4/6/09   RPTR



## HOMICIDE LEAD SHEET

**LEAD RECEIVED:** 12/9/84   0425
DATE        TIME

**RECEIVED BY:** J. Volpe

**LEAD NO.** _____

**HOM. NO.** 2222-84

### ( LEAD SOURCE )

**NAME:** Debbie Smith     **HOME TEL:** ▓▓▓▓▓▓

**ADDRESS:** ▓▓▓▓▓▓▓▓▓▓     **BUS. TEL:** ▓▓▓▓▓▓

### ( NATURE OF LEAD )

Called and stated that between 11/17 & 11/20 she was driving over Sunrise at Rockland (bet 2100-0000 Hrs) & heard a scream. When she got to RR tracks on Rocklyn there was a car parked with no one in it. Auto possibly TAN, 4 door 0 color vehicle, large windows, had tools & dark colored blanket in auto.

### RESULTS:   (INDICATE DATE(S) AND MEMBER(S) INVESTIGATING)

12/9 — Ms Smith responding to Homicide to view auto stolen in Lynbrook 11/10/84. Imp. 396-84

Det Pierce & Lane present at C.S.B. with above. Debra viewed car after viewing stolen the 9 she remembers the Bychev in label the parking sticker in the windshield and the silver AAA stickes on rear bumper.

Stated she would only give us a 90% because when she looked inside the car there was a lot of dockyard in the rear seat remembers a blanket thinks tools or rope.

Said she viewed car between 11 Saysit to 1 AM because she remember no traffic on Sunrise Highway there were no trains on Rail Road overpass.

**CARD FILE PREPARED ☐**                                                    **(OVER)**

DET VOLPE

"28YRS"

0422 — Debbie Smith ▓▓▓▓▓ Reports a few weeks
ago she was at Sunrise / Rocklyn Maintenance,
she heard a girl scream. When the light changed
she observed a vehicle parked on E/S of
Rocklyn Ave at LIRR overpass, No occupants
Veh Description – 1970-75 Gray or Biege, with
large windows. NY Reg with ▓▓▓▓ off
in it. Time approx 2100-0100 HRS.

→ Nov. 14-28   Ber. 17 & 20
→ Nov 14-20   (bet 9:00 & 0100)
North on Rocklyn —          — Poss Van —
                            4 Door Car Sedan
                            full size
Residence                   — window open —
▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓                  American Tech Ceramic
                            15 Stepar Place
                            Hub Station

Day Time — 271 – 9600   Ext 220
                        Computer Room
Evenings — Mon & Wed 2000
              comes home

TRADESMAN — equipment in car
Tools Blanket & work —

024708

PLAINTIFF'S
EXHIBIT NO. 159
FOR IDENTIFICATION
DATE: 4/6/09

Dec 9, 1984
Hom 8222-84

Statement of Debra L. Smith

My name is Debra L. Smith. I am 28 years
old. I was born ████████████. I live at ██████.
My home
phone number is ███████████. I work at American
Technical Ceramics at 15 Stepar Pl Huntington
Station NY. phone 271-9600 ext 232. as a
computer program analyst. I live at home with
my parents and brothers and sister.
I have been told by the Detective who is
writing this statement that any false statements
I made herein are punishable as a class A
misdemeanor pursuant to section 210.45 of the
Penal law of the State of New York.
I wish to state last month I believe between
November 17 and the 22 I had gone to my
friend James Pearson's house at ██████
█████████████ for the evening. We had
an argument and I left his house to go
home. I started driving on Atlantic ave to
central ave. as I got to that corner I saw
that the Rail Road gates were down for a
Train that was going towards long Beach.
I decided to take Brooklyn street up to
Merrick Rd and Ocean ave where I go

Det _____   Name Debra L Smith

2544

go to Peninsula Blvd and home.
I drove north on Brooklyn Ave to Sunrise
Highway the traffic light was red and I
stopped for the light. I had my window
partly open because I was smoking.
While I was sitting at the light I heard
a woman scream. I rolled my window
down and listened but didn't hear anything
else. The scream came from the left
and like it was up high. I looked at
the Rail Road elevated because that seemed
to be the direction that the scream came from.
The Traffic light changed and I drove across
Sunrise Highway and under the Rail Road
overpass. I saw a large light to medium
, ten o't brown car 4 door sedan early 70s. it
had large windows. I looked inside and saw
a lot of stuff in the back seat I think there
was tools  a blanket and other stuff
in the back seat. During this time
I got out of my old car and looked around
toward the Rail Road tunnel. I looked
at the license plate I remember there were
four numbers and three letters and on chasing

Det Sgt _____ in a Hill Name Debra L Smith

2545

sticker on the left side of the Rear bumper.
I also remember that the car had a broken
windshield and a toilet in the left front
window on the dash board.
Today I received a phone call from Det
Joseph Volpe who asked me to come to
Police Headquarters and view a vehicle
they have there. I met with Police
Officer Lane and Det Pierce who
showed me a 1971 Oldsmobile delta
88 and I have looked at the car I feel
that this is the car I saw that night
the only reservation I have is that
the interior of the car does not have
all of the stuff in it that the car had
when I had stopped by the Rail Road crossing
I have given this statement to the detective
and it is the truth.

Det Sergt Pierce #1411   name   Debra L. Smith

                         address   ████████████

                         phone   ████████████

2546



JUN 08 '84  12:58PM CRIME SCENE

1255 Newbridge Road,
No. Bellmore, NY 11710
Tel:  516 573-8015
Fax: 516 573-8022

P.1

**FORENSIC
EVIDENCE BUREAU,
CRIME SCENE
SEARCH SECTION**

Fa

12.11.84    1030 Hrs.    Det. Mitchell

Debbie Smith called command bung
and state she is not sure if she
saw the automobile between
11/17 and 1/21 on between 11/10 and 11/14.
She will attempt to put her date and
activities in order and will call us
back.

PLAINTIFF'S
EXHIBIT NO. 16D
FOR IDENTIFICATION
DATE 4/6/09

024712

> 789

Inf.# 396-84

12/6/84
1840 hrs.



79-3227

Went at 58 Bway, Malverne N.Y. home of John V. French. He stated that on 1/18/84, his 1971 Oldsmobile del. reg 5233 BJN N.Y., his car was parked on S/W corner of Lakeview Ave. & Ocean Ave. It was stolen sometime bet. 2130-2305 hrs. that date.

On 1/18/84, Mr. French went out looking around for his car. He entered Lakeview and he saw it parked on Woodfield Rd. near the A.P. Tucks. He then got his keys & drove the car to Inwood P.D. Prior to going to the P.D. his sister Lori found a pair of blue jeans with stripes. Blue jeans were (inside - out); jeans were found on rt. rear floorboard halfway under rt. passenger seat.

1971 OLDSMOBILE DELTA 88 SEDAN/foud
V.I.N. # 354391E163279
N.Y. REG. 5233 - BJN   N.Y.

029663



PLAINTIFF'S
EXHIBIT NO. 162
FOR IDENTIFICATION
DATE: 4/6/09   RPTR

Loss From John French's Auto

Rope

Tools - were under Front seat wrapped in

Plastic Carrying Case

Cassette Tapes, insurance Cards, coins, Bills,

Floor Mats.

Nothing was on the Back Seat of the

Auto Prior To Theft of Vehicle.

Radio was Taken From Dash - Sanyo AM-FM

Cassette Stereo : Two Speakers From Rear

of Car.

Windshield was Not Broken Prior To Theft

At Time of Theft French was

Visiting: Mike Becht

1 Ocean Ave

Malverns

Prepared 12-11-84 By Det. Mitchell

029642


PLAINTIFF'S
EXHIBIT NO. 163
FOR IDENTIFICATION
DATE: 6/10/09   RPTR.

Statement - Taken from John T French. Taken 12-9-84

My name is John T French. I am 21 yrs. old being born

on 9-31-63. I live at 58 Broadway, Malverne, N.Y with

my mother & 2 sisters. My home phone number is 599-5227.

Today, Detective Siemens - of the homicide Sqd. came

down to my home, where he showed me, a length of tape.

And a brown felt pouch.

I have positively, identified the tape, & the pouch,

As mine. I had the length of tape in the back

seat of my car, because I used it to the chair p bed

that I had transported for my friend. The felt pouch I

use to keep change in.

I'm, telling my story to, Detective Siemens - of the

Homicide Sqd. I have read, & typed it and its the

truth.
                                              x John French

Witness Det. P Siemens                        x  58 BROADWAY

sh. 296.                                       x MALVERNE, N.Y. 11565

NC002200

PLAINTIFF'S
EXHIBIT NO. 164
FOR IDENTIFICATION
DATE: 4/6/09



2200

NC002199



NC002202

Hair Straight Schaffel - 12-27-84.

Thomas Keela - �github████████████████

Mel French - ████████████████

Loac French - ████████████████
Lisa French ████████████████

Doug Blodworth - ████████████████████
John French - ████████████

2202

NC002212

POLICE DEPARTMENT
COUNTY OF NASSAU, NEW YORK

**CASE REPORT**
**VEHICLE/BOAT RECOVERY REPORT**

DISTRIBUTION
ORIGINAL - Command
COPY - Auto Squad

X VEHICLE          ☐ BOAT

TRUCTIONS - The Command originating the Stolen Vehicle Report is responsible for the prompt and accurate preparation of
*..N Form 32C and notification to the owner.

| CASE REPORT NO. | DATE & TIME OF REPORT | ALARM NO. | DATE & TIME OF ALARM |
|---|---|---|---|
| 1084-84 | 11/16/84  2345 | 28357 | 11/11/84  0035 |

D.D. NO.

DETECTIVE ASSIGNED: DET. BALLARD    CLASSIFICATION: UNAUTHORIZED USE

P.L. SECTION 165.05    DATE & TIME OF OCCURRENCE (THEFT) 11/10/84 2130 — 11/10/84 2305

| REGISTRATION NO. | STATE | YEAR | MAKE | MODEL OR TYPE BODY |
|---|---|---|---|---|
| 5233-BJN | N.Y. | 1971 | OLDSMOBILE | DELTA 88 |

VIN OR SERIAL NO. 35439IE163279   MILEAGE 117,000   INS. CODE 2L4   VALUE 300.   PLATES RECOVERED ☒ X ☐ NONE ☐ YES   IGNITION PULLED ☐ YES ☒ NO

CAR VEHICLE/BOAT BE DRIVEN ☒ YES ☐ NO   CONDITION OF VEHICLE ☒ INTACT ☐ ARSON ☒ STRIPPED   IF VEHICLE STRIPPED: ☐ ENGINE ☐ TRANSMISSION ☒ ACCESSORIES ☐ HOSE CHECK PARTS MISSING ☐ DOOR[S] ☐ INTERIOR ☐ WHEELS ☐ REAR CLIP

| DATE & TIME OF RECOVERY | RECOVERED BY: RANK | NAME | SERIAL NO. | COMMAND |
|---|---|---|---|---|
| 11/18/84  1645 | | OWNER | | |

RECOVERY INFORMATION RECEIVED FROM:  ☐ NCPD ☐ NYCPD   OWNER   VIA ☐ TELEPHONE ☒ PERSON
☐ SCPD ☐ OTHER _____   ☐ PCT. _____   ☐ TELETYPE ☐ OTHER
RANK    LAST NAME    FIRST NAME    SERIAL NO.    COMMAND

LOCATION OF RECOVERY: WOODFIELD ROAD, So. OF EAGLE AVE., WEST HEMPSTEAD.

OWNER NOTIFIED BY: NAME (OWNER FOUND CAR)   SERIAL NO.   DATE & TIME   PERSON NOTIFIED ☐ OWNER ☐ OTHER (NAME)

ALARM CANCELLED BY: NAME  SGT. L. SPRAGUE 103   SERIAL NO.   DATE & TIME 11/18/84   ☒ VEHICLE AND PLATES ☐ VEHICLE ONLY ☐ PLATES ONLY

DISPOSITION OF VEHICLE: OWNER IN POSSESSION OF VEH.   IMPOUND/VOUCHER NO.

ARRESTS (NUMBER, NAME, DATE OF BIRTH)

ADDITIONAL DETAILS OR REMARKS:
REG. PLATES 5233-BJN N.Y., BELONGING TO OWNER, WERE
PUT ON A CAR OWNED BY DEBRA ANN DeCARLO, ████████
████████████████████████████ ' UGR
PLATES, REG. ██████████ N.Y., WERE FOUND ON THE STOLEN
VEHICLE. BOTH SETS OF PLATES HAVE BEEN
EXCHANGED.

SIGNATURE DESK OFFICER  Sgt. L. Sprague  SERIAL NO. 103   SIGNATURE PRECINCT SQUAD COMMANDING OFFICER
SIGNATURE PRECINCT COMMANDING OFFICER   SIGNATURE DETECTIVE SUPERVISOR



PLAINTIFF'S
EXHIBIT NO. 164
FOR IDENTIFICATION
DATE: 4/16/09  RP

2212

NC002213

**POLICE DEPARTMENT, COUNTY OF NASSAU, N.Y.**
**SUPPORTING DEPOSITION MOTOR VEHICLE, BOAT, AND REGISTRATION PLATES**

PD(N 38 - REV. 1/78

TPRPAPE DMN ORIGINAL

| AUTO SQUAD NO. | ALARM NO. | D.D. NO. | CASE REPORT NO. |
|---|---|---|---|
| | 28357 | | 1094-84 |

I, JOHN T FRENCH _____ certify that I reside at _____ and that between, time 2130 ☐AM ☒PM, Date 11-10 ,19 84 and time 2305 ☐AM ☒PM, Date 11-10 ,19 84 a ☒Motor Vehicle ☐Boat ☐Registration Plates, described below, in legal custody of ABOVE

residing at _____

Home Tel. No. (AREA CODE) 516 _____

and owned by A BOVE _____ residing at _____

Date of Birth _____,19 ___ Home Tel. No. (AREA CODE) _____

Bus. Tel. No. (AREA CODE) 516 _____ and Occupation SUPERVISER

was stolen from post no. 3 location SOUTH SIDE LAKEVIEW AVE

200' WEST OF OCEAN AVE LYNBROOK NY

and I gave no one permission to take, operate, exercise control over, ride in or otherwise use the below mentioned ☒Motor Vehicle ☐Boat ☐Registration Plates.

**MOTOR VEHICLE**

| LICENSE PLATE NO. | STATE ☒ N.Y. ☐ OTHER | EXPIR DATE | TYPE | VIN NO. | YEAR |
|---|---|---|---|---|---|
| 5233BJN | | 6-85 | | 354391E163279 | 71 |

| MAKE | MODEL | STYLE | COLOR | VALUE |
|---|---|---|---|---|
| OLDSM | DELTA 88 | 4DSD | GL/BLK TOP | $400 |

| WEAPON IN AUTO ☒ YES ☐ NO | OTHER IDENTIFYING FEATURES, DAMAGE, ETC. HUNTING KNIFE ABOVE PASSANGER DOOR |
|---|---|

**BOAT**

| REGISTRATION NO. | STATE ☐ N.Y. ☐ OTHER | EXPIR DATE | OUTER HULL MATERIAL ☐ WOOD ☐ METAL ☐ PLASTIC ☐ OTHER | BOAT HULL NO. |
|---|---|---|---|---|
| | | | | |

| PROPULSION ☐ SAIL ☐ OUTBOARD ☐ INBOARD | MAKE | TYPE OF BOAT | LENGTH | COLOR | NAME OF BOAT |
|---|---|---|---|---|---|
| | | | | | |

| MAKE OF MOTOR | MODEL OF MOTOR | HORSE POWER | SERIAL NO. | OTHER IDENTIFYING FEATURES |
|---|---|---|---|---|
| | | | | |

The information contained in this instrument is true; I understand that any false statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York, except that any false statements made alleging the theft of a motor vehicle whose value is more that $250.00 are punishable as a Class E Felony, pursuant to section 210.47 of the Penal Law of the State of New York.

| VEHICLE LOCKED AND SECURE ☐ YES ☒ NO | KEY IN VEHICLE ☐ YES ☒ NO | SIGNATURE OF DEPONENT John French |
|---|---|---|

| DATE 11-10-84 | TIME 2305 | PLACE LAKEVIEW AVE + OCEAN AVE LYNBROOK |
|---|---|---|

| WITNESS PO | RANK | NAME _____ R | SHIELD NO. 1410 | COMMAND CYP |
|---|---|---|---|---|

2213

NC002214

POLICE DEPARTMENT
COUNTY OF NASSAU, NEW YORK

CASE REPORT
FDCN 32-ODM 10/83

**CLOSED**

CANC

NOTES LAKEVIEW COMPLETE BE CLOSED
32 CASE

M.O. INFORMATION - PART A (Check Every Box That Pertains.)

| TIME OF DAY | MODE OF ENTRY (Check 1) | MODE OF ENTRY (Con't) | SAFES | |
|---|---|---|---|---|
| 111. [ ] Daylight | 141. [ ] Window | 166. [ ] Pried | 211. [ ] None | |
| 112. [ ] Darkness | 142. [ ] Door - Wood | 167. [ ] Picked | 212. [ ] Carried Away | |
| 113. [ ] Unknown | 143. [ ] Door - With | 168. [ ] Unknown | 213. [ ] Drilled or Punched | |
| WEATHER | Glass Window | 169. [ ] Other | 214. [ ] Explosive | |
| 121. [ ] Clear | 144. [ ] Door - Screen | SECURITY | 215. [ ] Pried | |
| 122. [ ] Cloudy | 145. [ ] Door - Sliding glass | 181. [ ] Interior Lights On | 216. [ ] Torch | |
| 123. [ ] Rain | 146. [ ] Roof - Skylight | 182. [ ] Exterior Lights On | 217. [ ] Rip or Peeled | |
| 124. [ ] Fog | 147. [ ] Through Roof | 183. [ ] Bars or Grates | MISCELLANEOUS | |
| 125. [ ] Snow | 148. [ ] Through Wall | 184. [ ] Dog | 221. [ ] Ransacked | |
| 126. [ ] Unknown | 149. [ ] Unknown | 185. [ ] Employee Present | 222. [ ] Malicious Damage Caused | |
| POINT OF ENTRY | 151. [ ] Other | 186. [ ] Guard or Watchman | 223. [ ] Premise Occupied | |
| 131. [ ] Front | Check 1 | 187. [ ] Security Fence | 224. [ ] Premise adjacent to school, | |
| 132. [ ] Rear | 161. [ ] Broke Glass | 188. [ ] Alarm | store, parkway, etc. | |
| 133. [ ] Left Side | 162. [ ] Broke Down | 189. [ ] Photo or Camera | 225. [ ] Previously Burglarized | |
| 134. [ ] Right Side | 163. [ ] Cut Open | 191. [ ] None | 226. [ ] Suspicious Phone Calls | |
| 135. [ ] Roof | 164. [ ] Left Open | 192. [ ] Other | prior to Burglary | |
| 136. [ ] Door | 165. [ ] Unlocked - Key | | 227. [ ] Other | |
| | | | 228. [ ] Maid Services Used | |

53. IS THERE PHYSICAL EVIDENCE PRESENT? IF YES, PLACE AN X IN BOX 53 •  AND DESCRIBE IN SECTION 59.    | 53

HAS EVIDENCE TECHNICIAN WORK BEEN [ ] PERFORMED? [ ] REQUESTED? IF YES, PLACE AN X IN BOX 54. •    | 54

60. IS PROPERTY TRACEABLE? IF YES, PLACE AN X IN BOX 55 •  AND COMPLETE SECTION 56.    | 55

DISTRIBUTION
White - Investigator      Canary - Data Processing Unit      P      ...ct Files

2214

NC002214

# Exhibit F

# MISSING
# THERESA FUSCO

**DESCRIPTION**

Ht. 5'3"

Wt.104 lbs.

AGE 16

BROWN HAIR

BLUE EYES

DENIM JACKET

STRIPED BLUE JEANS

WHITE BALLOON SNEAKERS



## LAST SEEN NEAR "HOT SKATES", LYNBROOK, NEW YORK
## IF YOU HAVE ANY INFORMATION CONCERNING THERESA
## PLEASE CONTACT NASSAU COUNTY POLICE AT:

# (516) 535-7858



PLAINTIFF'S
EXHIBIT NO. 168
FOR IDENTIFICATION
DATE: 4/6/09   RPTR

021939

# Exhibit G

BRIAN O'HANLON    9/12/85
~~234~~ ~~Sandway~~     1/11/62
~~Far Rockaway N.Y.~~

Probation Officer - ~~GERALD COOK~~
WIFE  CARRIE (ALPER) 9/2/84
DAUGHTER DANIELLE  3½ months old.

(FATHER)       (MOTHER)
HAROLD + LORN OHANLON -NONE
KATHLEEN (16) (SISTER) -NONE
KEVIN (22) BROTHER - NEWARTT   1243 HANCOCK
                                NEWARTT

SELF EMPLOYED

E. Rockaway High School
1981  Graduated  G.E.D.

married 12/22/84

Justice of Peace married
3 P.m.  at 1307 Azure Pl.
Han Lutt  Harbor  Joe Cronia
best man
25 people  present for about
5 hours.

Honey moon TO Marhindarg
Venezuela etc. for week left
on 1/12/85  8·00 Am
(spent his time.)
8 yrs ago - at bar

Worked with him (Oran is) for awhile
but Dennis didn't pay
Smoked pot & crack with Dennis



Dennis Tight with Daws & Skellington
J. Restivo doing work prior to breakups

Dennis Worked at Tackle Shop,
J. Restivo Would always pull up.
5 years or so

Nutini Tight with Halstead

Dennis used to Party with
young girls

Dennis Told Brian around
that around 11/85 or 11/86
That "T" was at his (Dennis's)
apartment a couple of days
prior to his disappearance

? { wit
fees }

Two weeks prior To his
marriage Brian was told by
Dennis That missing girl?
was in his apartment a day
or so prior to her disappearance
Conversation

Run Brook Taxi Irwin Thru
about 11 years bets on horses.
35 years claiming works night
Shift. Says Cheryl mentioned
That Halstead did a

Jarco
Irwin

Brian received H calls
(collect from Jail)

Time
vogue   Dave Shellington Told Brian
That John Restivo Told
Some one "I did Something
wrong, I Fucked up" John
was Crying at This Time.

~~End of~~ ~~1st March~~
At New JT Dennis asked
Brian if he Wanted to make
big money, to Knock somebody
off for him. He said Who?
Dennis said John Restivo,
he Tried to implicate me
in a murder." What murder
Brian asked? "the murder of
The missing Lynbrook girl."

Phone calls from Jail
Tavue   Carrie Talked to
~~him~~
1st Carrie accepted Charges
Brian wasn't home. Dennis
Talked about his 1 new Son
Told Carrie that "T" Father
had a Contract on him Said

026884

That Tommy M^c Bride was
after him. (no relation to Wade)

a 2nd
day
or so
later
Brian accepted Charges, Talked
To Dennis - Asked for money
for Commissary - told him
to get rid of Ramy charge
I de conversation about baby,
was in Protective Custody in Jail

3rd
said lawyer told him
That he is going to "walk"
cops have nothing That his
phone was Tapped.

4th
Refused Charges told wife
To hang up.

↓ last time several wks after arrest

"Sue" at 7-11 - Atlantic Ave - Lynn

Before picked up - Janice told him
phone tapped - apt bugged

2 wks ago - cab - Ellery & Tompkins
Brooklyn - left from Kingsbrook Stars
8:30 - I cure PM

026885

after polygraph - 1930                    "OIT"

Dennis H. told him Kelly was
at his apt. 2 days prior her
disappearance

2 wks. at least
prior to getting married - walked to
Jersey Place to get money from John
R. doing wk. John intends working
on sig. blue van or bits, John
stated spent money for buckets
for blue van going to fix after
fixing sign.

026886



PLAINTIFF'S
EXHIBIT NO. 142
FOR IDENTIFICATION
DATE 2/23/09

9-12-85
2000 hrs.

Interview of Brian O'Hanlon

Myself and Det Wattman were present in the interview room of the Homicide Squad when the interview was conducted

Brian indicated that Dennis Halstead told him about 3 days before he was arrested for the murder that "I know the apartment is bugged but I can't find the fucking thing" "I think the bug is in the lights" "I'll definitely walk on this thing"

Halstead had told Brian (Within prior to this conversation) "The cops are looking at me cause I had that missing girl in my apartment getting high" He told Brian that he had told the police this.

Brian went onto say that about a week after Halsteads arrest for murder he received a collect call from Halsted and that Halste told him.

① "There no way these mother fuckers are going to pin this on me" "I'll walk on all this"

② "You have to sell my truck because I need the money" Brian never sold the truck

③ "They got me in isolation here in the jail cause a inmate by the name of McBride put a contract on me he killed that girl

B) A second call from Halsted to O'Hanlon took place about a week after the first. In that Halstead tells O'Hanlon the following.

a) Halstead, Restivo, Kogut were in Restivos van

b) They saw the girl walking by Hat. Skates and Hallstead said to the girl (Fusco) "Do you want to party" & talked her into getting into the van." When she was in the van dennis said he said to her "are you going to do the right thing?" (have sex with them.) "The fuck began to scream so Kogut hit her, we were all taking turns fucking her and we took her into the cemetery" I got her into the van and fucked her but man no way did I kill her" When we got her to the cemetery she kept saying I'll tell." Restivo told threw a "moving stray" to Kagut and Kogut killed her. Halstead said then we had to get rid of the body so we dumped it in lot."

What precipitated this conversation was. On the second call to O'Hanlon. O'Hanlon said to Hallstead "Whats your act in this thing I know they must have something on you. Then Hallstead related his account