PX 299

COUNTY COURT   :   COUNTY OF NASSAU

-------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

       - against -

SHONNARD LEE,

                Defendant.

-------------------------------------------------------------X

THE GRAND JURY OF THE COUNTY OF NASSAU, by this indictment, accuses the defendant of the crime of MURDER IN THE SECOND DEGREE, in violation of Section 125.25, Subsection 2, of the Penal Law of the State of New York, committed as follows:

      The defendant, SHONNARD LEE, on or about the 10th day of February, 1997, in the County of Nassau, State of New York, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused the death of Sammy Jones.

<u>SECOND COUNT</u>

AND THE GRAND JURY OF THE COUNTY OF NASSAU, by this indictment, further accuses the defendant of the crime of MANSLAUGHTER IN THE FIRST DEGREE, in violation of Section 125.20, Subdivision 1, of the Penal Law of the State of New York, committed as follows:

      The defendant, SHONNARD LEE, on or about the 10th day of February, 1997, in the County of Nassau, State of New York, with the intent to cause serious physical injury to another person, caused the death of Sammy Jones.

All of the actions and transactions alleged in each of the several counts of this indictment are connected together and form part of a common scheme and plan.

Dated: September 8, 1997
       Mineola, New York

                        DENIS DILLON
                        District Attorney



EXHIBIT
299
HC  1/13/12

PLEASE TAKE NOTICE that in accordance with the provisions of Section 240.30 of the Criminal Procedure Law, the People hereby demand that within fifteen days of the date of service of this Demand, you disclose and make available to the District Attorney of Nassau County for inspection, photographing, copying or testing: (a) any written report or document or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce same at trial of this action, or if the defendant has filed a notice of intent to proffer psychiatric evidence and such report or document relates thereto, or if same was made by a person, other than the defendant, whom the defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

PLEASE TAKE FURTHER NOTICE that in accordance with the provisions of Section 250.20 of the Criminal Procedure Law, I hereby demand from you and each of you that if you intend upon the trial of this Indictment to offer, for any purpose whatever, testimony which may tend to establish your presence elsewhere than at the scene of the crime or crimes with which you are charged, at the time of their commission, you must, within eight days from the date of service of this Demand, serve upon the District Attorney of Nassau County, and file with this court, a copy thereof, a "notice of alibi" which shall set forth in detail the place or places where you claim to have been together with the names, post office addresses, residences and places of employment and the address thereof of the witnesses upon whom you intend to rely to establish your presence elsewhere than at the scene of the crime or crimes at the time of their commission.

If at the trial of this action the defendant calls such an alibi witness without having served a notice of alibi pursuant to the demand, or, if having served such a notice he calls a witness not specified therein, a motion will be made pursuant to the provisions of Section 250.20 of the Criminal Procedure Law to exclude any testimony of such witness relating to the alibi defense.

PLEASE TAKE FURTHER NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, the People intend to offer at the trial of this Indictment evidence of oral and/or written statement(s) made to a public servant pertaining to the charge set forth in this Indictment.

PLEASE TAKE FURTHER NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, during the trial of this matter, the People expect to introduce testimony identifying the defendant as a person who committed the offenses charged as set forth in this Indictment, which testimony will be given by a witness (witnesses) who has (have) previously identified the defendant.

DENIS DILLON
District Attorney
Nassau County, New York

99791

IND. NO.

---

COUNTY COURT : COUNTY OF NASSAU : STATE OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK

- against -

SHONNARD LEE,

Defendant.

---

DENIS DILLON
District Attorney

---

INDICTMENT FOR

MURDER IN THE SECOND DEGREE

MANSLAUGHTER IN THE FIRST DEGREE

---

A TRUE BILL

Foreman

---

STATE OF NEW YORK, COUNTY OF NASSAU      9TH TERM: PART 37
SUPREME COURT

P R E S E N T:

<u>HON. ALAN L. HONOROF</u>      MOTION CAL. NO. <u>C-267</u>
                                   IND. NO. <u>99791-97</u>

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, ) | HON. DENIS DILLON |
| ) | District Attorney |
| ) | Nassau County |
| -against- ) | Mineola, NY. 11501 |
| ) | By: ADA Daniel Looney |
| ) | |
| SHONNARD LEE, ) | Dennis Lemke, Esq. |
|            Defendant. ) | 114 Old Country Rd. |
| ) | Mineola, NY 11501 |
| ) | Attorney for Defendant |
| ) | |

The following papers read on this motion:

       Notice of Motion            1
       Affirmation in Opposition     2

       Upon due consideration of the papers and exhibits at bar, and all proceedings previously

had on the above-captioned indictment, defendant's motion to dismiss said accusatory instrument

is determined as hereinafter provided.

       At the outset, the chronology of certain pertinent events is uncontested. On February 21,

1997, Sammy Jones died of injuries he sustained in a confrontation on February 10, 1997, during

which one of the other people involved allegedly struck him in the head with a baseball bat. The

medical examiner determined that the victim died of blunt force head trauma, which could have

been caused by a bat.

C:\DATA\WPDOCS\FORMS\LEE-DEC                1



PLAINTIFF'S
EXHIBIT
# 4

On February 27,1997, Ragan Martin was arrested by the Freeport Police for Criminal Sale of a Controlled Substance in the Third Degree, and stated that he had information regarding Jones' death. When interviewed on that same date by veteran Nassau County Homicide Detective Robert Dempsey, who took notes thereof (People's Exhibit 6), Martin said, in relevant part, that at the time and place in question, he saw three males surround Jones. He described two of those individuals as wearing dark clothing; one of them had dredlocks and no hat or cap. Martin stated that the third male was wearing a beige/tan three-quarter length leather coat and a knitted ski-type cap with a short brim.

Martin told Detective Dempsey that he recognized that third person as one he knew by the names of "Sha" and "Corey." He said that he had known Sha for approximately six - eight months; he had purchased crack more than twelve times from Sha, who lived in a big, white house on Leonard Avenue in Freeport. Martin told the detective that he saw the three males jump on Jones. He also stated that he saw Sha swinging a bat at Jones' head and the other two "stomping" Jones when he fell down.

Martin specifically told Detective Dempsey that he saw Sha strike Jones in the head with the bat at least five or six times. He further stated that after he saw the three run across the street and lost sight of them, he heard car doors slam and a car start up with a loud muffler or motor. He heard the tires screech, but the car did not come towards him.

Among the other things he told Detective Dempsey on February 27, 1997, Martin said that he subsequently saw Sha driving his medium blue Camaro, and that the other two "guys" were still with him, in the car, as it sped passed him, even though he had yelled "Yo!" to them. Martin also stated that when he went to Sha's house to "cop some crack" about three days before meeting with Detective Dempsey, he asked Sha why he hadn't stopped for him that night, and Sha told him, "I had just done something, and it was some fucked up shit, and I had to get out of there!" Finally, Martin added that approximately two years earlier, Sha told him, "If a nigger gives me a hard time, I'll bat the nigger out."

Later on February 27, 1997, into the morning of February 28, 1997, a polygraph exam was administered by the Nassau Police to Martin, "in order to validate his assertion" of what he had witnessed. The resulting opinion was that Martin was apparently telling the truth; no significant deception was noted. Only one response was questionable, and was seemingly clarified when the victim was referred to by the examiner as "Sammy," instead of his street name, "Justice." (*See* Defendant's Exhibit A.)

Thereafter, on February 28, 1997, Martin's account of what he had observed was reduced to a signed, written statement. In that statement, which was witnessed by Detective Dempsey and another detective, Martin reiterated that it was "Sha," who he also knew as "Corey" and "Shamel," who had repeatedly hit Jones in the head with a bat and who, days later, said that he hadn't stopped for Martin that night because he "did some fucked up shit and... had to get out of there."

Also on February 28, 1997, Detective Dempsey showed Ragan Martin six photographs, including one of the defendant, Shonnard Lee. Martin positively identified the photograph of Corey Jones as "Sha," also known as "Shamel" or "Corey," and signed a statement attesting to that identification (Defendant's Exhibit C). In addition, Martin did a "drive-by" identification of Jones' home and blue Camaro.

On April 11, 1997, Ragan Martin participated in a videotaped interview with an assistant district attorney (Defendant's Exhibit D). Again, in sum and substance, Martin identified Corey Jones as the person who had attacked "Sammy" with a bat, although the prosecutor proceeded to raise questions regarding the witness's credibility.

At this point, it should be noted that throughout the investigation, which commenced upon the discovery of Sammy, Detective Dempsey interviewed numerous witnesses, some of whom implicated and/or provided a motive for the defendant, Shonnard Lee, his brother, Silas Lee, and others in Jones' death.

On June 13, 1997, Detective Dempsey arrested Tejuan Crum for Jones' death, on the basis of information supplied by Jermell Lawson, that Crum had told Lawson that the defendant, Shonnard Lee, had hit the victim with a stick and Crum had kicked him when he fell down. Crum, however, furnished an alibi, which was verified. He also incriminated the defendant, Shonnard Lee, who had told him that he was "going to fuck Sammy up" for burglarizing his home and trying to sell his VCR, and had subsequently admitted to Crum that he had beaten Jones with his baseball bat.

On June 17, 1997, Detective Dempsey arrested the defendant, Shonnard Lee, from whom he obtained full oral and written confessions. The case was presented to the grand jury on August 28, 1997. As of that date, the defense had not been informed in any way whatsoever about Ragan Martin and/or the information which he had given to the police and the prosecutor. Nor was there any mention of, or testimony by, Martin before the grand jurors. The defendant, who had declined to testify or to call any witnesses before the grand jury, was indicted for one count each of Murder in the Second Degree and Manslaughter in the First Degree.

On January 9, 1998, almost seven months after the defendant's arrest, and five months after his indictment, the defense first learned of Ragan Martin, when Detective Dempsey's handwritten notes of their interview were disclosed by the prosecution as *Rosario* material for the suppression hearing which was about to commence. The People did not turn over a copy of Martin's videotaped interview until May, 1998. At the end of that month, defense counsel was informed that Ragan Martin was in the Nassau County Correctional Center and immediately interviewed him. Thereafter, the People further disclosed Martin's polygraph exam, additional statements and the photo array, from which he had identified Corey Jones as the assailant who had repeatedly hit Sammy in the head with the bat.

Certainly, here, as in **People v Robinson**, 133 AD2d 859, 860:

Even if the prosecution had valid reasons to consider this witness to be unreliable, it should nonetheless have provided the defense with this important exculpatory

information which was clearly *Brady* material (*see, People v Fein,* 18 NY2d 162, 172, *appeal dismissed and cert denied,* 385 US 649).

Indeed, the People do not dispute their breach in this regard.

Nonetheless,

"constitutional error occurs only if the evidence which was not disclosed was material in the sense that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'" (*People v Chin,* 67 NY2d 22, 33, quoting from *United States v Bagley, supra,* at 682; *see also, People v Robinson,* 133 AD2d 859; *People v Alongi,* 131 AD2d 767)

(**People v Valardi**, 150 AD2d 819, 819, *aff'd,* 76 NY2d 67).

Thus, it is settled law that:

The rule of *Brady v Maryland, supra,* does not direct disclosure at any particular stage of the proceedings (*United States v Kaplan,* 554 F2d 577). The issue is whether the evidence was disclosed in time for the defense to use it effectively (*see, People v Simmons,* 36 NY2d 126; *People v MacKey,* 52 AD2d 662)

(**People v Jemmott**, 144 AD2d 694, 696; *see,* **People v Perkins**, 227 AD2d 572, 574; **People v White**, 178 AD2d 674, 675; **People v Bolling**, 157 AD2d 733, 733.) In the particular circumstances presented here, the answer to that question is a resounding no.

Of course, the courts have held that a defendant is not deprived of a fair trial where the exculpatory evidence is disclosed in sufficient time for meaningful opportunity to utilize it threat. *See e.g.,* **People v Cortijo**, 70 NY2d 868, 870. And, it has long been recognized that

[a] Grand Jury proceeding is not a "mini trial" (*People v Brewster,* 63 NY2d 419, 422, *supra,* but a proceeding convened primarily "'to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to a criminal prosecution'" (*People v Valles,* 62 NY2d 36, 38, *supra*)

(**People v Lancaster**, 69 NY2d 20, 30, *cert denied* 480 US 922).

Nevertheless, the People are not without bounds in the grand jury, and must avoid unfounded and/or needless prosecutions. **Id.** at 27 - 28.  Nor may the prosecutor withhold evidence which would materially influence the grand jurors. **People v Holmes**, 118 AD2d 869, 871.

Thus, subject thereto, it has been uniformly held that

"the People maintain broad discretion in presenting their case to the Grand Jury and need not seek [out] evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (*People v Mitchell*, 82 NY2d 509, 515; *People v Lancaster*, 69 NY2d 20, 26, *cert denied* 480 US 922; *People v Kaba*, 177 AD2d 506, 508)

(**People v Ramjit**, 203 AD2d 488, 489).

For, grand jury proceedings are non-adversarial, except for the provisions of CPL 190.50(5) and (6), for the defendant's right to testify and/or request that body to hear certain witnesses. *See*, **People v Martucci**, 153 AD2d 866, 867.

Moreover,

[i]n the ordinary case, it is the defendant who, through the exercise of his own right to testify and have others called to testify on his behalf before the Grand Jury (CPL 190.50[5], [6]), brings exculpatory evidence to the attention of the Grand Jury

(**People v Lancaster**, *supra*, 69 NY2d at 26; *see*, **People v Ramjit**, *supra*, 203 AD2d at 489 - 490).  However, this was not possible in the present case, due directly to the *Brady* violation.

As succinctly stated by one court,

[w]hether and how severely the People should be sanctioned for the *Brady* violation turns on the importance of the evidence lost and to what extent a defendant has been prejudiced by that loss.

\* \* \* \*

In addressing such violations, "the overriding concern must be to eliminate any

prejudice to the defendant while protecting the interests of society." (*People v Kelly*, 62 NY2d 516, 520 [1984])

(**People v Jackson**, 168 Misc.2d 182, 188).

Contrary to the People's contention, the failure at bar is by no means limited to a mere credibility issue properly reserved for trial. *Compare*, **People v Scruggs**, 201 AD2d 514, 515; **People v Martucci**, *supra*, 153 AD2d at 867; **People v Sepulveda**, 122 AD2d 175, 177. Rather, by reason of the complete lack of disclosure of the subject exculpatory evidence, about which the grand jury heard absolutely nothing, defendant's right to testify and, perhaps more importantly, his right to request that the grand jury call Ragan Martin as a witness, were violated. CPL 190.50(5), (6).

Accordingly, fairness dictates, and the law requires, that the above-captioned indictment be and is hereby dismissed, as the product of a defective grand jury proceeding, the integrity of which, on this record, was impaired, and prejudice to defendant may have resulted. CPL 210.20(1)(c), 210.35(4) - (5).

The People are granted leave to represent this case to the same or another grand jury, pending which defendant's bail status is continued. CPL 210.20(4); 210.45(4), (9).

SO ORDERED.

ENTER

_____
HON. ALAN L. HONOROF, J.S.C.

Dated: August 19, 1998, as
        amended October 1, 1998.

C:\DATA\WPDOCS\FORMS\LEE-DEC

7

COUNTY COURT   :   COUNTY OF NASSAU

-------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

          - against -

SHONNARD LEE,

                    Defendant.

-------------------------------------------------------------X

THE GRAND JURY OF THE COUNTY OF NASSAU, by this indictment, accuses the defendant of the crime of MURDER IN THE SECOND DEGREE, in violation of Section 125.25, Subdivision 2, of the Penal Law of the State of New York, committed as follows:

The defendant, SHONNARD LEE, on or about the 10th day of February, 1997, in the County of Nassau, State of New York, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused the death of Sammy Jones on February 21, 1997.

### SECOND COUNT

AND THE GRAND JURY OF THE COUNTY OF NASSAU, by this indictment, further accuses the defendant of the crime of MANSLAUGHTER IN THE FIRST DEGREE, in violation of Section 125.20, Subdivision 1, of the Penal Law of the State of New York, committed as follows:

The defendant, SHONNARD LEE, on or about the 10th day of February, 1997, in the County of Nassau, State of New York, with the intent to cause serious physical injury to another person, caused the death of Sammy Jones on February 21, 1997.

All of the actions and transactions alleged in each of the several counts of this indictment are connected together and form part of a common scheme and plan.

Dated: October 1, 1998
          Mineola, New York

                              DENIS DILLON .O2
                              District Attorney



PLAINTIFF'S
EXHIBIT
# 3

PLEASE TAKE NOTICE that in accordance with the provisions of Section 240.30 of the Criminal Procedure Law, the People hereby demand that within fifteen days of the date of service of this Demand, you disclose and make available to the District Attorney of Nassau County for inspection, photographing, copying or testing: (a) any written report or document or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce same at trial of this action, or if the defendant has filed a notice of intent to proffer psychiatric evidence and such report or document relates thereto, or if same was made by a person, other than the defendant, whom the defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

PLEASE TAKE FURTHER NOTICE that in accordance with the provisions of Section 250.20 of the Criminal Procedure Law, I hereby demand from you and each of you that if you intend upon the trial of this Indictment to offer, for any purpose whatever, testimony which may tend to establish your presence elsewhere than at the scene of the crime or crimes with which you are charged, at the time of their commission, you must, within eight days from the date of service of this Demand, serve upon the District Attorney of Nassau County, and file with this court, a copy thereof, a "notice of alibi" which shall set forth in detail the place or places where you claim to have been together with the names, post office addresses, residences and places of employment and the address thereof of the witnesses upon whom you intend to rely to establish your presence elsewhere than at the scene of the crime or crimes at the time of their commission.

If at the trial of this action the defendant calls such an alibi witness without having served a notice of alibi pursuant to the demand, or, if having served such a notice he calls a witness not specified therein, a motion will be made pursuant to the provisions of Section 250.20 of the Criminal Procedure Law to exclude any testimony of such witness relating to the alibi defense.

PLEASE TAKE FURTHER NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, the People intend to offer at the trial of this Indictment evidence of oral and/or written statement(s) made to a public servant pertaining to the charge set forth in this Indictment.

PLEASE TAKE FURTHER NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, during the trial of this matter, the People expect to introduce testimony identifying the defendant as a person who committed the offenses charged as set forth in this Indictment, which testimony will be given by a witness (witnesses) who has (have) previously identified the defendant.

DENIS DILLON
District Attorney
Nassau County, New York

IND. NO.   2639N-98
Represent of Ind. No. 99791

COUNTY COURT : COUNTY OF NASSAU :  STATE OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

- against -

SHONNARD LEE,

Defendant.

DENIS DILLON
District Attorney

INDICTMENT FOR

MURDER IN THE SECOND DEGREE

MANSLAUGHTER IN THE FIRST DEGREE

A TRUE BILL

Foreman

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,

                              Plaintiff,          **NOTICE OF ALIBI**

          -against-                               Ind. No. 99791

SHONNARD LEE,

                              Defendant.
----------------------------------------x

S I R S :

        **PLEASE TAKE NOTICE** that the above-named defendant intends to

offer a defense at the trial of this action that at the time of the

commission of the crime charged he was at some place other than the

scene of the crime, to wit:  S-K Speed Performance Parts, 273 Sunrise

Highway, Rockville Centre, New York 11570.

        **PLEASE TAKE FURTHER NOTICE**, that the defendant intends to call

the following witnesses in support of such defense:

| **NAME** | **RESIDENTIAL ADDRESS** | **PHONE NUMBER** |
|---|---|---|
| SILAS LEE | 9 Jackson Place<br>Freeport, New York | (516) 868-2362 |

DATED:    Mineola, New York
          January 5, 1998

                              Yours, etc.

                              **DENNIS M. LEMKE, ESQ.**
                              114 Old Country Road, Suite 200
                              Mineola, New York 11501
                              (516) 294-9200

TO:  **HON. DENIS DILLON**
     District Attorney of
     Nassau County
     262 Old Country Road
     Mineola, New York 11501


PLAINTIFF'S
EXHIBIT
# 14

PLAINTIFF'S
EXHIBIT
# 25
PENGAD 800-631-6989

Hom. #141-97
June 18, 1997
Page One

Statement of Shonnard Lee

My name is Shonnard Lee. I am 18 years old. I was born on June 25, 1978. I live at # 9 Jackson Place Freeport, N.J. my home telephone number is 868-2362. I live at this address with my mother, and my brothers Silas and Steven Lee. I am presently unemployed.

I have been told by Detective Dempsey that I have the right to remain silent and not anything that I do say, may be used against me in Court. I also understand that I have the right to talk to a Lawyer before answering any questions, and to have a Lawyer appointed for me free of charge if I cannot afford to hire one. I also understand that I have the right to remain silent, until I have had the chance to talk with a Lawyer.

I understand my rights and wish to make the following statement without talking first with a Lawyer, or to have one present. I am giving this statement freely, and voluntarily.

"I Tz Det. A. Dempsey Sh. 53   x Shonnard Lee

Hom. # 141-97
June 18, 1997
Page = two

Statement of Shonnard Lee

Sometime back in the beginning of February 1997, I was at my house with a friend of mine, by the name of Tajuan Cruz. It was in the afternoon and we decided to leave my house and walk to the Edwards Supermarket on Sunrise Highway Freeport where we bought some food. We then decided to walk a short distance to Tajuan's house in Liberty Park, #510, where we cooked up some food. After we ate at Tajuan's house, we walked back to my house. When we got back to my house, I saw that my older brother Silas was home. He told us that someone had gotten into the house while no one was home, and Tajuan and I were at the store, and someone stole a bunch of stereo equipment from his bedroom and he was pissed.

At first I thought that a friend of mine by the name of Dean Hunt who was living at my house was the one

W/T = Det. R. Dempsey #.53 & Shonnard Lee

Hom # 141-97
June 18, 1997
Page = Three

Statement of Shonnard Lee who broke into my house. Later in that night my friends and I found Dean Hunt hanging out on Broadway Freeport, and I confronted him about the burglary at my house. At this time, I was with my friends Tajuan Rum, Imaan Hall, Terrell Hall, my brothers Silas and Steven.

Dean Hunt told me that he had nothing to do with the burglary, but he was scared and afraid of us. Dean said that maybe my other friend and next door neighbor who I knew as Sammy Jones had something to do with it. I also know Sammy as "Justice". Sammy used to stay at my house alot and he knew where my father Silas kept his stereo stuff in his locked bedroom. A day or two later, I heard that "Justice" was trying to sell a VCR that I thought was my brothers in a drug spot on Broadway Freeport. I made up in my own mind that

W/T = Det. R. Dempsey Sh. 53 & Shonnard Lee

Hom. 141-97
June 18, 1997
Page = Four

Statement of Shonnard Lee

It must have been "Justice" that stole the stuff out of my house and I couldn't believe it, that he would steal anything from my house because I let him stay and eat in my house, when his mother wouldn't let him stay at her house. I then heard from the street that "Justice" was breaking into houses and stealing stuff all over Freeport. I was pissed off and mad at him.

About a week later, some people from the street told me that "Justice" was hanging out down on Parsons Ave. and by a deli on the corner of Broadway and Rosedale Ave. I got this information on a monday night Holiday, which was Residents' Day.

Sometime about 7:30 p.m., I walked from my house down Harrison Ave. to Parsons Ave. then towards Broadway. I was wearing my green Jenny field jacket, blue jeans, and my black

WITS  Det. R. Dempsey Sh. 53 x  Shonnard Lee

Hom. #141-97
June 18, 1997
Page = Five.

Statement of Shonnard Lee.
Reebock Sneakers. I was going to
walk down to the Deli on Broadway,
and look for "Justice". On my way
to the Deli, I think I picked up
a baseball bat from a yard. It may
have been an aluminum bat, but I'm
not sure what yard I picked it up
from. I wanted to have something
with me in case I ran into "Justice"
because I was pissed off at "Justice"
for burglarizing my house. I wanted
to give him a beating, but I also
wanted to protect myself from "Justice",
because he was tough.

The next thing I knew is that
I met up with Justice. I crept up
on him, and I bugged out. I do
know that I may have hit "Justice"
once on the head with the bat, and
I saw him fall down on the sidewalk.
I don't remember if I hit him anymore
times, because I then "bounced" and
I then ran down Parsons Ave. until
"ITE Det. R. Dempsey Sh. 53 x Shonnard he

Hom #141-97
June 18, 1997
Page = Six

Statement of Shonnard Lee

I got to Harrison Ave., then I walked down Harrison Ave. to my house on Jackson Place. When I got to my house my brother Silas came out, and I went with him to an auto parts store, because he had to take a muffler back. We went to the store in Silas' blue Volkswagen Fox 2-door.

On our way back home we turned to on Brookway to Parsons Ave. and we saw the Police Cars and Ambulance lights flashing. We asked someone what happened and a guy told us that someone got stabbed. A couple of days later, my grandmother told me that Jermy Jones was dead. I felt bad because I didn't want to kill "Justice" even though I did it.

I am now at Police Headquarters in Mineola, N.Y. where I have given this statement to Detective Dempsey who is writing it for me. He read it, and I read it and it is the truth.

WITZ Det. P. Dempsey            X Shonnard Lee
                                 X 91 Jackson Place Freeport

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHONNARD LEE,

                                        Plaintiff,                    **VERDICT SHEET**
                                                                       CV 00-0881 (WDW)
                - against -

COUNTY OF NASSAU and ROBERT DEMPSEY

                                        Defendants.

------------------------------------------------------------X

WALL, United States Magistrate Judge:

        According to the principles of law as charged by the Court and the facts as you find them,
please answer the following questions:

I.      **FEDERAL CLAIM-42 USC § 1983 & NEW YORK STATE CLAIM –**
        **False Arrest**

1.      Did defendant Dempsey prove that he had probable cause to arrest plaintiff Lee on
        June 17, 1997?

                        Yes _____   No __✓__

If your answer to question 1 is "Yes," you have found a verdict in favor of the Defendant Robert
Dempsey on the plaintiff's false arrest claim based on federal and state law.  In that event, please
proceed to question 3.

If your answer to question 1 is "No," please answer question 2.

2.      Did plaintiff Lee prove that his injuries were proximately caused by the false arrest?

                        Yes __✓__   No _____

If your answer to question 2 is "Yes," you have found a verdict in favor of Plaintiff Shonnard Lee
on his false arrest claim based on federal and state law. If your answer to question 2 is "No," you
have found a verdict in favor of Defendant Robert Dempsey on the plaintiff's false arrest claim
based on federal and state law. Please proceed to question 3.

COURT'S
EXHIBIT NO. 9
IDENTIFICATION/EVIDENCE
DOCKET NO. CV 00-88
DATE: 5/13/04

II. **FEDERAL CLAIM-42 USC § 1983 -- Denial of Self-Incrimination Right**

3.  Did plaintiff Lee prove that defendant Dempsey affirmatively misled him as to the true nature of the document he was signing and thereby tricked him into signing an involuntary confession?

> Yes ✓      No _____

If your answer to question 3 is "No," you have found a verdict in favor of the Defendant Robert Dempsey on the plaintiff's denial of the right against self-incrimination claim based on federal law. In that event, please proceed to question 5.

If your answer to question 3 is "Yes," please answer question 4.

4.  Did plaintiff Lee prove that his injuries were proximately caused by the these acts?

> Yes ✓      No _____

If your answer to question 4 is "Yes," you have found a verdict in favor of Plaintiff Shonnard Lee on his denial of the right against self-incrimination claim based on federal law. If your answer to question 4 is "No," you have found a verdict in favor of Defendant Robert Dempsey on the plaintiff's denial of the right against self-incrimination claim based on federal law. Please proceed to question 5.

-2-

III.   **FEDERAL CLAIM - 42 USC § 1983 - Falsifying Documents**

5.   Did plaintiff Lee prove that any of the three documents at issue – the "Rights" card, the Lee confession, and the Crum statement – was created by defendant Dempsey?

Yes ___✓___   No _____

If your answer to question 5 is "No," you have found a verdict in favor of the Defendant Robert Dempsey on the plaintiff's falsification of documents claim based on federal law. In that event, please proceed to question 8.

If your answer to question 5 is "Yes," please answer question 6.

6.   Did plaintiff Lee prove that defendant Dempsey knew that any of the documents contained false information that would likely influence a jury's decision?

Yes ___✓___   No _____

If your answer to question 6 is "No," you have found a verdict in favor of the Defendant Robert Dempsey on the plaintiff's falsification of documents claim based on federal law. In that event, please proceed to question 8.

If your answer to question 6 is "Yes," please answer question 7.

7.   Did plaintiff Lee prove that his injuries were proximately caused by the falsification of documents?

Yes ___✓___   No _____

If your answer to question 7 is "Yes," you have found a verdict in favor of Plaintiff Shonnard Lee on his falsification of documents claim based on federal law. If your answer to question 7 is "No," you have found a verdict in favor of Defendant Robert Dempsey on the plaintiff's falsification of documents claim based on federal law. Please proceed to question 8.

### IV. FEDERAL CLAIM–42 USC § 1983 & NEW YORK STATE CLAIM – Malicious Prosecution

8.    Did plaintiff Lee prove that the second grand jury indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith?

Yes   ✓   No _____

If your answer to question 8 is "No," you have found a verdict in favor of defendant Robert Dempsey on the plaintiff's malicious prosecution claims under federal and state law. Please proceed to "Instructions."

If your answer to question 8 is "Yes," please proceed to question 9.

9.    Did plaintiff Lee prove that defendant Dempsey acted without probable cause for commencing and/or continuing the criminal proceeding against plaintiff?

Yes   ✓   No _____

If your answer to question 9 is "No," you have found a verdict in favor of defendant Robert Dempsey on the plaintiff's malicious prosecution claims under federal and state law. Please proceed to "Instructions."

If your answer to question 9 is "Yes," please proceed to question 10.

10.    Did plaintiff Lee prove defendant Robert Dempsey acted with actual malice in commencing and/or continuing the criminal proceeding against plaintiff?

Yes   ✓   No _____

If your answer to question 10 is "No," you have found in favor of defendant Robert Dempsey on the plaintiff's malicious prosecution claim based on federal and state law. Please proceed to the "Instructions."

If your answer to question 10 is "Yes," please proceed to question 11.

11.    Did plaintiff Lee prove that his injuries were proximately caused by the malicious prosecution?

Yes   ✓   No _____

If your answer to question 11 is "Yes," you have found a verdict in favor of Plaintiff Shonnard Lee on his malicious prosecution claim based on federal and state law. If your answer to question 11 is "No," you have found a verdict in favor of Defendant Robert Dempsey on the plaintiff's malicious prosecution claim based on federal and state law. Please proceed to the "Instructions."

### INSTRUCTIONS

If your answer to <u>ANY</u> or all of questions 2, 4, 7, and/or 11 is "Yes," you have found a verdict in favor of plaintiff SHONNARD LEE on one or more causes of action.  In that event, please answer the appropriate damages questions that follow.

If your answers to <u>ALL</u> of questions 2, 4, 7, and/or 11 are "No" or left unanswered, then you have found a verdict in favor of the defendant ROBERT DEMPSEY on all causes of action.  In that event, <u>do not</u> answer the damages questions, cease deliberations, foreperson please sign and date the verdict sheet and advise the Court by note that you have reached a verdict and are ready to return to the courtroom.

### DAMAGES

**Compensatory Damages**

12.     Please state the amount of compensatory damages, if any, you award to plaintiff SHONNARD LEE for his injuries and his pain and suffering to the present date.

$150,000

**OR**

**Nominal Damages**

13.     We decline to award the plaintiff SHONNARD LEE compensatory damages, but award nominal damages in the sum of (not to exceed $1.00):

$ _____

**Punitive Damages**

14.     Do you award punitive damages to the plaintiff SHONNARD LEE against the defendant ROBERT DEMPSEY?

Yes __✓__   No _____

If your answer to question 14 is "Yes", please answer question 15.  If your answer to question 14 is "No," please proceed to the end of this sheet.

15.     We award punitive damages in favor of the plaintiff SHONNARD LEE against the defendant ROBERT DEMPSEY in the sum of

$1,250,000

Foreperson, please sign and date the verdict sheet and advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

Dated: Central Islip, New York
May _18_, 2004

_Diane Basso_
FOREPERSON

-6-