PX 377

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x   Civil Action No:
SHONNARD LEE,                                          CV00-881(JS) (WDW)

                                            Plaintiff,

                   v.                                          **AFFIDAVIT**

NASSAU COUNTY, DETECTIVE ROBERT DEMPSEY,
AND NASSAU COUNTY POLICE COMMISSIONER
DONALD KANE,
                                   Defendant(s).
-------------------------------------------------------------------------x

State of New York   )
                    : ss.:
County of Nassau   )

        ROBERT MOORE, being duly sworn deposes and says under the penalty of perjury.

1.    On September 14, 1995, at 11 p.m., a Mr. Joshua Chisolm was the victim of a robbery resulting in his death.

2.    On that date and time, I was returning home from the local deli smoking a marijuana cigarette. Patrol cars approached me, screeching to a halt and then officers jumped out of the car. Afraid I might get arrested for the joint, I ran.  I was chased, apprehended by police and accused of robbing and murdering Joshua Chisolm.

3.    I had nothing to do with the robbery and shooting of Chisolm and I told the police that. I was taken to Hempstead police department and a short time later transferred to the Nassau County homicide bureau.

4.   While in the custody of the Nassau County homicide bureau I was interrogated by Detectives Volpe and Mullen. I was never read my rights. I was repeatedly denied my requests to call my family members and to have an attorney.

5.   I was in custody for approximately 24 hours.  My family members were trying to contact me for nearly the entire time I was in custody. They were lied to and mislead. Frustrated, my surrogate mom drove to Headquarters in Mineola and requested to see me. She was told that I was not there but was instead at the third precinct in East Williston.  She then drove to the third precinct where she was told that I was being held downstairs but that she could not see me.  The police assured her that I was going to be released shortly. The detectives at the third precinct told my "mom" that they would personally drive me home.

6.   This, of course, was a lie, as I was never brought to the third precinct. When my mom was sent to the third precinct I was at the homicide bureau being interrogated by detectives Volpe and Mullen.  Significantly, I had yet to sign my so called confession at that point.

7.   My "mom" had a witness to all this. Her husband, a minister, was present during these events..

8.   The court should be aware of the following facts during my interrogation at the homicide bureau:

a)  I was never advised of my constitutional rights by any of the Nassau homicide detectives involved in my case. On multiple occasions I requested

GR000863

to speak to an attorney and my requests were denied. I also told them on numerous occasions that I did not want to talk about it any longer, I had nothing to do with it and to leave me alone. They ignored these requests, continued to abuse me and accuse me of the murder.

b)    I understand that Lieutenant Guidice claims, that since 1992, he has never heard one of his detectives yell or curse at a criminal suspect or make promises regarding a reduced sentence to induce someone to sign a confession(Exhibit B, pg.70-74). In my case that statement is comical as I was screamed at , lied to and threatened by the detectives throughout the course of my interrogation. I was told statements such as I better talk or I was going to " fry in the electric chair", "do you know what niggers smell like when they burn". I was offered all sorts of sentencing deals if I would just talk. For example, they told me we could make it look like an accident so I would get a lighter sentence and that they would talk to the judge for me.

c) the detectives were in my face calling me a liar, that they had my fingerprints and other evidence, and that I was going down unless I confessed.  To intimidate me, they got six inches from my face and started screaming.

On the second day of my interrogation, the police got my friend from work and told him they knew I was involved in the murder. They told him that they had eyewitnesses, physical and forensic evidence and that he better talk to me or I was getting the electric chair(the court should be aware that at the depositions, Detective Volpe admitted there was no physical, forensic or eyewitness evidence against me).They told me they wanted the names of the other guys involved in the shooting. The police claimed there were three

people involved. My friend came in and I told him everything that was happening. How the cops were abusing me, would not let me call anyone or get an attorney. I told him how they just kept telling me that I was a fucking liar and they knew I was involved. My friend told me they wanted the names of the others involved.

d) The detectives then told me that if I gave them a statement and some names that they would let me go. I was scared and tired and they repeated the promise to my friend. At that point, I had been interrogated on and off for almost 20 hours.  Accordingly,  I said "o.k." and I gave them two names. They then plugged those names into a written confession.  They prepared this statement and told me if I sign it I'll go home, if not, I would be locked up. Of course, I signed the statement and they released me. In the statement itself it said I participated in the robbery. Despite the fact that I signed a confession saying I participated in a felony murder I was released It is undisputed that I had nothing to do with this crime.  A week later I was again arrested.  Again, I was never read my rights.  Again my requests for a lawyer were ignored. Det. Volpe contnued to tell me "your full of shit, the name of the guys you gave us are bogus, one was in jail." I told Volpe, no kidding, I told you the entire time I was not involved and you tell me I am going to prison unless I come up with some names so I made up some names.

e) The alleged confession was forwarded to prosecutors and I was arrested for r obbery a nd f irst d egree m urder. W hile i n p rison I was awaiting t he District Attorney's decision to pursue the death penalty. On October 1, 1995,

GR000865

during an arrest for an unrelated robbery, one Andre Myriee advised the

police that he knew who was involved in the robbery and murder of Chisolm.

All three were arrested and confessed. I was released on October 2, 1995

f) At the deposition of my civil case the police lied regarding the events

surrounding my arrest, interrogation and alleged confession.

They lied for each other to cover up their behavior.

g) On the issue of credibility,  the Court should be aware that the County

settled  my  claim  for  $79,500.00,  for  approximately  two  weeks  of

incarceration .

9.     My  experience  with  the  members  of  the  homicide  bureau  between

September  14,  1995  and  September  15,  1995  was  horrendous.  The

Detectives in my case blatantly ignored my constitutional rights to remain

silent, to counsel and lied to my family regarding my whereabouts to prevent

them from assisting me .    I was also threatened, intimidated and lied to

throughout the course of my confinement at the homicide bureau.


Dated:       Mineola, New York
             February 10, 2003

                                             _Robert Moore_____
                                             ROBERT MOORE

Sworn to before me this
10TH day of February, 2003.

_____
    NOTARY PUBLIC