PX 350

```
 1                UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF NEW YORK
 3
 4   JOHN KOGUT,                      :
 5            Plaintiff,              :
 6        v.                          : Case No. CV-06-6695
 7   THE COUNTY OF NASSAU, et al.,    :    (Seybert, J.
 8            Defendants.             :    (Wall, M.J.)
 9   _____
10   JOHN RESTIVO,                    :
11            Plaintiff,              :
12        v.                          :
13   THE COUNTY OF NASSAU, et al.,    :
14            Defendants.             :
15   _____
16
17        Deposition of PETER A. WEINSTEIN taken on
18   behalf of the Plaintiff J. Restivo at the offices
19   of OFFICE OF THE NASSAU COUNTY ATTORNEY, One West
20   Street, Mineola, New York, on Thursday, February
21   10, 2011, commencing at 10:07 in the forenoon
22   before PATRICIA MULLIGAN CARRUTHERS, a Certified
23   Court Reporter and Notary Public of the State of
24   New Jersey and Notary Public of the State of New
25   York.
```

1  Brooklyn DA's office.
2      A.    Yes, he did.  Went back to the
3  DA's office in 1983.  Elizabeth Holtzman was now
4  the district attorney.  A few months after I went
5  back I was promoted to deputy bureau chief and then
6  first deputy bureau chief in EPL's bureau.
7             I stayed at the Brooklyn DA's
8  office from 1983 until approximately -- I went back
9  to the Brooklyn DA's office in May of 1983, and I
10 stayed there until August of 1991 when I had the
11 opportunity to be chief of the appeals bureau here
12 in the Nassau County DA's office and worked in the
13 Nassau County DA's office from 1991 until my
14 retirement in December of 2009.
15     Q.    And now you are teaching?
16     A.    Yes.  Other than being retired I
17 teach criminal procedure at St. John's Law School
18 as an adjunct professor.
19     Q.    Now, during the course, first, of
20 your time at the Brooklyn DA's office when you were
21 in the appeals bureau did you have occasion to do
22 anything with respect to trials?  Was that part of
23 the training process at all?
24     A.    When I was in the Brooklyn DA's
25 office I was assigned to the criminal court bureau

8

```
 1   there's -- it's routinely -- that it's routine to
 2   be skeptical that the police officer has been
 3   intentionally or inadvertently providing
 4   information to the jailhouse informant.  That --
 5         Q.    Let me try this.  You recall that
 6   there was a witness in this case Kenneth Cockerel?
 7         A.    Yes.
 8         Q.    And that he was brought in to
 9   testify before the grand jury.
10         A.    Yes.
11         Q.    And that he gave testimony that
12   Detective Volpe, among others, but particularly
13   Detective Volpe had engaged in improper behavior in
14   order to try to get him to give incriminating
15   information against John Restivo?
16         A.    Can you be more specific?
17         Q.    Sure.  If I can recall.  I can get
18   you the testimony to look at, but do you recall
19   anything about Cockerel testifying initially before
20   the grand jury that Volpe had threatened him and
21   actually had a baseball bat that he was slamming in
22   his hands when he was asking Kenneth Cockerel to
23   give information against Restivo?
24         A.    I don't recall that.  I don't
25   recall it.
```

1    Q.    You remember something about an
2    issue there with respect to coercion of Kenneth
3    Cockerel and later during the course of the grand
4    jury Mr. Klein threatened to have him charged with
5    perjury and then he --
6    A.    I do remember that.
7    Q.    -- flipped back. So it's quite
8    possible that --
9    MR. SCHECK: Withdrawn.
10   Q.    I'll try to get this to refresh
11   your recollection with particularity about that.
12   Was there -- There was also allegations in this
13   case certainly that the confession of Kogut had
14   been improperly obtained and coercion and feeding
15   of information was involved on the part of Volpe.
16   Correct?
17   A.    I remember that that accusation
18   was made, yes, that that allegation was made.
19   Q.    And that was an important issue --
20   A.    I actually -- Odd. Something I
21   remember reading. I actually recall reading
22   Kogut's Huntley hearing testimony.
23   Q.    And --
24   A.    I actually was not persuaded by
25   it. I did not think it was -- I did not think his

169

PETER A. WEINSTEIN

BARKLEY
Court Reporters