**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____X

**JOHN KOGUT,**
                              **Plaintiff,**

**THE COUNTY OF NASSAU, POLICE COMMISSIONER**
**JAMES LAWRENCE, DETECTIVE SEAN SPILLANE,**
**DETECTIVE DENNIS FARRELL, CAROLANN HESSMAN AS**
**EXECUTRIX OF THE ESTATE OF DETECTIVE JOSEPH VOLPE,**
**DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT**
**MARTINO, DETECTIVE WAYNE BIRDSALL, DETECTIVE**
**CHARLES FRAAS, DETECTIVE FRANK SIRIANNI, DETECTIVE**
**HARRY WALTMAN, P.O. MICHAEL CONNAUGHTON, P.O.**
**WILLIAM DIEHL, JOHN DOES 1-5, DETECTIVE THOMAS**
**ALLAN, DETECTIVE RICHARD BRUSA, DETECTIVE JACK**
**SHARKEY, DETECTIVE DANIEL PERRINO, DETECTIVE**
**SERGEANT CAMPBELL, and RICHARD ROE SUPERVISORS 1-10**


_____X

## STATEMENT OF FACTS

**I.**    **Plaintiffs 404(b) Application**

Robert Moore Case:

Defendant Joseph Volpe has admitted to participating in the September 1995 multiple interrogations of Robert Moore along with a Detective Mullen, which resulted in Moore being coerced into signing a false confession in which he allegedly admits to participating in the robbery and shooting death of Joshua Chisolm, a taxi cab driver, despite the fact that Moore had nothing to do with the incident. [DE 237-4, Kogut Exhibit D, Volpe Deposition 11/19/10, pp. 268-269; DE 224-19, Defendants Exhibit S, Moore Confession] Like Kogut, Moore's confession names two other innocent individuals as participants, details the acts allegedly committed by these individuals, and contains detailed nonpublic facts concerning the crime known to Defendant Volpe and unknown to Robert Moore. [DE 224-19, Defendants Exhibit S] Among the

nonpublic facts were the name of the taxi cab company that owned the vehicle, "Pub Taxi," that the taxi driver was shot two times, the exact location of the events, and specific physical evidence known to police concerning the crime scene [id.]

Robert Moore was arrested and charged with murder. Ten days after Moore's arrest and resulting incarceration, Douglas Smith, Gregory Brock and Adrienne Hadgen, aka "Country," the three true perpetrators, were arrested and charged with the robbery and shooting death of Joshua Chisolm. On October 17, 1995, Assistant District Attorney Joseph Dumpkowski of the Nassau County District Attorney's Office made the following application:

> "I am here today, Judge, asking the Court to dismiss the charges in this particular felony complaint. The information that we have with respect to this particular crime is that from eye witnesses—this is a robbery, you'll recall perhaps, in Hempstead of a cab driver where a cab driver during the course of the robbery was shot numerous times during the course of the commission of the crime and subsequently died from the injuries. Eye witnesses who were present during this particular time that the crime was committed indicated that three individuals ran from the cab shortly after the crime took place. During that particular evening this defendant was brought in for questioning and was subsequently arrested for the charges, the robbery of this particular cab driver. The investigation continued, since there were obviously other individuals who were not yet apprehended. Subsequently, Judge, an individual was arrested on an unrelated robbery charge. That individual gave indications that a person by the name of Gregory Brock was involved in the commission of the robbery charged in this felony complaint. The individual by the name of Gregory Brock was questioned and confessed both in a signed statement and videotaped confession of being involved in that particular homicide. **In his particular statements both—in the videotaped statement regarding the involvement of the crime he indicates that this defendant, Mr. Robert Moore, was not involved in the crime. He said he didn't even know a person named Robert Moore.** After this person Brock was arrested, there were other individuals by the name of Adrienne Hudgen, H-U-D-G-E-N— Adrienne is the first name—and Douglas Smith were also questioned with respect to that robbery. Those individuals also gave confessions in writing, and Mr. Smith gave a videotaped confession regarding their involvements in this particular murder.

**All those individuals who were subsequently arrested and charged, that is Gregory Brock and Adrienne Hudgen and Douglas Smith have indicated to the police that this defendant, Robert Moore, was not involved in that murder.** The homicide squad has developed information which corroborates their confessions, physical evidence, testimonial evidence, and otherwise, indicating that those three individuals, Brock, Hudgen, and Smith are the individuals who committed this robbery. All our information is that this defendant didn't commit this particular homicide; and as a result, Judge, of that information, we're before you asking that this particular felony complaint be dismissed."

[DE 267-4, Kogut Exhibit P-4, Transcript of Proceedings, <u>People</u> v <u>Moore</u>, October 17, 1995, Index No. 27302/95]

Following the dismissal of his criminal charges, Robert Moore commenced a lawsuit in the Eastern District of New York against several individual police officers and municipal defendants [DE 269-2, Kogut Exhibit P-10] asserting that he was coerced into signing his "confession" through use of physical and verbal threats, which included threats of his execution[1]. Moore, who spent 10 days in jail following his arrest, settled his civil claim for $90,000. [<u>id</u>. at ¶s 30-36]

At John Kogut's 2005 re-trial, the defendant Volpe admitted the Moore confession implicating him and two other innocent people "was found out to be" "completely false." He went on, however, to falsely assert under oath that Robert Moore, as stated in his false coerced confession, was at the scene of the robbery/murder and witnessed it. [DE 272-4, Kogut Exhibit O, Volpe 2005 trial testimony, pp.1491-1492] In his deposition Volpe attempted to qualify his false 2005 trial testimony in asserting that because he only learned after Moore signed his confession that he (Moore) was not at the scene, or as he stated, "well, that's post this [the false confession]" that this somehow excused his false assertion that Moore was at the scene. [DE

---

[1] Moore was the first homicide arrest in Nassau County following the adoption of new death penalty legislation in New York State, and was therefore represented by the Capital Defenders Office.

237-4, Kogut Exhibit D, Volpe Deposition 11/19/10, pp. 250-251] At his deposition, Robert Moore unequivocally testified he told defendant Volpe that he was not at the scene and was not involved in the robbery or shooting. [DE 265-2, Kogut Exhibit Q, Part 2, Moore Deposition, 8/25/96, p. 37] "I didn't do nothing, and if you want you can call my aunt, my mother or my cousins and they will tell you that I was home that evening at the time when it happened." Moore also was denied the use of the phone [id. at p. 39] and was not read his rights. [DE 265-3, Kogut Exhibit Q, Part 3, Moore Deposition, p. 45]

Shonnard Lee Case:

On February 10, 1997 at 19:30 hours, the body of Sammy Jones was discovered in front of 10 Parson Avenue, Freeport, New York. Sammy Jones, a known drug dealer was found unconscious and suffering from obvious and severe head trauma as a result of an assault. Mr. Jones died within days of his assault.

The defendant Robert Dempsey, who along with Volpe conducted the Kogut interrogation, was assigned to investigate the Sammy Jones murder. In the Kogut matter, Dempsey testified that it was Kogut who provided him and Volpe with all the facts surrounding the abduction, gang rape, and murder of Theresa Fusco. [Exhibit T, Dempsey's 2005 trial testimony, p. 1290-1294, previously marked Plaintiff's Exhibit 187]

On June 18, 1997, Shonnard Lee, then 17 years old, at the direction of defendant Dempsey, was arrested and brought into police headquarters to be interrogated by defendant Dempsey. Det. Dempsey's interrogation of Mr. Lee lasted for many hours all the while Mr. Lee professed his innocence and steadfastly denied having any knowledge of, or participation in, the murder of Sammy Jones. Throughout the interrogation Shonnard Lee invoked his right to counsel and his right to remain silent, but those assertions of rights were ignored by the

defendant Dempsey. Unable to get Mr. Lee to go along with the story he was feeding him, defendant Dempsey told Shonnard Lee he had to sign some papers before he could be released. The papers Dempsey had Lee sign turned out to be a confession Dempsey had written in Lee's name. [DE 224-23, Defendants Exhibit W, Lee Statement] Just as with Kogut and Moore, Dempsey inserted nonpublic facts, scientific and medical data he acquired during his investigation, into the Lee confession which included a weapon consistent with the injuries suffered by the victim, the fact that the victim was hit in the head, and other, relevant crime scene evidence. [id.]

Having falsified Lee's confession, Dempsey then withheld critical Brady material, a February 28, 1997 statement written by Dempsey of an eyewitness to the murder, Ragan Martin, identifying the actual assailant of Mr. Jones. This evidence was discovered during a pretrial hearing by Dennis Lemke, Esq., Lee's attorney. Just as in the plaintiff's case with respect to the suppression of the John French and Debbie Smith evidence, Dempsey and the homicide bureau failed to disclose the existence of a witness with critical, exculpatory evidence. Also similar to the instant action, the excuse given by Dempsey for not disclosing the evidence was his conclusion that the information possessed by the witness, Ragan Martin, was unimportant and that he, Dempsey, questioned Ragan Martin's credibility. Dempsey asserted this position during the Lee civil rights trial despite the fact that Regan Martin had taken and passed a lie detector test, administered by Dempsey and the NCPD and before giving his statement and despite the independent corroboration of his account in the statement by a civilian employee of the Nassau County Police Department. [DE 240-2, Kogut Exhibit R-3, Statement of Regan Martin] As a result of that Brady violation the indictment against Lee was dismissed, the matter was then re-

presented to the grand jury, Lee was re-indicted, tried and acquitted. [DE 224-22, Defendants Exhibit V, Lee Dismissal]

Lee sued for false arrest, malicious prosecution, and numerous other constitutional claims under 42 USC 1983. Lee's federal civil rights case was assigned to your Honor (Dkt # 00 CV 0881(JS)(WDW)), and tried before Magistrate Wall. The jury found in favor of Shonnard Lee. Significantly, the jury awarded $750,000 dollars in compensatory damages for the 21 months Lee spent in jail, and $1,250,000 dollars in punitive damages against Dempsey for fabricating evidence, namely the rights card, a witness statement incriminating Lee signed by his good friend, and Lee's "confession." [see, DE 240, Kogut Exhibit R, Verdict Sheet, Exhibit R, Lee Conspiracy Book previously marked Plaintiff's Exhibit 243, R-1] The verdict in Lee's case was reported in the press on May 19, 2004, "Jury concludes ex-LI man was charged without sufficient evidence and that cops fabricated confession."[DE 240-1, Kogut Exhibit R-2, Newsday Article, May 19, 2004]

II.    **The Non-Disclosure of Defendants' Proposed Expert Witnesses Spratt and Buffolino**

The defendants advised Plaintiff's counsel during a telephone conference two weeks ago that they intend to call as expert witnesses Ms. Elizabeth Spratt and Dr. Pasquale Buffolino, both of whom testified as prosecution expert witnesses during the plaintiff Kogut's 2005 re-trial. When it was pointed out to defense counsel that the defendants never named Dr. Spratt and/or Dr. Buffolino as an expert witnesses by providing the plaintiffs with the required F.R. Civ. P. 26(a)(2)(B)(i)to(v)disclosures, defense counsel advised the plaintiffs' counsel that "you know what they are going to say from their 2005 trial testimony."

When the parties appeared before the Court on January 18, 2012 and received the September 4, 2012 trial date, a schedule for the remaining F.R. Civ. P. 26(a)(2)(B) disclosures

was agreed upon, to wit; March 16, 2012 for all affirmative experts the parties intend to call and April 16, 2012 for all rebuttal expert witness disclosures. [ Exhibit A -Transcript of Proceeding of January 18, 2012 pp. 14, 19 and 20] On the March 16, 2012 deadline date for disclosure, the defendants did not provide the plaintiffs with any Rule 26 (a)(2)(B)(i-vi) Expert witness disclosures for Mr. Spratt or Buffolino. In accordance with a prior discovery order, the defendants provided the plaintiffs with Rule 26(a)(2)(B)(i-vi) disclosures for Dr. Terry Melton, an expert witness in mitochondrial DNA testing who testified at the plaintiff Koguts's 2005 trial as a prosecution witness[2]. Conversely, it is significant to note, that on March 16, 2012, the plaintiffs provided the defendants with Rule 26 expert witness disclosures for Dr. Max Houck, Dr. Peter DeForest, Nicholas Petraco, and Dr. Saul Kassin all of whom, except for Dr. Houck, testified as defense witnesses at the 2005 retrial.

At the 2005 retrial, Mr. Spratt testified as an expert witness in toxicology concerning the effects of certain drugs on an individual's central nervous system and the ability of individuals to perform certain acts while under the influence. Dr. Buffolino testified as to a study he had conducted concerning the examination of vaginal secretions post coitus.

## III.    Clink Letter

There is a copy of a note, [hereinafter, "Clink letter"] written by an inmate at the Nassau County Jail, Charles Clink. The **original** of the Clink letter has never been produced in the 28 year history of the case. The Clink letter purports to be a statement by the plaintiff Kogut admitting to the murder of Theresa Fusco with "John Restivo" in addition to being present when "Dennis" [presumably Dennis Halstead] raped and killed "Kelly." [presumably Kelly Morrissey] (Exhibit B)

---

[2] The Plaintiffs' provided the defendants with Rule 26 Expert Witness disclosure in accord with the same order, for Dr. Charles Honts, a polygraph expert who also testified at Kogut's 2005 trial as a defense witness.

In none of the criminal trials of the plaintiffs did the prosecution ever attempt to introduce the Clink letter into evidence. Furthermore, Charles Clink has never testified at either of Kogut's criminal trials, he has never been deposed, and he has never given an affidavit or sworn statement attesting to the authenticity of the letter. Furthermore, there exist no reports or testimony detailing when and how the alleged original Clink letter came to be in the possession of the Nassau County Police Department. Lastly, throughout the history of this litigation there has been no discussion of the Clink letter in any of the 50 or so depositions conducted except for the deposition of the Plaintiff Kogut in late January of this year. Defense counsel has stated to the undersigned that Charles Clink will not be called as a witness for the defendants at the trial of this case, and further that they, the defendants, do not intend to attempt to use the Clink letter on its direct case, but they do however, reserve the right to use it for impeachment purposes and/or in rebuttal.

According to the reports, the Clink letter was examined by an unidentified handwriting expert for the police sometime before the Plaintiff Kogut's original trial and it was determined that the body of the letter or the alleged statement was written by Clink. The same unknown expert opined that the signature at the bottom of the page was in the Plaintiff Kogut's handwriting. (Exhibit C – Handwriting Opinion) The Clink letter, dated July 13, 1985 was written five days after the Defendants, Volpe and Sirianni met with Clink at the Nassau County Jail where Clink was housed pending disposition of his murder case[3]. During the meeting with Volpe and Sirianni, Clink allegedly told them Kogut had previously made admissions to him and presumably that he could get Kogut to do it again because after the meeting, according to Volpe notes, Volpe made arrangements so that "Kogut and Clink will be together again ASAP" in the Nassau County Jail. (Exhibit D – Volpe Notes pg. 3)

---

[3] Clink ultimately plead guilty to murder and was sentenced to 25 years to life.

According to the Plaintiff Kogut the Clink letter was given to him by Clink and he was told he had to sign it if he wanted the beatings he was constantly receiving in the jail to stop. Attached are Nassau County Jail records documenting two separate hospitalizations of Kogut on March 30, 1985 and May 20, 1985 as a result of beatings he received in the jail prior to July 13, 1985. (Exhibit E) Kogut testified at his deposition that Clink was an "animal" and "the boss of the company [the jail tier], like everybody was afraid of him. They did what he wanted…them to do." Kogut explained that Clink "was sending people at me to beat me up…All day, constantly" and Clink came to Kogut and said "I have this statement here; if you sign it all of this will stop (the beatings)…And it was…At that point just to stop it…I would have admitted to killing you." [DE 275-3 Kogut Exhibit, Kogut Deposition, Pgs. 193-196] Later Clink realized that the Plaintiff was in fact innocent and apologized to him for forcing him to sign the letter. (Id, at pg. 196)

## DISCUSSION OF LAW

**I.    EVIDENCE OF JOSEPH VOLPE'S CONDUCT IN THE ROBERT MOORE CASE AND ROBERT DEMPSEY'S CONDUCT IN THE SHONNARD LEE CASE IS ADMISSIBLE UNDER F. R. EVID. 404(b)**

F. R. Evid. 404(b) prohibits the introduction of character evidence which shows only that a person is predisposed to commit other wrongs or acts to prove that the individuals conduct was consistent with that predisposition during the events in issue. Berkovich v Hicks, 922 F.2d 1018, 1022 (2nd Cir. 1991); Lewis v City of Albany Police Dept., 547 F. Supp. 2d 191, 200-201 (N.D.N.Y. 2008)

Evidence of other wrongs or acts is admissible under Rule 404(b) for purposes other than to show propensity such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, F. R. Evid. 404(b), subject to the limitations of F.R. Evid. 403 i.e., will the evidence create unfair prejudice or have a tendency to confuse the issues

or delay the trial which outweighs its probative value. Ismail v Cohen, 899 F.2d 183 (2nd Cir. 1990)

Under the Second Circuit's "inclusionary approach" to 404(b) evidence of other wrongs or acts is admissible for any purpose other than to show a defendant's propensity so long as the other wrongs or acts are "relevant to some disputed issue in the trial" and it satisfies the probative - prejudice balancing test of Fed. R. Evid. 403. United States v Harris, 733 F.2d 994, 1006 (2nd Cir. 1984); United States v Figueroa, 618 F.2d 934, 939 (2nd Cir. 1980) Examples of other purposes not specified in Rule 404(b) for the admission of other wrongs or acts are: to prove an aggravated state of mind to establish the defendant acted maliciously, O'Neil v Krzeminski, 839 F.2d 9, 11 (2nd Cir. 1988); to complete the story of the crimes charged, United States v Harris, supra; to show the basis for a defendant's trust of a witness, United States v Moten, 564 F.2d 620, 628 (2nd Cir. 1977); to show the background and development of a conspiracy, United States v Torres, 519 F.2d 723, 727 (2nd Cir. 1977) If the other wrong or act evidence is offered for a proper purpose, it does not make any difference whether the act sought to be proved occurred before or after the events in dispute. United States v Germosen, 139 F.3d 120, 128 (2nd Cir. 1988)As stated in United States v Brennan, 798 F.2d 581, 589 (2nd Cir. 1986), "The trial judge has broad discretion to admit 'other crimes' evidence under Rule 404(b) and he will not be overturned on appeal absent abuse of discretion...Other crimes' evidence may be admitted to complete the story of the crimes charged."

In the instant case, the plaintiff seeks to introduce evidence that on September 14, 1995 Joshua Chisolm, a taxi driver, was murdered during a robbery, and defendant Volpe soon thereafter coerced Robert Moore into signing a "Rights Card" and false confession in which he not only implicated himself in the shooting death of Mr. Chisolm, but also two other innocent

individuals. The Plaintiff also seeks to introduce evidence that defendant Dempsey fabricated a witnesses statement, rights card and false confession implicating Lee in the murder of Samuel Jones. In addition, the Plaintiff seeks to introduce the suppression of the Regan Martin statement, an eyewitness to the murder, wherein Martin named another, not Lee, as the assailant in the beating death of Jones, resulting in Supreme Court Judge Alan Honoroff's dismissal of Lee's first indictment citing a clear Brady violation. [DE 224-19, Defendants Exhibit S]

Finally, the plaintiff seeks to introduce the proof that the Moore confession was acknowledged to be false by the prosecution and that the real perpetrators advised authorities of the fact that Moore played no role in the murder, resulting in the dismissal of all charges. As to Lee, the plaintiff seeks to introduce the civil verdict sheet rendered in the Lee civil rights trial which establishes the jury had concluded that defendant Dempsey fabricated material evidence against Lee which he later introduced maliciously at Lee's criminal trial.

In the instant case, both Volpe and Dempsey maintain they did not coerce the plaintiff into signing the confession, did not feed him any of the facts contained within the alleged voluntary confession, and afforded him his Miranda rights. The plaintiff on the other hand maintains he repeatedly told Volpe and Dempsey he did not know anything about the Fusco murder and that they fed him all of the information contained in his statement.

Volpe's conduct in the Robert Moore case and Dempsey's conduct in the Shonnard Lee case are relevant to show Volpe's and Dempsey's mode of interrogation, intent, absence of mistake, and malice in extracting a false confession from the plaintiff John Kogut. Volpe admits Moore's confession was false and Dempsey was found to have created false documents, tricked Lee into signing the confession and acting with actual malice in commencing and/or continuing the criminal proceedings against Lee. Both Moore and Lee insisted they were innocent

throughout their interrogations but Volpe and Dempsey refused to listen to them insisting that they were involved, feeding them information about the crimes, and writing confessions for them containing nonpublic facts unquestionably known to them but not Moore, Lee, or the plaintiff, John Kogut. The Moore and Lee evidence establishes that neither Volpe nor Dempsey cared when they were interrogating the defendant what the truth was and that their goal was to close out the case no matter the truth.

## II.   THE COURT SHOULD ISSUE AN ORDER PRECLUDING THE DEFENDANTS FROM CALLING EXPERT WITNESSES SPRATT AND BUFFOLINO FOR FAILURE TO COMPLY WITH THE SCHEDULE ORDER REQUIRING TIMELY NOTICE OF ALL EXPERT WITNESS.

Under F.R. Civ. P. 26(a)(2)(D) a parties rule 26(a)(2)(B)(i-vi) disclosures must be made "at the times and in the sequence that the court orders." In the instant case the Defendants' have failed to comply with the Court's scheduling order by providing the Plaintiffs' with the disclosure required by Rule 26(a)(2)(B)(i-vi) and as a result the Court should exclude any and all proposed expert testimony from Ms.  and Dr. Buffolino.

F.R. Civ. P. 37(c)  provides as follows:

"If a party fails to provide information, or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless"

To this day the Plaintiffs' have not been provided with any Rule 26 (a)(2)(B) (i-vi) disclosures for Ms. Spratt and Dr. Buffolino and instead they were told by defense counsel that you know what they are going to say from their 2005 trial testimony. This argument, if adopted, would act as a waiver of Rule 26 disclosure requirements for any expert witness who testified during the underlying criminal action, thus leaving these now "civil" experts exempt from all disclosure requirements.  The Plaintiffs' have timely disclosed to the Defendants, at substantial

cost and effort, its own experts, including those who testified at Kogut's 2005 re-trial. The Defendants' have had the benefit of studying and reviewing the expert reports of the Plaintiffs before deciding on its own experts. To permit the Defendants' to call Ms. Spratt and Dr. Buffolino is contrary to the spirit and intent of the scheduling order which was the simultaneous exchange of expert reports by the parties, and serves to provide the Defendants' with an unfair tactical advantage that would operate to the material prejudice of the Plaintiffs'. Knowing what expert testimony the other side is presenting and deciding on the expert testimony you are going to offer is a huge tactical advantage which enables the non-disclosing party to fill in the perceived gaps in its opponents case, all of which is exacerbated by the failure to provide the following: a signed report, the facts upon which opinions are based, exhibits to be used to summarize opinions, qualifications including a list of publications authored within the last ten years, a listing of cases within the previous four years testimony was given as an expert witness, or statement of compensation for either Ms. Spratt or Dr. Buffolino. The absence of any reports also puts the Plaintiffs' in a position where they can not reasonably determine the opinions to be elicited from any of these witnesses. The prejudice to the plaintiff's is profound on multiple levels, not the least of which is the question of whether or not there have been any developments in the last seven years in any of the witnesses disciplines of study which may have impacted their previously stated opinions.

The Defendants have failed to comply with the scheduling order of January 18, 2012 and the requirements of Rule 26 for the disclosure of expert witnesses and to this day they have not even attempted to so comply with the disclosure requirements of Rule 26 (a)(2)(B)(i-vi) all to the prejudice of the Plaintiffs' Wills v. Amereda Hess Corp, 379 F. 3d 32, 51 (2nd Cir. 2004). An

Order should be issued excluding Drs. Spratt and Buffolino from testifying at trial as expert witnesses on behalf of the Defendants'.

## III.    AN ORDER SHOULD ISSUE PROHIBITING THE DEFENDANTS FROM USING THE CLINK LETTER FOR ANY PURPOSE AT TRIAL.

The Clink letter is a direct outgrowth of Clink's meeting with Volpe and Sirianni and their arranging for Clink's transfer in the Nassau County Jail so that he could be housed with Kogut. As a result of the direct actions of the jail, Clink was able to gain access to Kogut without any controls as to the methods he might employ against Kogut, thereby enabling him under the threat of continued beatings to get Kogut to sign the letter he created after meeting with Volpe and Sirianni. The Plaintiff never adopted the contents of the letters as his own and the sole evidence concerning the origins of the letter is the testimony of Kogut that he signed it only after being threatened by Clink with the continuation of daily beatings in the jail. Simply stated there is no evidence as to the reliability or truthfulness of the letter and its contents and therefore if is of little or no probative value to any issue in the case. On the other hand, the potential for unfair prejudice, confusion of issues, or misleading of the jury is great.

Quite clearly, the Plaintiff Kogut's signature on the Clink letter under the threat of continued jailhouse beatings constitutes coercion rendering the statement inadmissible. Arizona v. Fulminante, 499 U.S. 279, 287-288 (1991); Lam v. Kelchner, 304 F. 3d. 256, 264-266 (3rd Cir. 2002). United States v. McCullah, 76 F. 3d. 1087, 1101 (10th Cir. 1996) Not only is a coerced statement inadmissible substantively it is also inadmissible for impeachment purposes. Kansas v. Ventros, 556 U.S. 586,590, 591 (2009) Mincey v. Arizona, 437 U.S. 385, 397-98 (1978); New Jersey v. Portash, 440 U.S. 450, 458-459 (1979); Quartararo v. Mantello, 715 F. Supp. 449, 461-462 (E.D.N.Y. 1989) The defendants however, will undoubtedly maintain that because they are seeking to admit the statement for impeachment purposes in a civil as opposed

to criminal trial that they should be permitted to do so. Any such argument ignores the fact that because the statement was coerced it is unreliable as a matter of law. To permit the Defendants' to use the Clink letter for any purpose will only serve to unfairly prejudice the Plaintiff by permitting the Defendants to argue based on a coerced statement, which they were instrumental in creating, that they did not coerce Kogut into signing the confession because the letter establishes that the Plaintiff repeated the admission he allegedly made in the confession.

In addition to the above prejudices, permitting the use of the Clink letter on rebuttal creates the need for a detailed collateral inquiry by Plaintiff concerning the circumstances surrounding the statement as to authenticity and reliability, such as:

1.    That Clink was visited by Volpe and Sirianni prior to the document being created;

2.    That Volpe was responsible for the physical creation and content of the statement;

3.    That Clink was given specific instructions by Nassau County Police Department officials and was acting as an agent of Volpe and Sirianni;

4.    That Volpe, after instructing Clink, had him transferred into a cell with Kogut and;

5.    That Clink procured Kogut's signature by the use of physical violence condoned by the defendants and the Nassau County Jail.

As a result, the Plaintiff will be greatly prejudiced should the Court allow the use of the Clink letter by requiring Kogut to establish the circumstances under which this unauthenticated, hearsay document was created, merely for the fact that the defense seeks its use in rebuttal, because they cannot gain its admission on their direct case.

Date: July 22, 2012
Mineola, New York

By: _____

Anthony M. Grandinette
Attorney for Plaintiff, John Kogut
Grandinette & Serio
114 Old Country Road, Suite 420
Mineola, New York 11501

Paul Casteleiro
Attorney for Plaintiff, John Kogut
200 Washington Street  5th Floor
Hoboken, New Jersey 07030