UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN KOGUT,

                Plaintiff,

                                                                     06-CV-6695
—against—                                                (JS)(WDW)

THE COUNTY OF NASSAU, POLICE COMMISSIONER
DONALD KANE, POLICE COMMISSIONER
WILLIAM J. WILLET (2005), POLICE COMMISSIONER
JAMES LAWRENCE, DETECTIVE SEAN SPILLANE
(HEAD OF HOMICIDE 1985), DETECTIVE DENNIS
FARRELL (HEAD OF HOMICIDE 2005), CAROLANN
HESSEMAN AS EXECUTRIX OF THE ESTATE
OF JOSEPH VOLPE, DETECTIVE ROBERT DEMPSEY,
DETECTIVE ALBERT MARTINO, DETECTIVE WAYNE
BIRDSALL, DETECTIVE MILTON G. GRUBER,
DETECTIVE CHARLES FRAAS, DETECTIVE FRANK
SIRIANI, DETECTIVE HARRY WALTMAN,
P.O. MICHAEL CONNAUGHTON, P.O. WILLIAM
DIEHL, and JOHN DOES, 1-5,
Defendants.

------------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN
RESPONSE TO PLAINTIFFS JOHN RESTIVO
AND DENNIS HALSTEAD'S MOTION *IN LIMINE*
TO EXCLUDE POLYGRAPH EVIDENCE**

        Unlike the Plaintiffs, Defendants will not attempt to offer polygraph evidence to prove the truth or falsity of a statement made by a Plaintiff, Mr. Kogut, for example, or a witness. Nevertheless, Defendants oppose Halstead's and Restivo's request "for an Order barring evidence that any plaintiff or witness was subjected to a polygraph examination, and the reported results, except for John Kogut." Although polygraph test results are too unreliable to be

admitted to prove the truth or falsity of a particular statement, the fact that a person took a polygraph may be admissible for another purpose. For example, as Defendants argue in our memorandum of law concerning polygraph evidence, the fact that Kogut agreed to take a polygraph is admissible to rebut his claim that he was coerced into making a false confession. In addition, as the following discussion will demonstrate, the fact that a witness took a polygraph may be admissible as evidence of that witness's credibility or to clarify a matter or correct a misimpression that arises as a result of cross-examination. However, both the scope of such testimony and the grounds for its admissibility are not ascertainable until a witness has testified. Consequently, the Court should not, in a complete factual vacuum, issue a blanket proscription of any and all testimony that mentions a polygraph.

### A. Willingness to Undergo a Polygraph as Evidence of Credibility

In *Murphy v. Cincinnati Insurance Company*, 772 F.2d 273, 277 (6th Cir. 1985), the Sixth Circuit rejected the argument that the trial court erred by admitting evidence that the plaintiff – who sued his insurance company that declined to pay his claim after his house burned down under suspicious circumstances -- had offered to his skeptical insurer to take a polygraph. At trial, the insurance company argued that since the results of polygraphs are inadmissible, it "logically" followed that a person's willingness to submit to a polygraph is also inadmissible. The Sixth Circuit disagreed:

> This "logical" link is not, in fact, so evident. The threshold issue is whether plaintiff's willingness to submit to a polygraph examination is relevant. *Fed. R. Evid. 401*. Thus, admissibility turns on the relationship of the proffered evidence to other facts of the case, regardless of whether the results of polygraph tests are admissible. An insured's willingness to cooperate in an insurance company's investigation and request for a polygraph examination does not depend on the scientific acceptability which is necessary to support the admissibility of polygraph test results. Since James Murphy's willingness to submit to a polygraph examination

2

> reflected upon his credibility and the defendant's motive in refusing the claim, the district court did not err in concluding that the evidence is relevant.

*Murphy,* 772 F.2d at 277.

Plaintiffs have insinuated that perhaps some of the witnesses who have testified or may testify against one or more of the Plaintiffs have done so because of base motives or a desire to avoid punishment for their own crimes. Some of these witnesses may have been polygraphed in connection with the investigation into the murder of Theresa Fusco and/or the disappearance of Kelly Morrissey. If that is so, then the fact that they were willing to take a polygraph may well be relevant and admissible to demonstrate their credibility. Also the fact that the witness passed a polygraph regarding some unrelated crime may explain why those charges were dismissed, and thus demonstrate that prosecutors did not purchase the witness's testimony by treating him leniently in another matter. *United States v. Winkelman*, 1996 U.S. App. LEXIS 30169 (6th Cir. Nov.15, 1996)(unpublished) (court did not err by permitting testimony that government witness was not prosecuted for a gun charge because he passed a polygraph regarding whether he knew the gun was in his luggage).

The fact that a polygraph was administered to a particular witness may also be relevant to refute a claim -- which Plaintiffs have frequently reprised in their pleadings -- that law enforcement officers failed to pursue investigative leads and/or unfairly jumped to the conclusion that a suspect was guilty. For example, in *United States v. Hall*, 805 F.2d 1410 (10th Cir. 1986), the defendant, the lone night teller in a bank, claimed that a robber had gained access to the bank building, held him at gunpoint, and --while the teller was serving customers at the bank's drive-through window -- managed with the aid of a stethoscope-like device to open the combination lock on the vault and make off with $44,000.00 (carefully avoiding the "bait

money") after locking the hapless teller in the vault. The teller took and failed two polygraphs and told the F.B.I that the first description of the robber he had given them was fabrication, but gave them another and different description of the robber. After workmen discovered the missing money in a crawl space in the employee's bathroom, the teller was indicted and went to trial.

At trial, the government agreed that none of its witnesses would mention the problematic polygraphs. However, after the teller's defense counsel sought to impugn the quality of the F.B.I.'s investigation by showing on cross-examination of an agent that she had failed to interview depositors who conducted business while the alleged robbery was going on and failed to check the financial backgrounds of other employees and pursue other leads, the government proffered testimony that the F.B.I agents had declined to follow those avenues of investigation because the teller had already failed two polygraphs. *Hall*, 805 F.2d at 1414-1415. A mistrial, declared for reasons not apparent in the opinion, ended the first trial before the government introduced this testimony.

At a second trial, the court advised defense counsel that it would consider admitting the polygraph evidence if defense counsel continued to attack the adequacy and thoroughness of the F.B.I.'s investigation. Despite this warning, defense counsel asked a question that implied the F.B.I. had failed to pursue an investigation based on the teller's second description of the robber. The prosecutor then elicited testimony that the agent did not vigorously pursue that "lead" because at that point the defendant had already failed two polygraphs and the agent did not think the defendant was being truthful. The District Court instructed the jury that the polygraphs were not admissible and that the testimony was admitted only for the jury to consider whether the F.B.I. had any justification for not following up on the

investigation. *Hall*, 805 F.2d at 1414-1415. On appeal, the Tenth Circuit upheld the admission of testimony referring to the fact that the defendant had taken two polygraphs:

> In this case, the record established that defense counsel was repeatedly warned of the possible consequences if he chose to unfairly attack the quality of the investigation of the bank robbery. Immediately following Detective Marquez' explanation of the limited scope of the investigation which followed Hall's description of the 6-foot robber, the jury was instructed on the limited nature of the polygraph evidence, and these instructions were repeated twice during the course of the trial. Juries are presumed to follow the instruction of the trial judge. *United States v.Espinosa, 771 F.2d 1382, 1399-1400 (10th Cir. 1985)*. Under all of the circumstances of this case, the admission of evidence concerning Detective Marquez' knowledge, as it related to her judgment on the scope of the investigation, was a matter entrusted to the sound discretion of the trial court, and that discretion was not abused.

*Hall*, 805 F.2d at 1416.

*Hall* should guide the Court's rulings in the instant case. Testimony that a particular witness has taken a polygraph may be admissible to refute a claim that the Nassau County detectives failed to investigate other leads. Also, Plaintiffs have argued, without any factual basis, that the polygraph administered to John Kogut was chosen with either a reckless disregard for the unreliability of the polygrapher's methodology (the allegedly unreliable Arther method) or a deliberate plan to have truthful answers deemed false and then use those falsehoods to coerce a confession. If Plaintiffs decide to put this theory before the jury, simple fairness demands that jury have the entire picture – i.e., that Kogut was just one of many individuals who were tested by the same polygraph but none of those other individuals – not even those whose polygraphs were deemed to have falsehoods or to be inconclusive -- ever told Nassau County Police detectives that he had strangled Theresa Fusco after his companions had raped her.

5

In short, the Court should deny Halstead's and Restivo's motion to issue a blanket prohibition against any mention of polygraphs for any purpose whatsoever. It is simply too early to tell whether all references to polygraphs are inadmissible. To the contrary, it appears that depending upon how Plaintiffs try their case, they may open the door to the admission of limited evidence regarding polygraphs.

Dated:   New York, New York
        August 6, 2012

                                      Respectfully Submitted,

                                      */s/ Louis M. Freeman*
                                      Louis M. Freeman

                                      Freeman Nooter & Ginsberg
                                      75 Maiden Lane
                                      Suite 503
                                      New York, NY 1003 8
                                      (212) 608-0808

                                      Special Counsel for Defendants