UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

JOHN KOGUT,                                                     06-CV-6695
                Plaintiff,                           (JS)(WDW)

      -against-

THE COUNTY OF NASSAU, POLICE COMMISSIONER
JAMES LAWRENCE, DETECTIVE SEAN SPILLANE,
DETECTIVE DENNIS FARRELL, CAROLANN HESSMAN AS
EXECUTRIX OF THE ESTATE OF DETECTIVE JOSEPH VOLPE,
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT
MARTINO, DETECTIVE WAYNE BIRDSALL, DETECTIVE
CHARLES FRAAS, DETECTIVE FRANK SIRIANNI, DETECTIVE
HARRY WALTMAN, P.O. MICHAEL CONNAUGHTON, P.O.
WILLIAM DIEHL, JOHN DOES 1-5, DETECTIVE THOMAS
ALLAN, DETECTIVE RICHARD BRUSA, DETECTIVE JACK
SHARKEY, DETECTIVE DANIEL PERRINO, DETECTIVE
SERGEANT CAMPBELL, and RICHARD ROE SUPERVISORS 1-10
                Defendants.
_____X

MOTION IN LIMINE OF PLAINTIFF JOHN KOGUT JOINING CO-PLAINTIFFS' JOHN RESTIVO AND DENNIS HALSTEAD'S RESPONSE TO DEFENDANTS DE 305 MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT TESTIMONY REGARDING POLYGRAPH EVIDENCE AND OPPOSING CO-PLAINTIFF'S LATER ARGUMENT TO PRECLUDE ALL POLYGRAPH EVIDENCE

1

## TABLE OF CONTENTS

Introduction………………………………………………………………………1

Argument ……………………………………………………………………....4

Conclusion…………………………………………………………………..….9

## TABLE OF CASES

U.S. v. Brevard, 739 F. 2d. 180, 182 (4th Cir. 1984)..................................................6

Palmer v. City of Monticello, 31 F. 3d. 1499, 1508 Fn 8 (10th Cir. 1994)…...........7

U.S. v. Soundingsides 820 F. 2d. 1232, 1241 (10th Cir. 1987)................................7

# INTRODUCTION

The defendants have moved in limine to preclude the testimony of Dr. Honts, the plaintiff's Polygraph expert. In addition, the defendants further seek to admit as evidence for the jury's consideration the fact that the Polygraph examination was given to John Kogut, the purpose proffered for the sought after admission of evidence is to establish the lack of "coercion" upon the plaintiff.

The co-plaintiff's Restivo and Halstead have filed their response to this motion by its filing under DE 315. The plaintiff John Kogut hereby joins in co-plaintiff's response in Part and oppose in part.

**THE PLAINTIFF JOHN KOGUT JOINS IN THE RESPONSE OF CO-PLAINTIFF TO DEFENDANTS MOTION IN LIMINE WHICH SEEKS TO PRECLUDE PLAINTIFFS POLYGRAPH EXPERT DE 299 AND PLAINTIFF DISAGREES WITH THEIR SUBSEQUENT FILING DE 315 WHICH SEEKS TO PRECLUDE ALL POLYGRAPH EVIDENCE INCLUDING THAT OF JOHN KOGUT**

## ARGUMENT

The plaintiff John Kogut joins in the Response of co-plaintiffs' Restivo and Halstead in as far as they argue for admission of Kogut's polygraph and the expert testimony of plaintiff's polygraph expert Charles Honts. (DE 299)

The plaintiff Kogut disagrees with the plaintiffs' Restivo and Halstead to the extent they seek to preclude all evidence of Kogut polygraph. (DE 315, Fn. 3, p. 2)

In their papers, the defendants' fail to note that Kogut has never claimed he was coerced into taking the polygraph. It is, however, Kogut's claim that the polygraph was

4

utilized as a ruse against him in an effort to gain information about him to be used in the interrogation which came directly on the heels of the examination. (DE 305-1 p. 4-6)

The defendants seek to introduce into evidence the fact that John Kogut submitted to a polygraph examination on the asserted grounds that it rebuts Kogut's contention that he was coerced into falsely confessing to the murder. This premise is simply wrong and not supported by the record. In so moving, the defendants maintain it is not their desire to introduce into evidence the fact that, according to the polygraph examiner, Milton Gruber, Kogut supposedly failed the polygraph exam. At the same time, the defendants seek to prohibit the plaintiffs polygraph expert Charles Honts from testifying to either that the polygraph exam administered to Kogut was a ploy or a trick to coerce Kogut into confessing, or that in his view, after reviewing and analyzing the polygraph charts of the examination, they overwhelmingly demonstrate that Kogut passed the examination; or finally, to offer testimony that the examination had no investigative utility at all. (DE 305-1 pp. 8-15)

Clearly, a jury hearing that Kogut took a polygraph examination before his interrogation will undoubtedly speculate as to the results of the test. The plaintiff's fear is that the jury's speculation will lead it to conclude that because Kogut was interrogated after the polygraph examination that "he had to have failed the exam." Certainly the jurors will ask "why would the police have preceded with the interrogation of Kogut if he had passed." Logic would suggest to the jury that the police would not interrogate Kogut if they felt he was truthful in his denials during the exam of having any knowledge whatsoever, concerning the murder of Ms. Fusco. Therefore, once the jury learns Kogut

5

took a polygraph exam it would take no great leap in logic to conclude, that the jury will believe he failed the examination based on the fact that a lengthy interrogation did ensue.

Conversely, it is the contention of the plaintiff John Kogut that the polygraph examination he submitted to on March 25, 1985 was used by the defendants to coerce his false confession. The defendants admit, as Kogut has contended all along, that they repeatedly exclaimed to Kogut during the interrogation that he had failed the polygraph examination and that they had scientific evidence that proved he was involved in the Fusco murder. In fact, both defendants' Volpe and Dempsey, have testified that there never was an interrogation of Kogut, in the traditional sense of the term. Instead they contend that all they did throughout the ensuing 15 hours, was repeatedly insist to Kogut that "he was lying", "that we have scientific evidence to prove it" and to "just tell us the truth." According to the defendants, Kogut then told them a story about his knowledge with no more prompting from them then "you failed the polygraph."

In addition, the manner in which the polygraph exam was used by Defendant Volpe and Dempsey during the interrogation plays a part of the analysis of Saul Kassin, the Plaintiff's expert in the psychology of police interrogations, who opines in his report that "negative post-test feedback helped to leverage Kogut's confession"

The plaintiff Kogut does not dispute the state of the law regarding the admission of polygraph evidence. As set forth in the memorandum of law of co-plaintiffs' Restivo and Halstead, and conceded by the defendants', polygraph results are inadmissible in the Second Circuit. (DE 315 p. 4, DE 305-1, p. 5). Furthermore, because evidence of a polygraph examination invites improper speculation about the results, the fact that an individual submitted to a polygraph is generally similarly inadmissible. ***U.S. v. Brevard,***

6

*739 F. 2d. 180, 182 (4th Cir. 1984); Palmer v. City of Monticello, 31 F. 3d. 1499, 1508 Fn 8 (10th Cir. 1994); U.S. v. Soundingsides 820 F. 2d. 1232, 1241 (10th Cir. 1987)* The inadmissibility of the fact that an individual took a polygraph exam and/or that he failed is a rule of law designed to protect the individual subjected to this exam in the jury's consideration of that individuals credibility. The point being, the plaintiff does not want a scientifically unreliable test to be a substitute to the jury's function to determine the facts.

Under the law, the defendants should not be able to elicit the fact that Kogut took a polygraph exam or that he allegedly failed the exam. On the other hand, because the polygraph examination played a significant role in the interrogation, the plaintiff Kogut must be permitted to explain what occurred during his interrogation leading to his being coerced into falsely confessing. How does the plaintiff Kogut present his case if he is prohibited from telling the jury exactly what happened? Is he to testify that he was told he was lying but not able to tell the jury the alleged basis for the assertion that he was lying? How does he explain the Gruber questioning during which, as conceded by the defendants, he repeatedly asserted his innocence? Is he to say Gruber was merely another interrogator? How is it explained that Gruber took detailed notes when one of the allegations is that Volpe and Dempsey took notes during their interrogation of Kogut? How does the Plaintiff convey to the jury that he was being gamed and manipulated in agreeing to the polygraph exam believing it to be a way of showing he had no involvement in the murder when all along the police were using it as a means of obtaining information to use against him in the interrogation?

7

The fact the polygraph examination occurred is necessary for the plaintiff to be able to prove his claims and goes directly to the issue of the defendants' malice. The polygraph method, the Arther technique, as Charles Honts will testify was long discredited by the time Gruber administered the test to Kogut because it lacked standards, instead relying on subjective criteria for determining whether the individual was being truthful. Dr. Honts will also testify that the Arther technique, as itself advertised, "was primarily intended for use in eliciting confessions and that it was not a valid approach to assessing credibility." (DE 315-1 p. 7 Honts Report)

What the defendants are seeking is to obscure the truth to what occurred during the interrogation of the plaintiff Kogut by allowing the jury to hear only part of the story while prohibiting the plaintiff from completing the story so necessary to proving his claims.

The plaintiff wishes to introduce the fact that Kogut took the polygraph examination as well its results and the introduction of Honts testimony concerning his interpretation of Koguts charts and the unreliable nature of the Arther method. Hont's interpretation of those charts will not be offered for the purpose of establishing Koguts truthfulness, but rather for the subjectivity of the exam and to establish as fact that malice in the use of the Arther method to illicit confessions, regardless of veracity. In this manner, the Court permits an honest explanation of facts and cures any prejudices by simple cautionary instruction that the results of the polygraph examination are not dispositive of the ultimate issue but they may accept or reject the assertion that the defendants improperly utilized the polygraph to coerce Kogut's confession.

8

Finally, the plaintiff requests of this court to ponder the following potential unjust irony. Presume Kogut's recitation of events is true, yet the defendants are nonetheless able to utilize the polygraph examination in the manner they request. Such a scenario would result in a grave miscarriage of justice. Fore, under such circumstances, in 1985, the defendant's would have been able to utilize fabricated, false results of an inadmissible scientific test, as a tool in eliciting from an innocent man a confession to murder he did not commit and, today, be once again allowed to utilize the same test to prove Kogut "wasn't coerced" into providing the patently false confession he gave in 1985. How improper would it be, how terribly unjust a result, if laws which are designed to protect the subject of the polygraph examination being used against him, in fact, end up permitting the very test they were designed to protect against, be utilized against that subject, here, John Kogut, not once, but yet again a second time, twenty-seven years later. This is particularly so, if the plaintiff, in the same breath, is prohibited from providing and explaining in full, all the details associated with the administration of that test. Fairness dictates an alternate result.

## CONCLUSION

For clarity, it is the plaintiff's request that the polygraph examination administered to John Kogut in 1985 be utilized in one of the following manners;

    1)    Permit all parties to utilize in its entirety, the polygraph examination, with all its' surrounding details and circumstances, including John Kogut's right to testify to the fact that during his interrogation, he was repeatedly told by defendants Dempsey and Volpe that he "failed" the exam, excepting and thereby prohibiting any party to speak specifically of the test results and be barred from exclaiming either "passed" or "failed," or otherwise render an opinion as to the test results as it pertains to the truthfulness of Kogut, together with an Instruction from

the Court that the results of the polygraph are scientifically unreliable and therefore inadmissible and that the jury can give whatever weight it deems appropriate to any of the related testimony, or alternatively,

2) Permit all aspects of the polygraph be admitted into evidence, including the results as proposed by defendants, conditioned upon the plaintiff being permitted to solicit testimony from its' expert, Dr. Charles Honts, regarding his interpretation of the polygraph charts and result's of the Kogut examination, as well being permitted to give testimony as to the scientific communities rejection and discrediting of the Arther method, which was utilized during the Kogut polygraph together with an Instruction from the Court that the results of the polygraph are scientifically unreliable and therefore inadmissible and that the jury can give whatever weight it deems appropriate to any of the related testimony, or alternatively, or,

3) Irrespective of the test results, Dr. Honts should be permitted to testify to the scientific communities disavowing of the Arther method as well as to the Arther Schools advertised purpose of the Arther method, i.e. "To get the confession."

Alternatively, if the court is of the view that Dr. Honts testimony regarding his analysis of the Kogut polygraph is inadmissible, the plaintiff reserves the right to reformulate his view as to how he wishes to proceed.

Dated: August 13, 2012
Mineola, New York

_____
Anthony M. Grandinette
Grandinette & Serio, LLP
114 Old Country Road  Suite 420
Mineola, New York 11501
Attorneys for Plaintiff John Kogut

Paul Casteleiro, Esq.
200 Washington Street  5th Floor
Hoboken, New Jersey 07030

10

## Certificate of Service

I hereby certify that a true and accurate copy of the MOTION IN LIMINE OF PLAINTIFF JOHN KOGUT JOINING CO- PLAINTIFFS' JOHN RESTIVO AND DENNIS HALSTEAD'S RESPONSE TO DEFENDANTS DE 305 MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT TESTIMONY REGARDING POLYGRAPH EVIDENCE was served by ECF on August 13, 2012 upon the following:

Michael Ferguson, Esq.  
Office of the County Attorney  
Ralph G. Caso Executive & Legislative Building  
1 West Street  
Mineola, New York 11501  

Louis Freeman, Esq.  
Lee Ginsberg, Esq.  
Nadjia Limani, Esq.  
Freeman, Nooter & Ginsberg  
75 Maiden Lane  Suite 503  
New York, New York 10038  

Barry C. Scheck  
Debi Cornwall  
Anna Benvenutti Hoffmann  
Sonam Henderson  
NEUFELD SCHECK & BRUSTIN, LLP  
99 Hudson St., 8th Floor  
New York, NY 10013  

_____  
Erica Battisti

11