```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOHN KOGUT,

                    Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           06-CV-6695(JS)(WDW)
                                              (LEAD CASE)
THE COUNTY OF NASSAU, POLICE
COMMISSIONER DONALD KANE, POLICE
COMMISSIONER WILLIAM J. WILLETT (2005),
POLICE COMMISSIONER JAMES LAWRENCE,
DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE
1985), DETECTIVE DENNIS FARRELL (HEAD OF
HOMICIDE 2005), CAROLANN HESSEMAN, AS
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE,
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT
MARTINO, DETECTIVE WAYNE BIRDSALL,
DETECTIVE MILTON G. GRUBER, DETECTIVE
CHARLES FRAAS, DETECTIVE FRANK SIRIANNI,
DETECTIVE HARRY WALTMAN, P.O. MICHAEL
CONNAUGHTON, P.O. WILLIAM DIEHL, and
JOHN DOES 1-5,

                    Defendants.
----------------------------------------X
JOHN RESTIVO, DENNIS HALSTEAD,
MELISSA LULLO, JASON HALSTEAD,
HEATHER HALSTEAD, and TAYLOR
HALSTEAD,
                                              06-CV-6720(JS)(WDW)
                    Plaintiffs,               (MEMBER CASE)

          - against -

NASSAU COUNTY, CAROLANN HESSMAN, AS
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE,
in his individual capacity, ROBERT DEMPSEY,
in his individual capacity, FRANK SIRIANNI,
in his individual capacity, MILTON GRUBER,
in his individual capacity, HARRY WALTMAN
in his individual capacity, ALBERT MARTINO,
in his individual capacity, CHARLIE FRAAS,
in his individual capacity, THOMAS ALLEN
in his individual capacity, RICHARD BRUSA,
in his individual capacity, VINCENT DONNELLY,
```

in his individual capacity, MICHAEL
CONNAUGHTON, in his individual capacity,
WAYNE BIRDSALL, in his individual capacity,
WILLIAM DIEHL, in his individual capacity,
JACK SHARKEY, in his individual capacity,
DANIEL PERRINO, in his individual capacity,
ANTHONY KOZIER, in his individual capacity,
Detective Sergeant CAMPBELL, (Shield #48),
in his individual capacity, SEAN SPILLANE,
in his individual capacity, RICHARD ROE
SUPERVISORS #1-10, in their individual
capacities,

        Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:
John Kogut    Anthony M. Grandinette, Esq.
        John T. Serio, Esq.
        Grandinette & Serio, LLP
        114 Old Country Road, Suite 420
        Mineola, New York 11501

        Paul Casteleiro, Esq.
        86 Hudson Street
        Hoboken, New Jersey 07030

John Restivo,   Barry C. Scheck, Esq.
Dennis Halstead,  Deborah L. Cornwall, Esq.
Melissa Lullo,   Monica R. Shah, Esq.
Jason Halstead,   Nick Joel Brustin, Esq.
Heather Halstead,  Anna Benvenutti Hoffman, Esq.
and Taylor     Sonam A. H. Henderson, Esq.
Halstead      Cochran, Neufeld & Scheck, LLP
        99 Hudson Street, 8th Floor
        New York, New York 10013

For Defendants:  Louis M. Freeman, Esq.
        Lee Ginsberg, Esq.
        Freeman, Nooter & Ginsberg
        75 Maiden Lane, Suite 503
        New York, New York 10038

                    David L. Lewis, Esq.
                    Lewis & Fiore, Esq.
                    225 Broadway, Suite 3300
                    New York, New York 10007

                    Liora M. Ben-Sorek, Esq.
                    Sondra Meryl Toscano, Esq.
                    Christine Ann Lobasso, Esq.
                    Dennis J. Saffran, Esq.
                    Sondra Meryl Toscano, Esq.
                    Office of the Nassau County Attorney
                    One West Street
                    Mineola, New York 11501

SEYBERT, District Judge:

This Memorandum and Order addresses Defendants' pending motion for partial summary judgment (Docket Entry 222). Defendants' motion is GRANTED IN PART AND DENIED IN PART in accordance with the following discussion.

## DISCUSSION[1]

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file,

---

[1] The basic facts of this case have been recounted in the Court's previous decisions, most recently in Docket Entry 350. Kogut v. Nassau, Nos. 06-CV-6695, 06-CV-6720, 2012 WL 3536717 (E.D.N.Y. Aug. 15, 2012).

3

together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material

issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Defendants argue that (1) the individual Defendants are entitled to qualified immunity; (2) Plaintiffs cannot prove municipal liability; (3) Restivo and Halstead cannot prove a Section 1983 conspiracy; and (4) Kogut cannot hold the police Defendants responsible for the decision to re-try Kogut in 2005. The Court addresses each argument in turn.

I. Qualified Immunity

Defendants argue that the individual Defendants are entitled to qualified immunity on Plaintiffs' due process claims to the extent that those claims are premised on (1) a supposed right to a constitutionally-adequate investigation of the Fusco homicide; (2) an obligation that police officers disclose exculpatory and impeaching evidence to prosecutors; or (3) an obligation to provide Miranda warnings during a custodial interrogation. (Def. Br. 5.)

As to the first and third of these theories, Plaintiffs clarify that these are not the bases of liability on which their due process claims rest. (R/H Opp. 6 n.5; Kogut Opp. 3.) Rather, they explain that the scope of Defendants' investigation and their alleged failure to read the Miranda

5

warnings are evidence of Defendants' overall attempt to frame Plaintiffs for the Fusco murder. (See R/H Opp 6 n.5.) The individual Defendants do not enjoy qualified immunity from these claims. See Limone v. Condon, 372 F.3d 39, 48 (1st Cir. 2004) (concluding "without serious question" that, based on Supreme Court precedent, reasonable law enforcement officers knew at least as early as 1967 "that framing innocent persons would violate the constitutional rights of the falsely accused").

Similarly, as to the second theory, the individual Defendants are not entitled to qualified immunity on claims that they deliberately or recklessly suppressed or withheld favorable evidence. See, Newsome v. McCabe, 260 F.3d 824 (7th Cir. 2001) ("But if the right characterization of the defendants' conduct is that they deliberately withheld information, seeking to misdirect or mislead the prosecutors and the defense, then there is a genuine constitutional problem."); Blake v. Race, 487 F. Supp. 2d 187, 216 n.21 (E.D.N.Y. 2007) (noting that notwithstanding Walker v. City of N.Y., 974 F.2d 293 (2d Cir. 1992), a Second Circuit case decided in 1992, it was clearly established that police had Brady obligations at least as early as 1990).

II. Municipal Liability

The Court finds that Plaintiffs have proffered enough evidence to raise a jury question as to municipal liability under Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Although isolated incidents by non-policymaking employees are insufficient to hold the County liable under Section 1983 for those incidents, Plaintiffs can prevail against the County if they can establish that the alleged wrongdoing was done pursuant to a County policy, was sufficiently widespread and persistent that it constituted a custom or policy of which supervisory authorities must have been aware, or occurs under circumstances evidencing supervisory officials' deliberate indifference to such wrongdoing. Jones v. Town of E. Haven, --- F.3d ----, 2012 WL 3104523, at *6 (2d Cir. Aug. 1, 2012). One way to satisfy these requirements is by establishing that policymakers acquiesced in the unconstitutional behavior of their subordinates. See, e.g., Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439-440 (2d Cir. 2009).

Here, whether County policymakers constructively acquiesced in the alleged constitutional abuses of its homicide detectives is an issue for the jury. Plaintiffs' evidence

7

demonstrates the following: the County had almost immediate notice that Restivo had been physically assaulted during his interrogation, yet no investigation was made into Restivo's allegations (R/H Stmt. of Disputed Facts ¶¶ 59-65); credible allegations that detectives planted hair evidence in Restivo's van surfaced at Restivo and Halstead's 1986 criminal trial, yet the County conducted no investigation (id. ¶¶ 67-70); in 1995, the County learned that Volpe elicited a false confession from a murder suspect (which eventually resulted in a civil settlement) but did not investigate or discipline him (id. ¶¶ 71-76); in 2004, a civil jury found that Dempsey was responsible for malicious prosecution of a suspect from whom Dempsey had elicited a false confession, but Dempsey was never investigated or disciplined (id. ¶¶ 77-87); the County settled a 2002 civil suit arising out of an alleged 2001 false confession of a suspect in a different murder investigation (id. ¶¶ 88); see also Martinez v. Cnty. of Nassau, No. 02-CV-4985 (JS)(WDW)); and, prior to the Fusco investigation, a manslaughter conviction was reversed because of an illegal confession obtained by NCPD detectives, see People v. Evans, 70 A.D.2d 886, 888, 417 N.Y.S.2d 99, 101 (2d Dep't 1979).

This evidence--especially the failure to investigate or discipline detectives involved in false confessions--suggests that the County had a "custom whereby it acquiesced in unconstitutional conduct by its officers." Okin, 577 F.3d at 440. Defendants chiefly argue that evidence concerning the three false confession cases that followed the Fusco investigation cannot establish what the County's policy was years earlier in 1985. (Def. Reply 12-13.) In the Court's view, however, these later cases can be probative of policymakers' attitudes at the time of the Fusco case. Jones, 2012 WL 3104523, at *10 ("It is not unreasonable to infer that Town officials who were indifferent to such abuse in 2000 might have held similar attitudes three years earlier."); see also Chepilko v. City of N.Y., No. 06-CV-5491, 2012 WL 398700, at *15 (E.D.N.Y. Feb. 6, 2012) ("Subsequent or contemporaneous conduct can be circumstantial evidence of the existence of preceding municipal policy or custom."). Obviously the gap between the initial Fusco investigation and the later false confession cases is greater than the three-year gap discussed in Jones, but at least two of the later cases involved detectives (Volpe and Dempsey, respectively) who had a hand in the Fusco case. And, in any event, the timing is a matter of weight for the jury.

9

Plaintiffs also assert Monell liability on failure-to-supervise and failure-to-train theories. These theories are distinct from one another, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (Sotomayor, J.), and although the failure-to-supervise claim survives, the failure-to-train claim does not. The failure-to-supervise theory may proceed to trial for reasons similar to the ones already mentioned; policymakers had notice of serious wrongdoing beginning with Restivo's lawyer's complaint that Restivo was physically assaulted during his interrogation. See id. at 127-29 (holding that police chief's contemporaneous awareness of alleged excessive force incidents and failure to take corrective action was sufficient to establish failure-to-supervise liability).

The failure-to-train theory, on the other hand, may not go forward. As the Court understands their claim, Plaintiffs assert that the County ought to have trained its homicide detectives on the constitutional limits on interrogations and that its failure to do so proximately caused a deprivation of Plaintiffs' rights. Traditional failure-to-train claims require evidence that (1) a municipality knows that its employees will confront a particular situation; (2) the

10

situation will present employees with a difficult decision that would be made easier with proper training; and (3) the wrong choice by the employee "will frequently cause the deprivation of a citizen's constitutional rights." Walker, 974 F.2d at 297-98. The essence of failure-to-train liability is that municipal officials consciously disregarded the potential for "future violations of clearly established constitutional rights by badly trained employees." Amnesty Am., 361 F.3d at 127 n.8. Liability often depends on whether a municipality had notice that more training is needed. See Walker, 974 F.2d at 299-300 ("While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so."). And--unlike with Plaintiffs' constructive acquiesce theory--evidence of subsequent violations is irrelevant to a failure-to-train analysis. See Connick v. Thompson, --- U.S. ----, 131 S. Ct. 1350, 1360 n.7, 179 L. Ed. 2d 417 (2011); Chepilko, 2012 WL 398700, at *15 n.11.

Here, there is no evidence that County policymakers had notice prior to the Fusco investigation that the on-the-job training its homicide detectives received was likely to result

11

in constitutional abuses. Plaintiffs point to two pre-1984 cases in which confessions were ruled invalid because of police misconduct. In one case, police evaded a 17-year-old suspect's mother's attempt to contact her son during the interrogation. This is not the type of misconduct at issue in the present case. See, e.g., Okin, 577 F.3d at 440 (requiring plaintiff to show a training "deficiency [that] is closely related to the ultimate injury). In the other, People v. Valle, 469 N.Y.S.2d 305 (Nassau Cnty Ct. 1983), officers did not provide the proper Miranda warnings. Although Miranda is an issue in the present case, Valle is not evidence from which a jury could infer the County's deliberate indifference toward training its officers on Miranda issues because, in response to that case, the NCPD issued a memo to all personnel reaffirming its Miranda policy. (Pls. Ex. 135.)[2]

---

[2] In their discussion of their failure-to-train and failure-to-supervise claims, Restivo and Halstead cite the opinion of their police practices expert. (R/H Opp. 20.) As it relates to the failure-to-train claim, this opinion primarily addresses NCPD officers' failure to keep contemporaneous records of their investigations and their approach toward interrogations. Because there is no evidence that NCPD policymakers had notice prior to the Fusco investigation that the shortcomings described in the report had actually led to abuses (other than the Miranda violation, treated above), Plaintiffs rely on Vann v. City of N.Y., 72 F.3d 1040, 1049 (2d Cir. 1995), for the proposition that expert testimony by itself can establish deliberate

12

indifference in a failure-to-train case. Id. ("Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was 'contrary to the practice of most police departments' and was 'particularly dangerous' because it presented an unusually high risk that constitutional rights would be violated." (quoting Dodd v. City of Norwich, 827 F.2d 1, 4-6 (2d Cir. 1987) modified on reh'g on other grounds, 827 F.2d 1, 7 (2d Cir. 1987)) (emphasis added)).

The Court is not persuaded. The deficient procedures and practices described in the expert report were not aimed at "particularly dangerous" aspects of police work. Dodd, for example, concerned a policy whereby police officers were supposed to keep a gun in their hand while they were attempting to handcuff a suspect. 827 F.2d at 5; see also City of Canton v. Harris, 489 U.S. 378, 390 n.10, 109 S. Ct. 1197, 1205 n.10, 103 L. Ed. 2d 412 (1989) (theorizing that the need for training police officers on the constitutional limits on the use of deadly force in pursuing felons may be "so obvious" that the failure to train could be characterized as deliberate indifference without a showing that officers had violated constitutional rights in the past). Moreover, to the extent that Plaintiffs rely on the expert report to show that the County was deliberately indifferent to the need to train its detectives not to physically abuse suspects in pursuit of a confession, this type of misconduct is so beyond the pale that-- absent notice to the contrary--the County was entitled to rely on a common sense assumption that its officers would not behave this way. Walker, 974 F.2d 299-300 ("Where the proper response- -to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent--is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.").

Accordingly, Plaintiffs' constructive acquiesce and failure-to-supervise theories can proceed to trial. Defendants are entitled to summary judgment on Plaintiffs' failure-to-train theory.

III. Restivo and Halstead's Conspiracy Claim

Defendants also argue that they are entitled to summary judgment on Restivo and Halstead's conspiracy claims, which arise out of several police informants' allegedly offering false testimony in exchange for various benefits. (Def. Br. 22-23.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Here, Plaintiffs have identified the informants, the alleged false testimony, and the benefits the informants received. (See, e.g., R/H Stmt. of Disputed Facts ¶¶ 33-37 (Brian O'Hanlon).) This evidence creates a triable issue on the conspiracy claims. See Pangburn, 200 F.3d at 72 (conspiracies are inherently secretive and "may have to be proven by circumstantial, rather than direct, evidence").

14

IV. Kogut's 2005 Malicious Prosecution Claim

Defendants argue that Kogut's malicious prosecution claim arising from his 2005 retrial must be dismissed because (1) prosecutors, not Defendants, made the decision to retry Kogut; and (2) the retrial was based on "arguable probable cause." Neither argument is availing. As to the first, NCPD officers cannot use the prosecutors' decision-making to shield their alleged wrongdoing. E.g., Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988) ("But the jury could find that the defendants systematically concealed from the prosecutors, and misrepresented to them, facts highly material to-that is, facts likely to influence-the decision whether to prosecute Jones and whether (that decision having been made) to continue prosecuting him right up to and into the trial."); Blake, 487 F. Supp. 2d at 211. As to the arguable probable cause, Kogut has raised an issue of fact whether the presumption of probable cause flowing from his indictment can be rebutted by "evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith.'" Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003) (quoting

Colon v. City of N.Y., 60 N.Y.2d 78, 82-83, 455 N.E.2d 1248, 1250-51, 468 N.Y.S.2d 453, 455-56 (1983)).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: August  27 , 2012
       Central Islip, New York