**Plaintiffs' Reply in Further Support of Plaintiffs' Requests to Charge**

As set forth below, defendants have misconstrued plaintiffs' requests to charge and the applicable case law:

**Causation**:

As the Second Circuit observed in *Townes v. City of New York*, 176 F.3d 138, 146(2d Cir. 1999), "[c]ivil actions brought under § 1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation... [a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." In other words, despite defendants' attempt to impose a higher burden on plaintiffs (*see* Defs. Objs. to Pltfs.' Requests to Charge ("Def. Objs.") at pp. 1-2), the causation standard is the same in this § 1983 action as it would be in a tort or negligence action under state law.

By recognizing this legal reality, plaintiffs are not seeking to impose a negligence standard for their substantive claims. Obviously more is required in § 1983 actions, and the gravamen of plaintiffs' causes of action speak for themselves in this regard. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986). The jury has now heard evidence that defendants intentionally planted hairs, fabricated a false confession, and deliberately withheld *Brady* material.

The term "proximate" is, in the words of Prosser and Keeton, "an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason 'legal cause' or perhaps even 'responsible cause' would be a more appropriate term." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 42, p. 273 (5th ed.1984) (footnotes omitted). As such, the term "legal" is an appropriate substitute. *See, e.g.*, *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314-15 (N.Y. 1980) (referring interchangeably to "[t]he concept of proximate cause, or more appropriately legal cause").

Plaintiffs' proffered definition for what qualifies as a "substantial factor" is grounded in law. For example, in *Pavlou v. City of New York*, 797 N.Y.S.2d 478, 484 (1st Dep't 2005), the court held that "[m]ultiple circumstances may simultaneously serve as proximate causes of an injury, as long as each was a substantial factor in bringing about the injury, **even if its contribution to causing the injury was relatively small, as long as it is not slight or trivial**.") (emphasis added). We have no objection to defendants' recommendation that the Court give the entirety of New York Pattern Jury Instruction 3:60. N.Y. P.J.I. 3:60.

**Malicious Prosecution: Probable Cause**

This Court has already held that "the standard is, 'probable cause to believe the prosecution would succeed,'" Hrg. Tr. 8/16/12 at 8 (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2003)). Boyd itself used the terms "would succeed" and "could succeed" interchangeably; defendants' fear that the use of "would" imposes a higher burden than "could" is unfounded. *See also Johnson v. City of New York*, No. 08 Civ. 5277(SHS), 2010 WL 2292209, *6 (S.D.N.Y. June 7, 2010)(holding that plaintiff "cannot make out the second

1

necessary element of a malicious prosecution claim—a lack of probable cause to believe the proceedings **would succeed**") (emphasis added); *Maczyk v. Johnson*, No. 08–CV–548 (CPS)(SMG), 2009 WL 2707360, *5 (E.D.N.Y. Aug. 25, 2009) (jury could find that defendants "had no probable cause to believe that the prosecution **would succeed**, given that the firearm would be suppressed") (emphasis added); *Posr v. New York State Police Officer*, 2006 WL 656985, *13 (E.D.N.Y. Mar. 13, 2006) (referring to "the second element of the malicious prosecution claim-namely, whether defendants had probable cause to believe the proceedings **would succeed**.") (emphasis added).

***Brady* claim:**

Despite defendants' contention that plaintiffs' requests to charge don't meaningfully discuss the materiality element, Brady is repeatedly defined to include a materiality requirement, and the materiality instruction itself (D.E. 382 at p.7) is taken directly from binding caselaw.

Moreover, this Court has already rejected qualified immunity for this claim. In denying defendants' motion for summary judgment on the *Brady* claim, the Court held:

> the individual Defendants are not entitled to qualified immunity on claims that they deliberately or recklessly suppressed or withheld favorable evidence. *See, Newsome v. McCabe*, 260 F.3d 824 (7th Cir. 2001) ("But if the right characterization of the defendants' conduct is that they deliberately withheld information, seeking to misdirect or mislead the prosecutors and the defense, then there is a genuine constitutional problem."); *Blake v. Race*, 487 F. Supp. 2d 187, 216 n.21 (E.D.N.Y. 2007) (noting that notwithstanding *Walker v. City of N.Y.*, 974 F.2d 293 (2d Cir. 1992), a Second Circuit case decided in 1992, it was clearly established that police had Brady obligations at least as early as 1990).

S.J. Mem. & Order, D.E. 362 at 6. This ruling was correct as a matter of law; as such it would be error to give a qualified immunity instruction. *See Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (holding that district court erred in putting qualified immunity question to the jury, since "That legal question should have been answered by the court.").

**Fabricated Confession**:

Defendants persistently misconstrue the fabricated confession. Plaintiffs may make out this claim based on either of two theories:

First, police engage in unconstitutional conduct when they deliberately feed facts to a suspect and then misrepresent – here in the form of the written confession – that those facts originated with the suspect. *See Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (denying qualified immunity appeal based on clearly established constitutional "'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.' The alleged 'fabricated evidence' here is Wilmore's false claim that Washington possessed nonpublic knowledge about the crime, *i.e.,* that the perpetrator left a shirt at the crime scene.") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)); *Ricciuti v.*

2

*N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice."). That is precisely what plaintiffs' fabricated confession charge proposes. *See* D.E. 382 at 8.

While deception is not in and of itself unlawful in New York, defendants concede that it is a factor in the totality of the evidence the jury must consider in determining whether the confession was voluntary or coerced. (Def. Objs. p. 7); *see, e.g., Withrow v. Williams*, 507 U.S. 680, 708 (1993) (O'Connor, J., concurring in part and dissenting in part) ("Involuntariness requires coercive state action, such as trickery, psychological pressure, or mistreatment.").

Thus, plaintiffs may also prevail by proving that defendants used "investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). *See* D.E. 382 at 8 ("Where a police defendant secures witness statements by using investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information, that is a fabrication of evidence."). Defendants misread *Devereaux* in proposing that "there must be proof that the interrogator knew or should have known the person was innocent." (Def. Obj. at 8.) In fact, *Devereaux* held that a plaintiff must prove:

> at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

263 F.3d at 1076. The jury may adopt the latter theory to find that the Kogut confession was fabricated, that other witness statements incriminating the plaintiffs were fabricated, or both. *See Winslow v. Smith*, --- F.3d ----, 2012 WL 4856169, at *13 (8th Cir. Oct. 15, 2012) (reversing district court based on evidence that "Defendants recklessly investigated the Wilson murder and purposefully manufactured false evidence to implicate Plaintiffs. Specifically, there is evidence that suggests Defendants systematically coached witnesses into providing false testimony that was in line with the narrative of the Defendants' theory as to how the murder had been committed.").[1]

---

[1] While defendants' objections fail to address malice with respect to malicious prosecution, evidence that "[d]efendants . . . 'used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information'" makes out that element. *Zahrey v. City of New York,* No. CIV.A. 98-4546 (DC)(PJC), 2009 WL 54495 (S.D.N.Y. Jan. 7, 2009) (quoting *Devereaux*, 263 F.3d at 1076)). Thus, the jury should be instructed, pursuant to *Devereaux*, that if they find defendants used techniques they knew or should have known would yield false information, then they may find both that defendants fabricated evidence (on the fair trial claim) and that they acted with malice (for the malicious prosecution claim). As set forth in the requests to charge, the jury should also be instructed that

3

**Conspiracy**

A "section 1983 conspiracy claim" is made out by evidence that police engaged in conduct such as "coercing and intimidating witnesses to change their statements," *Ibarra v. City of Chicago*, 816 F. Supp.2d 541, 553 (N.D. Ill. Sept. 28, 2011). While we have not named as defendants the civilian witnesses (such as Kenneth Cockerel, Michael Cockerel and Harold Smyle) who provided false statements at the behest of the police defendants, their conduct would itself be actionable: private actors act "under color of state law" if they engage in "willful participation" in unconstitutional activity with state actors (the "joint action test"), or if their conduct is induced by the exercise of "coercive power" by state actors (the "state compulsion test") or "*Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001). Indeed, in the analogous criminal context, in *United States v. Gaviria*, cited in plaintiffs' requests to charge, a criminal defendant was found guilty of membership in a drug conspiracy although there was significant evidence that her coconspirators had compelled her to participate. 804 F. Supp. 476 (E.D.N.Y. 1992). As such, the Court should instruct the jury that the police defendants are liable for conspiring with witnesses even if those witnesses were coerced into making false statements.

**Section 1983 Supervisory Liability**

Finally, defendants propose *not* to instruct the jury that Det. Lt. Spillane created a policy or custom under which unconstitutional practices occurred. But the Second Circuit "recognize[s] that '[a] supervisory official may be liable [under section 1983 not only] because he or she created a policy or custom under which unconstitutional practices occurred, [but also because he or she] allowed such a policy or custom to continue,'" *Scott v. Fischer*, 616 F.3d 100, 108-09 (2d Cir. 2010) (citation omitted, brackets in original); *Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Department of Homeland Sec.*, 811 F. Supp.2d 803, 815 (S.D.N.Y. 2011) (same). It would be error to deprive the plaintiffs of an instruction that is supported in both evidence and law.

**Negligent Supervision**

Given defendants' concession that the individual defendants were acting within the scope of their employment, plaintiffs agree that his negligent supervision claim is subsumed within the respondeat superior claim.

---

plaintiffs may also prove malice by any one of the following means: evidence that defendants 1) "pursued a lawful end by intentionally unlawful means, such as by taking an illegal action in order to obtain a conviction of a person they believed to be guilty," 2) acted in reckless disregard for the plaintiffs' rights, or 3) acted for an improper motive, that is, something other than a desire to see the ends of justice served. *See* D.E. 382 p.13 (citing cases).

4

**Conclusion**

For the foregoing reasons, as well as those set forth previously, the Court should give plaintiffs' requests to charge as filed, in addition to standard instructions specifically including 1) a charge clarifying that the plaintiffs' burden of proof in this civil action is lower than the prosecution's burden of proof in the criminal proceedings; and 2) a charge defining circumstantial evidence and explaining that it carries no less weight than direct evidence.

/s/ Debi Cornwall

cc: all counsel via ECF