UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

JOHN KOGUT,                                             )
                     Plaintiff,                       )
                                                )
             -against-                     )
                                                  )
THE COUNTY OF NASSAU, POLICE                            )
COMMISSIONER DONALD KANE, POLICE                        )
COMMISSIONER WILLIAM J. WILLETT (2005),                 )
POLICE COMMISSIONER JAMES LAWRENCE,                     )
DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE               )    06-CV-6695 (JS)(WDW)
1985), DETECTIVE DENNIS FARRELL (HEAD OF                )
HOMICIDE 2005), CAROLANN HESSEMAN, AS                   )
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE,               )
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT              )
MARTINO, DETECTIVE WAYNE BIRDSALL, DETECTIVE            )
MILTON G. GRUBER, DETECTIVE CHARLES FRAAS,              )
DETECTIVE FRANK SIRIANNI, DETECTIVE HARRY               )
WALTMAN, P.O. MICHAEL CONNAUGHTON, P.O.                 )
WILLIAM DIEHL, and JOHN DOES 1-5,                       )
                                               )
                   Defendants.                       )

---

                                               )
                                             )
JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO,           )
JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER            )
HALSTEAD,                                               )
                                             )
                   Plaintiffs,                       )
                                             )
             -against-                     )
                                               )
NASSAU COUNTY, CAROLANN HESSEMAN, AS                    )
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his        )
individual capacity, ROBERT DEMPSEY,                    )    06-CV-6720(JS)(WDW)
in his individual capacity, FRANK SIRIANNI,             )
in his individual capacity, MILTON GRUBER,              )
in his individual capacity, HARRY WALTMAN               )
in his individual capacity ALBERT MARTINO,              )
in his individual capacity, CHARLIE FRAAS,              )
in his individual capacity, THOMAS ALLAN                )
in his individual capacity, RICHARD BRUSA,              )
in his individual capacity, VINCENT DONNELLY,           )
in his individual capacity, MICHAEL                     )
CONNAUGHTON, in his individual capacity,                )

WAYNE BIRDSALL, in his individual capacity,          )
WILLIAM DIEHL, in his individual capacity,           )
JACK SHARKEY, in his individual capacity,            )
DANIEL PERRINO, in his individual capacity,          )
ANTHONY KOZIER, in his individual capacity,          )
Detective Sergeant CAMPBELL, (Shield #48),           )
in his individual capacity, SEAN SPILLANE,           )
in his individual capacity, RICHARD ROE              )
SUPERVISORS #1-10, in their individual               )
capacities,                                          )
                                                     )
                    Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS JOHN RESTIVO AND DENNIS HALSTEAD'S
## RULE 59 (a) MOTION FOR A NEW TRIAL

Barry C. Scheck
Debi Cornwall
Anna Benvenutti Hoffmann
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson St., 8th Floor
New York, NY 10013

**Attorneys for plaintiffs**
**John Restivo and Dennis Halstead**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**RELEVANT BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**LEGAL STANDARDS** . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

   **I.**  **Combining the Restivo/Halstead and Kogut Trials was Reversible Error** . . . . . .  9

      **A.**  **The Kogut Confession Was the Central Focus of the Combined Trial And Its Prejudicial Admission, Along with Related Erroneous Legal Rulings, Indisputably Had a Substantial Effect on the Jury's Verdict** . . . . . .  10

        **1.**  **The Kogut Confession Was Inadmissible** . . . . . . . . . . . . . . . . . . . . . . . . . .  11

          **a.**  **The Confession was Irrelevant to Restivo and Halstead's Malicious Prosecution Claims, but the Instructions Improperly Authorized the Jury to Consider It** . . . . . . . . . . . . . . .  12

            **i.**  **The Kogut Confession is Irrelevant to Probable Cause** . . . . . .  12

            **ii.**  **The Kogut Confession is Irrelevant to Malice** . . . . . . . . . . . . .  13

          **b.**  **The Confession Was Irrelevant to Restivo and Halstead's Fair Trial Claims, but the Jury Charges and Lack of Limiting Instruction Invited the Jury to Consider It** . . . . . . . . . . . . . . . . . .  15

        **2.**  **The Exclusion of Dr. Saul Kassin's Expert Testimony Compounded the Prejudice Relating to the Confession** . . . . . . . . . . . . . . . . . . . . . . . . . .  16

        **3.**  **Admission of the Confession—Without Limitation—And Related Errors in the Jury Instructions and Evidentiary Rulings Was Overwhelmingly Prejudicial to Restivo and Halstead's Claims** . . . . . . . .  17

      **B.**  **Restivo and Halstead Were Prejudiced By Admission of Polygraph Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

        **1.**  **Prejudice From Evidence Related to Kogut's Polygraph** . . . . . . . . . . . . . .  19

        **2.**  **Restivo and Halstead Were Prejudiced by Defendant Dempsey**  20

**Telling the Jury, Despite Being Warned Not to Do So, that Restivo Failed a Polygraph and the Lack of a Proper Curative Instruction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3.  **The Court's Curative Instruction Was Inadequate**. . . . . . . . . . . . . . . . . . 21

4.  **The Errors Related to Polygraph Evidence Require a New Trial**. . . . . . . 22

II. **Plaintiffs Were Barred From Presenting Evidence Directly Relevant to Their Claims**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A. **David Rapp**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B. **Fred Klein Evidence**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C. **Peter Weinstein Evidence**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D. **Plaintiffs' Impeachment of Dempsey Was Improperly Limited**. . . . . . . . . . . 29

E. **Plaintiffs Were Improperly Barred from Presenting Evidence that Dempsey and Volpe Took Other False Confessions**. . . . . . . . . . . . . . . . . . . . . 31

F. **The Many Evidentiary Errors—Excluding Probative Direct Evidence for Plaintiffs, and Preventing Plaintiffs from Undermining the Defense—Warrant a New Trial**. . . . . . . . . . . . . . . . . . . . . . . 32

III. **Spillane Is Not Entitled to Qualified Immunity and Is Therefore Liable; It Was Reversible Error to Give This Question to the Jury**. . . . . . . . . 33

IV. **The Verdict is Against the Weight of the Evidence**. . . . . . . . . . . . . . . . . . . . . 35

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ............................ 35

*Anderson v. U.S.*, 417 U.S. 211 (1974)........................................................................... 25

*Arizona v. Fulminante*, 499 U.S. 279 (1991)................................................................... 11

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) .......................................... 12, 13

*Brady v. Maryland,* 373 U.S. 83 (1963) ................................................ 15, 18, 26

*Bruton v. U.S.*, 391 U.S. 123 (1968) ........................................................ 2, 16

*Cameron v. City of N.Y.*, 598 F.3d 50 (2d Cir. 2010) ................................... 10, 11, 28

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ........................................................ 13

*Espada v. Schneider*, 522 F. Supp. 2d 544 (S.D.N.Y. 2007)................................... 14

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ............................................. 17

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) ....................... 9, 15

*Granato v. City of New York,* No. 98–CV–667 (ILG), 1999 WL 112961

    (E.D.N.Y. Oct. 18, 1999) ........................................................................ 14

*Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996) ........................................... 9

*Herbert v. City of New York*, 748 F. Supp. 2d 225 (S.D.N.Y. 2010)......................... 28

*Hester v. BIC Corp.*, 225 F.3d 178 (2d Cir. 2000) ........................................... 19

*Hudson v. New York City*, 271 F.3d 62 (2d Cir. 2001) ....................................... 9

*Hynes v. Coughlin*, 79 F.3d 285 (2d Cir. 1996)................................................ 17, 23

*In re Repetitive Stress Injury Litig.,* 11 F.3d 368 (2d Cir. 1993).......................... 10

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ................................................ 32

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003) ............................................. 9

*Justice v. Hoke*, 90 F.3d 43 (2d Cir. 1996) ..................................................... 30

*Krulewitch v. U.S.*, 336 U.S. 440 (1949) ................................................................. 22

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................................... 16

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ...................................................... 34

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012) ............................................ 34

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996) ................................... 14

*Malcolm v. National Gypsum Co.*, 995 F.2d 346 (2d Cir. 1993) .............................. 10

*Malek v. Fed. Ins. Co.*, 994 F.2d 49 (2d Cir. 1993) ........................................... 32, 33

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ........................... 14, 15

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) ............................................. 8

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999) ........... 27

*Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138 (2d Cir. 2001) ................................... 8, 35

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ................................. passim

*O'Brien v. National Gypsum Co.*, 944 F.2d 69 (2d Cir. 1991) ................................. 27

*Old Chief v. U.S.*, 519 U.S. 172 (1997) .................................................................. 29

*Phoenix Assocs. III v. Stone*, 60 F.3d 95 (2d Cir. 1995) ......................................... 32

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) ....................................................... 14

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ............................ 14, 16

*Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991) ............................................. 15

*Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) ............................................... 24

*Smith v. City of New York*, 388 F. Supp. 2d 179 (S.D.N.Y. 2005) ........................... 25

*Tesser v. Bd. of Educ.*, 370 F.3d 314 (2d Cir. 2004) ................................................ 9

*Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998) .................................................. 28

*Tse v. UBS Financial Services, Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008) ................ 8

*U.S. v. Brevard*, 739 F.2d 180 (4th Cir. 1984)......................................................................... 20, 22

*U.S. v. Garcia*, 900 F.2d 571 (2d Cir. 1990)............................................................................. 25

*U.S. v. Hall*, 93 F.3d 1337 (7th Cir. 1996).............................................................................. 17

*U.S. v. Jass*, 569 F.3d 47 (2d Cir. 2009)................................................................................. 16

*U.S. v. Kwong*, 69 F.3d 663 (2d Cir. 1995)............................................................................. 19

*U.S. v. Mare*, 668 F.3d 35 (1st Cir. 2012)............................................................................... 22

*U.S. v. Mercado*, 573 F.3d 138 (2d Cir. 2009) ....................................................................... 26

*U.S. v. Miller*, 874 F.2d 1255 (9th Cir. 1989).......................................................................... 22

*U.S. v. Murray*, 784 F.2d 188 (6th Cir. 1986).......................................................................... 22

*U.S. v. Scheffer*, 523 U.S. 303 (1998)..................................................................................... 19

*U.S. v. Shay*, 57 F.3d 126 (1st Cir. 1995) ............................................................................... 17

*U.S. v. St. Clair*, 855 F.2d 518 (8th Cir. 1988) ....................................................................... 22

*U.S. v. Stevens*, 83 F.3d 60 (2d Cir. 1996) .............................................................................. 35

*U.S. v. Street*, 548 F.3d 618 (8th Cir. 2008) ........................................................................... 22

*U.S. v. Terry*, 702 F.2d 299 (2d Cir. 1983)............................................................................. 30

*U.S. v. White*, 692 F.3d 235 (2d Cir. 2012)............................................................................. 30

*Vichare v. AMBAC Inc.*, 106 F.3d 457 (2d Cir. 1996)............................................................... 7

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).......................................................... 26

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ...................................................................... 34

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ....................................................... 32, 33

## State Cases

*Conkey v. State*, 427 N.Y.S.2d 330, 332 (N.Y. App. Div. 4th Dep't 1980) ................................ 14

*People v. Johnson*, 447 N.Y.S.2d 341 (N.Y. Sup. Ct. 1981)...................................................... 19

## Federal Statutes

28 United States Code § 1404(c) ................................................................. 35

42 United States Code § 1983........................................................................ 1

## Federal Rules

Federal Rules of Civil Procedure 42 ......................................................... 10

Federal Rules of Civil Procedure 50 ........................................................... 8

Federal Rules of Civil Procedure 59(a)....................................................... 8

Federal Rules of Civil Procedure 61 ........................................................... 9

Federal Rules of Evidence 401 ................................................................. 12

Federal Rules of Evidence 403 ................................................................. 12

Federal Rules of Evidence 404(b).............................................................. 32

Federal Rules of Evidence 607 ................................................................. 30

Federal Rules of Evidence 801(d)(2)..................................................... 11, 25

Federal Rules of Evidence 804(b)(1)........................................................... 25

Federal Rules of Evidence 804(b)(3)…………………………………………………11

## Other Authorities

Kassin & Sommers, *Inadmissible Testimony, Instructions to Disregard, and the Jury: Substantive vs. Procedural Considerations*, 23 Pers. & Soc. Psych. Bulletin 1046 (1997) ..... 22

Nancy Steblay et al., *The Impact on Juror Verdicts of Judicial Instruction to Disregard Inadmissible Evidence: A Meta-Analysis*, 30 L. & Hum. Behav. 469 (2006) ......................... 22

## INTRODUCTION

After spending 18 years in prison for the rape and murder of Theresa Fusco, which DNA testing later revealed they did not commit, plaintiffs John Restivo and Dennis Halstead sought to vindicate their constitutional rights in this 42 U.S.C. § 1983 wrongful conviction action. But over Restivo and Halstead's objection, their case was joined with John Kogut's. Kogut had been separately tried and convicted of the crime and later excluded by DNA evidence, but unlike Restivo and Halstead, had given a videotaped confession inculpating all three men. After a nearly three-month joint trial, and six days of deliberation, the jury returned a verdict. It found supervising defendant, Det. Lt. Sean Spillane, had "created a policy or custom under which unconstitutional practices occurred," and found Nassau County "responsible" for Spillane's conduct. D.E. 453 (Ct. Ex. 20) at 9-10, ¶¶8(b) & 9). But it awarded him qualified immunity and did not find any other defendant liable.

What explains this result? As feared, it became clear through the course of the joint trial that Kogut's confession overshadowed Restivo and Halstead's own strong claims. The only way to reconcile the jury's answers is that the jury believed some misconduct occurred—indeed, Restivo and Halstead presented unrebutted DNA evidence that they are innocent of the Fusco rape and murder, and powerful proof defendants had planted forensic hair evidence, coerced and fabricated inculpatory statements, and withheld exculpatory evidence—but that this misconduct did not cause Restivo and Halstead's convictions. That is, the jury likely believed that the Kogut confession caused the prosecution and convictions, or, based on the confession and failed polygraphs, that Restivo and Halstead were guilty and their guilt caused their convictions.

Either belief was premised on evidence that never should have been admitted against Restivo and Halstead, and would not have been heard by jurors in a separate trial. First, jurors

1

were repeatedly exposed to Kogut's detailed, videotaped confession, despite the fact that it was inadmissible against them during their criminal prosecutions under *Bruton v. U.S.*, 391 U.S. 123 (1968), and was equally inadmissible here. Without expert testimony, jurors find it difficult to believe that a person would confess to a crime he did not commit.

Additionally, Restivo and Halstead were severely prejudiced by the introduction of inadmissible polygraph evidence. In a separate trial no polygraph testimony would have been admitted for any purpose, but in the consolidated trial, the jury heard Kogut was told he failed the polygraph. Then defendant Dempsey, despite being warned not to do so, told the jury that Restivo failed a polygraph. The polygraph evidence was extremely prejudicial, as the failed polygraphs suggest plaintiffs had guilty knowledge and were somehow involved in the crime, despite the unrebutted DNA and hair root banding evidence to the contrary.

Exploitation of the Kogut confession without a limiting instruction and evidence of failed polygraphs, all of which is inadmissible against plaintiffs Restivo and Halstead, unfairly undermined their powerful case built on undisputed scientific evidence. This trial was a miscarriage of justice. On the basis of any one of the prejudicial errors identified below, this Court should grant Restivo and Halstead a new trial.

## RELEVANT BACKGROUND

### John Restivo and Dennis Halstead Presented Uncontested Scientific Proof of Innocence and Compelling Evidence that Defendants' Misconduct Caused Their Wrongful Convictions.

Restivo and Halstead presented conclusive—and unrefuted—scientific proof that they were innocent of the rape and murder of Theresa Fusco. Defendants stipulated to the accuracy and reliability of the DNA tests excluding Restivo and Halstead as the source of the semen recovered from the 16-year-old's vagina at autopsy. They admitted that years of investigation and DNA tests on 89 people had failed to uncover <u>any</u> evidence that could explain away the

DNA: no evidence the girl everyone believed was a virgin had had her first consensual partner shortly before her death, nor any evidence of a mystery fourth participant in the rape and murder.[1] Plaintiffs presented an incontrovertibly well-qualified DNA expert, Dr. Charlotte Word, who explained that the DNA results indicated that the semen recovered from Miss Fusco's body came from her lone rapist, because the concentration of semen was consistent with recent deposit before death, but inconsistent with multiple depositors or condom use; defendants did not undermine her testimony on cross-examination and presented no rebuttal.[2] Restivo and Halstead each also offered undisputed alibi testimony, supported by documentary evidence.[3]

Plaintiffs offered similarly formidable evidence that the sole physical or forensic evidence ever offered against them—two hairs from Theresa Fusco allegedly found in Restivo's van five months after the murder—must have been planted by defendants. Two preeminent experts testified[4] that, given the post-mortem root banding displayed on those hairs, which only develops when hairs are attached to a decomposing body for hours if not days, there is no known scientific explanation for the hairs to have come from Theresa Fusco's body during the short time window the defense contended she was in Restivo's van. They further testified that the hairs

---

[1] Stipulation 1, Tr. 9/20/12 at 131–32; Plaintiffs' Exhibit (PX) 684.

[2] Tr. 9/20/12 at 79–162.

[3] Restivo's was particularly compelling, proving he was eight miles away sanding floors at his new home in Wantagh the night Miss Fusco disappeared, that he had no vehicle with him once Michael Cockerel drove himself home, and that Restivo was on telephone calls at his Wantagh home at 8:10 p.m., 9:15 p.m. and 10:26 p.m., making it impossible for him to have been in Lynbrook around 10 p.m, the time of the murder. *See* Tr. 10/17/12 (M. Cockerel) at 3127–51, 3164–65, 3176–84, 3219–20; Tr. 10/18/12 (M. Cockerel) at 3369, 3398–99, 3460–61; Tr. 10/18/12 (Restivo) at 3556-733; Tr. 11/15/12 (DeCrascenzo) at 5441–47; PX863, PX876 (sander & edger rental receipts); PX933 (calls placed from Wantagh house at 8:10 p.m. and 9:15 p.m.); PX939 (10:26 p.m. call to Wantagh house).  For Halstead alibi evidence, *see* Tr. 10/22/12 (J. Halstead) at 3783–98, 10/23/12 (D. Halstead) at 3918–29; PX885, PX886, PX943, PX944.

[4] Despite a pretrial ruling holding admissible the testimony of a third hair expert, Dr. Peter DeForest, D.E. 350, mid-trial the Court barred it as "cumulative" and directed the parties to stipulate to what he would have testified to based on his review of the hair evidence. Tr. 10/15/12 at 2711. No stipulation was reached, so the jury heard nothing of his findings.

were pristine and unbroken, just like hairs taken from Fusco's body at autopsy, but unlike any of the other hairs removed from the dirty van months later.[5] Defendants, again, did not undermine or rebut this scientific proof. Plaintiffs also offered proof defendant Det. Joe Volpe had motive (in defendant Det. Lt. Sean Spillane's words, "a very weak if nonexistent case against [Restivo and Halstead]") and opportunity to plant the hairs (Volpe was seen in the Scientific Investigation Bureau where the hairs were stored in unsealed envelopes in unlocked cabinets).[6] And plaintiffs offered admissions from Volpe: he reported that Fusco's hairs had been found in Restivo's van before the hair comparison could possibly have been completed or anyone had told him of the results, and during his deposition he volunteered what the best way to plant the hairs would have been.[7] In addition, plaintiffs' innocence is powerful evidence the hairs must have been planted: they did not rape or murder Theresa Fusco in Restivo's van, so her hairs were never left there.

Plaintiffs also demonstrated that a key exculpatory lead—one that, given plaintiffs' innocence, may well be linked to the true perpetrator—had been suppressed by defendants from the prosecution and criminal defense. John French's car was stolen around the same time Theresa Fusco disappeared, about a half-mile away. When French located it a week later, the windshield was cracked (consistent with a struggle), the rearview mirror was broken off (consistent with mirrored glass found near Fusco's body), hard nylon-type rope from the car was missing (consistent with the ligature strangulation), and the license plates had been switched with plates stolen from another car (consistent with the car being an instrument of serious criminality). Most significantly, John and his sister Lori found a pair of girl's striped jeans,

---

[5] Tr. 10/10/12 (Houck, Petraco) at 2074:22-78:3, 2095:8-19, 2099:12-106:13; 10/11/12 (Petraco) at 2214:16-16:2, 2221:4-24:4, 2227:6-28:8.

[6] Tr. 10/12/12 (Spillane) at 2564–65; Tr. 10/9/12 (Birdsall) at 1781, (Fraas) at 1787–88.

[7] *See* Volpe 3/18/09 video dep. at 167:21–172:15, 173:4–194:1, 197:21–226:2; Volpe 4/6/09 video dep. at 236:13–239:3, 240:17–251:7 (played 10/10/12).

4

inside out, stuffed under the passenger seat; Fusco had last been seen wearing striped jeans, and 16-year-old Lori thought they looked like they belonged to someone her age.[8] Defendants later found a hard nylon-type rope in the dirt lot where French had recovered his car which he "positively identified as mine" and which Volpe displayed to witnesses in the ensuing days.[9] This lead dominated the first days and weeks of the Fusco murder investigation and defendants never eliminated a possible connection between the French car and the crime, yet neither prosecutors nor criminal defense counsel ever heard this critical evidence.[10] Years later, Volpe misled O'Leary, the NCPD officer reinvestigating the case after the DNA exclusions, about this lead: Volpe told him that he had fully checked it out and it had nothing to do with the case, but O'Leary admitted this was exculpatory evidence that should have been disclosed.[11]

Finally, plaintiffs offered evidence that defendants had coerced and fabricated witness statements. Restivo detailed his 22-hour interrogation by Volpe and Dempsey, during which he was physically assaulted and denied a phone call, access to an attorney, or release until he signed a statement falsely incriminating Halstead. After his release, Restivo immediately reported this mistreatment to his attorney, Ted Robinson, who lodged numerous complaints with the police

---

[8] PX161–169j; Tr. 10/1/12 (French) at877:19-82:25, 885:19-88:19, 891:11-92:16, 897:7-17, 903:17-8:8, (Gabberty) at932:16-36:6, 939:18-40:10; Sirianni 12/14/11 dep. at 408:23-14:21, 418:8-19:4(played 10/2/12).

[9] PX162; PX163; Sirianni 12/14/11 dep. at 411:16–14:1 (played 10/2/12); PX929. The rope was never vouchered or tested for forensic evidence and has since been lost. *See* D.E. 453 (Ct. Ex. 3) at 35 (Stipulation: "At the beginning of the trial, … Detective Hillman searched for the rope depicted in Plaintiffs' Exhibit 169J and could find neither the rope nor any document reflecting what had happened to it."). Plaintiffs requested, but were denied, a spoliation instruction regarding the rope, given evidence it should have been preserved and tested for forensic evidence. Tr. 11/9/12 at 5317–18.

[10] Tr. 10/1/12 (Robinson) at 1028–34, 1046–49; Tr. 11/6/12 (McCarty) at 4939–41, 4948–49; Tr. 10/23/12 (Klein) at 4097–4102 (no specific or general recollection of French documents or information).

[11] Tr. 10/11/12 (O'Leary) at 2361, 2418-22.

5

department and other authorities.[12] In addition, Michael and Kenneth Cockerel and defense witness Harry Smyle also testified about the police pressure and culture of intimidation.[13]

### The Defense Failed To Rebut Halstead and Restivo's Evidence of Innocence or Police Misconduct, Instead Focusing on Co-Plaintiff Kogut's Confession and Polygraph.

Defendants hardly attempted to respond to plaintiffs' proof. Instead, they argued that Restivo and Halstead were guilty. (Indeed, that is the only way for the defense to explain Restivo and Halstead's evidence: if Restivo and Halstead were innocent, how could Fusco's hairs have gotten into the van and why would they have made apparently inculpatory admissions?) But the basis for this argument was not any problem with the DNA. The reliability of the DNA exclusions of Restivo, Halstead and Kogut was stipulated, and Dr. Word's unchallenged and unrebutted expert testimony ruled out defense theories that the semen donor was a consensual partner or a phantom fourth co-conspiring rapist. Defendants simply dismissed this gold-standard scientific evidence as a "lawyer's trick,"[14] utterly failing to reconcile their theory of plaintiffs' guilt with the DNA exclusions. Nor did defendants offer any compelling evidence of plaintiffs' guilt, other than the inadmissible Kogut confession and polygraphs: they rested on a handful of statements Restivo and Halstead allegedly made to others around the time of the murder that were reported by incredible witnesses, had innocuous explanations, or never occurred.[15]

---

[12] *See* PX115, 385, 694, 914, 930; Def. Ex. TR3; Tr. 10/1/12 (Robinson) at 991–1005.

[13] Tr. 10/17/12 (M. Cockerel) at 3127, 3147-48; Tr. 10/18/12 (M. Cockerel) at 3411-12; Tr. 11/15/12 (Smyle) at 5410-11, 5417.

[14] Tr. 11/20/12 at 5914.

[15] Against Restivo, defendants offered Harry Smyle, a witness who plainly had serious credibility problems who, after being interrogated for hours, told the police Restivo had said two things to him: first, that before Theresa Fusco's body was found, Restivo said they would probably find her strangled somewhere—a rumor defendant Frank Sirianni admitted was circulating among the community and was not enough to make anyone a suspect, Sirianni 6/15/10 dep. at 60:15–63:15, 67:6–75:11 (played 10/2/12)—and second, that Restivo said he knew who had killed Fusco but couldn't tell—an admission Smyle testified never happened, but was one of the scenarios police fed to him during interrogation, Tr. 11/15/12 at 5416–17. Kenny

Rather, because Restivo and Halstead's trials were joined with Kogut's, the defense to Restivo and Halstead's claims hinged on Kogut's detailed, videotaped confession implicating all three in the rape and murder (wrongfully, as Kogut, too, was excluded by the DNA evidence). The combined trials also allowed defendants to argue plaintiffs' guilt based on evidence that Kogut fail a polygraph; defendant Dempsey, despite being warned not to do so, told the jury that Restivo, too, had failed a polygraph. All of this evidence was admitted improperly, over Restivo and Halstead's objection.

### The Restivo and Halstead Verdict Was Fatally Tainted by Consolidation of Their Trial with Kogut's

After six days of deliberations, the jury reached a verdict, finding that Det. Lt. Sean Spillane had "created a policy or custom under which unconstitutional practices occurred," but awarding him qualified immunity. D.E. 453 (Ct. Ex. 20) at 9, ¶¶8(b),(c)). It also found Nassau County responsible for Spillane's failure to supervise. *Id.* at 10, ¶9. Other defendants were held not liable for depriving Restivo or Halstead of a fair trial or maliciously prosecuting them.

The only way to reconcile the evidence with the answers to the questions on the verdict form is that the jury believed police defendants engaged in misconduct during the Fusco investigation (that was the only evidence presented to support the unconstitutional practices the jury found Spillane had sponsored), but that this misconduct did not cause Restivo and Halstead's convictions. *See Vichare v. AMBAC Inc.*, 106 F.3d 457, 464 (2d Cir. 1996) (court should interpret verdict to reconcile interrogatory answers). That is, the jury must have believed either that the Kogut confession caused the prosecution and convictions, or, based on the Kogut

---

Cockerel, another witness of dubious credibility, claimed to have overheard Restivo make an admission to Michael Cockerel, but Michael testified it never happened. Tr. 10/17/12 at 3151–53. Against Halstead, defendants presented a snippet of a call with his sister: "Were you with them? Yeah. Do you think you were with them? Don't ask me shit like that," after Halstead earlier complained of how long it would take to "prove my innocence." Def. Ex. DH6.

confession (and improperly admitted polygraph evidence), that Restivo and Halstead were guilty, and thus that is what caused their convictions.[16] Either theory is tainted by the reliance on evidence that never should have been admitted against Restivo and Halstead.

## LEGAL STANDARDS

The Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "Any error of law, if prejudicial, is a good ground for a new trial." 11 C. Wright et al., Federal Practice and Procedure § 2805 (3d ed. 2012).

Unlike on a Rule 50 motion, a court considering a Rule 59(a) new trial motion "need not view [the evidence] in the light most favorable to the verdict winner" and may grant a new trial "even if there is substantial evidence supporting the jury's verdict." *Tse v. UBS Financial Services, Inc*., 568 F. Supp. 2d 274, 287 (S.D.N.Y. 2008) (Lynch, J). Thus "[f]reed from the constraints of review that bind a court" deciding a Rule 50 motion, on a Rule 59(a) motion the Court should "examine the evidence through its own eyes." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 147 (2d Cir. 2001) (holding court "acted well within its discretion in granting a new trial"). If, in the Court's independent judgment, errors have infected the trial such that "the jury has reached a seriously erroneous result," the Court should grant a motion for a new trial. *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (quotation omitted). The Circuit's "review of a district court's decision to grant a Rule 59(a) motion is deferential; [it] will reverse only for abuse of discretion." *Manley v. AmBase Corp*., 337 F.3d 237, 245 (2d Cir. 2003).

---

[16] The jury may also have been influenced by defendants' extrajudicial statements. Despite the Court's admonitions not to try this case in the press, Nassau County Attorney John Ciampoli was quoted in a prominent *Newsday* article on the first day of trial: "My opinion is that these gentlemen got away with something, and they should be happy about that and just go away."  Ann Givens, "Infamous Crime Revisited," *Newsday* 9/19/12 at A12.

"A new trial is required if errors in instructing the jury, considered as a whole, prejudiced the objecting party." *Jocks v. Tavernier*, 316 F.3d 128, 137 (2d Cir. 2003) (quotation omitted). Claims of error in jury instructions are reviewed *de novo*; "[a] jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). "An erroneous instruction requires a new trial unless the error is harmless. An error is harmless <u>only</u> if the court is <u>convinced</u> that the error did not influence the jury's verdict." *Id.* (quotation omitted, emphasis added). If an instruction "create[s] an erroneous impression regarding the standard of liability," "effectively preclud[ing] a finding of liability where one may be warranted," the error is not harmless and a new trial is required. *Hathaway v. Coughlin*, 99 F.3d 550, 554 (2d Cir. 1996). A new trial is also necessary where, "based on a review of the record as a whole, . . . the charge was highly confusing." *Hudson v. New York City*, 271 F.3d 62, 67–68 (2d Cir. 2001) (internal quotation and citation omitted).

Errors in admitting or refusing to admit evidence similarly require a new trial if those rulings "affect any party's substantial rights," Fed. R. Civ. P. 61, that is, if "it is likely that in some material respect the factfinder's judgment was swayed by the error." *Tesser v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004); *see also Nimely*, 414 F.3d at 399–400 (finding abuse of discretion and prejudice, particularly in a "close case" where the error went to a "central issue").

## ARGUMENT

## I.    Combining the Restivo/Halstead and Kogut Trials Was Reversible Error.

Restivo and Halstead objected to the Court's *sua sponte* consolidation of their case with Kogut's and moved to sever. D.E. 312. Not only were the respective plaintiffs' claims different, Kogut's confession—which was inadmissible against them but central to any trial on Kogut's

claims—risked unfairly prejudicing Restivo and Halstead. But the motion was denied. D.E. 353.

That was reversible error. The commanding principal of Rule 42, under which the Court consolidated these matters, is fairness to litigants: "[a]lthough consolidation may enhance judicial efficiency, considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *In re Repetitive Stress Injury Litig.,* 11 F.3d 368, 373 (2d Cir. 1993) (finding "consolidation here was a sufficiently clear abuse of discretion to warrant mandamus relief") (internal citations and quotations omitted); *see also Malcolm v. National Gypsum Co.*, 995 F.2d 346, 354 (2d Cir. 1993) (reversing verdict due to improper consolidation).

Joinder here deprived Restivo and Halstead of a "fair and impartial trial." Plaintiffs were irreparably harmed by the introduction of Kogut's confession—without limitation—on their own claims, and by erroneous jury instructions that specifically invited jurors to consider the Kogut confession against them. Restivo and Halstead were similarly prejudiced by the admission of evidence related to polygraphs: both Kogut's, which he requested over plaintiffs' objection, and Restivo's, which defendant Dempsey and NCPD witness Walsh both blurted out. And plaintiffs were prejudiced by the confusion consolidation created. Each of these errors is an independently sufficient basis for a new trial; together, the effect is overwhelming. *See Cameron v. City of N.Y.*, 598 F.3d 50, 54 (2d Cir. 2010) (vacating defense verdict in malicious prosecution suit "because the jury was exposed to a significant amount of erroneously admitted and highly prejudicial testimony"); *Nimely*, 414 F.3d at 400 (ordering new trial in civil rights suit against police "[b]ecause there is a distinct possibility that, absent the errors—perhaps individually, and certainly cumulatively—the jury would not have reached the verdict that it did").

A.      **The Kogut Confession Was the Central Focus of the Combined Trial And Its Prejudicial Admission, Along With Related Erroneous Legal Rulings, Indisputably Had a Substantial Effect on the Jury's Verdict.**

As the Supreme Court has emphasized, confessions are singularly powerful:

> A confession is like no other evidence. . . . Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so. . . . [A] full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision.

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (internal citations and quotations omitted). That precept applies all the more strongly in this case, where Kogut not only provided a detailed written confession to the Fusco rape and murder implicating Restivo and Halstead, he also confessed on video; that video was played repeatedly during the trial, from Kogut's opening statement through defense summation, where it was mentioned over 40 times. And it applies more strongly, still, given the weakness of the other evidence offered to implicate Restivo and Halstead. *See, e.g.*, *Cameron*, 598 F.3d at 65–66 (finding admission of evidence against plaintiffs not harmless where it bore on key disputed issues, was not cumulative of other evidence, was mentioned in defense opening statements and summation, and defense case was weak).

### 1.     The Kogut Confession Was Inadmissible.

The Kogut confession should <u>never</u> have been heard by the jury deciding Restivo and Halstead's claims. First, with respect to Restivo and Halstead, the confession is inadmissible hearsay.[17] That means it could not permissibly be considered for the truth of the assertions: that Restivo and Halstead are guilty of the Fusco rape/murder. Second, there is no non-truth purpose for which the Kogut confession is relevant to any question of consequence to the jury's consideration of Restivo and Halstead's claims (which we explain below in detail for each

---

[17] The Kogut confession is an out-of-court statement offered for the truth, which does not fall within any hearsay exception. *See, e.g.*, Tr. 9/20/12 at 25 (in defense opening, contending that "when [Kogut] said that Theresa Fusco was strangled, it was because he had done the strangling."). The confession was not made by Halstead or Restivo, and is thus not a party admission, Fed. R. Evid. 801(d)(2), nor could it have come in as a statement against penal interest, because Kogut was available as a witness. *Id.* at 804(b)(3).

claim), s*ee* Fed. R. Evid. 401. Even if the confession did have some minimal relevance—it does not—it is far more prejudicial than probative. *See Nimely*, 414 F.3d at 398 (holding district court abused its discretion in not excluding highly prejudicial and confusing evidence under Rule 403).

> **a.    The Confession Was Irrelevant to Restivo and Halstead's Malicious Prosecution Claims, but the Instructions Improperly Authorized the Jury to Consider It.**

The only questions in dispute for Restivo and Halstead's malicious prosecution claims were (1) whether defendants had probable cause to believe the prosecution of Restivo and Halstead could succeed based on admissible evidence and (2) whether defendants acted with actual malice. Tr. 11/20/12 at 6038. The Kogut confession is not relevant to either question.

> **i.    The Kogut Confession is Irrelevant to Probable Cause**

As this Court ruled pretrial, controlling authority *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003), dictates that because the Kogut confession was inadmissible at Restivo and Halstead's criminal prosecutions, it may not be used to establish probable cause to prosecute them. D.E. 353; Tr. 8/16/12 at 4–13; *see also* D.E. 296, 312. In *Boyd*, the Second Circuit considered a malicious prosecution claim where the plaintiff contended that the key statement establishing probable cause was taken from him post-arrest and without *Miranda* warnings. The court held that "if the statement was made after Boyd's arrest, it would clearly not be admissible [due to the *Miranda* violation] and then there would be no probable cause to believe the prosecution could succeed. . . . Summary judgment [for the defendants] would, in that case, have been improperly granted." *Boyd*, 336 F.3d at 77 (emphasis added). That is, the *Boyd* court holds that inadmissible evidence may not be used to support probable cause to prosecute. *Boyd*'s holding controls here; the Kogut confession is inadmissible and irrelevant to probable cause.

But the Court ultimately instructed the jury—contrary to its pretrial ruling—that jurors

should determine probable cause based on defendants' <u>belief in guilt</u>, rather than belief the prosecution would succeed based on admissible evidence.[18] In other words, the Court <u>instructed the jury to consider the Kogut confession</u> when evaluating probable cause to prosecute Restivo and Halstead.[19] But as this Court ruled pretrial, and as the *Boyd* court held, "[f]or the purposes of the present case, the relevant question is whether there was probable cause to believe the prosecution of [plaintiffs] could succeed," not probable cause to believe in guilt. *Boyd*, 336 F.3d at 76 n.7. Since the Kogut confession was never admissible against Restivo and Halstead at their grand jury or criminal trial, it cannot be part of the probable cause calculus. Because "[t]he jury might well have reached a different result had appropriate instructions been given," *Cobb v. Pozzi*, 363 F.3d 89, 116 (2d Cir. 2004) (quotation omitted), a new trial is required.

### ii.        The Kogut Confession is Irrelevant to Malice

The confession was not relevant to malice, either, contrary to the Court's pretrial ruling otherwise. The Court erroneously held that "the defendants should be able to use the evidence that they subjectively believed Restivo and Halstead were guilty [such as the Kogut confession] to negate plaintiffs' evidence that the defendants acted with malice."[20] This is legally incorrect: plaintiffs' theory was that defendants framed them through the intentional creation of false evidence and withholding of exculpatory evidence, which is malicious whether or not defendants believed that plaintiffs had in fact committed the crime. *See Ricciuti v. N.Y.C. Transit Auth.*, 124

---

[18] Tr. 11/20/12 at 6040 (instructing jury to determine probable cause inquiry based on "whether a reasonably prudent person, <u>based on all the factors and circumstances known to him</u> when the prosecution was commenced, <u>would have believed that the plaintiffs were guilty</u> of the crimes charged") (emphasis added). Mr. Scheck argued during his closing that the confession was inadmissible against Restivo and Halstead and could not be considered on their claims, but the jury was repeatedly told to disregard any legal instructions from the lawyers, and to follow only those instructions from the Court. *See, e.g.*, Tr. 9/19/12 at 140; Tr. 11/20/12 at 6016.

[19] It was a "factor[] and circumstance[] known to" defendants that would have affected whether they "would have believed that the plaintiffs were guilty." Tr. 11/20/12 at 6040.

[20] Tr. 8/16/12 at 9.

F.3d 123, 130 (2d Cir. 1997) ("To hold that police officers, having [probable cause to] arrest a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice").[21]

Restivo and Halstead sought to pursue three legally independent avenues to establish malice: by showing that defendants acted "in reckless disregard of the rights of the plaintiff," *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (internal citation and quotation omitted), or "due to a wrong or improper motive, something other than a desire to see the ends of justice served," *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal citation and quotation omitted), or in "pursuit of the lawful end by the intentionally unlawful means," *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal citation and quotation omitted). If a malicious prosecution plaintiff seeks to raise an inference of malice solely through the absence of probable cause, subjective belief in guilt becomes a defense. But plaintiffs made plain that was not their theory. *See* D.E. 338 at 5–6; D.E. 382 at 13.[22]

Second, in line with its pretrial admissibility ruling, the Court gave an erroneous jury charge on malice, improperly instructing the jury that belief in guilt is a defense:

---

[21] Even assuming the Kogut confession could be considered on the issue of malice alone, the court did not so instruct the jury.

[22] One of the cases cited by the Court, *Granato v. City of New York*, actually supports plaintiffs' argument that malice may be proven through evidence independent of defendants' belief in probable cause. No. 98–CV–667 (ILG), 1999 WL 1129611 at *5 (E.D.N.Y. Oct. 18, 1999) (holding evidence of improper offer to drop prosecution in exchange for benefit could prove malice despite the undisputed probable cause to prosecute). The other cases relied on by the Court—neither of which is controlling authority—are inapposite, indicating merely that subjective belief in guilt is a defense where the only evidence of malice is the inference that may arise from the absence of probable cause. *See Espada v. Schneider*, 522 F. Supp. 2d 544, 554 (S.D.N.Y. 2007) (finding no evidence of malice, noting plaintiff has "certainly not adduced any evidence that Officer Schneider deliberately falsified his statements in support of the criminal complaint"); *Conkey v. State*, 427 N.Y.S.2d 330, 332 (N.Y. App. Div. 4th Dep't 1980) (finding "the record is devoid of any proof whatever of the existence of actual malice on the part of Investigator Hudson" and that "[t]here is no proof of reckless or grossly negligent conduct").

14

to show malice, Plaintiffs must show that the criminal prosecution was initiated <u>for a purpose other than to secure a conviction of a guilty person</u>, or that it was initiated out of ill will or reckless disregard for the rights of the accused. A prosecution is initiated with reckless disregard for the rights of the accused when it is initiated <u>without any reasonable belief that the accused has actually committed the offense for which he is charged</u>.[23]

Since "subjective belief in guilt" is no defense to plaintiffs' claims, the instruction was error. *See Ruggiero v. Krzeminski*, 928 F.2d 558, 561–62 (2d Cir. 1991) (holding proffered instruction was properly refused since, given plaintiff's theory and evidence, defense was not legally relevant).

The combined effect of the probable cause and malice instructions required plaintiffs to prove an additional element—that defendants had no reasonable belief in guilt—that the law does not require. Where, as here, a court "improperly directs the jury on whether the plaintiff has satisfied her burden of proof, it is not harmless error . . . and a new trial is warranted." *Gordon*, 232 F.3d at 116 (internal quotation and citation omitted).

> **b.    The Confession Was Irrelevant to Restivo and Halstead's Fair Trial Claims, but the Jury Charges and Lack of Limiting Instruction Invited the Jury to Consider It.**

There can be no dispute that the confession is irrelevant to Restivo and Halstead's fair trial claims as well. The core questions on those claims, including fabrication and *Brady* theories, are whether defendants presented false evidence to, or withheld exculpatory evidence from, the prosecution and original criminal jury, and whether such misconduct caused plaintiffs' incarceration.[24] That is, the civil jurors had to decide whether defendants' misconduct could be reasonably expected to have made a difference in the outcome of plaintiffs' criminal trials, in light of the other evidence presented against plaintiffs at those trials. *See, e.g.*, *Ricciuti*, 124 F.3d

---

[23] Tr. 11/20/12 at 6040 (emphasis added). Although the Court included plaintiffs' proffered "reckless disregard" standard, it improperly defined that, too, to equate to prosecution in the absence of a reasonable belief in guilt. *Cf. Manganiello*, 612 F.3d at 164 (holding defendant's misrepresentation of evidence to make it appear falsely inculpatory "cannot be viewed as better than a reckless disregard of Manganiello's rights").

[24] Tr. 11/20/12 at 6034–37 (charge).

at 130; *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). But the confession is not relevant to either of these questions: it is not relevant to whether defendants <u>committed</u> the charged misconduct unless it is considered for the truth, which it may not be against Restivo or Halstead. And since the Kogut confession was never introduced at Restivo and Halstead's criminal trial, it cannot be relevant to the jury's causation analysis, either.

Despite plaintiffs' requests, the Court never instructed the jury on <u>any</u> limitation on their consideration of the Kogut confession with respect to Restivo and Halstead's claims.[25] Instead, the Court's instructions affirmatively misled the jury that the Kogut confession was evidence that <u>should</u> be considered on Restivo's and Halstead's claims generally, thus inviting the jury to use it to consider the fair trial claims.[26]

### 2. The Exclusion of Dr. Saul Kassin's Expert Testimony Compounded the Prejudice Relating to the Confession.

The error of introducing the Kogut confession against Restivo and Halstead, and instructing the jury to use it to determine malice and probable cause, was compounded by the Court's improper exclusion of social psychologist Dr. Saul Kassin's testimony. Plaintiffs proffered the testimony of this preeminent expert principally to combat the widely held notion that no one would falsely confess to a crime he did not commit. D.E. 316. The Court excluded the testimony completely, holding that Dr. Kassin's "qualifications are impressive but the facts and data that are relied upon are weak . . . [e]ssentially, this is an area that the jurors can decide

---

[25] Even had an appropriate limiting instruction been given, it would almost certainly have been insufficient to cure the prejudice of admitting the Kogut confession at Restivo and Halstead's trial. *See Bruton*, 391 U.S. at 135 ("[T]he risk that the jury will not, or cannot, follow instructions [to limit consideration of the confession only as against Mr. Kogut] is so great, and the consequences of failure so vital to [Plaintiffs Restivo and Halstead], that the practical and human limitations of the jury system cannot be ignored."); *see also U.S. v. Jass*, 569 F.3d 47, 60 (2d Cir. 2009). But the failure to give <u>any</u> limiting instruction is even more clear error.

[26] *See, e.g.,* Tr. 11/20/12 at 6030 (instructing that "Kogut was interrogated and ultimately signed a confession that also implicated Restivo and Halstead in the Fusco rape and murder").

for themselves."[27] Even if the Court had seen fit to limit Dr. Kassin's proffered testimony, it was clear error to prevent him from testifying about the basic phenomenon of false confessions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (only where there is "too great an analytical gap between the data and the opinion proffered" should an expert's opinion be excluded).

The fact that innocent people do, at times, confess to crimes they did not commit is unassailable; even defendants' own expert, Paul Cassell, did not challenge that basic proposition. *See* D.E. 308-2 at 20–24. While this may seem an obvious observation to the Court, research shows it is counterintuitive to most jurors, making expert testimony that much more important. *See* D.E. 316 at 2–3 (collecting empirical research); *see also U.S. v. Hall*, 93 F.3d 1337, 1345 (7th Cir. 1996) (reversing conviction for improper exclusion of false confession expert); *U.S. v. Shay*, 57 F.3d 126, 133–34 (1st Cir. 1995) (excluding "specialized opinion testimony [on false confessions]. . . that could have 'exploded common myths' about evidence vital to the government's case" was error) (citation omitted).

### 3. Admission of the Confession—Without Limitation—And Related Errors in the Jury Instructions and Evidentiary Rulings Was Overwhelmingly Prejudicial To Restivo And Halstead's Claims

These errors made the Kogut confession the focus of the consolidated trial. Understandably, Kogut's summation focused on the confession. But so, too, did the defense summation, including 41 separate mentions and repeated and detailed analysis of why the confession must have been true. *See Hynes v. Coughlin*, 79 F.3d 285, 293 (2d Cir. 1996) (holding improper admission of evidence not harmless "[g]iven defense counsel's relentless emphasis on this evidence in the opening statement, in cross-examin[ation], and in summation").[28]

The confession also clearly played a central role in deliberations. On the final day, Juror

---

[27] Tr. 9/6/12 at 6.
[28] *See, e.g.,* Tr. 11/20/12 at 5924, 5962–65.

#1 was dismissed for doing internet research to, as Juror #3 put it, "see what the number of confessions that were given were true confessions to police or the FBI." Tr. 11/29/12 at 6161. Juror #5 complained that this issue "seems like it's blocking the deliberations"; he noted "it's going to delay the process much longer." *Id.* at 6164–65. In light of the defense verdict reached later that day, it is clear Juror #5 was indicating that the jury was nearing consensus on a defense verdict but that at least some jurors were hesitating based on Juror #1's argument that false confessions do happen. The Court then dismissed Juror #1 over objection and instructed the remaining jurors to disregard this information; a defense verdict was reached four hours later. *Id.* at 6191–92, 6201. Thus, without Dr. Kassin's testimony, defendants preyed on jurors' misconceptions about false confessions.

Had the Court properly excluded the Kogut confession from Halstead and Restivo's trial, there can be no doubt deliberations would have been entirely different. Rather than debating whether a confession so compelling could possibly be false, the jurors would have evaluated the strength of Halstead and Restivo's evidence of police misconduct in planting hairs, failing to turn over *Brady* material relating to the French car, jeans and rope, and coercing witnesses to give false, half-inculpatory statements against them. Given the little evidence the defense put on to rebut those claims, as well as the jury finding that unconstitutional misconduct did in fact occur, it is clear that the erroneous admission of the Kogut confession and the Court's instructions inviting jurors to use the confession must have tipped the scales. *See, e.g., Nimely*, 414 F.3d at 400 (holding prejudicial admission of evidence required a new trial where case was "highly contested and . . . the jury could readily have come out the opposite way . . . [and where] witness credibility was the central issue"); *Hester v. BIC Corp.*, 225 F.3d 178, 185–86 (2d Cir. 2000) (ordering new trial where "case was factually very close" and prevailing party "relied heavily"

18

on improperly admitted evidence).

**B.    Restivo and Halstead Were Prejudiced By Admission of Polygraph Evidence**

As a general matter, polygraph evidence is presumptively inadmissible due to both its
unreliability and the overwhelmingly prejudicial impact of "lie detector test results" on a jury's
determination of witness credibility. *See, e.g.*, *U.S. v. Scheffer*, 523 U.S. 303, 314 (1998) (noting
"that the aura of infallibility attending polygraph evidence can lead jurors to abandon their duty
to assess credibility and guilt"); *U.S. v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995); *see also Nimely*,
414 F.3d at 398 (finding district court abused its discretion in permitting expert testimony as to
credibility of witnesses). Polygraphs are inadmissible in New York state courts as well; no
polygraph evidence was introduced at the Restivo/Halstead grand jury or criminal trial. *See
People v. Johnson*, 447 N.Y.S.2d 341, 345 (N.Y. Sup. Ct. 1981) ("Certainly polygraphy . . . has
no evidentiary standing in the administration of criminal law, and therefore could not be
considered as a basis for raising the level of reasonable suspicion to that of probable cause.")
(citations omitted). For these reasons, Restivo and Halstead objected to the introduction of any
polygraph evidence at the civil rights trial. D.E. 315. In the alternative, plaintiffs sought to
introduce the testimony of expert Charles Honts that the polygraph method used by defendants in
this case was unreliable by the polygraph community's own standards: indeed, it has an
exceedingly high false positive rate when examining innocent subjects, no better than flipping a
coin. D.E. 315-1 (Honts Report) at 6.

**1.    Prejudice from Evidence Related to Kogut's Polygraph.**

But Kogut pursued a different strategy, seeking to introduce the fact that Kogut was
given a polygraph and told he had failed—but not the actual results of the polygraph—as part of
his coercion case. Because Kogut and the defense agreed on a stipulation to that effect, this

19

evidence was introduced over Restivo and Halstead's objection at the joint trial.

The prejudice caused by just this decision, standing alone, was enormous. In a joint trial, especially one in which Kogut's confession was introduced without any limitation, the jury's assessment of Kogut's credibility artificially became central to Restivo and Halstead's claims. This evaluation of credibility was irremediably tainted by the polygraph evidence: not only that Kogut was asked to take a polygraph, but that he took one, was asked questions about the Fusco murder, denied any knowledge, and was told he failed shortly before he confessed and implicated Restivo and Halstead. The court's exclusion of the results themselves does not cure that prejudice, especially where the obvious inference from these facts is that Kogut did, indeed, fail. *See, e.g.*, *U.S. v. Brevard*, 739 F.2d 180, 182–83 (4th Cir. 1984) (reversing conviction based on improper mention of fact, but not results, of defendants polygraph); D.E. 315. Furthermore, the jury was never instructed not to consider the polygraph for probable cause, and never instructed to consider probable cause against Kogut separately from probable cause against Restivo and Halstead. Thus, the jury could have improperly relied on the fact of Kogut's polygraph in determining that Kogut (and, by implication, Restivo and Halstead) were guilty of the Fusco rape/murder, that defendants had probable cause to prosecute them, that defendants had a subjective belief in Restivo and Halstead's guilt, or all of the above.

> **2.    Restivo and Halstead Were Prejudiced by Defendant Dempsey Telling the Jury, Despite Being Warned Not to Do So, that Restivo Failed a Polygraph and the Lack of a Proper Curative Instruction.**

But the prejudice did not end there. Despite plaintiffs' clear objection to the introduction of any evidence regarding Restivo's polygraph (which used a famously unreliable method, even for polygraphs, and for which the underlying documentation was inexplicably lost), defendant Robert Dempsey gratuitously "volunteered" on cross examination that Restivo had failed a

polygraph even though he had been explicitly instructed not to mention it. Tr. 10/16/12 at 3019. Restivo and Halstead requested, at a bare minimum, a curative instruction that polygraphs are inadmissible <u>because they are unreliable</u>;[29] the Court instructed only that they are inadmissible:

> Ladies and gentlemen, you heard the term polygraph, lie detector test, et cetera. I want you to understand that polygraph or lie detector tests, the results, are never admissible. Never admissible. These terms have nothing to do with respect to this case and you are to disregard them.[30]

Then, on the final day of trial, and in violation of the Court's directive, defense counsel exacerbated the prejudice by eliciting from Detective Walsh another mention of Restivo taking a polygraph examination.[31] Restivo and Halstead reiterated their request for an instruction that polygraphs are unreliable, but the Court refused, instead telling the jury:

> I, on [a] prior occasion, told you that polygraph evidence is not part of the case. You have not forgotten that, and it certainly has nothing to do with this case and Mr. Restivo. Strike from your memory anything with regard to the polygraph evidence.[32]

The combination of these erroneous admissions with the Kogut polygraph evidence was devastating: the jury could now infer not only that Kogut was lying, but that Restivo was too, and therefore Restivo must have had at least guilty knowledge about the crime.

### 3.    The Court's Curative Instruction Was Inadequate

That the Court gave a curative instruction cannot cure the prejudice of the improper admission. *See U.S. v. St. Clair*, 855 F.2d 518, 523 (8th Cir. 1988) (holding curative instruction did not remedy improper admission of polygraph evidence: "The naive assumption that

---

[29] Tr. 10/17/12 at 3032:3-12, 3343:20-45:21; Tr. 10/18/12 at 3360:1-10. Defendants conceded in pretrial briefing that "polygraph test results are too unreliable to be admitted to prove the truth or falsity of a particular statement" D.E. 320 at 1–2.

[30] Tr. 10/22/12 at 3616.

[31] This came after assurances by Mr. Freeman to Mr. Scheck that Walsh would not mention polygraphs. Tr. 11/16/12 at 5492-93. Furthermore, Deputy County Atty. Ferguson claimed he had instructed the witness not to mention polygraphs, but the witness denied receiving any such instruction. *Id.* at 5492–502.

[32] Tr. 11/16/12 at 5502.

prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." (quoting *Krulewitch v. U.S.*, 336 U.S. 440, 453 (1949) (Jackson, J. concurring))); *U.S. v. Murray*, 784 F.2d 188, 189 (6th Cir. 1986) (describing instruction to disregard polygraph evidence as "very close to an instruction to unring a bell"); *Brevard*, 739 F.2d at 182; *U.S. v. Miller*, 874 F.2d 1255, 1263 (9th Cir. 1989).

Empirical research confirms this judicial skepticism: when jurors are told to disregard powerful evidence but are not given a reason to do so, they do not comply. *See* Nancy Steblay et al., *The Impact on Juror Verdicts of Judicial Instruction to Disregard Inadmissible Evidence: A Meta-Analysis*, 30 L. & Hum. Behav. 469, 487 (2006) ("[I]t is clear that judicial instructions do not effectively eliminate jurors' use of inadmissible evidence. Juror noncompliance is particularly likely when a reason for rejection . . . is not provided.").[33] Although even the instruction plaintiffs requested—that polygraphs are unreliable—would likely not have cured the improper admission, nothing short of that could possibly suffice. *See U.S. v. Street*, 548 F.3d 618, 628–29 (8th Cir. 2008) (holding instruction that polygraph examinations are "scientifically unreliable" failed to cure prejudice of improper polygraph reference); *cf. U.S. v. Mare*, 668 F.3d 35, 38, 41–42 (1st Cir. 2012) (holding prejudice of prosecutor's unanswered question regarding the fact of a polygraph was cured by prompt instruction that polygraphs are unreliable as a matter of law; noting "it is troubling that a polygraph test was mentioned in the presence of the jury").

### 4.    The Errors Related to Polygraph Evidence Require a New Trial

If there could be any doubt about the improper effect of the polygraph evidence on this

---

[33] Attached hereto as Exhibit A. Indeed, the very fact of an ineffective curative instruction may create a "boomerang" effect, <u>heightening</u> the impact of the evidence by drawing attention to it. *See* Kassin & Sommers, *Inadmissible Testimony, Instructions to Disregard, and the Jury: Substantive vs. Procedural Considerations*, 23 Pers. & Soc. Psych. Bulletin 1046, 1047 (1997), attached hereto as Exhibit B.

jury, the history of deliberations made it plain. Six days into deliberations, the jury requested the Kogut polygraph form and highlighted polygraph question sheet, shortly after sending a note with a "hypothetical" question about the inability to reach unanimity.[34] Counsel for both sides reviewed the exhibit and handed it up, only belatedly realizing that it was an uncorrected copy that revealed the actual polygraph results indicating that Kogut had failed, concluding:

> Lying. J. Kogut answered several of the relevant crime questions with deceptive line responses and stated that he's aware of his responses throughout this examination which altered some of the chart's responses. During an interview with homicide detectives after this examination, J. Kogut gave a full admission to this murder.[35]

When the error was discovered and the unredacted exhibit retracted, it was clear the jury had reviewed it.[36] The Court again instructed the jury that the polygraph results were not in evidence, were inadmissible, and should not be used for any purpose, but the damage had been done: Two hours later, the jury reached a unanimous verdict finding no liability.[37] As the Court can have "no confidence whatever that the improperly admitted evidence did not substantially influence the jury," it must remand for a new trial. *Hynes*, 79 F.3d at 293 (reversing and remanding for a new trial due to evidentiary errors even though "it is of course possible that the jury would have reached the same verdict had the evidence been excluded").

## II.    Plaintiffs Were Barred From Presenting Evidence Directly Relevant to their Claims.

In addition to the improper admission of the confession and polygraph evidence, plaintiffs were prejudiced by the improper exclusion of evidence critical to their claims. *See, e.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 180 (2d Cir. 2000) (while district court's exclusion of evidence is reviewed for abuse of discretion, "a mistake of law is automatically such an abuse").

---

[34] D.E. 453 (Court Exs. 14, 17).

[35] Tr. 11/29/12 at 6195–96; D.E. 453 (Court Ex. 18) at 14.

[36] Tr. 11/29/12 at 6196.

[37] *Id.* at 6199–200, 6201.

### A.    David Rapp

The Court improperly excluded 40 pages of deposition testimony from David Rapp, an

out-of-state former friend of Restivo's.[38] In substance, that designated testimony was as follows:

> At around 8:30 pm on May 3, 1985, Rapp was pulled off the street by NCPD officers,
> handcuffed, and questioned by detectives including defendants Volpe and Allen about the
> Fusco rape/murder for the next 15 hours. Rapp was asked repeatedly if he had any
> information implicating Restivo; when he truthfully denied knowing anything, defendants
> would not take no for an answer. He was specifically told that his cousin, Carl Pozzini,
> had overheard Restivo making admissions to Rapp; Rapp "told the officers over and over
> that I had no idea what Carl was talking about and that I was positive that John had never
> said anything to me or even hinted that he was involved in raping or killing that girl." At
> one point, while his hands were handcuffed behind him, Rapp was hit in the jaw by a tall
> redheaded police officer (Connaughton) so hard that he fell on the floor. Despite repeated
> requests, Rapp was not permitted to call an attorney or make any other phone calls.
> Eventually, Rapp signed a statement that vaguely incriminated Restivo—and which was
> not true—because that was the only way he thought he'd be permitted to leave.[39]

The Court excluded this testimony, ostensibly on hearsay grounds:

> I am not going to take hearsay statements from David Rapp when the defendants have
> told me they are not raising this issue. They are not coming in and saying we relied on it,
> the statement of David Rapp or the statement of Carl Pozzini, that was part of our
> reliance in arresting and prosecuting them. They don't have it in the case and you're not
> going to reenter it now at this point in time. It is excluded. That's my ruling. No further
> discussion.[40]

That was error. First, the majority of Rapp's testimony is plainly not hearsay, as it is not

about any out-of-court statements at all. Rather, it is Rapp's firsthand account of his interactions

with defendants when they interrogated him in 1985 as part of their investigation of John Restivo

for the Fusco rape/murder.[41] To the extent Rapp describes what defendants Volpe and Allen said

to him, those statements are non-hearsay party admissions. Fed. R. Evid. 801(d)(2). Rapp's

discussion of out-of-court statements attributed to Carl Pozzini, is not hearsay, either, since the

---

[38] Tr. 10/11/12 at 2194–201; D.E. 363 (Final Amended Pretrial Order) at 52.

[39] *See* Rule 32 designation of Rapp deposition excerpts, filed herewith as Exhibit C.

[40] Tr. 10/11/12 at 2200–01.

[41] Nor is Rapp's deposition testimony, itself, hearsay. Rapp lives in Missouri, so was
unavailable to testify, making his pretrial deposition admissible under Fed. R. Evid. 804(b)(1).

statements are not offered to prove the truth of Pozzini's assertions. Quite the contrary, Pozzini's statements were completely false, as Rapp himself repeatedly told defendants in 1985. *See Anderson v. U.S.*, 417 U.S. 211, 219–20 (1974) (holding it "plain" that statements were not hearsay where "the point of . . . introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false."). Finally, Rapp's description of what he told defendants is not hearsay, as it is offered not for the truth but for fact that it was said (and never disclosed), as well as for the effect on the listeners. *See, e.g.*, *Smith v. City of New York*, 388 F. Supp. 2d 179, 182 n.2 (S.D.N.Y. 2005) ("It is well established . . . that statements offered for their effect on the listener are non-hearsay.") (citing *U.S. v. Garcia*, 900 F.2d 571, 576 (2d Cir. 1990)).

Plaintiffs attempted to raise this issue again later in the day, but the Court stood firm in excluding the testimony, this time on relevance grounds.[42] That was also error; Rapp's proffered testimony is directly relevant to plaintiffs' claims. Carl Pozzini testified at the grand jury and at trial to having overheard a conversation between Restivo and Rapp during which Restivo allegedly told Rapp he was "scared or nervous" after hearing about Kogut's arrest, that he was "involved" in the rape and murder of Theresa Fusco, that he was "wasted on angel dust" and "tried to stop it but couldn't." *See* D.E. 243 (Plaintiffs' Rule 56.1 Statement) ¶23. Rapp not only unequivocally denies that this conversation ever took place, he testifies that he told NCPD officers—including Volpe and Allen—before the June 1985 grand jury that John Restivo had never made any admissions to him about the Fusco rape murder. *Id.* ¶25.[43] That makes Rapp's

---

[42] Tr. 10/11/12 at 2457 ("[I]t's of no relevance what David Rapp says happened.").

[43] Pozzini was himself deposed in this case; he now admits that Restivo never made any of these statements to him, and that he had only said that Restivo had out of fear the police would make him a suspect if he did not. *See* D.E. 243 (Plaintiffs' Rule 56.1 Statement) ¶24 (citing

testimony direct proof negating the presumption of probable cause created by the indictment, including by showing defendants "did not make a full and fair statement of the facts, misrepresented or falsified evidence, [or] otherwise acted in bad faith when presenting evidence to the grand jury or district attorney."[44] Rapp's testimony is also critical circumstantial evidence corroborating Restivo's testimony that defendants treated him the same way during the same investigation. *See, e.g.*, *U.S. v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (noting under "inclusionary" approach, other acts evidence is admissible if probative of any issue other than propensity or to provide relevant background). The Court compounded this error by preventing plaintiffs' police practices expert, Russ Fischer, from discussing Rapp's interrogation.

### B.    Fred Klein Evidence

The Court also erred in excluding evidence during trial prosecutor Fred Klein's testimony. The critical subject of Klein's testimony was whether Volpe ever disclosed the *Brady* material about the French car/striped jeans/rope lead to him; if he had, then Volpe's *Brady* obligation was satisfied. *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992). Klein, no friend of plaintiffs, testified he had no recollection of ever knowing about the French lead, but given the passage of time he could not say definitively that he had never seen the documents or known about it.[45] Volpe testified that he had given everything in the police file to Klein.[46]

To counter this claim, plaintiffs sought to offer evidence of another document in the police file—a prior inconsistent statement of prosecution witness Brian O'Hanlon on the subject of his criminal trial testimony—that Klein testified at his deposition he is certain he never saw

---

PX278 (Pozzini decl.) ¶¶4, 5; PX342 (Pozzini dep.) 89:12–23, 117:7–18:10, 134:23–135:17, 146:3–14, 154:21–55:12, 187:3–23, 189:15–90:6, 192:13–93:14).

[44] Tr. 11/20/12 at 6039.

[45] Tr. 10/23/12 (Klein) at 4097–4102.

[46] Volpe 12/2/09 dep. at 98 (played 10/2/12).

and that he would have wanted to see because he was obligated to disclose it to the defense.[47] The Court rejected this evidence as "hearsay" and ruled "[w]ithout O'Hanlon being here, I think it's an improper use of the document and I'm going to exclude it."[48] This was more legal error; the O'Hanlon statement was not being offered for the truth, but rather for the fact that it was contained in a document in the police file that Volpe should have disclosed to Klein, but never did. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir. 1999) ("Evidence of a statement made out of court . . . may be admissible for the non-hearsay purposes of proving that the statement was made or that other facts can be inferred from the making of the statement."). Defendants argued forcefully in closing that plaintiffs could not prove that the French car/striped jeans information was suppressed from Klein.[49] The improperly excluded evidence of the suppressed O'Hanlon documents would have critically undermined Volpe's testimony that he gave everything in his file to Klein, indicated he had instead hidden information from the prosecutors as Plaintiffs alleged, and provided powerful circumstantial evidence that the French car/striped jeans material, too, was suppressed. *See O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir. 1991) ("[I]t is beyond any doubt that circumstantial evidence alone may suffice to prove adjudicative facts.").

## C.   Peter Weinstein Evidence

The exclusion of the March 10, 1995 memo from then-NCDA Appeals Bureau Chief Peter Weinstein to D.A. Denis Dillon (Plaintiffs' Exhibit (PX) 247), forcefully recommending vacatur of Restivo and Halstead's convictions at that time, as well as any mention of Weinstein's

---

[47] Tr. 10/23/12 at 4131–35; *see also* PX141, filed herewith as Exhibit D.
[48] Tr. 10/23/12 at 4135–36.
[49] Tr. 11/20/12 at 5934–45.

recommendation, was more error.[50] The memo and related evidence is not hearsay, as it is offered not for the truth of the assertions but for the effect on the reader, D.A. Dillon. *See, e.g., Tierney v. Davidson*, 133 F.3d 189, 192 n.1 (2d Cir. 1998) (statements offered not for the truth but for recipient's state of mind are not hearsay); *Herbert v. City of New York*, 748 F. Supp. 2d 225, 233 n.6 (S.D.N.Y. 2010) (same). Nor should this evidence be excluded as "legal opinion" for similar reasons: the probative value is not what Weinstein believed, but what effect it had on Dillon, who had requested the memo as he considered whether to vacate the convictions in 1995 based on the early DNA results. *See, e.g.*, *Cameron*, 598 F.3d at 62 ("[I]f a witness's own <u>belief</u> as to probable cause is relevant to the outcome of a case (for example, where a police officer is sued for false arrest, and claims that she believed she possessed probable cause to arrest), that witness's testimony about her own subjective belief may be admissible.") (emphasis in original). The force of Weinstein's argument for vacatur is striking, and powerfully conveys, as no substitute can, how close the D.A.'s office was to agreeing to vacate the convictions in 1995, eight years before they ultimately did. This is critical evidence for plaintiffs' continuing malicious prosecution claim: had defendants' misconduct been disclosed in 1995, it surely would have tipped the balance towards vacatur, cutting plaintiffs' wrongful imprisonment in half.

The Court's exclusion of this evidence also materially hampered plaintiffs' proof that the French car/striped jeans/rope material was suppressed from the prosecution, which relied on circumstantial evidence. Klein and Weinstein both testified at deposition that they were good friends, that they had diametrically opposed views of whether the Restivo and Halstead convictions should be vacated in 1995, and that they discussed it all the time, including various theories for re-investigation. Both men testified that if Klein had known about the French

---

[50] Tr. 10/22/12 at 3858; Tr. 10/24/12 at 4238–39.

28

car/striped jeans lead at that time, he would have told Weinstein—but he never did. The bare stipulation that "in 1994 . . . Mr. Weinstein became involved, along with others at the Nassau County District Attorney's Office, in review of the cases and in discussions about what response would be made to the motion for relief" and that "to the best of Mr. Weinstein's knowledge, this information about the French car/striped jeans was never disclosed by the police to the prosecutors,"[51] does not capture the narrative force of the entire story. *See Old Chief v. U.S.*, 519 U.S. 172, 189 (1997) ("A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it.").

### D.    Plaintiffs' Impeachment of Dempsey Was Improperly Limited

Plaintiffs John Restivo and John Kogut each testified that Dempsey, along with Volpe, uded trickery, deception, and coercion to secure false statements from them. Dempsey denied these allegations, or ever lying to or tricking a suspect:

> Q. Now it's your position, I take it, that in your entire career you never used trickery or deception with any suspect?
> A. As far as I can remember because that's a very dangerous game.
> Q. You've never lied to a suspect during questioning?
> A. No because, again, that's a very dangerous game to play.[52]

Dempsey's testimony is directly contradicted by jury findings in *Shonnard Lee v. County of Nassau*, No. 00-CV-0081 (JS)(WDW) (E.D.N.Y. May 18, 2004), a § 1983 false arrest and malicious prosecution suit filed against Dempsey. The *Lee* jury specifically found that, in a 1997 interrogation, Dempsey had "<u>affirmatively misled</u> [Lee] as to the true nature of the document he was signing and <u>thereby tricked him</u> into signing an involuntary confession."[53] The Court denied

---

[51] Tr. 11/16/12 at 5601.
[52] Tr. 10/16/12 at 3018:17–24.
[53] PX243-9, attached hereto as Exhibit E(emphasis added).

plaintiffs' two renewed applications to introduce the *Lee* verdict sheet to impeach Dempsey.[54]

Plaintiffs should have been permitted to impeach Dempsey with this contradictory evidence, because his assertion that he has never used trickery or deception when questioning individuals in his entire career was material to plaintiffs' case. *See Justice v. Hoke*, 90 F.3d 43, 48 (2d Cir. 1996) ("[T]he determinative question in deciding whether extrinsic evidence contradicting a witness' testimony is admissible is . . . whether the assertion that the impeaching party seeks to contradict is itself material or collateral."). Evidence corroborating Restivo's account of his coercive interrogation and contradicting Dempsey's denial was central to plaintiffs' claims. Moreover, once the Kogut confession was improperly admitted, it was crucial for plaintiffs to show that the confession—obtained by Dempsey—was false and the product of deceit, trickery, and coercion. The *Lee* verdict directly contradicts Dempsey's testimony that he never used such tactics, and is thus plainly admissible impeachment evidence.

The only reason given for not allowing this impeachment is that Dempsey's testimony was in response to examination by plaintiffs.[55] But "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. Moreover, the Second Circuit has repeatedly held that impeachment evidence can take the form of adverse findings from prior cases. *See, e.g.*, *U.S. v. White*, 692 F.3d 235, 239 (2d Cir. 2012) (holding that court erred in refusing to allow party to cross examine police officer about an adverse credibility finding in a prior case and reversing for a new trial); *U.S. v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983) (permitting impeachment using "prior occasions when [a witness's] testimony in other cases had been criticized . . . as unworthy of belief"). Plaintiffs should at least have been permitted to ask Dempsey about the *Lee* verdict on cross examination.

---

[54] Tr. 10/16/12 at 3082–83, Tr. 11/16/12 at 5645.
[55] *See* Tr. 10/16/12 at 3083:9.

30

E.    **Plaintiffs Were Improperly Barred from Presenting Evidence that Dempsey and Volpe Took Other False Confessions**

In addition to the Lee evidence, plaintiffs also sought unsuccessfully to introduce evidence that in 1995 defendant Volpe had obtained a detailed but false murder confession from Robert Moore. Volpe himself admitted that he had obtained the false statement:

> Q. [Robert Moore] signed a written confession to murdering Joshua Chism; correct?
> A. Yes. After we had released him.
> Q. And it turns out that, despite the fact that he signed a written confession to the murder, he didn't have anything to do with it; right?
> A. Well, he wasn't the murderer.[56]

Like Dempsey, Volpe was the subject of a civil suit in that false confession case.

The Lee and Moore evidence was directly relevant to plaintiffs' continuing malicious prosecution claim. As plaintiffs argued, D.E. 298, their malicious prosecution claims against Dempsey and Volpe encompassed the time period of the Lee and Moore confessions. Between 1993 and 1995, after the original DNA exclusions dramatically altered the probable cause calculations in the case, prosecutors evaluated whether or not to vacate the past convictions. Volpe and Dempsey continued, however, to cover up their original misconduct and take affirmative steps to continue the prosecution all the way until the indictments were dismissed in December 2005. For example, Volpe hid evidence of the French car/striped jeans/rope lead; both men misrepresented the circumstances of their interrogations of Restivo, Kogut and others. The fact that both Volpe and Dempsey were involved in other cases in which they secured false confessions from individuals gave them motive to continue to cover up their misconduct in this case; otherwise, they may have faced disciplinary action or increased likelihood of liability in the other cases. Conversely, the DA's knowledge that Volpe and Dempsey had taken other false

---

[56] Volpe Dep. 11/19/10, 248:22–249:5 (read into evidence 10/4/12).

31

confessions made it more likely that they would agree to drop the prosecutions in this case, had any of defendants' other misconduct in this investigation been revealed.

The Lee and Moore evidence was also admissible to show Dempsey and Volpe's *modus operandi*, intent and lack of mistake. Fed. R. Evid. 404(b); *see also* D.E. 298 at 2–5. These are all permissible uses of other act evidence. *See, e.g.*, *Ismail v. Cohen*, 899 F.2d 183, 188–89 (2d Cir. 1990) (affirming admission of evidence that police defendant had "participated in a similar incident soon after that involved in the instant case" as evidence of pattern, intent, and absence of mistake); *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) ("If [police defendant] Burge had used an electroshock device on another suspect only a few days previously, this made it more likely (the operational meaning of "relevant") that he had used it on [plaintiff] Wilson," and thus was admissible under Fed. R. Evid. 404(b)).

### F.   The Many Evidentiary Errors—Excluding Probative Direct Evidence for Plaintiffs, and Preventing Plaintiffs from Undermining the Defense— Warrant a New Trial.

Given the strength of plaintiffs' case and the weakness of defendants' contrary evidence, each of these errors individually, and certainly all in combination, played a "substantial" role in the verdict. *See Nimely*, 414 F.3d at 392 (finding a new trial warranted where "errors are likely to have had a substantial effect on the jury's resolution of the factual disputes at trial"); *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 104–06 (2d Cir. 1995) (remanding for new trial based on multiple erroneous exclusions of plaintiff's evidence as hearsay, finding cumulative effect not harmless especially in light of defense arguments); *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993) (reversing and remanding for new trial based on erroneous exclusion of plaintiff's evidence as hearsay and not relevant; finding cumulative errors not harmless especially in light of circumstantial nature of defense case).

Just as in *Wilson v. City of Chicago*, another wrongful conviction suit that resulted in a defense verdict, the many evidentiary errors require a new trial. 6 F.3d at 1238 (holding the district court had been "far too generous in allowing the defendants to present evidence," and "far too chary in allowing the plaintiff to present evidence," and that these "errors cannot be considered harmless" in light of the strength of plaintiff's case). Another similarity to *Wilson* is the evident juror confusion:

> Evidence that the jury was in fact confused is found in its verdict, which declared that Wilson's rights had been violated but not by any of the individual defendants or even by the city's policy (as the jury found it to be) of authorizing the abuse of suspected cop killers. By whom then?

*Id.* The same question plagues this case: jurors found that plaintiffs' constitutional rights had been violated by finding that Spillane, "while supervising Volpe, Dempsey and the other defendant police officers," had "created a policy or custom under which unconstitutional practices occurred," D.E. 453 at 9, but did not assign liability to any individual defendant. It is thus not possible to "say with fair assurance that the jury's verdict was not substantially swayed by the exclusion of [plaintiffs'] evidence," necessitating a new trial. *Malek*, 994 F.2d at 55.

## III.    Spillane Is Not Entitled to Qualified Immunity and Is Therefore Liable; It Was Reversible Error to Give This Question to the Jury.

Despite finding that defendant Sean Spillane "created" a custom or policy of "unconstitutional practices" the jury did not hold him liable because the verdict form also asked a qualified immunity question: "Would a reasonable officer in defendant Sean Spillane's position as the Commanding Officer of the Homicide Bureau in 1985 have understood his conduct to be unconstitutional?" The jury's answer was "No." D.E. 453 (Ct. Ex. 20) at 9, ¶8(c).

Submission of this latter question to the jury was error. In *Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012), a district court used a jury form very similar to that used here: the jury

found that a defendant had committed a constitutional violation but that he was entitled to qualified immunity. The Second Circuit held that this was error:

> [Q]uestions as to what situation confronted [the defendant], what acts he performed, and his motivation in performing those acts were questions of fact; they were to be—and were—answered by the factfinder. In light of those factual findings, the question of whether it would be clear to a reasonable public official, engaging in that conduct in that situation, that his conduct was unlawful was a question of law. . . . [T]he district court . . . erred in having the jury decide the ultimate legal question, in light of the facts established, of whether Guy, in his personal capacity, was entitled to qualified immunity. That legal question should have been answered by the court.

*Lore*, 670 F.3d at 162 (emphasis added). The jury here was asked the exact question the Second Circuit in *Lore* held should <u>not</u> be given to a jury: whether a reasonable officer would have known that his conduct was unconstitutional. Thus, this Court must disregard the jury's answer to that question and, as in *Lore*, address qualified immunity independently.

In fact, this Court has already done so. In its decision rejecting defendants' motion for summary judgment, this Court held that the constitutional violations in this case were all clearly established as unconstitutional. *See* D.E. 362 at 6 ("concluding 'without serious question' that, based on Supreme Court precedent, reasonable law enforcement officers knew at least as early as 1967 'that framing innocent persons would violate the constitutional rights of the falsely accused'") (quoting *Limone v. Condon*, 372 F.3d 39, 48 (1st Cir. 2004)). In addition, it was clearly established by 1985 that "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citing three pre-1985 cases as examples). The Court should thus enter judgment against Spillane, *see Lore*, 670 F.3d at 180 (explaining that the plaintiff was "entitled . . . to have the present judgment . . . amended to reflect that she prevailed" on her claim against an individual defendant who was not entitled to immunity), or alternatively, grant plaintiffs a new trial against Spillane along with the others.

## IV.    The Verdict Is Against the Weight of the Evidence

"[A] motion for a new trial pursuant to [Rule] 59 may be granted . . . although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." *Nimely*, 414 F.3d at 392. Here, if the Court "examine[s] the evidence through its own eyes," it will easily find that standard met and a new trial required. *Meloff*, 240 F.3d at 147; *see also Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 261–64 (2d Cir. 2002) ("[E]asily conclud[ing]" district court did not abuse its discretion in granting new trial where it found verdict against the weight of the evidence).

## Conclusion

The many legal and evidentiary errors detailed above entitle Restivo and Halstead to a new, fair trial. The Court should grant the motion. In that event, given the extensive local press coverage that would jeopardize a new trial, plaintiffs would request a transfer to the E.D.N.Y.'s Brooklyn courthouse. *See* 28 U.S.C.A. § 1404(c) ("A district court may order any civil action to be tried at any place within the division in which it is pending."); *U.S. v. Stevens*, 83 F.3d 60, 66 (2d Cir. 1996) (noting that unfavorable press, due in part to information released by party-opponent, along with a biased jury, are strong factors for transfer of case).[57]

---

[57] *See, e.g.*, Ann Givens, "Trial in $190m Suit Against Nassau Begins," *Newsday*, 9/19/12, available at <http://www.newsday.com/long-island/nassau/trial-in-190m-suit-against-nassau-begins-1.4019669>; William Murphy, "Fusco's Mom Criticizes Trio's Civil Suit," *Newsday*, 11/21/12, available at <http://www.newsday.com/long-island/nassau/fusco-s-mom-criticizes-trio-s-civil-suit-1.4250394>. *See also* post-verdict local coverage that would likely impact the pool at a new trial held in the Central Islip courthouse: Robert E. Kessler, "Federal Jury Exonerates Local Detectives," *Newsday*, 11/29/12, available at <http://www.newsday.com/long-island/nassau/federal-jury-exonerates-nassau-detectives-1.4276502>; "Ciampoli: Kogut Verdict Would Have 'Crippled' Nassau County," *Newsday*, 11/30/12, available at <http://www.newsday.com/long-island/politics/spin-cycle-1.812042/ciampoli-kogut-verdict-would-have-crippled-nassau-county-1.4280111>.

Dated: December 28, 2012

      New York, NY

Respectfully submitted,


  _/s/ Deborah L. Cornwall_____
Barry C. Scheck
Deborah L. Cornwall
Anna Benvenutti Hoffmann
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson St., 8th Floor
New York, NY 10013

**Attorneys for plaintiffs**
**John Restivo and Dennis Halstead**

**<u>Certificate of Service</u>**

I hereby certify that a true and accurate copy of Plaintiffs John Restivo and Dennis Halstead's Memorandum of Law in Support of their Rule 59 (a) Motion for a New Trial was served by ECF and UPS on December 28, 2012, upon the following:

Michael Ferguson, Esq.
Office of the County Attorney
Ralph G. Caso Executive & Legislative Building
1 West Street
Mineola, New York 11501-4820
mferguson@nassaucountyny.gov

Paul Casteleiro, Esq.
200 Washington Street
5th Floor
Hoboken, New Jersey 07030
pcasteleiro@aol.com

Louis Freeman, Esq.
Lee Ginsberg, Esq.
Nadjia Limani, Esq.
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 503
New York, New York 10038
freemefree@aol.com
leeloulaw@aol.com
nlimani@aol.com

Anthony M. Grandinette
Grandinette & Serio, LLP
114 Old Country Rd., Suite 420
Mineola, New York 11501
Grandinetteesq@aol.com

     /s/ Rachel Shur
     Rachel Shur
     Paralegal