```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOHN KOGUT,

                    Plaintiff,
                                              MEMORANDUM & ORDER
         -against-                            06-CV-6695(JS)(WDW)
                                              (LEAD CASE)

THE COUNTY OF NASSAU, POLICE
COMMISSIONER DONALD KANE, POLICE
COMMISSIONER WILLIAM J. WILLETT (2005),
POLICE COMMISSIONER JAMES LAWRENCE,
DETECTIVE SEAN SPILLANE (HEAD OF HOMICIDE
1985), DETECTIVE DENNIS FARRELL (HEAD OF
HOMICIDE 2005), CAROLANN HESSEMAN, AS
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE,
DETECTIVE ROBERT DEMPSEY, DETECTIVE ALBERT
MARTINO, DETECTIVE WAYNE BIRDSALL,
DETECTIVE MILTON G. GRUBER, DETECTIVE
CHARLES FRAAS, DETECTIVE FRANK SIRIANNI,
DETECTIVE HARRY WALTMAN, P.O. MICHAEL
CONNAUGHTON, P.O. WILLIAM DIEHL, and
JOHN DOES 1-5,

                    Defendants.
----------------------------------------X
JOHN RESTIVO, DENNIS HALSTEAD,
MELISSA LULLO, JASON HALSTEAD,
HEATHER HALSTEAD, and TAYLOR
HALSTEAD,
                                              06-CV-6720(JS)(WDW)
                    Plaintiffs,               (MEMBER CASE)

         - against -

NASSAU COUNTY, CAROLANN HESSMAN, AS
EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE,
in his individual capacity, ROBERT DEMPSEY,
in his individual capacity, FRANK SIRIANNI,
in his individual capacity, MILTON GRUBER,
in his individual capacity, HARRY WALTMAN
in his individual capacity, ALBERT MARTINO,
in his individual capacity, CHARLIE FRAAS,
in his individual capacity, THOMAS ALLEN
in his individual capacity, RICHARD BRUSA,
in his individual capacity, VINCENT DONNELLY,
```

1

in his individual capacity, MICHAEL
CONNAUGHTON, in his individual capacity,
WAYNE BIRDSALL, in his individual capacity,
WILLIAM DIEHL, in his individual capacity,
JACK SHARKEY, in his individual capacity,
DANIEL PERRINO, in his individual capacity,
ANTHONY KOZIER, in his individual capacity,
Detective Sergeant CAMPBELL, (Shield #48),
in his individual capacity, SEAN SPILLANE,
in his individual capacity, RICHARD ROE
SUPERVISORS #1-10, in their individual
capacities,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:
John Kogut            Anthony M. Grandinette, Esq.
                      John T. Serio, Esq.
                      Grandinette & Serio, LLP
                      114 Old Country Road, Suite 420
                      Mineola, New York 11501

                      Paul Casteleiro, Esq.
                      86 Hudson Street
                      Hoboken, New Jersey 07030

John Restivo and      Barry C. Scheck, Esq.
Dennis Halstead       Monica R. Shah, Esq.
                      Nick Joel Brustin, Esq.
                      Anna Benvenutti Hoffman, Esq.
                      Cochran, Neufeld & Scheck, LLP
                      99 Hudson Street, 8th Floor
                      New York, New York 10013

For Defendants:       Louis M. Freeman, Esq.
                      Lee Ginsberg, Esq.
                      Freeman, Nooter & Ginsberg
                      75 Maiden Lane, Suite 503
                      New York, New York 10038

                      David L. Lewis, Esq.
                      Lewis & Fiore, Esq.
                      225 Broadway, Suite 3300
                      New York, New York 10007

Liora M. Ben-Sorek, Esq.
Sondra Meryl Toscano, Esq.
Christine Ann Lobasso, Esq.
Dennis J. Saffran, Esq.
Sondra Meryl Toscano, Esq.
Office of the Nassau County Attorney
One West Street
Mineola, New York 11501

SEYBERT, District Judge:

The following motions are currently pending before the Court: (1) Defendants' letter motion for judgment as a matter of law regarding Plaintiffs' <u>Monell</u> claims (Docket Entry 447); (2) Plaintiff John Kogut's ("Kogut") motion for a new trial[1] (Docket Entry 456); (3) Plaintiffs Dennis Halstead ("Halstead") and John Restivo's ("Restivo" and together with Halstead and Kogut, "Plaintiffs") motion for a new trial (Docket Entry 457); and (4) Halstead and Restivo's motion to amend/correct/settle the record (Docket Entry 474), in which Kogut joined. For the following reasons, Defendants' letter motion regarding <u>Monell</u> is DENIED AS MOOT, Kogut's motion for a new trial is DENIED, Halstead and Restivo's motion for a new trial is GRANTED IN PART and DENIED IN PART, and the motion to amend/correct/settle the record is GRANTED.

---

[1] The Court notes that Kogut has also joined in Halstead and Restivo's motion for a new trial and incorporated their arguments by reference. At times, however, the Court distinguishes the arguments as specific to particular plaintiffs.

The Court assumes familiarity with the facts and procedural history of this case. Briefly, Kogut initially commenced an action on December 19, 2006 pursuant to 42 U.S.C. § 1983 ("Section 1983") against, inter alia, the County of Nassau (the "County"), Detective Sean Spillane ("Spillane"), Detective Joseph Volpe ("Volpe"), Detective Robert Dempsey ("Dempsey"), Detective Wayne Birdsall, Detective Charles Fraas, and Detective Frank Siranni (collectively "Defendants"). Two days later, Halstead and Restivo commenced an action of their own, also pursuant to Section 1983, against Defendants. By Order dated March 31, 2009, this Court consolidated the actions.

The facts of this case begin with the 1984 rape and murder of sixteen-year-old Theresa Fusco. In connection with that investigation, Plaintiff Kogut was twice brought to the Nassau County Police Department ("NCPD") headquarters for questioning. On March 26, 1985, after an overnight interrogation, Kogut provided a written and videotaped confession in which he implicated himself as well as Plaintiffs Halstead and Restivo. Ultimately, all three Plaintiffs were arrested and tried. On June 27, 1986, Kogut was convicted on all counts in the Indictment. On December 3, 1986, after a trial separate from Kogut's, Halstead and Restivo were convicted of rape and second-degree murder.

Beginning in 1993, samples of semen obtained from Fusco's body were subjected to DNA testing. After initial tests excluded Halstead, Restivo, and Kogut as the source of the semen, Plaintiffs moved to vacate their convictions, but their motions were denied. Later DNA tests again excluded Plaintiffs, and on June 11, 2003, Plaintiffs' convictions were vacated. In 2005, however, the Nassau County District Attorney retried Kogut; and in December 2005, Kogut was acquitted. Shortly thereafter, the Nassau County Supreme Court formally dismissed the charges against Halstead and Restivo.

Plaintiffs thus commenced Section 1983 actions before this Court for Defendants' alleged constitutional violations in connection with the investigation of Theresa Fusco's rape and murder and Plaintiffs' prosecutions. After a lengthy procedural history, this Court ultimately held a consolidated jury trial on Plaintiffs' claims. The jury was presented with the following issues: (1) whether Defendants denied Kogut of his constitutional rights to due process and right to a fair trial; (2) whether Defendants denied Restivo of his constitutional rights to due process and right to a fair trial; (3) whether Defendants denied Halstead of his constitutional rights to due process and right to a fair trial; (4) whether Defendants maliciously prosecuted Kogut during the 1985 to 1986 time period; (5) whether Defendants maliciously prosecuted Kogut

during the 2005 time period; (6) whether Defendants maliciously prosecuted John Restivo; (7) whether Defendants maliciously prosecuted Dennis Halstead; (8) whether Defendant Spillane failed to supervise Volpe, Dempsey, and the other police officers and, if so, whether Spillane is entitled to qualified immunity; and finally (9) whether the County was responsible for the acts of Spillane in failing to supervise, and, if so, whether this failure caused an injury to Plaintiff Kogut. Following a nearly three-month trial and six days of deliberation, the jury returned a defense verdict.

DISCUSSION

Currently pending before the Court are Plaintiffs' motions for a new trial as well as Plaintiffs' motion to amend/correct/supplement the record and Defendants' letter motion, made just before the jury's verdict, regarding Plaintiffs' <u>Monell</u> claims. The bulk of the following Memorandum and Order will pertain to Plaintiffs' respective motions for a new trial. Accordingly, the Court will first address the applicable legal standard.

I. <u>Legal Standard</u>

"A motion for a new trial, pursuant to [Federal Rule of Civil Procedure] 59, may be granted when the district court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"

*Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 190
F. Supp. 2d 430, 440 (E.D.N.Y. 2002) (quoting *Smith v. Lightning
Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).  In making
this determination, the Court "is free to weigh the evidence
[itself] and need not view it in the light most favorable to the
verdict winner."  *Health Alliance Network, Inc. v. Cont'l Cas.
Co.*, 245 F.R.D. 121, 127 (S.D.N.Y. 2007) (alteration in
original) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047
(2d Cir. 1992)).  In addition, the Court may grant a new trial
"even if there is substantial evidence to support the verdict."
*Datskow v. Teledyne Cont'l Motors Aircraft Prods., a Div. of
Teledyne Indus., Inc.*, 826 F. Supp. 677, 683 (W.D.N.Y. 1993)
(internal quotation marks and citation omitted).  Despite this
liberality, however, "[a] court should only grant a new trial
when a jury's verdict is egregious."  *Health Alliance Network,
Inc.*, 245 F.R.D. at 127.  Furthermore, "Rule 59 is not a vehicle
for relitigating old issues, presenting the case under new
theories, securing a rehearing on the merits, or otherwise
taking a 'second bite at the apple[.]'"  *O'Connell v. Onondaga
Cnty.*, No. 09-CV-0364, 2013 WL 998598, at *1 (N.D.N.Y. Mar. 13,
2013) (alteration in original) (quoting *Sequa Corp. v. GBJ
Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Where a party seeks a new trial based upon evidentiary
errors, such as the majority--though not all--of Plaintiffs'

arguments here, the Court looks to the standard of Federal Rule of Civil Procedure 61.  Rule 61 provides that

> [u]nless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

FED. R. CIV. P. 61.  In other words, "[e]ven if . . . evidence was admitted in error, this is not a ground for granting a new trial unless it affected [plaintiffs'] 'substantial rights.'"  Stowe v. Nat'l R.R. Passenger Corp., 793 F. Supp. 2d 549, 568 (E.D.N.Y. 2011).  "The Second Circuit has clarified that a substantial right has been affected only where a jury's judgment was likely to have been 'swayed by the error.'"  Parrish v. Sollecito, 280 F. Supp. 2d 145, 165 (S.D.N.Y. 2003) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir. 1997)).  Relevant to this inquiry is "whether or not the evidence bears on an issue that is plainly critical to the jury's decision" and "whether or not the evidence was emphasized in arguments to the jury."  Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir. 1996).

II.  Separate Trials

Halstead, Restivo, and Kogut contend that the Court's decision to conduct a consolidated trial prejudiced all of them.

On July 31, 2012, Halstead and Restivo moved to bifurcate, requesting that their claims be tried separately from those of Kogut. (See Docket Entry 312.) Kogut subsequently joined in that motion. (See Docket Entry 349.) The Court, however, denied those motions on the record during an August 16, 2012 conference. (See Aug. 16, 2012 Minute Entry, Docket Entry 353.)

Although Plaintiffs assert various arguments as to why a consolidated trial now mandates new, separate, trials, their primary contention is that the Court allowed the jury to hear prejudicial material that would not have otherwise been admitted had there been one trial for Plaintiff Kogut and a separate trial for Plaintiffs Halstead and Restivo. Specifically, they raise error with respect to the admission of the Kogut confession and certain polygraph evidence. The Court will address the arguments pertaining to the Kogut confession first before turning to the polygraph evidence.

A. Kogut Confession

Halstead and Restivo maintain that severance was necessary because the jury adjudicating their claims never should have been informed of Kogut's confession. In their prior motion for bifurcation, Halstead and Restivo primarily argued that Kogut's confession is irrelevant and inadmissible on their individual liability claims. (See Docket Entry 312 at 9-10.) At the August 16, 2012 hearing, the Court rejected this

argument, holding that Kogut's confession was admissible in Halstead and Restivo's case to show Defendants' malice, or the absence thereof, in connection with Halstead and Restivo's malicious prosecution claim. (Aug. 16, 2012 Tr. 7.)

Currently, Halstead and Restivo reiterate their assertion that the jury deciding their claims never should have heard evidence regarding Kogut's confession. Specifically, Halstead and Restivo assert that 1) the Kogut confession was inadmissible hearsay for which there was no permissible "non-truth" purpose, 2) the Court's jury charge erroneously instructed the jurors that they could consider the Kogut confession in determining whether there was probable cause to commence the 2005 proceedings against Halstead and Restivo, and 3) the Kogut confession is irrelevant to the malice element of their malicious prosecution claims and to their fair trial claims. The Court will address each of these arguments in turn.

1. Hearsay

Hearsay is an out of court statement offered for the truth of the matter asserted. See FED. R. EVID. 801(c). As the Court's holding during the August 16, 2012 conference makes clear, the Kogut confession was not being offered for the truth of the matter asserted, but rather for the "non-truth" purpose of demonstrating whether Defendants maliciously prosecuted Halstead and Restivo, based upon their subjective belief in

10

guilt.  (Aug. 16, 2012 Tr. 9 ("In this context malice and probable cause are closely related, and the defendants should be able to use the evidence that they subjectively believed Restivo and Halstead were guilty [i.e., the Kogut confession] to negate plaintiffs' evidence that the defendants acted [with] malice.").)  Accordingly, Halstead and Restivo's motion for a new trial on this ground is DENIED.

### 2.  Jury Instructions

Halstead and Restivo also contend that the Court erroneously instructed the jury as to probable cause, misleading the jury into thinking that it could consider the Kogut confession as part of its analysis.

Plaintiffs refer to the malicious prosecution section of the charge, in which the Court properly instructed the jury that, to establish a claim for malicious prosecution, Plaintiffs must prove that: "One, the Defendants caused them to be criminally prosecuted.  Two, that there was no probable cause for the criminal proceeding, and Three, that the Defendants did so maliciously, that is, for a bad purpose, and Four, that the prosecution was eventually terminated in Plaintiffs' favor, in a manner indicating that the Plaintiffs were not guilty of the charge." (Trial Tr. 6038.)  With respect to the probable cause element specifically, the Court instructed the jury that "you must determine whether a reasonably prudent person, based upon

11

all of the facts and circumstances known to him when the prosecution was commenced, would have believed that the plaintiffs were guilty of the crimes charged." (Trial Tr. 6040.)

Halstead and Restivo maintain that this explanation of probable cause suggests to the jury that they could consider "defendants' belief in guilt," including in that analysis whether Kogut's confession contributed to that belief. (H&R Br. for New Trial, Docket Entry 457-1 at 13.) They assert that the Court instead should have instructed the jury that probable cause means the belief that the prosecution would succeed based on admissible evidence. (Docket Entry 457-1 at 13.) This assertion is based upon the Second Circuit's discussion of probable cause in Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003). There, the Second Circuit proffered two ways of thinking about the probable cause analysis. Initially, the Court noted that "[t]o succeed on a claim for malicious prosecution, the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff." Id. at 76. In the very next sentence, the Circuit went on to explain that "[p]robable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would

lead a reasonably prudent person to believe the plaintiff guilty." Id. Later in its discussion, the Circuit noted that, if the plaintiff's statements regarding his knowledge of stolen property were made after arrest but before he was given Miranda warnings, that this statement would be inadmissible, and therefore there would have been no probable cause to believe that the prosecution for possession of stolen goods would succeed. Id. at 77. As such, Halstead and Restivo read Boyd to assert that probable cause to commence proceedings means the belief that the prosecution would succeed based on admissible evidence. (See Docket Entry 457-1 at 13.) Thus, Halstead and Restivo maintain that the Court's charge, as given, was erroneous because it essentially did not make explicit that the probable cause analysis included only admissible evidence.

While the Court's instruction was legally correct, the Court agrees with Halstead and Restivo that the charge, as worded, may have misled the jury and that the jury may have improperly considered the Kogut confession in connection with Halstead and Restivo's malicious prosecution claim. See O'Connell v. Onondaga Cnty., No. 09-CV-0364, 2013 WL 998598, at *5 (N.D.N.Y. Mar. 13, 2013) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." (quoting Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994)). Moreover, this

confusion pertains directly to an element of Halstead and Restivo's malicious prosecution claim, and therefore cannot be said to be harmless.

To begin, and as previously noted, the Court clearly held during the August 16, 2012 conference that, in attempting to show probable cause, Defendants were limited to evidence that was both included in their interrogatory responses and admissible in Halstead and Restivo's criminal proceedings. (Aug. 16, 2012 Tr. 11.) Kogut's confession, however, was not admissible in Halstead and Restivo's criminal proceedings. Accordingly, the jury never should have considered the Kogut confession in determining whether Defendants had probable cause in connection with Halstead and Restivo's case.

Although nuanced, and in most cases likely synonymous, the difference between the two ways of describing probable cause carry very different connotations in the setting of this particular case. That is to say, defining probable cause as whether the prosecution could succeed puts the standard within the context of court proceedings, in which, of course, the prosecution must rely upon admissible evidence in order to be successful. In contrast, defining probable cause as "whether a reasonably prudent person, based upon all of the facts and circumstances known to him when the prosecution was commenced," see Trial Tr. 6040, as many courts have, suggests a wider range

of evidence.  See, e.g., Colon v. City of N.Y., 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983) (defining probable cause as described).  Here, one of the facts and circumstances known to Defendants was that Kogut had provided a confession, but this "evidence" would not have any bearing on whether the prosecution against Halstead and Restivo would or could succeed.

Additionally, the Kogut confession was arguably one of the central pieces of evidence in this case and the Court finds that the absence of a more direct instruction with respect to probable cause affected Halstead and Restivo's substantial rights.  In particular, the Court notes that approximately two hours after it relieved a particular juror from service upon learning of his outside research on "false confessions," the jury returned a defense verdict.

Accordingly, Halstead and Restivo's motion for a new trial on this ground is GRANTED.  In the interest of completion, however, the Court's analysis continues.

### 3. Confession was Irrelevant to Malice

Restivo and Halstead also maintain that they are entitled to a new trial because Kogut's confession is irrelevant to malice, and thus in adjudicating a consolidated trial, the jury improperly considered the Kogut confession on this element of Halstead and Restivo's malicious prosecution claim as well. The Court disagrees.

Halstead and Restivo argue that, contrary to the Court's pretrial ruling, the Kogut confession was irrelevant to malice because "plaintiffs' theory was that defendants framed them through the intentional creation of false evidence and withholding of exculpatory evidence, which is malicious whether or not defendants believed that plaintiffs had in fact committed the crime."  (Docket Entry 457-1 at 13.)

Halstead and Restivo are correct in their general assertion that if "defendants framed [Plaintiffs] through the intentional creation of false evidence and withholding of exculpatory evidence," that this would be "malicious whether or not defendants believed that plaintiffs had in fact committed the crime."  (Docket Entry 457-1 at 13-14 (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).) However, as their brief acknowledges, Plaintiffs attempted to show malice based upon three separate theories: that Defendants (1) pursued a lawful end by intentionally unlawful means, such as by taking an illegal action in order to obtain a conviction of a person they believed to be guilty; (2) acted with reckless disregard of the rights of the plaintiff; (3) acted pursuant to a wrong or improper motive, in other words for some reason other than a desire to see the ends of justice served.  (Docket Entry 457-1 at 14; Pls.' Proposed Jury Instructions, Docket Entry 382, at 13.)

Thus, while subjective intent may not necessarily be relevant to the element of malice where the theory is that Defendants pursued a lawful end by intentionally unlawful means, such as through the fabrication of evidence, this was not Halstead and Restivo's only theory of malice. Here, as in their proposed jury instructions, Halstead and Restivo acknowledge that another theory of malice was that Defendants acted pursuant to a wrong or improper motive, and they cite to Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996) for that purpose. (Docket Entry 457-1 at 14; Docket Entry 382 at 13.)  In Lowth, the Second Circuit stated the general premise that where there is a lack of probable cause, malice may be inferred.  Id. at 573.  In so noting, the Second Circuit also implied that the subjective intent of the officer was relevant to the malice inquiry.  Id.  (discussing whether the "accuser" believed "in the guilt of the accused" (internal quotation marks and citation omitted)).

Halstead and Restivo attempt to distinguish Lowth and similar cases because, in the instant case, there was no inference of malice flowing from the lack of probable cause. That is to say, here, there was an indictment, and therefore an inference of probable cause.  The Court, however, finds that this is not a particularly viable distinction.  The relevant inquiry is not whether there is an inference of malice flowing

17

from the lack of probable cause, or whether there is an inference of probable cause that can be overcome, but rather the relevant inquiry is the meaning of "malice" and whether or not a defendant exhibited it. Where malice is defined as a "wrong or improper motive, something other than a desire to see the ends of justice served," this implicates an analysis into subjective belief. See, e.g., Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996) (noting that, while malice may include particular theories, malice "implicates an evil or unlawful purpose" (emphasis added)); Smith v. City of N.Y., 388 F. Supp. 2d 179, 187 (S.D.N.Y. 2005) (after holding that there was probable cause, the Court also found that there was no malice because the Assistant District Attorney "believed D.G.'s allegations and found her to be a credible witness"). Thus, this theory looks to the defendant's state of mind, his "desire." In contrast, other theories may look to the defendant's actions, or "means." As such, and while actions may necessitate a finding of malice under certain factual scenarios regardless of subjective belief, it is not always the case that subjective belief is irrelevant under any theory of malice. Accordingly, Halstead and Restivo's motion for a new trial on this ground is DENIED.

4. Confession Irrelevant to Fair Trial Claims

Halstead and Restivo also argue that Kogut's confession was irrelevant to their due process/fair trial claims. Again, the Court disagrees.

Halstead and Restivo's fair trial claim turned on three kinds of evidence: (1) suppressed Brady material; (2) fabrication and planting of evidence; and (3) creating false witness statements by coercion. (Trial Tr. 5806.) As the third theory suggests, the Kogut confession was relevant to whether Defendants created false witness statements by coercion. And, in fact, Halstead and Restivo used the confession to argue that, even assuming that the Kogut confession was true, Fusco could not have been in the van for more than 15 or 20 minutes, which was not a long enough period of time to show post mortem root hair banding. (See Trial Tr. 5853)

Accordingly, Halstead and Restivo's motion for a new trial on this ground is also DENIED.

### 5. Exclusion of Expert Testimony of Saul Kassin

Furthermore, Halstead and Restivo argue that "[t]he error of introducing the Kogut confession . . . was compounded by the Court's improper exclusion of social psychologist Dr. Saul Kassin's testimony" regarding false confessions. (Docket Entry 457-1 at 16.) Similarly, Kogut maintains that he is entitled to a new trial due to the Court's exclusion of Dr. Kassin's testimony. Essentially, Plaintiffs assert that Dr.

Kassin's testimony was necessary to help the jury evaluate the evidence and put the Kogut confession into perspective. The Court disagrees.

During a conference on September 6, 2012, the Court issued its ruling excluding Dr. Kassin's testimony. The Court held:

> While Professor Kassin has some special training in psychology and police techniques regarding false confessions, his knowledge, background and proffered testimony do not meet the criteria under Rule 702. His qualifications are impressive but the facts and data that he relied upon are weak. The principles and methods are difficult to relate to the issues we have here. Essentially, this is an area that the jurors can decide for themselves. The jury can determine if Kogut was exhausted, high, or submitted to constant clues given to him by Detectives Volpe, Sirianni, and Dempsey, or that Kogut believed he failed the test, was terrified of the detectives and finally that he was worn down by refusals to allow him to call a lawyer or his girlfriend.

(Sept. 6, 2012 Tr. 6.)

The Court stands by this conclusion and does not believe that there was an error in excluding Dr. Kassin's testimony such as to warrant a new trial on this basis. Certainly the issue of false confessions is conceptually somewhat counterintuitive. However, this Court, of course, must perform a gatekeeping function with respect to expert testimony, Daubert v. Merrell Dow Pharma., Inc., 509 U.S. 579, 113 S. Ct.

2786, 125 L. Ed. 2d 469 (1993), and precedent simply does not support the admission of this type of testimony. Federal courts, including within this Circuit, have consistently considered, and excluded, expert testimony on the topic of false confessions. See United States v. Deputee, 349 F. App'x 227, 229 (9th Cir. 2009); United States v. Mamah, 332 F.3d 475, 475 (7th Cir. 2003); United States v. Mazzeo, 205 F.3d 1326, 2000 WL 323032, at *2 (2d Cir. 2000); Yang Feng Zhao v. City of N.Y., No. 07-CV-3636, 2008 WL 3928238, at *2 (S.D.N.Y. Aug. 20, 2008). In fact, this case is not the first in which a court has excluded Dr. Kassin's testimony under Daubert. See Bell v. Ercole, No. 05-CV-4532, 2011 WL 5040436, at *13 (E.D.N.Y. Oct. 21, 2011); see also Commonwealth v. Robinson, 449 Mass. 1, 5-6, 864 N.E.2d 1186, 1189-90 (2007). Furthermore, a review of Dr. Kassin's report, once again, supports the Court's conclusion that his testimony is not the product of reliable principles and methods. (See, e.g., Kassin Report, Docket Entry 316-1, at 6 ("While it is not possible to determine with precision the statistical prevalence of the problem, it is clear that false confessions occur . . . .").)

Accordingly, Plaintiffs' motion for a new trial on this ground is DENIED.

B. Polygraph Evidence

Both of the pending motions for a new trial also raise various issues with respect to the polygraph evidence in this case. To the extent that Plaintiffs' arguments overlap, the Court will provide a singular discussion on the matter. To the extent that Plaintiffs proffer arguments specific to their unique status in the case, the Court will structure its analysis accordingly.

1. Prejudice to Restivo and Halstead by Admission of Kogut's Polygraph

Restivo and Halstead argue that they were prejudiced by the introduction of evidence that Kogut took a polygraph and was told that he failed. They argue that "the jury could have improperly relied on the fact of Kogut's polygraph in determining that Kogut (and, by implication, Restivo and Halstead) were guilty of the Fusco rape/murder, that defendants had probable cause to prosecute them, that defendants had a subjective belief in Restivo and Halstead's guilt, or all of the above." (Docket Entry 457-1 at 20).

With respect to the jury considering polygraph evidence to determine Plaintiffs' guilt or Defendants' subjective belief in guilt, the jury very clearly understood that they could not consider the polygraph results. The Court instructed the jury on multiple occasions that the results of any polygraphs were not in evidence and that the jury was not to

infer the results. For example, during opening statements the Court instructed the jury as follows: "At certain times, counsel [may] make statements regarding a polygraphist. The one thing you will not hear in this case is the result of a polygraph, one way or the other. You are just here for the facts." (Trial Tr. 223.)

There is nothing to suggest that the jury was in any way confused by these instructions or did not understand them. See Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Americas, 727 F. Supp. 2d 256, 275 (S.D.N.Y. 2010) ("There was no indication that the jurors either failed to comprehend the special instruction or were swayed by the stricken testimony."). In fact, one juror even interrupted closing arguments to note that they could not consider the results of the lie detector test. (Trial Tr. 5777-78.)

In further support of their argument that they were prejudiced by the introduction of polygraph evidence, Halstead and Restivo also point to the trial testimony of Dempsey and Walsh. Upon cross-examination, Detective Dempsey "gratuitously" testified that Restivo took and failed a polygraph. (See Docket Entry 457-1 at 20-21 (citing Trial Tr. 3019).) In addition, during his direct examination, Walsh testified that Restivo agreed to take a polygraph. (Trial Tr. 5492.) During Dempsey's testimony, the Court instructed the jury as follows: "Ladies and

gentlemen, you heard the term polygraph, lie detector test, et cetera.  I want you to understand that polygraph or lie detector tests, the results, are never admissible, never admissible.  These terms have nothing to do with respect to this case and you are to disregard them."  (Trial Tr. 3616.)  Similarly, during Walsh's testimony, the Court stated: "I, on [a] prior occasion, told you that polygraph evidence is not part of the case.  You have not forgotten that, and it certainly has nothing to do with this case and Mr. Restivo.  Strike from your memory anything with regard to the polygraph evidence."  (Trial Tr. 5502.)

Halstead and Restivo maintain, however, that the Court's curative instructions were inadequate.  In support, they cite to various texts and other sources discussing the practical ability of jurors to follow such instructions.  Despite their academic approach to this issue, and the logical conundrum that curative instructions present in the abstract, this argument is not novel.  "[J]uries are presumed to follow the instructions they are given."  Stowe, 793 F. Supp. 2d at 567 (citing Bingham v. Zolt, 66 F.3d 553, 563 (2d Cir. 1995)).  Although there are "particularly egregious circumstances" in which a curative instruction may be insufficient, see id. (citing United States v. Reyes, 18 F.3d 65, 71-72 (2d Cir. 1994), this is not such a case.  In initially ruling on this matter, the Court took into consideration the very same arguments regarding prejudice that

Plaintiffs now raise. The Court, properly, put its faith in the jury system. See CSX Transp, Inc. v. Hensley, 556 U.S. 838, 841, 129 S. Ct. 2139, 173 L. Ed. 2d 1184 (2009) ("The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions.").

Accordingly, Plaintiffs' motion for a new trial in this regard is DENIED.

With respect to probable cause, Halstead and Restivo themselves used the Kogut polygraph in their probable cause analysis of malicious prosecution. In attempting to rebut the presumption of probable cause, Halstead and Restivo, similar to their fair trial claim, offered evidence that Defendants created false witness statements through coercion tactics such as submitting witnesses to polygraphs and then telling them that they failed. (Trial Tr. 5873-74, 5878-79.) In fact, in his closing, counsel for Halstead and Restivo used the example that Restivo was taken in, given a polygraph, told he failed, and pressured into making a statement. (Trial Tr. 5877.) The scenario of Kogut's polygraph only bolsters this theory.

Accordingly, Halstead and Restivo's motion for a new trial on this ground is DENIED.

2. <u>Deliberating Jury Inadvertently Provided with Polygraph Results (and prior arrests)</u>

Kogut, Halstead, and Restivo also maintain that they are entitled to a new trial because the jury was inadvertently provided evidence regarding Kogut's polygraph examination and results. Specifically, six days into deliberations, the jury requested to see the Kogut polygraph and highlighted polygraph question sheet of Kogut, which had been admitted into evidence in a redacted form. (<u>See</u> Ct. Ex. 17.) Unfortunately, counsel for Halstead and Restivo mistakenly pulled the unredacted exhibit, which went unnoticed by defense counsel, and the jury erroneously received evidence that the examiner determined that Kogut had been lying during the polygraph examination and evidence regarding Kogut's prior criminal history. Counsel noticed the error within minutes, and Court personnel retrieved the documents. Upon retrieval, however, one juror stated "I think you want this back," referring to the polygraph exhibits. (Trial Tr. 6196.)

The parties and the Court recognized the significance of this event, and the Court acted promptly. In fact, at no time during discussion of the matter did Plaintiffs' counsel request a mistrial. Rather, Plaintiffs' counsel drafted a curative instruction, which the Court adopted almost verbatim. The Court informed the jury that they had been mistakenly

provided a portion of Exhibit 8 that was not in evidence and instructed them that "[t]here is no evidence of any polygraph test result before you in this case. As I previously instructed you, polygraph results are not admissible, they are inadmissible, and should not be used by you for any purpose." (Trial Tr. 6199). In addition to providing the proposed curative instruction, the Court further accommodated Kogut's counsel and questioned each individual juror as to whether they could follow the Court's directive. (Trial Tr. 6199-6200.) See Bennett v. Poole, No. 04-CV-0014, 2008 WL 3200242, at *15 (W.D.N.Y. Aug. 5, 2008) (noting that, on appeal, the Appellate Division found that curative instruction, which was proposed by defense counsel, negated any prejudice).

Plaintiffs were essentially content with the Court's actions and made no further objections. See Health Alliance Network, Inc., 245 F.R.D. at 128 (denying new trial where Court provided curative instruction and the defendants did not ask for any further instruction or relief); see also Isaac v. City of N.Y., 271 F. App'x 60, 65 (2d Cir. 2008) ("[G]iven the District Court's willingness to adopt the remedial measures suggested by Isaac and Isaac's failure to object at that point, we conclude that the District Court did not exceed its allowable discretion in denying Isaac's motion to set aside the jury's verdict on this ground.").

As such, the Court finds that any error in this regard does not merit a new trial and Plaintiffs' motion in this respect is DENIED.

C. Additional Evidentiary Issues

Kogut raises several other evidentiary errors which he maintains merit a new trial. <u>First</u>, he raises error with respect to evidence of prior arrests. As noted previously, along with the polygraph results, the jury was also inadvertently provided with a background questionnaire form during deliberations. The questionnaire form contains information regarding Kogut's prior criminal history, including that Kogut had been arrested "7-8" times before, that Kogut had received a prior "charge" for "burg/tresp," and that Kogut may have been on probation at the time of his polygraph examination. (Ct. Ex. 18.) <u>Second</u>, Kogut maintains that, as a result of the consolidated trial with Halstead and Restivo, Kogut was prejudiced by the admission of testimony regarding Halstead's interactions with young girls and by the admission of statements allegedly made by Restivo.

Evidentiary errors, however, assuming there were any, do not merit a new trial unless a party's substantial rights were affected. <u>See</u> <u>supra</u> at 7-8. Here, even if there were such errors, they do not require a new trial. To begin, the jury heard some argument and testimony about Kogut's background,

albeit in a general sense. For example, during opening statements, Kogut's counsel argued that Kogut's rough upbringing and difficult past may have made him more vulnerable to coercion tactics. (See Trial Tr. 154-55, 210-11; see also id. 1285-87.) Thus, the fact that Kogut had a less than stellar past most likely came as little surprise to the jury. Moreover, the questionnaire form was one page, containing a relatively large amount of information, within a several page document. (Ct. Ex. 18.) The jury received this document at the same time that it received several others and had the exhibits for a brief period of time. In any event, this evidence certainly was not emphasized to the jury in any way, and there is nothing to suggest that they improperly considered it. See Dominguez v. Samataro, 257 F.R.D. 624, 625-26 (D. Conn. 2009) (evidence regarding prior convictions did not warrant new trial).

Likewise, neither was testimony regarding Halstead's interactions with young girls or Restivo's supposed admissions prejudicial to Kogut such that a new trial is warranted. Kim Beyer ("Beyer") and Regina Fuhrmann testified that, as teenagers, they frequented Halstead's apartment, where they at times drank alcohol and used marijuana. Although this may have some implications about the much older Halstead, such testimony says very little about Kogut, who was a teenager himself at the time. Furthermore, Beyer testified that, on the occasion she

met Kogut, Kogut was polite.  (Trial Tr. 4973.)  In addition, Michael and Kenneth Cockerel testified regarding statements allegedly made by Restivo, statements which said nothing of Kogut nor necessarily implicated him in any way.

The Court fails to see how any such evidence was prejudicial against Kogut, nevermind how it can be said to have affected his substantial rights.  Accordingly, Kogut's motion for a new trial in this respect is DENIED.

III. Restivo and Halstead's Claims Regarding Presentation of Evidence Relevant to Crimes

In addition to the aforementioned arguments, Restivo and Halstead also assert that they were barred from presenting evidence directly relevant to their crimes, and therefore this Court should grant them a new trial.  Specifically, they argue that the Court barred or limited evidence pertaining to David Rapp, Fred Klein, Peter Weinstein, and prior cases involving Volpe and Dempsey.  Moreover, they assert that the cumulative effect of these errors further supports their position for a new trial.  The Court will address each of these arguments in turn.

A.  David Rapp

Halstead and Restivo claim that the Court improperly excluded approximately forty pages of deposition testimony from David Rapp.  (Docket Entry 457-1 at 24.)  Mr. Rapp was a former friend of Restivo's who testified during his deposition that he

was questioned by Nassau County Police Department officers, that officers told him that Carl Pozzini overheard him having a conversation with Restivo in which Restivo made admissions to Rapp, and that Rapp ultimately provided a false statement to police vaguely incriminating Restivo. (Docket Entry 457-1 at 24 (quoting Rule 32 designation of Rapp deposition excerpts).) The Court excluded this testimony because it is hearsay and because it is irrelevant.

Halstead and Restivo assert that this evidence is not hearsay and that it is relevant because Rapp not only denies that he ever had a conversation with Pozzini about Restivo's admissions, but that he told NCPD officers before the grand jury that Restivo had never made any admissions to him. Therefore, they say, it is relevant to rebut the presumption of probable cause.

The Court finds no error in its initial ruling. Defendants did not attempt to use the statements of Carl Pozzini or David Rapp in its showing of probable cause. (Trial Tr. 2200 (Defendants "are not coming in and saying we relied on it, the statement of David Rapp or the statement of Carl Pozzini, that was part of our reliance in arresting and prosecuting them.").) Thus, that Rapp later recanted his statement regarding Restivo's admissions is not relevant, and does not show that Defendants did not make a full and fair statement of the facts.

Nor is this "critical circumstantial evidence corroborating Restivo's testimony that defendants treated him the same way during the same investigation." (Docket Entry 457-1 at 26.) Plaintiffs presented ample testimony regarding Defendants' treatment of witnesses and suspects during the investigation, including evidence regarding the treatment of Kogut and Michael Cockrel. The Court may, in its discretion, exclude cumulative evidence. See United States v. Stewart, 433 F.3d 273, 313 (2d Cir. 2006); Zomber v. Stolz, No. 09-CV-4637, 2012 WL 252844, at *8 (E.D.N.Y. Jan. 26, 2012).

Having found no evidentiary error, Halstead and Restivo's motion for a new trial in this regard is DENIED.

B.  Fred Klein Evidence

Halstead and Restivo further assert that the Court erred in excluding a particular document in connection with the testimony of Fred Klein. As Plaintiffs correctly state, "[t]he critical subject of Klein's testimony was whether Volpe ever disclosed the Brady material about the French car/striped jeans/rope lead to him." (Docket Entry 457-1 at 26.) Klein could not recall whether he ever had knowledge of such evidence, but Volpe had testified during his deposition that he turned over the entire police file to Klein. To counter Volpe's testimony, Halstead and Restivo sought to introduce the prior inconsistent statement of prosecution witness Brian O'Hanlon.

Klein's deposition testimony revealed that he had not seen the O'Hanlon statement but that he would have disclosed it to the defense if he had. (See Docket Entry 457 Ex. D (O'Hanlon Stmt.).) Thus, Plaintiffs sought to use the O'Hanlon statement as circumstantial evidence that Volpe had not, in fact, turned over the entire police file. The Court concluded that, "[w]ithout O'Hanlon being here, I think it's an improper use of the document and I'm going to exclude it." (Trial Tr. 4136.)

Even assuming _arguendo_ that there was an evidentiary error in this respect, any error was harmless. Mr. Klein directly testified regarding the French car/striped jeans/rope lead, and the jury heard extensive testimony and argument on this particular topic. (See, _e.g._, Trial Tr. 4098-4125.) Although Mr. Klein did not have a specific recollection as to whether that evidence was contained in the file, his testimony alone provided circumstantial evidence to support Plaintiffs' argument that Volpe did not turn over the entire file. Specifically, Klein testified that he couldn't remember receiving those documents, but that if he had, it would have been important, and he would have followed up on it and/or brought that information to the attention of his colleagues. (See Trial Tr. 4123-24.) That Klein did not do so, and even that Klein did not recall such potentially pertinent evidence, supported Plaintiffs' theory. Accordingly, exclusion of the

O'Hanlon statement, even if erroneous, did not affect Plaintiffs' substantial rights, and the motion for a new trial in this regard is DENIED.

C.  Peter Weinstein

In addition, Restivo and Halstead maintain that the Court erred in excluding the March 10, 1995 memorandum from former Appeals Bureau Chief Peter Weinstein in which Mr. Weinstein recommends vacating Restivo and Halstead's convictions.  (Docket Entry 457-1 at 27.)  Halstead and Restivo claim that the Weinstein memorandum was critical to their continuing prosecution case.  The Court made the following ruling: "Well, [the Weinstein memorandum] is subjective legal opinion.  It's not coming in . . . You can ascertain from Mr. Weinstein all the things they didn't know and you can also ascertain that in 1995 they were aware of the DNA testing and what if any significance that had.  I think you should be able to elicit that information."  (Trial Tr. 3858.)

Thus, once again, even if there was an error, which the Court does not believe that there was, any error was harmless as Plaintiffs were not prevented from presenting evidence on this topic and were free to elicit this testimony directly.  Moreover, Halstead and Restivo assert that exclusion of the Peter Weinstein evidence also hampered their proof regarding the French car/striped jeans/rope material.  (Docket

Entry 457-1 at 28.)  However, rather than calling Mr. Weinstein, the parties ultimately entered into a stipulation which stated that, "[t]o the best of Mr. Weinstein's knowledge, this information about the French car/striped jeans lead was never disclosed by the police to the prosecutors."  (Ct. Ex. 4.)

Accordingly, the motion for a new trial based on the Court's exclusion of the Peter Weinstein evidence is DENIED.

   D.  <u>Moore and Lee cases</u>

Halstead and Restivo further assert that the Court erred in excluding evidence regarding the cases of <u>Shonnard Lee v. Dempsey</u>, No. 00-CV-0881 (E.D.N.Y.), and <u>Robert Moore v. Incorporated Village of Hempstead</u>, No. 96-CV-5987 (E.D.N.Y.). Specifically, they maintain that they should have been able to use <u>Lee</u>, in which the jury found that Dempsey affirmatively misled and tricked the plaintiff, to impeach Dempsey's trial testimony that he never used trickery or deception to obtain a statement from a suspect.  (Docket Entry 457-1 at 29.).  In addition, they say, they should have been able to introduce evidence that Dempsey and Volpe took other false confessions, such as in the <u>Lee</u> and <u>Moore</u> cases.  (Docket Entry 457-1 at 31.)

With respect to the preclusion of the <u>Lee</u> and <u>Moore</u> cases generally, the Court previously addressed these issues and ruled appropriately.  During the September 6, 2012 conference, the Court held:

> The evidence that the plaintiff seeks to
> introduce on 404(b) evidence as to the
> Shonnard Lee and Robert Moore prosecutions
> as they deal with Detectives Volpe and
> Dempsey will not be admissible in the first
> phase. They will be admissible in the
> second phase. Under 404(b), evidence of
> crimes, wrongs, or acts are not admissible
> to show action in conformity with. The
> evidence that plaintiffs seek to admit, this
> particular evidence, is to show a modus
> operandi, and that is not one of the
> permitted purposes in this particular case
> . . . .

(Sept. 6, 2012 Tr. 4-5.) Plaintiffs cite no reason as to why the Court's prior ruling was erroneous, and in fact refer back to prior briefing on this issue. "[A] Rule 59 motion may not be employed to relitigate already-decided matters," Ullman v. Starbucks Corp., 152 F. Supp. 2d 322, 326 (S.D.N.Y. 2001) (internal quotation marks and citation omitted), however, and the Court finds nothing erroneous in its initial ruling.

With respect to limitations on the impeachment of Dempsey, the Court properly concluded that the prejudicial effect of such impeachment evidence outweighed any probative value. See FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). As the Court expressed in its September 6, 2012 ruling, the jury very

likely would have been confused, by, and considered evidence regarding, Dempsey's prior conduct in other cases to conclude that Dempsey acted in conformity therewith and used coercive tactics to obtain false witness statements in this case. The prejudicial impact of such testimony cannot be understated. In the context of this particular trial, in which Plaintiffs presented various evidence regarding Defendants' alleged coercion tactics, the Court finds that the limitation of impeachment evidence was not error and, even if it was, any such error was harmless.

Accordingly, Halstead and Restivo's new trial motion on this ground is DENIED.

Finally, and as the Court finds that it did not err with respect to the aforementioned evidence, the Court also rejects Halstead and Restivo's claim regarding the cumulative effect of these errors. Accordingly, their motion for a new trial on the grounds that they were barred from presenting evidence directly relevant to their crimes is DENIED.

IV. <u>Qualified Immunity of Spillane</u>

Halstead and Restivo further aver that the question of qualified immunity as to Defendant Spillane never should have been presented to the jury. The Court agrees.

Here, the jury was instructed, in relevant part:

I will now instruct you about what is called qualified immunity. This instruction relates only to the claim that defendant Spillane created a policy or custom under which unconstitutional practices occurred. It does not relate to the claim that defendant Spillane directly participated in a constitutional violation, nor does it apply to any of the other claims any of the plaintiffs have asserted.

At the time of the incidents giving rise to this lawsuit, it was clearly established law that supervisors were required to investigate all complaints regarding an officer's wrongdoing with respect to a violation of constitutional rights. However, even if you find that the defendant Spillane violated the law requiring him to investigate all complaints regarding an officer's wrongdoing with respect to a violation of constitutional rights, he may still not be liable to Restivo and Halstead. This is because the defendant may be entitled to what is called qualified immunity. If you find that he is entitled to such immunity, you must find him not liable.

(Trial Tr. 6043-44.)

The Court determined that there were pending questions of fact on which qualified immunity as to Defendant Spillane turned. For example, the Court explained, during a somewhat lengthy discussion on this particular portion of the jury charges and verdict sheet, that whether qualified immunity for Spillane was present here depended upon whether the jury credited Plaintiffs' version of events as to witness interrogations and the overall investigation. (See, e.g., Trial Tr. 5275 ("The jury may very well find that the defendants did

not use coercive tactics in questioning Kogut and/or Mr. Restivo. They may find that they got him coffee; they were nice to him; he had some time to rest. I don't know what they will find."); Trial Tr. 5276 ("I think there is reasonable basis, because the jury can find that the information Spillane had was not as serious. They may find that he had some information, but it really wasn't clear that Kogut was being fed facts, that he was forced, you know.")).

Certainly, these factual issues were properly presented to the jury. See Oliveira v. Mayer, 23 F.3d 642, 649-50 (2d Cir. 1994) (finding that the District Court erred in not presenting qualified immunity to the jury due to factual issues involved); Wright v. Wilburn, 194 F.R.D. 54, 60 (N.D.N.Y. 2000) ("[I]f determining the objective reasonableness of the police officer's conduct requires further fact finding, it is appropriate to submit the issue of qualified immunity to the jury.").

Furthermore, and although there is somewhat of a split of authority, see Stephenson v. Doe, 332 F.3d 68, 81 n.18 (2d Cir. 2003) ("Courts have disagreed about whether a jury that is provided a proper legal basis should decide qualified immunity."), the better course of action is for the Court to decide qualified immunity as a matter of law after the jury has resolved the factual issues in dispute, see Lore v. City of

<u>Syracuse</u>, 670 F.3d 127, 162 (2d Cir. 2012) ("We conclude that although the district court properly put the fact questions to the jury, it erred in having the jury decide the ultimate legal question . . . ."); <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir. 1990) ("The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.").

The Court further notes that Halstead and Restivo, but not Kogut, brought the claim of supervisory liability as to Spillane. Accordingly, Halstead and Restivo's new trial motion on this ground is meritorious, and GRANTED in this respect.

V.   <u>The Verdict is Against the Weight of the Evidence</u>

Finally, Plaintiffs seek a new trial because, they say, the verdict was against the weight of the evidence. Insofar as Halstead and Restivo have argued such, the Court has already granted their motion for a new trial and need not address this issue any further. Insofar as Kogut seeks a new trial on this ground, his motion is DENIED.

Kogut outlines a list of evidence which, he believes, "overwhelmingly demonstrates that the verdict in favor of the defendants on each of the plaintiff's claims was against the clear weight of the evidence." (Docket Entry 456 at 12.) In the Court's view, such evidence falls into two primary

categories: (1) testimonial evidence; and (2) scientific and medical evidence.

By "testimonial" evidence, the Court means to refer to evidence that turns primarily, if not exclusively, on witness credibility, such as the testimony of retired F.B.I. Special Agent Frank Meyers, testimony regarding Plaintiffs' whereabouts on November 10, 1984, and evidence regarding Kogut's confession. Despite the relatively lenient standard on a Rule 59 motion, however, the jury's assessment of witness credibility is entitled to deference and "the court should only grant such a motion when the jury's verdict is egregious." Ricciuti, 70 F. Supp. 2d at 305; see also Ellis v. La Vecchia, 567 F. Supp. 2d 601, 610 (S.D.N.Y. 2008) ("The jury was entitled to credit Plaintiff's testimony and the Court should not disturb that assessment."). Here, a reasonable view of the evidence is that Plaintiffs were together on the night of November 10, 1984 and that, whether true or not, Kogut's confession was not the product of coercion. For example, Agent Meyers testified, during his videotaped deposition, that the blue van purportedly used during Fusco's rape and murder was up on blocks in Restivo's driveway and not in immediately operable condition. (Trial Tr. 3510-12.) The jury, though, which viewed portions of the deposition, was in the best position to determine Agent Meyer's credibility, and may have very well found that Meyers,

as a member of Restivo's family, was entitled to less credibility or simply that Meyers may have been mistaken. Moreover, the jury viewed the Kogut videotape confession on multiple occasions, in addition to having heard an abundance of testimony on this particular topic, and, in light of such testimony, it was reasonable for them to credit Defendants' version of events.

With respect to the scientific and medical evidence, some of it, such as the DNA evidence, pertains more to the issue of Plaintiffs' actual guilt or innocence in the underlying crime than to the issues relevant to the particular case at hand. Other evidence, such as the post mortem root hair banding evidence and the medical evidence concerning the manner of death, although scientific in nature, has a testimonial and credibility component as well. See Giles v. Rhodes, 171 F. Supp. 2d 220, 226 (S.D.N.Y. 2001) ("Even assuming arguendo the medical evidence concerning Giles' injuries did not itself implicate any credibility issues, a decision by this Court that the verdict is against the weight of the evidence would require me to credit the plaintiff's testimony over the defendants'." (emphasis in original)); see also Lewis v. City of N.Y., 689 F. Supp. 2d 417, 426 (E.D.N.Y. 2010) (jury was entitled to credit one expert over the other). Even in the face of unrefuted expert testimony, the jury need not necessarily adopt the

expert's opinion without scrutiny. <u>Giles</u>, 171 F. Supp. 2d at 226 ("The fact that defendants did not rebut Dr. Mihalakis's opinion with a medical expert of their own did not immunize the Mihalakis testimony from the jury's evaluation of whether it was credible."). In this case, Defendants demonstrated on cross-examination of Plaintiffs' expert on post mortem root hair banding that, as to the issue of timing, which was critical to Plaintiffs' case, additional research was required and the expert could not testify on that issue to a reasonable degree of scientific certainty. (Trial Tr. 2111-16.) Accordingly, the verdict as to Kogut was not so "seriously erroneous" as to merit a new trial. <u>See</u> <u>Campbell v. City of N.Y.</u>, No. 99-CV-5129, 2003 WL 660847, at *2 (S.D.N.Y. Feb. 27, 2003).

Kogut's motion for a new trial on the grounds that the verdict was against the clear weight of the evidence is DENIED.

VI. <u>Motion to Settle the Record</u>

Also pending before the Court is a motion to settle the record filed by Plaintiffs Halstead and Restivo and joined by Plaintiff Kogut. (<u>See</u> Docket Entries 474 & 476.) According to Plaintiffs, the current trial record erroneously omits certain deposition excerpts that were played for the jury during trial. Plaintiffs request that the Court enter an Order reflecting that these deposition excerpts were indeed presented

43

to the jury and are appropriately part of the record.  For the following reasons, Plaintiffs' motion is GRANTED.

A district court may, in certain circumstances, amend, correct, or clarify the record.  For example, Federal Rule of Appellate Procedure 10(e) provides that "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." FED. R. APP. P. 10(e)(1); see also Corbett v. Guardian Worldwide Moving Co., 164 F.R.D. 323, 329 (E.D.N.Y. 1995) ("Rule 10(e) provides a mechanism for ensuring that the record reflects accurately what transpired in the district court." (internal quotation marks and citation omitted)).  In addition, Federal Rule of Civil Procedure 60(a) states that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a).

In support of their motion, Plaintiffs provide sworn declarations from Ms. Deborah Cornwall, former counsel for Halstead and Restivo, and Mr. Anthony Grandinette, counsel for Kogut.  Both declarations affirm that Plaintiffs' counsel kept contemporaneous records of video deposition excerpts that were presented to the jury, taking into account changes made after Defendants' objections, the Court's rulings, and attempts to

reduce the overall length of particular clips. (Cornwall Decl.
¶ 4; Grandinette Decl. ¶ 4.) Defendants do not particularly
dispute that portions of the specified depositions were
presented to the jury. Rather, they oppose Plaintiffs' motion
because there is no way of knowing for sure whether the portions
Plaintiffs identify are truly accurate and because Plaintiffs'
counsel should have identified on the record the portions being
played for the jury or moved the final versions into evidence.
(Defs.' Opp. to Mot. to Settle, Docket Entry 479, at 3.)

    Given the sworn declarations of such thorough counsel,
the Court's familiarity with the trial proceedings, and the
Defendants' somewhat general opposition to the motion, the Court
concludes that those portions of deposition excerpts specified
in the Cornwall and Grandinette declarations were presented to
the jury and are properly part of the record. See Libaire v.
Kaplan, No. 06-CV-1500, 2010 WL 2301197, at *4 (E.D.N.Y. June 7,
2010) (concluding that particular exhibits were part of the
record because magistrate judge likely would have noticed
missing exhibits and it generally appeared that exhibits had
been before the Court at some point); United States v. DiPietro,
No. 02-CR-1237, 2007 WL 2164262, at *2 (S.D.N.Y. July 25, 2007)
("[T]he Court holds that it may consider both direct and
circumstantial evidence in ruling on a motion to correct the
record under Federal rule of Appellate Procedure 10(e).");

<u>Benvenisti v. City of N.Y.</u>, No. 04-CV-3166, 2007 WL 1825853, at *1 (S.D.N.Y. June 25, 2007) (denying motion to settle the record without prejudice to plaintiff bringing an amended motion with a sworn affidavit articulating reasons for belief that documents were part of the summary judgment record).   Accordingly, Plaintiffs' motion to settle the record is GRANTED and the portions specified in the declarations are deemed part of the record.

CONCLUSION

For the foregoing reasons, Kogut's motion for a new trial is DENIED, Halstead and Restivo's motion for a new trial is GRANTED IN PART and DENIED IN PART, and the motion to amend/correct/supplement the record is GRANTED.

Finally, also pending before the Court is Defendants' motion for judgment as a matter of law regarding Plaintiffs' <u>Monell</u> claims (Docket Entry 447).   Defendants submitted this motion to the Court on November 28, 2012.   In light of the jury's verdict, rendered the following day on November 29, 2012, Defendants' motion for judgment as a matter of law on the <u>Monell</u> claims is DENIED AS MOOT.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

Within thirty (30) days of the date of this Memorandum & Order, counsel for Halstead and Restivo and counsel for Defendants shall provide the Court with dates that they are available for a Court conference.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:     July __22__, 2013
           Central Islip, New York